UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 FEB 18  A  9: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

05    10323 DPW

|  |  |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. F/K/A KALM-FORSYTHE GLOBAL INNOVATIONS, LTD. | ) ) ) ) |
| Plaintiff, | ) ) Civil Action No. |
| v. | ) ) MAGISTRATE JUDGE |
| RICHARD C. SOMERVILLE, ANNE ROCHE-SOMERVILLE, and SOLAR CONTRUCTION, INC. F/K/A GLOBE RUBBER WORKS, INC. | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

RECEIPT #_____
AMOUNT $ 250
SUMMONS ISSUED (2)
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY CLK._____
DATE 2/18/05

JURY TRIAL
DEMANDED

## COMPLAINT

### PARTIES

1.  The plaintiff Globe Composite Solutions, Ltd., f/k/a Kalm-Forsythe Global Innovations, Ltd. (Globe Composite) is a Texas Corporation with a principal place of business at 10440 N. Central Expressway, Suite 1475, Dallas, Texas, 75231.

2.  The defendant Solar Construction, Inc., f/k/a Globe Rubber Works, Inc. (Globe Rubber) is a Massachusetts Corporation with a principal place of business at 254 Beech Street, Rockland, Massachusetts, 02370.

3.  The defendant Richard C. Somerville (Somerville) is an individual residing at 344 Keene Street, Duxbury, Massachusetts, 02332 and the President, Treasurer, Director, and Assistant Clerk of Globe Rubber.

4.  The defendant Anne Roche-Somerville (Roche-Somerville) is an individual residing at 344 Keene Street, Duxbury, Massachusetts, 02332.

## JURISDICTION AND VENUE

5.  Jurisdiction is conferred by 28 U.S.C. § 1332 because there is diversity among the parties and the amount in controversy exceeds $75,000.

6.  Venue is proper in the District of Massachusetts under 28 U.S.C. 1391(a) because Globe Rubber is doing business in this district, the claims arose in this district, and the defendants are located in this district.

## FACTS COMMON TO ALL CLAIMS

7.  At all material times before closing the asset purchase in issue in this case, Globe Rubber was a contractor supplying goods and services to the United States Government, including, but not limited to, suppliers to the United States Navy.  Prior to Globe Composite's acquisition of Globe Rubber's assets, Globe Rubber entered into one or more contracts or agreements with contractors who build submarines for the United States Navy.  Specifically, Globe Rubber entered into contracts with General Dynamics Corporation and Newport News Shipbuilding, Inc. to supply synthetic-material submarine parts that would be used to build submarines for the United States Navy.

8.  The contracts with General Dynamics Corporation and Newport News Shipbuilding, Inc. required that Globe Rubber's synthetic-material submarine parts conform to the United States Government's specifications.

9.  In or about August 2004, Globe Composite entered into an Asset Purchase Agreement with Globe Rubber and Somerville (Agreement), attached as Exhibit A.  In

the Agreement, Globe Composite purchased identified assets of Globe Rubber for approximately $898,000.

10. Pursuant to the Agreement, Globe Composite paid Somerville approximately $1.5 million in cash and issued a $400,000 promissory note, a $200,000 promissory note, and a $150,000 promissory note to Somerville for identified intellectual property, totaling approximately $2.25 million.

11. In the Agreement, Globe Rubber retained identified liabilities relating to its products and contracts, including, *inter alia*:

> (i) Any Liability arising out of or relating to products of Globe [Rubber] to the extent manufactured or sold prior to [July 1, 2004]; . . . (ii) any Liability under any Contract assumed by [Globe Composite] . . . that arises after [July 1, 2004] if and only to the extent that such arises out of or relates to any Breach that occurred prior to [July 1, 2004].

Exh. A, § 2.5(b).

12. In the Agreement, Globe Composite assumed only identified liabilities of Globe Rubber, including, *inter alia*:

> (vi) any Liability arising after the Effective Date under any of the Globe [Rubber] Contracts (except for any Globe [Rubber] Contract not listed on Schedule 4.17(a) of the Disclosure Schedule, whose failure to be so listed constitutes a Breach of Section 4.17 hereof) other than any Liability thereunder for a material Breach that occurred prior to the Effective Date.

Exh. A, § 2.5(a). The Disclosure Schedule is attached as Exhibit B.

13. In the Agreement, Globe Rubber and Somerville made numerous representations and warranties including, *inter alia*:

> § 4.10. Globe [Rubber] has no liabilities or obligations of any material nature which are required to be reflected on Globe [Rubber]'s financial statements . . . in order to fairly present its financial condition, except for liabilities or obligations reflected in

3

Globe [Rubber]'s Year-End Balance Sheet or Globe [Rubber]'s Interim Balance Sheet and Liabilities incurred in the Ordinary Course of Business since the respective dates thereof.

§ 4.12. Since the date of Globe [Rubber]'s Year-End Balance Sheet, there has not been any material adverse change in the business, operations, properties, prospects, assets, or condition of Globe [Rubber], and to the knowledge of Globe [Rubber] and Somerville no event has occurred or circumstance exists that may be reasonably foreseen by a prudent person as likely to result in such a material adverse change.

§ 4.14. (i) . . . [T]o Globe [Rubber]'s and Somerville's Knowledge, Globe [Rubber] is in full compliance, in all material respects, with each Legal Requirement and Governmental Authorization that is applicable to it or to the conduct or operation of its business or the ownership or use of any of its assets; (ii) to Globe [Rubber]'s and Somerville's Knowledge, no even has occurred or circumstance exists that (with or without notice or lapse of time) may constitute or result in a material violation by Globe [Rubber] of, or a material failure on the part of Globe [Rubber] to comply with, any Legal Requirement or Governmental Authorization.

§ 4.17(a). Schedule 4.17(a) of the Disclosure Schedule contains a complete and accurate list, and Globe [Rubber] and Somerville have delivered to [Globe Compliance] true and complete copies, of (i) each executory Globe [Rubber] Contract that involves the performance of services or delivery of goods or materials by or to Globe [Rubber] of an amount or value in excess of $10,000.

Exh. A.

14. The required government specifications with respect to Globe Rubber's products are subject to security clearance.

15. In or about late August 2004, Globe Composite gained interim security clearance and partial access to the government specifications. In or about December 2004, Globe Composite discovered that Globe Rubber and Somerville had prepared numerous certifications that its products met government specifications, knowing that the

certifications were false, and gave these certifications to, *inter alia*, Newport News Shipbuilding, Inc. and General Dynamics Corporation.

16. The value of assets and intellectual property purchased by Globe Composite was dependant upon the contracts with, *inter alia*, General Dynamics Corporation and Newport News Shipbuilding, Inc., and the products satisfying government specifications.

17. Globe Rubber and Somerville did not disclose to Globe Composite the actions described above until after Globe Composite discovered the false certifications.

18. It appears that prior to the asset purchase transaction with Globe Composite, Globe Rubber entered into certain non-solicitation agreements with Shuster Corporation. Those agreements were not disclosed in the Disclosure Schedule and were not known to Globe Composite until October, 2004. At that time, Shuster Corporation notified Globe Composite of the existence of the non-solicitation agreement. Somerville's and Globe Composite's alleged violation of the non-solicitation agreement is the subject of a lawsuit pending in Massachusetts Superior Court for Bristol County, *Shuster Corporation v. Globe Composite and Richard Somerville*, Civil Action Number BRCV2005-00056.

19. The representations and warranties of Globe Rubber in the Agreement were false and fraudulent because (a) all liabilities of Globe Rubber were not reflected in its financial statements; (b) material adverse changes had occurred in Globe Rubber's business since the year-end balance sheet was calculated; (c) Globe Rubber was not in full compliance with government authorizations and certifications; and (d) the Shuster contracts were not disclosed. Globe Rubber and Somerville knew that these representations and warranties were false.

20. To induce Globe Composite to enter the Agreement, Somerville represented to Globe Composite that Globe Rubber was in good corporate health and was in compliance with its contractual obligations, while knowing that these statements were false. For instance, in 2004 prior to the sale of assets, Somerville stated "the material we're using for the RFID conveyors are from custom alloyed blend" and "the composite chain material is a brand new material that we developed", while knowing that both of these statements were false. Further, Somerville stated, *inter alia*, "this business is worth five million dollars" while knowing that statement was false.

21. To induce Globe Composite to enter the Agreement, Roche-Somerville stated to Globe Composite that Globe Rubber was in good corporate health while knowing that these statements were false and knowing of Somerville's and Globe Rubber's fraudulent actions. For instance, in 2004 prior to the sale of assets, Roche-Somerville stated, *inter alia*, "you're getting a real jewel" and "you're getting a real bargain".

22. Globe Composite must make great expenditures in order to make the products conform to government specifications and in order to comply with the contracts assumed from Globe Rubber in the Agreement.

23. Globe Composite must make expenditures in order to defend against the Shuster claims.

24. Pursuant to the Agreement, Globe Composite withheld $165,000 of the asset purchase price and placed those funds in an escrow account to be used to pay indemnification claims pursuant to the Agreement. Exh. A, § 2.4(d).

25. On or about January 31, 2005, Globe Composite demanded that all escrow funds be released to it in order to indemnify damages, expenses, and warranty claims. The

demand is attached as Exhibit C. In accordance with the Agreement, Globe Composite submitted a Disbursement Request form to Somerville for his signature. Somerville has refused to execute the form. Accordingly, the escrow funds have not been released.

26. On February 4, 2005, Somerville demanded full payment of the $400,000 promissory note issued by Globe Composite and Forsythe to Somerville. Globe Composite and Forsythe have not paid that note.

27. The fraudulent actions and breaches of Globe Rubber and Somerville preclude them from enforcing the Agreement.

CLAIM I
BREACH OF CONTRACT

28. Globe Rubber and Somerville breached the Agreement by, including but not limited to, breaching the above-described representations and warranties. Specifically, Globe Rubber and Somerville breached their representations and warranties that, *inter alia*, (a) all liabilities were reflected in its financial statements; (b) no material adverse change had occurred in its business since the year-end balance sheet; (c) it was in full compliance with each legal requirement and governmental authorization it had received; and (d) all executory contracts were disclosed.

29. Globe Rubber and Somerville breached these representations and warranties because Globe Rubber's products failed to conform to the government specifications that they had certified the products satisfied, and because the Shuster Corporation non-solicitation agreement was not disclosed.

30. Globe Composite suffered damage as the result of Globe Rubber's actions.

CLAIM II
FRAUD

31. Globe Rubber, Somerville, and Roche-Somerville knew or should have known that Globe Composite would rely the above-described representations and warranties, which were false.

32. Specifically, Globe Rubber and Somerville falsely stated that, *inter alia*, (a) all liabilities were reflected in its financial statements; (b) no material adverse change had occurred in its business since the year-end balance sheet; (c) it was in full compliance with each legal requirement and governmental authorization it had received; and (d) all executory contracts were disclosed.

33. Further, prior to the asset sale, Somerville and Roche-Somerville falsely stated that Globe Rubber was in good corporate health and was in compliance with its contractual obligations, while knowing that these statements were false. Specifically, Somerville stated that materials it used to satisfy contracts was proprietary and custom made, when it was not and did not satisfy government specifications. Further, both Somerville and Roche-Somerville stated that Globe Composite's purchase of Globe Rubber assets was a "bargain" for Globe Composite because Globe Rubber was a "jewel" that had accomplished "unbelievable achievements".

34. Globe Composite reasonably relied on the false statements of each Defendant and as a result, suffered damage.

CLAIM III
G.L. c. 231A, § 1

35. An actual controversy has arisen between Globe Composite and Somerville concerning whether or not, in light of his fraud and breach of representations and warranties, Somerville is entitled to enforce the $400,000 promissory note issued by Globe Composite and Forsythe to Somerville.

36. An actual controversy has arisen between Globe Composite and Somerville and Globe Rubber concerning whether or not Somerville and Globe Rubber are entitled to withhold escrow funds from Globe Composite.

37. Globe Composite will suffer damage if it is required to pay Somerville under the promissory note.

38. Globe Composite will suffer damage if it does not receive the escrow funds.

39. Granting declaratory and injunctive relief will terminate the controversy surrounding the promissory note and the escrow fund.

40. Globe Composite is entitled a declaratory judgment that the promissory note is void and that it is entitled to be paid the escrowed funds.

CLAIM IV
VIOLATION OF G.L. C.93A

41. Globe Composite, Globe Rubber, Somerville, and Roche-Somerville are all engaged in trade or commerce primarily and substantially within the Commonwealth of Massachusetts

42. The actions of Globe Rubber, Somerville, and Roche-Somerville described herein violate G.L. c.93A, § 2.

9

43. Globe Rubber, Somerville and Roche-Somerville engaged in these unfair and deceptive trade practices knowingly and willfully.

44. Globe Composite suffered damage in the form of a loss of money and property as the result of the unfair and deceptive trade practices of Globe Rubber, Somerville, and Roche-Somerville.

45. Globe Rubber, Somerville, and Roche-Somerville are liable to Globe Composite pursuant to G.L. c.93A, § 11.

WHEREFORE, Globe Composite demands relief as follows:

(a) that it be awarded all relief necessary to make it whole, including, but not limited to, damages resulting from purchasing the assets of Defendant Globe Rubber;

(b) that all promissory notes issued by Globe Composite to Somerville be declared void;

(c) that all amounts held in escrow be ordered paid to Globe Composite;

(d) that it be awarded all costs incurred, including reasonable attorney fees;

(e) that it be awarded interest;

(f) that its damages be trebled in accordance with G.L. c. 93A;

(g) that it receive such other relief which the court finds necessary and appropriate.

The plaintiffs demand trial by jury.

By its attorneys,

Evan T. Lawson, BBO# 289280
Kristina A. Engberg, BBO# 629441
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, Massachusetts 02210
(617) 439-4990

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Globe Composite Solutions, Ltd.
f/k/a Kalm-Forsythe Global Innovations, Ltd.

**DEFENDANTS**

Richard C. Somerville, Anne Roche-Somerville, and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Dallas County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Plymouth County, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Evan Lawson
Lawson & Weitzen, LLP
88 Black Falcon Avenue - Suite 345
Boston, MA  02210

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION  (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | ☐ 362 Personal Injury — Med. Malpractice | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury — Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☒ 370 Other Fraud | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/Accommodations | **HABEAS CORPUS:** | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | | |
| | ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 U.S.C. 1332; Defendants' breached contract and committed fraud; thereby violating Mass. Gen. L. c.93A

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY  (See instructions):

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)_____

   Globe Composite Solutions, LTD. v. Richard Sommerville, et al.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   ☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121
                                                                             for patent, trademark or copyright cases

   ☒  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ☐  V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)          YES ☐   NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?      YES ☐   NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?    YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   A.  If yes, in which division do all of the non-governmental parties reside?     YES ☒   NO ☐

       Eastern Division ☒        Central Division ☐        Western Division ☐

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division ☐        Central Division ☐        Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)     YES ☐   NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Evan T. Lawson

ADDRESS  Lawson & Weitzen, LLP, 88 Black Falcon Ave., Suite 345, Boston, MA 02210-2414

TELEPHONE NO.  617-439-4990

(Coversheetlocal.wpd - 10/17/02)

# Asset Purchase Agreement

This ASSET PURCHASE AGREEMENT (as amended from time to time, this *"Agreement"*) is made and entered into this 3rd day of August, 2004, by and between KALM-FORSYTHE GLOBAL INNOVATIONS, LTD., a Texas limited partnership (*"KFGI"*), GLOBE RUBBER WORKS, INC., a Massachusetts corporation (*"Globe"*), and RICHARD SOMERVILLE, an individual resident of Massachusetts (*"Somerville"*).

## R E C I T A L S

A.    Somerville, directly or indirectly, owns (163) shares of the common stock, par value One Hundred Dollars ($100.00) per share, of Globe, which constitutes one hundred percent (100%) of the issued and outstanding shares of capital stock of Globe.

B.    Globe desires to sell, and KFGI desires to purchase, the Globe Assets from Globe for the consideration and on the terms set forth in this Agreement.

C.    Somerville desires to sell, and KFGI desires to purchase, the Somerville Intellectual Property for and in consideration and on the terms set forth in this Agreement.

D.    Somerville desires to contribute the Somerville Goodwill to KFGI and, in exchange, KFGI desires to issue to Somerville a limited partner interest in KFGI that will, after all contemplated issuance of partnership interests, equal a 7.5% partnership interest in KFGI.

## AGREEMENT

The parties, intending to be legally bound, agree as follows:

## ARTICLE 1
## DEFINITIONS

For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires, the terms defined in this ARTICLE 1 have the meanings assigned to them or referred to in this ARTICLE 1 and include the plural as well as the singular:

*"504 Loan Funding"* — the funding of that certain contemplated loan to be issued in the amount of $729,000 from the Massachusetts Certified Development Corp. to KFGI, to be guaranteed by the U.S. Small Business Administration, the proceeds of which will be used by KFGI to purchase certain real estate and equipment in connection with the operation of the business following the Closing.

*"Appurtenances"* — all privileges, rights, easements, hereditaments and appurtenances belonging to or for the benefit of the Land, including all easements appurtenant to and for

-1-

the benefit of any Land (a *"Dominant Parcel"*) for, and as the primary means of access between, the Dominant Parcel and a public way, or for any other use upon which lawful use of the Dominant Parcel for the purposes for which it is presently being used is dependent, and all rights existing in and to any streets, alleys, passages and other rights-of-way included thereon or adjacent thereto (before or after vacation thereof) and vaults beneath any such streets.

*"Best Efforts"* — the efforts that a reasonably prudent Person desirous of achieving a result would use in similar circumstances to ensure that such result is achieved as expeditiously as possible; *provided, however,* that an obligation to use Best Efforts under this Agreement does not require the Person subject to that obligation to take actions that (i) would result in a materially adverse change in the benefits to such Person of this Agreement and the Contemplated Transactions; or (ii) would be, in the judgment of a reasonably prudent person, inconsistent with or deleterious to the Person or his company's legitimate business interests.

*"Breach"* — a "Breach" of a representation, warranty, covenant, obligation, or other provision of this Agreement or any instrument delivered pursuant to this Agreement will be deemed to have occurred if there is or has been (a) any material inaccuracy in, material breach of, or material failure to perform or comply with, such representation, warranty, covenant, obligation, or other provision, or (b) any successful claim (by any Person) or other occurrence or circumstance that is or was, in either case, materially inconsistent with such representation, warranty, covenant, obligation, or other provision, and the term "Breach" means any such inaccuracy, breach, failure, claim, occurrence, or circumstance.

*"Closing"* — as defined in Section 2.7.

*"Closing Date"* — the date hereof.

*"Competing Business"* — with respect to the business of Globe, as defined in Section 4.23, and with respect to the business of KFGI, as defined in Section 5.23.

*"Confidential Information"* — as defined in Section 9.1(a).

*"Consent"* — any approval, consent, ratification, waiver, or other authorization (including any Governmental Authorization).

*"Contemplated Transactions"* — all of the transactions contemplated by this Agreement or such other agreements contemplated hereunder.

*"Contract"* — any agreement, contract, obligation, promise, or undertaking (whether written or oral and whether express or implied) that is legally binding.

*"Damages"* — as defined in Section 7.2.

-2-

*"Disclosure Schedule"* — the applicable disclosure schedule delivered by the parties hereto concurrently with the execution and delivery of this Agreement.

*"Disclosing Party"* — as defined in Section 9.1(a).

*"Effective Date"* — July 1, 2004.

*"Employment Agreement"* — as defined in Section 2.8(a)(vi).

*"Encumbrance"* — any charge, claim, community property interest, condition, equitable interest, lien, option, pledge, security interest, right of first refusal, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership.

*"Environment"* — soil, land surface or subsurface strata, surface waters (including navigable waters, ocean waters, streams, ponds, drainage basins, and wetlands), groundwaters, drinking water supply, stream sediments, ambient air (including indoor air), plant and animal life, and any other environmental medium or natural resource.

*"Environmental, Health, and Safety Liabilities"* — any cost, damages, expense, liability, obligation, or other responsibility arising from or under Environmental Law or Occupational Safety and Health Law.

*"Environmental Law"* — any Legal Requirement that relates to (i) advising appropriate authorities, employees, and the public of intended or actual releases of pollutants or hazardous substances or materials, violations of discharge limits, or other prohibitions and of the commencements of activities, such as resource extraction or construction, that could have significant impact on the Environment; (ii) preventing or reducing to acceptable levels the release of pollutants or hazardous substances or materials into the Environment; (iii) reducing the quantities, preventing the release, or minimizing the hazardous characteristics of wastes that are generated; (iv) assuring that products are designed, formulated, packaged, and used so that they do not present unreasonable risks to human health or the Environment when used or disposed of; (v) protecting resources, species, or ecological amenities; (vi) reducing to acceptable levels the risks inherent in the transportation of hazardous substances, pollutants, oil, or other potentially harmful substances; (vii) cleaning up pollutants that have been released, preventing the threat of release, or paying the costs of such clean up or prevention; or (viii) making responsible parties pay private parties, or groups of them, for damages done to their health or the Environment, or permitting self-appointed representatives of the public interest to recover for injuries done to public assets.

*"ERISA"* — the Employee Retirement Income Security Act of 1974 or any successor law, and regulations and rules issued pursuant to that Act or any successor law.

*"Escrow Account"* — as defined in Section 2.4(d).

*"Escrow Agents"* — Mark G. Johnson and William R. Rodgers, counsel to KFGI and Globe, respectively.

*"Escrow Agreement"* — as defined in Section 2.4(d).

*"Excluded Globe Assets"* — as defined in Section 2.2.

*"Globe Assets"* — as defined in Section 2.1.

*"Globe Assumed Liabilities"* — as defined in Section 2.5.

*"Globe Bill of Sale, Assignment and Assumption Agreement"* — as defined in Section 2.8(a)(i).

*"Globe Contract"* — any Contract (a) under which Globe has or may acquire any rights, (b) under which Globe has or may become subject to any obligation or liability, or (c) by which Globe or any of the assets owned or used by it is or may become bound.

*"Globe Real Property"* — as defined in Section 4.6.

*"Globe's Facilities"* — any real property, including without limitation the Globe Real Property, leaseholds, or other interests currently owned or operated by Globe and any buildings, plants, structures, or equipment (including motor vehicles, tank cars, and rolling stock) currently owned or operated by Globe.

*"Globe's Intellectual Property Assets"* — as defined in Section 4.22(a).

*"Globe's Interim Balance Sheet"* — as defined in Section 4.4(a)(ii).

*"Globe Plan"* — as defined in Section 4.13(a).

*"Globe's Year-End Balance Sheet"* — as defined in Section 4.4(a)(i).

*"Governmental Authorization"* — any approval, consent, license, permit, waiver, or other authorization issued, granted, given, or otherwise made available by or under the authority of any Governmental Body or pursuant to any Legal Requirement.

*"Governmental Body"* — any (i) nation, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

*"Ground Lease"* — any long-term lease of land in which most of the rights and benefits comprising ownership of the land and the Improvements thereon or to be constructed thereon, if any, are transferred to the tenant for the term thereof.

*"Ground Lease Property"* — any land, improvements and appurtenances subject to a Ground Lease in favor of Globe.

*"Hazardous Activity"* — the distribution, generation, handling, importing, management, manufacturing, processing, production, refinement, Release, storage, transfer, transportation, treatment, or use (including any withdrawal or other use of groundwater) of Hazardous Materials in, on, under, about, or from the Globe or KFGI Facilities, as the case may be, or any part thereof into the Environment, and that materially increases the danger, or risk of danger, or poses an unreasonable risk of harm to persons or property on or off the Facilities, or that may affect the value of such Facilities.

*"Hazardous Materials"* — any waste or other substance that is listed, defined, designated, or classified as, or otherwise determined to be, hazardous, radioactive, or toxic or a pollutant or a contaminant under or pursuant to any Environmental Law, including any admixture or solution thereof, and specifically including petroleum and all derivatives thereof or synthetic substitutes therefor and asbestos or asbestos-containing materials.

*"Improvements"* — all buildings, structures, fixtures and improvements located on any Land, including those under construction.

*"IRC"* — the Internal Revenue Code of 1986, as amended, or any successor law, and regulations issued by the IRS pursuant to the Internal Revenue Code of 1986, as amended, or any successor law.

*"IRS"* — the United States Internal Revenue Service or any successor agency, and, to the extent relevant, the United States Department of the Treasury.

*"KFGI Contract"* — any Contract (a) under which KFGI has or may acquire any rights, (b) under which KFGI has or may become subject to any obligation or liability, or (c) by which KFGI or any of the assets owned or used by it is or may become bound.

*"KFGI's Facilities"* — any real property, leaseholds, or other interests currently owned or operated by KFGI and any buildings, plants, structures, or equipment (including motor vehicles, tank cars, and rolling stock) currently owned or operated by KFGI.

*"KFGI's Intellectual Property Assets"* — as defined in Section 5.22(a).

*"KFGI's Interim Balance Sheet"* — as defined in Section 5.4(a)(ii).

*"KFGI Promissory Note"* — as defined in Section 2.4(b).

*"KFGI's Year-End Balance Sheet"* — as defined in Section 5.4(a)(i).

*"Knowledge"* — an individual will be deemed to have "Knowledge" of a particular fact or other matter if (i) such individual is actually aware of such fact or other matter; or (ii) a prudent individual could be expected to discover or otherwise become aware of such fact

or other matter in the course of conducting a reasonable investigation concerning the existence of such fact or other matter.  A Person (other than an individual) will be deemed to have "Knowledge" of a particular fact or other matter if any individual who is serving, or who has at any time served, as a director, officer, partner, executor, or trustee of such Person (or in any similar capacity) has Knowledge of such fact or other matter.

*"Land"* — all parcels and tracts of land in which Globe or KFGI, as the case may be, has an ownership interest.

*"Legal Requirement"* — any federal, state, local, municipal, foreign, international, multinational, or other administrative order, constitution, law, ordinance, principle of common law, regulation, statute, or treaty.

*"Liability"* — with respect to any Person, any liability or obligation of such Person of any kind, character or description, whether known or unknown, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise, and whether or not the same is required to be accrued on the financial statements of such Person.

*"Noncompetition Agreements"* — as defined in Section 2.8(a)(vii).

*"Occupational Safety and Health Law"* — any Legal Requirement designed to provide safe and healthful working conditions and to reduce occupational safety and health hazards, including without limitation the Occupational Safety and Health Act of 1970, as amended (OSHA), and any governmental program designed to provide safe and healthful working conditions.

*"Order"* — any award, decision, injunction, judgment, order, ruling, subpoena, or verdict entered, issued, made, or rendered by any court, administrative agency, or other Governmental Body or by any arbitrator.

*"Ordinary Course of Business"* — an action taken by a Person will be deemed to have been taken in the "Ordinary Course of Business" only if such action is consistent with the past practices of such Person and is taken in the ordinary course of the normal day-to-day operations of such Person.

*"Organizational Documents"* — (a) the articles or certificate of incorporation and the bylaws of a corporation; (b) the partnership agreement and any statement of partnership of a general partnership; (c) the limited partnership agreement and the certificate of limited partnership of a limited partnership; (d) any charter or similar document adopted or filed in connection with the creation, formation, or organization of a Person; and (e) any amendment to any of the foregoing.

*"PBGC"* — as defined in Section 4.13(a).

*"Permitted Encumbrances"* — any Encumbrance listed on Schedule 4.6(b) of the Disclosure Schedule, liens for Taxes not yet due and payable, warehouse and mechanics liens for amounts not overdue, governmental restrictions of general application, and covenants, restrictions and matters of record affecting the Globe Real Property.

*"Person"* — any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, or other entity or Governmental Body.

*"Plan"* — as defined in Section 4.13(a).

*"Plan Sponsor"* — as defined in Section 4.13(a).

*"Proceeding"* — any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Body or arbitrator.

*"Real Property"* — any Land and Improvements and all Appurtenances thereto.

*"Real Property Lease"* — any Ground Lease or Space Lease.

*"Record"* — information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

*"Related Person"* — with respect to a particular individual each other member of such individual's Family or any Person that is directly or indirectly controlled by such individual or one or more members of such individual's Family. For purposes of this definition, the *"Family"* of an individual includes (i) the individual, (ii) the individual's spouse, (iii) any other natural person who is related to the individual or the individual's spouse within the second degree, and (iv) any other natural person who resides with such individual.

*"Release"* — any spilling, leaking, emitting, discharging, depositing, escaping, leaching, dumping, or other releasing into the Environment, whether intentional or unintentional.

*"Representative"* — with respect to a particular Person, any director, officer, employee, agent, consultant, advisor, or other representative of such Person, including legal counsel, accountants, and financial advisors.

*"Retained Globe Liabilities"* — as defined in Section 2.5(b).

*"Schedule"* — a part or section of the Disclosure Schedule.

*"Somerville Goodwill"* — as defined in Section 3.1.

*"Somerville Intellectual Property"* — as defined in Section 2.3.

*"Space Lease"* — any lease or rental agreement pertaining to the occupancy of any improved space on any Land.

*"Tangible Personal Property"* — any all machinery, equipment, tools, furniture, office equipment, computer hardware, supplies, materials, vehicles and other items of tangible personal property (other than Globe's inventory) of every kind owned or leased by Globe (wherever located and whether or not carried on Globe's books), together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto.

*"Tax"* — any tax (including any income tax, capital gains tax, value-added tax, sales tax, property tax, gift tax, or estate tax), levy, assessment, tariff, duty (including any customs duty), and any related charge or amount (including any fine, penalty, interest, or addition to tax), imposed, assessed, or collected by or under the authority of any Governmental Body or payable pursuant to any tax-sharing agreement or any other Contract relating to the sharing or payment of any such tax, levy, assessment, tariff, duty, or deficiency.

*"Tax Return"* — any return (including any information return), report, statement, schedule, notice, form, or other document or information filed with or submitted to, or required to be filed with or submitted to, any Governmental Body in connection with the determination, assessment, collection, or payment of any Tax or in connection with the administration, implementation, or enforcement of or compliance with any Legal Requirement relating to any Tax.

*"Third Party"* — a Person that is not a party to this Agreement.

*"Third-Party Claim"* — any claim against any Indemnified Person by a Third Party, whether or not involving a Proceeding.

*"Threatened"* — a claim, Proceeding, dispute, action, or other matter will be deemed to have been "Threatened" if any demand or statement has been made (orally or in writing) or any notice has been given (orally or in writing), or if any other event has occurred or any other circumstances exist, that would lead a prudent Person to conclude that such a claim, Proceeding, dispute, action, or other matter is likely to be asserted, commenced, taken, or otherwise pursued in the future.

## ARTICLE 2
## SALE AND TRANSFER OF GLOBE ASSETS AND SOMERVILLE INTELLECTUAL PROPERTY; CLOSING

### 2.1   GLOBE ASSETS TO BE SOLD

Upon the terms and subject to the conditions set forth in this Agreement, at the Closing and effective as of the Effective Date, Globe shall sell, convey, assign, transfer and deliver to KFGI, and KFGI shall purchase and acquire from Globe, free and clear of any Encumbrances other than Permitted Encumbrances, all of Globe's right, title and interest in and to all of Globe's property and assets, real, personal or mixed, tangible and

-8-

intangible, of every kind and description, wherever located, including the following (but excluding the Excluded Globe Assets):

(a)    all cash, cash equivalents and short-term investments;

(b)    all of Globe's Facilities;

(c)    all Tangible Personal Property, including those items described in Schedule 2.1(c) of the Disclosure Schedule;

(d)    all of Globe's inventories;

(e)    all of Globe's accounts receivable that Globe has not pledged or factored prior to the Effective Date;

(f)    all Globe Contracts, including those listed in Schedule 4.17(a) of the Disclosure Schedule, and all outstanding offers or solicitations made by or to Globe to enter into any Contract;

(g)    all rights in connection with and assets of the Globe Rubber Works, Inc. Profit Sharing 401(k) Plan;

(h)    all Governmental Authorizations and all pending applications therefor or renewals thereof, in each case to the extent transferable to KFGI, including those listed in Schedule 4.14 of the Disclosure Schedule;

(i)    all data and Records related to the operations of Globe, including client and customer lists and Records, referral sources, lists of market representatives, lists of distributors, research and development reports and Records, production reports and Records, service and warranty Records, equipment logs, operating guides and manuals, financial and accounting Records, creative materials, advertising materials, promotional materials, studies, reports, correspondence and other similar documents and Records and, subject to Legal Requirements, copies of all personnel Records and other Records described in Section 2.2(e);

(j)    all of the intangible rights and property of Globe, including the Globe Intellectual Property Assets (but not the Somerville Intellectual Property), going concern value, goodwill related to the corporation (excluding the Somerville Goodwill), telephone, telecopy and e-mail addresses and listings and those items listed in Schedules 4.22(d), (e), (f), and (g) of the Disclosure Schedule;

(k)    all rights to receive outstanding property and casualty insurance indemnity payments for insured losses, if any, arising from or relating to losses or claims in respect of the Globe Assets or the Globe Assumed Liabilities prior to the Effective Date;

-9-

(l)     all claims of Globe against third parties relating to the Globe Assets (but not in respect of any Excluded Globe Asset or any Retained Globe Liability), whether choate or inchoate, known or unknown, contingent or noncontingent, including all such claims listed in Schedule 2.1(l) of the Disclosure Schedule; and

(m)    all rights of Globe relating to deposits and prepaid expenses, claims for refunds and rights to offset in respect thereof that are not excluded under Sections 2.2(c) or 2.2(f), including, without limitation, those listed in Schedule 2.1(m) of the Disclosure Schedule.

