```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

GLOBE COMPOSITE SOLUTIONS, LTD.
f/k/a KALM-FORSYTHE GLOBAL
INNOVATIONS, LTD.,
    Plaintiff,

    v.                                                  CIVIL ACTION NO.
                                                       05-10323-DPW

RICHARD C. SOMERVILLE, ANNE
ROCHE-SOMERVILLE, and SOLAR
CONSTRUCTION, INC. f/k/a
GLOBE RUBBER WORKS, INC.,
    Defendants.

**MEMORANDUM AND ORDER RE:
PLAINTIFF'S <u>EX PARTE</u> MOTION FOR ATTACHMENT ON
TRUSTEE PROCESS (DOCKET ENTRY # 2);
PLAINTIFF'S MOTION FOR ATTACHMENT
(DOCKET ENTRY # 3)**

**March 16, 2005**

**BOWLER, U.S.M.J.**

On February 28, 2005, the district judge referred the above styled motions to this court. Having determined that an <u>ex parte</u> hearing is not necessary, the <u>ex parte</u> motions are ripe for review.[1]

Plaintiff Globe Composite Solutions, Ltd. f/k/a Kalm-Forsythe Global Innovations, Ltd. ("Globe Composite") seeks an <u>ex parte</u> attachment in the amount of $1,662,000 of all real estate, goods, chattel and other property owned by defendants Richard C. Somerville ("Somerville"), a resident of Duxbury, Massachusetts, Anne Roche-Somerville and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc. ("Globe Rubber"), a Massachusetts corporation

---

[1] Although the motion for an attachment (Docket Entry # 3) is not captioned as an <u>ex parte</u> motion, there is no accompanying certificate of service.

with a principal place of business in Rockland, Massachusetts (collectively: "defendants"). (Docket Entry # 3). Globe Composite additionally moves for an ex parte attachment on trustee process in the amount of $1,662,000 on all bank accounts owned by defendants in Massachusetts.[2] (Docket Entry # 2).

The underlying action stems from an alleged breach of an asset purchase agreement between Globe Composite, the buyer, and Somerville and Globe Rubber, the sellers. The four count complaint alleges that defendants: (1) breached the asset purchase agreement (Count I); (2) committed fraud (Count II); (3) violated Massachusetts General Laws chapter 231A, section one ("chapter 231A") (Count III); and (4) violated Massachusetts General Laws chapter 93A, section 11 ("chapter 93A") (Count IV).

## BACKGROUND[3]

On August 3, 2004, Globe Composite, a Texas corporation, entered into the asset purchase agreement with Globe Rubber and Somerville. Via contracts with government contractors, Globe

---

[2] Globe Composite does not identify the bank accounts or provide a copy of the trustee summons in its papers. See generally Jordan Shapiro, Marc Perlin & John Connors Massachusetts Collection Law § 5:56 (2000) (necessary documents to obtain trustee process include motion, supporting affidavit and trustee summons). The summons must notify the trustee of the amount of the "bank account as [is] exempt from attachment and shall direct him to pay over" the exempted amount. Rule 4.2(b), Mass. R. Civ. P.; see Form 2A, Appendix of Forms, Mass. R. Civ. P.

[3] Unless phrased as an allegation, the supporting affidavits and terms of the asset purchase agreement establish the following facts.

Rubber supplies synthetic material to build United States Navy submarines.  Pursuant to the asset purchase agreement, Globe Composite agreed to purchase certain identified assets of Globe Rubber for $898,000.  Globe Composite further agreed to purchase certain identified intellectual property owned by Somerville for an estimated $2.25 million.  The effective date of the agreement is July 1, 2004.

At the time of the agreement, Globe Rubber had several contracts with various government contractors who built submarines for the United States Navy.  Under the terms of the asset purchase agreement, Globe Composite purchased a number of these contracts.  Globe Rubber, however, retained liability for any breaches (other than for warranty claims under Globe Rubber's established warranty practices) that occurred prior to July 1, 2004.  (Docket Entry # 2, Ex. 2, §§ 2.1(f) & 2.5(b)(ii)).

