UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD C. SOMERVILLE, ANNE )<br>ROCHE-SOMERVILLE, and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>    Defendants. )<br>) | Civil Action No. 05 10323 DPW |

**OPPOSITION OF RICHARD C. SOMERVILLE AND
SOLAR CONSTRUCTION, INC. F/K/A GLOBE RUBBER WORKS, INC. TO:
(i) PLAINTIFF'S MOTION FOR ATTACHMENT; AND
(ii) PLAINTIFF'S MOTION FOR ATTACHMENT ON TRUSTEE PROCESS**

The defendants Richard C. Somerville ("Somerville") and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc. ("Globe Rubber") hereby oppose plaintiff Globe Composite Solutions, Ltd. f/k/a Kalm-Forsythe Global Innovations, Ltd.'s ("Globe Composite") Motion for Attachment and Motion for Attachment on Trustee Process (collectively, the "Motions"). As grounds therefore, Somerville and Globe Rubber state as follows:

## SUMMARY

There is no reasonable likelihood that Globe Composite will succeed on its claims against Somerville and/or Globe Rubber in amount equal to or greater to than that it seeks to attach because Somerville and/or Globe Rubber are the parties that are owed money in this case, not Globe Composite. Under an Asset Purchase Agreement and the related agreements entered between the parties, Globe Composite owes Somerville under a $400,000 Note, a $200,000 Note,

a $150,000 Note, a lump sum payment in excess of $1,000,000 under an Employment Agreement and a 7.5% equity interest in Globe Composite valued at approximately $750,000. There also is currently $190,000 in escrow to satisfy any outstanding indemnification claims that might arise under the Asset Purchase Agreement. Globe Composite is entitled to set-off any of these amounts to satisfy any claims that Globe Composite can actually prove.

Since Globe Composite defaulted on its payment under the $400,000 Note on December 1, 2004, Globe Composite has systematically sought to shift its own liabilities and costs to Somerville and/or Globe Rubber in a wrongful attempt to renegotiate the terms and conditions of the Asset Purchase Agreement. In furtherance of its attempt to evade Globe Composite's obligations, Globe Composite wrongfully terminated Somerville's employment at Globe Composite in February 1, 2004, has failed to pay Somerville the money that he is entitled under the Employment Agreement and failed to pay his obligation under promissory notes totaling $750,000. Globe Composite has wrongfully demanded escrow funds that are not justified under the Asset Purchase Agreement and wrongfully claims that Somerville and/or Globe Rubber are responsible for $800,000 in contracts that Globe Composite entered into after the Asset Purchase Agreement.

The parties to this case negotiated for a over a year prior to executing the Asset Purchase Agreement. During this time, Globe Composite representatives and/or agents were embedded in Globe Rubber, with full access to the Globe Rubber business records, operations and personnel. The parties, represented by counsel, recognized that there may be outstanding liabilities following the asset purchase and established an exclusive avenue to resolve such liabilities under the detailed provisions of Article 7 of the Asset Purchase Agreement. In Article 7, Globe Composite agreed that Article 7 would be the "sole and exclusive" remedy under the Asset

Purchase Agreement and further agreed that liabilities may be set-off under Article 7.6. The parties further set aside $190,000 to pay any valid claims.

Globe Composite should not be entitled to disregard the provisions of the Asset Purchase Agreement that it agreed to after prolonged negotiations. Globe Composite should further not be entitled to ignore the $190,000 escrow, the $750,000 in notes and the additional monies of over $1,000,000, which it owes Somerville. Globe Composite has security for its alleged claims, if any can actually be established. Accordingly, Globe Composite's motions should be denied.

## FACTUAL BACKGROUND

Prior to Globe Composite and Globe Rubber entering in the Asset Purchase Agreement in August 2004, Globe Rubber served a diverse set of industrial, commercial and military customers in its design and production of non-metallic components. Globe Rubber's revenues in 2003 were approximately $4,392,000. In 2004, Globe Rubber's revenues were approximately $6,777,000.

