UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>       Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD C. SOMERVILLE, )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. and )<br>ANNE ROCHE-SOMERVILLE )<br>       Defendants. )<br>) | Civil Action No. 05 10323 DPW |

|  |
|---|
| RICHARD C. SOMERVILLE, )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. and )<br>ANNE ROCHE-SOMERVILLE )<br>       Plaintiffs-in-Counterclaim, )<br>)<br>v. )<br>)<br>GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. and )<br>CARL W. FORSYTHE, )<br>       Defendants-in-Counterclaim. ) |

**OPPOSITION OF ANNE ROCHE-SOMERVILLE, IN HER INDIVIDUAL CAPACITY
AND IN HER CAPACITY AS TEMPORARY EXECUTRIX OF THE ESTATE OF
RICHARD C. SOMERVILLE AND SOLAR CONSTRUCTION, INC.
F/K/A GLOBE RUBBER WORKS, INC. TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

The defendants Anne Roche-Somerville, in her individual capacity and in her capacity as

Temporary Executrix of the Estate of Richard C. Somerville (Mrs. Roche-Somerville and the

Estate of Richard C. Somerville are collectively referred to herein as the "Defendants") and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc. hereby oppose plaintiff Globe Composite Solutions, Ltd. f/k/a Kalm-Forsythe Global Innovations, Ltd.'s ("Plaintiff") Motion for Leave To File First Amended Complaint (the "Motion") to the extent it seeks to add the John Hancock Life Insurance Company as a reach and apply defendant ("John Hancock"). The Motion should be denied to the extent it seeks to add John Hancock as a reach and apply defendant because (1) the Plaintiff's claim is not ripe; (2) Plaintiff cannot meet the requirements of M.G.L. c. 214, §3(6) because (i) the Plaintiff fails to establish that the Defendants owe the Plaintiff a debt as required by M.G.L. c. 214, §3(6); and (ii) the Defendants do not have any type of ownership interest in the insurance policy at issue here; and (3) the Plaintiff's claim is barred by M.G.L. c. 175, §125. Accordingly, amending the Complaint would be futile and the Motion should be denied.

## FACTUAL BACKGROUND

The Plaintiff seeks to reach and apply a survivorship, joint whole life policy, insuring the lives of both Richard and Anne Somerville issued by John Hancock (hereinafter the "Policy") in 1995. (A copy of the Policy is attached hereto as **Exhibit A**). The owner and the beneficiary of the Policy is the *Richard Carnwath and Anne Patricia Somerville Irrevocable Trust* (hereinafter the "Trust") (A copy of the Trust is attached hereto as **Exhibit B**). The Defendants are the two donors of the Trust. (**Exhibit B**). The Trustee of the Trust is Wendy A. Gibson. The beneficiaries of the Trust are the defendants' two children, Wendy Gibson and Gregg Somerville. Neither Richard Somerville nor Anne Roche-Somerville either own the Policy or are beneficiaries of the Trust. The Trust is irrevocable and neither of the Defendants have the "right to alter, amend or revoke it." (**Exhibit B**, Art. III, Sec. B).

Pursuant to the terms of the Policy, the proceeds of the Policy are only payable upon the death of the survivor of Richard and Anne Somerville. (**Exhibit A**).

By way of this Motion, the Plaintiff seeks to add John Hancock as a reach and apply defendant and to apply the proceeds from the Policy towards a potential, future judgment in favor of the Plaintiff.

## ARGUMENT

"[A] court has the discretion to deny [leave to amend] if it believes that, as a matter of law, amendment would be futile". Brandon Assocs., LLC v. Failsafe Air Safety Sys. Corp., 2005 U.S. Dist. LEXIS 14599 (D. Mass. 2005) quoting Carlo v. Reed Rolled Thread Die Co. 49 F.3d 790, 792 (1st Cir. 1995).

I.    Plaintiff's Reach And Apply Claim Is Not Ripe.

Since the Policy is a joint whole life survival policy, the Trust is not entitled to receive any of the insurance proceeds until such time as both Richard and Anne Somerville, the insureds, die. (**Exhibit A**). Accordingly, at this time, there are no insurance proceeds for the Plaintiff to seek to reach and apply. This makes the Plaintiff's Motion to Amend the Complaint not ripe.

II.    Even If The Claim Was Ripe, The Reach And Apply Claim Is Futile.

Further, amending the Motion would be futile because (A)(i) Plaintiff cannot establish, pursuant to M.G.L. c. 214, §3(6), that the Defendants owe it a debt; and (A)(ii) neither of the Defendants have any type of property interest, whether legal or equitable, in the Policy; and (B) Plaintiff's claim is barred by M.G.L. c. 175, §25.

3

A.    The Plaintiff Fails To Meet The Requirements of M.G.L. c. 214, §3(6) And Amending The Complaint Would Be Futile.

Chapter 214, §3(6) of the Massachusetts General Laws (hereinafter the "Statute") sets forth the procedural requirements and limitations applicable to Plaintiff's Motion.  The Statute provides in relevant part:

> Actions by creditors to reach and apply, in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor, within or without the commonwealth, which cannot be reached to be attached or taken on execution although the property sought to be reached and applied is in the possession or control of the debtor independently of any other person or cannot be reached and applied until a future time or is of uncertain value, if the value can be ascertained by sale, appraisal or by any means within the ordinary procedure of the court.  (emphasis supplied).

In assessing a plaintiff's claim which seeks to reach and apply the assets of the defendant-debtor under c. 214, §3(6) of the Massachusetts General Laws, the Court must engage in a two step analysis.  Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57-58 (D. Mass. 2002).  The two step analysis requires the plaintiff to establish "(1) the indebtedness of the defendant and (2) the defendant has property that can be reached by the plaintiff's in satisfaction of the defendant's debt." Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57-58 (D. Mass. 2002) citing Papamechail v. Holyoke Mut. Ins. Co., 8 Mass. App. Ct. 849 (1979).  See also, Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685, 462 N.E.2d 1370, 1372 (Mass. 1984) (discussing two step process).  The Plaintiff cannot meet the two prong analysis required under the Statute and its Motion should be denied.

i.    The Plaintiff Fails To Establish A Debt.

The Plaintiff seeks to reach and apply the proceeds of the Policy on the basis that it has a mere expectation of recovering its alleged damages, however, a mere expectation of recovery of damages does not amount to a debt pursuant to M.G.L. c. 214, §3(6).  See, H.G. Kilbourne v. Standard Stamp Affixer Co., 216 Mass. 118, 119 (1913).  The reach and apply remedy pursuant

4

to the Statute is only available where there is an underlying "debt" as defined in the Statute running from the defendant to the plaintiff. Id. The Statute does not encompass all actions founded upon contractual liability because the Statute only pertains to debts as distinguished from mere claims. Id.

> The word "debt" has never been made to include the simple
> possibility of being found responsible in damages for the breach of
> an executory contract, where neither the fact of liability nor the
> amount can be held affirmatively to exist until a judgment shall
> have been recovered.

Id. at 122. See also, Hunter v. Youthstream Media Networks, Inc., 241 F. Supp. 2d 52, 58 (D. Mass. 2002) (reach and apply remedy not available to plaintiff in a pending suit alleging breach of a stock purchase agreement and breach of an employment agreement because Massachusetts law requires the plaintiff's claims be reduced to judgment before a "debt" was established). Similarly, the term "debt" under the Statute does not include tort claims. In re: Gerald Miller, 113 B.R. 98, 103-104 (1990). See also, In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 904 (1st Cir. 1988) (reach and apply remedy not available when claims based in tort and contract not reduced to judgment). The case law makes it clear that under these factual circumstances, the Plaintiff, either under a theory of recovery based on contact or tort, is unable to establish an underlying "debt" running from the Defendants to the Plaintiff. Since the Plaintiff's cannot establish a debt under the Statute, amending the Complaint would be futile and the Plaintiff's Motion should be denied.

ii.    The Defendants Do Not Possess An Interest In the John Hancock
        Life Insurance Policy.

The Plaintiff similarly cannot meet the requirements of the second prong of the two prong analysis pursuant to the Statute because the Defendants have neither an ownership interest nor a beneficial interest in the Policy. The Statute explicitly requires the property the creditor seeks to

reach and apply be "in the possession or control of the debtor independently of any other person" and restricts a plaintiff-creditor to "any property, right, title or interest, legal or equitable, of a debtor, . . . " See, M.G.L. c. 214, §3(6). A claim to reach and apply has been defined as

> [a] prejudgment security device which is equitable in nature: it seeks either seeks either to restrain the defendant's disposition of his <u>own tangible property</u>, and then to reach and apply such property to satisfy the plaintiff's claim, or to restrain a third party's disposition of the <u>defendant's intangible or equitable property</u>, and then to reach and apply that property to satisfy the plaintiff's claim.

<u>In re Rare Coin Galleries, Inc.</u>, 862 F.2d at 903 n.5 quoting Gilleran, *Massachusetts Prejudgment Security Devices: Attachment, Trustee Process, and Reach and Apply*, 69 Mass. L. Rev. 156, 169 (1984) (emphasis added). Accordingly, a plaintiff-creditor can only reach and apply property which the defendant-debtor has an interest. Here, the Plaintiff cannot meet its burden because the Defendants do not have any type of ownership interest in the Policy.

Under the Statute, an insured, who is neither the owner nor a beneficiary of a Policy, cannot be deemed to have a sufficient interest in a Policy which has always been owned by an irrevocable trust. The Policy at issue is a survivorship whole life policy, insuring the lives of both Richard and Anne Somerville. The Policy identifies both the owner and the beneficiary of the Policy as Wendy A. Gibson, as Trustee of the Trust. **(Exhibit A)**. The fact that both the owner and beneficiary of the Policy is, and always has been the Trust, make it clear that neither Richard Somerville nor Anne Roche-Somerville have any interest in the Policy. Accordingly, the Policy is not capable of being reached and applied by the Plaintiff. The Plaintiff's Motion to Amend the Complaint should be denied because it fails to meet the requirements of M.G.L. c. 214, §3 and amending the Complaint would be futile.

B.    The Plaintiff's Claim Is Barred By M.G.L. C. 175, §125.

The Policy proceeds are exempt from the defendants' creditors pursuant to M.G.L. c.175,

§125.  Section 125 provides in relevant part:

> If a policy of life or endowment insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, whether or not the right to change the named beneficiary is reserved by or permitted to such person; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy... No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary. (emphasis added).

Two requirements must be met in order for an individual to be deemed a "lawful beneficiary" who is protected by the exclusionary language of M.G.L. c. 175, §125.  First, the beneficiary at the time of the insured's death must have been the original beneficiary.  In re Nancy R. Caron, 305 B.R. 614, 616 (Bankr. Mass. 2004).  Second, the policy must be in favor of a person, other than the insured, who has an insurable interest therein.  Id.  Both of these requirements are met here.  First, the beneficiaries through the Trust are the original beneficiaries of the Policy.  In re: CRS Steam, Inc., 217 B.R. 365, 369 (1998) (Debtor owned a whole life insurance policy which was payable at death to an inter vivos trust for the debtor's children.  The insurance policy, through the trust was "in favor" of the debtor's children, if any survive him, otherwise in favor of the debtor's nieces and nephews).  Second, the Policy, through the Trust, is "in favor" of the defendants' children.  Children are deemed to have an insurable interest in the proceeds of a life insurance policy insuring the life of their parent.  Mutual Life Insurance Co. v. Allen, 138 Mass. 24, 28 (1884).  See also, In re Nancy R. Caron, 305 B.R. at 617 ("In order to have an insurance interest in the life of an insured, the beneficiary must have some reasonable expectation of pecuniary benefit or advantage from the continued life of another.")  Accordingly,

pursuant to Section 125 of Massachusetts General Laws c. 175, any insurance proceeds payable

to the Trust are exempt from the Defendants' creditors.

## CONCLUSION

For the above-stated reasons, Roche-Somerville and Globe Rubber respectfully request

that this Court deny Globe Composite's Motion for Leave to File First Amended Complaint to

the extent it seeks to add John Hancock Life Insurance Company as a reach and apply defendant.

Respectfully submitted,
The Defendants, Anne Roche-Somerville, in her individual
capacity and in her capacity as the temporary executrix of
the Estate of Richard C. Somerville and Solar Construction,
Inc. f/k/a Globe Rubber Works, Inc.
By their attorneys,


Mark S. Furman (BBO# 181680)
Jennifer C. Roman (BBO# 643223)
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue
Boston, MA 02199
(617) 218-2000

Dated:  August 29, 2005


## CERTIFICATE OF SERVICE

I, Jennifer C. Roman, hereby certify that on August 29, 2005, I served the above Partial
Opposition upon the plaintiff by causing a copy to be mailed, via first class mail, postage prepaid
to Evan T. Lawson, Lawson & Weitzen, LLP, 88 Black Falcon Avenue, Suite 345, Boston, MA
02210-2414.


