UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br> )<br> *Plaintiff,* )<br> )<br>v. )<br> )<br>ANNE ROCHE-SOMERVILLE, individually )<br>and in her capacity as Executrix of the Estate of )<br>Richard C. Somerville, and )<br>SOLAR CONSTRUCTION, INC., INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br> )<br> *Defendants.* )<br> ) | Civil Action No. 05-10323DPW |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### STATEMENT OF THE CASE

This is an action by Globe Composite Solutions, Ltd. (Globe Composite), formerly Kalm-Forsythe Global Innovations, Ltd. (KFGI) against Solar Construction, Inc. (Solar) formerly Globe Rubber Works, Inc. (Globe Rubber) and the estate of Richard C. Somerville (Somerville) who was the former president and owner of Globe Rubber, arising out of KFGI's purchase of identified assets of Globe Rubber in August 2004.

The present motion for partial summary judgment concerns Globe Composite's claims to establish its ownership of two term life insurance policies insuring Somerville's life, and Globe Composite's right to the policy proceeds because of Somerville's suicide on June 7, 2005. The crux of the dispute is that both Globe Composite and Solar/Somerville claim ownership of the policies. One of the insurers, Lincoln Financial Group (Lincoln), disbursed $250,000 in

proceeds under its policy to Globe Composite on or about August 1, 2005. Solar has made a claim for those proceeds in this action. The proceeds from the second policy, issued by American General Life Insurance (American General) also in the amount of $250,000, have been deposited with the court as part of an interpleader action filed by American General on October 25, 2005 (C.A. No. 05-CV-11925-NMG). The interpleader action was consolidated with this action on July 28, 2006. American General was dismissed from the case on September 14, 2006.

As discussed below, Globe Composite is the rightful owner of the policies as evidenced by the agreements effectuating the asset acquisition transaction and both parties' actions and understandings during and subsequent thereto.

### UNDISPUTED FACTS

In or about August 2004, KFGI made an Asset Purchase Agreement with Globe Rubber and Somerville (Agreement) whereby KFGI purchased identified assets of Globe Rubber for approximately $898,000, as well as identified intellectual property of Somerville for $2.25 million. KFGI paid $2.4 million in cash and issued three promissory notes totaling $750,000. Globe Composite Solutions, Ltd.'s Concise Statement of Material Facts (Statement), ¶ 1.

Section 2.2 of the Agreement provides that certain "excluded assets" shall not be part of the sale and shall remain the property of Globe Rubber after the closing, including "all insurance policies and rights thereunder...." Statement, ¶ 2. As part of its disclosures under the Agreement, Globe Rubber provided a list of all "policies of insurance to which Globe [Rubber] is a party or under which Globe [Rubber], or any director of Globe [Rubber] in such capacity, is or has been covered at any time since January 1, 2003." This list includes, among others, three term life insurance policies described as follows:

Key Man Life Insurance on Somerville

2

| | | |
|---|---|---|
| State Life Insurance[1] | Policy #5110095310 | $400,000 |
| | Effective 3/9/04 - 3/9/05 | |
| American General Life Insurance | Policy #U10005220L | $250,000 |
| | Effective 9/19/03 - 9/18/04 | |
| Lincoln Financial Group | Policy #G1637194 | $250,000 |
| | Effective 9/1/03 - 9/1/04 | |

Statement, ¶ 3.

As a condition of the asset acquisition, KFGI agreed to enter an Employment Agreement retaining Somerville as the Director of Research and Development of Globe Composite for a term of five years. Statement, ¶ 4. The Employment Agreement provides that Somerville shall use "his best efforts to cooperate with [Globe Composite] in procuring "key man" life insurance policies in [Somerville's] name for the benefit of [KFGI/Globe Composite] at any time during the Employment Period, such cooperation to include, without limitation, [Somerville] being available for and consenting to any physical examinations, providing medical history record or other information or taking any other actions that may be necessary or advisable." Statement, ¶ 5. Globe Composite required key man insurance to protect it in the event that Somerville was unable to fulfill his duties as the Director of Research and Development. Globe Composite assumed the Lincoln and American General term life policies as part of the asset acquisition transaction for this purpose. Statement, ¶ 6.