All of the property and assets to be transferred to KFGI hereunder are herein referred to collectively as the *"Globe Assets."*

Notwithstanding the foregoing, the transfer of the Globe Assets pursuant to this Agreement shall not include the assumption of any Liability related to the Globe Assets unless KFGI expressly assumes that Liability pursuant to Section 2.5(a).

## 2.2    EXCLUDED GLOBE ASSETS

Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets of Globe (collectively, the *"Excluded Globe Assets"*) are not part of the sale and purchase contemplated hereunder, are excluded from the Globe Assets and shall remain the property of Globe after the Closing:

(a)     all minute books, stock Records, tax records, and corporate seals;

(b)     the shares of capital stock of Globe held in treasury;

(c)     all insurance policies and rights thereunder (except to the extent the right to receive indemnity payments for insured losses has been assigned to KFGI as specified in Section 2.1(l));

(d)     all of the Globe Contracts listed in Schedule 2.2(d) of the Disclosure Schedule

(e)     all personnel Records and other Records that Globe is required by law to retain in its possession;

(f)     all claims for refund of Taxes and other governmental charges of whatever nature;

(g)     all rights in connection with and assets of the Globe Plans excluding the Globe Rubber Works, Inc. Profit Sharing 401(k) Plan, which has been expressly included as a Globe Asset hereunder;

(h)     all accounts receivable pledged or factored by Globe prior to the Effective Date;

(i)     all rights of Globe under this Agreement, the Globe Bill of Sale, Assignment and Assumption Agreement, the Deferral Promissory Note and the KFGI Promissory Note;

(j)    the property and assets expressly designated in Schedule 2.2(j) of the Disclosure Schedule;

(k)    all claims of Globe against third parties relating to the Excluded Globe Assets or any Retained Globe Liability, whether choate or inchoate, known or unknown, contingent or noncontingent;

(l)    subject to Section 8.18, all right, title and interest in and to any recovery, damages or other awards to which Globe may become entitled under, in connection with or arising out of that certain class action complaint and the lawsuit associated therewith known as Globe Rubber v. Crompton Corporation, Case Number 04cv1654 pending in the United States District Court for the Eastern District of Pennsylvania (the *"Crompton Matter"*); and

(m)    the Lexus automobile that Somerville has previously used as a company car.

### 2.3    SOMERVILLE INTELLECTUAL PROPERTY

Upon the terms and conditions set forth in this Agreement, at the Closing and effective as of the Effective Date, Somerville shall sell, convey, assign, transfer and deliver to KFGI, and KFGI shall purchase and acquire from Somerville, free and clear of any Encumbrances, all of Somerville's right, title and interest in and to the intellectual property identified as the *"Somerville Intellectual Property"* on Schedule 2.3 of the Disclosure Schedule.

### 2.4    CONSIDERATION

(a)    The consideration for the Globe Assets, payable to Globe, will be (i) Eight Hundred Ninety-Eight Thousand Dollars ($898,000) in cash, and (ii) the assumption of the Globe Assumed Liabilities pursuant to the Globe Bill of Sale, Assignment and Assumption Agreement (collectively, the *"Globe Assets Purchase Price"*).

(b)    The consideration for the Somerville Intellectual Property, payable to Somerville, shall be (i) One Million Five Hundred Two Thousand Dollars ($1,502,000) in cash, (ii) a promissory note (the *"Deferral Promissory Note"*) executed by KFGI and payable to Somerville in the amount of Two Hundred Thousand Dollars ($200,000), which note shall be in the form attached as Exhibit 2.4(b)(ii) and shall be subordinate to KFGI's senior credit facility, (iii) a promissory note (the *"KFGI Promissory Note"*) executed by KFGI and payable to Somerville in the amount of One Hundred Fifty Thousand Dollars ($150,000), which note shall be in the form of Exhibit 2.4(b)(iii) and shall be subordinate to KFGI's senior credit facility, and (iv) a promissory note (the "Tax Payment Promissory Note") executed by KFGI and payable to Somerville in the amount of Four Hundred Thousand Dollars ($400,000), which note shall be in the form attached as Exhibit 2.4(b)(iv) and shall not be subordinate to KFGI's senior credit facility (collectively, the *"Somerville Intellectual Property Purchase Price"*).

-11-

(c)     Subject to Sections 2.4(d), 2.4(e) and 2.4(f), the Globe Assets Purchase Price will be paid to Globe and the Somerville Intellectual Property Purchase Price will be paid to Somerville at Closing. The cash portion of the Globe Assets Purchase Price and the Somerville Intellectual Property Purchase Price will be paid by wire transfer or other mutually acceptable means, and the Globe Bill of Sale, Assignment and Assumption Agreement, the Deferral Promissory Note and the KFGI Promissory Note will be executed and delivered at Closing.

(d)     Anything herein to the contrary notwithstanding, KFGI shall retain One Hundred Sixty-Five Thousand Dollars ($165,000) out of the cash portion of the Globe Assets Purchase Price, and shall deposit such amount at Closing in an interest bearing account established by the Escrow Agents in a Boston, Massachusetts bank (the *"Escrow Account"*) as contemplated by an Escrow Agreement by and among KFGI, Globe and the Escrow Agents in the form of Exhibit 2.4(d) (the *"Escrow Agreement"*). Funds in the Escrow Account shall be held and disbursed by the Escrow Agents in accordance with the Escrow Agreement. Immediately following the first anniversary of the Closing Date, the Escrow Agents shall pay the balance of such amount, plus any accrued interest, to Globe; provided that the Escrow Agents shall retain on deposit so much thereof as KFGI reasonably and in good faith deems necessary to cover any pending indemnification claims as have been properly asserted by KFGI in accordance with ARTICLE 7 hereof prior to the first anniversary date of the Closing Date and which are then unresolved, and the Escrow Agents shall continue to hold same pursuant to the Escrow Agreement until such claims have been finally resolved.

2.5    LIABILITIES

(a)     Globe Assumed Liabilities. On the Closing Date and effective as of the Effective Date, KFGI shall assume and agree to promptly pay, perform and discharge only the following Liabilities of Globe (the *"Globe Assumed Liabilities"*):

   (i)     any Liability reflected on Globe's Interim Balance Sheet that remains unpaid as of the Effective Date, including without limitation: (i) all trade debt and accounts payable, (ii) all bank debt or other indebtedness for borrowed money, (iii) all debt owed to Somerville or his spouse (or family members of either) shown thereon (which debts shall be paid by KFGI at Closing), (iv) all Taxes, (v) the $150,000 promissory note issued by Globe in favor of KFGI dated September 9, 2003, and (vi) the $200,000 promissory note executed by Globe in favor of KFGI dated April 19, 2004;

   (ii)     any trade debt or account payable incurred by Globe in the Ordinary Course of Business between the date of Globe's Interim Balance Sheet and the Effective Date that remains unpaid as of the Closing Date, but expressly excluding any liability for tortious conduct or for a material breach of contract;

-12-

(iii)  any Liability to Globe's customers incurred by Globe in the Ordinary Course of Business for orders outstanding as of the Effective Date reflected on Globe's books (other than any Liability arising out of or relating to a Breach that occurred prior to the Effective Date);

(v)  any Liability to Globe's customers for warranty claims (as distinguished from product liability claims) under its established warranty practices given by Globe to its customers in the Ordinary Course of Business prior to the Effective Date;

(vi)  any Liability arising after the Effective Date under any of the Globe Contracts (except for any Globe Contract not listed on Schedule 4.17(a) of the Disclosure Schedule, whose failure to be so listed constitutes a Breach of Section 4.17 hereof) other than any Liability thereunder for a material Breach that occurred prior to the Effective Date;

(viii)  any liability arising in the Ordinary Course of Business to employees of Globe, to the extent reflected on Globe's books, for current salary or wages and payroll taxes thereon, accrued rights to sick pay and vacation pay and any 401(k) employer matching payments due for current period under the Globe 401(k) Plan;

(ix)  any Liability of Globe described in Schedule 2.5(a)(ix) of the Disclosure Schedule; and

(x)  Liabilities pursuant to Section 2.5(c).

(b)  <u>Retained Globe Liabilities</u>. The Retained Globe Liabilities shall remain the sole responsibility of and shall be retained, paid, performed and discharged solely by Globe. *"Retained Globe Liabilities"* shall mean every Liability of Globe other than the Globe Assumed Liabilities, including, without limitation:

(i)  any Liability arising out of or relating to products of Globe to the extent manufactured or sold prior to the Effective Date other than to the extent assumed under Section 2.5(a)(iii), (iv) or (v);

(ii)  any Liability under any Contract assumed by KFGI pursuant to Section 2.5(a) that arises after the Effective Date if and only to the extent that such arises out of or relates to any Breach that occurred prior to the Effective Date;

(iii)  any Liability for Taxes (other then Taxes reflected on Globe's Year-End or Globe's Interim Balance Sheets or otherwise assumed by KFGI hereunder) including (A) any Taxes arising as a result of Globe's operation of its business or ownership of the Globe Assets prior to the Effective Date, (B) any Taxes that will arise as a result of the sale of the Globe Assets

-13-

pursuant to this Agreement (except as otherwise provided in Article 7) and (C) any deferred Taxes of any nature;

(iv)  any Liability under any Contract included among the Globe Excluded Assets;

(v)  any Environmental, Health and Safety Liabilities but only to the extent exclusively arising out of or relating to Globe's operation prior to the Effective Date of real property during the time Somerville owned a controlling interest in Globe;

(vi)  any Liability under any undisclosed barter, employment, sales, marketing, distributor, bonus, severance, retention or termination agreement or arrangement, whether written or oral, with any employee of Globe, any independent contractor or any of Globe's or Somerville's Related Persons, other than to the extent assumed under Sections 2.5(a)(i), (ii), (iii), (vi) or (ix);

(vii)  any Liability arising out of or relating to any employee grievance in respect of periods prior to the Effective Date other than in respect of the Globe Assumed Liabilities whether or not the affected employees are hired by KFGI;

(viii)  any Liability to indemnify, reimburse or advance amounts to any officer, director, employee or agent of Globe except to extent assumed under Sections 2.5(a)(i), (ii) or (iii);

(ix)  any Liability to distribute to any of Globe's shareholders or otherwise apply all or any part of the consideration received hereunder;

(x)  any Liability arising out of any Proceeding pending as of the Effective Date;

(xi)  any Liability arising out of any Proceeding commenced after the Effective Date and arising out of or relating to any occurrence or event happening prior to the Effective Date, but expressly excluding any Liability in respect of a Proceeding within the scope of KFGI's indemnity undertaking at Section 7.3 or a Liability in respect of a Globe Assumed Liability;

(xii)  any Liability of Globe under this Agreement or any other document executed in connection with the Contemplated Transactions;

(xiii)  any Liability of Globe based upon Globe's acts or omissions occurring after the Closing Date; and

-14-

(xiv)   any Liability of Globe related to the lease or purchase or other financing of the Lexus automobile that Somerville has previously used as a company car.

(c)   _Post-Effective Date Operating Liabilities._  Except to the extent of any Globe Retained Liabilities, KFGI acknowledges and agrees that it shall be solely responsible for the operation of the business utilizing the Globe Assets and for any Liabilities associated with the operation of the business utilizing the Globe Assets from and after the Effective Date.

## 2.6   ALLOCATION OF GLOBE ASSETS PURCHASE PRICE

The Globe Assets Purchase Price shall be allocated in accordance with Schedule 2.6 of the Disclosure Schedule. After the Closing, the parties shall make consistent use of the allocation, fair market value and useful lives specified in Schedule 2.6 of the Disclosure Schedule for all Tax purposes and in all filings, declarations and reports with the IRS in respect thereof, including the reports required to be filed under Section 1060 of the Code. KFGI shall prepare and deliver IRS Form 8594 to Globe for its review and approval within forty-five (45) days after the Closing Date to be filed with the IRS. If Globe raises any objection to such form, the parties agree to negotiate a resolution to such matter and to agree on a mutually acceptable form within 30 days. In any Proceeding related to the determination of any Tax, neither KFGI nor Globe or Somerville shall contend or represent that such allocation is not a correct allocation.

## 2.7   CLOSING

The purchase and sale provided for in ARTICLE 2 of this Agreement (the *"Closing"*) will take place at the offices of Globe's counsel, Tarlow, Breed, Hart, Murphy & Rodgers, P.C., at 21 Custom House Street, Boston, MA 02110, commencing at 10:00 a.m. (local time) on the date hereof. Subject to the provisions of ARTICLE 6, failure to consummate the purchase and sale provided for in this Agreement on the date and time and at the place determined pursuant to this Section 2.7 will not result in the termination of this Agreement and will not relieve any party of any obligation under this Agreement. In such a situation, the Closing will occur as soon as practicable, subject to the provisions of ARTICLE 6.

## 2.8   CLOSING OBLIGATIONS

In addition to any other documents to be delivered under other provisions of this Agreement, at the Closing:

(a)   Globe and Somerville, as the case may be, shall have delivered to KFGI:

(i)   a bill of sale, assignment and assumption agreement for all of the Globe Assets in the form of Exhibit 2.8(a)(i) (the *"Globe Bill of Sale, Assignment and Assumption Agreement"*) executed by Globe;

-15-

(ii)     [Intentionally Omitted];

(iii)    general assignment of all Globe Intellectual Property Assets and separate assignments of all registered Globe Marks, Globe Patents and Globe Copyrights, each as in the forms of Exhibit 2.8(a)(iii) executed by Globe;

(iv)     assignments of all Somerville Intellectual Property in the form of Exhibit 2.8(a)(iv) executed by Somerville;

(v)      such other deeds, bills of sale, assignments, customary owner's affidavits, customary tax certificates and affidavits, and documents and other instruments of transfer and conveyance as may reasonably be requested by KFGI, each in form and substance reasonably satisfactory to KFGI and its legal counsel and executed by Globe;

(vi)     an employment agreement in the form of Exhibit 2.8(a)(vi), executed by Somerville (the *"Employment Agreement"*);

(vii)    noncompetition agreements in the form of Exhibit 2.8(a)(vii), executed by Gregg Somerville, Wendy Somerville and Anne Roach-Somerville (the *"Noncompetition Agreements"*);

(viii)   a certificate of the Secretary of Globe certifying, as complete and accurate as of the Closing, attached copies of the Organizational Documents of Globe, certifying and attaching all requisite resolutions or actions of Globe's board of directors and shareholders approving the execution and delivery of this Agreement and the consummation of the Contemplated Transactions and certifying to the incumbency and signatures of the officers of Globe executing this Agreement and any other document relating to the Contemplated Transactions;

(ix)     the Escrow Agreement executed by Globe;

(x)      such other documents as KFGI may reasonably request for the purpose of facilitating the consummation or performance of any of the Contemplated Transactions; and

(xi)     written evidence of the results of a certified environmental review of the compliance of Globe's septic, sewage, and wastewater systems with applicable requirements of Title V of the Code of Massachusetts Regulations (310 CMR Sec 15, et seq.) and the remedial efforts required of Globe in correcting any deficiencies identified in such review, including without limitation the connection of the sewage systems at Globe's facilities to the main city sewer line, and, in the event such remedial efforts have not been completed as of the date hereof, Somerville shall deposit $25,000 into escrow to cover the costs of such remedial efforts conducted post-closing.

(b)    KFGI shall have delivered to Globe:

    (i)    Seven Hundred Thirty-Three Thousand ($733,000) by wire transfer to an account specified by Globe in a writing delivered to KFGI at least three (3) days prior to the Closing Date;

    (ii)    the Globe Bill of Sale, Assignment and Assumption Agreement executed by KFGI;

    (iii)    the Employment Agreement executed by KFGI;

    (iv)    the Noncompetition Agreements executed by KFGI;

    (v)    a certificate of the Secretary of KFGI certifying, as complete and accurate as of the Closing, attached copies of the Organizational Documents of KFGI and certifying and attaching all requisite resolutions or actions of KFGI's board of directors approving the execution and delivery of this Agreement and the consummation of the Contemplated Transactions and certifying to the incumbency and signatures of the officers of KFGI executing this Agreement and any other document relating to the Contemplated Transactions; and

    (vi)    a written release of all claims from Michael Whitworth running to Globe, Somerville and all of their respective officers, directors, successors and assigns in the form attached hereto as Exhibit 2.8(b)(vi).

(c)    KFGI shall have delivered to Somerville:

    (i)    One Million Five Hundred Two Thousand Dollars ($1,502,000) by wire transfer to an account specified by Somerville in a writing delivered to KFGI at least three (3) days prior to the Closing Date;

    (ii)    the Deferral Promissory Note, executed by KFGI;

    (iii)    the KFGI Promissory Note, executed by KFGI;

    (iv)    the Tax Payment Promissory Note, executed by KFGI; and

    (v)    a release of Somerville from any and all Assumed Liabilities as have been personally guaranteed by Somerville duly executed by the Third Party holding such guarantees and discharges of any mortgages on his residence and collateral assignments of life insurance policies in his life as have been granted to Third Parties incident to such guarantees, as such guarantees and mortgages and insurance policies are identified on Schedule 2.5(a)(ix) of the Disclosure Schedule.

(d)    KFGI shall have delivered to the Escrow Agents:

-17-

(i)    The Escrow Agreement executed by Globe and KFGI; and

(ii)    One Hundred Sixty-Five Thousand Dollars ($165,000).

(e)    Each party hereto shall have delivered such other documents as any other party hereto may reasonably request for the purpose of facilitating the consummation or performance of any of the Contemplated Transactions.

# ARTICLE 3
## CONTRIBUTION OF SOMERVILLE GOODWILL

**3.1    CONTRIBUTION OF SOMERVILLE GOODWILL**

Upon the terms and conditions set forth in this Agreement, on and effective as of the first practicable date following the 504 Loan Funding (the *"Somerville Goodwill Closing Date"*), Somerville shall contribute to KFGI, free and clear of any Encumbrances, all of Somerville's right, title and interest in and to all of the personal goodwill that Somerville possesses as a result of his individual achievements and reputation in the business community (the *"Somerville Goodwill"*). KFGI covenants and agrees that it will not deal with, use, or exploit the Somerville Goodwill in any manner which disparages, embarrasses, or ridicules Somerville or holds Somerville in a false light or otherwise portrays him in a false, misleading, or demeaning manner or invades his privacy.

**3.2    ISSUANCE OF KFGI EQUITY INTEREST**

In consideration for the contribution of Somerville Goodwill by Somerville and on the Somerville Goodwill Closing Date, KFGI shall issue to Somerville an equity interest in KFGI (the *"KFGI Equity Interest"*) in an amount equal to seven and one-half percent (7.5%) of all outstanding limited partnership interests in KFGI as of the Somerville Goodwill Closing Date (calculated on a fully diluted basis) with the same voting rights and other rights, priorities, preferences and privileges as all existing limited partners as of the Closing Date subject only to the amendment attached hereto as Exhibit 3.3(b) (the *"Somerville Goodwill Purchase Price"*), and the value of the Somerville Goodwill shall be deemed to be Somerville's initial capital contribution to KFGI. By mutual agreement of the parties, the KFGI Equity Interest will have an agreed value equal to seven and one-half percent (7.5%) of all capital accounts of all partners of KFGI (including Somerville) as of the Somerville Goodwill Closing Date.

**3.3    COVENANTS**

(a)    So long as the KFGI Equity Interest has not been issued to Somerville, between the Closing Date and the Somerville Goodwill Closing Date, KFGI hereby agrees not to merge or consolidate with any other person, liquidate its business, make any distributions to its partners, or sell all or substantially all of its assets, recapitalize KFGI or authorize or issue any equity interests senior to existing limited partners, or amend its partnership agreement in any respect other than as contemplated by Section 3.3(b).

-18-

(b)    Immediately following the Closing Date, KFGI shall adopt an amendment to its Revised and Amended Agreement of Limited Partnership in substantially the form attached as Exhibit 3.3(b).

3.4    CLOSING

(a)    The contribution of the Somerville Goodwill and the payment of the Somerville Goodwill Purchase Price will take place on Somerville Goodwill Closing Date. The Somerville Goodwill Purchase Price will be delivered in form and substance mutually acceptable to the parties as provided herein.

(b)    On the Somerville Goodwill Closing Date, Somerville shall deliver (i) an assignment of the Somerville Goodwill in the form of Exhibit 3.4(b) executed by Somerville, and (ii) a form of acknowledgement, together with such other documents as KFGI shall reasonably request, each executed by Somerville, evidencing Somerville's agreement to be bound by the KFGI's Revised and Amended Agreement of Limited Partnership.

(c)    On the Somerville Goodwill Closing Date, KFGI shall deliver a copy of KFGI's Revised and Amended Partnership Agreement, revised to reflect the admission of Somerville as a 7.5% limited partner as of the Somerville Goodwill Closing Date and amended as contemplated by Section 3.3(b).

## ARTICLE 4
## REPRESENTATIONS AND WARRANTIES OF GLOBE AND SOMERVILLE

The Disclosure Schedule is divided into schedules which are numbered to correspond to sections of this Agreement. Notwithstanding anything to the contrary contained in this Agreement, any matter which is disclosed by either Globe or Somerville in any particular schedule of the Disclosure Schedule, or Exhibits thereto, relating to this ARTICLE 4 shall be deemed to be disclosed in respect of all sections of this ARTICLE 4 to which such disclosure may relate and to qualify all of the representations and warranties of Globe and Somerville contained in this Agreement that are relevant thereto. Subject to the qualifications, exclusions, limitations and disclosures set forth in the Disclosure Schedule in regard to this ARTICLE 4, each of Globe and Somerville represents and warrants, jointly and severally, to KFGI as follows:

4.1    ORGANIZATION AND GOOD STANDING

(a)    Globe is a corporation duly organized, validly existing, and in good standing under the laws of the State of Massachusetts, with full corporate power and authority to conduct its business as it is now being conducted, to own or use the properties and assets that it purports to own or use, and to perform all its obligations under the Globe Contracts. Globe is duly qualified to do business as a foreign corporation and is in good standing under the laws of each state or other jurisdiction in which either the ownership or use of the properties owned or used by it, or the nature of the activities conducted by it, requires such qualification.

-19-

(b)　　Globe has delivered to KFGI copies of the Organizational Documents of Globe, as currently in effect.

**4.2　AUTHORITY; NO CONFLICT**

(a)　　This Agreement constitutes the legal, valid, and binding obligation of Globe and Somerville, enforceable against each of them in accordance with its terms. Upon the execution and delivery by Globe and Somerville of the Employment Agreement, the Escrow Agreement and any other documents that either Globe or Somerville is required to execute and deliver in connection with or in furtherance of the Contemplated Transactions, (collectively, the **"Globe's Closing Documents"**), the Globe's Closing Documents will constitute the legal, valid, and binding obligations of Globe and Somerville, enforceable against each of them, as applicable, in accordance with their respective terms. Globe has the absolute and unrestricted right, power, authority, and capacity to execute and deliver this Agreement and the Globe's Closing Documents and to perform its obligations under this Agreement and the Globe's Closing Documents. Somerville has all necessary legal capacity to enter into this Agreement and the Globe's Closing Documents to which Somerville is a party and to perform his obligations hereunder and thereunder.

(b)　　Neither the execution and delivery of this Agreement nor the consummation or performance of any of the Contemplated Transactions will, directly or indirectly (with or without notice or lapse of time) (i) contravene, conflict with, or result in a material violation or breach of (A) any provision of the Organizational Documents of Globe, (B) any Globe Contract of a material nature; (C) any Order to which Globe or Somerville, or any of the assets owned or used by the Globe, may be subject; or (D) any Governmental Authorization that is held by Globe or that otherwise relates to the business of, or any of the assets owned or used by, the Globe; (ii) cause Globe to become subject to, or to become liable for the payment of, any Tax; or (iii) result in the imposition or creation of any Encumbrance upon or with respect to any of the assets owned or used by Globe.

**4.3　CAPITALIZATION**

The authorized equity securities of Globe consist of 300 shares of common stock, par value $100.00 per share, of which 163 shares are issued and outstanding and constitute the Shares. Somerville is the record and beneficial owner and holder of the Shares, free and clear of all Encumbrances. There are no Contracts relating to the issuance, sale, or transfer of any equity securities or other securities of Globe.

**4.4　FINANCIAL STATEMENTS**

(a)　　Globe and Somerville have delivered to KFGI:

-20-

(i)    An unaudited balance sheet of Globe as at December 31, 2003 (*"Globe's Year-End Balance Sheet"*), and the related statements of income, changes in stockholders' equity, and cash flow for the fiscal year then ended, and

(ii)    An unaudited balance sheet of Globe as at June 30, 2004 (*"Globe's Interim Balance Sheet"*) and the related unaudited statements of income, changes in stockholders' equity, and cash flow for the 2 months then ended.

(b)    Such financial statements fairly present the financial condition and the results of operations, changes in stockholders' equity, and cash flow of Globe as at the respective dates of and for the periods referred to in such financial statements.

**4.5    BOOKS AND RECORDS**

The books of account, minute books, stock record books, and other Records of Globe, all of which have been made available to KFGI, are up to date, complete and correct in all material respects and in the possession of Globe.

**4.6    TITLE TO PROPERTIES; ENCUMBRANCES**

(a)    Schedule 4.6(a) of the Disclosure Schedule contains a complete and accurate list of all Real Property, Ground Lease Property, or other real property interests therein owned by Globe (the *"Globe Real Property"*).

(b)    Except for the Globe Real Property, which is discussed in Section 4.6(a), Globe owns all the Globe Assets (whether tangible or intangible) free and clear of all Encumbrances, except as shown on Schedule 4.6(b) of the Disclosure Schedule.

**4.7    SUFFICIENCY OF ASSETS**

The Globe Assets, the Somerville Intellectual Property and the Somerville Goodwill constitute all of the material assets, tangible and intangible, of any nature whatsoever, necessary to operate Globe's business in the manner presently operated by Globe.

**4.8    ACCOUNTS RECEIVABLE**

All accounts receivable of Globe that are reflected on Globe's Year-End Balance Sheet or Globe's Interim Balance Sheet or on the accounting records of Globe as of the Effective Date represent valid obligations arising from sales actually made or services actually performed in the Ordinary Course of Business. There is to Globe's and Somerville's Knowledge no contest, claim, or right of set-off, other than returns in the Ordinary Course of Business, under any Contract with any obligor of an accounts receivable relating to the amount or validity of such accounts receivable. Globe and Somerville have delivered to KFGI a complete and accurate list of all accounts receivable as of the date of Globe's Interim Balance Sheet, which list sets forth the aging of such accounts receivable.

-21-

**4.9    INVENTORY**

All inventory of Globe reflected in Globe's Year-End Balance Sheet or Globe's Interim Balance Sheet, consists of a quality and quantity usable and salable in the Ordinary Course of Business other than such portion of inventory which is either (i) reserved against in Globe's Year-End Balance Sheet or Globe's Interim Balance Sheet as potentially unsalable or (ii) does not represent an amount which would have a material adverse effect on the financial condition of Globe.

**4.10    NO UNDISCLOSED LIABILITIES**

Except as set forth in Schedule 4.10 of the Disclosure Schedule, Globe has no liabilities or obligations of any material nature which are required to be reflected on Globe's financial statements (whether known or unknown and whether absolute, accrued, contingent, or otherwise) in order to fairly present its financial condition, except for liabilities or obligations reflected in Globe's Year-End Balance Sheet or Globe's Interim Balance Sheet and liabilities incurred in the Ordinary Course of Business since the respective dates thereof.

**4.11    TAXES**

(a)    Globe has filed or caused to be filed (on a timely basis since January 1, 2001) all Tax Returns that are or were required to be filed by or with respect to Globe, pursuant to applicable Legal Requirements. Globe and Somerville have delivered to KFGI copies of all such Tax Returns. Globe has paid all Taxes that have or may have become due pursuant to those Tax Returns, except such Taxes, if any, as are being contested in good faith.

(b)    All Tax Returns filed by Globe are true, correct, and complete in all material respects.

**4.12    NO MATERIAL ADVERSE CHANGE**

Since the date of Globe's Year-End Balance Sheet, there has not been any material adverse change in the business, operations, properties, prospects, assets, or condition of Globe, and to the knowledge of Globe and Somerville no event has occurred or circumstance exists that may be reasonably foreseen by a prudent person as likely to result in such a material adverse change.

**4.13    EMPLOYEE BENEFITS**

(a)    As used in this Section 4.13 and in Section 5.13, the following terms have the meanings set forth below.

*"Globe Plan"* means all Plans of which Globe is or was the Plan Sponsor, or to which Globe otherwise contributes or has contributed, or in which Globe otherwise participates

-22-

or has participated. All references to Plans are to Globe Plans unless the context requires otherwise.

*"PBGC"* means the Pension Benefit Guaranty Corporation, or any successor thereto.

*"Plan"* has the meaning given in ERISA § 3(3).

*"Plan Sponsor"* has the meaning given in ERISA § 3(16)(B).

(b)     Schedule 4.13(b) of the Disclosure Schedule contains a complete and accurate list of all Globe Plans.

(c)     Globe and Somerville have delivered to KFGI (i) all material documents that set forth the terms of the Globe Plans; (ii) all personnel, payroll, and employment manuals and policies; and (iii) all insurance policies purchased by or to provide benefits under the Globe Plan and presently in effect.

(d)     Except as set forth in Schedule 4.13(d) of the Disclosure Schedule:

    (i)     Globe has performed, in all material respects, all of its obligations under all Globe Plans. Globe has made appropriate entries in its financial records and statements for all obligations and liabilities under such Plans that have accrued but are not due.

    (ii)     Globe, with respect to all Globe Plans, is in full compliance, in all material respects, with ERISA, the IRC, and other applicable Laws.

    (iii)     No accumulated funding deficiency, whether or not waived, exists with respect to any Globe Plan.

    (iv)     Neither Globe nor Somerville has Knowledge of any facts or circumstances that may give rise to any liability of Somerville, Globe, or KFGI to the PBGC under Title IV of ERISA.

    (v)     The consummation of the Contemplated Transactions will not result in the payment, vesting, or acceleration of any benefit under any Globe Plan.

## 4.14   COMPLIANCE WITH LEGAL REQUIREMENTS AND GOVERNMENTAL AUTHORIZATIONS

Except as set forth in Schedule 4.14 of the Disclosure Schedule, (i) to Globe's and Somerville's Knowledge, Globe is in full compliance, in all material respects, with each Legal Requirement and Governmental Authorization that is applicable to it or to the conduct or operation of its business or the ownership or use of any of its assets; (ii) to Globe's and Somerville's Knowledge, no event has occurred or circumstance exists that (with or without notice or lapse of time) may constitute or result in a material violation by Globe of, or a material failure on the part of Globe to comply with, any Legal

-23-

Requirement or Governmental Authorization; and (iii) Globe has not received any notice or other communication (whether oral or written) from any Governmental Body or any other Person regarding any actual, alleged, possible, or potential violation of, or failure to comply with, any Legal Requirement or Governmental Authorization,

**4.15    LEGAL PROCEEDINGS; ORDERS**

(a)    Except as set forth in Schedule 4.15 of the Disclosure Schedule, there is no Proceeding pending or, to the Knowledge of Globe or Somerville, Threatened by or against Globe or Somerville (i) that relates to or may materially affect the Globe Assets, the Somerville Intellectual Property or the Somerville Goodwill; or (ii) that challenges, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the Contemplated Transactions.

(b)    Except as set forth in Schedule 4.15 of the Disclosure Schedule, there is no Order having specific reference to Globe to which Globe, or any of the assets owned or used by Globe, is subject.

**4.16    ABSENCE OF CERTAIN CHANGES AND EVENTS**

Except as set forth in Schedule 4.16 of the Disclosure Schedule, since the date of Globe's Year-End Balance Sheet, Globe has conducted its businesses only in the Ordinary Course of Business and there has not been any (i) change in Globe's authorized or issued capital stock; grant of any stock option or right to purchase shares of capital stock of Globe; issuance of any security convertible into such capital stock; grant of any registration rights; purchase, redemption, retirement, or other acquisition by Globe of any shares of any such capital stock; or declaration or payment of any dividend or other distribution or payment in respect of shares of capital stock; (ii) amendment to the Organizational Documents of Globe; (iii) payment or increase by Globe of any bonuses, salaries, or other compensation to any stockholder, director, officer, or employee or entry into any employment, severance, or similar Contract with any director, officer, or employee (except in the Ordinary Course of Business); (iv) damage to or destruction or loss of any Globe Asset or Somerville Asset, whether or not covered by insurance, materially and adversely affecting the properties, assets, business, financial condition, or prospects of Globe, taken as a whole; (v) sale (other than sales of inventory in the Ordinary Course of Business), lease, or other disposition (other than dispositions in the Ordinary Course of Business of assets no longer needed or useful in the business which have become obsolete, depleted or worn out) of any Globe Asset or Somerville Asset or property of Globe or mortgage, pledge, or imposition of any lien or other encumbrance on any Globe Asset or Somerville Asset; (vi) transaction between Globe and any stockholder, officer or director of Globe or any Related Person of any of them of an amount or value in excess of $10,000; or (vii) agreement, whether oral or written, by Globe to do any of the foregoing.