The purchased contracts, listed in an attached schedule (Docket Entry # 1, Ex. 2, Sch. 4.17(a)), include a number of contracts with the Electric Boat Division of General Dynamics Corporation ("GE"), Northrop Grumman Newport News Shipbuilding, Inc. ("Northrop Grumman") and the Department of Defense Finance and Accounting Service ("DFAS").  These contracts required Globe Rubber's synthetic material submarine parts to comply with the specifications of the United States government and/or the government contractors.

Unfortunately, unbeknownst to Globe Composite, Globe Rubber and Somerville had prepared numerous certifications prior to July

1, 2004, certifying that Globe Rubber's products met the government's or the government contractor's specifications when, in fact, the products or parts did not meet such specifications. Globe Rubber and Somerville then gave these false certifications to GE, Northrop Grumman and the DFAS.  Carl Forsythe ("Forsythe"), President and Chief Executive Officer of Globe Composite, avers that Globe Rubber and Somerville knew that the certifications were false.

Pursuant to the terms of the asset purchase agreement, Globe Rubber and Somerville made certain representations and warranties.  For example, Globe Rubber and Somerville warranted that Globe Rubber did not have any liability required to be reflected in the company's year end balance sheet as of December 31, 2003, other than what was reflected on that balance sheet. To state the obvious, the balance sheet did not reflect liability for falsifying the certifications.

Even more significant, Globe Rubber and Somerville warranted and represented that, to their knowledge, Globe Rubber was "in full compliance, in all material respects, with each Legal Requirement and Governmental Authorization that is applicable to it or to the conduct of its business or the ownership or use of its assets."  (Docket Entry # 2, Ex. 2, § 4.14).  They also represented that, to their knowledge, "no event has occurred or circumstance exists that (with or without notice or lapse of time) may constitute or result in a material violation by Globe [Rubber] of, or a material failure on the part of Globe [Rubber]

to comply with, any Legal Requirement or Governmental Authorization."  (Docket Entry # 2, Ex. 2, § 4.14).

In December 2004, Globe Composite discovered that Globe Rubber and Somerville had prepared numerous false certifications that its products met the government's or the government contractor's specifications.  By January 2005, an investigation by the Department of Defense Criminal Investigation Services was underway.  On January 6, 2005, federal investigators from the department interviewed Somerville regarding the falsified certifications.  A few days later, Somerville told Forsythe that he was "completely forthright and honest with the Federal investigators in admitting that he bears sole responsibility for falsifying the certification documents."  (Docket Entry # 2, Ex. 2, ¶ 15).

Thus far, Globe Composite has expended approximately $200,000 to make necessary changes to its products in order to comply with government specifications.[4]  The company anticipates spending an additional $432,000 to comply with government specifications.  Additional related costs, including diverted management time, total an estimated $411,300.  (Docket Entry # 2, Ex. 2, ¶ 29).  Globe Composite has also incurred defense costs in connection with a lawsuit filed against it by Shuster Corporation ("Shuster") for violating a nonsolicitation agreement entered into by Somerville and Shuster in May 2001.  The asset purchase agreement did not disclose the existence of this nonsolicitation

---

[4] The $200,000 figure includes management time.

agreement.

Pursuant to the asset purchase agreement, Globe Composite placed $165,000 of the $898,000 purchase price for the Globe Rubber assets in escrow to cover any indemnification claims asserted by Globe Composite under article seven of the asset purchase agreement.  (Docket Entry # 2, Ex. 3, § 2.4(d)).  On January 31, 2005, Globe Composite demanded the release of all escrow funds to indemnify it against the various claims made against the company.  Somerville refused to execute the disbursement request form.  Consequently, the funds remain in escrow.

In addition, Globe Composite has been unable to deliver approximately $800,000 in product orders to Northrop Grumman, GE and DFAS because of the nonconforming products thereby causing a severe cash flow shortage at the company.  Forsythe also attests that, "Globe Composite has suffered significant and immeasurable harm to its reputation and future business potential as a result of the negative feedback from buyers and other personnel at [Northrop Grumman, GE and DFAS] regarding Globe Composite's perceived inability to produce parts conforming to the specifications."  (Docket Entry # 2, Ex. 2, ¶ 28).

DISCUSSION

In accordance with Rule 64, Fed. R. Civ. P., the substantive standard for an ex parte attachment is governed by Rule 4.1(f), Mass. R. Civ. P. ("Rule 4.1(f)").  See Johnson v. Koplovsky

Foods, Inc., 5 F.Supp.2d 48, 51 (D.Mass. 1998). Rule 4.1(f) provides for an ex parte attachment upon a showing that "there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the attachment over and above any liability insurance known or reasonably believed to be available."