Globe Rubber manufactured Radio Frequency Identification ("RFID") conveyors for Globe Composite sometime on or about 2002. On or about February 2003, defendant-in-counterclaim, Carle Forsythe ("Forsythe"), approached Somerville and initiated negotiations related to the potential acquisition of the Globe Rubber business. During the negotiations that ensured over approximately one and a half (1 ½) years, Forsythe personally, and/or through his agent(s) and/or representative(s), including but not limited to, John Boodee, had full access to the Globe Rubber facility and its personnel to examine the financial and operational aspects of Globe Rubber and to conduct detailed due diligence, including investigation of all aspects of the Globe Rubber business.

3

During the time that Forsythe and Somerville were negotiating the sale of the business of Globe Rubber, Globe Rubber was experiencing financial difficulties, a circumstance well known Globe Composite and Forsythe. Globe Composite and Forsythe knew that Globe Rubber was undercapitalized and extended a loan to Globe Rubber on or about September 9, 2003 and a second loan on or about April 19, 2004. Globe Composite agreed to assume these outstanding liabilities in the Asset Purchase Agreement as part of the consideration for purchasing Globe Rubber's assets.

After extensive negotiations, in or about August 2004, Globe Composite, Globe Rubber and Somerville executed an Asset Purchase Agreement. Exh. A.[1] In summary, as consideration for the purchase of the business of Globe Rubber and certain intellectual property and goodwill of Somerville, Globe Composite agreed in the Asset Purchase Agreement to: (i) pay $898,000 in cash to Globe Rubber and assume certain Globe Rubber liabilities; (ii) pay Somerville $1,502,000 in cash for his intellectual property; (iii) pay Somerville an additional $750,000 for his intellectual property via three promissory notes: one in the amount of $400,000 (the $400,000 Note"), one in the amount of $200,000 (the "$200,000 Note") and one in the amount of $150,000 (the "$150,000 Note") (the $400,000 promissory note was also executed by Forsythe as a co-maker); and (iv) pay Somerville approximately $1,250,000 million over five (5) years under an employment agreement in salary, plus bonuses and other benefits; (iv) deliver 7.5% of all outstanding limited partnership interests in Globe Composite to Somerville.

Globe Composite agreed to pay $100,000 due under the $200,000 Note, together with all accrued interest, to Somerville together with interest on August 3, 2005. Exh. C. Globe Composite agreed to pay Somerville the remaining principal, with interest, on the $200,000 Note to Somerville on or before August 3, 2006.

4

Globe Composite agreed to pay the $150,000 Note to Somerville in twelve (12) quarterly installments with payment deferred until August 2, 2005 at which time the first three (3) quarterly installment are due. Exh. D. Globe Composite agreed to pay the outstanding principal, with interest, on the $150,000 Note to Somerville on or before August 3, 2007.

Globe Composite and Forsythe jointly and severally agreed to pay the $400,000 Note to Somerville on or before 120 days from August 3, 2004 (approximately December 1, 2004). Globe Composite and Forsythe further promised to pay interest at a rate of one and a half percent (1 ½ %) per month upon an event of default and to pay any costs and expenses (including reasonable attorney's fees) incurred by Somerville in the enforcement or collection of the $400,000 Note. Exh. E.

Globe Composite further agreed that failure to pay any payment due under the $400,000 Note was an event of default under the $200,000 Note and the $150,000 Note. Upon such event, the unpaid balance of the principal and interest on the $200,000 Note and the $150,000 Note would also become immediately due at the option of Somerville. Further, upon default under the $200,000 Note and/or the $150,000 Note, Globe Composite promised to pay interest at a rate of 1 ½ % per month and to pay any costs and expenses (including reasonable attorney's fees) incurred by Somerville in the enforcement or collection of the $200,000 Note and/or the $150,000 Note.

In the Asset Purchase Agreement, Globe Composite, Globe Rubber and Somerville further agreed to enter into an escrow agreement whereby $190,000 was placed in an escrow account ("Escrow Agreement"). Exh. F. The escrow amount was designated for two purposes in the Escrow Agreement: (i) $25,000 of the escrow amount was designated to cover costs to be incurred by Globe Rubber for repairs to the underground septic system serving the Globe

---

[1] Citations to exhibits are to the exhibits to Affidavit of Richard C. Somerville.

Composite premises (the "Title V Escrow Amount"); and (ii) $165,000 of the escrow amount was designated to cover any pending indemnification claims properly asserted by Globe Composite pursuant to Article 7 of the Asset Purchase Agreement (the "Indemnification Escrow Amount"). See Exh. F and Exh. A, 2.5(d).