Jennifer C. Roman

# EXHIBIT A

*John Hancock* Mutual Life Insurance Company

John Hancock Place
Boston, Mass 02117

| | | | |
|---|---|---|---|
| INSUREDS | RICHARD C SOMERVILLE | $450,000 | BASE POLICY SUM INSURE[] |
| | ANNE P SOMERVILLE | 150,000 | INITIAL ADDITIONAL INSURANCE AMOUNT |
| PLAN | SURVIVORSHIP WHOLE LIFE | $600,000 | INITIAL TARGET AMOUNT |

POLICY NUMBER **80 124 746**                SEPTEMBER 19, 1995  DATE OF ISSUE

## JOINT LIFE INSURANCE

The John Hancock Mutual Life Insurance Company agrees, subject to the conditions and provisions of this policy, to pay the Sum Insured to the Beneficiary upon the death of the Surviving Insured if such death occurs while the Policy is in full force, and to provide the other benefits, rights and privileges of the policy.

Payment will be made on receipt at the Home Office of the Company in Boston, Massachusetts, of due proof of the death of the Surviving Insured. Also, due proof of the death of the first Insured to die must be given to us when such death occurs.

The policy, which includes any Riders which are a part of the policy on delivery, is issued in consideration of the application and the payment of the premiums.

The Policy Specifications on page 3 and the conditions and provisions on this and the following pages are part of the policy.

**10 Day Right of Examination – This policy may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium paid on it will then be refunded.**

Signed for the Company at Boston, Massachusetts.

President

Secretary

Survivorship Whole Life policy

Scheduled premium payable until death of Surviving Insured

Premium increases at end of 10 years from Date of Issue

Sum Insured payable upon death of Surviving Insured

Eligible for dividends

Schedules of benefits and premiums and the premium class are shown on page 3

Form 91–95

P0191

## Policy Provisions

Section

1. Policy Specifications
2. Table of Values
3. Definitions
4. Owner, Contingent Owner, Beneficiary
5. Payment of Premiums, Grace Period
6. Dividends
7. Loans
8. Automatic Payment of Premiums by Loan
9. Reinstatement
10. Surrender Value and Nonforfeiture Provisions
11. Interest on Proceeds
12. Claims of Creditors
13. Assignment
14. Incontestability
15. Misstatement of Age or Sex
16. Suicide
17. The Contract
18. Settlement Provisions

## Alphabetical Guide

Section

13. Assignment
8. Automatic Payment of Premiums by Loan
10. Basis of Computations
4. Beneficiary
12. Claims of Creditors
17. Contract
3. Definitions
6. Dividends
5. Grace Period
14. Incontestability
7. Interest on Loans
11. Interest on Proceeds
7. Loans
15. Misstatement of Age or Sex
10. Nonforfeiture Provisions
4. Owner
10. Paid-up Insurance
5. Payment of Premiums
1. Policy Specifications
1,5. Premiums
9. Reinstatement
18. Settlement Provisions
16. Suicide
10. Surrender Value
2,10. Table of Values

2

## 1. POLICY SPECIFICATIONS

OWNER, BENEFICIARY – AS DESIGNATED IN THE APPLICATION SUBJECT TO SECTION 4 OF THE POLICY

| INSUREDS | ISSUE AGE | PREMIUM CLASS |
|---|---|---|
| RICHARD C SOMERVILLE | 61 | 162.50% OF STANDARD NONSMOKER |
| ANNE P SOMERVILLE | 57 | STANDARD NONSMOKER |

|  |  |
|---|---|
| SUM INSURED | $450,000 |
| INITIAL ADDITIONAL INSURANCE AMOUNT# | 150,000 |
| INITIAL TARGET AMOUNT# | $600,000 |

POLICY NUMBER   80 124 746         SEPTEMBER 19, 1995   DATE OF ISSUE*

| SCHEDULE OF BENEFITS | POLICY PLAN | SCHEDULE OF ANNUAL PREMIUMS |
|---|---|---|
|  | SURVIVORSHIP WHOLE LIFE | PAYABLE+ |
|  |  | AMOUNT |
| LIFE INSURANCE – PAYABLE ON DEATH OF SURVIVING INSURED | FIRST 10 YEARS | $9,069.00 |
|  | THEREAFTER FOR LIFE OF SURVIVING INSURED | $13,573.50 |
| ADDITIONAL INSURANCE PROTECTION BENEFIT #ADDITIONAL SURVIVORSHIP ONE YEAR TERM AND PAID-UP INSURANCE IS PURCHASED BY PREMIUMS SHOWN AND BY ALL POLICY DIVIDENDS. ADDITIONAL PREMIUMS MAY BE REQUIRED TO PURCHASE TERM INSURANCE (GUARANTEED RATES ARE SHOWN ON PAGE 4A). | FOR 43 YEARS | $100.00 |

*The date of issue and the issue ages of each Rider for an additional benefit is the Date of Issue and the Issue Ages of the policy unless otherwise specified.
+Premiums are payable from the date of issue for the period specified, but not beyond the end of the policy month in which the death of the Surviving Insured occurs.

3

2.    TABLE OF VALUES

PLAN    SURVIVORSHIP
WHOLE LIFE

POLICY NUMBER   80 124 746

SUM INSURED   $450,000

| END OF POLICY YEAR | POLICY CASH VALUE OR LOAN VALUE | | PAID–UP INSURANCE |
|---|---|---|---|
| 1  | $ | 4.50        | $ 12.75 |
| 2  |   | 8,752.50    | 23,743.50 |
| 3  |   | 17,802.00   | 46,245.33 |
| 4  |   | 27,130.50   | 67,519.21 |
| 5  |   | 36,738.00   | 87,627.27 |
| 6  |   | 46,584.00   | 106,550.47 |
| 7  |   | 56,619.00   | 124,268.96 |
| 8  |   | 66,838.50   | 140,860.46 |
| 9  |   | 77,206.50   | 156,342.66 |
| 10 |   | 87,687.00   | 170,741.05 |
| 11 |   | 101,934.00  | 191,354.78 |
| 12 |   | 116,212.50  | 210,580.43 |
| 13 |   | 130,455.00  | 228,472.25 |
| 14 |   | 144,607.50  | 245,103.37 |
| 15 |   | 158,611.50  | 260,536.26 |
| 16 |   | 172,404.00  | 274,832.81 |
| 17 |   | 185,908.50  | 288,034.18 |
| 18 |   | 199,071.00  | 300,208.90 |
| 19 |   | 211,837.50  | 311,411.53 |
| 20 |   | 224,181.00  | 321,719.47 |

VALUES FOR YEARS NOT SHOWN WILL BE FURNISHED ON REQUEST

4

P0491G

POLICY NUMBER    80 124 746                    ADDITIONAL INSURANCE PROTECTION RIDER

## GUARANTEED MAXIMUM SURVIVORSHIP
### ONE-YEAR TERM INSURANCE RATES

| POLICY YEAR | ANNUAL RATE PER $1,000 OF INSURANCE AMOUNT | POLICY YEAR | ANNUAL RATE PER $1,000 OF INSURANCE AMOUNT |
|---|---|---|---|
| 1 | $ 0.25 | 23 | $ 61.76 |
| 2 | 0.26 | 24 | 69.41 |
| 3 | 0.29 | 25 | 77.65 |
| 4 | 0.33 | 26 | 86.62 |
| 5 | 0.39 | 27 | 96.44 |
| 6 | 2.00 | 28 | 106.94 |
| 7 | 2.63 | 29 | 118.19 |
| 8 | 3.33 | 30 | 130.07 |
| 9 | 4.17 | 31 | 142.70 |
| 10 | 5.17 | 32 | 156.05 |
| 11 | 8.28 | 33 | 170.36 |
| 12 | 10.26 | 34 | 185.72 |
| 13 | 12.61 | 35 | 202.45 |
| 14 | 15.32 | 36 | 221.03 |
| 15 | 18.43 | 37 | 241.99 |
| 16 | 22.01 | 38 | 268.19 |
| 17 | 26.13 | 39 | 304.51 |
| 18 | 30.80 | 40 | 360.06 |
| 19 | 36.02 | 41 | 455.02 |
| 20 | 41.77 | 42 | 628.11 |
| 21 | 47.99 | 43 | 957.44 |
| 22 | 54.64 | | |

-THIS PAGE INTENTIONALLY LEFT BLANK-

POLICY NUMBER    80 124 746                    ADDITIONAL INSURANCE PROTECTION RIDER

| POLICY YEAR | PAID-UP INSURANCE PURCHASED BY $100 OF NET FUNDS AVAILABLE AT BEGINNING OF YEAR UNDER ADDITIONAL INSURANCE PROTECTION RIDER | CASH VALUE AT END OF YEAR FOR EACH $1,000 OF PAID-UP INSURANCE IN FORCE |
|---|---|---|
| 1 | $    296.10 | $    352.88 |
| 2 | 283.38 | 368.63 |
| 3 | 271.28 | 384.95 |
| 4 | 259.78 | 401.82 |
| 5 | 248.87 | 419.25 |
| 6 | 238.52 | 437.20 |
| 7 | 228.73 | 455.62 |
| 8 | 219.48 | 474.50 |
| 9 | 210.75 | 493.83 |
| 10 | 202.50 | 513.57 |
| 11 | 194.72 | 532.70 |
| 12 | 187.72 | 551.87 |
| 13 | 181.20 | 570.99 |
| 14 | 175.13 | 589.99 |
| 15 | 169.50 | 608.79 |
| 16 | 164.26 | 627.31 |
| 17 | 159.41 | 645.44 |
| 18 | 154.93 | 663.11 |
| 19 | 150.80 | 680.25 |
| 20 | 147.00 | 696.82 |
| 21 | 143.51 | 712.82 |
| 22 | 140.29 | 728.26 |
| 23 | 137.31 | 743.15 |
| 24 | 134.56 | 757.53 |
| 25 | 132.01 | 771.39 |
| 26 | 129.64 | 784.71 |
| 27 | 127.43 | 797.48 |
| 28 | 125.39 | 809.72 |
| 29 | 123.50 | 821.45 |
| 30 | 121.74 | 832.75 |
| 31 | 120.08 | 843.68 |
| 32 | 118.53 | 854.34 |
| 33 | 117.05 | 864.82 |
| 34 | 115.63 | 875.28 |
| 35 | 114.25 | 885.87 |
| 36 | 112.88 | 896.80 |
| 37 | 111.51 | 908.41 |
| 38 | 110.08 | 920.92 |
| 39 | 108.59 | 934.44 |
| 40 | 107.02 | 948.90 |

POLICY NUMBER     80 124 746                    ADDITIONAL INSURANCE PROTECTION RIDER

| POLICY YEAR | PAID-UP INSURANCE PURCHASED BY $100 OF NET FUNDS AVAILABLE AT BEGINNING OF YEAR UNDER ADDITIONAL INSURANCE PROTECTION RIDER | CASH VALUE AT END OF YEAR FOR EACH $1,000 OF PAID-UP INSURANCE IN FORCE |
|---|---|---|
| 41 | $   105.39 | $   963.81 |
| 42 |     103.76 |     978.30 |
| 43 |     102.22 |   1,000.00 |

LUMP SUM PROCESSING CHARGE: $50.00
PREMIUM EXPENSE LOADING: 9.00% OF PREMIUM

### 3. DEFINITIONS

"We", "us" and "our" refer only to the John Hancock Mutual Life Insurance Company.

"You" and "your" refer only to the Owner of this policy.

"Age" means age on the nearest birthday.

"Payment" means, unless otherwise stated, payment at our Home Office in Boston, Massachusetts.

"Indebtedness" means loan indebtedness on the policy.

"Surviving Insured" means the Insured who is living upon the death of the other Insured. If both Insureds die simultaneously, then the term "Surviving Insured" shall mean the younger of the two Insureds.

"Written notice" means, unless otherwise stated, a written notice filed at our Home office in Boston, Massachusetts, or at one of our authorized offices.

"In full force" means that the insurance under the policy is being continued for the Sum Insured and that no unpaid premium is more than 31 days overdue.

### 4. OWNER, CONTINGENT OWNER, BENEFICIARY

The Owner, the Contingent Owner (if any) and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision. If no other Owner is designated, the Insureds will jointly be the Owner. If the Insureds are jointly the Owner, then (unless otherwise provided in the application or by written notice) upon the death of either of them the Surviving Insured will be the sole Owner.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

If there is a single Owner and there is no surviving Beneficiary upon the death of the Surviving Insured, then the Owner will be the Beneficiary; but if the Owner was the Surviving Insured or if the Owner and the Surviving Insured die simultaneously, then the estate of the Surviving Insured will be the Beneficiary.

If there are joint Owners and there is no surviving Beneficiary upon the death of the Surviving Insured, then the following will apply:

- If one of the joint Owners was the Surviving Insured, then the surviving Owner will be the Beneficiary.

- If the joint Owners and the Surviving Insured (whether or not one of the Owners) die simultaneously, then the estate of the Surviving Insured will be the Beneficiary.

While an Insured is alive, you may change the Owner, Contingent Owner and Beneficiary by written notice. You may also revoke any change of Owner or Contingent Owner prior to its effective date by written notice. No change or revocation will take effect unless we acknowledge receipt on the notice. If such acknowledgement occurs, then (i) a change of Beneficiary will take effect on the date the notice is signed and (ii) a change, or a revocation, of Owner or Contingent Owner will take effect as of the effective date specified in the notice or, if no such date is specified, on the date the notice is signed. A change, or a revocation, will take effect whether or not you or either Insured is alive on the date we acknowledge receipt. A change, or a revocation, will be subject to the rights of any assignee of record with us and subject to any payment made or action taken or allowed by us before we acknowledge receipt.