Globe Rubber's Chief Financial Officer (CFO) leading up to and at the time of the

---

[1] KFGI allowed the State Life Insurance policy to expire and it is not an issue in this case.

closing was Roger Fasnacht (Fasnacht). Fasnacht stayed on as the CFO of Globe Composite after the closing. Statement, ¶ 7. Fasnacht was initially retained by Globe Rubber in December 2002 as a consultant to "cleanup" the company's financial records for presentation to prospective purchasers and lenders. Statement, ¶ 8. After becoming CFO of Globe Rubber, Fasnacht was responsible, among other things, for negotiating the terms of the Agreement, providing KFGI with all the financial and due diligence information needed for the acquisition, and advising Somerville and his wife with respect to same. Statement, ¶ 9. Fasnacht testified in his deposition that the "key man" policies referenced in the Agreement were transferred to Globe Composite as part of the acquisition in order to provide the new company with key man insurance on Somerville. Statement, ¶ 10. Globe Rubber and/or Somerville and his wife also held whole life insurance policies insuring Somerville at the time of the closing, but the term life policies were transferred to Globe Composite because they had little or no cash value. Statement, ¶ 11.

Immediately after the closing, Fasnacht took on the responsibility of effectuating the transfer of the Lincoln and American General policies from Globe Rubber to Globe Composite. This entailed contacting the insurers, having several conversations with Somerville about the actions required on his part to transfer the policies, and getting his signature on forms required by Lincoln and American General to effectuate the transfer. Statement, ¶ 12. Somerville signed these forms without ever questioning Globe Composite's right to the policies. Statement, ¶ 13.

Globe Composite paid all of the premiums due on the policies after the closing. The first premium payment was made by Globe Composite to Lincoln on August 27, 2004, which was contemporaneous with the asset acquisition closing. The first premium payment made by Globe Composite to American General was made on September 28, 2004. Statement, ¶ 14. Globe

Composite treated the premium payments as ordinary expenses. If Solar or Somerville owned the policies, any premium payments made by Globe Composite would have been treated as ordinary income to Somerville in 2004 and 2005. This was not the case. Globe did not issue Somerville any W-2 for these premium payments in 2004 and 2005, nor was it requested by him. Statement, ¶ 15.

William Rodgers (Rodgers), the corporate attorney who represented Globe Rubber in the acquisition of its assets by KFGI, testified in his deposition that while, in his opinion, the Agreement reflects the "meeting of the minds of the parties on the disposition of the insurance policies," Somerville could have transferred the policies to satisfy his obligations under the Employment Agreement, and Rodgers would expect the post-closing premiums to be paid by the owner of the policies. Statement, ¶ 16. The Agreement provides that "each party shall pay, or make adequate provision for the payment, in full of the Liabilities as assumed or retained under this Agreement." Statement, ¶ 17.

Carl Forsythe (Forsythe), one of the founders of KFGI and the Chief Executive Officer and President of Globe Composite, has a Masters in Business from Cornell University, successfully passed his CPA exam, and was involved in finance and banking activities, including several acquisitions, from 1982 until 1999. Statement, ¶ 18. According to Forsythe, term life policies with little or no cash value are financial obligations and do not become assets until the insured dies. As a result, the Lincoln and American General term policies were not "excluded assets" under the Agreement, but were in fact assumed liabilities. Statement, ¶ 19.

Somerville's employment with Globe Composite was terminated on January 31, 2005, Statement, ¶ 20, after he admitted that he and Globe Rubber had falsified certifications to government contractors that parts manufactured by Globe Rubber for U.S. Navy submarines,

specifically 92 inch missile hatch gaskets and sonar panels, met the required specifications. Statement, ¶ 21.