-24-

**4.17    CONTRACTS; NO DEFAULTS**

(a)    Schedule 4.17(a) of the Disclosure Schedule contains a complete and accurate list, and Globe and Somerville have delivered to KFGI true and complete copies, of (i) each executory Globe Contract that involves the performance of services or delivery of goods or materials by or to Globe of an amount or value in excess of $10,000; (ii) each executory licensing agreement or other Globe Contract with respect to patents, trademarks, copyrights, or other intellectual property, including agreements with current or former employees, consultants, or contractors regarding the appropriation or the non-disclosure of any of Globe's Intellectual Property Assets; (iii) each executory Globe Contract that commits Globe to make a capital expenditure, or incur a liability, either direct or contingent, in excess of $10,000; and (iv) each amendment, supplement, and modification (whether oral or written) in respect of any of the foregoing.

(b)    To the Knowledge of Globe and Somerville, each Contract identified in Schedule 4.17(a) of the Disclosure Schedule is in full force and effect and is valid and enforceable in accordance with its terms.

(c)    Except as set forth in Schedule 4.17(c) of the Disclosure Schedule (i) Globe is in full compliance with all material terms and requirements of each material Globe Contract; (ii) no event has occurred that gives Globe or any other Person the right to declare a default or exercise any remedy under, or to accelerate the maturity or performance of, or to cancel, terminate, or modify, any material Globe Contract; and (iii) Globe has not given to or received from any other Person any notice or other communication (whether oral or written) regarding any actual, alleged, possible, or potential violation or breach of, or default under, any material Globe Contract.

**4.18    INSURANCE**

Globe and Somerville have delivered to KFGI a true and complete list of all policies of insurance to which Globe is a party or under which Globe, or any director of Globe, is or has been covered at any time since January 1, 2003.

**4.19    ENVIRONMENTAL MATTERS**

Except as set forth in Schedule 4.19 of the Disclosure Schedule:

(a)    To the knowledge of Globe or Somerville, Globe is in full compliance, in all material respects, with all applicable Environmental Laws.

(b)    There are no pending or, to the Knowledge of Globe or Somerville, Threatened claims, Encumbrances, or Environmental, Health, and Safety Liabilities arising under or pursuant to a violation by Globe of any Environmental Law (during the period from 1987 through the Closing Date), with respect to or affecting any of

-25-

Globe's Facilities or any other properties and assets (whether real, personal, or mixed) in which Globe has an interest.

(c)     Neither Globe nor Somerville has Knowledge of, nor have Globe or Somerville received, any citation, directive, inquiry, notice, Order, summons, warning, or other communication that relates to Hazardous Activity, Hazardous Materials, or any alleged, actual, or potential violation or failure to comply with any Environmental Law, or of any alleged, actual, or potential obligation to undertake or bear the cost of any Environmental, Health, and Safety Liabilities (during the period from 1987 through the Closing Date) with respect to any of Globe's Facilities or any other properties or assets (whether real, personal, or mixed) in which Globe has an interest which has not been fully addressed and/or remedied.

(d)     Globe and Somerville are not aware of there being any Hazardous Materials present on or in the Environment at Globe's Facilities except for such materials used in the Ordinary Course of Business and in compliance with law. Neither Globe nor Somerville (during the period from 1987 through the Closing Date) has conducted, or permitted to be conducted, any Hazardous Activity at Globe's Facilities or any other properties or Globe Assets (whether real, personal, or mixed), except in full compliance with all applicable Environmental Laws.

(e)     Globe and Somerville have delivered to KFGI true and complete copies of any reports, studies, analyses, tests, or monitoring possessed or initiated since 1999 by Globe or Somerville pertaining to Hazardous Materials or Hazardous Activities in, on, or under Globe's Facilities, or concerning compliance by Somerville or Globe.

**4.20    EMPLOYEES**

(a)     Schedule 4.20 of the Disclosure Schedule contains a complete and accurate list of each employee of Globe. With respect to each employee, Globe and Somerville have delivered to KFGI each employee's job title; current compensation; accrued vacation; and service credited for purposes of vesting and eligibility to participate under Globe's employee benefit plans.

(b)     To the Knowledge of Globe or Somerville, no director, officer, or other key employee of Globe intends to terminate his employment with Globe.

**4.21    LABOR RELATIONS; COMPLIANCE**

Globe is not a party to any collective bargaining or other labor Contract.

**4.22    INTELLECTUAL PROPERTY**

(a)     Intellectual Property Assets—The term *"Globe's Intellectual Property Assets"* means all of the intellectual property owned, used and/or licensed by Globe (other

-26-

than the Somerville Intellectual Property) that relates to Globe and its business, including:

    (i)    the names "Globe Rubber Works, Inc.," "Globe Rubber Works," and "Globe Rubber" together with all fictional business names, trading names, registered and unregistered trademarks, service marks, and applications presently in use by Globe (collectively, *"Globe Marks"*);

    (ii)    all patents, patent applications, and inventions and discoveries that may be patentable (collectively, *"Globe Patents"*);

    (iii)    all copyrights in both published works and unpublished works (collectively, *"Globe Copyrights"*);

    (iv)    all rights in mask works (collectively, *"Globe Rights in Mask Works"*);

    (v)    all know-how, trade secrets, confidential information, customer lists, software, technical information, data, process technology, plans, drawings, and blue prints (collectively, *"Globe Trade Secrets"*); and

    (vi)    all rights in internet web sites and internet domain names presently used by Globe, including, without limitation, globerubberworks.com (collectively *"Globe Net Names"*).

(b)    <u>Agreements</u>—Schedule 4.22(b) of the Disclosure Schedule contains a complete and accurate list of all Globe Contracts relating to Globe's Intellectual Property Assets to which Globe or Somerville is a party or by which Globe or Somerville is bound. There are no pending or, to the Knowledge of Globe or Somerville, Threatened disputes or disagreements with respect to any such Globe Contracts.

(c)    <u>Ownership</u>

    (i)    To the knowledge of Somerville and Globe, Globe is the owner of all right, title, and interest in and to each of Globe's Intellectual Property Assets, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse claims.

    (ii)    All current employees of Globe who are materially involved in the development of Globe's Intellectual Property have executed written Contracts with Globe that assign to Globe all rights to any inventions, improvements, discoveries, or information relating to the business of Globe.

(d)    <u>Patents</u>

    (i)    Schedule 4.22(d) of the Disclosure Schedule contains a complete and accurate list of all Globe Patents.

-27-

      (ii)    To the Knowledge of Globe or Somerville, (A) no Globe Patent has been challenged or threatened in any way, and (B) none of the products manufactured and sold, nor any process or know-how used, by Globe infringes or is alleged to infringe any patent or other proprietary right of any other Person.

(e)    Trademarks

      (i)    Schedule 4.22(e) of Disclosure Schedule contains a complete and accurate list of all Globe Marks.

      (ii)    To the Knowledge of Globe or Somerville, (A) no Globe Mark has been challenged or threatened in any way and (B) none of the Globe Marks used by Globe infringes or is alleged to infringe any trade name, trademark, or service mark of any other Person.

(f)    Copyrights

      (i)    Schedule 4.22(f) of the Disclosure Schedule contains a complete and accurate list of all Globe Copyrights.

      (ii)    To the Knowledge of Globe or Somerville, (A) no Globe Copyright has been challenged or threatened in any way, and (B) none of the subject matter of any of the Globe Copyrights infringes or is alleged to infringe any copyright of any third party or is a derivative work based on the work of any other Person (other than in respect of the Knowledge or memory of Somerville, which shall be addressed pursuant to Section 8.10).

(g)    Trade Secrets

      (i)    With respect to each Globe Trade Secret, the documentation relating to such Globe Trade Secret is current, accurate, and sufficient in detail and content to identify and explain it and to allow its full and proper use without reliance on the knowledge or memory of any individual (other than in respect of the Knowledge or memory of Somerville, which shall be addressed pursuant to Section 8.10).

      (ii)    Globe and Somerville have taken reasonable precautions to protect the secrecy, confidentiality, and value of their Globe Trade Secrets.

(h)    Net Names

      (i)    Schedule 4.22(h) of the Disclosure Schedule contains a complete and accurate list of all Globe Net Names.

      (ii)    All Globe Net Names have been registered in the name of Globe.

Dallas_1\3979467\7
41932-2 7/25/2004

(iii)   No Globe Net Name has been or is now involved in any dispute, opposition, invalidation or cancellation Proceeding and, to Globe's or Somerville's Knowledge, no such action is threatened with respect to any Globe Net Name.

## 4.23   RELATIONSHIPS WITH RELATED PERSONS

Neither Globe nor Somerville nor any Related Person of either of them has any interest in any property (whether real, personal, or mixed and whether tangible or intangible) used in or pertaining to Globe's businesses other then Somerville Intellectual Properties and Somerville Goodwill.  Neither Globe nor Somerville nor any Related Person of either of them has an equity interest or any other financial or profit interest in a Person that has (i) material business dealings or a material financial interest in any transaction with Globe, or (ii) engaged in competition with Globe with respect to any line of the products or services of Globe (a *"Competing Business"*) in any market presently served by Globe. Except as set forth in Schedule 4.23 of the Disclosure Schedule, neither Globe nor Somerville nor any Related Person of either of them is a party to any Contract with, or has any claim or right against, Globe.

## 4.24   NECESSARY APPROVALS

Globe and Somerville have made all filings required by Legal Requirements to be made by either of them in order to consummate the Contemplated Transactions.

## 4.25   BROKERS OR FINDERS

Neither Globe nor any of its agents have incurred any obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement.

## 4.26   CHANGE OF NAME

Simultaneously with the Closing, Globe has amended its Organizational Documents and has made all filings required by Legal Requirements to be made by it in order to change its name to Solar Construction, Inc.

## 4.27   REAL ESTATE RELATED REPRESENTATIONS

(a)   Compliance With Laws. To the best of Globe's and Somerville's Knowledge, and except as set forth on Schedule 4.27 of the Disclosure Schedule, Globe's Facilities are not currently subject to (i) any existing, pending or threatened investigation or inquiry by any governmental authority or (ii) any remedial obligations under any Legal Requirement.    Neither Globe nor Somerville nor either of their Representatives have received any notice from any municipal, state, federal or other governmental authority of any violation of any Legal Requirement issued in respect of Globe's Facilities which has not been heretofore corrected, and to their Knowledge no such violation exists.

-29-

(b)    <u>Zoning</u>.  Except as disclosed to KFGI in writing, there are no pending or threatened requests or applications by Globe, or to Globe or Somerville's Knowledge any proceedings brought by any Person to alter or restrict the zoning or other use restrictions applicable to Globe's Facilities.  To the best of Globe's and Somerville's Knowledge, there is no judicial or administrative action or any action by adjacent landowners which would adversely affect, prevent, or limit the use of the Land as currently zoned and platted.

(c)    <u>Taxes</u>.  Globe has paid all property taxes and property assessments due and payable for Globe's Facilities and on the Closing Date Globe's Facilities will be subject to no liens for unpaid taxes or assessments other than the lien for real estate taxes and property assessments for the year in which Closing occurs.  Globe has not retained any person or firm to file a notice of protest against, or to commence any action to review, any real property tax assessment against Globe's Facilities or any portion thereof and, no such action has been taken by or on behalf of Globe.

(d)    <u>Assessments</u>.  There are no unpaid assessments or other charges for utilities, roads (or the widening of roads) or other public improvements against Globe's Facilities and, to the best of Globe's and Somerville's Knowledge, no such assessments have been proposed.  All sewer, water, gas, electric, telephone and drainage lines and facilities required by law for the normal operation of Globe's Facilities are fully installed, currently function satisfactorily and service Globe's Facilities for its current use except as disclosed on Schedule 4.27 of the Disclosure Schedule, and there are no unpaid assessments or charges for the installation of such utilities or for making connection thereto that have not been fully paid.

(e)    <u>Condemnation</u>.  Globe has not received any notice of any condemnation or similar proceedings having been instituted or threatened against Globe's Facilities or any part thereof, nor is any such proceeding threatened or contemplated to Globe's or Somerville's or their respective Representative's knowledge.

(f)    <u>Submission Items</u>.  All items delivered to KFGI under Section 8.15, are to the Knowledge of Globe or Somerville true, correct and complete in all respects.

(g)    <u>Independent Unit</u>.  Globe's Facilities do not rely on any facilities located on any property that is not part of Globe's Facilities to fulfill any municipal or other governmental requirement or to obtain essential systems or services (such as, without limitation, drainage facilities and retention ponds) for which Globe does not have a valid easement.  Likewise, no other building or property that is not part of Globe's Facilities relies on, to the Knowledge of Globe or Somerville, Globe's Facilities or its facilities to fulfill any municipal or other governmental requirement or to obtain essential systems or services without having a valid easement for same.

-30-

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF KFGI

The Disclosure Schedule is divided into schedules which are numbered to correspond to sections of this Agreement. Notwithstanding anything to the contrary contained in this Agreement, any matter which is disclosed by KFGI in any particular schedule of the Disclosure Schedule, or Exhibits thereto, relating to this ARTICLE 5 shall be deemed to be disclosed in respect of all sections of this ARTICLE 5 to which such disclosure may relate and to qualify all of the representations and warranties of KFGI contained in this Agreement that are relevant thereto. Subject to the qualifications, exclusions, limitations and disclosures set forth in the Disclosure Schedule in regard to this ARTICLE 5, KFGI represents and warrants to Globe and Somerville as follows:

5.1    ORGANIZATION AND GOOD STANDING

(a)    KFGI is a limited partnership duly organized and validly existing in good standing under the laws of the State of Texas, with full power and authority to conduct its business as it is now being conducted, to own or use the properties and assets that it purports to own or use, and to perform all its obligations under the KFGI Contracts. KFGI is duly qualified to do business as a foreign limited partnership and is in good standing under the laws of each state or other jurisdiction in which either the ownership or use of the properties owned or used by it, or the nature of the activities conducted by it, requires such qualification.

(b)    KFGI has delivered to Globe and Somerville copies of the Organizational Documents of KFGI, as currently in effect.

5.2    AUTHORITY; NO CONFLICT

(a)    This Agreement constitutes the legal, valid, and binding obligation of KFGI, enforceable against KFGI in accordance with its terms. Upon the execution and delivery by KFGI of the Employment Agreement, the Deferral Promissory Note, the KFGI Promissory Note, the Tax Payment Promissory Note, the Escrow Agreement and any other documents that KFGI is required to execute and deliver in connection with or in furtherance of the Contemplated Transactions, (collectively, the *"KFGI's Closing Documents"*), the KFGI's Closing Documents will constitute the legal, valid, and binding obligations of KFGI, enforceable against KFGI in accordance with their respective terms. KFGI has the absolute and unrestricted right, power, authority, and capacity to execute and deliver this Agreement and the KFGI's Closing Documents and to perform its obligations under this Agreement and the KFGI's Closing Documents.

(b)    Neither the execution and delivery of this Agreement nor the consummation or performance of any of the Contemplated Transactions will, directly or indirectly (with or without notice or lapse of time) (i) contravene, conflict with, or result in a material violation or breach of (A) any provision of the Organizational Documents of KFGI, (B) any KFGI Contract ; (C) any Order to which KFGI, or

-31-

any of the assets owned or used by KFGI, may be subject; or (D) any Governmental Authorization that is held by KFGI or that otherwise relates to the business of, or any of the assets owned or used by, KFGI; (ii) cause KFGI to become subject to, or to become liable for the payment of, any Tax; or (iii) result in the imposition or creation of any Encumbrance upon or with respect to any of the assets owned or used by KFGI.

## 5.3    CAPITALIZATION

Immediately following Closing, the outstanding partnership interests of KFGI will be owned by its general and limited partners free and clear of all encumbrances. There are no Contracts relating to the issuance, sale, or transfer of any partnership interests or other securities of KFGI . A true and complete copy of the limited partnership agreement of KFGI, as in effect as of the date hereof and identifying all partners, is attached hereto as Schedule 5.3 of the Disclosure Schedule.

## 5.4    FINANCIAL STATEMENTS

(a)    KFGI has delivered to Globe and Somerville:

(i)    An unaudited balance sheet of KFGI as at December 31, 2003 (*"KFGI's Year-End Balance Sheet"*), and the related statements of income, changes in owners' equity, and cash flow for the fiscal year then ended, and

(ii)    an unaudited balance sheet of KFGI as at June 30, 2004 (*"KFGI's Interim Balance Sheet"*) and the related unaudited statements of income, changes in owners' equity, and cash flow for the 2 months then ended.

(b)    Such financial statements fairly present the financial condition and the results of operations, changes in stockholders' equity, and cash flow of KFGI as at the respective dates of and for the periods referred to in such financial statements.

## 5.5    BOOKS AND RECORDS

The books of account, minute books, stock record books, and other Records of KFGI, all of which have been made available to Globe and Somerville, are up to date, complete and correct in all material respects and in the possession of KFGI.

## 5.6    TITLE TO PROPERTIES; ENCUMBRANCES

Schedule 5.6(a) of the Disclosure Schedule contains a complete and accurate list of all Real Property, Ground Lease Property, or other interests therein owned by KFGI. KFGI owns all material properties and assets reflected in KFGI's Year-End Balance Sheet and KFGI's Interim Balance Sheet free and clear of all Encumbrances, except as shown on Schedule 5.6(b) of the Disclosure Schedule.

**5.7    SUFFICIENCY OF ASSETS**

The building, plants, structures, and equipment, Intellectual Properties and other tangible and intangible assets of KFGI constitute all of the material assets, tangible and intangible, of any nature whatsoever, necessary for the continued conduct of KFGI's businesses after the Closing in substantially the same manner as conducted prior to the Closing.

**5.8    ACCOUNTS RECEIVABLE**

All accounts receivable of KFGI that are reflected on KFGI's Year-End Balance Sheet or KFGI's Interim Balance Sheet or on the accounting records of KFGI as of the Closing Date represent valid obligations arising from sales actually made or services actually performed in the Ordinary Course of Business. There is, to KFGI's Knowledge, no contest, claim, or right of set-off, other than returns in the Ordinary Course of Business, under any Contract with any obligor of an accounts receivable relating to the amount or validity of such accounts receivable. KFGI has delivered to Globe and Somerville a complete and accurate list of all accounts receivable as of the date of KFGI's Interim Balance Sheet, which list sets forth the aging of such accounts receivable.

**5.9    INVENTORY**

All inventory of KFGI reflected in KFGI's Year-End Balance Sheet or KFGI's Interim Balance Sheet, consists of a quality and quantity usable and salable in the Ordinary Course of Business other than such portion of inventory which is either (i) reserved against in KFGI's Year-End Balance Sheet or KFGI's Interim Balance Sheet as potentially unsalable or (ii) does not represent an amount which would have a material adverse effect on the financial condition of KFGI.

**5.10    NO UNDISCLOSED LIABILITIES**

Except as set forth in Schedule 5.10 of the Disclosure Schedule, KFGI has no liabilities or obligations of any material nature which are required to be reflected on KFGI's financial statements (whether known or unknown and whether absolute, accrued, contingent, or otherwise) in order to fairly present its financial condition except for liabilities or obligations reflected in KFGI's Year-End Balance Sheet or KFGI's Interim Balance Sheet and liabilities incurred in the Ordinary Course of Business since the respective dates thereof.

**5.11    TAXES**

(a)    KFGI has filed or caused to be filed (on a timely basis since January 1, 2001) all Tax Returns that are or were required to be filed by or with respect to KFGI, pursuant to applicable Legal Requirements. KFGI has delivered to Globe and Somerville copies of all such Tax Returns. KFGI has paid all Taxes that have or may have become due pursuant to those Tax Returns, except such Taxes, if any, as are being contested in good faith.

-33-

(b)     All Tax Returns filed by KFGI are true, correct, and complete in all material respects.

## 5.12   NO MATERIAL ADVERSE CHANGE

Since the date of KFGI's Year-End Balance Sheet, there has not been any material adverse change in the business, operations, properties, prospects, assets, or condition of KFGI, and to knowledge of KFGI no event has occurred or circumstance exists that may be reasonably foreseen by a prudent person as likely to result in such a material adverse change.

## 5.13   EMPLOYEE BENEFITS

(a)     As used in this Section 5.13, *"KFGI Plan"* means all Plans of which KFGI is or was the Plan Sponsor, or to which KFGI otherwise contributes or has contributed, or in which KFGI otherwise participates or has participated.   All references to Plans are to KFGI Plans unless the context requires otherwise.

(b)     Schedule 5.13(b) of the Disclosure Schedule contains a complete and accurate list of all KFGI Plans

(c)     KFGI has delivered to Globe and Somerville (i) all material documents that set forth the terms of the KFGI Plans, (ii) all personnel, payroll, and employment manuals and policies; and (iii) all insurance policies purchased by or to provide benefits under the KFGI Plan and presently in effect.

(d)     Except as set forth in Schedule 5.13(d) of the Disclosure Schedule:

    (i)     KFGI has performed, in all material respects, all of its obligations under all KFGI Plans. KFGI has made appropriate entries in its financial records and statements for all obligations and liabilities under such Plans that have accrued but are not due.

    (ii)    KFGI, with respect to all KFGI Plans is in full compliance, in all material respects, with ERISA, the IRC, and other applicable Laws.

    (iii)   No accumulated funding deficiency, whether or not waived, exists with respect to any KFGI Plan.

    (iv)    KFGI has no Knowledge of any facts or circumstances that may give rise to any liability of KFGI, Globe, or Somerville to the PBGC under Title IV of ERISA.

    (v)     The consummation of the Contemplated Transactions will not result in the payment, vesting, or acceleration of any benefit under any KFGI Plan.

-34-

**5.14 COMPLIANCE WITH LEGAL REQUIREMENTS AND GOVERNMENTAL AUTHORIZATIONS**

Except as set forth in Schedule 5.14 of the Disclosure Schedule, (i) to KFGI's knowledge, KFGI is in full compliance, in all material respects, with each Legal Requirement and Governmental Authorization that is applicable to it or to the conduct or operation of its business or the ownership or use of any of its assets; (ii) to KFGI's knowledge, no event has occurred or circumstance exists that (with or without notice or lapse of time) may constitute or result in a material violation by KFGI of, or a material failure on the part of KFGI to comply with, any Legal Requirement or Governmental Authorization, (iii) KFGI has not received any notice or other communication (whether oral or written) from any Governmental Body or any other Person regarding any actual, alleged, possible, or potential violation of, or failure to comply with, any Legal Requirement or Governmental Authorization,

**5.15 LEGAL PROCEEDINGS; ORDERS**

(a) Except as set forth in Schedule 5.15(a) of the Disclosure Schedule, there is no Proceeding pending or, to KFGI's Knowledge, Threatened against KFGI (i) that relates to or may materially affect the business of, or any of the assets owned or used by, KFGI; or (ii) that challenges, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, any of the Contemplated Transactions.

(b) Except as set forth in Schedule 5.15(b) of the Disclosure Schedule, there is no Order having specific reference to KFGI to which KFGI, or any of the assets owned or used by KFGI, is subject.

**5.16 ABSENCE OF CERTAIN CHANGES AND EVENTS**

Except as set forth in Schedule 5.16 of the Disclosure Schedule, since the date of KFGI's Year-End Balance Sheet, KFGI has conducted its businesses only in the Ordinary Course of Business and there has not been any (i) change in KFGI's authorized or issued partnership interests; grant of any option or right to purchase partnership interests of KFGI; issuance of any security convertible into such partnership interests; grant of any registration rights; purchase, redemption, retirement, or other acquisition by KFGI of any such partnership interests; or declaration or payment of any distribution or payment in respect of the partnership interests; (ii) amendment to the Organizational Documents of KFGI; (iii) payment or increase by KFGI of any bonuses, salaries, or other compensation to any stockholder, director, officer, or employee or entry into any employment, severance, or similar Contract with any director, officer, or employee (except in the Ordinary Course of Business); (iv) damage to or destruction or loss of any asset or property of KFGI, whether or not covered by insurance, materially and adversely affecting the properties, assets, business, financial condition, or prospects of KFGI, taken as a whole; (v) sale (other than sales of inventory in the Ordinary Course of Business), lease, or other disposition (other than dispositions in the Ordinary Course of Business of

-35-

assets no longer needed or useful in the business which have become obsolete, depleted or worn out) of any asset or property of KFGI or mortgage, pledge, or imposition of any lien or other encumbrance on any material asset or property of KFGI; (vi) transaction between KFGI and any stockholder, officer or director of KFGI or any Related Person of any of them of an amount in excess of $10,000; or (vii) agreement, whether oral or written, by KFGI to do any of the foregoing.

### 5.17    CONTRACTS; NO DEFAULTS

(a)    Schedule 5.17(a) of the Disclosure Schedule contains a complete and accurate list, and KFGI has delivered to Globe and Somerville true and complete copies, of (i) each executory KFGI Contract that involves the performance of services or delivery of goods or materials by or to KFGI of an amount or value in excess of $10,000; (ii) each executory licensing agreement or other KFGI Contract with respect to patents, trademarks, copyrights, or other intellectual property, including agreements with current or former employees, consultants, or contractors regarding the appropriation or the non-disclosure of any of KFGI's Intellectual Property Assets; (iii) each executory KFGI Contract that commits KFGI to make a capital expenditure, or incur a liability, either direct or contingent, in excess of $10,000; and (iv) each amendment, supplement, and modification (whether oral or written) in respect of any of the foregoing.

(b)    To KFGI's Knowledge, each Contract identified in Schedule 5.17(a) of the Disclosure Schedule is in full force and effect and is valid and enforceable in accordance with its terms.

(c)    Except as set forth in Schedule 5.17(c) of the Disclosure Schedule (i) KFGI is in full compliance with all material terms and requirements of each material KFGI Contract; (ii) no event has occurred that gives KFGI or any other Person the right to declare a default or exercise any remedy under, or to accelerate the maturity or performance of, or to cancel, terminate, or modify, any material KFGI Contract; and (iii) KFGI has not given to or received from any other Person any notice or other communication (whether oral or written) regarding any actual, alleged, possible, or potential violation or breach of, or default under, any material KFGI Contract.

### 5.18    INSURANCE

KFGI has delivered to Globe and Somerville a true and complete list of all policies of insurance to which KFGI is a party or under which KFGI, or any director of KFGI, is or has been covered at any time since January 1, 2003.

### 5.19    ENVIRONMENTAL MATTERS

Except as set forth in Schedule 5.19 of the Disclosure Schedule:

(a)     KFGI is in full compliance, in all material respects, with all applicable Environmental Laws.

(b)     There are no pending or, to the Knowledge of KFGI, Threatened claims, Encumbrances, or other restrictions of any nature, resulting from any Environmental, Health, and Safety Liabilities or arising under or pursuant to any Environmental Law (during KFGI's ownership), with respect to or affecting any of KFGI's Facilities or any other properties and assets (whether real, personal, or mixed) in which KFGI has an interest.

(c)     KFGI does not have Knowledge of, nor has KFGI received, any citation, directive, inquiry, notice, Order, summons, warning, or other communication that relates to Hazardous Activity, Hazardous Materials, or any alleged, actual, or potential violation or failure to comply with any Environmental Law, or of any alleged, actual, or potential obligation to undertake or bear the cost of any Environmental, Health, and Safety Liabilities (during KFGI's ownership) with respect to any of KFGI's Facilities or any other properties or assets (whether real, personal, or mixed) in which KFGI has an interest.

(d)     KFGI is not aware of there being any Hazardous Materials present on or in the Environment at KFGI's Facilities except for such materials used in the Ordinary Course of Business and in compliance with law. KFGI has not (during KFGI's ownership) conducted, or permitted to be conducted, any Hazardous Activity at KFGI's Facilities or any other properties or assets (whether real, personal, or mixed) in which KFGI has an interest, except in full compliance with all applicable Environmental Laws.

(e)     KFGI has delivered to Globe and Somerville true and complete copies of any reports, studies, analyses, tests, or monitoring possessed or initiated since 1999 by KFGI pertaining to Hazardous Materials or Hazardous Activities in, on, or under KFGI's Facilities, or concerning compliance by KFGI.

**5.20    EMPLOYEES**

(a)     Schedule 5.20 of the Disclosure Schedule contains a complete and accurate list of each employee of KFGI. With respect to each employee, KFGI has delivered to Globe and Somerville each employee's job title; current compensation; accrued vacation; and service credited for purposes of vesting and eligibility to participate under KFGI's employee benefit plans.

(b)     To KFGI's Knowledge, no director, officer, or other key employee of KFGI intends to terminate his employment with KFGI.

**5.21    LABOR RELATIONS; COMPLIANCE**

KFGI is not a party to any collective bargaining or other labor Contract.

-37-

**5.22    INTELLECTUAL PROPERTY**

(a)    <u>Intellectual Property Assets</u>—The term *"KFGI's Intellectual Property Assets"* means all of the intellectual property owned, used and/or licensed by KFGI that relates to KFGI and its business, including:

    (i)    the name "Kalm-Forsythe Global Innovations, Ltd.," "KFGI" and all fictional business names, trading names, registered and unregistered trademarks, service marks, and applications (collectively, *"KFGI Marks"*);

    (ii)    all patents, patent applications, and inventions and discoveries that may be patentable (collectively, *"KFGI Patents"*);

    (iii)    all copyrights in both published works and unpublished works (collectively, *"KFGI Copyrights"*);

    (iv)    all rights in mask works (collectively, *"KFGI Rights in Mask Works"*); and

    (v)    all know-how, trade secrets, confidential information, customer lists, software, technical information, data, process technology, plans, drawings, and blue prints (collectively, *"KFGI Trade Secrets"*).

(b)    <u>Agreements</u>—Schedule 5.22(b) of the Disclosure Schedule contains a complete and accurate list of all KFGI Contracts relating to KFGI's Intellectual Property Assets to which KFGI is a party or by which KFGI is bound. There are no pending or, to KFGI's Knowledge, Threatened disputes or disagreements with respect to any such KFGI Contracts.

(c)    <u>Ownership</u>

    (i)    KFGI is the owner of all right, title, and interest in and to each of KFGI's Intellectual Property Assets, free and clear of all liens, security interests, charges, encumbrances, equities, and other adverse claims.

    (ii)    All current employees of KFGI have executed written Contracts with KFGI that assign to KFGI all rights to any inventions, improvements, discoveries, or information relating to the business of KFGI.

(d)    <u>Patents</u>

    (i)    Schedule 5.22(d) of the Disclosure Schedule contains a complete and accurate list of all KFGI Patents.

    (ii)    To KFGI's Knowledge, (A) no KFGI Patent has been challenged or threatened in any way, and (B) none of the products manufactured and

-38-

sold, nor any process or know-how used, by KFGI infringes or is alleged
to infringe any patent or other proprietary right of any other Person.

(e)    Trademarks

(i)    Schedule 5.22(e) of Disclosure Schedule contains a complete and accurate
list of all KFGI Marks.

(ii)    To KFGI's Knowledge, (A) no KFGI Mark has been challenged or
threatened in any way and (B) none of the KFGI Marks used by KFGI
infringes or is alleged to infringe any trade name, trademark, or service
mark of any other Person.

(f)    Copyrights

(i)    Schedule 5.22(f) of the Disclosure Schedule contains a complete and
accurate list of all KFGI Copyrights.

(ii)    To KFGI's Knowledge, (A) no KFGI Copyright has been challenged or
threatened in any way, and (B) none of the subject matter of any of the
KFGI Copyrights infringes or is alleged to infringe any copyright of any
third party or is a derivative work based on the work of any other Person.

(g)    Trade Secrets

(i)    With respect to each KFGI Trade Secret, the documentation relating to
such KFGI Trade Secret is current, accurate, and sufficient in detail and
content to identify and explain it and to allow its full and proper use
without reliance on the knowledge or memory of any individual.

(ii)    KFGI has taken reasonable precautions to protect the secrecy,
confidentiality, and value of the KFGI Trade Secrets.

**5.23    RELATIONSHIPS WITH RELATED PERSONS**

Neither KFGI nor any Related Person of KFGI has any interest in any property (whether
real, personal, or mixed and whether tangible or intangible) used in or pertaining to
KFGI's businesses.  Neither KFGI nor any Related Person of KFGI has an equity interest
or any other financial or profit interest in a Person that has (i) material business dealings
or a material financial interest in any transaction with KFGI, or (ii) engaged in
competition with KFGI with respect to any line of products or services of KFGI (a
***"Competing Business"***) in any market presently served by KFGI. Except as set forth in
Schedule 5.23 of the Disclosure Schedule, neither KFGI nor any Related Person of KFGI
is a party to any Contract with, or has any claim or right against, KFGI.

### 5.24   NECESSARY APPROVALS

KFGI has made all filings required by Legal Requirements to be made by it in order to consummate the Contemplated Transactions.

### 5.25   BROKERS OR FINDERS

KFGI and its agents have incurred no obligation or liability, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment in connection with this Agreement.

**ARTICLE 6**
**TERMINATION**

### 6.1   TERMINATION EVENTS

This Agreement may be terminated:

(a)    by either KFGI, on the one hand, or Globe or Somerville, on the other hand, if a material Breach of any provision of this Agreement has been committed by the other party and such Breach has not been waived; or

(b)    by mutual consent of the parties hereto.