An ex parte attachment further requires the court to find one of the following exigent circumstances: (1) "the defendant is not subject to the personal jurisdiction of the court;" (2) "there is a clear danger that the defendant" will convey, remove or conceal the property if notified in advance; or (3) "there is immediate danger that the defendant will damage or destroy the property to be attached." Rule 4.1(f), Mass. R. Civ. P.

The substantive standard for an ex parte attachment on trustee process is governed by Rule 4.2(g), Mass. R. Civ. P. ("Rule 4.2(g)"). Like Rule 4.1(f), Rule 4.2(g) mandates a showing that "there is a reasonable likelihood that the plaintiff will recover judgment in an amount equal to or greater than the amount of the trustee process over and above any liability insurance known or reasonably believed to be available." It also requires the presence of one or more similar, if not identical, exigent circumstances. In pertinent part, Rule 4.2(g) requires the court to find that: (1) "the defendant is not subject to the personal jurisdiction of the court;" (2) "there is a clear danger that the defendant if notified in advance of the attachment on trustee process will withdraw the goods or credits from the hands

and possession of the trustee and remove them from the state or will conceal them;" or (3) "there is immediate danger that the defendant will dissipate the credits, or damage or destroy the goods to be attached on trustee process."  Rule 4.2(g), Mass. R. Civ. P.

Both rules require the movant to support the motions by affidavit.  The affidavit must "set forth specific facts to warrant the required findings" based upon the affiant's knowledge, information or belief.  Rule 4.1(h) & 4.2(c), Mass. R. Civ. P.; <u>Tunnicliff v. Motel 6, OLP</u>, 178 F.R.D. 8, 10 (D.Mass. 1998).  Both rules also require the movant to accompany the motion with a certification "of the amount of any liability insurance which he knows or has reason to believe will be available to satisfy any judgment against the defendant."  Rule 4.1(f) & 4.2(g), Mass. R. Civ. P.

Turning to the central question of whether Globe Composite is likely to prevail on the merits and obtain damages in the necessary amount, <u>see</u> <u>International Association of Bridge, Structural and Ornamental Iron Workers v. Burtman Iron Works, Inc.</u>, 164 F.R.D. 305, 306 (D.Mass. 1995), the essential elements of a breach of contract claim under Massachusetts law require: "(1) that the parties reached a valid and binding agreement;" (2) that defendant breached the terms of the agreement; and (3) that the plaintiff "suffered damages from the breach."  <u>Coll v. PB Diagnostic Systems, Inc.</u>, 50 F.3d 1115, 1122 (1st Cir. 1995). The conduct of Globe Rubber and Somerville in preparing the false

certifications creates a reasonable likelihood that Globe Rubber and/or Somerville breached the provisions of section 4.14 of the asset purchase agreement. It is also readily apparent that Globe Composite suffered damages as a result of the breach.[5]

Globe Composite is nonetheless not entitled to an ex parte attachment or an ex parte attachment on trustee process. Globe Composite fails to submit the certificate regarding the amount of liability insurance available to satisfy any judgment. Nor does Globe Composite identify, let alone establish, an immediate danger that defendants will damage or destroy the goods or property to be attached or that there is a clear danger that defendants will remove the goods or damage the property if notified in advance of the attachment.[6] Given the absence of exigent circumstances, an ex parte attachment of property or attachment on trustee process of funds in unidentified Massachusetts bank accounts is inadvisable.

CONCLUSION

In accordance with the foregoing discussion, the motion for an attachment (Docket Entry # 3) and the motion for an ex parte

---

[5] The reasonable likelihood that Globe Composite will recover a judgment on the breach of contract claim foregoes the need to address the likelihood under the fraud claim or the claims for violating chapter 93A and chapter 231A. It is also unnecessary to determine whether damages equal or exceed the amount sought by attachment over and above any liability insurance inasmuch as Globe Composite is not entitled to relief for reasons discussed infra.

[6] The first exigent circumstance does not apply.

attachment on trustee process (Docket Entry # 2) are **DENIED**.

        /s/ Marianne B. Bowler
        **MARIANNE B. BOWLER**
        United States Magistrate Judge