In the Asset Purchase Agreement, Somerville further agreed to contribute to Globe Composite all of his right, title and interest in the personal goodwill that he possessed as a result of his individual achievements and reputation in the business community, and Globe Composite agreed to issue 7.5% of the equity interest in Globe Composite to Somerville under the terms set forth in the Asset Purchase Agreement. Forsythe and his financial advisors placed a $750,000 value on the 7.5% equity interest in Globe Composite for purposes of the conversations concerning the structure of the deal and the taxation of it. Exh. A, § 3.2.

In the Asset Purchase Agreement, Globe Composite and Somerville also agreed to enter into an Employment Agreement for an initial term of five (5) years (the "Employment Agreement"). **Exhibit G.** Pursuant to the Employment Agreement, Globe Composite agreed to provide various compensation and benefits to Somerville, including but not limited to, an annual salary of $200,000 per year for five (5) years and any renewal years, bonuses, five (5) weeks paid vacation, medical, retirement and insurance benefits. Exh. G, § 3.

The Employment Agreement provided that if Globe Composite terminated Somerville "without cause," Somerville would be entitled to a lump sum payment within ten (10) days of the termination equal to Somerville's yearly salary for the remaining years of the Employment Agreement and $50,000 in bonuses for reach of those remaining years. Exh. G, 8(f).

Globe Composite agreed that the termination of Somerville for any reason other than those reasons **expressly specified** in the Employment Agreement as "for cause" would be deemed to be a termination of employment "without cause." See Exh. G, 8(c)(iii).

A "for cause" termination pursuant to the Employment Agreement is defined as follows:

(1) the Employee's **conviction** of either (x) a felony, (y) a misdemeanor involving moral turpitude, or (z) any crime **in connection with his employment by the Employer** the nature of which involves dishonesty, assault, battery or which brings disrepute to the Employer by virtue of its association with the Employee, but specifically shall not include traffic offenses;

(2) any intentional act by the Employee not undertaken in good faith that is clearly contrary to the best interests of the Employer;

(3) the Employee's repeated and willful failure to take actions within the scope of his duties, his abilities and which are permitted by law to implement policies, strategies or initiatives of the Employer which the Employer has communicated to him in writing after thirty (30) days notice and opportunity to cure has been afforded to him by the Employer;

(4) the repeated and continued failure of the Employee to attend to his duties and responsibilities after 30 days written notice and opportunity to cure has been afforded to him by the Employer;

(5) any willful act by the Employee against the Employer to attend to enrich the Employer in a material respect in derogation of his duties to the Employer and at the expense of the Employer; or

(6) **the material breach** of any term or provision of this Agreement or the Asset Purchase Agreement by the Employee and such breach is not cured within thirty (30) days of written notice thereof from Employer.

Exh. G, 8(c)(ii) (emphasis added).

On or about December 1, 2004, Globe Composite and Forsythe breached their obligations under the $400,000 Note by failing to pay the $400,000 Note when it became due. Globe Composite and Forsythe gave no justification for failing to pay such $400,000 Note. The failure to pay was a deliberate effort to evade their obligations under the $400,000 Note and in an effort to renegotiate the terms of the Asset Purchase Agreement after the closing of the transaction.

7

The record does not indicate any lawful justification for Globe Composite and Forsythe's failure to pay the $400,000 Note. At the time that Globe Composite and Forsythe intentionally breached their obligations under the $400,000 Note, Globe Composite had as security for any claims that Globe Composite could assert against Globe Rubber and/or Somerville under the Asset Purchase Agreement the right to set-off against the following obligations: (i) the $190,000 escrow described above; (ii) the right to set off amounts payable under the $200,000 Note under Article 7.6 of the Asset Purchase Agreement; (iii) the right to set off amounts payable under the $150,000 Note under Article 7.6 of the Asset Purchase Agreement; and (iv) Somerville's right to 7.5% equity interest in Globe Composite in addition to the $400,000 Note. Therefore, Globe Composite would still have had $540,000 of remaining security for any claims Globe Composite could assert against Globe Rubber and/or Somerville. However, Globe Composite and Forsythe failed and refused to pay the $400,000 Note when it became due because Globe Composite and Forsythe sought to use it as leverage in an attempt to renegotiate the terms of the Asset Purchase Agreement after the closing of the transaction.