### 5. PAYMENT OF PREMIUMS, GRACE PERIOD

Premiums are payable as shown on page 3. They may be paid at more frequent intervals in accordance with our published factors and requirements in effect at the date the change in premium interval is requested. Each premium is due and payable in advance on the first day of its interval of premium payment. For the first premium, this day is the Date of Issue.

5

Payment of premiums shall be made either to us at our Home Office or to an agent authorized to receive the payment. Receipts will be delivered on request in exchange for premium payments. They will be valid only if signed by the President or the Secretary and countersigned by the agent shown on the receipt.

Any premium, other than the first, not paid when due may be paid within a grace period of 31 days after its due date if premiums have been paid to that date. The policy will continue in full force during that period.

If the Surviving Insured dies while the policy is in full force, we will refund or charge premiums to effect payment to the end of the policy month in which the Surviving Insured dies. We will pay any refund to you if you are not the sole Owner and the Surviving Insured; otherwise we will pay it to the Beneficiary. We will deduct any charge from any proceeds.

## 6. DIVIDENDS

This policy will be entitled to the share, if any, of the divisible surplus which we shall annually determine and apportion to it. We shall distribute any share as a dividend payable annually beginning no later than the end of the second policy year.

You may elect to have any dividend paid or applied under one of the following options:

a.  Paid in cash;

b.  Applied to premium payments;

c.  Left with us to earn interest at the rate that we declare. This rate will not be less than 3½% a year on amounts on deposit for full policy years. You may make withdrawals on request;

d.  Used to purchase an amount of paid−up insurance, in addition to the Sum Insured. The amount will be determined on the same basis as the Paid−Up nonforfeiture benefit. This insurance will always have a cash value of at least the amount of the dividend used to purchase it.

Unless you have elected a different option, each dividend will be left under option d. You may elect to change the option. The election may be effective as to any dividend payable within 31 days before the election.

We will pay as part of the proceeds payable at the death of the Surviving Insured any unpaid or unapplied dividends and interest and any paid−up insurance under option d outstanding when the proceeds become payable.

## 7. LOANS

You may borrow money from us on completion of a form satisfactory to us assigning the policy as the only security for the loan.

Loans may be made at any time a Loan Value is available after the first policy year. We may defer loans as provided by law. We will not defer loans for more than 6 months. We will not defer loans to pay premiums on our policies.

The Loan Value while the policy is in full force will be the amount of the Policy Cash Value as provided in the Table of Values plus the cash value of any insurance under dividend option d. Values will be determined as of the next (i) policy anniversary date or (ii) premium due date, whichever is the earlier date. The Loan Value while the policy is in force as Paid−Up Insurance will be the value determined according to the "Basis of Computations" provision plus the cash value of any insurance under dividend option d. Values will be determined as of the next policy anniversary. The amount of loan available will be the Loan Value less any existing indebtedness, loan interest and unpaid premiums to the date values are determined.

We will annually determine, in the calendar month preceding the policy anniversary, the Loan Interest Rate for this policy. This Rate will apply to all indebtedness outstanding during the policy year next following the date of determination. The rate we determine will not exceed the higher of: (a) the "Published Monthly Average" for the calendar month which is two months before the month in which the date of determination occurs; and (b) 6½%.

The "Published Monthly Average" means Moody's Seasoned Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor thereto.

If the "Published Monthly Average" is no longer published, we reserve the right to select a substitute that we deem appropriate, subject to applicable law or regulation.

When a new rate is determined: (a) we may increase the previous rate if the increase would be at least ½%; and (b) we must reduce the previous rate if the decrease would be at least ½%.

We will: (a) notify you of the initial Loan Interest Rate at the time a loan, other than a loan advanced under the "Automatic Payment of Premiums" provision is made; and (b) notify you of the initial Loan Interest Rate as soon as practical after a loan is advanced under the "Automatic Payment of Premiums" provision; and (c) give reasonable advance notice of any increase in the Loan Interest Rate if there is outstanding indebtedness on the policy.

Loan interest will be payable on each policy anniversary date and on the date the loan is settled. If interest is not paid when due, it shall be added to the loan to bear interest from its due date at the same rate.

A loan may be repaid in full or in part at any time before the death of the Surviving Insured and while the policy is in full force. A loan advanced while the policy is in force as Paid–Up Insurance may be repaid in full or in part at any time before the death of the Surviving Insured and while the policy is in force.

We will deduct any indebtedness from the amount otherwise payable when the policy proceeds become payable.

Failure to repay the loan or to pay interest will terminate the policy when the indebtedness equals or exceeds the Loan Value and 31 days after notice has been mailed to you and any assignee of record with us at the address last known to us. This provision will apply whether or not premiums are paid to a date beyond the date of termination.

## 8. AUTOMATIC PAYMENT OF PREMIUMS BY LOAN

An election may be made for Automatic Payment of Premiums either in the application or by written notice acknowledged by us while the policy is in full force. You may revoke the election at any time by written notice. While this election is in effect, we will pay any premium which is unpaid at the end of its grace period by a loan which we will automatically advance, if sufficient. The loan will be subject to the provisions of the Loans section.

While this election is in effect, if the amount available is less than the premium due, the interval of premium payment will be changed to the next shorter interval, if any, for which premiums may be paid and which the amount available is sufficient to pay in full. If the amount available is not sufficient to pay a premium for a shorter interval, this provision will not be effective. The Nonforfeiture Provisions shall then apply.

## 9. REINSTATEMENT

The policy may be reinstated within 3 years after the due date of the first unpaid premium provided: (a) both Insureds are alive or one Insured is alive and the lapse occurred after the death of the other Insured; (b) the surrender value has not been paid or otherwise exhausted.

The Reinstatement requirements are:

(1) A written application for reinstatement; and

(2) Production of evidence of insurability satisfactory to us; and

(3) Payment of overdue premiums with interest at 6%; and

(4) Payment or reinstatement of any indebtedness outstanding when the policy lapsed, with payment or reinstatement of interest.

Interest on indebtedness at the Loan Interest Rate or at such lesser rate as provided by law, will be payable to the date of reinstatement.

P0795

## 10. SURRENDER VALUE AND NONFORFEITURE PROVISIONS

### SURRENDER VALUE

We will pay the surrender value of the policy on receipt of written notice before the death of the Surviving Insured and on surrender of the policy.

While the policy is in full force the surrender value will be equal to the Policy Cash Value in accordance with the "Basis of Computations" and the "Table of Values" provisions, plus any dividends and interest unpaid or unapplied and the cash value of any insurance under dividend option d, less indebtedness.

While the policy is in force as Paid–Up Insurance, the surrender value will be the value determined from the "Basis of Computations" provision plus any dividends and interest unpaid or unapplied and the cash value of any insurance under dividend option d, less indebtedness. On surrender within 30 days after a policy anniversary date, the value of the Paid–Up Insurance will not be less than the value on that date.

Within 60 days after the date to which premiums are paid the surrender value will not be less than the surrender value on that date adjusted by any changes since that date in amounts of dividends and interest, paid–up insurance under dividend option d, and indebtedness under the policy.

We may defer the payment of any surrender value as provided by law. We will not defer payment for more than 6 months from the date we receive written notice and the policy. If we defer payment for more than 29 days, we will pay interest on the surrender value. The rate will be $3\frac{1}{2}\%$ a year for the period the payment is deferred.

### PAID–UP INSURANCE

Any Paid–Up Insurance provided will not apply to additional benefit provisions unless specified in the provision.

If a premium has not been paid when its grace period ends, the policy will lapse. If the policy has no surrender value the insurance will cease to be in force at the end of 31 days after the due date of the unpaid premium. If there is a surrender value we will apply it as a net single premium to provide insurance on an adjusted basis as of the due date of the unpaid premium. This insurance will be Paid–Up Insurance for the amount as provided in the "Basis of Computations" and the "Table of Values" provisions.

On the death of the Surviving Insured we will pay to the Beneficiary in place of all other benefits any amount of Paid–Up Insurance then in force.

### BASIS OF COMPUTATIONS

Values and net premiums referred to in this policy are calculated using the Commissioners 1980 Standard Ordinary Smoker and Nonsmoker Mortality Tables with Ten–Year Select Mortality Factors and percentage ratings, if applicable, based on the underwriting class of each Insured on the Date of Issue. The interest basis is 4.5%. Continuous functions are used. An annual policy fee of $60 is included in the gross premium.

Policy Cash Values are shown on page 4. We will furnish values for any date not shown on page 4 on request. Any value while the policy is in force as Paid–Up Insurance will be equal to the applicable net single premium.

A detailed statement of the method of computation of values has been filed with the insurance officials where this policy has been delivered or issued for delivery. The values are not less than minimum values under the law of that jurisdiction.

### TABLE OF VALUES (See page 4)

The Table of Values on page 4 is a part of this provision. The values shown apply at the end of the policy year only if premiums are paid to that date and only if there is no indebtedness, no dividend and interest unpaid or unapplied and no insurance under dividend option d. The values at a date other than the end of a policy year will be determined as of the end of a policy month in a manner consistent with that used to determine the values at the end of the year.

Any values and net premiums applicable to any rider for an additional benefit shall be as specified in the rider. Unless specified in the rider, they have no effect in determining the values available under the provisions of this Section.

## 11. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the death of the Surviving Insured from the date of death to the date of payment. The rate will be the same as declared for Option 1, Settlement Provisions.

## 12. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## 13. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of an Insured and of any revocable Beneficary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 14. INCONTESTABILITY

This policy, except any provision for a disability benefit, shall be incontestable after it has been in force during the lifetime of each Insured for 2 years from its Date of Issue, except for nonpayment of premium. During the second policy year we will mail you a notice reminding you that due proof of the death of the first Insured must be given to us when such death occurs at any time while this policy is in force.

## 15. MISSTATEMENT OF AGE OR SEX

If the age or sex of either of the Insureds has been misstated, we will adjust the Sum Insured and every other benefit to that which the premium paid would have purchased at the correct age or sex.

## 16. SUICIDE

If either of the Insureds commits suicide, while sane or insane, within 2 years from the Date of Issue, this policy will terminate on the date of such suicide and we will pay (in place of all other benefits, if any) an amount equal to the premiums paid less the amount of any indebtedness. If there is a Surviving Insured who was not classified as uninsurable on a single life basis when this policy was issued, and due proof of death of the other Insured is provided to us within 60 days after the date of the suicide, we will make a new policy available on the life of the Surviving Insured. The issue age, date of issue and Insured's underwriting classification under the new policy will be the same as when this policy was issued. The amount of coverage under the new policy will be the Sum Insured under this policy. The new policy will include any riders that were included in this policy, if such riders were available on a single life basis on the date of issue of this policy. We will set the premiums for the new policy in accordance with our regular rules in use on the date of issue. The new policy will not take effect unless all premiums due since the date of issue are paid to us within 31 days after we notify you of the availability of the new policy. If the person eligible to be insured under the new policy dies prior to the end of such 31 day period, we will pay the sum insured under the new policy less all premiums that would have been due under the new policy from its date of issue to the date of such person's death.

P0991GN

## 17. THE CONTRACT

The written application for the policy is attached at issue. The entire contract between the applicant and us consists of the policy and such application. However, additional written applications for policy changes may be submitted to us after issue and such applications may become part of the policy. All statements made in the application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of either of the Insureds to defend a claim under the policy unless it is in the written application.

Policy years, policy months and policy anniversaries are measured from the Date of Issue.

Any reference in this policy to a date means a calendar day ending at midnight local time at our Home Office.

Changes in this policy may be made by agreement between you and us. Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

## 18. SETTLEMENT PROVISIONS

### OPTIONAL METHODS OF SETTLEMENT

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit or as the surrender value, if any, may be left with us, under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the choice of any one of the options below. We shall annually declare the rate of interest or amount of payment for each option.

**Option 1** – Interest Income at the declared rate but not less than 3½ % a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A** – Income of a Specified Amount, with payments each year of at least 1/12th of the proceeds, until they are paid in full. We will credit interest on unpaid balances at the declared rate but not less than 3½ % a year.

**Option 2B** – Income for a Fixed Period, with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3** – Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the Payee dies within that period, we will pay the present value of those remaining payments. We will use interest at the same rate used to determine the payments for this value.

**Option 4** – Life Income without Refund at the death of the Payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5** – Life Income with Cash Refund at the death of the Payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may choose an option by sending written notice to us; (a) while either Insured is alive; and (b) before the proceeds become payable. If you have made no effective choice, the Payee may make one by written notice within: (a) 6 months after the date of death of the Surviving Insured; or (b) 2 months after the date on which the proceeds, if any, are payable in any case except death.

No choice of an option may provide for income payments of less than $50.00. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The Payee under an option shall be the Beneficiary or either of the Insureds.

No option may be chosen without our consent if the proceeds are payable: (1) in any case, except death, before the policy has been in force on the same plan for at least 5 years; or (2) in any case to an executor, administrator, trustee, corporation, partnership, association or assignee.

A Payee may, by written notice, name and change a Contingent Payee to receive any final amount that would otherwise be payable to the Payee's estate.

The mortality rates for options 3, 4 and 5 are based on the 1983 Table a – Female.