Somerville took his own life on June 7, 2005 at the age of seventy-one. Statement, ¶ 22. Globe Composite filed claims against both policies on July 5, 2005. Statement, ¶ 23. Lincoln paid the $250,000 in proceeds on its policy to Globe Composite on or about August 1, 2005. Statement, ¶ 24. The Estate of Somerville did not make a claim on the American General policy until September 21, 2005. American General filed an interpleader action on October 25, 2005 due to competing claims by Globe Composite and the Estate of Somerville, and deposited the $250,000 in proceeds with the court. Statement, ¶ 25. The Estate of Somerville/ Solar first made a claim against Globe Composite for the $250,000 in proceeds from the Lincoln policy by filing a counterclaim in this action on January 3, 2006, almost seven months after Somerville's death.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, Fed.R.Civ.P. 56©). "[T]his standard compels summary judgment if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation (internal quotations omitted)." *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) citing *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). "Conjectural allegations, conclusory assertions, and inconsequential evidence" do not suffice to establish a genuine issue of fact. *Roger Edwards, LLC v. Fiddes & Sons, Ltd.*, 387 F.3d 90, 94 (1st Cir.

2004), citing, *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000).

## II. The Undisputed Facts Show That Globe Composite Is The Rightful Owner Of The Policies.

Based on the conduct of Fasnacht and Somerville after the closing, and both Fasnacht's and Forsythe's understandings of the intentions of the parties with respect to the disposition of the Lincoln and American General term life policies, it is evident that Somerville and Globe Rubber intended that ownership of the policies be transferred to Globe Composite and that they effectuated the transfer before Somerville's death. It is well settled that "the subsequent understandings of the parties to a contract, like their actual practice following the contract, can cast light on their intentions as to the [agreement]." *Boston Edison Co. V. Federal Energy Regulatory Commission*, 441 F.3d 10, 14 (1st Cir. 2006) citing *Reed & Reed, Inc. v. Weeks Marine, Inc.*, 431 F.3d 384, 388 (1st Cir.2005). "The conduct of the parties after the signing of the agreements is also indicative of their intent." *Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers*, 411 Mass. 39, 59 (1991) citing *Martino v. First Nat'l Bank of Boston*, 361 Mass. 325, 332 (1972).

Fasnacht, Globe Robber's CFO who was instrumental in negotiating the terms of the acquisition on behalf of Globe Rubber, testified that the term life policies were to be transferred to Globe Composite as "key man" insurance for Somerville because they had little or no cash value, and that Globe Rubber would retain the whole life policies with cash value. Immediately after the closing, Fasnacht took action to effectuate the changes in ownership, including contacting the insurance companies to obtain the necessary forms, having several conversations with Somerville on the subject, and causing Somerville to execute the necessary forms. Somerville signed the forms required by Lincoln and American General, and never questioned

7

Globe Composite's right to the policies.

Additionally, Globe Composite, not Solar or Somerville, paid the premiums on the policies after the closing. The first premium payment was made by Globe Composite to Lincoln on August 27, 2004, contemporaneous with the asset acquisition closing. The first premium payment made by Globe Composite to American General was made shortly thereafter on September 28, 2004. Neither Solar nor Somerville made any premium payments on the policies after the closing. Had ownership of the policies remained with Solar/Somerville, W-2 forms would have been requested by Somerville from Globe Composite in 2004 and 2005 to reflect payment of the policy premiums. They were not. Even William Rodgers, Globe Rubber's corporate counsel who represented the company throughout the asset acquisition, testified that he would expect the post closing premiums to be paid by the owner of the policies.

Globe Composite made prompt claims on both policies within thirty days of Somerville's death. Solar did not make a claim on the American General policy until September 21, 2005, more than three months after Somerville's death, upon learning of Globe Composite's claim. Solar's first claim on the proceeds of the Lincoln policy was not made until it filed a counterclaim in this action on January 3, 2006.