### 6.2   EFFECT OF TERMINATION

Each party's right of termination under Section 6.1 is in addition to any other rights it may have under this Agreement or otherwise, and the exercise of a right of termination will not be an election of remedies.  If this Agreement is terminated pursuant to Section 6.1, all further obligations of the parties under this Agreement will terminate, except that the obligations in this Section 6.2 and ARTICLE 9 and ARTICLE 10 will survive; *provided, however*, that if this Agreement is terminated by a party because of the Breach of the Agreement by the other party or because one or more of the conditions to the terminating party's obligations under this Agreement is not satisfied as a result of the other party's failure to comply with its obligations under this Agreement, the terminating party's right to pursue all legal remedies will survive such termination unimpaired.

**ARTICLE 7**
**INDEMNIFICATION; REMEDIES**

### 7.1   SURVIVAL; RIGHT TO INDEMNIFICATION NOT AFFECTED BY KNOWLEDGE

All representations, warranties, covenants, and obligations in this Agreement, the Disclosure Schedule and any certificates or documents delivered pursuant to this Agreement will survive the Closing as and to the extent provided herein.  The right to indemnification, payment of Damages or other remedy based on such representations, warranties, covenants, and obligations will not be affected by any investigation

-40-

conducted with respect to, or any Knowledge acquired (or capable of being acquired) at any time, whether before or after the execution and delivery of this Agreement, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant, or obligation. The waiver of any condition based on the accuracy of any representation or warranty, or on the performance of or compliance with any covenant or obligation, will not affect the right to indemnification, payment of Damages, or other remedy based on such representations, warranties, covenants, and obligations.

## 7.2    INDEMNIFICATION AND PAYMENT OF DAMAGES BY GLOBE OR SOMERVILLE

Subject to the limitations contained in this ARTICLE 7, Globe and Somerville, jointly and severally, will indemnify and hold harmless KFGI and its general partner, KalFor Solutions Group, LLC, (collectively, the *"KFGI Indemnitees"*) for, and will pay to the KFGI Indemnitees the amount of, any loss, liability, claim, damage (excluding incidental and consequential damages), or expense (including costs of investigation and defense and reasonable attorneys' fees), whether or not involving a third-party claim (collectively, *"Damages"*), arising, directly or indirectly, from or in connection with (a) any Breach of any representation or warranty made by Globe or Somerville in this Agreement, the Disclosure Schedule, or any certificates delivered by Globe or Somerville pursuant to this Agreement; or (b) any Breach by Globe or Somerville of any covenant or obligation of Globe or Somerville in this Agreement, the Disclosure Schedule, or any certificates delivered by Globe or Somerville pursuant to this Agreement; or (c) the issuance of unauthorized capital stock by Globe to the Globe Rubber Works, Inc. Profit Sharing 401(k) Plan for the benefit of the account of Somerville (d) any product shipped or manufactured by, or any services provided by, Globe prior to the Effective Date except to the extent the responsibility therefor is assumed by KFGI per Section 2.5(a) hereof.

## 7.3    INDEMNIFICATION AND PAYMENT OF DAMAGES BY KFGI

Subject to the limitations contained in this ARTICLE 7, KFGI and its affiliated entities will indemnify and hold harmless Globe and Somerville (collectively, the *"Globe Indemnitees"*) for, and will pay to the Globe Indemnitees the amount of, any Damages arising, directly or indirectly, from or in connection with (a) any Breach of any representation or warranty made by KFGI in this Agreement, the Disclosure Schedule, or any certificates delivered by KFGI pursuant to this Agreement; or (b) any Breach by KFGI of any covenant or obligation of KFGI in this Agreement, the Disclosure Schedule, or any certificates delivered by KFGI pursuant to this Agreement; or (c) the conduct of the business from and after the Effective Date, or (d) any challenge by the IRS or the Massachusetts Department of Revenue (DOR) regarding the relative dollar amounts allocated hereunder to the Globe Assets Purchase Price, the Somerville Goodwill Purchase Price or the Somerville Intellectual Property Purchase Price or any challenge by the IRS or the DOR to the valuations used in determining such allocations, or any disallowance of or curtailment of same, or any re-allocation of the amounts thereof or any restructuring or reclassification of such purchase prices, and any additional taxes, penalties, or interest charged to or payable by Globe or Somerville incident thereto, and all costs of defense of any audit or resulting Proceeding (including with out limitations

-41-

reasonable attorney fees, accounting fees, and costs of appraisers and expert witnesses and the like) (the *"Tax Structure Indemnity"*).

## 7.4    TIME LIMITATIONS

Neither Globe and Somerville, on the one hand, nor KFGI, on the other hand, will have any liability (for indemnification or otherwise) with respect to any representation or warranty other than those in Sections 4.6, 4.11 and 4.25 (in the case of Globe or Somerville) and Sections 5.6, 5.11 and 5.25 (in the case of KFGI) unless on or before the first anniversary date of the Closing, KFGI, on the one hand, or Globe or Somerville, on the other hand, as the case may be, notifies the other party of a claim specifying the factual basis of that claim in reasonable detail to the extent then known by the party asserting the claim for indemnification hereunder. A claim with respect to Sections 4.6, 4.11 and 4.25 (in the case of the Globe and Somerville) and Sections 5.6, 5.11 and 5.25 (in the case of KFGI), or a claim for indemnification or reimbursement in respect thereof must be asserted within 2 years of Closing. Any claim for indemnification not timely submitted in accordance with the requirements of this Agreement and the time frames of this Section shall be barred and deemed waived, excepting only claims for breach of Somerville's representations under Sections 4.6 or Somerville's obligations under Section 8.1 and KFGI's representations under Section 5.6 or KFGI's obligations under Section 7.3(d) in respect of the Tax Structure Indemnity, or KFGI's obligations under Section 8.8, which excepted claims may be brought at any time.

## 7.5    LIMITATIONS ON AMOUNT

Neither Globe and Somerville, on the one hand, nor KFGI, on the other hand, will have any liability (for indemnification or otherwise) under Sections 7.2 and 7.3 until the total of all Damages with respect to such matters exceeds One Hundred Thousand Dollars $100,000.00, and then only for the total amount of all Damages in excess of Twenty-Five Thousand Dollars ($25,000). However, the limitations imposed by this Section 7.5 will not apply to (i) any Breach of any of representations and warranties of either party of which the maker had actual knowledge at the time such representation and warranty was made, (ii) any breach of Section 8.1 by either Globe or Somerville, (iii) KFGI's obligations in respect of Globe Assumed Liabilities or the KFGI Equity Interest and its other obligations under ARTICLE 3, (iv) KFGI's obligations in respect of the Tax Structure Indemnity, or (v) KFGI's obligations under Section 8.8. In no event will any party hereto be liable for Damages of any nature on any one or more claims under Section 7.2 or 7.3, which in the aggregate exceed one-half (1/2) of the aggregate sum of the Globe Assets Purchase Price, the Somerville Intellectual Property Purchase Price and the Somerville Goodwill Purchase Price.

## 7.6    RIGHT OF SET-OFF

Upon notice by either Globe or Somerville, on the one hand, or KFGI, on the other hand, as the case may be, to the other party specifying in reasonable detail the basis for a claim for indemnification hereunder, the party asserting the claim for indemnification may set-

-42-

off any amount to which it may be entitled under this ARTICLE 7 against amounts otherwise payable hereunder to the other party. The exercise of such right of set-off by either party in good faith, if ultimately determined to be justified, will not constitute an event of default hereunder. Neither the exercise of nor the failure to exercise such right of set-off will constitute an election of remedies or limit in any manner the enforcement of any other remedies that either party may have available to it.

**7.7     EXCLUSIVE REMEDY**

Each party agrees that the indemnification provisions of this Article 7 shall be the sole and exclusive remedy for Damages incurred by a party hereto arising out of claims for breach of warranties, representations or covenants contained in this Agreement.

## ARTICLE 8
## ADDITIONAL COVENANTS

**8.1     NONCOMPETITION, NONSOLICITATION AND NONDISPARAGEMENT**

(a)     <u>Noncompetition</u>. For a period of five (5) years after the Closing Date, neither Globe nor Somerville shall, anywhere Globe presently conducts its business, directly or indirectly invest in, own, manage, operate, finance, control, advise, render services to or guarantee the obligations of any Person engaged in or planning to become engaged in a Competing Business; *provided, however*, that Globe or Somerville may purchase or otherwise acquire up to (but not more than) one percent (1%) of any class of the securities of any Person (but may not otherwise participate in the activities of such Person) if such securities are listed on any national or regional securities exchange or have been registered under Section 12(g) of the Securities and Exchange Act of 1934, as amended.

(b)     <u>Nonsolicitation</u>. For a period of five (5) years after the Closing Date, neither Globe nor Somerville shall, directly or indirectly:

    (i)     solicit the business of any Person who is a customer of Globe for or in respect of any Competing Business;

    (i)     solicit the business of any Person who is a customer of KFGI for or in respect of any Competing Business;

    (ii)     cause, induce or attempt to cause or induce any customer, supplier, licensee, licensor, franchisee, employee, consultant or other business relation of KFGI to cease doing business with KFGI, to deal with any competitor of KFGI or in any way interfere with its relationship with KFGI;

    (iii)     cause, induce or attempt to cause or induce any customer, supplier, licensee, licensor, franchisee, employee, consultant or other business relation of Globe on the Closing Date or within the year preceding the

Closing Date to cease doing business with KFGI, to deal with any competitor of KFGI or in any way interfere with its relationship with KFGI; or

(iv)    hire, retain or attempt to hire or retain any employee or independent contractor of KFGI or in any way interfere with the relationship between KFGI and any of its employees or independent contractors.

(c)    <u>Nondisparagement</u>. After the date hereof, no party hereto shall disparage any other party hereto or his or its affiliates, partners, officers, employees or agents.

(d)    <u>Modification of Covenant</u>. If a final judgment of a court or tribunal of competent jurisdiction determines that any term or provision contained in Section 8.1(a) through (c) is invalid or unenforceable, then the parties agree that the court or tribunal will have the power to reduce the scope, duration or geographic area of the term or provision, to delete specific words or phrases or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision. At the court's discretion, this Section 8.1 will be enforceable as so modified after the expiration of the time within which the judgment may be appealed. This Section 8.1 is reasonable and necessary to protect and preserve KFGI's legitimate business interests and the value of the Globe Assets, the Somerville Intellectual Property and the Somerville Goodwill and to prevent any unfair advantage conferred on Globe or Somerville.

(e)    In the event that (i) KFGI shall fail, after notice and the expiration of any applicable cure period, to make timely and complete payment of the KFGI Promissory Note, or (ii) Somerville's employment with KFGI under the Employment Agreement shall be terminated by KFGI or Somerville and, in either case, KFGI shall not make the resulting payments due to Somerville under the Employment Agreement, then Somerville shall be automatically freed and relieved of the obligations under this Section 8.1.

**8.2    PAYMENT OF ALL TAXES RESULTING FROM SALE OF GLOBE ASSETS BY GLOBE**

Globe and KFGI shall each pay in a timely manner all Taxes assessed on it by a Taxing Authority resulting from or payable in connection with the sale of the Globe Assets pursuant to this Agreement. Notwithstanding the foregoing, this Section 8.2 this shall not impair or diminish, in any way, KFGI's indemnity obligations in respect of the Tax Structure Indemnity under Section 7.3.

**8.3    PAYMENT OF LIABILITIES**

In addition to payment of Taxes pursuant to Section 8.2, each party shall pay, or make adequate provision for the payment, in full all of the Liabilities as assumed or retained under this Agreement.

-44-

**8.4    RESTRICTIONS ON GLOBE DISSOLUTION AND DISTRIBUTIONS**

Globe shall not dissolve, or make any distribution of the proceeds received pursuant to this Agreement to its Shareholders, without having first made reasonable provision for the payment of, or reserves for, all of its liabilities.

**8.5    REMOVING EXCLUDED GLOBE ASSETS**

Within ninety (90) days following the Closing Date, KFGI shall present to Globe and Somerville a list of Excluded Globe Assets to be removed from Globe's Facilities, which Excluded Globe Assets must have been located on the Globe Real Property and outside of the main manufacturing facility as of the Closing Date. Within sixty (60) days following the receipt of such list from KFGI, Globe shall remove at its expense all Excluded Globe Assets detailed on the list from all of Globe's Facilities; provided, however, that Globe shall be entitled to reasonable additional time to remove the listed assets if weather conditions hinder, delay or otherwise temporarily prevent such removal. Such removal shall be done in such manner as to avoid any damage to Globe's Facilities and any disruption of the business operations to be conducted by KFGI after the Closing. Any damage to the Globe Assets or to the Facilities resulting from such removal shall be promptly paid by Globe. Should Globe fail to remove the Excluded Globe Assets as required by this Section 8.5, KFGI shall have the right, but not the obligation, (a) to remove the Excluded Globe Assets at Globe's sole cost and expense; (b) to store the Excluded Globe Assets and to charge Globe all storage costs associated therewith; (c) to treat the Excluded Globe Assets as unclaimed and to proceed to dispose of the same under the laws governing unclaimed property; or (d) to exercise any other right or remedy conferred by this Agreement or otherwise available at law or in equity. Globe shall promptly reimburse KFGI for all costs and expenses incurred by KFGI in connection with any Excluded Globe Assets not removed by Globe on or before the Closing Date.

**8.6    REPORTS AND RETURNS**

The parties hereto shall cooperate after the Closing in preparing and filing all reports and returns required by Legal Requirements relating to the business of Globe as conducted using the Globe Assets, the Somerville Intellectual Property and the Somerville Goodwill.

**8.7    ASSISTANCE IN PROCEEDINGS**

Globe will cooperate with KFGI and its counsel in the contest or defense of, and make available its personnel and provide any testimony and access to its books and Records in connection with, any Proceeding involving or relating to (a) any Contemplated Transaction or (b) any action, activity, circumstance, condition, conduct, event, fact, failure to act, incident, occurrence, plan, practice, situation, status or transaction on or before the Closing Date involving Globe or its business or Somerville. KFGI will cooperate with Globe and Somerville and their respective counsel in the contest or defense of, and make available its personnel and provide any testimony and access to its books and Records in connection with, any Proceeding involving or relating to (a) any

-45-

Contemplated Transaction or (b) any action, activity, circumstance, condition, conduct, event, fact, failure to act, incident, occurrence, plan, practice, situation, status or transaction on or before the Closing Date involving Globe, or its business or Somerville.

**8.8    ADDITIONAL PAYMENT**

In the event that KFGI, within three (3) years following the Effective Date, sells, conveys or transfers to any Third Party (excluding a Third Party that is and remains a corporation, partnership or limited liability company owned or controlled by KFGI) (i) Globe's "marine division" (being that segment of Globe's business that pertains principally to the manufacture, sale and/or repair and refurbishment of impellers and drive savers), (ii) any other integrated business unit of Globe (such as, by way of example, the square wheel technology, postal business, material handling, aerospace or oilfield operations), or (iii) any Globe Assets other than in the Ordinary Course Business for a sum of money in excess of $500,000 in the aggregate, then KFGI shall pay to Somerville an amount equal to 7% of the net proceeds received by KFGI for such sale (calculated by subtracting from the aggregate sales price, including without limitations royalties payable, promissory notes, installment obligations, or other consideration paid or payable by such Third Party, the amount of any liabilities retained by KFGI and reasonably related and fairly allocated to the assets sold. KFGI shall pay to Somerville such portion of the amounts as are received by it to which Somerville is entitled to hereunder within ten (10) days of KFGI's receipt of the final sales proceeds, i.e., after any, post closing accounting or other verification procedures between KFGI and the buyer are concluded, but in any event no later than ninety (90) days after the closing of the subject transaction. KFGI's obligations pursuant to this Section 8.8 shall not apply to any sales, conveyances or transfers of (i) any assets sold in the Ordinary Course of Business of KFGI, (ii) the real estate owned by Globe in Rockland, Massachusetts, (iii) assets incident to the dissolution and liquidation of KFGI, or (iv) resulting from the change of control, merger, conversion or consolidation of KFGI as a going concern with or into a Third Party or from KFGI's participation in, and contribution of assets to, any joint venture, partnership or other arrangement (provided that same is not adopted to circumvent the provisions of this Section 8.8).

**8.9    USE OF NAME**

Following the Closing Date, neither Globe nor Somerville shall use the names "Globe Rubber Works, Inc.," "Globe Rubber Works," "Globe Rubber," "Globe" or "GRW," whether individually or in combination, in connection with the operation of any business enterprise (other than in fulfilling Globe's and Somerville's respective obligations under the Employment Agreement).

**8.10    DOCUMENTATION OF SOMERVILLE INTELLECTUAL PROPERTY**

Globe and Somerville shall prepare written documentation of all Globe Intellectual Property and Somerville Intellectual Property, respectively, which, in the opinion of KFGI, has not been properly documented in written format, and Globe and Somerville

shall cooperate with KFGI in obtaining such Government Authorizations as KFGI, in its sole discretion, deems necessary.

## 8.11   CUSTOMER AND OTHER BUSINESS RELATIONSHIPS

After the Closing, Globe and Somerville will cooperate with KFGI at KFGI's expense in its efforts to continue and maintain for the benefit of KFGI those business relationships of Globe existing prior to the Closing and relating to the business to be operated by KFGI after the Closing, including relationships with lessors, employees, regulatory authorities, licensors, customers, suppliers and others, and Globe will satisfy the Retained Globe Liabilities in a manner that is not detrimental to any of such relationships subject to Globe having the right to contest same in good faith. Globe and Somerville will refer to KFGI all inquiries relating to such business. Neither Globe nor any of its officers, employees, agents or shareholders shall take any action that would tend to diminish the value of the Globe Assets, Somerville Intellectual Property or Somerville Goodwill after the Closing or that would interfere with the business of KFGI to be engaged in after the Closing, including disparaging the name or business of KFGI.

## 8.12   RETENTION OF AND ACCESS TO RECORDS

After the Closing Date, KFGI shall retain for a period consistent with KFGI's record-retention policies and practices those Records of Globe delivered to KFGI. KFGI also shall provide Globe and Somerville and their Representatives reasonable access thereto, during normal business hours and on at least three days' prior written notice, to enable them to prepare financial statements or tax returns or deal with tax audits or for any other reasonable business purpose, for example, but not in limitation, in order to conduct any Proceeding in which Globe or Somerville may be involved.  After the Closing Date, Globe and Somerville shall provide KFGI and its Representatives reasonable access to Records that are Excluded Globe Assets, during normal business hours and on at least three days' prior written notice, for any reasonable business purpose specified by KFGI in such notice.

## 8.13   SECURITY CLEARANCE

Globe and Somerville shall cooperate with KFGI and its executive officers to obtain, on behalf of KFGI and any of its executive officers, from the Department of Defense, the Defense Security Service, or any other Governmental Body the necessary level of security clearance required to negotiate and transact business with the Department of Defense and to otherwise conduct the business of Globe as presently conducted.

## 8.14   FURTHER ASSURANCES

The parties shall cooperate reasonably with each other and with their respective Representatives in connection with any steps required to be taken as part of their respective obligations under this Agreement, and shall (a) furnish upon request to each other such further information; (b) execute and deliver to each other such other documents; and (c) do such other acts and things, all as the other party may reasonably

-47-

request for the purpose of carrying out the intent of this Agreement and the Contemplated Transactions.

### 8.15    REAL ESTATE DILIGENCE

KFGI has been permitted to make any physical inspections and conduct any and all investigations of Globe's Facilities as deemed necessary by KFGI. Globe and its Representatives have made available to KFGI and its Representatives all applicable books and records relating to Globe's Facilities and the ownership, operation, use and maintenance of Globe's Facilities.

### 8.16    EXISTING NON-COMPETITION AGREEMENTS

Globe agrees that at any time following the Closing Date it will not seek to enforce any of its rights under any existing non-competition agreements executed by any employees, consultants, contractors, Representatives, customers, vendors or other Persons in its favor and relating to the operation of the business utilizing the Globe Assets, Somerville Intellectual Property or Somerville Goodwill.

### 8.17    SEWER LINE INSTALLATION

Somerville agrees to pay for the remedial costs of ensuring that the sewage and wastewater systems at Globe's Facilities comply with the requirements of Title V of the Code of Massachusetts Regulations (310 CMR Sec 15, et seq.), including the connection of all sewage systems at Globe's Facilities to the main city sewer line and shall deposit $25,000 into escrow to cover the costs of such remedial measures.

### 8.18    IN-KIND SETTLEMENT PROCEEDS

Somerville and Globe agree to pay to KFGI, without additional consideration, any settlement or judgment proceeds received in connection with the Crompton matter that are delivered in the form of in-kind property related to trade discounts or credits. The parties acknowledge that Globe is not under any obligation to seek such in-kind property related to trade discounts or credits as part of any settlement, and Globe is authorized to bargain for, and to retain for itself, any cash or other settlement proceeds.

### ARTICLE 9
### CONFIDENTIALITY

### 9.1    DEFINITION OF CONFIDENTIAL INFORMATION

(a)     As used in this ARTICLE 9, the term *"Confidential Information"* includes any and all of the following information of KFGI, Globe or Somerville that has been or may hereafter be disclosed in any form, whether in writing, orally, electronically or otherwise, or otherwise made available by observation, inspection or otherwise by either party (KFGI on the one hand or Globe and Somerville, collectively, on the other hand) or its Representatives (collectively, a

-48-

*"Disclosing Party"*) to the other party or its Representatives (collectively, a *"Receiving Party"*):

(i)    all information that is a trade secret under applicable trade secret or other law;

(ii)   all information concerning product specifications, data, know-how, formulae, compositions, processes, designs, sketches, photographs, graphs, drawings, samples, inventions and ideas, past, current and planned research and development, current and planned manufacturing or distribution methods and processes, customer lists, current and anticipated customer requirements, price lists, market studies, business plans, computer hardware, Software and computer software and database technologies, systems, structures and architectures;

(iii)  all information concerning the business and affairs of the Disclosing Party (which includes historical and current financial statements, financial projections and budgets, tax returns and accountants' materials, historical, current and projected sales, capital spending budgets and plans, business plans, strategic plans, marketing and advertising plans, publications, client and customer lists and files, contracts, the names and backgrounds of key personnel and personnel training techniques and materials, however documented), and all information obtained from review of the Disclosing Party's documents or property or discussions with the Disclosing Party regardless of the form of the communication; and

(iv)   all notes, analyses, compilations, studies, summaries and other material prepared by the Receiving Party to the extent containing or based, in whole or in part, upon any information included in the foregoing.

(b)    Any trade secrets of a Disclosing Party shall also be entitled to all of the protections and benefits under applicable trade secret law and any other applicable law. If any information that a Disclosing Party deems to be a trade secret is found by a court of competent jurisdiction not to be a trade secret for purposes of this ARTICLE 9, such information shall still be considered Confidential Information of that Disclosing Party for purposes of this ARTICLE 9 to the extent included within the definition. In the case of trade secrets, each of KFGI, Globe and Somerville hereby waives any requirement that the other party submit proof of the economic value of any trade secret or post a bond or other security.

## 9.2    RESTRICTED USE OF CONFIDENTIAL INFORMATION

(a)    Each Receiving Party acknowledges the confidential and proprietary nature of the Confidential Information of the Disclosing Party and agrees that such Confidential Information (i) shall be kept confidential by the Receiving Party; (ii) shall not be used for any reason or purpose other than to evaluate and

-49-

consummate the Contemplated Transactions; and (iii) without limiting the foregoing, shall not be disclosed by the Receiving Party to any Person, except in each case as otherwise expressly permitted by the terms of this Agreement or with the prior written consent of an authorized representative of Globe or Somerville with respect to Confidential Information of Globe or Somerville (each, a *"Globe Contact"*) or an authorized representative of KFGI with respect to Confidential Information of KFGI (each, a *"KFGI Contact"*). Each of KFGI, Globe and Somerville shall disclose the Confidential Information of the other party only to its Representatives who require such material for the purpose of evaluating the Contemplated Transactions and are informed by KFGI, Globe and Somerville, as the case may be, of the obligations of this ARTICLE 9 with respect to such information. Each of KFGI, Globe and Somerville shall (A) enforce the terms of this ARTICLE 9 as to its respective Representatives; (B) take such action to the extent necessary to cause its Representatives to comply with the terms and conditions of this ARTICLE 9; and (C) be responsible and liable for any breach of the provisions of this ARTICLE 9 by it or its Representatives.

(b)     From and after the Closing, the provisions of Section 9.2(a) above shall not apply to or restrict in any manner KFGI's use of any Confidential Information of Globe or Somerville relating to any of the Globe Assets, the Somerville Intellectual Property the Somerville Goodwill or the Globe Assumed Liabilities.

## 9.3    EXCEPTIONS

Sections 9.2(a) and (b) do not apply to that part of the Confidential Information of a Disclosing Party that a Receiving Party demonstrates (a) was, is or becomes generally available to the public other than as a result of a breach of this ARTICLE 9 by the Receiving Party or its Representatives; (b) was or is developed by the Receiving Party independently of and without reference to any Confidential Information of the Disclosing Party; or (c) was, is or becomes available to the Receiving Party on a nonconfidential basis from a Third Party not bound by a confidentiality agreement or any legal, fiduciary or other obligation restricting disclosure.

## 9.4    RETURN OR DESTRUCTION OF CONFIDENTIAL INFORMATION

If this Agreement is terminated, each Receiving Party shall (a) destroy all Confidential Information of the Disclosing Party prepared or generated by the Receiving Party without retaining a copy of any such material; (b) promptly deliver to the Disclosing Party all other Confidential Information of the Disclosing Party, together with all copies thereof, in the possession, custody or control of the Receiving Party; and (c) certify all such destruction in writing to the Disclosing Party, *provided, however*, that the Receiving Party may retain a list that contains general descriptions of the information it has returned or destroyed to facilitate the resolution of any controversies after the Disclosing Party's Confidential Information is returned.

Dallas_1\3979467\7
41932-2 7/25/2004

## ARTICLE 10
## GENERAL PROVISIONS

### 10.1    EXPENSES

Except as otherwise expressly provided in this Agreement, each party to this Agreement will bear its respective expenses incurred in connection with the preparation, execution, and performance of this Agreement and the Contemplated Transactions, including all fair and reasonable fees and expenses of agents, representatives, counsel, and accountants, except that the legal fees and expenses incurred by Somerville and/or Globe relative to the Contemplated Transactions shall be borne by Globe and provided that to the extent not paid by Globe prior to Closing, such fees and expenses shall be promptly paid at Closing by KFGI and shall be treated as Globe Assumed Liabilities.  In the event of termination of this Agreement, the obligation of each party to pay its own expenses will be subject to any rights of such party arising from a breach of this Agreement by another party.

### 10.2    PUBLIC ANNOUNCEMENTS

Any public announcement or similar publicity with respect to this Agreement or the Contemplated Transactions will be issued, if at all, at such time and in such manner as KFGI and Globe or Somerville shall jointly determine.

### 10.3    NOTICES

All notices, consents, waivers, and other communications under this Agreement must be in writing and will be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by telecopier (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and telecopier numbers set forth below (or to such other addresses and telecopier numbers as a party may designate by notice to the other parties):

### 10.4    JURISDICTION; SERVICE OF PROCESS

Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement or otherwise relating to the Contemplated Transactions may be brought against any of the parties exclusively (i) in the courts of the State of Massachusetts  or (ii) if it has or can acquire jurisdiction, in the United States District Court for the District of the State of Massachusetts, and each of the parties consents to the sole and exclusive jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding, consents to the jurisdiction of such courts over such matters, and waives any objection to venue laid therein.  Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

## 10.5    FURTHER ASSURANCES

The parties agree (a) to furnish upon request to each other such further information, (b) to execute and deliver to each other such other documents, and (c) to do such other acts and things, all as the other party may reasonably request for the purpose of carrying out the intent of this Agreement and the documents referred to in this Agreement.

## 10.6    WAIVER

Except as otherwise provided in ARTICLE 7, the rights and remedies of the parties to this Agreement are cumulative and not alternative. Except as otherwise provided in ARTICLE 7, neither the failure nor any delay by any party in exercising any right, power, or privilege under this Agreement or the documents referred to in this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

## 10.7    ENTIRE AGREEMENT AND MODIFICATION

This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

## 10.8    DISCLOSURE SCHEDULE

(a)    The Disclosure Schedule is expressly incorporated herein and constitutes an integral part of this Agreement for all purposes.

(b)    In the event of any inconsistency between the statements in the body of this Agreement and those in the Disclosure Schedule (other than an exception or exceptions to the representations and warranties of this Agreement expressly set forth in the Disclosure Schedule), the statements in the body of this Agreement will control.

## 10.9    ASSIGNMENTS, SUCCESSORS, AND NO THIRD-PARTY RIGHTS

Neither party may assign any of its rights under this Agreement without the prior consent of the other parties. Subject to the preceding sentence, this Agreement will apply to, be binding in all respects upon, and inure to the benefit of the successors and permitted assigns of the parties, except that the right to receive indemnification from Globe or Somerville under ARTICLE 7 is personal to KFGI and non-transferable. Except as noted, this Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement and their successors and assigns.

Dallas_1\3979467\7
41932-2 7/25/2004

### 10.10  SEVERABILITY

If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

### 10.11  SECTION HEADINGS; CONSTRUCTION

The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

### 10.12  TIME OF ESSENCE

With regard to all dates and time periods set forth or referred to in this Agreement, time is of the essence.

### 10.13  GOVERNING LAW

This Agreement will be governed by and construed and enforced under the laws of the State of Massachusetts without regard to conflicts of laws principles.

### 10.14  COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement under seal as of the date first written above.

Dallas_1\3979467\7
41932-2 7/25/2004

**KFGI:**

KALM-FORSYTHE GLOBAL
INNOVATIONS, LTD.

By:   KalFor Solutions Group, LLC,
General Partner

By: _____
Carl W. Forsythe, President

<u>Address:</u>
10440 N. Central Expressway
Suite 1475
Dallas, Texas 75205
Phone: (214) 373-4562
Fax:   (214) 891-3366

**SOMERVILLE:**

RICHARD SOMERVILLE

<u>Address:</u>
344 KEENE ST.
DUXBURY
MA 02332
Phone: 781-837-9401
Fax: SAME

**GLOBE:**

GLOBE RUBBER WORKS, INC.

By: _____
Name: RICHARD SOMERVILLE
Title: Pres.

-54-

Address:

_____
_____
_____
Phone:_____
Fax:_____

-55-

EXHIBIT 3.3(b)

# FIRST AMENDMENT TO
## REVISED AND AMENDED AGREEMENT
## OF LIMITED PARTNERSHIP OF
## KALM-FORSYTHE GLOBAL INNOVATIONS, LTD.

This First Amendment to the Revised and Amended Agreement of Limited Partnership of Kalm-Forsythe Global Innovations, Ltd. (this "Amendment") is made and entered into this _____ day of August, 2004 by and between KalFor Solutions Group, LLC, a Texas limited liability company ("KalFor"), in its capacity as general partner (the "General Partner") of Kalm-Forsythe Global Innovations, Ltd., a Texas limited partnership (the "Partnership"), and the individuals and entities identified as the limited partners of the Partnership on the signature page hereto (the "Limited Partners").

## W I T N E S S E T H:

WHEREAS, KalFor is the General Partner of the Partnership;

WHEREAS, KalFor, as the General Partner, has the power and authority under the Revised and Amended Agreement of Limited Partnership of the Partnership (the "Partnership Agreement") to acquire assets necessary to carry out the purposes of the Partnership;

WHEREAS, KalFor, in its capacity as General Partner, has negotiated and entered into, on behalf of the Partnership, that certain Asset Purchase Agreement (the "APA") by and among the Partnership and Globe Rubber Works, Inc. (the "Seller"), whereby the Partnership is to acquire substantially all of the assets of the Seller;

WHEREAS, as a condition to the closing of the transactions contemplated by the APA, the Partnership is required to adopt certain amendments to the Partnership Agreement as set forth below.

WHEREAS, Section 13.10 of the Partnership Agreement provides that the Partnership Agreement may be amended for the foregoing purposes on the condition that the General Partner and the holders of a Super Majority in Interest of the Partners consent to such amendment; and

WHEREAS, KalFor, in its capacity as General Partner, and the holders of in excess of a Super Majority in Interest of the Partners have consented in writing to the proposed amendment;

NOW, THEREFORE, in consideration of the premises, the mutual covenants herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. Definitions. All capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Partnership Agreement.