On or about February 1, 2005, Globe Composite and Forsythe continued to attempt to apply leverage against Somerville by terminating Somerville from his employment with Globe Composite. Globe Composite and Forsythe wrongfully claimed that Somerville was terminated "for cause" in furtherance of their efforts to: (i) evade Globe Composite's obligation to pay Somerville the agreed upon termination payment, in excess of $1 million, to which Somerville was entitled upon being terminated without cause; and (ii) evade Globe Composite's obligation to issue 7.5% of the equity interest in Globe Composite to Somerville as required by Article 3.2 of the Asset Purchase Agreement.

8

The termination of Somerville was "without cause" pursuant to the Employment Agreement. Globe Composite and Forsythe's claim that the there was cause for the termination was a pretext in furtherance of Globe Composite's and Forsythe's attempt to evade Globe Composite's obligations under the Asset Purchase Agreement. Because Somerville's employment at Globe Composite was terminated without cause, he became entitled to a lump sum payment of in excess of $1,000,000 as required by Section 8(f) of the Employment Agreement.

By letter dated January 31, 2005, Globe Composite wrongfully demanded that all escrow funds, including those funds designated to reimburse Somerville for expenses he incurred related to the remedial measures related to the sewer system at the Globe Composite facility, be released to it to satisfy approximately $230,000 in alleged claims for alleged damages, expenses and warranty claims. Globe Rubber has refused to release the funds on the basis that the Globe Composite demand was not justified under the Asset Purchase Agreement and/or the Escrow Agreement. In fact, Globe Composite's alleged claims are exaggerated and/or unfounded.

On or about February 4, 2005, Somerville demanded full payment of the $400,000 Note. **Exhibit H**. As of the present time, Globe Composite and Forsythe have failed and refused to pay the amounts due under the $400,000 Note. Globe Composite and Forsythe have no lawful justification to withhold payment of the $400,000 Note. On or about March 28, 2005, Somerville declared the $200,000 Note and the $150,000 Note to be immediately due and payable. Globe Composite has also failed to pay the $200,000 Note and the $150,000 Note. Globe Composite continues to fail to pay to Somerville the amounts that he is owed under Section 8(f) of the Employment Agreement, which amounts are in excess of $1,000,000. Additionally, Globe Composite has not issued the 7.5% equity interest to Somerville.

9

Somerville has also incurred over $36,000 in costs related to the sewage line remedial measures that he undertook at the Globe Composite facility. Accordingly, he is entitled to be reimbursed $25,000 from the escrow held pursuant to the Asset Purchase Agreement and the Escrow Agreement. Additionally, Somerville has a right to 7.5% of the equity interest in Globe Composite in accordance with the terms of the Asset Purchase Agreement.

Globe Composite's claims in this case are without merit. The only agreement was the Asset Purchase Agreement, its exhibits and the documents executed simultaneously with the execution of the Asset Purchase Agreement and which are referenced in the Asset Purchase Agreement. It was a lengthy agreement and negotiated over many months, with each party represented by counsel. The Asset Purchase Agreement specifically provided in Article 10.7:

> **10.7 Entire Agreement and Modification**
> This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documented referred to in this Agreement) a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter. This Agreement may not be amended except by written agreement executed by the party to be charged with the amendment.

Exh. A, 10.7.

The Asset Purchase Agreement stated that the indemnification provision in Article 7 would be the sole and exclusive remedy of the parties. Article 7.7 entitled "Exclusive Remedy" stated:

> Each party agrees that the indemnification provisions of this Article 7 shall be the sole and exclusive remedy for Damages incurred by a party hereto arising out of claims for breach of warranties, representations or covenants contained in this Agreement.

Exh. A, 7.7.

The Asset Purchase Agreement also contained a limitation on the damages in Article 7.5.

10

At the present time, the following obligations outstanding are owed to Somerville by Globe Rubber: (i) $190,000 in cash in an escrow account; (ii) the $400,000 Note which was due on December 1, 2004, but has not been paid by Globe Composite and/or Forsythe; (iii) the $200,000 Note which is in default and due; (iii) the $150,000 Note which is in default and due; (iv) the over $100,000 owed to Somerville under the Employment Agreement; and (v) the obligation to honor Somerville's right to receive 7.5% of the equity interest in Globe Composite.