Table for Options 2B, 3, 4 and 5

(Monthly payments for each $1000 of proceeds applied)

| OPTION 2B Income for a Fixed Period | | Age of Payee on Birthday Nearest Date of First Payment | OPTION 3 Life Income with Guaranteed Period | | OPTION 4 Life Income without Refund | OPTION 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|
| Period of Years | Payment | | 10 Years | 20 Years | | |
| 1 | 84.46 | 40 | 3.53 | 3.50 | 3.54 | 3.46 |
| 2 | 42.86 | 41 | 3.57 | 3.54 | 3.58 | 3.50 |
| 3 | 28.99 | 42 | 3.62 | 3.58 | 3.63 | 3.54 |
| 4 | 22.06 | 43 | 3.66 | 3.62 | 3.68 | 3.58 |
| 5 | 17.91 | 44 | 3.77 | 3.66 | 3.73 | 3.62 |
| 6 | 15.14 | 45 | 3.76 | 3.71 | 3.78 | 3.66 |
| 7 | 13.16 | 46 | 3.82 | 3.75 | 3.83 | 3.71 |
| 8 | 11.68 | 47 | 3.87 | 3.80 | 3.89 | 3.75 |
| 9 | 10.53 | 48 | 3.93 | 3.85 | 3.95 | 3.80 |
| 10 | 9.61 | 49 | 3.99 | 3.90 | 4.02 | 3.85 |
| 11 | 8.86 | 50 | 4.05 | 3.95 | 4.08 | 3.91 |
| 12 | 8.24 | 51 | 4.12 | 4.01 | 4.15 | 3.96 |
| 13 | 7.71 | 52 | 4.19 | 4.06 | 4.22 | 4.02 |
| 14 | 7.26 | 53 | 4.26 | 4.12 | 4.30 | 4.08 |
| 15 | 6.87 | 54 | 4.34 | 4.18 | 4.38 | 4.15 |
| 16 | 6.53 | 55 | 4.42 | 4.24 | 4.47 | 4.21 |
| 17 | 6.23 | 56 | 4.50 | 4.31 | 4.56 | 4.28 |
| 18 | 5.96 | 57 | 4.59 | 4.37 | 4.66 | 4.36 |
| 19 | 5.73 | 58 | 4.69 | 4.44 | 4.76 | 4.44 |
| 20 | 5.51 | 59 | 4.79 | 4.50 | 4.87 | 4.52 |
| 21 | 5.32 | 60 | 4.89 | 4.57 | 4.99 | 4.60 |
| 22 | 5.15 | 61 | 5.00 | 4.64 | 5.11 | 4.69 |
| 23 | 4.99 | 62 | 5.12 | 4.71 | 5.25 | 4.78 |
| 24 | 4.84 | 63 | 5.24 | 4.77 | 5.39 | 4.88 |
| 25 | 4.71 | 64 | 5.37 | 4.84 | 5.54 | 4.99 |
| 26 | 4.59 | 65 | 5.50 | 4.91 | 5.70 | 5.09 |
| 27 | 4.47 | 66 | 5.64 | 4.97 | 5.87 | 5.21 |
| 28 | 4.37 | 67 | 5.79 | 5.03 | 6.06 | 5.33 |
| 29 | 4.27 | 68 | 5.94 | 5.09 | 6.26 | 5.46 |
| 30 | 4.18 | 69 | 6.10 | 5.14 | 6.47 | 5.59 |
| Annual, Semi-annual or quarterly payments under Option 2B are 11.839, 5.963 and 2.993 respectively times the monthly payments. | | 70 | 6.27 | 5.19 | 6.69 | 5.73 |
| | | 71 | 6.44 | 5.24 | 6.94 | 5.88 |
| | | 72 | 6.61 | 5.28 | 7.20 | 6.04 |
| | | 73 | 6.79 | 5.32 | 7.48 | 6.20 |
| | | 74 | 6.98 | 5.36 | 7.79 | 6.38 |
| | | 75 | 7.16 | 5.38 | 8.11 | 6.56 |
| | | 76 | 7.35 | 5.41 | 8.47 | 6.75 |
| | | 77 | 7.54 | 5.43 | 8.84 | 6.96 |
| | | 78 | 7.72 | 5.45 | 9.25 | 7.17 |
| | | 79 | 7.91 | 5.46 | 9.69 | 7.39 |
| | | 80 | 8.08 | 5.48 | 10.17 | 7.64 |
| | | 81 | 8.25 | 5.49 | 10.68 | 7.88 |
| | | 82 | 8.41 | 5.49 | 11.23 | 8.13 |
| | | 83 | 8.56 | 5.50 | 11.82 | 8.43 |
| | | 84 | 8.71 | 5.50 | 12.46 | 8.70 |
| | | 85 & over | 8.83 | 5.51 | 13.14 | 8.99 |
| Options 3, 4 and 5 are available only at the ages as shown. | | | | | | |

-THIS PAGE INTENTIONALLY LEFT BLANK-

 MUTUAL LIFE INSURANCE COMPANY

**ADDITIONAL INSURANCE PROTECTION BENEFIT RIDER – PAYABLE ON DEATH OF SURVIVING INSURED**
**APPLICATION OF PREMIUM AND DIVIDENDS TO PURCHASE ONE YEAR TERM INSURANCE AND PAID–UP INSURANCE**
**ELIGIBLE FOR DIVIDENDS**

### DEFINITIONS

"Additional Insurance Amount" means, as of any date, the sum of the following amounts purchased as described in this Rider:

   (a)  The amount of One Year Term Insurance then in force; and

   (b)  The amount of Premium Additions and Dividend Additions then in force.

"Minimum Additional Insurance Amount" means, as of any date, the difference between the Target Amount as of such date and the Sum Insured.

"Dividend Additions" means the paid–up insurance purchased under this Rider through the application of dividends apportioned to the policy or to paid–up insurance purchased under this Rider.

"Premium Additions" means all paid–up insurance purchased under this Rider other than Dividend Additions.

"In full force" as applied to this Rider, means it has not lapsed or terminated.

### INSURING CLAUSE

We agree, subject to the terms and conditions of this Rider and the policy: (a) to apply dividends as provided under this Rider; and (b) to pay the Additional Insurance Amount to the Beneficiary if the Surviving Insured dies while the policy and this Rider are in full force. We will calculate the Additional Insurance Amount as shown in the Benefit section of this Rider. Payment will be made on receipt at our Home Office of due proof of the death of the Surviving Insured.

The Additional Insurance Amount will be payable only if the Sum Insured under the policy is payable. Payment of the Additional Insurance Amount will be made together with and subject to the same conditions as payment of the Sum Insured.

The date of issue of this Rider is shown on page 3 of the policy.

### CONSIDERATION FOR RIDER

This Rider is made a part of the policy to which it is attached, in consideration of: (a) the application, a copy of which is attached to and made a part of the policy; and (b) payment of the premiums shown on page 3 of the policy for this Benefit and the Life Insurance Benefit; and (c) application of dividends as provided in this Rider.

### WAIVER OF PREMIUMS

When premiums are waived on the Life Insurance Benefit in accordance with a disability benefit rider, we will waive premiums for this Benefit as shown on page 3 of the policy, except for any Lump Sum Payment.

### APPLICATION OF DIVIDENDS

While this Rider is in full force it will be considered to be the dividend option election under the terms of the policy.

Any dividends apportioned to the policy or this Rider will be applied in accordance with the Benefit section of this Rider as of the policy anniversary on which they are apportioned if this Rider is in full force on such policy anniversary.

Notwithstanding anything in the policy to the contrary, after this Rider terminates each dividend will be applied under option d unless you have elected a different option.

P0991R

**BENEFIT**

Purchases under this section will take effect as of the Date of Issue and each policy anniversary, but only if: (a) the premium then due, if any, is paid while this Rider is in full force and while an Insured is living; or (b) the Surviving Insured dies within the grace period applicable to that premium.

When purchases are made under this section the following will occur:

(a) If the policy specifications indicate that the Target Amount is scheduled to increase, we will calculate a new Target Amount to reflect all applicable increases.

(b) We will add together the following amounts:

    (1) Any dividends apportioned to the policy and this Rider as of such anniversary;

    (2) The cash value of any Dividend Additions in force;

    (3) The cash value of any Premium Additions in force;

    (4) The annual premium for this Rider, as shown on page 3 of the policy, reduced by the premium expense loading;

    (5) The net amount of any lump sum payment made in accordance with the "Lump Sum Payments" section of this Rider; and

    (6) The payment, if any, under item (c) (3) (ii) of this section.

(c) The resulting funds available will then be used to provide One Year Term Insurance and paid-up insurance in accordance with the following provisions:

    (1) If the funds available will provide sufficient paid-up insurance so that the total paid-up insurance in force after such purchase equals or exceeds the Minimum Additional Insurance Amount, then we will apply all funds available to purchase paid-up insurance.

    (2) If item (c) (1) above does not apply and the funds available are sufficient, we will purchase amounts of One Year Term Insurance and paid-up insurance, so that the total insurance provided by using all of the funds available equals the Minimum Additional Insurance Amount. Funds will first be applied in the order shown in item (b) above to purchase the necessary amount of One Year Term Insurance. The remaining funds will then be used to purchase the paid-up insurance.

    (3) If item (c) (1) above does not apply and the funds available are not sufficient to purchase the Minimum Additional Insurance Amount, then: (i) we will apply all such funds to purchase One Year Term Insurance; and (ii) you may pay us an amount that will purchase an additional amount of One Year Term Insurance provided that the total insurance in force under this Rider after such purchase will not exceed the Minimum Additional Insurance Amount. We will notify you before each policy anniversary of the cost of any One Year Term Insurance available for purchase under this item (3). Your written application and payment for such insurance must be received by us during an Insured's lifetime and within 31 days after the policy anniversary on which that insurance is to take effect.

Any One Year Term Insurance purchased: (i) will expire without value at the end of the day before the next policy anniversary; or (ii) will expire upon termination of this Rider, if earlier.

If premiums are paid other than on an annual basis and all premiums for a policy year have not been paid, the paid-up insurance purchased on the prior policy anniversary will be reduced so as to reflect the actual premium paid.

## LUMP SUM PAYMENTS

Upon written request within 31 days of a policy anniversary you may make a lump sum payment under this Rider, subject to all the following conditions:

(a) Both Insureds must be alive;

(b) Evidence of insurability must be presented;

(c) The Lump Sum Payment must be at least $500; and

(d) Any other requirements as determined by us must be met.

A processing charge and a premium expense loading will be deducted. The net amount remaining will be included in the sum described in item (b) of the "Benefit" section of this Rider.

## LIMITED RIGHT OF SURRENDER OF PAID-UP INSURANCE

You may request a surrender of a portion or all of the paid-up insurance in force under this Rider if both of the following conditions are satisfied:

(a) The written request and the policy are received by us before the death of the Surviving Insured; and

(b) The payment of the cash value of the surrendered paid-up insurance does not reduce the policy surrender value to zero.

The surrender will be effective on the date we receive the request and the policy (or on such other date as is indicated in a plan to use the Policy Cash Value solely to pay premiums as described below). If such date is a policy anniversary, the calculations under the "Benefit" section of this Rider will be made before (a) through (d) below occur.

If the above conditions are satisfied, all the following will occur:

(a) Dividend Additions will be surrendered first. Then Premium Additions will be surrendered, if necessary.

(b) The cash value of the surrendered paid-up insurance will be paid to you.

(c) The Target Amount will be reduced by the total amount of the surrendered paid-up insurance.

(d) No scheduled increases will be made to the Target Amount after the surrender date.

However, if the cash value of the surrendered paid-up insurance is used solely to pay premiums under a plan approved by us and made available to all policies of the type to which this Rider is attached, items (b), (c), and (d) directly above will not apply while such plan is in effect. But, the request to implement the plan must be received at least 60 days before a policy anniversary.

## DISCONTINUANCE UPON REQUEST

This Rider may be discontinued as of the due date of any premium on receipt of written notice of discontinuance and presentation to us at our Home Office of the policy for adjustment. But such presentation and receipt must both occur before the due date of the premium, if any, and before the death of the Surviving Insured. Any paid-up insurance for which the total premium has been paid under this Rider will remain in force.

## CASH VALUE

The cash value of any One Year Term Insurance in force on the date this Rider terminates shall be the unearned premium for such Insurance. This cash value, if any, will be paid on termination of this Rider unless it is added to and becomes a part of the surrender value of the policy when the surrender value is paid or applied.

The cash value of any paid-up insurance purchased under this Rider shall be determined in accordance with the Basis of Computations section of the policy.

**GENERAL**

The cash value of any paid-up insurance under this Rider shall be included in determining the Loan Value and surrender value under the policy.

The amount of any benefit payable under this Rider shall not be affected by any amount payable under the policy or any other benefit provision included with the policy.

The "Dividends" section of the policy shall apply to any dividends apportioned to paid-up insurance purchased under this Rider.

The right included in the "Dividends" section of the policy to change the dividend option shall apply only to changes to options a, b, c or d specified in that section.

The maximum premium rates for One Year Term Insurance purchased under this Rider are shown on page 4A. The premium rates for paid-up insurance purchased under this Rider at any time are the same as those specified in the Basis of Computations section of the policy to which this Rider is attached.