> The practical interpretation of an agreement by a party to it is always a consideration of great weight. The construction of a contract is as much a part of it as any thing else. *There is no surer way to find out what parties meant, than to see what they have done* (emphasis added). *Insurance Company v. Dutcher*, 95 U.S. 269, 273 (1877).

Accordingly, the undisputed facts show that Globe Composite is the owner of the policies and entitled to the proceeds upon Somerville's death.

Moreover, the actions of Fasnacht and Somerville effectuated Somerville's obligation under his Employment Agreement to assist Globe Composite in obtaining "key man" insurance

8

on himself. Since Globe Composite was hiring Somerville as its Director of Research and Development, the company required key man insurance for protection in the event that Somerville was unable to fulfill his duties. The policies were identified as "Key Man Insurance on Somerville" in the Agreement itself, indicating that they were held by Globe Rubber and being transferred to Globe Composite for this purpose. Transferring the policies was the most practical course of action because they were already in effect and obtaining new term life policies on a seventy-one year old man, even in the best of health, would likely have been difficult and more expensive. Somerville lost nothing by agreeing to transfer the policies to Globe Composite since they had little or no cash value.

Finally, although the Agreement lists Globe Rubber's insurance policies as "excluded assets" not to be transferred to Globe Composite, this does not negate the testimony of Fasnacht and Forsythe that the policies were transferred to Globe Composite as part of the acquisition. This is because term life policies are not "assets" per se, but financial obligations. The owner of a term life policy must pay premiums throughout the term, even though the policy accrues little if any cash value, and assume the risk that the insured will outlive the policy term. Term life policies only become assets when the insured dies. As a result, the Lincoln and American General term life policies were not "assets" of Globe Rubber at the time of the transaction, and thus not "excluded assets" under the Agreement.

It is incumbent upon the defendants to produce some evidence that Globe Composite did not assume the Lincoln and American General term life policies as part of the asset acquisition transaction, or that Somerville did not transfer the policies to fulfill his obligations under the Employment Agreement. Mere speculation that Somerville did not sign the change in ownership forms, or that he was intimidated or coerced into doing so, cannot suffice. Absent any evidence

to the contrary, the policies must be deemed to be the property of Globe Composite, and the $250,000 in proceeds from the American General policy held by the court must be disbursed to Globe Composite. Based on all of the foregoing, the defendants will be unable to prove that they own the policies, or even that they have a good faith basis for their claims.

## CONCLUSION

For the foregoing reasons, Globe Composite Solutions, Ltd. respectfully submits that there are no genuine issues of material fact and it is entitled to partial summary judgment as a matter of law in its favor on the issue of ownership of the Lincoln Financial Group and American General Life Insurance term life insurance policies insuring the life of Richard C. Somerville and their proceeds.

By its attorneys,

/s/ Clare B. Burhoe
Evan T. Lawson, BBO# 289280
Clare B. Burhoe BBO# 632238
cburhoe@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, Massachusetts 02210
(617) 439-4990

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that, pursuant to LOCAL RULE 7.1(A)(2), I conferred with counsel for the defendants, Solar Construction, Inc., Estate of Richard C. Somerville, and Anne Roche-Somerville, on October 31 and November 1, 2006 in a good-faith effort to resolve this motion.
Dated: Nov. 28, 2006   /s/ Clare B. Burhoe

## CERTIFICATE OF SERVICE

    I, Clare B. Burhoe, hereby certify that on November 28, 2006 a true copy of the foregoing document was electronically filed with the Court and sent by first class mail to all counsel of record including Mark S. Furman and Jennifer C. Roman, Tarlow, Breed, Hart & Rodgers, PC, 101 Huntington Avenue, Suite 500, Boston, MA 02199. /s/ Clare B. Burhoe