2. Amendments.

   (a) The Partnership Agreement shall be and hereby is amended by deleting Section 8.3 thereof entitled "Restrictions on Authority of General Partner" and replacing it with a

new Section 8.3 entitled "<u>Restrictions on Authority of General Partner</u>" which new Section 8.3 shall read in its entirety as follows:

"3.5    <u>Restrictions on Authority of General Partner</u>.  Notwithstanding the provisions of Section 8.2, without the vote or approval of a Super Majority in Interest of the Partners, the General Partner shall not have the authority to:

A.  Perform any act in violation of any applicable law, rule or regulation or perform any act which is inconsistent with or in contravention of this Agreement;

B.  Do any act which would make it impossible to carry on the business of the Partnership;

C.  Confess a judgment against the Partnership;

D.  Borrow from the Partnership;

E.  Possess the Partnership's Property or assign the rights of the Partnership in specific assets or property for other than a purpose of the Partnership;

F.  Admit a person as a general partner, except as provided in this Agreement;

G.  Admit a person as a limited partner, except as provided in this Agreement;

H.  Create, incur, guarantee, assume or otherwise become directly or indirectly liable for any indebtedness other than (a) open account trade debt, (b) a working capital credit line and term loans established with a financial institution and approved by the board of directors or other governing body of the General Partner, and (c) capitalized leases approved by the board of directors or other governing body of the General Partner;

I.  Materially change the principal business of the Partnership;

J.  Authorize or issue, or obligate itself to issue, any other equity security (including any security convertible into or exercisable for any equity security) senior to or on a parity with the present limited partners;

K.  Merge or consolidate with any other person, or sell, assign, lease or otherwise dispose of all  or substantially all of its assets to any person;

L.  Make redemptions of partnership interests without affording all limited partners the opportunity to participate in the redemption; or

M.  Contract or otherwise deal with the Partnership except as pursuant to Section 8.4 hereof.

No Person dealing with the General Partner shall be required to determine its authority on behalf of the Partnership to make any commitment or undertaking, or to execute any agreement or other instrument, or to do any other act or thing, nor to determine any fact or circumstance bearing upon the existence of its authority. In addition, a purchaser of the Partnership's Property shall not be required to determine the authority of the General Partner to sign and deliver on behalf of the Partnership any agreement of sale or transfer, or any instrument of conveyance or assignment, or to see the application or distribution or proceeds paid or credited in connection therewith."

(b) The Partnership Agreement shall be and hereby is amended by deleting Section 8.4 thereof entitled "General Partner's Right to Deal with Partnership" and replacing it with a new Section 8.4 entitled "General Partner's Right to Deal with Partnership" which new Section 8.4 shall read in its entirety as follows:

"8.4    General Partner's Right to Deal with Partnership. The General Partner, its officers, directors or members of their respective families, and its affiliated entities shall have the right to contract and otherwise deal with the Partnership if, and only if, (a) the interest of any such person is fully disclosed to the Limited Partners in a report from the General Partner to the Limited Partners (b) the transaction is on arm's-length terms which are no less favorable to the Partnership as those which could have been obtained from an unaffiliated third party, and (iii) such transaction is approved by a disinterested majority of the board of directors or other governing body of the General Partner."

(c) The Partnership Agreement shall be and hereby is amended by deleting the phrase, "Upon request of any Limited Partner, the" from the first line of Section 7.3 thereof and inserting the word, "The" in its place.

(d) The Partnership Agreement shall be and hereby is amended by inserting the phrase, " , and shall inform the Partners of any material developments affecting the Partnership" immediately following the word "sheet" at the end of the first sentence of Section 7.3 thereof.

(e) The Partnership Agreement shall be and hereby is amended by inserting a new Section 9.9 entitled "Preemptive Rights" immediately following Section 9.8 thereof, which new Section 9.9 shall read in its entirety as follows:

"9.9    Preemptive Rights. In the event that the Partnership shall propose to issue any (i) partnership interests or other equity securities of the Partnership, (ii) options to purchase or rights to subscribe for partnership interests or other equity securities of the Partnership, (iii) securities convertible into or exchangeable for partnership interests or other equity securities of the Partnership, (iv) options to purchase or rights to subscribe for securities convertible into or exchangeable for partnership interests or other equity securities of the Partnership, the Partnership shall be required to deliver to the Limited Partners written notice of such issuance within thirty (30)

days. Upon receipt of such notice, the Limited Partners shall have, for a period of thirty (30) days, the preemptive right to subscribe for and purchase such securities to be issued, at such price and on such terms as such securities are to be issued, up to an amount equal to their existing percentage Ownership Interest. The Company shall promptly notify its Limited Partners of any proposed issuance of such securities. Notwithstanding the foregoing, this Section 9.9 shall not apply to any securities issued (i) in connection with any equity compensation plans, or (ii) in connection with any merger, consolidation or acquisition.

(f) The Partnership Agreement shall be and hereby is amended by inserting new Section 6.2 entitled "Tax Distributions" immediately following Section 6.1 thereof, which new Section 6.2 shall read in its entirety as follows:

"6.2    Tax Distributions. Distributable Funds shall be distributed quarterly to the Partners pro rata in accordance with their respective Ownership Interests up to an amount equal to (i) the highest marginal effective tax rate for individuals imposed under the Code multiplied by (ii) the Partnership's net taxable income and gain for such calendar year through such quarter, plus (iii) the highest marginal effective tax rate for individuals imposed under state, municipal or other governmental body rules or regulations that such individual is subject to multiplied by (iv) the Partnership's net taxable income and gain for such calendar year through such quarter, less the amount of aggregate distributions made pursuant to this Section 6.2 with respect to such period."

(g) The Partnership Agreement shall be and hereby is amended by inserting new Section 10.6 entitled "Tag-Along Rights" immediately following Section 10.5 thereof, which new Section 10.6 shall read in its entirety as follows:

"10.6   Tag-Along Rights.

A. Subject to the provisions of this Section 10.6, if Carl W. Forsythe, KalFor Solutions Group, LLC or Emerald Grove Capital, Ltd., or any of their related entities, proposes to sell, dispose of or otherwise transfer to any purchaser greater than fifty percent of its Ownership Interest (a "Tag-Along Sale") and no rights of first refusal under Section 10.1 have been exercised with respect to such Ownership Interest, such Partner shall not effect such Tag-Along Sale unless, prior to the consummation thereof, each of the other Partners shall have been afforded the opportunity to join in such Tag-Along Sale as provided in Section 10.6B.

B. Prior to the consummation of any Tag-Along Sale, the purchaser shall make a written offer (the "Tag-Along Offer") to each of the other Partners to acquire out of the total Ownership Interest proposed to be acquired by the purchaser in the Tag-Along Sale (the "Target Interest") the same proportion of the Target Interest as the total Ownership Interest owned by the other Partners (on the date that the Tag-Along Offer is made) bears to the total owned (on such date) by all of the Partners. Such offer by the proposed purchaser shall be made at the same sales price and on the

-4-

same terms as the offer by the proposed purchaser to the selling Partner. The other Partners shall have ten (10) days after their receipt of the Tag-Along Offer in which to accept the Tag-Along Offer.

C. This Section 10.6 does not apply to any Transfer (i) to any Permitted Transferee, or (ii) by last will and testament or pursuant to the laws of descent and distribution."

(h) The Partnership Agreement shall be and hereby is amended by (i) deleting the section reference "10.3" from the third line of Section 10.3D thereof and inserting the section reference "10.6" in its place and (ii) deleting the section reference "10.4B" from the fourth line of Section 10.3D thereof and inserting the section reference "10.3B" in its place.

3.    <u>Reaffirmation of Partnership Agreement</u>.  Except as expressly amended by this Amendment, the Partnership Agreement is hereby reaffirmed, ratified and confirmed and continues in full force and effect unaffected hereby.

4.    <u>Governing Law</u>.  This Amendment has been executed in the State of Texas and shall be governed by and construed in accordance with the laws of the State of Texas and the laws of the United States of America applicable to transactions within the State of Texas.

**[Signature Page to Follow]**

IN WITNESS WHEREOF, the parties hereto have duly executed this Amendment as of the date first above written.

GENERAL PARTNER:

KalFor Solutions Group, LLC

By: _____
     Name: _____
     Title: _____

LIMITED PARTNERS:

Emerald Grove Capital, Ltd.

By: _____
     Its general partner

By: _____
     Name: _____
     Title: _____


_____
Chris Crawford

## GLOBE DISCLOSURE SCHEDULE

This is the Disclosure Schedule of Globe under that certain Asset Purchase Agreement dated as of August 3, 2004 (the "**Agreement**"), by and among Globe, Somerville and KFGI. Capitalized terms used in this Disclosure Schedule (the "Globe Disclosure Schedule") but not defined herein shall have the meanings assigned in the Agreement. Schedules numbered below correspond to sections of Article 4 of the Agreement. Any matter which is disclosed in a particular schedule or section of the Globe Disclosure Schedule (including in any exhibit identified in a particular schedule or section and attached) shall be deemed to qualify the representations and warranties of Globe and Somerville contained in the similarly numbered section of the Agreement as well as any other numbered section of Article 4 of the Agreement to which such disclosure may apply.

### Schedule 2.1(c)  Tangible Personal Property

Reference is made to Exhibit 2.1(c) attached and incorporated in this Schedule 2.1(c).

### Schedule 2.1(l)  Claims against Third Parties

None, other than the claim against Crompton Corporation which is an Excluded Globe Asset under the Agreement.

### Schedule 2.1(m)  Deposits and Pre-Paid Expense

1.    Reference is made to the deposit referred to in Item 10 of Schedule 4.17(a).

2.    Globe has received from customer Lee Tools a $3,000 deposit against future order(s).

3.    Pre-paid enrollment fee of $7,216 paid to Administaff, Globe's employee benefit plan administrator.

4.    Globe has prepaid various insurance policies' premiums in the aggregate amount of $37,320 in premiums.

### Schedule 2.2(d)  Globe Contracts that are Excluded Globe Assets

None.

### Schedule 2.2(j)  Other Excluded Globe Assets

None.

FINAL EXECUTION COPY            INITIAL

Accepted by Globe and Somerville:

Accepted by KFGI:

### Schedule 2.3  Somerville Intellectual Property

All of the intellectual property owned by Somerville that is used by Globe in its business, including:

1.  All fictional business names, trading names, registered and unregistered trademarks, service marks, and applications;

2.  All patents, patent applications, and inventions and discoveries that may be patentable (for the avoidance of doubt, excluding the patent applications, inventions and discoveries and rights therein covered by the Patent Assignments it being understood that such intellectual property is a Globe's Intellectual Property Asset);

3.  All copyrights in both published works and unpublished works;

4.  All rights in mask works; and

5.  All know-how, trade secrets, confidential information, software, technical information, data, process technology, plans, drawings, and blue prints (for the avoidance of doubt, excluding the patent applications, inventions and discoveries and rights therein covered by the Patent Assignments it being understood that such intellectual property is a Globe's Intellectual Property Asset).

### Schedule 2.5(a)(ix)  Other Liabilities of Globe that are Globe Assumed Liabilities

1.  Reference is made to the equipment leases listed as Items 1 through 12 on Schedule 4.6(b).

2.  Reference is made to the leases identified under the heading *CAPITAL LEASES* under Item 4. (iii) in Schedule 4.17(a); excluding, however, the car loan from Rockland Federal Credit Union, identified under such heading, which car loan is a Retained Globe Liability (the "RFCU Car Loan").

3.  Reference is made to the Liabilities of Globe which are secured in part by the Encumbrances identified in Items 3 through 6 of Exhibit 4.6 to this Disclosure Schedule.

4.  The following Liabilities of Globe have been guaranteed by Somerville, and under Section 2.8(c)(v) of the Agreement, releases of such guarantees by Third Parties holders are required to be delivered by KFGI, including without limitation, discharges of mortgages on Somerville's residence, releases of collateral assignment of life insurance policies, as specified below (for the avoidance of doubt, KFGI may deliver such releases of guarantees or collateral assignment of

life insurance policy, and discharges of mortgage, after the Closing in accordance with customary transactional practice):

(i) Guarantee of the equipment lease to Highland Capital Corp. identified in Item 8 of Schedule 4.6(b);

(ii) Guarantee of the truck loan from Rockland Federal Credit Union, identified under the heading *CAPITAL LEASES* under Item 4(iii) in Schedule 4.17(a). For the avoidance of doubt, KFGI is not required to obtain a release of Somerville's guarantee of the RFCU Car Loan; see Item 2 of this Schedule 2.5(a)(ix).

(iii) Guarantees of the Liabilities of Globe which are secured in part by the Encumbrances identified in Items 3 through 6 of Exhibit 4.6 to this Disclosure Schedule, which Liabilities are also identified under the heading *CAPITAL LEASES* under Item 4(iii) in Schedule 4.17(a) as First International (Equipment), First International Baule', and First International (Building and Land).

(iv) Collateral assignment of life insurance policy to First International Bank, with respect to Jefferson Pilot Financial Life Insurance Policy No. 659012772, insuring Somerville, given as security for the guarantee of Somerville of the Liabilities of Globe to First International Bank. These Globe Liabilities also relate to the Encumbrance referred to as Item 5 of Exhibit 4.6.

(v) Mortgage dated May 19, 1998, to First National Bank of New England, on Somerville's residence, and filed with the Plymouth County Registry District of the Land Court, Massachusetts, as Document No. 427512 and noted on Certificate of Title No. 61483. These Globe Liabilities also relate to the Encumbrance referred to as Item 4 of Exhibit 4.6.

## Schedule 2.6  Allocation of Globe Assets Purchase Price

| | |
|---|---|
| $   605,000 | Tangible Personal Property |
| $        -0- | Globe Facilities as are not Real Property |
| $1,305,000 | Globe Real Property |
| $   953,000 | Globe's inventories |
| $   899,000 | Globe's accounts receivable |
| $        -0- | Globe Contracts |
| $        -0- | intangible property rights (including, without limitation, the Globe Intellectual Property Assets and goodwill) |
| ($2,564,000) | Aggregate Debt Assumed |
| $   898,000 | **Total Purchase Price of Globe Assets** |

The Tangible Personal Property is allocated amongst the respective items in the manner set forth in the "in – place value appraisal" of Joseph Finn Co., Inc. dated February 6, 2004, a copy of which is attached. The useful life of the respective Globe Assets shall be determined in accordance with generally accepted accounting principles.

## Schedule 4.2  Authority; No Conflict

4.2(b)(i)    1. The following Globe Contracts that involve the performance of services or delivery of goods or materials by or to Globe of an amount in excess of $10,000 contain a prohibition on assignment by Globe without the consent of the other party to the contract:

> (i) Purchase Order No. 7371 from GE Medical Systems, Ultrasound & Primary Care Diagnostics, LLC, dated February 12, 2004, for an original aggregate amount of $83,874.

> (ii) Purchase Order No. 4500035195 from The Port Authority of NY & NJ, dated January 30, 2004, for an original aggregate amount of $46,800.

> (iii) Purchase Order No. PPP226-126 from Electric Boat Corporation (A General Dynamics Company), dated February 25, 2004, for an original aggregate amount of $44,617.

> (iv) Purchase Order No. SP0540-04-M-F872; Requisition/Purchase Request No. YPI04099002014 from Defense Supply Center Phila G & I, dated April 21, 2004, for an original aggregate amount of $99,600.

> (v) Purchase Order No. PPP231-019 from Electric Boat Corporation (A General Dynamics Company), dated December 5, 2003, for an original aggregate amount of $32,220.

> (vi) Purchase Order No. PPQ061-114 from Electric Boat Corporation (A General Dynamics Company), dated April 6, 2004, for an original aggregate amount of $15,200.

> (vii) Purchase Order No. PPP226-126 from Electric Boat Corporation (A General Dynamics Company), dated February 26, 2004, for an original aggregate amount of $44,617.

> (viii) Purchase Order No. PPQ062-063 from Electric Boat Corporation (A General Dynamics Company), dated April 6, 2004, for an original aggregate amount of $15,200.

(ix)  Purchase Order No. 1556 from SHURflo (A WICOR Company), dated May 25, 2004, for an original aggregate amount of $21,200.

(x)  Purchase Order No. 4500166731 from Northrop Grumman Newport News Shipbuilding, dated May 24, 2004, for an original aggregate amount of $180,553.

(xi)  Purchase Order No. 8040 from GE Medical Systems, Ultrasound & Primary Care Diagnostics, LLC, dated June 16, 2004, for an original aggregate amount of $84,900.

(xii)  Purchase Order No. PPQ105-023 from Electric Boat Corporation (A General Dynamics Company), dated June 15, 2004, for an original aggregate amount of $29,205.

(xiii)  Purchase Order No. PPQ115-025 from Electric Boat Corporation (A General Dynamics Company), dated June 17, 2004, for an original aggregate amount of $31,560.

(xiv)  The various equipment leases identified under item 4 (iii) of schedule 4.17 (a) or under the section of Schedule 4.6 entitled "Encumbrances on Globe Assets."

2. The loan documents between Globe and First National Bank of New England; reference is made to the pay-off statements set forth in Exhibit 4.2(b)(i) 2 attached and incorporated in this Item 2 of Schedule 4.2(b)(i).

3. The consummation of the Contemplated Transactions will materially violate or invalidate the following Governmental Authorizations:

(i)  Department of Defense Security Clearance Letter of Consent issued June 17, 2004 to Globe employee John Peter Bodee for Interim Secret Level of Clearance.

(ii)  Department of Defense Security Clearance Letter of Consent issued April 21, 2003 to Globe employee Jason Thomas Dahlberg for Confidential Level of Clearance.

(iii)  Department of Defense Security Clearance Letter of Consent issued June 25, 2003 to Globe employee Charles Robert Foley for Secret Level of Clearance.

(iv)  Department of Defense Security Clearance Letter of Consent issued April 28, 2003 to Globe employee Robert Barnet Karnes for Interim Secret Level of Clearance.

(v)  Department of Defense Security Clearance Letter of Consent issued April 14, 2004 to Globe employee Kevin John Lynch for Interim Secret Level of Clearance.

(vi)  Department of Defense Security Clearance Letter of Consent issued April 14, 2004 to Globe employee Thomas Herbert Roberts for Confidential Level of Clearance.

(vii)  Department of Defense Security Clearance Letter of Consent issued May 5, 2004 to Somerville for Secret Level of Clearance.

(viii)  Department of Defense Security Clearance Letter of Consent issued June 13, 2003 to Globe employee Charles William Stoddard for Confidential Level of Clearance.

(ix)  Department of Defense security clearance at the SECRET level issued February 3, 1998 to the Globe facility in Rockland, Massachusetts.

(x)  Security Agreement dated September 22, 1987, by and between the United States of American, through the Defense Investigative Service acting for the Department of Defense and other governmental User Agencies, and Globe.

## Schedule 4.3  Capitalization

1.     Somerville owns individually 88 shares of Globe common stock.  The remaining 75 shares of issued and outstanding Globe common Stock are owned by Globe Rubber Works, Inc. Profit Sharing 401(k) Plan for the account of Richard C. Somerville.

2.     The Articles of Organization of Globe, as amended to date, contain restrictions on transfer applicable to Globe's equity securities.

## Schedule 4.6  Title to Properties; Encumbrances

4.6(a)  Globe Real Property

1.     Globe owns the property located at and known as 254 Beech Street, Rockland as more particularly set forth in a Deed dated December 7, 1976, and recorded with

the Plymouth County Registry of Deeds in Book 4223, Page 240 (the "Rockland Facility")

2.    Globe leases as a tenant-at-will without written agreement, the property located at and known as 66 Pond Street, Whitman, Massachusetts ("Whitman Facility"). By letter from the owner of the Whitman Facility dated June 6, 2004, the monthly rent effective July 1, 2004, is $1,954.

4.6(b) Encumbrances on Globe Assets

Globe Assets which consist of Tangible Personal Property which are leased by Globe are identified on Schedule 2.1(c) as "Leased Equipment", and reference is made to those leased Tangible Personal Property on that Schedule 2.1(c) which have a value individually of more than $10,000. Without limitation to the foregoing, Globe Assets which are leased Tangible Personal Property are:

1.    The equipment described in a certain Equipment Lease dated November 1, 2000, between Globe and Textron Financial Corporation ("Textron"), providing for 36 monthly payments of $277.00 each, and a purchase by Globe of the equipment at the end of the lease term for $1.00.

2.    Equipment described in a certain Equipment Lease of Atrump Miller / Fortune Lathe from Textron, providing for 60 monthly payments of $459.32 each.

3.    Teksoft CAD CAM System under a certain Equipment Lease dated July 23, 1999, between Globe and Textron, providing for 60 monthly payments of $305.00 each, and a purchase by Globe of the equipment at the end of the term for $1.00.

4.    The equipment described in a certain Equipment Lease dated June 28, 2003, between Globe and Dell Financial Services L.P. ("Dell"), providing for 36 monthly payments of $288.55 each, and a purchase by Globe of the equipment at the end of the term for $1.00, as amended by Lease No. 001-006321940-001 dated June 23, 2003 and Lease No. 001-006321940-002 dated September 23, 2003.

5.    Copier lease under a certain Image Management Agreement dated August 12, 2003, between Globe and IOS Capital, Inc., an affiliate of IKON Office Solutions, Inc. ("IKON"), under which Globe has per copy charges but subject to 36 minimum monthly payments of $460.00 each.

6.    Globe leases various machine shop-type equipment under an Equipment Lease Agreement dated November 5, 1999, between Globe and William and Mary Alexander, providing for 60 monthly payments commencing January 1, 2000, each in the amount of $1,250. Globe has purchase options at different prices at different dates, including for an aggregate price of $1.00 on January 1, 2005.

7.    Purchase Order entitled "Invoice" dated November 27, 2002, issued by Globe to John Ebinger, for $40,000, with respect to 1 Hillyer CNC 600 Machine Center, for which monthly payments by Globe are $1,361 for 42 months.

8.    Equipment described in a Master Lease Agreement, including any schedule made a part thereof, executed by lessor Highland Capital Corp. August 8, 2002 and by lessee Globe July 29, 2002, providing for 48 monthly payments each in the amount of $936.50.

9.    Equipment described in a Lease Agreement dated December 8, 2003, between CIT Technology Financing Services, Inc. as lessor, and Globe as lessee, providing for 36 monthly payments each in the amount of $287.00.

10.    Equipment described in a Business Lease Agreement, including any schedule made a part thereof, dated April 9, 2004, between Hewlett Packard Financial Services Company as lessor and Globe as lessee, providing for 36 monthly payments each in the amount  of $278.55.

11.    Equipment subject to Installment Payment Agreement No. 13272001, including any schedules thereto, dated June 15, 2004, between Heartland Business Credit and Globe obligating Globe to make 36 monthly payments each in the amount of $218.89.

12.    Equipment described in an Equipment Lease Contract, dated February 3, 2004, between Avalon Leasing, Inc. d/b/a Marlin Leasing as lessor and Globe as lessee, providing for 36 monthly payments each in the amount of $221.21.

Based upon a search of the records of the office of the Massachusetts Secretary of State as of July 2, 2004, the Globe Assets, or the portion of Globe Assets as are specified in the attached Exhibit 4.6, are subject to those UCC Financing Statements evidencing the respective Encumbrances as identified in Exhibit 4.6 attached and incorporated in this Schedule 4.6.

## Schedule 4.9  Inventory

There is a $160,000 reserve in Globe's Year-End Balance Sheet taken for potentially unsaleable inventory.  The accounting work papers related to such reserve have been provided to KFGI.  This potentially unsaleable inventory is still in Globe's possession.

## Schedule 4.10 No Undisclosed Liabilities

1.    Reference is made to the item disclosed under Schedule 4.9.

2.    Reference is made to items 7 and 8 of Schedule 4.19.

**Schedule 4.12  No Material Adverse Changes**

1.     Since December 31, 2003, Globe has delivered and/or attempted delivery of approximately $500,000 of product to Globe's customer the United States Postal Service ("USPS") at the request of the USPS. However, the USPS has refused delivery of certain of that product stating that until the USPS issues purchase orders against the shipped goods it will not take delivery of it. Until Globe receives the purchase orders, Globe cannot be assured that it will receive payment for these goods.

2.     Reference is made to the patent applications described in the Patent Assignments identified as items 13 and 14 of Schedule 4.17(a). In Globe's Year-End Balance Sheet legal fees incurred and paid in connection with said patent applications and Patent Assignments in the amount of $24,099 were shown as a Globe asset as a receivable due from Somerville to Globe. But since by virtue of the Patent Assignments, the intellectual property rights related to said patent applictions were actually then owned by Globe and part of Globe's Intellectual Property Assets this entry shown as a receivable due from Somerville to Globe in Globe's Year-End Balance Sheet has now been re-characterized in Globe's Interim Balance Sheet as an expense of Globe rather than a receivable of Globe due from Somerville.

3.     Reference is made to items 7 and 8 of Schedule 4.19.

**Schedule 4.13(b)  Employee Benefits**

<u>Health Insurance</u>
Administaff (Tufts Health Care; United Health Care & CIGNA)
Company pays 80% - Employee pays 20% of premium cost
Employee eligible after 30 days

<u>Dental</u>
Carrier – Administaff (United Health Care)
Company pays 80% - Employee Pays 20% of premium cost
Employee eligible after 30 days

<u>Life Insurance</u>
Carrier – Administaff (CIGNA Group Plan)
Company pays 100% for one-time salary- Employee can obtain supplemental coverage to three-times salary at his/her premium cost
Employee eligible upon hire

<u>Long-term Disability</u>
Carrier – CIGNA Group Insurance (Administaff)
Company pays 100% of premium cost
Employee eligible after 30 days

<u>Short-term Disability</u>
Carrier – CIGNA Group Insurance (Administaff)

Employer pays 100% of premium cost.
Employee eligible immediately

<u>Vision Care</u>
Carrier – VSP (Administaff)
Employer pays 100% of premium cost
Employee eligible after 30 days

<u>401K Plan</u>
Plan Administrator – CPI
Contribution is Employee discretion
Matching funds from Globe at Globe's discretion
Employee eligible after one year of employment

<u>Paid Time Off</u>
10 days of paid time off earned per Calendar year on a pro rated basis for Employees
having at least one year but less than 9 years of employment service.
Accrues monthly at pro rated rate of days per month based on the applicable annual rate
(e.g. 0.83 days per month for less than 9 years of service, 1.25 days per month for
between 9 years and less than 16 years of service, etc.).
Additional 5 days after 8th year of service and less than 16 years.
Additional 5 days after 16th year of service and less than 23 years.
Additional 5 days after 23 years of service.
11 specified paid holidays

<u>Section 125 Plan</u>

For employee contribution of 20% premium cost under health and dental insurance plans.

**<u>Schedule 4.13(d)</u> Non-compliance of Globe Plans**

None.

**<u>Schedule 4.14</u> Legal Compliance**

Reference is made to items 7 and 8 of Schedule 4.19.

**<u>Schedule 4.15</u> Legal Proceedings; Orders**

(a)
1.    National Coating Corporation, an abutter to Globe Real Property in Rockland,
      Massachusetts, has claimed by letter from its lawyer, that Globe is encroaching on
      such abutter's property by Globe's use without permission of a portion of the

abutter's property for placement of a dumpster and storage trailers. The abutter has not yet initiated a lawsuit; if it does Globe intends to claim that Globe is lawfully using the disputed property by reason of adverse possession.

2.     Globe entered into a Confidential Settlement Agreement and Mutual Release dated November 24, 2003, with Green, Tweed & Co., Inc. under which Globe made a $50,000 settlement payment and undertook certain reciprocal obligations including non-disparagement and agreements not to sue.

3.     Globe and Massachusetts Department of Environmental Protection executed an Administrative Consent Order and Notice of Noncompliance, ACOP-SE-99-9009-27B, effective September 3, 1999, as modified by an Administrative Consent Order and Notice of Noncompliance, ACOP-SE-99-9009-27B, executed November 12, 1999 by Globe and November 15, 1999 by the Massachusetts Department of Environmental Protection, a copy of each of which has been provided to KFGI (the "1999 Mass DEP Consent Orders").

4.     Reference is made to the matters disclosed under Schedule 4.19.

5.     Claims by Globe in the matter entitled <u>Globe Rubber Works, Inc. v. Crompton Corporation,</u> Case No. 04cv1654, United States District Court for the Eastern District of Pennsylvania.

(b)

By letter dated June 23, 2003 from Paul Slaney, Globe's controller, Globe responded to a prior Grand Jury subpoena issued to Globe requesting documents related to East Coast Staffing, Inc., a temporary employment agency that Globe had previously retained.

## <u>Schedule 4.16</u> Absence of Certain Changes and Events

1.     Somerville has received a salary increase as of January 1, 2004, to $160,000. Certain other employees have also received salary increases in the Ordinary Course of Business since December 31, 2003. Somerville also received a $10,000 bonus on February 28, 2004. Since December 31, 2003, Somerville has been reimbursed approximately $32,000 for previously unreimbursed expenses incurred by him on behalf of Globe prior to December 31, 2003. Reference is made to item 2 of Schedule 4.12.

2.     Since December 31, 2003 there occurred a flood in the office conference room at the Rockland Facility. Globe received payment on its insurance claim related to such event.

3.     Globe's Year-End Balance Sheet reflects, in part, liabilities of Globe for then unreimbursed business expenses incurred by Somerville and his spouse. Subsequent to December 31, 2003, Somerville and his spouse have submitted

expense reimburse documentation with respect to approximately $32,000 of such expenses, collectively, as referred to in item 1 of this Schedule 4.16, and such expenses have been reimbursed by Globe. As of Closing, neither Somerville nor his spouse have any unreimbursed business expenses owed from Globe.

4.    Globe borrowed $100,000 from Us Unlimited, Inc. on June 30, 2004, evidenced by a certain Promissory Note dated June 30, 2004, which states, in part, that it is secured by a pledge of certain assets of Globe. No Encumbrances were filed with respect to this pledge. This loan was repaid in full on July 7, 2004.

5.    KFGI has provided secured loans to Globe in the aggregate principal amount of $350,000.

## Schedule 4.17 Contracts; No Defaults

Schedule 4.17(a)

1.    November 13, 2003 letter from Globe to Northrop Grumman providing Globe's pricing commitment for G.T.C. Sonar panels for 6 additional shipsets.

2.    For purposes of Schedules 4.17(a), 4.17(b) or 4.17(c), reference is made to the USPS matter disclosed under Schedule 4.12.

3.    Reference is made to the leases for Globe Assets which are leased Tangible Personal Property identified under Schedule 4.6.

4.    The following Globe Contracts:
     (i)  Executory Globe Contracts (customers) involving ≥$10,000 as of 7/01/04

| PO# | CUSTOMER | AWARD DATE | ORIG AMOUNT | OPEN AMOUNT |
|---|---|---|---|---|
| 1497 | Greenbriar Technical | 4/15/2004 | $16,410 | $10,940 |
| 0016740 | Sure-Feed Engineering | 3/10/2004 | $12,138 | $5,095 |
| 7371 | GE Medical Systems Ultrasound | 2/13/2004 | $83,874 | $2,240 |
| 29298 | Kinetic Systems | 1/27/2004 | $14,960 | $7,290 |
| 4270 | Lee Tool Co. | 10/3/2002 | $18,750 | $16,500 |
| 4500035195 | Port Authority of NY & NJ | 2/3/2004 | $46,800 | $46,800 |
| PPP226-126 | General Dynamics | 2/26/2004 | $44,617 | $44,617 |
| YPI04099002014 | DFAS-Columbus Ctr | 4/26/2004 | $99,600 | $99,600 |
| PPP231-019 | General Dynamics | 12/4/2003 | $32,200 | $32,200 |
| PPQ061-114 | General Dynamics | 4/6/2004 | $15,200 | $15,200 |
| PPP226-126 | General Dynamics | 2/26/2004 | $44,617 | $44,617 |
| PPQ062-063 | General Dynamics | 4/6/2004 | $15,200 | $15,200 |
| 9995844 | Duramax Marine | 6/3/2004 | $10,212 | $10,212 |

| PO# | CUSTOMER | AWARD DATE | ORIG AMOUNT | OPEN AMOUNT |
|---|---|---|---|---|
| 1556 | Shurflo | 5/26/2004 | $21,200 | $12,720 |
| 4500166731 | Newport New Shipbuilding | 6/11/2004 | $180,552 | $180,552 |
| 8040 | GE Medical Systems Ultrasound | 6/16/2004 | $84,900 | $76,410 |
| PPQ105-023 | General Dynamics | 6/18/2004 | $29,205 | $29,205 |
| PPQ115-025 | General Dynamics | 6/22/2004 | $31,560 | $31,560 |
| B29863 | B-C-D Metal Products | 6/23/2004 | $17,490 | $17,169 |
| 1658 | Shurflo | 7/9/04 | $25,440 | $25,440 |

(ii)  Executory Globe Contracts (vendors) $\leq$$10,000 as of 7/01/04

| DATE | PO # | VENDOR | TOTAL COST | OPEN/CLOSED |
|---|---|---|---|---|
| 2/27/04 | 13055 | Pierce Roberts | 12,842 | Open |
| 3/3/04 | 13068 | Air Products | 22,950 | Open |
| 3/17/04 | 13153 | Belt Corp. | 14,250 | Open |
| 4/16/04 | 13323 | Belt Corp. | 16,073 | Open |
| 4/26/04 | 13372 | Vern's | 12,600 | Open |
| 5/3/04 | 13403 | Crompton | 16,425 | Open |
| 6/2/04 | 13546 | Air Products | 23,736 | Open |
| 6/15/04 | 13606 | Air Products | 13,788 | Open |
| 6/30/04 | 13364 | Pierce Roberts | 11,820 | Open |

(iii)    Executory Globe Contracts for services (machines and equipment as of 6/30/04)

|  | Bal. Due | Amt. Per Month |
|---|---|---|
| Verizon DIA (Dedicated Internet Access) Line T1 Service 2 year contract beginning April 2004 |  | $837 |
| Verizon Flexpath Dedicated Telephone Service 36 month contract beginning April 2004 |  | $737 |
| IOS Capital - Copier        August 2003 |  | $504 |
| Global Shop Maintenance Contract  6/16/2003 Total $27,900.00 | $15,440 |  |
| Supreme Storage - Trailer Storage (month-to-month) |  | $1,034 |
| Atlas Alarm | $168 Quarterly |  |
| Waste Management        3/2004 – 3/2005 | Variable amount - $205 minimum |  |
| Purchase Power (postage meter)      no contract |  | variable amount |

AMX Merchant Services                                                    variable amount

NOVA Merchant Services                                                   variable amount

VPN

Landmarc Consulting (environmental consultants)                          variable amount


*CAPITAL LEASES*                                        Bal. Due   Amt. Per Month

Heartland Business Credit                               $7,880        $218.89
H. P. Financial Services computer equipment lease
    36-month term        Total $16,000.00         $13,482       $218.89
    36 month term                                 $2,449.00     $91
Marlin Lease Kaiser TD61 Industrial Air Dryer           $5,306.97
    $221.21      36-month lease      Total $7,963.56

CIT Technology                                          $6,951        $373

Citicorp (Forktruck)                                    $324          $380

Dell Financial Service (Computer Equipment)             $5,644        $289
                                                        $2,950        $151
                                                        $4,615        $200

Highland Capital                                        $21,034       $937

John Ebinger   (Equipment)                              $24,138       $1,360

Rockland Federal Credit Union (Truck)                   $3,609        $260
Rockland Federal Credit Union (Car)                     $19,209       $585
**Note – The above car loan is a Retained Globe Liability, notwithstanding its
inclusion on this Schedule.**

Textron Financial (CAD Equipment)                       $297          $305

William Alexander (Equipment)                           $5,671        $1,250

First International (Equipment)                          $86,213       $1,665

First International Baule'                              $117,912      $1,628

First International (Building & Land)                   $965,791      $5,292


14

5. Annual Spill Response Agreement dated June 30, 2003, between Globe and North Country Environmental Services, Inc. under which the contractor will provide Globe with emergency hazardous waste spill response and remedial actions.