In the event that it is determined any monies are owed to Globe Composite, Globe Composite has a right to set-off under Article 7.6 of the Asset Purchase Agreement. Article 7.6 provides in relevant part that a party asserting a claim for indemnification

> may set-off any amount to which it may be entitled under this ARTICLE 7 against amounts otherwise payable hereunder to the other party. The exercise of such right of set-off by either party, in good faith, if ultimately determined to be justified, will not constitute event of default hereunder.

Exh. A, 7.6.

Prior to the acquisition of Globe Rubber in August 2004, Globe Rubber was experiencing difficulty in its production of gaskets for General Dynamics. Globe Composite, through Forsythe and John Boodee, was aware of this. This was discussed in the presence of Forsythe. Shortly thereafter, Somerville heard Mr. Boodee say to Forsythe words to the effect that Globe Rubber was not hitting the numbers on the gaskets.

In 2002, the gasket contract represented less than 1.5% of Globe Rubber's annual revenues. The gasket contract generated approximately $48,000 in revenue in 2003, less than 1% of Globe Rubber's annual revenues. Globe Composite will not have to make large expenditures to conform the gaskets to government specifications. Any such amounts will present a small portion of the $190,000 escrow. There is no reason that Globe Composite will

have to revamp the quality control area, upgrade equipment and/or expend extraordinary management time to modify the gaskets.

If it is ultimately determined that any monies are owed to Globe Composite, it has over $200,000 of obligations to Globe Rubber and/or Somerville against which it may exercise its set-off rights under Article 7.6 of the Asset Purchase Agreement, including the notes, the escrow and the over $1,000,000 that Somerville is owed under the Employment Agreement and the 7.5% equity interest that Somerville is entitled to receive in Globe Composite, with an ascribed value of $750,000.

The expenses allegedly attributable to Globe Rubber in paragraph 8 of Carl Forsythe's affidavit are not justified. They are not the responsibility of Globe Rubber or Somerville under the Asset Purchase Agreement.

Globe Rubber is solely responsible for it inability to deliver $800,000 product order to Newport News Shipbuilding, Inc., General Dynamics and DFAS. These product orders do not relate to the gaskets. Globe Composite entered into these contracts after the Asset Purchase Agreement. On or about September 2004, Globe Composite ordered raw material from PRC DeSoto to construct baffles for the production of solar panels for submarines even though Globe Composite had not yet received the DMTA test sheets that authorized the material to be manufactured. PRC De Soto delivered the raw materials without the DMTA authorization that the materials met United States Navy specifications. Globe Composite proceeded to manufacture the baffles even though they had not received the required certification. Accordingly, any expenses that arose due to Globe Composite's inability to deliver the $800,000 in product orders had nothing to do with either Globe Rubber or Somerville.

Forsythe intentionally and/or knowingly disregarded the Shuster Non-Solicitation Agreement when Globe Composite took an order from National Oilwell on November 30, 2004. Globe Rubber entered into a Non-Solicitation Agreement with Shuster on May 1, 2001 whereby Globe Rubber agreed that it would produce products for one or more of Shuster's customers. Additionally, Globe Rubber agreed that it would not directly or indirectly solicit any orders from Shuster's customers. Globe Composite took a small order from National Oilwell in October 2004. In November, 2004, Shuster contacted Forsythe to inform Globe Composite that any direct sales to National Oilwell would be a violation of the Non-Solicitation Agreement. Forsythe consciously disregarded that warning and took another order directly from National Oilwell on or about November 30, 2004. At no time did Globe Rubber take an order directly from National Oilwell.

Globe Composite has not suffered harm to its reputation and future business potential as a result of the gasket problem. Globe Composite was recently awarded a $6.4 million multi-year contract to provide composite components to outfit seven (7) submarines. **Exhibit I.** Furthermore, under Article 7.2 of the Asset Purchase Agreement, incidental and consequential damages are excluded from the indemnification provisions.

Somerville and Globe Rubber are the parties that are owed money in this case, not Globe Composite. Somerville is owed the $400,000 Note, the $200,000 Note, the $150,000 Note and the lump sum payment under the Employment Agreement in excess of $1,000,000. Somerville is also entitled to 7.5% of the equity interest in Globe Composite. Somerville and/or Globe Rubber are also owed the monies which are held in escrow.