**TERMINATION**

This Rider will terminate on the earliest of:

    (a) The lapse, exchange or termination of the policy; or

    (b) The payment or application of the surrender value of the policy; or

    (c) The date any dividend is first applied other than in accordance with this Rider; or

    (d) The date this Rider is discontinued on request.

**Signed for the Company at Boston, Massachusetts.**

President                                                             Secretary

P0991R                                                         4



This application for Survivorship Life Insurance is to (check one):

☐ John Hancock Mutual Life Insurance Company (Estate Protection) or

☐ John Hancock Variable Life Insurance Company (Variable Estate Protection)

which will sometimes hereinafter be referred to as "the Company."

# ESTATE PROTECTION
# VARIABLE ESTATE PROTECTION

*John Hancock*
Financial Services

## INSTRUCTIONS

1. Please print all answers legibly in black ink.
2. Please complete only one "Page 3", depending on the plan applied for.
3. Any change or deletion must be initialed by a Proposed Insured or Applicant.
4. Part B must be completed on all people proposed for coverage unless they are to be medically examined.

Form 156-SURV-93A

Application for Survivorship Life Insurance Part A

569111

**A. FIRST PROPOSED INSURED (LIFE 1)**

1. Name of Proposed Insured (please print):

Richard            C
FIRST NAME         MIDDLE INITIAL

Somerville
LAST NAME

2. Address  344 Keene St
STREET ADDRESS

Duxbury        MA    02332
CITY           STATE  ZIP

3. Home Phone ( ___ ) ___ – ____
4. Work Phone ( 6 1 7 ) 871 – 3200
5. Soc. Sec. Number 023 – 24 – 2540

6. Date of Birth 3 / 20 / 34
7. Place of Birth  MA
STATE            COUNTRY, IF NOT U.S.A.
8. Sex  ☒ Male  ☐ Female
9. Height  5 ft. 11 in.  10. Weight 214 lbs.
11. Occupation Owner/Pres. Globe Rubber Works Inc
12. Has the Proposed Insured smoked or used any of the following in the past 12 months?
   a. Cigarettes?            ☐ Yes  ☒ No
   b. Cigars, pipes, chewing  ☐ Yes  ☒ No
      tobacco, or snuff ?

**B. SECOND PROPOSED INSURED (LIFE 2)**

1. Name of Proposed Insured (please print):

Anne               P
FIRST NAME         MIDDLE INITIAL

Somerville
LAST NAME

2. Address  344 Keene St
STREET ADDRESS

Duxbury        MA    02332
CITY           STATE  ZIP

3. Home Phone ( ___ ) ___ – ____
4. Work Phone ( 6 1 7 ) 871 – 3200
5. Soc. Sec. Number 027 – 30 – 4693
6. Date of Birth 4 / 13 / 38

7. Place of Birth  MA
STATE            COUNTRY, IF NOT U.S.A.
8. Sex  ☐ Male  ☒ Female
9. Height  5 ft. 6 in.  10. Weight 58 lbs.
11. Occupation V.P. Globe Rubber Works Inc Marine Div.
12. Has the Proposed Insured smoked or used any of the following in the past 12 months?
   a. Cigarettes?            ☐ Yes  ☒ No
   b. Cigars, pipes, chewing  ☐ Yes  ☒ No
      tobacco, or snuff ?
13. What is Life 2 s relationship to Life 1?

**C. OWNER**

1. Policy Owner
   ☒ Trust
   ☐ Life 1  ☐ Life 2  ☐ Life 1 and Life 2, jointly
   ☐ Other (Complete question 6. )

2. Tax ID or Soc. Sec. Number  Applied for

Complete questions 3-5 if Owner is a Trust
3. Name of Trust Richard Cornwall and Anne Patricia Somerville Irrevocable Trust U.I.T Dated Sept 5, 1995.
4. Trustee(s) Wendy Anne Gibson
5. Date of Trust  9 / 5 / 95

COMPLETE VERIFICATION OF TRUST FORM ON PAGE 10 IF POLICY IS TO BE OWNED BY A TRUST

6. Other Owners, if any

| NAME OF OWNERS | RELATIONSHIP TO LIFE 1 AND LIFE 2 | SOC. SEC. NUMBER | DATE OF BIRTH |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Form 166-SURV-93                    –PAGE 1–

*Application for Survivorship Life Insurance Part A*

## OWNER (continued)

Name/Address/Phone for mailing of policy statements and correspondence other than premium notices.

Name/Address/Phone for mailing of premium notices. (If same as address to left, state "same".)

| NAME | | NAME |
| STREET ADDRESS | | STREET ADDRESS |
| CITY | STATE | ZIP | CITY | STATE | ZIP |
| PHONE NUMBER | | PHONE NUMBER |

## D. UNDERWRITING INFORMATION

|  |  | Life 1 | Life 2 |
|---|---|---|---|
| 1. In the past three years has Life 1 or Life 2 done, or does Life 1 or Life 2 intend to do any: | | | |
| a. flying except as a passenger on regularly scheduled airlines? (If Yes, please complete aviation questionnaire.) | | ☐ Yes ☐ No | ☐ Yes ☒ No |
| b. skin/scuba diving, parachuting, motorized racing, or other hazardous sports? (If yes, please complete avocation questionnaire.) | | ☐ Yes ☒ No | ☐ Yes ☒ No |
| 2. In the past three years has Life 1 or Life 2 been cited for two or more motor vehicle moving violations or had a driving license suspended or revoked? | | ☐ Yes ☒ No | ☐ Yes ☒ No |
| 3. In the past three years has Life 1 or Life 2 violated any criminal law, or are any criminal charges now pending against Life 1 or Life 2? | | ☐ Yes ☒ No | ☐ Yes ☒ No |
| 4. Does Life 1 or Life 2 Intend to reside or travel outside the U.S. or Canada? | | ☒ Yes ☐ No | ☒ Yes ☐ No |

If any of questions 2 — 4 are answered yes, please explain: _England, Business_

## E. OTHER INSURANCE/REPLACEMENT INFORMATION

| | | |
|---|---|---|
| 1. Is the insurance applied for intended to replace or change any life insurance or annuity in force on Life 1 or Life 2? (If Yes, please give policy number, insurance amount, and writing company of insurance being replaced after Question 4.) | ☐ Yes | ☒ No |
| 2. Has any application for life, disability, or health insurance on Life 1 or Life 2 ever been declined, postponed, or modified? (If Yes, please give most recent company, decision, and approximate date after Question 4.) | ☒ Yes | ☐ No |
| 3. Is any other insurance application now pending or contemplated on Life 1 or Life 2? (If yes, please give amount applied for, company applied to, and total amount sought from all companies after Question 4.) | ☐ Yes | ☒ No |

4. What is the total amount of life Insurance now in force on Life 1 $ _1,700,000_    Life 2? $ _Ø_

Details of "Yes" answers to Questions 1 — 3; please specify the Life to which answers pertain.
_2. John Hancock 9/95 Table B. (Life 1)_

John Hancock
*Financial Services*

*Application for Survivorship Life Insurance Part A*

## PLEASE COMPLETE THIS PAGE IF ESTATE PROTECTION IS DESIRED

### F. BENEFITS (ESTATE PROTECTION)

1. Base Policy Sum Insured $ 600,000

2. Additional benefits

   ☒ a. AIP - Additional Insurance Protection Rider
   (Dividend Option P is automatically elected when this rider is present)

   AIP Rider Premiums
   Annual Premium* of $ 9069
   (optional) Lump Sum payment at issue of $ _____

   AIP Rider Benefits
   Initial Additional Insurance Amount $ 100

   ☐ Premium Cost Recovery Option;
   Increase for _____ years at _____ %

   ☐ b. PUI-Paid-Up Insurance Rider (not available with AIP)

   Level premium* of $ _____ for _____ years.

   (optional) Lump sum payment at issue of $ _____

   ☐ c. Disability Waiver of Premium on

   ☐ Life I ☐ Life 2 ☐ Both

   * If 2c is elected, the amount shown includes disability premium.

   ☐ d. Other Available Riders

   _____

   _____

3. Premium billing interval

   ☐ Annual           ☐ Semiannual

   ☐ Quarterly        ☒ Monthly—Premiumatic

4. Dividend Option (Not available if AIP Rider has been elected)

   ☐ a. Taken in cash          ☐ c. Left on deposit

   ☐ b. Applied to reduce     ☒ d. Purchase paid-up
      premium                      insurance

   ☐ bd. Applied to reduce premium, any balance to
      purchase paid up insurance

   ☐ c. Dividend to purchase term insurance beginning:
      ☐ as soon as excess dividends become available, OR
      ☐ policy year _____ or when excess dividends
         become available, whichever is later.

5. Do you elect to have premiums paid if and when
   applicable by automatic loan? ☐ Yes ☐ No

### G. BENEFICIARY

Please indicate full name and relationship to the Proposed Insured. (please print)

Wendy Anne Gilmour, Trustee of the
Richard Carnworth and Jane Patricia Somerville Irrevocable Trust
U.I.T Dated September 5, 1995.

The right to change the beneficiary as to any proceeds is reserved to the Owner.

Form 156–SURV–93

ESTATE PROTECTION
PAGE 3



...on for Survivorship Whole Life Part A

## AGREEMENT AND SIGNATURES

A. The statements and answers on pages 1, 2, 3, and 4 of this Part A are, to the best of my knowledge and belief, complete, true, and correctly recorded. All statements and answers are representations and not warranties, and with all of Part B of this application shall form the basis for and be a part of any new contract of insurance.

B. No agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy, or receipt, or to accept risks or pass on insurability. Notice to or knowledge of any agent or medical examiner, whenever given, is not notice to or knowledge of the Company.

C. Coverage shall take effect as provided in and subject to the terms and conditions of Conditional Temporary Insurance Agreement Form 156-TIA-93 with the same date and number as this Part A if: (1) an advance payment is made with this Part A which satisfies the requirements of such Conditional Temporary Insurance Agreement; and (2) the amount of life insurance applied for in this and all other applications now pending on the life of each person proposed for insurance with the John Hancock Mutual Life Insurance Company and the John Hancock Variable Life Insurance Company does not exceed $3,000,000; and (3) questions L1. and L2. on Page 4 have been answered "no" by Life 1 and Life 2. If coverage does not so take effect, it shall take effect as of the Date of Issue of the policy, but; (1) only on delivery to and receipt by the Applicant, and payment of at least the first full premium in accordance with the billing interval selected and has not consulted, been examined by, or been treated by a physician or practitioner since the latest Part B pertaining to such person was completed.

D. [Provisions D and E apply only if Variable Estate Protection is applied for...] ...

E. The registered representative (signature below) certifies that a prospectus with materials other than those approved by JH-VLICO have [Proposed Insureds and/or to the Applicant and that no written sales materials...] been used...

Provisions F,G,H,I and J apply if the policy applied for is a term conversion.

F. The new policy will be a new, separate contract. If the new policy is issued in exchange for the original insurance, all liability of the Company under the original insurance will cease when the new policy takes effect. Until the new policy is issued, coverage will still be in force under the original policy(ies). Coverage under the new policy will take effect as indicated in Paragraph C above.

G. The Application for the original policy is now incontestable, unless such insurance is now incontestable, and the application for each additional benefit provision which is to be retained as specified on page 3 of this Application, unless such provision is now incontestable, will also form a basis for and be a part of the new policy.

H. If the original policy or benefit provision is being exchanged and is subject to an assignment, the new policy will be subject to the same assignment unless it is discharged or, in the case of a policy loan assignment, unless the indebtedness has been repaid.

I. If the new policy is issued in exchange for the original policy, any nonforfeiture option election applicable to the original policy will be applicable to the new policy, if available, unless otherwise requested in writing.

J. Ownership and control of any policy issued on the attached Application will be determined by the terms of the new policy.

All statements and answers in this Application are to the best of my knowledge and belief, true and complete. They are representations and not warranties, and I assent to this Application.

_____ _Trustee_ Dated At _Duxbury_ _MA_ on _9/19_ , 19 _95_
APPLICANT'S SIGNATURE                    CITY OR TOWN   STATE        DATE

_____ Dated At _____ __ ___ on _____ , 19 ___
APPLICANT'S SIGNATURE                    CITY OR TOWN   STATE        DATE

_____ Dated At _____ __ ___ on _____ , 19 ___
APPLICANT'S SIGNATURE                    CITY OR TOWN   STATE        DATE

_____     _____     _____
SIGNATURE OF LIFE 1, IF OTHER THAN APPLICANT   SIGNATURE OF L2, IF OTHER THAN APPLICANT   WITNESS (Agent must witness where required by law)

John Hancock Mutual Life Insurance Company
or
John Hancock Variable Life Insurance Company

Application to: | Part B-STATEMENTS TO COMPANY'S MEDICAL EXAMINER.