6. Employment offer letter dated October 28, 2003, from Globe to Michael Carlisle containing contingent sales commission incentive payments.

7. All Globe employees listed on Schedule 4.20, other than Somerville, have signed Globe's standard form Proprietary Information and Inventions and Non-Competition Agreement, a copy of which has been delivered to KFGI (collectively, the "Globe Employees Work-for-Hire Agreements").

8. Reference is made to the verbal tenant-at-will lease of the Globe Real Property in Whitman, Massachusetts disclosed in Schedule 4.6.

9. Consulting Agreement dated February 18, 2004 between Globe and John P. Boodee and Nondisclosure Agreement dated February 18, 2004 between them.

10. Globe has a verbal agreement with Michael Whitworth under which he serves as an independent contractor sales representative for Globe product sales to the USPS, and is entitled to receive 5% of amounts received by Globe from product sales to the USPS. As of the date of Globe's Interim Balance Sheet, Globe was indebted to Michael Whitworth in the amount of $39,907, which is a Globe Assumed Liability.

11. A commitment by Globe has been made to purchase certain capital equipment from RIM Equipment for an aggregate purchase price of $40,000. Globe has given the seller a $5,000 deposit.

12. Engagement letter dated June 18, 2004, by which Globe retained Moody, Famiglietti & Andronico, LLP for an appraisal at a cost of $12,500. Globe has paid one-half of the fee, the balance is not due until the appraisal is delivered.

13. Assignment dated November 7, 2003 by Robert B. Karnes, Somerville and Brian C. Evans to Globe of all assignors' right, title and interest in and to the inventions, patent application and patents, related to the invention subject to U.S. Patent Application No. 10/631,044 for Track System for Tow-Line Conveyors.

14. Assignment dated November 7, 2003 by Robert B. Karnes to Globe of all assignor's right, title and interest in and to the inventions, patent application and patents, related to the invention subject to U.S. Patent Application No. 10/631,046 for Non-Metallic Drive Chain (this Assignment and the Assignment referred to under No. 13 above are collectively referred to as the "Patent Assignments").

15. Letter agreement dated January 30, 2004, between Globe and Joseph Finn Co., Inc. ("Finn"), under which Finn performed an appraisal of the Tangible Personal Property for Globe for a cost of $3,000, which amount has been paid.

16. Mutual Nondisclosure Agreement dated July 15, 2004 between Globe and Martin Van Buren of Triad Engineering.

4.17(c)

Reference is made to the matter disclosed as item 1 of Schedule 4.12.

## Schedule 4.18  Insurance Policies

Below is a list of all policies of insurance to which Globe is a party or under which Globe, or any director of Globe in such capacity, is or has been covered at any time since January 1, 2003.

Pacific Insurance Company                                    Policy #ZG0021730
Combined Building, Personal Property and Business Income
Effective 5/3/2004 – 7/2/2005
                                          (extended month to month)

Twin City Fire Insurance Company - Hartford Insurance Group  Policy #02CESOA2938
General Liability Coverage                        Effective 10/1/2003-10/1/2004

Hartford Steam Boiler                                        Policy #FBP4900093
Miscellaneous Coverage                            Effective 10/1/2003-10/1/2004
        Equipment Breakdown

Travelers Casualty and Surety Company of America      Policy #104197103
        Crime                                     Effective 10/1/2003-10/1/2004
        Employee Dishonesty
        Forgery Alterations
        Money & Sec. on Premises
        Money & Sec. – Messenger
        Computer Fraud

Travelers Insurance Company                       Policy #8105796A8911ND
Business Automobile                               Effective 7/1/2003-7/1/2004
                                                  (extended month to month)

Hartford Insurance Group                          Policy #MSCWI4552
Miscellaneous Coverage                            Effective 4/30/2004-4/30/2005
        Computers
        Transportation
        Transit

PMC Insurance Group
    Workers Compensation Coverage

Policy # WC 7819903
Terminated 3/1/04

Mount Hawley Insurance Company
    Umbrella Coverage

Policy # MCU0018093
Effective 10/16/03 – 10/1/04

Workers Compensation - Specialty Risk Services – American International Group, Inc,
(AIG) (Administaff)
                                      Effective 9/1/2003-9/15/2004
Long Term Disability – Cigna Group Insurance (Administaff)
Short Term Disability - Cigna Group Insurance (Administaff)
Life Insurance - Cigna Group Insurance (Administaff)
Health Insurance – Tufts Health Care; United Health Care (Administaff)
Vision Care – VSP (Administaff)
Dental Care – United Health Care (Administaff)
Key Man Life Insurance on Somerville
       State Life Insurance               Policy #5110095310   $400,000
                                            Effective 3/9/04 - 3/9/05
       American General Life Insurance    Policy #U10005220L $250,000
                                            Effective 9/19/03 – 9/18/04
       Lincoln Financial Group          Policy #G1637194     $250,000
                                          Effective 9/1/03 – 9/1/04

## Schedule 4.19 Environmental Matters

1.  Reference is made to a certain report entitled "Phase I Environmental Site
Assessment and Limited Subsurface Investigation – Globe Rubber Works, Inc. –
254 Beech Hill Road, Rockland, Massachusetts", dated December 12, 2003,
prepared by Goldman Environmental Consultants, Inc. (the "2003 Environmental
Report"), and conditions, restrictions, Hazardous Materials, Hazardous Activities,
Environmental Liabilities, Health Liabilities, Safety Liabilities, claims,
Threatened Claims, instances of non-compliance with, or potential or threatened
non-compliance with, Environmental Laws, Orders, or Permits referred to in the
2003 Environmental Report or in any documents, report, instrument, assessment,
notice, Order, summons, warning, study, analyses, tests or monitoring described
or referenced in the 2003 Environmental Report.  A copy of the 2003
Environmental Report has been provided to KFGI.

2.  Without limitation to the disclosures set forth in Item 1 above, reference is made
to a certain report entitled "Phase I Environmental Site Assessment and Limited
Subsurface Investigation – Globe Rubber Works, Inc. – 254 Beech Hill Road,
Rockland, Massachusetts", dated April 15, 1998, prepared by Goldman
Environmental Consultants, Inc. (the "1998 Environmental Report"), and
conditions, restrictions, Hazardous Materials, Hazardous Activities,
Environmental Liabilities, Health Liabilities, Safety Liabilities, claims,
Threatened Claims, instances of non-compliance with, or potential or threatened

non-compliance with, Environmental Laws, Orders, or Permits referred to in the 1998 Environmental Report or in any documents, report, instrument, assessment, notice, Order, summons, warning, study, analyses, tests or monitoring described or referenced in the 1998 Environmental Report. A copy of the 1998 Environmental Report has been provided to KFGI.

3.    Conditions, restrictions, Hazardous Materials, Hazardous Activities, Environmental Liabilities, Health Liabilities, Safety Liabilities, claims, Threatened Claims, instances of non-compliance with, or potential or threatened non-compliance with, Environmental Laws, Orders, or Permits, as described in a letter dated May 15, 1998, from Goldman Environmental Consultants, Inc. to First National Bank of New England related to a so-called Limited Removal Action at the Rockland Facility under the regulations of the Massachusetts Department of Environmental Protection known as the Massachusetts Contingency Plan, 310 CMR 40.0000, or in any documents, report, instrument, assessment, notice, Order, summons, warning, study, analyses, tests or monitoring described or referenced in such May 15, 1998 letter. A copy of this letter has been provided to KFGI.

4.    Conditions, restrictions, Hazardous Materials, Hazardous Activities, Environmental Liabilities, Health Liabilities, Safety Liabilities, claims, Threatened Claims, instances of non-compliance with, or potential or threatened non-compliance with, Environmental Laws, Orders, or Permits, referred to in the 1999 Mass Consent Orders, or in any documents, report, instrument, assessment, notice, Order, summons, warning, study, analyses, tests or monitoring described or referenced in either of the 1999 Mass Consent Orders.

5.    Return to compliance letter dated June 8, 2000, from the Massachusetts Department of Environmental Protection to Globe, with respect to the 1999 Mass Consent Orders. Letter dated April 14, 2000, from the Massachusetts Department of Environmental Protection to Globe, with respect to the 1999 Mass Consent Orders, and Conditions, restrictions, Hazardous Materials, Hazardous Activities, Environmental Liabilities, Health Liabilities, Safety Liabilities, claims, Threatened Claims, instances of non-compliance with, or potential or threatened non-compliance with, Environmental Laws, Orders, or Permits, referred to in said April 14, 2000 letter, or in any documents, report, instrument, assessment, notice, Order, summons, warning, study, analyses, tests or monitoring described or referenced in said April 14, 2000 letter. A copy of these letters dated June 8, 2000 and April 14, 2000 has been provided to KFGI.

6.    Reference is made to the Globe Contract identified in item 4 of Schedule 4.17.

7.    Globe may be required by its operations in Rockland, Massachusetts as of the Closing Date to obtain a Limited Plan Application (LPA) Air Quality Permit from the Massachusetts Department of Environmental Protection due to possible emission levels of 1 – 5 tons per year of hazardous pollutant air. Globe is in the

process of more accurately determining the level of its emissions, following the submission of its annual source registration (emissions summary report) for the 2003 reporting year delineating certain fugitive air and particulate emissions. Globe acknowledges that the cost to obtain any such Permit described in this item 7 required by virtue of Globe's operations as of the Closing Date, is and shall be a Retained Globe Liability.

8.      By virtue of its operations as of the Closing Date, Globe is required to have, but does not currently have, a flammable material storage permit or license from the Rockland Fire Department as required under Legal Requirements. The specific volume of flammable materials at the Rockland, Massachusetts facility as of the Closing Date will determine which of a license or permit is required. Globe acknowledges that the cost to obtain any license or permit described in this item 8 required by virtue of Globe's operations as of the Closing Date, is and shall be a Retained Globe Liability.

## Schedule 4.20 Employees (as of June 30, 2004)

|     | Name | Title | annual salary | hire date | Accrued vacation Hours |
|-----|------|-------|---------------|-----------|------------------------|
| 1.  | Alexander, William | Machine Shop Foreman | 42,000 | 10/19/1999 | 196.23 |
| 2.  | Alves, Antonio | Production Labor | 21,840 | 11/6/2002 | 92.89 |
| 3.  | Barbosa, Alvino | Molder | 21,840 | 11/12/2002 | 49.56 |
| 4.  | Barros, Aristide | Molder | 25,708 | 12/11/1995 | 99.25 |
| 5.  | Bessette, Joseph | Molder Technician | 42,224 | 5/1/2000 | 76.93 |
| 6.  | Blair, Larry | Molder | 33,176 | 5/3/1999 | 180.95 |
| 7.  | Bonelli, Carl | Fabricator | 44,928 | 9/13/1999 | 118.82 |
| 8.  | Brandao, Juvenal | Production Labor | 19,760 | 11/10/2003 | 49.52 |
| 9.  | Butler, Paul | Molder Technician | 20,800 | 1/19/2004 | 19.50 |
| 10. | Carlisle, Michael | Technical Sales | 30,000 | 11/3/2003 | 52.85 |
| 11. | Carreiro, Rui | Molding | 27,248 | 6/7/2004 | 6.16 |
| 12. | Charles, Frantz | Trim | 26,520 | 1/10/1994 | 139.23 |
| 13. | Croal, John | Molder Technician | 26,520 | 8/11/2003 | 65.53 |
| 14. | Croft, Maurice | Trim | 17,680 | 9/9/2002 | 0.00 |
| 15. | Cummings, Bernard | Model Shop Technician | 41,600 | 4/12/2004 | 19.50 |
| 16. | Dahlberg, Jason | Foreman (Special Projects) | 41,808 | 1/22/1996 | 72.21 |
| 17. | D'Arcy, Susanna | Accounting & Finance Specialist | 39,998 | 4/9/2003 | 30.71 |
| 18. | Davenport, Denise | Trim | 28,600 | 11/29/1999 | 90.25 |
| 19. | DeSimone, Fred | Mechanical Engineer | 40,000 | 1/19/2004 | 52.18 |
| 20. | Dion, Romeo | Molder, Director –Project | 36,504 | 4/20/1992 | 96.23 |
| 21. | Evans, Brian | Development | 80,000 | 2/24/2003 | 91.23 |
| 22. | Fasnacht, Roger | CFO | 120,000 | 3/29/2004 | 15.27 |
| 23. | Fogarty, Dennis | Production Machinist | 32,760 | 4/26/1999 | 52.95 |
| 24. | Foley, Charles | Customer Support | 48,500 | 6/14/1993 | 108.23 |
| 25. | Fox, Tam | CNC Machinist | 40,456 | 2/12/2003 | 109.54 |
| 26. | Freitas, Robin | Office Manager | 38,000 | 4/26/2004 | 12.83 |
| 27. | Gage, Nicholas | Molder | 18,720 | 6/25/2001 | 23.51 |
| 28. | Galloti, John | CNC Machinist | 40,040 | 3/8/2004 | 26.17 |
| 29. | Gerry, Michael | Molder | 29,432 | 2/23/1993 | 159.23 |

| | Name | Title | annual salary | hire date | Accrued vacation Hours |
|---|---|---|---|---|---|
| 30. | Gibson, Wendy | Scheduler | 37,440 | 4/16/1996 | 16.25 |
| 31. | Goncalves, Antonio | Production Labor | 20,800 | 11/10/2003 | 49.52 |
| 32. | Henson, John | Molder | 21,320 | 7/21/2002 | 76.20 |
| 33. | Janvier, Rigaud | Production Labor | 21,840 | 7/7/2003 | 79.53 |
| 34. | Jerrier, Lisa | Accounts Payable | 25,740 | 7/29/2002 | 57.86 |
| 35. | Karnes, Robert | Director, R&D | 80,500 | 9/8/1999 | 166.25 |
| 36. | King, Lisa | Buyer/Planner | 41,500 | 8/11/2003 | 37.53 |
| 37. | Larrett, Stephen | Shipper | 33,800 | 11/1/1999 | 80.85 |
| 38. | Leary, Donald | Molder | 26,520 | 6/24/1996 | 39.52 |
| 39. | Linscott, Michael | Receiver | 27,560 | 4/21/1997 | 176.22 |
| 40. | Littlefield, James | Molder | 24,960 | 1/8/2004 | 31.51 |
| 41. | Littlefield, Stephen | Molder Technician | 34,528 | 6/16/1986 | 137.18 |
| 42. | Lynch, Kevin | BUM – Military Handling | 56,078 | 3/9/1992 | 102.23 |
| 43. | MacDonald, Richard | Production Machinist | 33,800 | 8/24/1992 | 105.23 |
| 44. | McAvoy, Curtis | Production Labor | 21,424 | 12/11/2003 | 42.85 |
| 45. | Milewski, Slawomir | Machinist/Tool Maker | 59,488 | 6/28/1999 | 79.52 |
| 46. | Monteiro, Manuel | Production Labor | 21,320 | 12/5/2002 | 86.23 |
| 47. | Murray, Robert | Director - Production | 60,000 | 4/14/2003 | 112.23 |
| 48. | Nguyen, Dien | Production Machinist | 30,160 | 2/27/1998 | 0 |
| 49. | Orcutt, Stephen | Injection Molder | 35,360 | 12/2/2003 | 46.18 |
| 50. | Pendleton, Michael | Machinist/Tool Maker | 38,480 | 2/12/1996 | 109.56 |
| 51. | Peters, Robert | Machinist/Tool Maker | 47,840 | 3/17/1994 | 154.23 |
| 52. | Roberts, Thomas | Production, Manager | 55,100 | 7/18/1978 | 290.48 |
| 53. | Robertson, Scott | Molder | 29,120 | 7/19/2002 | 80.93 |
| 54. | Santos, Luiz | Production Labor | 13,650 | 12/19/2002 | 0.00 |
| 55. | Silveira, Jaider | Machinist | 29,120 | 4/27/2004 | 12.83 |
| 56. | Slaney, Paul | Controller | 72,000 | 5/12/2003 | 70.23 |
| 57. | Somerville, Richard | President | 160,000 | 2/29/2004 | 0.00 |
| 58. | Stetson, Dana | Material Manager | 55,000 | 12/8/2003 | 46.18 |
| 59. | Stoddard, Charles | QC Manager | 41,500 | 8/4/1986 | 177.61 |
| 60. | Walker, Nancy | QC Assistant | 37,440 | 4/2/1990 | 205.23 |
| 61. | Weixler, Michael | Shop Foreman | 45,032 | 1/3/1994 | 179.23 |
| 62. | Yost, Matthew | Molder | 30,160 | 10/24/1994 | 159.28 |
| 63. | Hobart, Micheal | Molder | 20,800 | 7/12/04 | NA as of 6/30 |

## Schedule 4.22 Intellectual Property

4.22(b)  Agreements

1.      Reference is made to the Globe Employees Work-for-Hire Agreements.

2.      Reference is made to the Patent Assignments.

4.22(c)  Ownership

1.      For the avoidance of doubt, the Somerville Intellectual Property is owned by Somerville and does not constitute Globe's Intellectual Property Assets.

2.   All or substantially all of the Globe Assets, including but not limited to Globe's Intellectual Property Assets, are subject to Encumbrances evidenced by UCC Financing Statements filed against Globe as Debtor:

3.   Reference is made to item 6 of Schedule 4.17(a) and those Globe employees identified therein that have not executed Globe Employees Work-for-Hire Agreements.

### 4.22(d)  Patents

1.   U.S. Patent Application 10/631,044, for Improved Track System for Tow-Line Conveyors

2.   U.S. Patent Application 10/631,046, for Non-Metallic Drive Chain

### 4.22(e)  Trademarks

1.   Marks currently used in Globe business:

"Globe Rubber Works, Inc."
"Globe Rubber Works"
"Globe Rubber"
"Drivesaver"
"Pioneers in Formulating the Non-Metalic Age"
"Polyuramide"

### 4.22(f)  Copyrights

No registered Copyrights

### 4.22(h)  Net Names

1.   globerubberworks.com

## Schedule 4.23  Relationships with Related Persons

1.   Reference is made to the Somerville Intellectual Property.

2.   Robert Roache, Somerville's brother-in-law, in 1995 made a $20,000 loan to Globe which is reflected as a Globe Liability on Globe's Year-End Balance Sheet. As of June 30, 2004, the total amount of indebtedness owed by Globe with respect to this loan was $43,846.  For the avoidance of doubt, this Globe liability is an Assumed Liability.

3.    Somerville is owed, as of July 31, 2004, $29,716.79, being the remaining outstanding balance under a promissory note dated August 14, 2000, executed by Globe, in the original principal amount of $33,669.00.  For the avoidance of doubt, this Globe liability is an Assumed Liability.

## Schedule 4.24   Necessary Approvals

Reference is made to item 3 of Schedule 4.2(b)(i) and the Governmental Authorizations identified therein.  For the avoidance of doubt, Legal Requirements applicable to the Governmental Authorizations require that KFGI notify the Department of Defense in connection with the Contemplated Transactions.

## Schedule 4.27   Globe's Facilities

Reference is made to the matters disclosed in items 7 and 8 of Schedule 4.19.

## Exhibit 2.1 ( c )
(consisting of 13 pages)

### Tangible Personal Property

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| Rockland, MA | 2 | Assorted | | Floor Drill, Belt & Disc, Grinder, DE Grinder | 3 pcs | 500 |
| Rockland, MA | 3 | Assorted | | Flammable Cabinet, Hyd. Pallet Lift | 2 pcs | 450 |
| Rockland, MA | 4 | Dayton | | 1 Ton Elec. Hoist, Trolley, Beam | 1 | 750 |
| Rockland, MA | 5 | | | 15' x 15' x 5' Wood Warming Box, Elec. Heat | 1 | 1,000 |
| Rockland, MA | 6 | Performax | Supermax Max-3 | 25 HD Wide Belt Sander, 24" x 6" | 1 | 1,750 |
| Rockland, MA | 7 | Assorted | | Barrel Rollers, VS Drives | 2 | 3,000 |
| Rockland, MA | 8 | Long Island Electric | 850H-EM30 | Elec. Oven, s/n 474, 20', Hoist | 1 | 3,500 |
| Rockland, MA | 9 | | | 275 Gal. Steel Mixing Tank, 48" Dia., Mixer, Pump, Stand | 1 | 1,000 |
| Rockland, MA | 10 | Blakeslee | B600 | 60 Qt. Mixer, s/n 37414 | 1 | 1,000 |
| Rockland, MA | 11 | Ohaus | Explorer | Digital Scale | 1 | 400 |
| Rockland, MA | 12 | Assorted | | Hand Truck, Cart, Hood, Truck, File | LOT | 300 |
| Rockland, MA | 13 | | | 18" Dia. Vacuum Tank w/ Pump | 1 | 500 |
| Rockland, MA | 14 | | | 18" Dia. Port. Vacuum Tank w/ Pump | 1 | 600 |
| Rockland, MA | 15 | Ramco | 810 | Granulator, s/n J-1272-13 | 1 | 750 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| Rockland, MA | 16 | Reed | 100TD | Injection Molder, 100 Ton, s/n P990605, Hopper, Advantage RSO-1250, HC-2JD2X Temp Control, s/n 6789 | 1 | 3,500 |
| Rockland, MA | 17 | Trubor | 75RS 1.5 | Injection Molder, s/n 7971-1, 75 Ton, Dri Air Dryer | 1 | 1,000 |
| Rockland, MA | 18 | Bry Air | RD-100 | Dryer, s/n 950211275, Hopper, Loader | 1 | 1,400 |
| Rockland, MA | 19 | French Oil | | Slab Side Hyd. Presses, 500 Ton, 36", 25 HP, Hyd. Unit, 1 Not in Service | 2 | 4,000 |
| Rockland, MA | 20 | Van Dorn | 300-RS-30F | Injection Molder, 1976, 300 Ton, 30 Oz., s/n 827 | 1 | 2,500 |
| Rockland, MA | 21 | Dri Air | Arid-X | Dryer, s/n's D5683, N/A | 2 | 200 |
| Rockland, MA | 22 | | | 2" Port. Rubber Extruder, VS Drive, Control | 1 | 1,000 |
| Rockland, MA | 23 | Eemco | | 10" x 24" 2 Roll Rubber Mill, s/n 63-432 | 1 | 7,000 |
| Rockland, MA | 24 | | | 6" x 12", 2 Roll Mill (NIS) | 1 | 1,000 |
| Rockland, MA | 25 | PHI | | 18" Hyd. Heated Platen Press, s/n 897 | 1 | 1,500 |
| Rockland, MA | 26 | Clifton | 501 | 14" x 14" Hyd. Transfer Compression Molder, 25 | 1 | 1,500 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | Ton, 1973 | | |
| Rockland, MA | 27 | Dake | 44-426 | Hyd. Press, Elec. Platen, 14", s/n 165790 | 1 | 1,000 |
| Rockland, MA | 28 | Clifton | 1461 | 1973, 4 Post Hyd. Press, 20" x 20", 50 Ton, s/n 763 | 1 | 4,000 |
| Rockland, MA | 29 | PHI | | 4 Post Hyd. Press, 250 Ton, 18" x 18" | 1 | 6,000 |
| Rockland, MA | 30 | Asbec | HD2430 | Tumbler, s/n CV-6 | 1 | 750 |
| Rockland, MA | 31 | Assorted | | Preformer, Blue M Ovens, Arbor Press, Elec. Hoist, Grinder, Fan, Ladder, Racks, Scales, Tumbler, Rolls, Gantry | LOT | 1,200 |
| Rockland, MA | 32 | Craftsman | | 10" Abrasive Cutoff Saw | 1 | 125 |
| Rockland, MA | 33 | Milltronics | Partner MB25-A | CNC Mill, s/n 4983, Centurion VI Control, 18" x 56" Table, Tooling | 1 | 17,500 |
| Rockland, MA | 34 | Crown | | Elec. Stacker | 1 | 125 |
| Rockland, MA | 35 | Hillyer | CNC 600 | Router, s/n 370, GA Control | 1 | 2,500 |
| Rockland, MA | 36 | Desma | 960A20T | 1986, Vert. Rubber Injection Molder, 440 Ton, 2.5# Shot Size, 24" x 32", 3 Regloplas Temp Controls | 1 | 15,000 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| Rockland, MA | 37 | Desma | 960A20T | 1986, Vert. Rubber Injection Molder, 440 Ton, 2.5# Shot Size, 24" x 32", 3 Regloplas Temp Controls (NIS) | 1 | 0 |
| Rockland, MA | 38 | Max Machinery Inc. | | 3 Component Mix, Meter & Dispensing Machine | 1 | 12,000 |
| Rockland, MA | 39 | Young & Bertke | | Gas Fired Oven, 2 Chamber, 8' x 8' x 12', 6' x 6' x 18' | 1 | 10,000 |
| Rockland, MA | 40 | | | 8 Compartment Elec. Ovens, Port. | 2 | 10,000 |
| Rockland, MA | 41 | | | 18" x 24" Autoclaves | 3 | 1,000 |
| Rockland, MA | 42 | Assorted | | Elec. Tray Ovens, Vacuum Tanks, Benches, Hot Plates, Chop Saw, Microwaves | LOT | 1,500 |
| Rockland, MA | 43 | PHI | P-210 | Hyd. Lab Press, 8" Elec. Platens, s/n 3152, 20 Ton | 1 | 750 |
| Rockland, MA | 44 | PHI | | Hyd. Press, 18" Elec. Platens, 75 Ton, s/n 601 | 1 | 2,500 |
| Rockland, MA | 45 | | | 16" x 30" Autoclaves | 5 | 2,500 |
| Rockland, MA | 46 | Despatch | | Elec. Tray Oven | 1 | 1,000 |
| Rockland, MA | 47 | Blue M | AGE 256G-3 | Elec. Oven, s/n A3-1502 | 1 | 1,000 |
| Rockland, MA | 49 | Mori Seiki | | 17" x 30" Lathe, s/n | 1 | 3,500 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | 12100, Tooling | | |
| Rockland, MA | 50 | Cincinnati | | 12.5" x 24" Lathe, s/n 1W2B5D-167, Tooling | 1 | 1,000 |
| Rockland, MA | 51 | Powermatic | 1150 | 15" VS Floor Drill, s/n 115V1074 | 1 | 500 |
| Rockland, MA | 52 | Assorted | | Grinders, Vises, Rotary Table, Clamps, Tools, Chucks, Benches, Cabinets | LOT | 5,000 |
| Rockland, MA | 54 | Kalamazoo | H9AW | Horiz. Band Saw, s/n 10452 | 1 | 1,750 |
| Rockland, MA | 55 | B&S | #2LH | 6" x 18" Surface Grinder | 1 | 150 |
| Rockland, MA | 56 | Powermatic | 5 | 24" Vert. Band Saw, s/n 66-206 | 1 | 2,500 |
| Rockland, MA | 57 | Dewalt | | Bench Mitre Saw | 1 | 300 |
| Rockland, MA | 58 | Powermatic | 15 | SS Planer, s/n 98150462 | 1 | 1,250 |
| Rockland, MA | 59 | Buffalo | | 10" Table Saw | 1 | 200 |
| Rockland, MA | 60 | Assorted | | Shelving, Paint Shaker, Pallet Lift, Racks, Chain, Fall, Totes, Drum Stands, Stacker | LOT | 1,200 |
| Rockland, MA | 61 | Assorted | | Scales, Tester, Hood | LOT | 550 |
| Rockland, MA | 62 | Nikon | 6C | 12" Profile Projector, s/n 10748 | 1 | 1,200 |
| Rockland, MA | 63 | Assorted | | Height Gage, Surface Gage, Centers, Surface | LOT | 2,750 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | Plates, Verniers, Mikes, Etc. | | |
| Rockland, MA | 64 | Assorted | | PC's, Furniture, Benches, Sealer, Files | LOT | 750 |
| Rockland, MA | 65 | Instron | 1011 | Tensil Tester | 1 | 2,000 |
| Rockland, MA | 66 | Powermatic | 1450 | 2 Spindle, 15" Drill, s/n 9151525 | 1 | 750 |
| Rockland, MA | 67 | Fortune | | 16" x 60" Gap Lathe, s/n 581837, Tooling, DRO, Tooling | 1 | 7,500 |
| Rockland, MA | 68 | First | | VS Vert. Mill, s/n 74060190, 3 HP, PF, 48" Table, DRO | 1 | 2,500 |
| Rockland, MA | 69 | Sharp | 1640C | 1997, 16" x 40" Gap Lathe, s/n 6808102, DRO, Tooling | 1 | 6,000 |
| Rockland, MA | 70 | Assorted | | Grinders, Vises, Tools, Tooling, Chain Fall, Benches, Shelving | LOT | 1,500 |
| Rockland, MA | 71 | Process Cooling | | Water Chilling System, Tank, Pumps, Filter, Cooling, Tower | 1 | 5,000 |
| Rockland, MA | 72 | Kinney | KDH130 | Vacuum Pump, s/n 266201 | 1 | 500 |
| Rockland, MA | 73 | Assorted | | Heated Spin Coating Cabinets | 2 | 1,000 |
| Rockland, MA | 74 | Assorted | | 10 Assorted Autoclaves | LOT | 5,000 |
| Rockland, MA | 75 | Assorted | | Scale, Vacuum Boxes, | LOT | 3,000 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | Ovens, Floor Drill, Hot Plates | | |
| Rockland, MA | 76 | AFP | | Hyd. Barrel Crusher, 5 HP | 1 | 1,000 |
| Rockland, MA | 77 | Assorted | | Pallet Racks, Pallet Lift, Hand Trucks, Tapers, Scales, Sealer, Label Printer, PC, Strap Truck, Pumps, Drum Truck, Stacker | LOT | 5,000 |
| Rockland, MA | 78 | Weightronix | W1-110 | 4' Digital Platform Scale, s/n 24307, 6000# | 1 | 1,000 |
| Rockland, MA | 79 | Wilton | | 6" x 12" Belt & Disc Grinder, s/n 30600 | 1 | 500 |
| Rockland, MA | 80 | Hotsy | | 24" Parts Washer | 1 | 1,000 |
| Rockland, MA | 81 | Trinco | | 24" Blast Cabinet w/ Collector | 1 | 400 |
| Rockland, MA | 82 | Skat Blast | | 6' Dry Blast Cabinet, Collector | 1 | 1,000 |
| Rockland, MA | 83 | Joy | | 40 HP Rotary Air Compressor, s/n 216233, 48,000 Hrs. | 1 | 4,000 |
| Rockland, MA | 84 | Process Heating | | 6' x 6' x 10', Gas Oven, s/n 1422 | 1 | 4,000 |
| Rockland, MA | 85 | Grieve | T500 | Elec. Oven, s/n 55812 | 1 | 2,000 |
| Rockland, MA | 86 | Sterlco | | 36" x 18' Autoclave, Hyd. Door, Heater | 1 | 5,000 |
| Rockland, MA | 87 | Assorted | | Vacuum Box & Floor Drill | 2 pcs | 500 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|----------|--------|--------------|-------|-------------|-----|-----|
| Rockland, MA | 88 | Joy Twistair | TA0220EAA2D5 | 50 HP, Air Compressor, 51K Hrs. | 1 | 4,000 |
| Rockland, MA | 89 | Deltech | HG750 | Air Dryer, s/n 872HG4872 | 1 | 1,000 |
| Rockland, MA | 90 | Miller | 185 | Port. Wire Feed Welder, s/n KJ019798 | 1 | 750 |
| Rockland, MA | 91 | Assorted | | Vacuum Pumps, Tools, Benches, Vises, Pump, Filler, Parts, Powcon Welder, Ladders, Etc. | LOT | 5,000 |
| Rockland, MA | 92 | Boy | 50T | 1982, 50 Ton, Injection Molder, s/n 51223 | 1 | 2,500 |
| Rockland, MA | 93 | Fluid Automation | CE4-55-55 | Twin Drum Pump, s/n 0318-94 | 1 | 3,000 |
| Rockland, MA | 94 | Assorted | | Freezer, Vacuum, Cabinet, Hoist, Vise, Bench | LOT | 750 |
| Rockland, MA | 95 | Assorted | | Foyer Furniture, Sofa Tables, Desks, Chairs, Partition Cubicles, Files, Laptops, Refigerator, Tables, Shredder, Meridian Phone System, Cabinets, Safe, Etc. | LOT | 8,500 |
| Rockland, MA | 95.1 | | | **** METAL SHOP **** | | |
| Rockland, MA | 96 | Miller | Millermatic 300 | Wire Feed Welder, s/n LC556582 | 1 | 2,500 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| Rockland, MA | 97 | Midwest | 60 | Stud Welder, s/n 100-9907-12 | 1 | 1,000 |
| Rockland, MA | 97.1 | | | 16" Power Hack Saw | 1 | 750 |
| Rockland, MA | 98 | Miller | Synchrowave 300 | Welder, s/n JB569989, SP4 Programmer | 1 | 1,500 |
| Rockland, MA | 99 | Thermal Dynamics | PAK Master 100XL | Plasma Cutter | 1 | 1,250 |
| Rockland, MA | 100 | Assorted | | Rockwell 6" Belt Grinder, Powermatic Bench Drill, Grinders, Handshear, Clamps, Hyd. Press, Oxy Acet Outfit, Tables, Cabinets, Tools, Etc. | LOT | 3,000 |
| **TOTAL ROCKLAND, MA** | | | | | | 248,800 |
| Leased Equipment, Whitman, MA | 101 | Allis Chalmers | C-50 | LPG Forklift, 4250# Cap., s/n ABR523829, Side Shift | 1 | 5,500 |
| Leased Equipment, Whitman, MA | 102 | Buffalo | | 15" Bench Drill | 1 | 200 |
| Leased Equipment, Whitman, MA | 103 | Industrial | | 20" Floor Drill w/ Tapper | 1 | 300 |
| Leased Equipment, Whitman, MA | 104 | Walker Turner | | 15" Bench Drill | 1 | 175 |
| Leased Equipment, Whitman, MA | 105 | Delta | | 17" Floor Drill | 1 | 250 |
| Leased Equipment, Whitman, MA | 106 | Harrison | | 13" x 36" Lathe, s/n 306789 w/ Tooling | 1 | 4,500 |
| Leased Equipment, Whitman, MA | 107 | Assorted | | Cab's, Bench, Vise, Mic's | LOT | 750 |
| Leased Equipment, Whitman, MA | 108 | Jet | 1550 | Engine Lathe, s/n 700511 w/ Tooling | 1 | 3,500 |
| Leased Equipment, Whitman, MA | 109 | Jet | | 18" x 60" Lathe, s/n 545 | 1 | 2,750 |
| Leased Equipment, Whitman, MA | 110 | Jet | | 13" x 40" Lathe, s/n | 1 | 1,500 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | N/A | | |
| Leased Equipment, Whitman, MA | 111 | Southbend | | 10" x 12" Turret Lathe, s/n 9009RKT11, Belt Drive, Tooling | 1 | 700 |
| Leased Equipment, Whitman, MA | 112 | Assorted | | Collets, Gages, Pins, Etc. | LOT | 700 |
| Leased Equipment, Whitman, MA | 113 | Producto | | Hand Tapper w/ Tooling | 1 | 350 |
| Leased Equipment, Whitman, MA | 114 | Walker Turner | | 16" Vert. Band Saw | 1 | 600 |
| Leased Equipment, Whitman, MA | 115 | | | 1" Belt Sander | 1 | 100 |
| Leased Equipment, Whitman, MA | 116 | Walker Turner | | 20" Floor Drill | 1 | 350 |
| Leased Equipment, Whitman, MA | 116.1 | Atrump | | Vari Speed 3 HP, Vert. Mill, s/n K3VL-404, 50" PF Table w/ Vise, DRO | 1 | 6,500 |
| Leased Equipment, Whitman, MA | 117 | Bridgeport | | 1 HP, Vert. Mill, s/n 234656, 48" PF Table, DRO | 1 | 2,500 |
| Leased Equipment, Whitman, MA | 118 | Harig | 618 | Hyd. Surface Grinder, s/n 5934-H | 1 | 2,750 |
| Leased Equipment, Whitman, MA | 119 | Assorted | | Cabinet Indexers, Cutters, Tapper, Etc. | LOT | 350 |
| Leased Equipment, Whitman, MA | 120 | Bridgeport | | 1 1/2 HP, Vari Speed Vert. Mill, 36" Table, s/n 117890 | 1 | 1,600 |
| Leased Equipment, Whitman, MA | 121 | Clausing | 8510 | Horiz. Miller, s/n 800691 w/ Vise | 1 | 600 |
| Leased Equipment, Whitman, MA | 122 | Jet | 5VI-642K | Vert. Mill, s/n 8909191-2, 48" Table | 1 | 2,500 |
| Leased Equipment, Whitman, MA | 123 | Bridgeport | | 1 HP, Vert. Mill, 48" PF Table, s/n 203200, | 1 | 2,000 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | DRO, Swivel Base Vise | | |
| Leased Equipment, Whitman, MA | 124 | Bridgeport | | 1 HP, Vert. Mill, 48" PF Table, s/n 192397, DRO, Swivel Base Vise | 1 | 1,900 |
| Leased Equipment, Whitman, MA | 125 | Assorted | | Vise, Bench, Cab, Cutters | LOT | 250 |
| Leased Equipment, Whitman, MA | 126 | Jones & Shipman | 1049 | Cyl. Grinder, 10" x 18", s/n WDX-22-23 | 1 | 1,250 |
| Leased Equipment, Whitman, MA | 127 | Assorted | | 2 Pcs. Disc Sanders | LOT | 350 |
| Leased Equipment, Whitman, MA | 128 | Cincinnati | | 14" x 72", Cyl. Grinder, s/n N/A | 1 | 750 |
| Leased Equipment, Whitman, MA | 129 | Southbend | | 24" x 9', Lathe w/ Dumore Tool Post Grinder, Belt Drive | 1 | 2,500 |
| Leased Equipment, Whitman, MA | 130 | Assorted | | Ki Saw, Band Saw, Hack Saw | 3 pcs | 900 |
| Leased Equipment, Whitman, MA | 131 | Sears | | 10" Table Saw | 1 | 100 |
| Leased Equipment, Whitman, MA | 132 | Clausing Colchester | | 15" x 48" Lathe, 2000 RPM, s/n 6-0015-14638 w/ Tooling | 1 | 5,000 |
| Leased Equipment, Whitman, MA | 133 | Assorted | | Sunnen Hone, Stacker, 6" Sander, Vise, Grinder, Arbor Press, Carbide Grinder, Welder, Cab's, Hardware | LOT | 1,200 |
| Leased Equipment, Whitman, MA | 134 | Assorted | | Pallet Racking, Shelves, Benches | LOT | 750 |
| Leased Equipment, Whitman, MA | 135 | | | 6" Stroke Sander, 3 | 1 | 1,000 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| | | | | HP, Shuttle Table | | |
| Leased Equipment, Whitman, MA | 136 | Randall | 1320 | 14" Roll Knife Slitter | 1 | 750 |
| Leased Equipment, Whitman, MA | 137 | USM | B | Hytronic Cutting Machine, s/n 3984-511 | 1 | 1,000 |
| Leased Equipment, Whitman, MA | 138 | Assorted | | Scale, Impulse Sealer, File, Circular Knife Cutter, Etc. | LOT | 400 |
| Leased Equipment, Whitman, MA | 139 | Champion | | 7.5 HP, Tank Mounted, Air Compressor | 1 | 1,500 |
| Leased Equipment, Whitman, MA | 140 | Assorted | | Power Tools | LOT | 450 |
| Leased Equipment, Whitman, MA | 141 | Mobile | | Hyd. Pallet Jack | 1 | 300 |
| Leased Equipment, Whitman, MA | 142 | Assorted | | Desk, PC, Printer, Files, Credenza, Copier | LOT | 750 |
| TOTAL LEASED WHITMAN, MA | | | | | | 62,125 |
| Leased Equipment, Rockland, MA | 1 | Halla | HLF-25 | LPG Forklift, 4700#, Triple Mast, s/n 1230K | 1 | 7,500 |
| Leased Equipment, Rockland, MA | 2 | Baule | UH4C/CV | 2000, Mix, Meter & Dispensing Machine, 4 Component Control, Curative Vacuum Loader, s/n 235-50, Spare Injector Unit | 1 | 95,000 |
| Leased Equipment, Rockland, MA | 3 | Z Corp. | Z400 | 3D Mold Making Machine, s/n 56130 | 1 | 21,000 |
| Leased Equipment, Rockland, MA | 4 | Atrump | K3SLF | Vert. Mills, s/n N/A, 50" Table, 3 HP, PF, VS, DRO | 2 | 13,000 |