## ARGUMENT

In accordance with Rule 64, Fed. R. Civ. P., the substantive standard for an attachment is governed by Rule 4.1(c), Mass. R. Civ. P. ("Rule 4.1(c)"). Rule 4.1(c) provides that that an order for attachment may only be entered "upon a finding that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment." The rule also requires the movant to support the motion by affidavit setting forth "specific facts sufficient to warrant the required findings." Mass. R. Civ. P. 4.1(c) & (h).

There is no need for an attachment in this case given the fact that Globe Composite does not have a reasonable likelihood of success and it has over $2,000,000 of security already for its claims.

### A. Globe Composite Is Unlikely to Succeed on the Merits of Its Claims

Globe Composite can not demonstrate that it is likely to succeed on the merits of its claims and obtain damages in the necessary amount. Globe Composite is not entitled to ignore the $190,000 escrow, the $750,000 in notes it owes Somerville, and the over $1,000,000 it owes Somerville under the Employment Agreement. There is no reasonable likelihood that Globe Composite will succeed on its claims in an amount equal to or greater than what Globe Composite currently owes to Somerville and/or Globe Rubber. In total, Globe Composite currently owes to Somerville over $2,000,000. Somerville is also entitled to receive a 7.5% equity interest in Globe Composite.

1. **<u>Globe Composite is Unlikely to Prevail on its Contract Claims</u>**

Globe Composite will be unable to establish that Globe Rubber and/or Somerville breached the Asset Purchase Agreement and that Globe Composite suffered any damages due to an alleged breach. Even if Globe Composite can demonstrate a breach of contract and damages, the indemnity provisions of Article 7 of the Asset Purchase Agreement are the exclusive remedy. Rather, Globe Composite, Globe Rubber and Somerville contemplated that there would be outstanding liabilities following the Asset Purchase Agreement and established an exclusive avenue to satisfy any such legitimate liabilities under the detailed provisions of Article 7.

2. **<u>Globe Composite's Fraud Claims Will Not Prevail</u>**

Globe Rubber and Somerville's words and actions did not constitute fraud and Globe Composite is otherwise unable prevail on its claim. In order to establish fraud under Massachusetts law, Globe Composite must establish: (1) that a statement was knowingly false; (2) that the defendants made the false statement with the intent to deceive; (3) that the statement was material to plaintiff's decision to sign the contract; (4) that the plaintiff's reasonably relied on the statement; and (5) that the plaintiff was injured as a result of its reliance. <u>Davis v. Dawson</u>, 15 F. Supp. at 136 (citations omitted). Globe Composite's fraud claim will fail because Globe Composite will be unable to establish the elements of fraud. Indeed, Globe Composite has failed to plead his fraud claim with specificity as required by Fed. R. Civ. P. Rule 9(b). Furthermore, Article 7 of the Asset Purchase Agreement precludes Globe Composite's fraud claim on the basis of any alleged misrepresentation in the Asset Purchase Agreement.

As an initial matter, Globe Composite has not established that Globe Rubber and/or Somerville made misrepresentations, which were material, with an intent to deceive, upon which Globe Composite reasonably relied to its damage

The Asset Purchase Agreement contained the only statements of the parties and the exclusive remedy in the event that a representation was incorrect. Given Globe Composite's full access to the Globe Rubber facility, its business records and personnel during the one and a half (1 ½) due diligence period prior to the execution of the Asset Purchase Agreement, its suggestion of ignorance of Globe Rubber's operations is dubious.

It is further not reasonable for Globe Composite to suggest that it reasonably relied upon Globe Rubber and Somerville's representations as to the gasket problem and the Shuster Non-Solicitation Agreement and that it suffered damages as a result. Globe Composite could not have reasonably relied upon the representations in the Asset Purchase Agreement regarding the gaskets because it knew that Globe Rubber was having difficulty producing the gaskets prior to executing the Asset Purchase Agreement. Globe Composite also cannot contend that it suffered any damages due to Globe Rubber and/or Somerville's representations related to the Shuster Non-Solicitation Agreement. Indeed, it does not admit that it assumed the Shuster Agreement under the Asset Purchase Agreement.