The questions and answers in 1-10 and Details of "Yes" answers apply to the following person proposed for insurance

1. a. Person proposed for insurance: (PRINT)
   ANNE ___ SOMERVILLE
   First Name    Middle Initial    Last Name

   b. Birth Date (mm/dd/yy) 04, 03, 38
   SSA 027, 32, 4695

| 2. Ever been treated for or had any known indication of: | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☒ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine, venereal disease; stone or other disorder of kidney, bladder, prostate, reproductive organs or breasts? | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☒ |
| i. Deformity, lameness or amputation? | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☒ |
| k. Allergies, anemia or other disorder of the blood? | ☐ | ☒ |
| l. Alcoholism, Drug Dependence? | ☐ | ☒ |

3. Within the past 5 years used amphetamines, cocaine, marijuana, narcotics, or any other drugs, except as medication prescribed by a physician? ☐ ☒

4. Now under treatment or taking any prescription drug? ☐ ☒

5. Any change in weight in the past year? ☐ ☒
   Gain _____ lbs.    Loss _____ lbs.

6. Other than above, within the past 5 years:
   a. Had any mental or physical disorder not listed above? ☐ ☒
   b. Had a checkup, consultation, illness, injury, surgery? ☒ ☐
   c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? ☐ ☒
   d. Had electrocardiogram, X-ray, other diagnostic test? ☒ ☐
   e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? ☐ ☒

7. Ever:
   a. Had military service deferment, rejection or discharge because of a physical or mental condition ☐ ☒
   b. Requested or received a pension, benefits, or payment because of an injury, sickness or disability? ☐ ☒

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

6. b. Last check up
February 1995
6. d. as part of a check
up

| 8. Have you ever been diagnosed or treated for Acquired Immune Deficiency (AIDS) or an AIDS Related Condition | Yes | No |
|---|---|---|
| | ☐ | ☒ |

9. a. Name and address of your personal physician: (If none, so state)
   Name Family Doctor
   Address Somerville Family Medical Group

   b. In past 5 years have you consulted your personal physician for any matter not recorded in answers to questions 2-8?
   If "Yes", furnish reason, details and date in "Details" space above.    ☐ ☒

10. Any family history of diabetes, cancer, high blood pressure or cholesterol, heart or kidney disease, or mental illness? ☒ ☐

| | Age if Living | Cause of Death | Age At Death |
|---|---|---|---|
| Father | | Coronary care | 58 |
| Mother | | has Alzheimer | 68 |
| Brothers and ~~Sisters~~ | 68 | | |
| No. Living ....1.... | | | |
| No. Dead ....0.... | | | |

The foregoing statements and answers are to the best of my knowledge and belief, complete, true, and correctly recorded and are representations and not warranties.

Dated at ROCKLAND ___ on 8 mch 1995
         City or Town                    State

Witness _____

Medical Examiner    X_____
Signature of person proposed for insurance, if age 15 or over, or Applicant, if person proposed is under age 15.

Form 157-Combo-90

John Hancock Mutual Life Insurance Company
**Application to:**                              or
John Hancock Variable Life Insurance Company

Part B-STATEMENTS TO COMPANY'S MEDICAL EXAMINER.

The questions and answers in 1-10 and Details of "Yes" answers apply to the following person proposed for insurance

| | Yes | No |
|---|---|---|
| **1. a.** Person proposed for insurance: (PRINT) | | |

R I C H A R D   C.   S O M E R V I L L E
First Name    Middle Initial    Last Name

**b.** Birth Date (mm/dd/yy)  3 , 29 , 34
SS#  0 2 3 , 2 4 , 2 5 4 0

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

2. c.  Left inguinal hemiorrhaphy South Shore hospital - Weymouth mass.

2. J  History of basal cell carcinoma left Temple March 1995 by Dr. Grande.

6. b.  Last check up august 1994

6. d.  As part of a check up.

| **2. Ever been treated for or had any known indication of:** | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☒ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☒ | ☐ |
| f. Sugar, albumin, blood or pus in urine, venereal disease; stone or other disorder of kidney, bladder, prostate, reproductive organs or breasts? | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☒ |
| i. Deformity, lameness or amputation? | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☒ | ☐ |
| k. Allergies, anemia or other disorder of the blood? | ☐ | ☒ |
| l. Alcoholism, Drug Dependence? | ☐ | ☒ |
| **3.** Within the past 5 years used amphetamines, cocaine, marijuana, narcotics, or any other drugs, except as medication prescribed by a physician? | ☐ | ☒ |
| **4.** Now under treatment or taking any prescription drug? | ☐ | ☒ |
| **5.** Any change in weight in the past year? | ☐ | ☒ |
| Gain _____ lbs.    Loss _____ lbs. | | |

| **6. Other than above, within the past 5 years:** | Yes | No |
|---|---|---|
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☒ | ☐ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☒ | ☐ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☒ | ☐ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |

| **7. Ever:** | Yes | No |
|---|---|---|
| a. Had any military service deferment, rejection or discharge because of a physical or mental condition | ☐ | ☒ |
| b. Requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☒ |

| | Yes | No |
|---|---|---|
| **8.** Have you ever been diagnosed or treated for Acquired Immune Deficiency (AIDS) or an AIDS Related Condition | ☐ | ☒ |

**9. a.** Name and address of your personal physician: (If none, so state)
Name _____ Brook Daggett _____
Address _____ South Shore medical group _____

**b.** In past 5 years have you consulted your personal physician for any matter not recorded in answers to questions 2-8?
If "Yes", furnish reason, details and date in "Details" space above.  ☒ / ☐

**10.** Any family history of diabetes, cancer, high blood pressure or cholesterol, heart or kidney disease, or mental illness?   ☐ / ☒

| | Age If Living | Cause of Death | Age At Death |
|---|---|---|---|
| Father | | Emphysema | 70 |
| Mother | 98 | | |
| Brothers and Sisters | 66 | | |
| No. Living ......... | | | |
| No. Dead ......... 0 | | | |

The foregoing statements and answers are to the best of my knowledge and belief, complete, true, and correctly recorded and are representations and not warranties.
Dated at _____ Rockland _____ , _____ M.A. _____ on _____ 3.16 _____ 19 95

City or Town                    State                    Signature of person proposed for insurance. If age 15 or over, or
Witness _____ James Sommerville Jr. _____          Applicant, if person proposed is under age 15.
Medical Examiner

Form 157-Comno-90

*John Hancock*  MUTUAL LIFE INSURANCE COMPANY

Boston, Massachussetts 02117

**AMENDMENT TO APPLICATION**

Policy No. ___080124746___

Insureds or
Proposed Insureds   RICHARD C SOMERVILLE
ANNE P SOMERVILLE

It is requested that the application with regard to the above-numbered policy be amended as follows:

ISSUE POLICY WITH BASE SUM INSURED OF $450,000.

ISSUE POLICY WITH AN ADDITIONAL INSURANCE PROTECTION RIDER WITH AN INITIAL ADDITIONAL
INSURANCE AMOUNT OF $150,000 AND AN ANNUAL PREMIUM OF $100.00.

Dated___OCTOBER 03, 95___

16524   PAGE 1   110

SWLAMEND

WENDY A GIBSON, Trustee

The INSUREDS, by virtue of this POLICY, are jointly a member of the John Hancock Mutual Life Insurance Company, and are entitled to vote either in person or by proxy at any and all meetings of the Company. The annual meetings are held at the Company's Home Office on the second Monday of April in each year, at twelve o'clock noon.

Communications about this policy may be sent to the Company at John Hancock Place, Boston, Massachusetts 02117, or to any agency office of the Company.

Survivorship Whole Life policy

Scheduled premium payable until death of Surviving Insured

Premium increases at end of 10 years from Date of Issue

Sum Insured payable upon death of Surviving Insured

Eligible for Dividends

Schedules of benefits and premiums, and the premium class, are shown on page 3

**EXHIBIT B**

## RICHARD CARNWATH AND ANNE PATRICIA SOMERVILLE
## IRREVOCABLE TRUST

This indenture of trust is made this fifth day of September, 1995, by RICHARD CARNWATH SOMERVILE and ANNE PATRICIA SOMERVILLE both of Duxbury, Plymouth County, Massachusetts as Donors, and Donors' daughter, WENDY ANNE GIBSON of Duxbury, Massachusetts, as Trustee. The term "Trustee" shall include all other genders and the singular shall include the plural and vise versa whenever the context and the facts require such construction.

The Donors and the Trustee agree as follows:

**ARTICLE I. NAME OF TRUST.** This trust shall be known as the "RICHARD CARNWATH AND ANNE PATRICIA SOMERVILLE IRREVOCABLE TRUST."

**ARTICLE II. IRREVOCABILITY.** This trust shall be irrevocable and the Donors shall not have the right to alter, amend or revoke it.

**ARTICLE III. Section A. Trust Property.** The Donors and other persons with the consent of the Trustee shall from time to time transfer additional property, either by way of lifetime or testamentary gift, to the Trustee to administer according to the terms of this agreement. Said property may be listed in Schedule A attached and made a part of this Agreement. If any insurance policies are transferred to the Trustee from the Donors, the Donors shall assign absolutely to the Trustee all right, title and interest in such insurance to the Trustee to hold in trust and to receive the proceeds when payable, and the Trustee agrees to hold the insurance and proceeds upon the terms set out in this indenture.

**Section B. Rights in Insurance.** The Trustee, as the absolute owner of all insurance purchased by or transferred to her by gift or otherwise, is authorized to exercise for the purposes of the trust, all the options, benefits, rights and privileges under each policy, including the right to borrow upon any policy, and to pledge it for a loan. The Donors shall relinquish all rights and powers in each policy of insurance transferred to the Trustee which is not assignable and will, at the request of the Trustee, execute all other instruments needed to effectuate this relinquishment.

**Section C. Payment of Premiums.** The Trustee may pay premiums on the insurance owned by her from trust income or principal. The Trustee has no duty, however, to make certain that premiums are paid, nor to notify anyone of nonpayment of premiums. If the Donors shall become disabled so as to qualify for any waiver of premium payments, the Trustee, upon receipt of such knowledge, shall notify the insurer and shall take all necessary steps to make the premium waiver provision effective.

**Section D. Collection of Insurance Proceeds.** Upon the death of the first Donor and again upon the death of the survivor of the Donors,



the Trustee shall use her best efforts to collect all insurance proceeds payable to her but shall have no obligation to begin collection proceedings unless indemnified to her satisfaction. The Trustee may exercise any options available when life insurance proceeds become payable to her. In the case of proceeds of life insurance payable to the Trustee as beneficiary, the Trustee's acknowledgment that she has received such proceeds shall be a complete discharge of the insurer's obligation to make the payment of such proceeds.

**Section E. Withdrawal Rights during Donors' Lifetimes.** With regard to additions made to the trust property during the lifetime of either Donor, the Donors if available, otherwise the surviving Donor, may irrevocably designate their living children to whom such additions, or portion of any such addition, shall be allocated. In the event that the Donors shall make no designation, then any addition shall be equally divided between the Donors' living children at the time the addition is made.

The Trustee shall give each child entitled to a right of withdrawal, or the legal or natural guardian or legal representative of such child, written notice of any contribution or addition to the trust immediately upon receipt of such contribution or addition. Each of the Donors' living children shall have the noncumulative right to withdraw an amount not to exceed his or her designated share, or if no designation is made, his or her pro rata share of the amount the Donors (or surviving Donor) added to this trust during the thirty (30) day period beginning on the date of receipt of the Trustee's written notification. Withdrawal rights shall not be cumulative and shall lapse in each instance that they are not exercised within such thirty (30) day period. Notwithstanding any other provision of this Section, the aggregate withdrawals of any child during any calendar year shall not exceed the greater of Five Thousand Dollars ($5,000.00) or five percent (5%) of the trust corpus at the time of the lapse of the power.

Withdrawal rights shall be exercised by the children by written notice to the Trustee. If a child is under a legal disability, the withdrawal right may be exercised by his or her legal representative, or if none, by his or her natural guardian other than the Donor. Such written notice of withdrawal shall be delivered to the Trustee within the thirty (30) day withdrawal period, and the property withdrawn shall be distributed by the Trustee. The Trustee shall retain sufficient assets to satisfy all withdrawal rights during the withdrawal period. The Trustee may satisfy any child's demand for a distribution by distributing cash, or other trust property including life insurance policies or interests in life insurance policies. If prior to the expiration of such thirty (30) day period, the child entitled to make a withdrawal notifies the Trustee in writing of such child's intention not to exercise that right, then such right shall terminate immediately upon receipt of the written instrument by the

2



Trustee.

**ARTICLE IV. DISPOSITION DURING DONORS' LIVES.** During the joint and survivor lifetimes of the Donors, but not during any period in which any child of the Donors has a withdrawal right under Article III, the Trustee shall pay to or apply for the benefit of the Donors' children so much of the net income and principal of the trust as the Trustee, in the Trustee's discretion, deems necessary or advisable for their maintenance, support, health, and education; provided, however, that no distribution shall be made which would operate to discharge or relieve a legal support obligation of the Trustee or the Donors.

The Trustee may make distributions to or for the benefit of one or more of the beneficiaries named in this Article to the exclusion of the others, in equal or unequal proportions, according to their respective needs as those needs arise. Any distribution to or for any such beneficiary shall be charged to the trust as a whole rather than against the ultimate share distributable to such beneficiary or those taking through such beneficiary upon termination of the trust.