| Location | LineID | Manufacturer | Model | Description | QTY | IPV |
|---|---|---|---|---|---|---|
| Leased Equipment, Rockland, MA | 5 | Hillyer | CNC 600 | Bridge Type Vert. Machining Center, s/n M457, GA Control, Auto Tool Change, 41" x 64.5" Table | 1 | 20.000 |
| Leased Equipment, Rockland, MA | 6 | HP | 800PS | 42" Color Plotter | 1 | 3,500 |
| Leased Equipment, Rockland, MA | 7 | Kaeser | TD61 | Industrial Dryer | 1 | 7.500 |
| **TOTAL LEASED ROCKLAND, MA** | | | | | | 167,500 |
| | | | | | | |
| **TOTAL IN-PLACE VALUE APPRAISAL** | | | | | | $478,425 |

## Additional Tangible Personal Property owned by Globe and located at Globe's Rockland, Massachusetts facility (new purchases since February 2004)

| | Cost | |
|---|---|---|
| 1/12/04 Drum Crusher | $5,545 | Advanced Manufacturing |
| 2/28/04 EDM Machine | $1,450 | Karl Anderson |
| 4/30/04 Engineering Laptop | $3,182 | Brian Evans |
| 4/30/04 Computer Equip. HP Printer | $1,599 | Applied Systems Consulting |
| 4/30/04 Phone System Upgrade | $5,276 | Alternative Communications |
| 4/30/04 Phone System Upgrade | $1,297 | Alternative Communications |
| 5/10/04 CNC Machine | $38,703 | Finn Auctioneers |
| 5/25/04 CADD Edge Software | $3,800 | CADD Edge |
| 5/31/04 Viawarp Software | $1,022 | Reclass Software Purchase |
| 6/1/04 Computer Equip. – Workstations And Server | $16,000 | HP Financial |
| 6/14/04 Pervasive SQL and Project Module | $7,069 | Global Shop Solutions |

Miscellaneous office furniture

EXHIBIT 4.2(b)(i)2

FIRST NATIONAL BANK OF NEW ENGLAND
LOAN PAY-OFF STATEMENTS

(consisting of 4 pages)

UPS Capital Business Credit
Product Support
280 Trumbull St.
Hartford, CT 06103
877.765.3184 Tel

July 27, 2004

Tarlow Breed Hart Murphy & Rodgers, P.C.
21 Custom House Street
Boston, MA 02110

Via Facsimile: 617-261-7673

RE:     Loan Name: Globe Rubber Works, Inc.
        Loan Number: 3000329-0001
Notification Date to Lender: July 26, 2004

Dear Client:

You have requested the payoff on the above mentioned SBA loan. According to the terms of your SBA loan, there is a three-week lead time to a payoff. Therefore, the interest calculated for payoff is to:                    **August 16, 2004**

You may pay this amount through:                    **August 16, 2004**
The applicable interest per diem must be added if payoff is made after this date.

| | | |
|---|---|---|
| Principal as of | 7/27/04 | $971,185.78 |
| Interest as of | 8/16/04 | 11,952.91 |
| Late fees as of | 7/26/04 | 565.67 |
| Escrow tax as of | 7/26/04 | -2,722.67 |
| | | |
| Total Payoff as of | 8/16/04 | $980,981.69 |

Per Diem                    $161.86

This payoff is good through     August 16, 2004     providing there is no further activity on this loan. If payment is not received within ten (10) days of the date on this letter, please contact Product Support for a revised payoff. Upon written request, releases will be forwarded to attorney, unless we are notified differently.

Payoff will be accepted via wire transfer as directed below:

Bank of America
ABA #111000012
For further credit to UPS Capital Business Credit
Account Number 3751804662
RE: Globe Rubber Works, Inc.
Payoff Loan Number     3000329-0001

If you have any questions, please call me at (860) 241-4766.

Sincerely,

*Julie Eason*

Julie Eason
Product Support



UPS Capital Business Credit
Product Support
280 Trumbull St.
Hartford, CT 06103
877.765.3184 Tel

July 27, 2004

Tarlow Breed Hart Murphy & Rodgers, P.C.
21 Custom House Street
Boston, MA 02110

Via Facsimile: 617-261-7673

RE:     Loan Name: Globe Rubber Works, Inc.
        Loan Number: 3000329-0002

Dear Client:

You have requested the payoff on the above mentioned loan.
The interest calculated for payoff is to:     July 28, 2004

You may pay this amount through:     July 28, 2004
The applicable interest per diem must be added if payoff is made after this date.

| Principal as of | 7/27/04 | $119,375.50 |
|---|---|---|
| Interest as of | 7/28/04 | 1,018.86 |
| Late Fees as of | 7/27/04 | 225.06 |
| Total Payoff as of | 7/28/04 | $120,619.42 |

Per Diem     $18.23

        This payoff is good through     July 28, 2004     providing there is no further activity
on this loan. If payment is not received within ten (10) days of the date on this letter, please
contact Product Support for a revised payoff. Upon written request, releases will be
forwarded to attorney, unless we are notified differently.

Payoff will be accepted via wire transfer as directed below:

        Bank of America
        ABA #111000012
        For further credit to UPS Capital Business Credit
        Account Number 3751804662
                RE: Globe Rubber Works, Inc.
                Payoff Loan Number     3000329-0002

If you have any questions, please call me at (860) 241-4766.

Sincerely,

*Julie Eason*

Julie Eason
Product Support



UPS Capital Business Credit
Product Support
280 Trumbull St.
Hartford, CT 06103
877.765.3184 Tel

July 27, 2004

Tarlow Breed Hart Murphy & Rodgers, P.C.
21 Custom House Street
Boston, MA 02110

Via Facsimile: 617-261-7673

RE:     Loan Name: Globe Rubber Works, Inc.
        Loan Number: 3000329-0003

Dear Client:

You have requested the payoff on the above mentioned loan.
The interest calculated for payoff is to:     July 28, 2004

You may pay this amount through:     July 28, 2004
The applicable interest per diem must be added if payoff is made after this date.

| Principal as of | 7/27/04 | $88,160.80 |
|---|---|---|
| Interest as of | 7/28/04 | 823.65 |
| Late Fees as of | 7/27/04 | 249.63 |
| Total Payoff as of | 7/28/04 | $89,234.08 |

Per Diem     $14.69

        This payoff is good through     July 28, 2004     providing there is no further activity
on this loan.  If payment is not received within ten (10) days of the date on this letter, please
contact Product Support for a revised payoff.  Upon written request, releases will be
forwarded to attorney, unless we are notified differently.

Payoff will be accepted via wire transfer as directed below:

        Bank of America
        ABA #111000012
        For further credit to UPS Capital Business Credit
        Account Number 3751804662
            RE: Globe Rubber Works, Inc.
                Payoff Loan Number     3000329-0003

If you have any questions, please call me at (860) 241-4766.

Sincerely,

*Julie Eason*

Julie Eason
Product Support

**EXHIBIT 4.6**

**UCC FINANCING STATEMENTS AGAINST GLOBE**

**(consisting of 29 pages)**

A.    <u>Secretary of the Commonwealth of Massachusetts Filings</u>:

1.    A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on November 13, 2000 at 9:33 a.m. as File No. 00755747 covering specific leased equipment (See copy attached and made a part hereof).

2.    A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Highland Capital Corp., as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on July 31, 2002 at 1:41 p.m. as File No. 200213791850 covering specific leased equipment (See copy attached and made a part hereof).

3.    A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to First National Bank of New England, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on May 19, 1998 at 4:03 p.m. as File No. 98551244, as affected by a UCC Continuation Statement filed with the Massachusetts Secretary of the Commonwealth on April 11, 2003 at 3:04 p.m. as File No. 200319784350, covering all or substantially all Globe's Assets (See copy attached and made a part hereof).

4.    A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to First National Bank of New England, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on May 19, 1998 at 4:04 p.m. as File No. 98551246, as affected by a UCC Continuation Statement filed with the Massachusetts Secretary of the Commonwealth on April 11, 2003 at 3:03 p.m. as File No. 200319784080, covering all or substantially all Globe's Assets (See copy attached and made a part hereof).

5.    A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to First International Bank, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on July 27, 1999 at 3:03 p.m. as File No. 99649546, as affected by a UCC Continuation Statement filed with the Massachusetts Secretary of the Commonwealth on June 25, 2004 at 4:33 p.m. as File No. 200430971770, covering all or substantially all Globe's Assets (See copy attached and made a part hereof).

6.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on August 2, 1999 at 11:02 a.m. as File No. 99650627, as assigned to Sovereign Bank, Network Capital Alliance, as Assignee, by UCC Assignment filed with the Massachusetts Secretary of the Commonwealth on December 8, 2000 at 10:37 a.m. as File No. 00761496, covering specific equipment (See copy attached and made a part hereof).

7.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on August 3, 1999 at 11:11 a.m. as File No. 99651058 covering specific equipment (See copy attached and made a part hereof).

8.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Kalm-Forsythe Global Innovations, Ltd., as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on February 19, 2004 at 2:50 p.m. as File No. 200427635290 covering all accounts receivable (See copy attached and made a part hereof).

9.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Dell Financial Services, L.P., as Secured Party, filed with the Massachusetts Secretary of the Commonwealth on April 16, 2004 at 1:35 p.m. as File No. 200429138870 covering specific leased computer equipment (See copy attached and made a part hereof).

The above UCC search was conducted at the Massachusetts Secretary of the Commonwealth, UCC Division. The search covers the period through the end of business on July 2, 2004.

B.  **Rockland Town Clerk Filings**:

1.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Rockland Town Clerk on August 2, 1999 at 9:00 a.m. as File No. 14189, as assigned to Sovereign Bank, Network Capital Alliance, as Assignee, by UCC Assignment filed with the Rockland Town Clerk on December 11, 2000 at 9:00 a.m. as File No. 14595, covering specific equipment (See copy attached and made a part hereof).

2.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Rockland Town Clerk on August 3, 1999 at 9:00 a.m. as File No. 14190, covering specific equipment (See copy attached and made a part hereof).

3.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to First International Bank, as Secured Party, filed with the Rockland Town Clerk on August 5, 1999 at 9:00 a.m. as File No. 14193, covering all or substantially all Globe's Assets (See copy attached and made a part hereof).

4.  A UCC-1 Financing Statement from Globe Rubber Works, Inc., as Debtor, to Textron Financial Corporation, as Secured Party, filed with the Rockland Town Clerk on November 13, 2000 at 9:00 a.m. as File No. 14575, covering specific equipment (See copy attached and made a part hereof).

The above UCC search results were taken from a July 21, 2004 report prepared by Capitol Services, Inc. and provided to Globe by KFGI. The search covers the period through the end of business on July 17, 2004.

2039617-40-1    SS
32000 TEXTRON 1

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

1 DEBTOR (LAST NAME FIRST IF AN INDIVIDUAL)
**GLOBE RUBBER WORKS, INC.**

1A SOCIAL SECURITY OR FEDERAL TAX NO

1B MAILING ADDRESS
**254 BEECH ST**

1C CITY, STATE
**ROCKLAND, MA**

1D ZIP CODE
**02370**

2 ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST · IF AN INDIVIDUAL)

2A SOCIAL SECURITY OR FEDERAL TAX NO

2B MAILING ADDRESS

2C CITY STATE

2D ZIP CODE

3 DEBTOR'S TRADE NAMES OR STYLES (IF ANY)

3A FEDERAL TAX NUMBER

4 SECURED PARTY
NAME
**Textron Financial Corporation**
MAILING ADDRESS
**4949 SW Meadows Road, Ste. 650**
CITY
**Lake Oswego**
STATE **OR**
ZIP CODE **97035**

4A SOCIAL SECURITY NO , FEDERAL TAX NO
OR BANK TRANSIT AND A B A NO
**056008768**

5 ASSIGNEE OF SECURED PARTY
NAME
MAILING ADDRESS
CITY
STATE
ZIP CODE

5A SOCIAL SECURITY NO , FEDERAL TAX NO
OR BANK TRANSIT AND A B A NO

6 This FINANCING STATEMENT covers the following types of items of property (include description of real property on which located and owner of record when required by instruction 4) of property

1 SOLIDWORKS 2000. CD-ROM. INCL DOCS1 SUBSCRIPTION SERVICE1 SW MDT MIGRATION PROMOTION1 CADD EDGE TRAINING Equipment/Lease No 00913510100006

7 CHECK
IF APPLICABLE    X    7A

PRODUCTS OF COLLATERAL
ARE ALSO COVERED

7B DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH
INSTRUCTION 5(a) ITEM
(1)    (2)    (3)    (4)

Filed With **Massachusetts**

8 CHECK
IF APPLICABLE    X

DEBTOR IS A TRANSMITTING UTILITY IN ACCORDANCE WITH UCC SECTION 9105 (1)(N)

X _[signature]_
**GLOBE RUBBER WORKS, INC.**
**RICHARD SOMERVILLE**
**ATTORNEY-IN-FACT**
TYPE OR PRINT NAME(S) OF DEBTOR(S)

X _[signature]_
SIGNATURE(S) OF SECURED PARTY(IES)
**Textron Financial Corporation**
**ATTORNEY IN-FACT**
TYPE OR PRINT NAME(S) OF SECURED PARTY(IES)

10 THIS SPACE FOR USE OF FILING OFFICER
(DATE TIME FILE NUMBER
AND FILING OFFICER)

11 RETURN COPY TO

Equipment/Lease No: 00913510100006

NAME    **UCC Direct Services**
ADDRESS    **P.O. Box 29071**
CITY    **Glendale**
STATE    **CA**
ZIP CODE    **91209-9071**

**(800) 331-3282**
**(818) 662-4141**

755747

FORM UCC 1

00755747

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282    Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

UCC Direct Services        509759 1HIGHLANDCAP
P.O. Box 29071             5512456-40-1
Glendale, CA 91209-9071

File with: Massachusetts

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
GLOBE RUBBER WORKS, INC.

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 254 BEECH STREET | ROCKLAND | MA | 02370 | |

1d. TAX ID #: SSN OR EIN   ADD'L INFO RE ORGANIZATION DEBTOR
1e. TYPE OF ORGANIZATION: Corporation
1f. JURISDICTION OF ORGANIZATION: MA
1g. ORGANIZATIONAL ID #, if any: 041371290   ☐ NONE

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(empty)   ☐ NONE

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Highland Capital Corp.

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5 Center Avenue | Little Falls | NJ | 07424 | |

4. This FINANCING STATEMENT covers the following collateral:
(1) Z400 MONOCHROME 3D PRINTER WITH STARTER KIT AND DE-POWDERER 200210000 TOGETHER WITH ALL REPLACEMENTS, UPGRADES, REPLACEABLE PARTS, REPAIRS, ADDITIONS, SUBSTITUTIONS, ACCESSORIES, PROCEEDS THEREFROM, AND INSURANCE PROCEEDS, IF ANY (COLLECTIVELY REFERRED TO AS "EQUIPMENT") THIS FINANCING STATEMENT IS BEING RECORDED PURSUANT TO A LEASE AGREEMENT BETWEEN THE SECURED PARTY AND THE DEBTOR FOR NOTICE PURPOSES ONLY AND SHALL NOT BE DEEMED TO GRANT THE DEBTOR ANY PROPERTY INTEREST IN THE EQUIPMENT OR INSURANCE PROCEEDS, IF ANY.

5. ALTERNATIVE DESIGNATION (if applicable)  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

8. OPTIONAL FILER REFERENCE DATA
5512456-184-30-0                    20021000

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)



Globe Rubber Works, Inc.
254 Beach Street
Rockland, MA  02370

First National Bank
of New England
One Commercial Plaza
Hartford, CT  06103

5.5/124/78

RE: Term Loan

The property of the Debtor, more fully described on Exhibit A attached hereto and incorporated herein by reference, including products and proceeds therefrom.

filed with the Secretary of State

Globe Rubber Works, Inc.

By: _____
Richard C. Somerville, President

551244

**Exhibit A**
**(Collateral Description)**

Debtor:                                      Secured Party:

Globe Rubber Works, Inc.                     First National
254 Beech Street                             Bank of New England
Rockland, MA 02370                           One Commercial Plaza
                                             Hartford, CT 06103

(a)  all equipment, as that term is defined in Article 9 of
the Uniform Commercial Code as in affect from time-to-time in the
Commonwealth of Massachusetts (the "UCC"), and, in any event, shall
include without limitation, all machinery, tools, dyes, equipment,
furnishings, fixtures, leasehold improvements, vehicles (other than
motor vehicles) and computers and other electronic data processing
and other office equipment, now owned or hereafter acquired, any
and all additions, substitutions and replacements of any of the
foregoing   wherever located; together with all attachments,
components, parts, equipment and accessories installed thereon or
affixed thereto, and all contracts, contract rights and chattel
paper arising out of any lease of any of the foregoing;

(b)  all proceeds, as that term is defined in Article 9 of the
UCC, now owned or hereafter acquired, and, in any event, shall
include (a) any and all accounts, chattel paper, instruments, cash
and other proceeds payable to the Debtor from time-to-time in
respect of any of the foregoing collateral security, (b) any and
all proceeds of any insurance, indemnity, warranty or guaranty
payable to the Debtor from time-to-time with respect to any of the
collateral security, (c) any and all payments (in any form
whatsoever) made or due and payable to the Debtor from time-to-time
in connection with any requisition, confiscation, condemnation,
seizure or forfeiture of all or any part of the collateral security
by any governmental body, authority, bureau or agency (or any
person acting under color of governmental authority), and (d) any
and all other amounts from time-to-time paid or payable under or in
connection with any of the collateral security;

(c)  all other collateral in which the Debtor may hereafter
grant to the Secured Party a security interest; and

(d)  all renewals, substitutions, replacements, additions,
accessions and products of any and all of the foregoing.

-1-

4

MA SOC   Filing Number: 200319784350   Date: 04/11/2003 3:04:00 PM

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
    Phone (800) 331-3282   Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)   509201 IFIRST NATIONAL2

    UCC Direct Services                5764450.1
    P.O. Box 29071
    Glendale, CA 91209-9071            MAMA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 98551244  05-19-98  SS  MA | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
    Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
    ☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.
    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable)

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7e. TAX ID#: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7f. TYPE OF ORGANIZATION | 7i. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
    Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIRST NATIONAL BANK OF NEW ENGLAND | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
5764450.61 Debtor Name: GLOBE RUBBER WORKS, INC.   4 02050

Prepared by UCC Direct Services, P.O. Box 29071
Glendale, CA 91209-9071  Tel (800) 331-3282

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)



Globe Rubber Works, Inc.
254 Beech Hill Road - Street
Rockland, MA 02370

First National Bank
of New England
One Commercial Plaza
Hartford, CT 06103

551246

88 MAY 10 PM

The property of the Debtor, more fully described on Exhibit A attached hereto
and incorporated herein by reference, including products and proceeds therefrom.

RE: SBA Loan

Filed with the Secretary of State

Globe Rubber Works, Inc.

By: Richard C. Somerville, President

55/246

## Exhibit A
### (Collateral Description)

Debtor:

Globe Rubber Works, Inc.
254 Beech Street
Rockland, MA 02370

Secured Party:

First National
Bank of New England
One Commercial Plaza
Hartford, CT 06103

(a) all accounts, as that term is defined in Article 9 of the Uniform Commercial Code as in effect from time to time in the Commonwealth of Massachusetts (the "UCC"), now owned or hereafter acquired, and, in any event, shall include any right to payment held by Debtor, whether in the form of accounts receivable, notes, drafts, acceptances or other forms of obligations and receivables, now owned or hereafter received or acquired by or belonging or owing to the Debtor (including, without limitation, under any trade name, style or division thereof) for inventory sold or leased or services rendered by it whether or not earned by performance, together with all guarantees and security therefor and all proceeds thereof, whether cash proceeds or otherwise, including, without limitation, all right, title and interest of Debtor in the inventory which gave rise to any such accounts, including, without limitation, unpaid seller's rights of rescission, replevin, reclamation and stoppage in transit and rights to returned, reclaimed, rejected or repossessed inventory or other goods;

(b) all chattel paper, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include any writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods, whether now or hereafter held by Debtor;

(c) all contracts, undertakings, franchise agreements or other agreements (other than rights evidenced by chattel paper, documents or instruments, as those terms are defined above and below), now owned or hereafter acquired, in or under which the Debtor may now or hereafter have any right, title or interest, including, without limitation, with respect to an account, and any agreement relating to the terms of payment or the terms of performance thereof;

(d) all documents, as that term is defined in Article 9 of the UCC now owned or hereafter acquired;

(e) all equipment, as that term is defined in Article 9 of the UCC, and, in any event, shall include, without limitation, all machinery, tools, dyes, equipment, furnishings, fixtures, leasehold improvements, vehicles (other than motor vehicles) and computers and other electronic data processing and other office equipment,

-1-

now owned or hereafter acquired, any and all additions, substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto, and all contracts, contract rights and chattel paper arising out of any lease of any of the foregoing;

(f) all general intangibles, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include all right, title and interest which the Debtor may now or hereafter have in or under any contract, all customer lists, trademarks, patents, rights in intellectual property, interests in partnerships, joint ventures and other business associations, licenses, permits, copyrights, trade secrets, proprietary or confidential information, inventions (whether or not patented or patentable), technical information, procedures, designs, knowledge, know-how, software, data bases, data, skill, expertise, recipes, experience, processes, models, drawings, blueprints, catalogs, materials and records, goodwill (including, without limitation, the goodwill associated with any trademark, trademark registration or trademark licensed under any trademark license), claims in or under insurance policies, including unearned premiums, uncertificated securities, deposit accounts, rights to receive tax refunds, and other payments and rights of indemnification.

(g) all instruments, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include any negotiable instrument or certificated security, as defined in Article 8 of the UCC, or any other writing which evidences a right to the payment of money and is not itself an instrument that constitutes, or is a part of a group of writings that constitutes, chattel paper, and is of a type which, in the ordinary course of business, is transferred by delivery with any necessary endorsement or assignment, whether now or hereafter held by Debtor;

(h) all inventory, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, wherever located, and, in any event, shall include all inventory, merchandise, goods and other personal property which are held by or on behalf of the Debtor for sale or lease or are furnished or are to be furnished under a contract of service or which constitute raw materials, work in process or materials used or consumed or to be used or consumed in the Debtor's business or the processing, packaging, promotion, delivery or shipping of the same, and all finished goods, whether or not the same is in transit or in the constructive, actual or

-2-

exclusive occupancy or possession of the Debtor or is held by the Debtor or by others for the Debtor's account, including without limitation, all goods covered by purchase orders and all goods billed and held by suppliers and all inventory which may be located on premises of the Debtor or of any carriers, forwarding agents, truckers, warehousemen, vendors, selling agents or other persons;

(i) all proceeds, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include (a) any and all accounts, chattel paper, instruments, cash and other proceeds payable to the Debtor from time-to-time in respect of any of the foregoing collateral security, (b) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time-to-time with respect to any of the collateral security, (c) any and all payments (in any form whatsoever) made or due and payable to the Debtor from time-to-time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the collateral security by any governmental body, authority, bureau or agency (or any person acting under color of governmental authority), and (d) any and all other amounts from time-to-time paid or payable under or in connection with any of the collateral security;

(j) all other collateral in which the Debtor may hereafter grant to the Secured Party a security interest; and

(k) all renewals, substitutions, replacements, additions, accessions and products of any and all of the foregoing.

-3-

MA SOC    Filing Number: 200319784080    Date: 04/11/2003 3:03:00 PM

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]
Phone (800) 331-3282    Fax (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Mailing Address)    509201 IFIRSTNATIONAL2

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

5764446.1

MAMA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
98551246  05-19-98  SS  MA

| 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] [or recorded] in the REAL ESTATE RECORDS. |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. TAX ID#: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME |
|---|
| FIRST NATIONAL BANK OF NEW ENGLAND |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
5764446.1 Debtor Name: GLOBE RUBBER WORKS, INC.  4 02050

Prepared by UCC Direct Services, P.O. Box 29071
Glendale, CA 91209-9071  Tel (800) 331-3282

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

Globe Rubber Works, Inc.
254 Beech Street
Rockland, MA 02370

First International Bank
280 Trumbull Street
Hartford, CT 06103

The property of the Debtor, as more fully described
on Exhibit A attached hereto and incorporated herein
by reference.