Globe Composite's claim related to alleged oral statements regarding the nature of the Globe Rubber products must also fail because such a claim is barred by the integration clause contained in Section 10.7 of the Asset Purchase Agreement. The Asset Purchase Agreement contains no such representation. The language of the Asset Purchase Agreement, as well as its completeness, specificity and length make clear that the Asset Purchase Agreement was an integrated agreement. See Davis v. Dawson, 15 F. Supp. at 106. Where the parties, represented by counsel, proceed to negotiate and agree to the terms of an integrated contract, a plaintiff with considerable business intelligence may not claim reliance on a representation made during negotiations which conflicts with the integrated contract. See Davis v. Dawson, 15 F. Supp. at

137. In any event, Globe Composite will be unable to establish that the oral statements were actionable, that they were made with any intent to deceive and that Globe Composite reasonably relied upon any such oral statements to its detriment. Indeed, Globe Composite was fully aware of the manufacturing process of Globe Rubber during its one and a half (1 ½) year due diligence of Globe Rubber.

### 2. Globe Composite's M.G.L. c. 93A Must Fail

Globe Composite has failed to demonstrate facts to suggest that Globe Rubber and/or Somerville's engaged in unfair and/or deceptive conduct as those terms are defined under M.G.L. c. 93A. In order to prevail under M.G.L. c. 93A, § 11, Globe Composite must set forth conduct which falls:

> 'within a least a prenumbra of some common law, statutory or other established concept of unfairness,' or [was] 'immoral, unethical, oppressive or unscrupulous' and resulted in 'substantial injury to competitors or other businessmen.'

Davis v. Dawson, 15 F. Supp. at 145 (citations omitted).

Globe Composite's M.G.L. c. 93A claim essentially rests upon it breach of contract claims. Allegations that Globe Rubber and/or Somerville breached the Asset Purchase Agreement, without more, does not amount to a M.G.L. c. 93A violation. See Davis v. Dawson, 15 F. Supp. 2d at 146 (mere breach of a contact, without more, does not create liability under M.G.L. c. 93A). Additionally, Globe Composite's 93A claim based upon alleged misrepresentations in the Asset Purchase Agreement is precluded by Article 7 of the Asset Purchase Agreement, and any damages are subject to the damage remedy agreed to by the parties. Globe Composite has no likelihood of prevailing on its M.G.L. c. 93A claim.

### B. Globe Composite Has Adequate Remedy For Any Viable Claims Pursuant to Article 7 of the Asset Purchase Agreement

In assessing the appropriateness of a motion for attachment, the court looks to "the attendant circumstances, including the strength of the plaintiff(s) case and the location, current use, valuation and current interests in the property sought to be attached." Montague Corp. v. Simon Worldwide, Inc., 2001 WL 1226854 (Mass. Super. 2001) (Lauriat, J.) citing Anderson Foreign Motors v. New England Toyota Distributors, Inc., 492 F. Supp. 1383, 1390 (D. Mass. 1980) (Garrity, J.). In Article 7 of the Asset Purchase Agreement, Globe Composite, Globe Rubber and Somerville established an avenue to resolve indemnification claims for breaches of warranties, representations and covenants. There is currently $190,000 in escrow, $750,000 in outstanding promissory notes and in excess of $1,000,000 in monies owed to Somerville under the Employment Agreement, all available for set-off to satisfy any claim on which Globe Composite prevails. Considering these attendant circumstances, Globe Composite's motion for attachment is unreasonable and unnecessary. Globe Composite has more than an insurance policy to satisfy any claim that it can actually prove. It has a combination of escrow funds and monies it owes to Somerville over what it can claim a right of set-off. Globe Composite's Motion for Attachment should be denied.

## CONCLUSION

For the above-stated reasons, Globe Rubber and Somerville respectfully request that this Court deny Globe Composite's Motions for Attachment.

Respectfully submitted,
The Defendants, Richard C. Somerville and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc.
By their attorney,

Mark S. Furman (BBO# 181680)
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue
Boston, MA 02199
(617) 218-2000

Dated: March 29, 2005

## CERTIFICATE OF SERVICE

I, Mark S. Furman, hereby certify that on March 29, 2005, I served the above Answer upon the plaintiff by causing a copy to be hand delivered to Evan T. Lawson, Lawson & Weitzen, LLP, 88 Black Falcon Avenue, Suite 345, Boston, MA 02210-2414.

Mark S. Furman