**ARTICLE V. DEATH OF THE SURVIVOR OF RICHARD CARNWATH SOMERVILLE AND ANNE PATRICIA SOMERVILLE.**

**A.** Upon the death of the survivor of the Donors, the Trustee shall collect all sums payable thereunder and any payment to the Trustee by any insurer under any of said policies shall constitute a full discharge of said insurer as to all liability and responsibility with regard to such policy and no insurer need inquire into or take notice of the application of any payments so made to the Trustee hereunder. All expenses to the Trustee necessary to effect collection of said sum shall be considered an expense of the Trust and the trustee shall be reimbursed from trust funds.

Upon the death of the surviving Donor, the Trustee shall divide and apportion the principal and any undistributed and accrued income of this Trust then remaining into separate and equal shares, one share for each child of the Donors then living and one share for each child of the Donors then deceased who shall have left issue then living, each such share to be disposed of within thirty-six months after the death of the surviving Donor as follows:

(i) <u>Share for WENDY ANNE GIBSON</u>

The share for WENDY ANNE GIBSON shall be distributed outright, free of trust, to WENDY ANNE GIBSON, if living, subject only to the provisions of Article X, paragraph (1).

3

**(ii)** <u>Share for GREGG CARNWATH SOMERVILLE</u>

The share for GREGG CARNWATH SOMERVILLE (hereinafter referred to as "GREGG") shall be held in trust for his benefit if he shall survive both of the Donors. The Trustee shall establish a separate trust, to be designated the "TRUST FOR GREGG CARNWATH SOMERVILLE" and the Trustee shall administer said trust upon the terms and conditions of Article VI herein.

**(iii)**    <u>Share for a Deceased Child of Donor</u>

The Trustee shall manage, invest and reinvest this share as one common trust fund until the youngest child of such deceased child of the Donors attains the age of twenty-five (25) years. The Trustee shall hold the common fund for the benefit of all of the children of such deceased child of the Donors and shall pay to or expend for the benefit of any one or more of such children such amounts, or all, of the income and principal of the trust property as the Trustee, in her sole discretion, determine for their reasonable support, maintenance and health, or for the education of any such child without regard to the equality of such payments.

At the time the youngest child of such deceased child of the Donors attains the age of twenty-five (25) years, the Trustee shall divide and apportion the principal and any undistributed and accrued income of this Trust then remaining into separate and equal shares, one share for each child of such deceased child of the Donors then living and one share for each child of such deceased child of the Donors then deceased who shall have left issue then living, each such share to be distributed outright, free of trust.

If there is no issue then living of such deceased child of the Donors, then any remaining trust property held shall be distributed outright, free of trust, to Donors' issue, such issue to take by right of representation; provided however, that any amount payable to a beneficiary for whose benefit a share is then held under this indenture of trust shall be added to such share to be disposed of in all respects as if originally a part thereof. If there are no issue of the Donors then living, the remaining trust property shall be distributed by the Trustee, free of this trust, as provided for under Article VII of this indenture of trust.

**(iv)**  If no issue of the Donor are living upon the death of the surviving Donor, the then remaining trust property shall be distributed as provided for under Article VII of this

4

indenture of trust.

(v)     If any trust under this or any other Article has not sooner terminated, such trust shall terminate twenty-one (21) years after the death of the survivor of Donors and Donors' issue living on the date of this trust and the Trustee shall there upon pay over the property of such trust to the persons then eligible to receive either mandatory or discretionary distributions of income therefrom, by right of representation.

## ARTICLE VI.   TRUST FOR GREGG CARNWATH SOMERVILLE

This Trust for GREGG CARNWATH SOMERVILLE (hereinafter referred to as "GREGG") shall be for the exclusive benefit of Donors' said son and the Independent Trustee shall pay to or for his benefit such amounts of income and principal as the Independent Trustee in the Independent Trustee's sole discretion shall deem advisable for GREGG'S best interests.

The Independent Trustee shall dispose of such trust property as follows:

(1) Within five (5) years after the death of the surviving Donor, the Independent Trustee shall distribute, except as otherwise provided by Article X, (1) to GREGG one-half (1/2) of the trust property.   The value of the trust property shall be determined at the time of the first distribution.

(2)  Within ten (10) years after the death of the surviving Donor, the Independent Trustee shall distribute, except as otherwise provided by Article X, (1) to GREGG all of the remaining trust property.

(3)  Upon GREGG'S death prior to the distribution of all of the trust property, the Independent Trustee shall distribute any undistributed and accrued income and the principal of this trust to any one or more of GREGG'S surviving issue and in such amounts or proportions, outright or in trust, as GREGG may appoint by Will making specific reference therein to the power of appointment hereby granted.

If GREGG should fail to exercise effectively in whole or in part such power of appointment, or in default of such appointment, the Independent Trustee shall manage, invest and reinvest any remaining trust property then remaining as one common fund until the youngest child of GREGG attains the age of twenty-five (25) years.  The Independent Trustee shall hold the common fund for the benefit of all of GREGG'S children and shall pay to or expend for the benefit of any one or more of such children such amounts, or all, of the income and principal of the trust property as the Independent Trustee, in his sole discretion, determines for their

5



reasonable support, maintenance and health, or for the education of any such child without regard to the equality of such payments.

At the time GREGG'S youngest child attains the age of twenty-five (25) years, the Independent Trustee shall divide and apportion the principal and any undistributed and accrued income of this Trust then remaining into separate and equal shares, one share for each child of GREGG then living and one share for each child of GREGG then deceased who shall have left issue then living, each such share to be distributed outright, free of trust; or if there is no children or issue of GREGG then living, then the remaining trust property is to be distributed outright, free of trust, to Donors' daughter, WENDY ANNE GIBSON, if living; otherwise, such remaining trust property shall be distributed to WENDY ANNE GIBSON'S living issue, such issue to take by right of representation; provided however, that any amount payable to a beneficiary for whose benefit a share is then held under this indenture of trust shall be added to such share to be disposed of in all respects as if originally a part thereof. If there are no issue of the Donor the living, the remaining trust property shall be distributed by the Trustee, free of this trust, as provided for under Article VII of this indenture of trust.

**ARTICLE VII. ULTIMATE DISPOSITION.** Whenever property is directed to be distributed under this Article, it shall be divided into two equal shares and paid as follows:

(i) Fifty percent (50%) to those persons who, under Massachusetts law in force at the time of the surviving Donor's death, would have inherited RICHARD CARNWATH SOMERVILLE'S personal estate had he died at the time such amount becomes distributable, intestate, unmarried and a resident of Massachusetts, and in the proportions provided by Massachusetts law.

(ii) Fifty percent (50%) to those persons who, under Massachusetts law in force at the time of the surviving Donor's death, would have inherited ANNE PATRICIA SOMERVILLE'S personal estate had she died at the time such amount becomes distributable, intestate, unmarried and a resident of Massachusetts, and in the proportions provided by Massachusetts law.

**ARTICLE VIII. DEFINITIONS.** The following definitions shall be applied in interpreting this indenture:

(1) The words "child" and "children" shall mean only a direct descendant or descendants in the first degree.

(2) The word "issue" shall mean direct descendants in the first, second or any other degree of kindred to the ancestor designated, and shall be construed as singular or plural in

6



number, as shall be appropriate to the context.

(3) In determining whether any person is the "issue" or "ancestor" of a designated person, it shall be assumed that decrees of divorce rendered by a court of record, wherever located, are valid, and persons adopted according to law shall be deemed to be the lawful blood descendants of the adopting parents and of the adopting parents' ancestors.

(4) A distribution "by right of representation" among the living issue of a specified person shall mean a division at the designated time and into as many equal shares as are required to provide one such share for each child of the specified person living at such time and one such share for each deceased child of the specified person who left issue living at such time, with the share of a deceased child further divided into equal shares in the same manner and a like division at each level of descent until all the property to be distributed has been allocated among the living issue of the specified person.

(5) The term "trust property," unless otherwise characterized or defined for a specific purpose, shall mean the remaining balance, from time to time, of all of the property held in trust under this instrument, wherever such property may be situated, whether it is real, personal or mixed, and regardless of whether such balance includes property which was originally trust principal, proceeds of original trust principal, or undistributed income.

(6) Where necessary for the proper meaning to be given to any term used in this indenture, words denoting one gender shall include the other gender, the singular shall include the plural and the plural shall include the singular.

(7) Any reference to Donors' children shall mean only WENDY ANNE GIBSON and GREGG CARNWATH SOMERVILLE.

ARTICLE IX. TRUSTEE'S POWERS. Except to the extent specifically limited by other provisions of this instrument, the Trustee, in addition to and not in limitation of common law and statutory powers, shall have and may exercise the following powers, without resort to, or order or license of, any court:

(1) to retain any property that becomes a part of this trust, for whatever period the Trustee shall deem proper, without regard to the principles of diversification and without being limited to property authorized by law for trust investment;

(2) to sell, lease, or give options to purchase any property of the trust, real or personal, at public or private sale, for such consideration and upon such terms (including credit) as

7

the Trustee shall determine;

(3) to invest and reinvest in real and personal property, including, without limitation, stocks, bonds, mutual funds, debentures, notes, mortgages, partnership interests and common trust funds, or other securities or property, real or personal, tangible or intangible, including a policy or policies of life insurance on the life of either Donor or on the joint lives of both Donors as the Trustee shall determine, without being limited to property authorized by law, and without regard to the principles of diversification;

(4) to retain, operate, liquidate, sell or otherwise dispose of any business interest which is a part of the trust, in such manner and upon such terms as the Trustee deems advisable; to participate in the conduct of the business and to hire others to conduct the business; to participate in any incorporation, reorganization, recapitalization, sale of assets, liquidation or dissolution of the business; to make loans to the business with funds of the trust or from any Trustee's own funds; to elect and compensate as directors or officers such persons as the Trustee shall deem appropriate, including any Trustee; and generally to deal with and act on behalf of any such business interest to the same extent that an individual owner could act;

(5) to determine how all stock and cash dividends, rights and other receipts, and all disbursements for whatever purpose, shall be credited to, charged to, or apportioned between principal and income; to determine whether any discounts shall be accumulated; and to determine whether to add to principal any portion of dividends received on wasting investments and interest received on bonds purchased at a premium;

(6) to vote, in person or by general or limited proxy, or to refrain from voting, any shares of stock held in the trust;

(7) to borrow money, with or without security, for any purpose of the trust, on such terms as the Trustee shall deem appropriate, and to mortgage or pledge property of the trust for the purpose of securing any loan;

(8) to lend funds to the legal representative of either Donor's estate as the Trustee shall deem appropriate; provided, however, that the Trustee may not lend money to either Donor's estate without receiving adequate security and an adequate rate of interest;

(9) to purchase assets from either Donor's estate; provided however, that the Trustee may not buy assets from either Donor's estate other than at their fair market value;

8



(10) to lend money to any beneficiary who at the time of the loan is entitled or eligible to receive distributions of income or principal from the trust; provided, however, that the Trustee may not lend money to any beneficiary without receiving adequate security and an adequate rate of interest;

(11) to hold any asset of the trust in bearer form or in the name of a nominee, without any indication of fiduciary capacity; and to deposit securities in a securities depository within or outside of the Commonwealth of Massachusetts;

(12) to employ investment advisors, legal counsel, tax advisors, accountants, custodians and other agents, and to pay them reasonable compensation as an expense of the trust;

(13) to make distributions in cash or in kind (including non-pro rata distributions and distributions of undivided interests in property), at such values as the Trustee shall determine and without the necessity of equalizing the cost basis of assets distributed to each beneficiary;

(14) to pay over any money or property distributable to a beneficiary under a legal disability, or distributable to a beneficiary who, though not adjudicated incompetent, is in the Trustee's opinion not able to administer such amount properly, in any one or more of the following ways:

    a.  directly to the beneficiary;
    b.  to the beneficiary's legally appointed guardian;
    c.  to a parent of the beneficiary;
    d.  to a custodian of a minor beneficiary under the Massachusetts Uniform Transfers to Minors Act or a similar act of another jurisdiction; or
    e.  by applying such amount for the benefit of the beneficiary;

    and the receipt of the person to whom such money or property is paid shall be a full and complete discharge to the Trustee. The Trustee may also hold any property payable to a minor as a vested trust for that minor, retaining legal title to the property and paying trust income and principal to the minor for health, education, support and well-being until the minor comes of age or sooner dies, and then paying the remaining trust property to the minor or to his or her estate;

(15) when more than one Trustee is serving, to delegate fiduciary powers to a single Trustee for any period; except an Independent Trustee shall not be permitted to delegate his fiduciary powers;

(16) to merge any trust created hereunder with any other trust

9

created hereunder or otherwise held for the same beneficiary or beneficiaries and which, in the sole discretion of the Trustee, contain substantially the same provisions;

(17) to hold and manage the assets of separate trusts created hereunder as a single fund, in which each separate trust shall have an undivided pro rata interest in the single fund;

(18) to enter into a split dollar agreement with any corporation upon such terms and conditions as the Trustee shall deem advisable;

(19) to purchase, invest in or hold stock in Globe Rubber Works, Inc., a Massachusetts corporation or any other business interest (the "Business"). If any interest in the Business is transferred to this trust, the Trustee may retain and operate the Business even if that retention and operation incurs business risk that Trustee would not ordinarily incur. Without limiting the Trustee's authority, the Trustee shall have the following powers with respect to a Business that becomes part of this trust:

> (a) to retain and continue to operate the Business for as long a period as the Trustee may deem advisable, including for the entire duration of this trust;

> (b) to control, direct and manage the Business;

> (c) to determine the manner and extent of the Trustee's active participation in the Business, and to delegate all or any part of their power to supervise and operate to any person or persons as she may select including any associate, partner, officer or employee of the Business, any beneficiary or Trustee serving under this Agreement or any employee or agent of the Trustee;

> (d) to hire and discharge officers and employees, fix their compensation and define their duties; and similarly to employ, compensate and discharge agents, attorneys, consultants, accountants and such other representatives as the Trustee may deem appropriate, including any beneficiary or individual Trustee;

> (e) to invest other trust funds in the Business; to pledge other assets of the trust as security for loans made to the Business; and to loan funds from the trust to the Business;

> (f) to organize a corporation and to transfer all or any part of the Business or other business property

10



held in the trust to the corporation;

(g) to take any action required to convert any corporation into a partnership or sole proprietorship;

(h) to treat the Business as an entity separate from the trust, including to report the earnings and condition of the Business in accordance with standard corporate accounting practice in any accounting to beneficiaries;

(i) to retain in the Business as much of the net earnings for working capital and other purposes as the Trustee deems advisable;

(j) to sell or liquidate all or any part of any Business at such time and price and upon such terms and conditions, including credit, as the Trustee may determine, including to sell all or any part of the Business to any partner, officer or employee of the Business or to any beneficiary of this trust;

(k) to diminish, enlarge or change the scope or nature of any Business;

(l) to take any action necessary to qualify any corporation for treatment as an S corporation, including to take any actions necessary to qualify any trust under this instrument as a qualified subchapter S trust as defined in section 1361 (d) (3) of the Internal Revenue Code; and

(20) to perform all other acts necessary or advisable to accomplish the proper management, investment, and distribution of the trust property.