Filed with: Secretary of State

Globe Rubber Works, Inc.

By: _____
Richard C. Somerville, President

**Exhibit A**
**(Collateral Description)**

649546

Debtor:

Globe Rubber Works, Inc.
254 Beech Street
Rockland, MA 02370

Secured Party:

First International Bank
280 Trumbull Street
Hartford, CT 06103

(a)  all accounts, as that term is defined in Article 9 of the Uniform Commercial Code as in effect from time-to-time in the Commonwealth of Massachusetts (the "UCC"), now owned or hereafter acquired, and, in any event, shall include any right to payment held by Debtor, whether in the form of accounts receivable, notes, drafts, acceptances or other forms of obligations and receivables, now owned or hereafter received or acquired by or belonging or owing to the Debtor (including, without limitation, under any trade name, style or division thereof) for inventory sold or leased or services rendered by it whether or not earned by performing, together with all guarantees and security therefor and all proceeds thereof, whether cash proceeds or otherwise, including, without limitation, all right, title and interest of Debtor in the inventory which gave rise to any such accounts, including without limitation, unpaid seller's rights of rescission, replevin, reclamation and stoppage in transit and rights to returned, reclaimed, rejected or repossessed inventory or other goods;

(b)  all chattel paper, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include any writing or writings which evidence both a monetary obligation and a security interest in, or a lease of specific goods, whether now or hereafter held by Debtor;

(c)  all contracts, undertakings, franchise agreements or other agreements (other than rights evidenced by chattel paper, documents or instruments, as those terms are defined above and below), now owned or hereafter acquired, in or under which the Debtor may now or hereafter have any right, title or interest, including, without limitation, with respect to an account, and any agreement relating to the terms of payment or the terms of performance thereof;

(d)  all documents, as that term is defined in Article 9 of the UCC now owned or hereafter acquired;

(e)  all equipment, as that term is defined in Article 9 of the UCC, and, in any event, shall include, without limitation, all machinery, tools, dyes, equipment, furnishings, fixtures, leasehold improvements, vehicles (other than motor vehicles) and computers and other electronic data processing and other office equipment, now owned or hereafter acquired, any and all additions,

-1-

substitutions and replacements of any of the foregoing, wherever located, together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto, and all contracts, contract rights and chattel paper arising out of any lease of any of the foregoing;

(f) all general intangibles, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include all right, title and interest which the Debtor may now or hereafter have in or under any contract, all customer lists, trademarks, patents, rights in intellectual property, interests in partnerships, joint ventures and other business associations, licenses, permits, copyrights, trade secrets, proprietary or confidential information, inventions (whether or not patented or patentable), technical information, procedures, designs, knowledge, know-how, software, data bases, data, skill, expertise, recipes, experience, processes, models, drawings, blueprints, catalogs, materials and records, goodwill (including, without limitation, the goodwill associated with any trademark, trademark registration or trademark licensed under any trademark license), claims in or under insurance policies, including unearned premiums, uncertificated securities, deposit accounts, rights to receive tax refunds and other payments and rights of indemnification;

(g) all instruments, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include any negotiable instrument or certificated security, as defined in Article 8 of the UCC, or any other writing which evidences a right to the payment of money and is not itself an instrument that constitutes, or is a part of a group or writings that constitute, chattel paper, and is of a type which, in the ordinary course of business, is transferred by delivery with any necessary endorsement or assignment, whether now or hereafter held by Debtor;

(h) all inventory, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, wherever located, and, in any event, shall include all inventory, merchandise, goods and other personal property which are held by or on behalf of the Debtor for sale or lease or are furnished or are to be furnished under a contract of service or which constitute raw materials, work in process or materials used or consumed or to be used or consumed in the Debtor's business, or the processing, packaging, promotion, delivery or shipping of the same, and all finished goods, whether or not the same is in transit or in the constructive, actual or exclusive occupancy or possession of the Debtor or is held by the

Debtor or by others for the Debtor's account, including, without limitation, all goods covered by purchase orders and contracts with suppliers and all goods billed and held by suppliers and all inventory which may be located on premises of the Debtor or of any carriers, forwarding agents, truckers, warehousemen, vendors, selling agents or other persons;

(i) all proceeds, as that term is defined in Article 9 of the UCC, now owned or hereafter acquired, and, in any event, shall include (a) any and all accounts, chattel paper, instruments, cash and other proceeds payable to the Debtor from time-to-time in respect of any of the foregoing collateral security, (b) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time-to-time with respect to any of the collateral security, (c) any and all payments (in any form whatsoever) made or due and payable to the Debtor from time-to-time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of the collateral security by any governmental body, authority, bureau or agency (or any person acting under color of governmental authority), and (d) any and all other amounts from time-to-time paid or payable under or in connection with any of the collateral security;

(j) all other collateral in which the Debtor may hereafter grant to the Secured Party a security interest; and

(k) all renewals, substitutions, replacements, additions, accessions and products of any and all of the foregoing.

-3-

MA SOC   Filing Number: 200430971770   Date: 6/25/2004 4:33:00 PM

# UCC-3 Form  - Continuation

Original File Number: 99649546    Original File Date: 7/27/1999 3:03:00 PM

FILER INFORMATION
  Full name: UCC DIRECT SERVICES    Phone: (800) 331-328
CONTACT INFORMATION
  Contact name: GISELLA MELENDEZ
  Street #1: 330 N. BRAND BLVD., SUITE 700
  Street #2: DFS NO: 6291386.1
  City: GLENDALE    State: CA    ZIP: 91203    Country: USA
  Notification Method: E-Mail    Email: sosack@uccdirect.com

DEBTOR INFORMATION
  Org. Name: GLOBE RUBBER WORKS, INC.
  Mailing Address1: 254 BEECH ST.
  City: ROCKLAND    State: MA    ZIP: 02370    Country:

SECURED PARTY INFORMATION
  Org. Name: FIRST INTERNATIONAL BANK
  Mailing Address1: 280 TRUMBULL ST.
  City: HARTFORD    State: CT    ZIP: 06103    Country:

TRANSACTION TYPE: STANDARD

0-793-0

1957577-40-1  55
82272 TEXTRON2

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

023242540

GLOBE RUBBER WORKS INC

ROCKLAND, MA

02370

234 BEECH ST

Textron Financial Corporation
40 Westminster Street
Providence       STATE  RI    ZIP CODE  02940

056008768

The property described below includes all replacement parts, additions, and accessory items · 1 CAD·CAM SYSTEM

X

X

X

GLOBE RUBBER WORKS, INC
FORMERLY SOMERVILLE
Attorney-In-Fact

X

Textron Financial Corporation
Attorney-In-Fact

Data Filing Services
P.O. Box 29071
Glendale
CA
91209-9071

(800) 331-3282
(818) 662-4143

99650627

(1) FILING OFFICER COPY

1957577.1-302

93616 TEXTRON.1

This STATEMENT is presented for filing pursuant to the Uniform Commercial Code

| 1. FILE NO OF ORIG FINANCING STATEMENT | 1A. DATE OF FILING OF ORIG FINANCING STATEMENT | 1B. DATE OF ORIG. FINANCING STATEMENT | 1C. PLACE OF FILING ORIG FINANCING STATEMENT |
|---|---|---|---|
| 0627 | 08-02-99 | | Massachusetts |

2A. SOCIAL SECURITY NO. FEDERAL TAX NO.
023242540

2. DEBTOR (LAST NAME FIRST)
GLOBE RUBBER WORKS, INC.

2D. ZIP CODE
02370

2B. MAILING ADDRESS
254 BEECH ST

2C. CITY, STATE
ROCKLAND, MA

3A. SOCIAL SECURITY OR FEDERAL TAX NO.

3. ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST)

3C. CITY, STATE

3D. ZIP CODE

3B. MAILING ADDRESS

4A. SOCIAL SECURITY NO. FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO.

4. SECURED PARTY NAME Textron Financial Corporation
MAILING ADDRESS    40 Westminster Street
CITY  Providence    STATE  RI    ZIP CODE  02940

5A. SOCIAL SECURITY NO. FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO
23-1237295

5. ASSIGNEE OF SECURED PARTY (IF ANY)
NAME  SOVEREIGN BANK
NETWORK CAPITAL ALLIANCE
MAILING ADDRESS  368 VETERANS HIGHWAY
CITY  COMMACK    STATE  NY    ZIP CODE  11725

6. A  CONTINUATION- The original Financing Statement between the foregoing Debtor and Secured Party bearing the file number and date shown above is continued. If collateral is crops or timber, check here and insert description of real property on which growing or to be grown in Item 7 below.

B  RELEASE- From the collateral described in the Financing Statement bearing the file number shown above, the Secured Party releases the collateral described in Item 7 below.

C  X  ASSIGNMENT- The Secured Party certifies that the Secured Party has assigned to the Assignee above named, the Secured Party's rights under the Financing Statement bearing the file number shown above in the collateral described in Item 7 below.

D  TERMINATION- The Secured Party certifies that the Secured Party no longer claims a security interest under Financing Statement bearing the file number shown above.

E  AMENDMENT- The Financing Statement bearing the file number shown above is amended as set forth in Item 7 below. (Signature of Debtor required on all amendments.)

F  OTHER

7.
SOVEREIGN BANK,
NETWORK CAPITAL ALLIANCE
368 VETERANS HIGHWAY
COMMACK, NY 11725
FULL ASSIGNMENT. ALL COLLATERAL ON ORIGINAL FINANCING STATEMENT.

8.    Equipment/Lease No: 91351-05    (DATE)

GLOBE RUBBER WORKS, INC.
DEBTOR SIGNATURE NOT REQUIRED

| | |
|---|---|
| C O D E | 9. This Space Use of Filing Officer (Date, Time, Filing Office) |
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |

By _____
SIGNATURE(S) OF DEBTOR(S)    (TITLE)

Textron Financial Corporation

By  ATTORNEY-IN-FACT _____
SIGNATURE(S) OF SECURED PARTY(IES)    (TITLE)

10.    Return Copy to
NAME  UCC Direct Services
ADDRESS  P.O. Box 29071
AND    Glendale
re    CA
91209-9071

(800) 331-3282
(818) 662-4141

Uniform Commercial Code — Form UCC-2
Prepared with UCC Direct for Windows  Data File Services, Inc.  P.O. Box 275  Van Nuys  CA  91408-0275  Tel (818) 900-2200

(1) FILING OFFICER COPY

1957577-40-1
91272 TEXTROH2

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code

023242540

GLOBE RUBBER WORKS, INC

CITY, STATE
ROCKLAND, MA                    ZIP CODE
02370

254 BEECH ST

SOCIAL SECURITY OR FEDERAL TAX NO.

DEBTOR (LAST NAME FIRST - IF AN INDIVIDUAL)

CITY, STATE                    ZIP CODE

MAILING ADDRESS

FEDERAL TAX NUMBER

DEBTOR'S TRADE NAMES OR STYLES (IF ANY)

SOCIAL SECURITY NO. FEDERAL TAX NO.
OR BANK TRANSIT AND A.B.L. NO.

SECURED PARTY        Textron Financial Corporation
NAME

056006768

MAILING ADDRESS     40 Westminster Street

Providence                    STATE   RI    ZIP CODE   02940

SOCIAL SECURITY NO. FEDERAL TAX NO.
OR BANK TRANSIT AND A.B.A. NO.

ASSIGNEE OF SECURED PARTY
NAME

MAILING ADDRESS

STATE                ZIP CODE

This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction 4)

The property described below includes all replacement parts, additions, and accessory items : 1 CAD CAM SYSTEM

X    PRODUCTS OF COLLATERAL
ARE ALSO COVERED

Filed With        Massachusetts

X                    Attorney-In-Fact

X
GLOBE RUBBER WORKS, INC
RICHARD C SOMERVILLE

X
Textron Financial Corporation

Data Filing Services        (800) 331-3282
P O box 29071              (818) 662-4141
Glendale
CA
91209-0071

99 651058

FORM UCC
Approved by the Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Kalm-Forsythe Global Innovations, Ltd.
3922 Windsor Avenue
Dallas, TX 75205

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME Globe Rubber Works, Inc. | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS 254 Beech Street | CITY Rockland | STATE MA | POSTAL CODE 02370 | COUNTRY USA |
| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION Massachusetts | 1g. ORGANIZATIONAL ID #, if any ☑ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME Kalm-Forsythe Global Innovations, Ltd. | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS 3922 Windsor Avenue | CITY Dallas | STATE TX | POSTAL CODE 75205 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:

All accounts receivable of Debtor, pursuant to that certain Promissory Note from Debtor to Secured Party dated February 17, 2004.

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
GLO100-001 / Commonwealth of Massachusetts

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Diligenz, Inc.    1-800-858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

┌─────────────────────────────────────────┐
│ 7903845                                   │
│ Diligenz, Inc.                            │
│ 6500 Harbour Heights Pkwy, Suite 400      │
│ Mukilteo, WA 98275                        │
│                                           │
│              Filed In: Massachusetts (S.O.S.) │
└─────────────────────────────────────────┘

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
GLOBE RUBBER WORKS, INC

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|
|    |                           |            |             |        |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| 254 BEECH ST | ROCKLAND | MA | 02370 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|--------------------------|-----------------------------------|--------------------------|----------------------------------|---------------------------------|
|  |  | Corp. | MA | 041371290 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|
|    |                           |            |             |        |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
|  |  |  |  |  |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|--------------------------|-----------------------------------|--------------------------|----------------------------------|---------------------------------|
|  |  |  |  |  | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Dell Financial Services, L.P.

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|---------------------------|------------|-------------|--------|
|    |                           |            |             |        |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| 12234 N. IH-35, Bldg. B | Austin | TX | 78753 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All computer equipment and peripherals (collectively Equipment) wherever located heretofore or hereafter leased to Lessee by Lessor pursuant to that certain Equipment Lease #006321940-003 dated APRIL 13, 2004, and/or any other Equipment leased pursuant to Leases that are in substantially the same form attached, including without limitation all substitutions, additions accessions and replacements thereto, and thereof, now or hereafter installed in, affixed to, or used in, conjunction with the Equipment and proceeds thereof together with all rental or installment payments, insurance proceeds, other proceeds and payments due and to become due and arising from or relating to said Equipment.

| 5. ALTERNATIVE DESIGNATION (if applicable): ☒ LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE)    (optional) | | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA

7903845

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
61014-21-817926

# CAPITOL SERVICES, INC.



**CAPITOL SERVICES, INC**

**CAPITOL CORPORATE SERVICES, INC.**

| | | |
|---|---|---|
| **Date:** | 07/21/2004 | **Copies Requested:** Copies updated from |
| **Subject:** | Globe Rubber Works, Inc. | **Copy Update:** 07/19/2003 |
| **Jurisdiction:** | Town of Rockland, Plymouth County, MA | |
| **Index Searched:** | UCC | **Reference:** 41932-2 |

**Searched Through:** 07/17/2004

| File Date | File # | Type of Filing | Secured Party |
|---|---|---|---|
| 08/02/1999 | 14189 | Financing Statement | TEXTRON FINANCIAL CORPORATION PROVIDENCE, RI |
| 12/11/2000 | 14595 | Assignment | SOVEREIGN BANK COMMACK, NY |
| 08/03/1999 | 14190 | Financing Statement | TEXTRON FINANCIAL CORPORATION PROVIDENCE, RI |
| 08/05/1999 | 14193 | Financing Statement | FIRST INTERNATIONAL BANK HARTFORD, CT |

CAPITOL SERVICES, INC. MAKES NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY REGARDING THIS
SEARCH REPORT. THE PARTIES AGREE THAT ALL LIABILITY RELATING TO THIS REPORT SHALL BE LIMITED TO AN
OUNT EQUAL TO THE FEE PAID BY THE CUSTOMER FOR THIS REPORT.

LEGALTRIEVE INFO

07/20/2004  15:06   5082384678

1957577-40-2
92272 TEXTRON2

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| | | | |
|---|---|---|---|
| 1TOR (LAST NAME FIRST IF AN INDIVIDUAL) GLOBE RUBBER WORKS, INC. | | | 1A. SOCIAL SECURITY OR FEDERAL TAX NO. 023242540 |
| 1B. MAILING ADDRESS 254 BEECH ST | 1C. CITY, STATE ROCKLAND, MA | | 1D. ZIP CODE 02370 |
| 2. ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST · IF AN INDIVIDUAL) | | | 2A. SOCIAL SECURITY OR FEDERAL TAX NO. |
| 2B. MAILING ADDRESS | 2C. CITY, STATE | | 2D. ZIP CODE |
| 3. DEBTOR'S TRADE NAMES OR STYLES (IF ANY) | | | 3A. FEDERAL TAX NUMBER |

| | | | |
|---|---|---|---|
| 4. SECURED PARTY NAME | Textron Financial Corporation | | 4A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. 056008768 |
| MAILING ADDRESS | 40 Westminster Street | | |
| CITY | Providence    STATE  RI    ZIP CODE  02940 | | |
| 5. ASSIGNEE OF SECURED PARTY NAME | | | 5A. SOCIAL SECURITY NO, FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. |
| MAILING ADDRESS | | | |
| CITY | STATE    ZIP CODE | | |

6. This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction · 4.)

"The property described below includes all replacement parts, additions, and accessory items." 1 CAD CAM SYSTEM

| | | | |
|---|---|---|---|
| 7. CHECK IF APPLICABLE [X] | 7A. [ ] PRODUCTS OF COLLATERAL ARE ALSO COVERED | 7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(a) ITEM: [ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)    Filed With:  Massachusetts | |
| 9. CHECK IF APPLICABLE [X] | [ ]  DEBTOR IS A "TRANSMITTING UTILITY" IN ACCORDANCE WITH UCC SECTION 9105 (1) (N) | | |

X _(signature)_
SIGNATURE(S) OF DEBTOR(S)
GLOBE RUBBER WORKS, INC.
RICHARD C SOMERVILLE
PRESIDENT            Attorney-In-Fact
TYPE OR PRINT NAME(S) OF DEBTOR(S)

X _(signature)_
SIGNATURE(S) OF SECURED PARTY(IES)
Textron Financial Corporation
                    Attorney-In-Fact
TYPE OR PRINT NAME(S) OF SECURED PARTY(IES)

11. RETURN COPY TO:

| | |
|---|---|
| NAME | Data Filing Services |
| ADDRESS | P.O. Box 29071 |
| | Glendale |
| | CA |
| | 91209-9071 |

(800) 331-3282
(818) 662-4141

10. THIS SPACE FOR USE OF FILING OFFICER
(DATE, TIME, FILE NUMBER AND FILING OFFICER)

C
O
D
E

August 2, 1999
9:00 a.m.
#14189
Town Clerk, Rockland

1
2
3
4
5
6
7
8
9
0

FORM UCC-1.—
Approved by the Secretary of State
Prepared with UCC Direct for Windows  Data File Services, Inc.,  P.O. Box 275,  Van Nuys,  CA,  91408-0275  1st (818) 700-2300

(1) FILING OFFICER COPY

PAGE  03/07

07/20/2004  15:06    5082384678    LEGAL TRIEVE INFO

1957577.1-30-1    14595

93616 TEXTRON.1

This STATEMENT is presented for filing pursuant to the Uniform Commercial Code

| NO. OF ORIG. FINANCING STATEMENT | 1A. DATE OF FILING OF ORIG. FINANCING STATEMENT | 1B. DATE OF ORIG. FINANCING STATEMENT | 1C. PLACE OF FILING ORIG. FINANCING STATEMENT |
|---|---|---|---|
| 74189 | 08-02-99 | | TC MA ROCKLAND |

| 2. DEBTOR (LAST NAME FIRST) | | | 2A. SOCIAL SECURITY NO., FEDERAL TAX NO. |
|---|---|---|---|
| GLOBE RUBBER WORKS, INC. | | | 023242540 |

| 2B. MAILING ADDRESS | 2C. CITY, STATE | 2D. ZIP CODE |
|---|---|---|
| 254 BEECH ST | ROCKLAND, MA | 02370 |

| 3. ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST) | | 3A. SOCIAL SECURITY OR FEDERAL TAX NO |
|---|---|---|

| 3B. MAILING ADDRESS | 3C. CITY, STATE | 3D. ZIP CODE |
|---|---|---|

**4. SECURED PARTY**
NAME  Textron Financial Corporation
MAILING ADDRESS  40 Westminster Street
CITY  Providence   STATE  RI   ZIP CODE  02940

4A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO.

**5. ASSIGNEE OF SECURED PARTY (IF ANY)**
SOVEREIGN BANK
NAME  NETWORK CAPITAL ALLIANCE
MAILING ADDRESS  368 VETERANS HIGHWAY
CITY  COMMACK   STATE  NY   ZIP CODE  11725

5A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO.
23-1237295

6. A. **CONTINUATION**- The original Financing Statement between the foregoing Debtor and Secured Party bearing the file number and date shown above is continued. If collateral is crops or timber, check here ☐ and insert description of real property on which growing or to be grown in Item 7 below.

B. **RELEASE**- From the collateral described in the Financing Statement bearing the file number shown above, the Secured Party releases the collateral described in Item 7 below.

C. [X] **ASSIGNMENT**- The Secured Party certifies that the Secured Party has assigned to the Assignee above named, the Secured Party's rights under the Financing Statement bearing the file number shown above in the collateral described in Item 7 below.

D. **TERMINATION**- The Secured Party certifies that the Secured Party no longer claims a security interest under Financing Statement bearing the file number shown above.

E. **AMENDMENT**- The Financing Statement bearing the file number shown above is amended as set forth in Item 7 below. (Signature of Debtor required on all amendments.)

F. ☐ **OTHER**

7.
SOVEREIGN BANK
NETWORK CAPITAL ALLIANCE
368 VETERANS HIGHWAY
COMMACK, NY 11725
FULL ASSIGNMENT. ALL COLLATERAL ON ORIGINAL FINANCING STATEMENT.

| | C O D E | 9. This Space Use of Filing Officer (Date, Time, Filing Office) |
|---|---|---|
| 8.   Equipment/Lease No: 91351-05 | | |
| GLOBE RUBBER WORKS, INC   (DATE) _____ 19___ | | December 11, 2000 |
| DEBTOR SIGNATURE NOT REQUIRED | | 9:00a.m. |
| | 1 | #14595 |
| By: _____ | 2 | Town Clerk, Rockland |
| SIGNATURE(S) OF DEBTOR(S)      (TITLE) | | |
| Textron Financial Corporation | 3 | |
| By: ATTORNEY-IN-FACT  _Pacing_ | 4 | |
| SIGNATURE(S) OF SECURED PARTY(IES)      (TITLE) | 5 | |
| 0.    *Return Copy to* | | |
| NAME   UCC Direct Services | 6 | |
| P.O. Box 29071 | | |
| Glendale   (800) 331-3282 | 7 | |
| CA   (818) 662-4141 | | |
| 91209-9071 | 8 | |
| | 9 | |

1) FILING OFFICER COPY

Uniform Commercial Code - Form UCC-2

Prepared with UCC Direct for Windows  Data File Services, Inc.  P.O. Box 275,  Van Nuys,  CA  91408-0275 Tel (818) 908-2200

07/28/2004  15:06    5082384678                LEGALTRIEVE INFO

1957577-40-2
92272 TEXTRON2

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| OR (LAST NAME FIRST IF AN INDIVIDUAL) | | 1A. SOCIAL SECURITY OR FEDERAL TAX NO. |
|---|---|---|
| GLOBE RUBBER WORKS, INC. | | 023242540 |

| 1B. MAILING ADDRESS | 1C. CITY STATE | 1D. ZIP CODE |
|---|---|---|
| 254 BEECH ST | ROCKLAND, MA | 02370 |

| 2 ADDITIONAL DEBTOR (IF ANY)    (LAST NAME FIRST - IF AN INDIVIDUAL) | | 2A. SOCIAL SECURITY OR FEDERAL TAX NO. |
|---|---|---|
| | | |

| 2B. MAILING ADDRESS | 2C. CITY STATE | 2D. ZIP CODE |
|---|---|---|
| | | |

| 3 DEBTOR'S TRADE NAMES OR STYLES (If Any) | 3A. FEDERAL TAX NUMBER |
|---|---|
| | |

| 4 SECURED PARTY NAME | Textron Financial Corporation | | 4A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO |
|---|---|---|---|
| MAILING ADDRESS | 40 Westminster Street | | 056008768 |
| CITY | Providence | STATE  RI    ZIP CODE  02940 | |

| 5 ASSIGNEE OF SECURED PARTY NAME | | 5A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO |
|---|---|---|
| MAILING ADDRESS | | |
| CITY | STATE    ZIP CODE | |

6  This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction 4).

"The property described below includes all replacement parts, additions, and accessory items." 1 CAD CAM SYSTEM

| 7 CHECK IF APPLICABLE [X] | 7A [ ] PRODUCTS OF COLLATERAL ARE ALSO COVERED | 7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(a) ITEM (1) [ ]  (2) [ ]  (3) [ ]  (4) [ ] | Filed With:  Massachusetts |
|---|---|---|---|
| 8 CHECK IF APPLICABLE [X] | [ ] | DEBTOR IS A TRANSMITTING UTILITY IN ACCORDANCE WITH UCC SECTION 9105 (1) (N) | |

| X ~~~~~~ Attorney-In-Fact<br>SIGNATURE(S) OF DEBTOR(S)<br>GLOBE RUBBER WORKS, INC.<br>RICHARD C SOMERVILLE<br>PRESIDENT<br>TYPE OR PRINT NAME(S) OF DEBTOR(S)<br><br>X ~~~~~~<br>SIGNATURE(S) OF SECURED PARTY(IES)<br>Textron Financial Corporation<br>Attorney-In-Fact<br>TYPE OR PRINT NAME(S) OF SECURED PARTY(IES) | 9 8 0 8 1 2 3 4 5 6 7 8 9 0 | 10.  THIS SPACE FOR USE OF FILING OFFICER (DATE, TIME, FILE NUMBER AND FILING OFFICER)<br><br>August 3, 1999<br>9:00 a.m.<br>#14190<br>Town Clerk, Rockland |
|---|---|---|

RETURN COPY TO:

| NAME | Data Filing Services | |
|---|---|---|
| ADDRESS | P.O. Box 29071 | (800) 331-3282 |
| | Glendale | (818) 662-4141 |
| | CA | |
| ZIP CODE | 91209-9071 | |

FORM UCC-1
Approved by the Secretary of State
Prepared with UCC Direct for Windows  Data File Services, Inc.,  P.O. Box 275,  Van Nuys, CA,  91408-0275  Tel (818) 908-2200

1) FILING OFFICER COPY

07/20/2004  15:06    5082384678    LEGALTRIEVE INFO    PAGE  06/07

| 4 ☐ Filed for record in the real estate records. | 5 ☐ Debtor is a Transmitting Utility. | 6. No. of Additional Sheets Presented: |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es)<br><br>Globe Rubber Works, Inc.<br>} Beech Street<br>Rockland, MA  02370 | 2 Secured Party(ies) and address(es)<br><br>First International Bank<br>280 Trumbull Street<br>Hartford, CT  06103 | 3 For Filing Officer (Date, Time, Number, and Filing Office)<br><br>August 5, 1999<br>9:00 a.m.<br>#14193<br>Town Clerk, Rockland |

7. This financing statement covers the following types (or items) of property:

**The property of the Debtor, as more fully described
on Exhibit A attached hereto and incorporated herein
by reference.**

**Filed with:  Town of Rockland**

Check ☒ if covered:    ☒ Proceeds of Collateral are also covered.      ☒ Products of Collateral are also covered

| Whichever is<br>Applicable<br>(See Instruction<br>Number 9) | Globe Rubber Works, Inc.<br><br>By: _~Richard C. Somerville_ _/signature/_<br>Richard C. Somerville, President<br><br>_____<br>Signature(s) of Debtor (Or Assignor) | _____<br><br>Signature(s) of Secured Party (Or Assignee) |
|---|---|---|

Filing Officer Copy — Alphabetical

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1      Rev. April 1957    *Forms may be purchased from Hobbs & Warren, Inc., Boston MA 02101*

reclaimed, rejected or repossessed inventory or other goods;

(b)  all chattel paper, as that term is defined in Article 9
of the UCC, now owned or hereafter acquired, and, in any event,
shall include any writing or writings which evidence both a
monetary obligation and a security interest in or a lease of
specific goods, whether now or hereafter held by Debtor;

(c)  all contracts, undertakings, franchise agreements or
other agreements (other than rights evidenced by chattel paper,
documents or instruments, as those terms are defined above and
below), now owned or hereafter acquired, in or under which the
Debtor may now or hereafter have any right, title or interest,
including, without limitation, with respect to an account, and any
agreement relating to the terms of payment or the terms of
performance thereof;

(d)  all documents, as that term is defined in Article 9 of
the UCC now owned or hereafter acquired;

(e)  all equipment, as that term is defined in Article 9 of
the UCC, and, in any event, shall include, without limitation, all
machinery, tools, dyes, equipment, furnishings, fixtures, leasehold
improvements, vehicles (other than motor vehicles) and computers
and other electronic data processing and other office equipment,
now owned or hereafter acquired, any and all additions,

-1-

PAGE 07/07

07/20/2004  15:06    5082384678    LEGALTRIEVE INFO

14575

2639817.40-2    *TC*

92880 TEXTRON.1

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| | | | 1A. SOCIAL SECURITY OR FEDERAL TAX NO. |
|---|---|---|---|
| OR (LAST NAME FIRST IF AN INDIVIDUAL) | | | |
| 1B. ...OBE RUBBER WORKS, INC | | | |
| MAILING ADDRESS | 1C. CITY STATE | | 1D. ZIP CODE |
| 254 BEECH ST | ROCKLAND, MA | | 02370 |

2. ADDITIONAL DEBTOR    (IF ANY)    (LAST NAME FIRST - IF AN INDIVIDUAL)    2A. SOCIAL SECURITY OR FEDERAL TAX NO.

| 2B. MAILING ADDRESS | 2C. CITY, STATE | 2D. ZIP CODE |
|---|---|---|

2. DEBTOR'S TRADE NAMES OR STYLES (If Any)    3A. FEDERAL TAX NUMBER

4. SECURED PARTY
NAME        Textron Financial Corporation

MAILING ADDRESS    4949 SW Meadows Road, Ste. 650

CITY    Lake Oswego    STATE  OR    ZIP CODE  97035

4A. SOCIAL SECURITY NO., FEDERAL TAX NO.
OR BANK TRANSIT AND A.B.A. NO.
056008768

5. ASSIGNOR OF SECURED PARTY
NAME

MAILING ADDRESS

CITY    STATE    ZIP CODE

5A. SOCIAL SECURITY NO., FEDERAL TAX NO.
OR BANK TRANSIT AND A.B.A. NO.

5. This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction 4).

1 SOLIDWORKS 2000, CD-ROM, INCL. DOCS1 SUBCRIPTION SERVICE1 SW MDT MIGRATION PROMOTION1 CADD EDGE TRAINING Equipment/Lease No: 00913510100086

CHECK IF APPLICABLE  [X]    7A. [ ] PRODUCTS OF COLLATERAL ARE ALSO COVERED

7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(b) ITEM
[ ] (1)  [ ] (2)  [ ] (3)  [ ] (4)    Filed With:    Massachusetts

CHECK IF APPLICABLE  [X]    [ ] DEBTOR IS A TRANSMITTING UTILITY IN ACCORDANCE WITH UCC SECTION 9403 (1) (N)

SIGNATURE(S) OF DEBTOR(S)
...LOBE RUBBER WORKS, INC.
...ICHARD SOMERVILLE
...TTORNEY-IN-FACT
...PE OR PRINT NAME(S) OF DEBTOR(S)

SIGNATURE(S) OF SECURED PARTY(IES)
Textron Financial Corporation
ATTORNEY-IN-FACT
...PE OR PRINT NAME(S) OF SECURED PARTY(IES)

10. THIS SPACE FOR USE OF FILING OFFICER
(DATE, TIME, FILE NUMBER AND FILING OFFICER)

November 13, 2000
9:00a.m.
#14575
Town Clerk, Rockland

RETURN COPY TO:    Equipment/Lease No: 00913510100006

| NAME | UCC Direct Services | |
|---|---|---|
| ADDRESS | P.O. Box 29071 | (800) 331-3282 |
| | Glendale | (818) 662-4141 |
| | CA | |
| ZIP CODE | 91209-9071 | |

FORM UCC-1—
Approved by the Secretary of State
Prepared with UCC Direct for Windows - Data File Services, Inc., P.O. Box 275, Van Nuys, CA, 91408-0275, Tel (818) 662-4100

1) FILING OFFICER COPY



Kalm-Forsythe Global Innovations, Ltd.
Attn: Carl W. Forsythe
Page 2
February 4, 2005

Kindly forward a check immediately in the amount of $414,200, representing the amount due as of February 10, 2005 under the Note, to the undersigned. Please be advised that the per diem under the Note is $200, exclusive of costs and expenses of collection and enforcement.

Very truly yours,

Richard Somerville
By his Attorney

Stephen Kutenplon

cc:    Mr. Richard Somerville
Mark Johnson, Esq.
William R. Rodgers, Esq.