**ARTICLE X. GENERAL PROVISIONS.** The following provisions shall apply to each trust established by this indenture:

(1) **Spendthrift Clause.** No trust beneficiary may sell, pledge or otherwise transfer any part of his or her interest in this trust, and the Trustee shall not recognize any attempted transfer of it. The interest of a beneficiary in this trust shall not be subject to being taken by his or her creditors by any process whatever. Additionally, the Trustee shall make no distribution of either income or principal to any beneficiary if the Trustee determines that there is a reasonable possibility that such distributions will primarily benefit said beneficiary's creditors or others than the beneficiary himself or herself.

11

(2)  **Limitation on Trustee's Liability.** No Trustee shall be held personally liable by reason of any action taken, suffered or omitted in good faith.   No Trustee shall be liable for any action or omission in dealing with shares of stock of Globe Rubber Works,  Inc.  or any  other  closely-held  business interest, except for the Trustee's own willful default or misfeasance. Without limiting the generality of the foregoing, no Trustee shall be liable for retaining the shares of Globe Rubber Works, Inc. stock for as long a period as my Trustee deems appropriate,  including for the entire term of this trust, or for selling any shares of Globe Rubber Works, Inc. stock including for selling the shares to any Trustee or trust beneficiary.

(3)  **Trustee's Bonds.** No bond or surety shall be required of any original or successor Trustee.

(4)  **Liability for Actions of Prior Trustees.** No Trustee shall be responsible for the acts or omissions of another Trustee. Each additional or successor Trustee shall not be liable for any acts or omissions of any Trustee prior to the time he or she became a Trustee.

(5)  **Powers of Successor Trustees.** The incumbent Trustee shall have all of the title, powers and discretion granted to the original Trustee, without court order or act of transfer.

(6)  **Rights and Obligations of Third Parties.** If any Trustee discloses fiduciary capacity in dealing with any person, then that person shall have no claim against the Trustee as individuals, but only against the trust property. Anyone may rely on any statements of facts certified to by any Trustee. Whenever the Trustee acts pursuant to authority contained in this indenture or under law, third parties may rely on such acts without inquiry. No one dealing with the Trustee need see to the application of any money paid or property transferred to or upon the order of any Trustee.

(7)  **Survivorship of Beneficiaries.** If any trust beneficiary is not living  thirty  (30)  days  after  the  date  on  which  any distribution of principal conditioned on the beneficiary's survival to that date is required, such beneficiary shall not be deemed to have been living on the date specified for the distribution.

(8)  **Successor Trustees, Resignation, Limitation.** In the event that WENDY ANNE GIBSON shall cease to serve as Trustee hereunder, then  KENNETH  M.  CYMBAL,  of  Boston,  Massachusetts,  the Independent Trustee, shall serve as Trustee. As used herein, the term "Independent Trustee" shall exclude any person who has  a  beneficial  interest  hereunder,  whether  vested  or contingent,  and any person who has a legal obligation to

12



support any of the beneficiaries hereunder, and any person who is related or subordinate to any of Donors' children within the meaning of section 672 (c) of the Internal Revenue Code.

At all future times after the death of the surviving Donor, there shall be an Independent Co-Trustee serving under this indenture of trust with WENDY ANNE GIBSON. KENNETH M. CYMBAL shall be the initial Independent Trustee serving hereunder. In the event that WENDY ANNE GIBSON shall fail or cease to serve as Co-Trustee hereunder with the Independent Co-Trustee, then the Independent Trustee shall serve as sole Trustee. In the event that KENNETH M. CYMBAL shall fail or cease to serve as Independent Trustee hereunder, then there shall at all future times be an Independent Co-Trustee serving under this indenture of trust with the remaining Trustee, if any.

The Independent Trustee may be removed on thirty days notice to the Independent Trustee by all of Donor's legally competent children, provided that after such removal there shall be an Independent Trustee serving under this trust. No person shall possess or participate in this removal power if the power would be a general power of appointment with respect to that person for federal gift tax or estate tax purposes.

Vacancies shall be filled by appointment of a remaining Trustee, or if none, by all of the Donors' children who are living and legally competent and the personal or legal guardian, if any, of any child not then legally competent. Otherwise, vacancies shall be filled by a nomination made to the probate court in which either Donor's estate is administered.

All of the Trustees empowered to act with respect to any matter shall be required to act with respect to such matter.

Any Trustee may resign at any time by written instrument delivered to any person authorized to appoint a successor Trustee. The certificate of an attending physician that an individual Trustee is not capable of attending to business affairs shall constitute the resignation of such Trustee. A successor Trustee shall make written acceptance of office and shall be such Trustee immediately upon delivery of such written acceptance to the beneficiaries then entitled to receive income who are competent and over the age of eighteen years or to their respective guardians without the necessity of any other act, conveyance or transfer.

In no event shall either Donor serve as Trustee.

(9) **Governing Law.** The validity and effect of this instrument and the administration of the trust created by it shall be determined by the laws of Massachusetts.

13

(10) **Trustee's Accounts.** The Trustee may, and upon request shall, render periodic accounts with respect to the trust to the person or persons then entitled or eligible to receive the income of the trust who are of full age and competent and to the legal representatives, if any, then acting for those who are not, except that no accounts shall be required of the Trustee for the period of the Donors' joint and survivor lifetimes unless requested by either Donor. Such income beneficiary or beneficiaries shall have the full power and authority to assent in writing to settle finally any such account and, on the basis of such assent, to release the Trustee from all liability for her acts and omissions as Trustee. Any such assent shall, as to all matters or transactions stated in such account or shown by it, be binding upon all persons who are then or who may thereafter become interested in the income or principal of the trust, even if any of such persons are then under legal disability, unknown or not yet in being. The failure of any such income beneficiary to object to any such account by a writing delivered to the Trustee within ninety (90) days after an account has been mailed to him or her at his or her address on file with the Trustee or for which the beneficiary has given a receipt, shall be deemed an assent and shall be binding and conclusive to the same extent as the written approval provided for above. Nothing in this paragraph shall be deemed to give the person or persons to whom such accounts are rendered any power or right to enlarge or shift the beneficial interest of any beneficiary.

(11) **Form and Filing.** All resignations of Trustees, decisions to terminate and appointments and acceptances of successor Trustees shall be made by written instrument, signed, and filed with the records of the trust during the lifetime of the person executing such instrument.

(12) **Copies.** A copy of this instrument and of the writings, if any, attached to it, certified by a notary public, or a corrected copy of this instrument purporting to incorporate all textual amendments to date and certified by a notary public, may be relied on by any person as fully as the original documents themselves; and any certificate by anyone whom such original documents or such certified copies indicate to be a Trustee shall be evidence of the facts therein stated, including statements as to the appointment and status as Trustee of the person executing the certificate, and any person dealing with such apparent Trustee may rely on any such certificate dated not more than three months before presentation.

(13) **Separate Trusts for Generation-Skipping Transfer Tax Purposes.** If any trust hereunder (the "original trust") would but for this provision receive both property exempt from the generation-skipping transfer tax under Chapter 13 of the

14



Internal Revenue Code and property which is not so exempt or would but for this provision, have an inclusion ratio other than zero and one, the Trustee may create two trusts in place of the original trust: one (the "exempt trust") shall receive and hold the property which will be exempt and is intended to have an inclusion ratio of zero and the other (the "non-exempt trust") shall receive and hold the balance of the property. If separate trusts are created as provided herein, the Trustee shall comply with any requirements respecting allocation of post-death changes in value and shall administer the exempt and non-exempt trusts in accordance with the provisions of the original trust, except that:

(a)    the Trustee may allocate disproportionate amounts of or interests in property from the exempt and non-exempt trusts in any division of property into separate shares or trusts and in satisfaction of the exercise of any power of appointment or power of withdrawal;

(b)    the Trustee shall make distributions and payments (including payments of taxes and expenses which are not generation-skipping transfers from the non-exempt trust to the extent possible; and

(c)    the Trustee may, in her discretion, grant any individual who is the sole beneficiary of an non-exempt trust the power to appoint the property of such trust to the creditors of such beneficiary's estate.

(14)    **Renunciation of Powers and Interests.** The Donors renounce all interests, both vested and contingent, including reversionary interests, possibilities of reverter and powers of appointment, which the Donors might otherwise be deemed to hold in the income or corpus of the trust. No powers of the Trustee and no language in this instrument shall be construed:

(a)    to permit the Donors to become Trustees, to vote directly or indirectly in securities which may be held in trust, or to exercise any power of appointment; or

(b)    to enable the Donors to borrow any part of the trust property, directly or indirectly; or

(c)    to permit any trust distribution which would discharge any legal obligation of the Donors or the Trustee; or

(d)    to enable the Donors to reacquire any trust property by substitution of other property, whether or not of equal value.

It is the Donors' intention that upon their deaths, the trust property shall not be includable in either of their estates

15

for purposes of either the Federal estate tax or the Massachusetts estate tax. Accordingly, the Trustee shall have no authority to exercise any discretion or power in any manner which would result in such includability, and all other provisions of this Indenture shall be subordinate to this requirement.

(15) **S Corporation Stock.** If at any time any securities of an S corporation are allocated to the Family Trust (or any share thereof), the Trustee shall set aside such securities in a separate trust, to be held and disposed of as provided in the Family Trust (or share thereof); except that notwithstanding any contrary provisions of this instrument:

A.    There shall at all times be one primary beneficiary of such separate trust, who shall be the oldest living beneficiary of the Family Trust (or share thereof).

B.    The Trustee shall pay the net income of such separate trust to such primary beneficiary at least quarterly during such beneficiary's lifetime, and upon such beneficiary's death shall distribute to such beneficiary's estate all accrued and accumulated income.

C.    The Trustee may not make payments of principal from such separate trust to or for the benefit of any beneficiary other than such primary beneficiary.

D.    If the Family Trust (or share thereof) terminates during the lifetime of such primary beneficiary, all property of such separate trust shall be distributed outright to such beneficiary.

Any such securities (including the proceeds from any sale thereof an any investments or reinvestment of such proceeds) shall continue to be held in a separate trust as provided in this Article until the termination of the Family Trust (or share thereof), regardless of whether the corporation ceases to be an S corporation.

A Trustee who is neither my spouse nor issue of mine may at any time or times, by a writing or writings signed and acknowledged by such Trustee, amend the terms of this Article, but only to the extent (if any) necessary to enable any separate trust created hereunder to qualify or continue to qualify as a "qualified subchapter S trust" within the meaning of Section 1361 of the Internal Revenue Code.

16

**In witness whereof,** the parties have set their hands on the day, month and year set out above.

_____
RICHARD CARNWATH SOMERVILLE, Donor

_____
ANNE PATRICIA SOMERVILLE, Donor

_____
WENDY ANNE GIBSON, Trustee

### COMMONWEALTH OF MASSACHUSETTS

County of Plymouth, ss.                           September 5, 1995

Then personally appeared the above-named RICHARD CARNWATH SOMERVILLE and PATRICIA ANNE SOMERVILLE and acknowledged the foregoing instrument to be their free act and deed, before me,

_____
Notary Public
My Commission Expires:

17

**RICHARD CARNWATH AND ANNE PATRICIA SOMERVILLE
IRREVOCABLE TRUST**

**SCHEDULE A**

**TRUST ASSETS**


    This Schedule A is included only for the convenience of the
Trustee and beneficiaries, and any failure to list trust assets on
this schedule shall in no way affect the trust's ownership of those
assets.


    <u>ITEM:</u>                                        <u>AMOUNT:</u>


Cash                                              $5.00