UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>　　　　　Plaintiff, )<br>　　　　　　　　　　　　)<br>v. 　　　　　　　　　　)<br>　　　　　　　　　　　　)<br>RICHARD C. SOMERVILLE, )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. and )<br>ANNE ROCHE-SOMERVILLE )<br>　　　　　Defendants. )<br>_____) | Civil Action No. 05 10323 DPW |

GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTHE GLOBAL )
INNOVATIONS, LTD. )
　　　　　Plaintiff, )
　　　　　　　　　　　)
v. 　　　　　　　　　)
　　　　　　　　　　　)
RICHARD C. SOMERVILLE, )
SOLAR CONSTRUCTION, INC. F/K/A )
GLOBE RUBBER WORKS, INC. and )
ANNE ROCHE-SOMERVILLE )
　　　　　Defendants. )

_____

RICHARD C. SOMERVILLE, )
SOLAR CONSTRUCTION, INC. F/K/A )
GLOBE RUBBER WORKS, INC. and )
ANNE ROCHE-SOMERVILLE )
　　　　　Plaintiffs-in-Counterclaim, )
　　　　　　　　　　　)
v. 　　　　　　　　　)
　　　　　　　　　　　)
GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTHE GLOBAL )
INNOVATIONS, LTD. and )
CARL W. FORSYTHE, )
　　　　　Defendants-in-Counterclaim. )

_____

## AFFIDAVIT OF JENNIFER C. ROMAN

I, Jennifer C. Roman, upon personal knowledge know these facts to be true, hereby under oath

depose and state the following:

1.　　　I am an attorney duly licensed to practice law in the Commonwealth of Massachusetts

and this Court.  I am one of the attorneys representing the defendants/plaintiffs-in-counterclaim Anne

Roche-Somerville, individually and in her capacity as Executrix of the estate of Richard C. Somerville

and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc. (collectively, the "Defendants").

2.      This affidavit is submitted in support of Defendants request for additional time to permit Defendants to conclude previously suspended depositions, conduct previously scheduled depositions of two insurance companies, obtain affidavit(s), and obtain discovery in opposition to Plaintiff's Motion for Summary Judgment ("Motion for Summary Judgment"). Defendants assert that there is a plausible basis for believing that granting additional time to complete discovery and obtain affidavits will produce additional testimony which will influence the outcome of the pending motion for summary judgment and that this additional testimony can be obtained in a reasonable time, i.e. by the end of January, 2007.

3.      The subject of the Plaintiff's Motion for Summary Judgment which was filed on November 28, 2006, is two life insurance policies insuring the life of Richard Somerville – one policy was issued by Aetna Life and Annuity Company which I believe is administered by Lincoln Financial Group ("Lincoln Financial") (hereinafter referred to as the "Lincoln Policy") and a second policy was issued by American General Life Insurance Company ("American General") (collectively, the "Policies"). It is the Defendants' position that the Lincoln Financial and American General Policies were not sold to Plaintiff under the Asset Purchase Agreement. Attached as **Exhibit 1** is a copy of page 46, lines 7-11 and page 60, lines 12-14 from the deposition of William R. Rodgers. Attached as **Exhibit 2** is a copy of p. 47, lines 20-23 from the deposition of Globe Composite Solutions, Ltd. ("Globe Composite")/Carl W. Forsythe.

4.      My office received this year a copy of a letter dated September 2, 2004 in which Globe Rubber Works, Inc. is identified as the owner of the policy. (See **Exhibit 3**, attached). Roger Fasnacht ("Fasnacht"), the former CFO of both Globe Rubber and Globe Composite, has not yet been asked about this letter, which was produced by American General, and which is dated after the closing.

5.      Attached as **Exhibit 4** in an Annual Policy Statement for the American General policy for the period September 19, 2003 to September 19, 2004.

2

6.    Attached as **Exhibit 5** is a copy of page 283, lines 10-24, page 284, lines 1-7, page 281, lines 18-24, page 282, lines 1-7, page 207, lines 12-23 and page 208, lines 9-18 from the deposition of Roger Fasnacht.

7.    Attached as **Exhibit 6** is a letter dated January 1, 2005 terminating Richard Somerville's employment with Globe Composite.

8.    Attached as **Exhibit 7** is a copy of page 157 from the deposition of Globe Composite/Carl Forsythe.

9.    Attached as **Exhibit 8** is a fax to American General enclosing a Change of Ownership Form dated February 14, 2005.

10.    Attached as **Exhibit 9** is a fax dated February 16, 2005 to Lincoln Financial.

11.    Attached as **Exhibit 10** is Aetna Policy # G1637194, which I believe is administered by Lincoln Financial.  Numbered page 3 states in part as follows:

>"To change the Owner or Beneficiary Your Written Request must
>be sent to Us.  When We give Our written acceptance, the change
>will take effect as of the date Your Written Request was signed."

12.    Attached as **Exhibit 11** are certain documents produced by Lincoln Financial and Globe Composite.

13.    Attached as **Exhibit 12** is a fax from Roger Fasnacht to Lincoln Financial dated March 29, 2005.  This document was produced by Globe Composite.

14.    Attached as **Exhibit 13** is a fax dated March 30, 2005 fax from Roger Fasnacht to Elonie Smith at Lincoln Financial.  It appears that Globe Composite is claiming Mr. Somerville executed the enclosure to the fax after this litigation had been initiated by Globe Composite.

15.    Attached as **Exhibit 14** is a copy of American General Policy No. U10005220L.  On

page 12 of the Policy it is stated as follows:

> "You may change the Owner or the Beneficiary at any time during
> the lifetime of the Insured unless the previous designation provides
> otherwise.  To do so send a written request to our home office in a
> form acceptable to us.  The change will go into effect when we
> have recorded the change.  However, after the change is recorded,
> it will be deemed effective as of the date of your written request
> for change...."

16.    Attached as **Exhibit 15** is a fax from Pension & Wealth Management to American

General dated February 16, 2005.

17.    Attached as **Exhibit 16** is a letter dated February 18, 2005 from American General to

Globe Rubber Works, Inc.

18.    Attached as **Exhibit 17** is a letter dated February 24, 2005 from American General to

Globe Rubber Works, Inc.

19.    In June, 2005, Mr. Somerville passed away.

20.    Depositions commenced in January and February 2006 and the Defendants started the

combined Rule 30(b)(6) and individual depositions of Globe Composite, Forsythe and John Boodee,

the Chief Operating Officer of Globe Composite.  The deposition of Fasnacht was also commenced.

All documents had not been received from the insurance companies at the time.

21.    The Lincoln Financial documents were subpoenaed in this case and produced to the

Defendants on or about June 13, 2006.  (See **Exhibit 18**, attached.)

22.    American General filed a separate interpleader action.

23.    American General agreed to produce their file, excluding documents which were

subject to the attorney-client privilege, and did so on or about February 28, 2006.  (See **Exhibit 19,**

attached.)

24.    For several months, no discovery was taken because the parties were awaiting the documents concerning the baffle panels to be produced.  The baffle panel documents were produced on or about November 1, 2006.  (See **Exhibit 20**, attached).

25.    On November 10, 2006, at my request, shortly after the baffle panel documents were produced, counsel for the Plaintiff made available for my inspection the documents from the Plaintiff's insurance file concerning the disputed Policies.  Some, but not all of the documents made available for inspection at that time, had been previously produced.  In addition, I requested the opportunity to inspect the original of the March 30, 2005, fax from Fasnacht, to Lincoln Financial, enclosing the undated letter, which purportedly bears the signature of Mr. Somerville.  On November 21, 2006, the Plaintiff, through counsel, stated that it could not locate the original of the requested document.  (See November 21, 2006, email from Clare Burhoe, Esquire to me attached as **Exhibit 21**.)  The document, which is one of the documents submitted by Globe Composite in support of its Motion for Summary Judgment (see **Exhibit H** to the Motion for Summary Judgment), appears to have been prepared in March, 2005, after Mr. Somerville had been terminated from Globe Composite and after this lawsuit was commenced.

26.    Before the filing of the Motion for Summary Judgment the parties engaged in discussions concerning the scheduling of several depositions.[1]  The parties agreed to schedule the continued deposition of Roger Fasnacht for December 15, 2006, the depositions of Lincoln Financial and American General for December 21, 2006, and the deposition of Carl Forsythe for January 30, 2006.[2]

---

[1] The Defendants had been waiting for the Plaintiff to produce documents concerning the baffle panels which had been forwarded to the United States Attorney's Office for review.  The United States Attorney's Office released the documents on or about November 1, 2006, the Plaintiff subsequently produced the documents, and the parties engaged in discussions concerning the scheduling of depositions.

[2] Since the filing of the Plaintiff's motion for partial summary judgment, the parties have discussed scheduling Mr. Forsythe's deposition earlier in January in order to expedite completion of discovery and have agreed on January 4, 2007.

27. At the continued depositions of Fasnacht, Globe Composite and Forsythe, the Defendants intend to elicit testimony regarding, among other things,

    a. The circumstances under which certain insurance documents were allegedly signed by Somerville after the closing;

    b. What role Forsythe had in securing the alleged signature of Somerville on the relevant insurance documents;

    c. What statements were made by Somerville concerning the Policies;

    d. Who was present when the change of ownership and change of beneficiary forms were allegedly signed;

    e. What was Globe Composite and/or Somerville's understanding about the terms of the Asset Purchase Agreement when Globe Composite sought Somerville's signature on the insurance documents;

    f. What, if any, agreements were made between Globe Composite and Somerville after the closing regarding the insurance policies;

    g. What if any consideration existed for the transfer of ownership of the insurance policies given the language of the Asset Purchase Agreement;

    h. The reasons for any delay by Globe Composite in submitting the change of ownership and change of beneficiary forms to Lincoln Financial and American General;

    i. The reasons why Globe Composite did not contact Somerville's attorney, William R. Rodgers, about any possible transfer of the ownership of the Policies;

    j. Globe Composite's knowledge of the contractual terms of the American General and the Lincoln Financial policies regarding the requirements to change ownership or beneficiary of the Policies;

k.  The circumstances under which Somerville allegedly signed insurance documents dated February, 2005;

l.  The circumstances under which Somerville allegedly signed an insurance document in March, 2005, and the location of the original document;

m.  Whether or not Globe Composite has any evidence that the Lincoln Financial change of ownership was accepted by Lincoln Financial as of June 7, 2005, the date of Somerville's death;

n.  Whether or not Globe Composite has any evidence that the American General change of ownership was accepted by American General as of June 7, 2005, the date of Somerville's death;

o.  The location of the original March 30, 2005, fax and letter allegedly signed by Somerville and why the original cannot be produced; and

p.  Whether or not Globe Composite had an insurable interest in the Policies at any time starting February 1, 2005.

28.  At the depositions of American General and Lincoln Financial, the Defendants intend to elicit testimony regarding, among other things,

a.  The companies' policies and/or practices concerning accepting and/or recording a change of ownership and change of beneficiary;

b.  Communications between Globe Composite and the Insurance Companies concerning Globe Composite's attempts to change the change of ownership and change of beneficiary;

c.  The circumstances surrounding the change of ownership and change of beneficiary;

d.  Whether or not the original change of ownership and change of beneficiary forms were received, and if so, the current location of said originals;

e.  Any premiums paid by Globe Composite on the Policies;

7

    f.   The circumstances concerning Lincoln Financials payment of the death benefit to Globe Composite;

    g.   When, if ever, did American General record the change of ownership and/or change of beneficiary forms; and

    h.   When, if ever, did Lincoln accept the change of ownership and/or change of beneficiary forms.

29.   The discovery could affect the outcome at least, of the following issues:

    1.   Whether the policies were purchased by Plaintiff under the Asset Purchase Agreement;

    2.   Whether there was a subsequent contractual agreement supported by consideration, with an offer and acceptance within a reasonable period of time, and, if so, what were the terms;

    3.   Whether ownership was ever changed under the contractual terms of the insurance policies;

    4.   Whether the beneficiary was ever changed under the contractual terms of the insurance policies;

    5.   Whether Globe Composite had an insurable interest in the policies at the time the documents were submitted to the insurance companies in light of its termination of Richard Somerville.  See M.G.L. c. 175 §123A;

    6.   Whether Richard Somerville signed all relevant documents and the circumstances under which the documents were signed;

    7.   Whether the policies were procured by fraud, misrepresentation and/or mistake; and

    8.   Whether Richard Somerville paid for any of the policies at issue.

30.    Despite the discussions between the parties concerning the scheduling of the completion of the depositions and the agreement to proceed with the depositions of the insurance companies on December 21, 2006, on November 28, 2006, the Plaintiff filed its Motion for Summary Judgment.

31.    In light of the above, the Defendants asked the Plaintiff for a courtesy extension on the time they have for filing an opposition to the Plaintiff's Summary Judgment Motion.[3]  The Plaintiff denied the request.  The Plaintiff's denial of the Defendants' request for a courtesy extension required the Defendants to file an Emergency Motion for An Extension of Time for the Filing of An Opposition to the Plaintiff's Motion for Summary Judgment.

32.    At the time the Plaintiff filed its Motion for Summary Judgment, discovery was not yet complete and would not be completed by the deadline for Defendants to oppose the motion for partial summary judgment.  I expect that discovery can be completed by the end of January, 2007.  The discovery yet to be completed, which is relevant to the dispute regarding the insurance policies, includes the completion of the previously suspended depositions of Globe Composite/Carl Forsythe and Roger Fasnacht.  The parties agreed that the depositions would resume after it was determined whether or not the Defendants would receive certain documents which were being reviewed by the United States Government.  Those documents were released on or about November 1, 2006.  The Plaintiff then produced certain documents and the parties discussed scheduling depositions.  The discovery not yet completed also includes the depositions of American General and Lincoln Financial. The parties discussed dates for these depositions and agreed on December 21, 2006 as the date for these depositions.

---

[3] The Defendants have previously granted the Plaintiff courtesy extensions in the past.

33.    As a result of the Plaintiff's service of the Motion for Summary Judgment and the Plaintiff's refusal to grant the Defendants a courtesy extension of time for filing an opposition, the Defendants noticed the depositions of the insurance companies for the earliest date available to both sides – December 7, 2006.  However, the insurance companies were unable to produce witnesses in response to the Rule 30(b)(6) subpoenas on December 7, 2006.  As a result, the Defendants have re-noticed the depositions for December 14, 2006.  I was advised this afternoon that Lincoln Financial will not be available and cannot comply with the subpoena by December 14, 2006.  It is not yet known whether the deposition of American General will go forward on December 14, 2006.

34.    The Defendants also attempted to reschedule Mr. Fasnacht's deposition for an earlier date in December, however, he was unavailable.

35.    In addition, to the Defendants' need for additional time to complete discovery concerning the policies, Defendants' counsel had previously advised Clare Burhoe, counsel for the Plaintiff, of previously scheduled vacations for both Mark Furman, Esquire (the week of January 8, 2007) and Jennifer C. Roman, Esquire (December 20, 2006 – January 2, 2007).

36.    Due to witness availability, counsel's work schedules and vacation schedules of both witnesses and counsel, the earliest date the parties were able to schedule the completion of Forsythe's deposition was January 4, 2007.

37.    If the depositions proceed as outlined above, the Defendants expect to have the transcripts from all of the key depositions to defend against the Summary Judgment Motion back by January 18, 2007, (assuming the four relevant depositions have been completed by January 4, 2007) and the Defendants would expect to file the opposition to the Summary Judgment Motion by February 2, 2007.

38.    On or about December 1, 2006 (**Exhibit 22** attached), defendants served a second request for production of documents, which includes requests relevant to the disputed insurance policies.  Included in this request is a request for an Invoice from Globe Composite, which is referenced in a check dated December 31, 2004, a copy of which is attached as **Exhibit 23**.

39.    Defendants also intend to retain an insurance expert to counter the Affidavit of Carl Forsythe in support of the motion for summary judgment.


Signed under pains and penalties of perjury this 12 day of December, 2006


Jennifer C. Roman

# Exhibit 1

Exhibit:  168              Volume 1, Pages 1 - 67

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Docket No. 0510323DPW

- - - - - - - - - - - - - - - - - - - - - - - - - -

GLOBE COMPOSITE SOLUTIONS, LTD,

f/k/a  KALM-FORSYTHE GLOBAL INNOVATIONS, LTD

Plaintiffs

vs.

RICHARD C. SOMERVILLE, ANNE ROCHE-SOMERVILLE,

and SOLAR CONSTRUCTION, INC., f/k/a GLOBE RUBBER

WORKS, INC.

Defendants

- - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION OF WILLIAM R. RODGERS

Thursday, June 22, 2006, 2:14 p.m.

Lawson & Weitzen, LLP

88 Black Falcon Avenue

Boston, Massachusetts

- - - - - - - Reporter:  David A. Arsenault, RPR - - - - - - -

darsenault@fabreporters.com    www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415, Boston, Mass. 02109

617.728.4404   fax 617.728.4403

3939ca59-a45c-48f8-9381-de80a3e35882

William R. Rodgers
Volume 1 - June 22, 2006

Page 46

1          MR. FURMAN:  At any particular time,
2   every time?
3          Q.  As it began, as it evolved, if it evolved
4   over time?
5          A.  Mr. Forsythe wanted to require them,
6   certain of them.  I resisted that.
7          Q.  How was the issue ultimately resolved?
8          A.  They were excluded from the sale.
9          Q.  And specifically how many insurance
10  policies were in issue?
11         A.  That might have varied over time.
12         Q.  Is it correct that there were some
13  insurance policies that had cash value and some that
14  had no cash value?
15         A.  As I understood it.
16         Q.  Was Mr. Forsythe interested in acquiring
17  all the policies?
18         A.  I'm not sure what he was interested in.
19         Q.  As he expressed it.
20         A.  I think at one point or more, yes.
21         Q.  Let me just read to you from Mr. Fasnacht's
22  deposition, starting at Page 85.  The subject matter
23  is the insurance policies.
24              "QUESTION:  What was the proposal that

3939ca59-a45c-48f8-9381-de80a3e35882

William R. Rodgers
Volume 1 - June 22, 2006

Page 60

1      Q.   Under the terms of Paragraph 13,

2   Mr. Somerville could have transferred those term

3   policies to satisfy his corporation requirement,

4   could he not?

5      A.   I suppose he could have.  But it was

6   against all the advice -- rather, it was against the

7   positions I had advanced in that regard.

8      Q.   Well, if in fact Mr. Somerville -- if in

9   fact, those term policies were to be retained by

10  former Globe Rubber, now Solar Construction -- is

11  that your understanding of the deal?

12     A.   My understanding of the deal was that those

13  policies were to be retained by Globe Rubber and

14  were not sold and not to be transferred.

15     Q.   Based on that state of affairs, who would

16  be required to pay the premium on those policies?

17     A.   The contract would provide that the owner

18  would pay the premiums on the policies, I would

19  imagine.  I didn't read the policies.

20     Q.   So after the deal closed, then you would

21  expect that Solar would be paying the premiums on

22  those policies, that would be your expectation?

23     A.   I didn't know enough to know whether they

24  were fully paid up policies or not.

3939ca59-a45c-48f8-9381-de80a3e35882

# Exhibit 2

Page 1

VOLUME I
PAGES 1-170
EXHIBITS 30-50

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.:  05 10323 DPW

GLOBE COMPOSITE SOLUTIONS,      )
LTD. F/K/A KALM-FORSYTHE        )
GLOBAL INNOVATIONS, LTD.,       )
                                )
                  Plaintiff,    )
                                )
vs.                             )
                                )
                                )
RICHARD C. SOMERVILLE, ANNE     )
ROCHE-SOMERVILLE, and SOLAR     )
CONSTRUCTION, INC. F/K/A        )
GLOBE RUBBER WORKS, INC.,       )
                                )
                  Defendant.    )
                                )
_____     )
                                )
RICHARD C. SOMERVILLE and       )
SOLAR CONSTRUCTION, INC.,       )
F/K/A GLOBE RUBBER WORKS,       )
INC.,                           )
                                )
Plaintiffs-in-Counterclaim,     )
                                )
V.                              )
                                )
                                )
GLOBE COMPOSITE SOLUTIONS,      )
LTD. F/K/A KALM-FORSYTHE        )
GLOBAL INNOVATIONS, LTD.,       )
and CARL W. FORSYTHE,           )
                                )
Defendants-in-Counterclaim,     )
                                )
                                )

EYAL COURT REPORTING, INC., BOSTON, MA
(800) 322-3925

Page 2

DEPOSITION OF CARL WILLARD FORSYTHE, a

witness called on behalf of the

Defendants/Plaintiffs-in-Counterclaim in the

above-entitled cause, taken before Dawn

Mack-Boaden, Notary Public in and for

Commonwealth of Massachusetts, pursuant to

the Massachusetts Rules of Civil Procedure,

at the Law Offices of Tarlow, Breed, Hart &

Rodgers, P.C, 101 Huntington Avenue, Boston,

Massachusetts, on Tuesday, February 14,

2006, commencing at 10:25 a.m.

EYAL COURT REPORTING, INC., BOSTON, MA

(800) 322-3925

Page 47

1    do with cash.  And so what was agreed back in

2    February, back in March, back in April of 2004 was

3    the Somervilles got to keep all of the whole life

4    policies, anything that had value, and that Globe

5    Composite Solutions -- KFGI -- would assume the term

6    policies because that was the agreement, that was

7    the -- that was the verbal.  And you've got

8    documents to show that that's what was agreed to in

9    the transaction.  It did not make it into the

10   purchase agreement because it was a financial

11   obligation.

12           It was like you would -- it was a list of

13   accounts -- you know, we did not see a list of

14   accounts payable by a vendor or we did not

15   scrutinize those lists.  That was an obligation that

16   would be paid by KFGI in its normal course of

17   business.

18           MR. LAWSON:  Move to strike.

19   BY MR. FURMAN:

20       Q.  The American General and Lincoln Life

21   Insurance policies were not included as part of the

22   asset purchase agreement; correct?

23       A.  It was not in the document.

24       Q.  The -- and is it -- and your testimony is

# Exhibit 3

Mar-01-05   01:16PM   From-AG & E COMMISSIONS   713-831-3572   T-728   P.001/002   F-093
02/16/2005   17:32   7813982255     MCINNIS FINANCIAL



GRW
GLOBE RUBBER WORKS, INC.
244 Brook Street
Rockland, Massachusetts
02370-0163
USA

Pioneers in Formulating
The Non-Volatile Acer. Est. 1890

781-871-2700
Fax 781-871-0633

September 2, 2004

AIG/ American General
Attention: Policyowner Services
VIA FACSIMILE: 743-831-3028

Re: Policy Number: U10005220L
Owner: Globe Rubber Works, Inc.
Insured: Richard C. Somerville

To Whom It May Concern:

Please be advised that effective July 1st, 2004, we are requesting a change of agent on the above referenced policy with AIG to:

Neil G. McInnis,
SS# 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
Pension Advisor Group, Inc.
300 South St., Suite 455
Waltham, MA 02453

Please release all pertinent information to Neil G. McInnis with regards to the above mentioned policy.

Thank you for your consideration.

Sincerely,

Roger Fasnacht, CFO
Globe Rubber Works, Inc.

RS079

# Exhibit 4

**AIG** **AMERICAN GENERAL**

American General Life Insurance Company
Member of American International
P.O. Box 4373
Houston, Texas 77210-4373
713/831-3170

## ANNUAL STATEMENT OF LIFE INSURANCE
### 09/19/2003 TO 09/19/2004

GLOBE RUBBER WORKS INC
254 BEECH ST
ROCKLAND MA 02370

Agent:

VINCENT J SICA
363 BOLIVAR ST APT C
CANTON MA 02021-4133
(617) 828-9559

Agent ID: 000B08773B          Agency ID: B3545

---

### GENERAL INFORMATION

**Policy Owner:** GLOBE RUBBER WORKS INC
**Insured Person:** RICHARD C SOMERVILLE

**Product:** PLATINUM PROVIDER
**Plan:** FLEXIBLE PREMIUM ADJUSTABLE LIFE
**Riders:**                    **Benefit:**

**Policy Number:** U10005220L
**Date of Issue:** SEPTEMBER 19, 1998
**Issue Age:** 65                    **Sex:** MALE
**Planned Periodic Premium:** $4,736.72
**Mode of Payment:** SEMI-ANNUAL
**Loan Interest Rate:** 6.100%
**Crediting Interest Rates:**
     * **New Premiums:** 4.500%
        **Guaranteed:** 4.500%
* Current interest rate credited to premiums not eligible for indexed interest.

---

### POLICY VALUE INFORMATION

|  | End of Last Reporting Period | End of Current Reporting Period |
|---|---|---|
| Specified Amount of Insurance: | $250,000.00 | $250,000.00 |
| *Death Benefit Amount: | $250,000.00 | $250,000.00 |
| Death Benefit Option: | LEVEL | LEVEL |
| Accumulation Value: | $17,109.72 | $23,750.42 |
| Surrender Charge: | $10,500.00 | $10,250.00 |
| Outstanding Policy Loan: | $.00 | $.00 |
| Cash Surrender Value: | $6,609.72 | $13,500.42 |

* Any outstanding loans will be deducted from the Death Benefit Amount in determining the proceeds payable upon the death of the Insured Person.



RS047

## POLICY ACTIVITY SUMMARY
### 09/19/2003 TO 09/19/2004

Policy Number:     U10005220L                                                                    Page 2

| Month Ending | Premiums Received | Premium Expenses | -Monthly Base | Charges- Rider(s) | Expense Charges | Withdrawals | Interest Credited | Accumulation Value |
|---|---|---|---|---|---|---|---|---|
| 10/18 | .00 | .00 | 301.57 | .00 | 5.00 | .00 | 86.91 * | 16,890.06 |
| 11/18 | 4,736.72 | 260.52 | 301.86 | .00 | 5.00 | .00 | 102.87 * | 21,162.27 |
| 12/18 | .00 | .00 | 296.31 | .00 | 5.00 | .00 | 104.47 * | 20,965.43 |
| 01/18 | .00 | .00 | 296.56 | .00 | 5.00 | .00 | 106.89 * | 20,770.76 |
| 02/18 | .00 | .00 | 296.81 | .00 | 5.00 | .00 | 105.91 * | 20,574.86 |
| 03/18 | .00 | .00 | 297.07 | .00 | 5.00 | .00 | 94.89 * | 20,367.68 |
| 04/18 | .00 | .00 | 297.34 | .00 | 5.00 | .00 | 104.21 * | 20,169.55 |
| 05/18 | 4,736.72 | 260.52 | 297.60 | .00 | 5.00 | .00 | 115.07 * | 24,458.22 |
| 06/18 | .00 | .00 | 292.02 | .00 | 5.00 | .00 | 122.91 * | 24,284.11 |
| 07/18 | .00 | .00 | 292.25 | .00 | 5.00 | .00 | 117.89 * | 24,104.75 |
| 08/18 | .00 | .00 | 292.48 | .00 | 5.00 | .00 | 120.85 * | 23,928.12 |
| 09/18 | .00 | .00 | 292.71 | .00 | 5.00 | .00 | 120.01 * | 23,750.42 |
| TOTAL | 9,473.44 | 521.04 | 3,554.58 | .00 | 60.00 | .00 | $1,302.88 | |

### IMPORTANT POLICY OWNER NOTICE

You should consider requesting more detailed information about your policy to understand how it may perform in the future. You should not consider replacement of your policy or make any changes in your coverage without requesting a current illustration. You may annually request, without charge, such an illustration by calling 1/713-831-3170, writing to the Policyowner Services Department at P. O. Box 4373, Houston TX 77210-4373, or contacting your agent. If you do not receive a current illustration of your policy within 30 days from your request, you should contact your state insurance department.

Interest credited to the accumulation value is based on the annual rate of interest in effect when a payment is received. The guaranteed minimum interest rate, as well as the interest rate currently credited to the new premium payments, can be found on page 1 of this statement. Rates applicable to prior premium payments will vary. Interest at a different rate may be credited to the accumulation value offset by a policy loan. All interest rates shown are effective annual interest rates.

\* Current Interest Bonus Paid

RS048

# Exhibit 5

Volume 2, Pages 169-324

Exhibits: 51-112

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

GLOBE COMPOSITE SOLUTIONS, LTD, F/K/A

KALM-FORSYTHE GLOBAL INNOVATIONS, LTD.,

        Plaintiff

v.                  Docket No. 0510323DPW

RICHARD C. SOMERVILLE, ANNE ROCHE-SOMERVILLE,

and SOLAR CONSTRUCTION INC., F/K/A GLOBE

RUBBER WORKS, INC.,

        Defendants

      ------------------------------

CONTINUED DEPOSITION OF ROGER FASNACHT

Tuesday, February 21, 2006, 10:27 a.m.

Lawson & Weitzen, LLP

88 Black Falcon Avenue

Boston, Massachusetts

----Reporter:  Kathleen Mullen Silva, RPR, CRR----

ksilva@fabreporters.com    www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415

Boston, Massachusetts 02109

617.728.4404   fax 617.728.4403

Roger Fasnacht
Volume 2 - February 21, 2006

Page 283

1    Q.  Did Mr. Forsythe request that you get the

2  change of ownership forms from the insurance

3  company?

4    A.  It just was part of the closing steps that

5  we were doing.  I mean, it was one of the checkoff

6  items that we had to follow up on.

7    Q.  Well, the closing took from August 3 to

8  August 19 roughly?

9    A.  Right.

10    Q.  Nothing was done about the insurance forms

11  as part of the closing, correct?

12    A.  That is correct.

13    Q.  So sometime after the closing, after the

14  asset purchase agreement --

15    A.  Right.

16    Q.  -- had been signed, after the notes had

17  been signed, after all the closing documents were

18  signed, did Mr. Forsythe ask you to get forms from

19  the insurance company to change the ownership of the

20  policies?

21    A.  Yes.

22    Q.  At the time that he asked, you then did

23  contact the insurance companies?

24    A.  Yes.

Roger Fasnacht
Volume 2 - February 21, 2006

Page 284

1      Q.  And at the time you did that, or prior to

2   doing that, did you review the asset purchase

3   agreement?

4      A.  I did not, no.

5      Q.  Did Mr. Forsythe tell you that he had

6   reviewed the asset purchase agreement?

7      A.  He had not mentioned anything.

8      Q.  Then you got the forms, and then you asked

9   Mr. Somerville to sign the documents, correct?

10     A.  Correct.

11     Q.  At the time you asked Mr. Somerville to

12  sign the documents, you still had not reviewed the

13  asset purchase agreement, correct?

14     A.  That would be true.

15     Q.  And as of that time, had you had any

16  conversation with Mr. Forsythe in which he told you

17  he had reviewed the asset purchase agreement on that

18  subject?

19     A.  It didn't come up.

20     Q.  At any time prior to Mr. Somerville's

21  termination from Globe Composite Solutions, were the

22  forms submitted to the insurance companies?

23     A.  Yes.

24     Q.  It would be each of them?

Roger Fasnacht
Volume 2 - February 21, 2006

Page 281

1      Q.  And Mr. Somerville asked you to have Mr. --

2   I'm sorry -- Mr. Forsythe asked you to have

3   Mr. Somerville sign some documents relating to the

4   insurance?

5      A.  No.  I initiated that by getting in touch

6   with the insurance companies for the forms, and part

7   of the requirement was for the seller of the policy,

8   or the original owner of the policy to sign the

9   document.  So I took it to Mr. Somerville to sign.

10     Q.  Well, did Mr. Forsythe ask you to get the

11  policies -- the forms from the insurance company?

12     A.  I guess so.  I mean, I knew that was part

13  of the condition, so we were just trying to get that

14  process through.

15     Q.  Did Mr. Forsythe ask you to send the forms

16  to Mr. Rodgers?

17     A.  Not that I'm aware of, no.

18     Q.  And the forms were not sent to Mr. Rodgers,

19  correct?

20     A.  No.  That was after the closing.

21     Q.  Okay.  But Mr. Rodgers is Mr. Somerville's

22  attorney, right?

23     A.  Correct.

24     Q.  And he was Globe Rubber Works' attorney,

Roger Fasnacht
Volume 2 - February 21, 2006

Page 282

1   which changed its name to Solar Construction?

2        A.   Correct.

3        Q.   So the forms went directly to

4   Mr. Somerville at Globe Composite Solutions?

5        A.   Yes.

6        Q.   And without going through Mr. Rodgers?

7        A.   I believe that's true.

8        Q.   Did Mr. Forsythe, after the closing,

9   complain to you about the quality of his legal

10  representation in the transaction?

11       A.   Not particularly.

12            MR. FURMAN:  Hold on.  Could you repeat

13  the question.

14            (Question read.)

15       A.   Not particularly.  He complained about how

16  much it was costing him, but he didn't complain

17  about the representation.

18       Q.   Before Mr. Forsythe asked you to get the

19  forms, did you review the asset purchase agreement?

20            MR. LAWSON:  I object to that question,

21  because I don't think it's been established that

22  Mr. Forsythe asked him to get the forms.

23            MR. FURMAN:  Let me rephrase the

24  question.

Roger Fasnacht
Volume 2 - February 21, 2006

Page 207

1    pay that note?

2        A.   Yes.

3        Q.   Did it?

4        A.   It did, yes.

5        Q.   And on December 1, did Globe Composite have

6    the financial ability to pay the $400,000 loan?

7        A.   Yes.

8        Q.   Did it?

9        A.   Did it what?

10       Q.   Did it have the financial ability?

11       A.   Yes.

12       Q.   Now, did you have a conversation with

13   Mr. Forsythe on December 1 about whether or not he

14   was going to see to it that Globe Composite paid

15   that note?

16       A.   I informed him that the note was due, and

17   he hadn't yet given the okay to release the funds.

18       Q.   When did you inform him of that?

19       A.   We'd been ongoing through the 1st of

20   December.

21       Q.   Did he tell you why he didn't pay it, when

22   you first asked him about it on or about December 1?

23       A.   Not initially, no.

24       Q.   With what frequency would you remind him?

Roger Fasnacht
Volume 2 - February 21, 2006

Page 208

1    Was it a weekly thing?

2         A.   Yeah.   I mean, I was doing routine cash

3    forecasts, you know, on a weekly basis.   So it would

4    have been included in that.

5         Q.   And Globe Composite had available a line of

6    credit that could be drawn upon to pay that note,

7    had Mr. Forsythe authorized the payment?

8         A.   Yes, I believe so, at that time.

9         Q.   Approximately on what date did Mr. Forsythe

10   first tell you he wasn't going to pay that $400,000

11   promissory note?

12        A.   It might have been mid December, somewhere

13   in that time frame.

14        Q.   At that time when Mr. Forsythe told you

15   that he wasn't going to pay the $400,000 note, did

16   he also tell you what his intentions were regarding

17   the other two notes?

18        A.   No.

19        Q.   Did Mr. Forsythe ever tell you his

20   intention regarding the two other notes, the

21   $200,000 note and the $150,000 note?

22        A.   No.

23        Q.   Was one of your responsibilities to keep

24   track of Globe Composite's manufacturing costs

# Exhibit 6



*Future Solutions: TODAY*

January 31, 2005

Mr. Richard C. Somerville
344 Keene Street
Duxbury, MA 02332

Dear Richard:

It has come to our attention that you caused to be prepared numerous certifications that products sold met governmental specifications, knowing that the certifications were false, and caused these product certifications to be made, used, presented or delivered to the United States Government. Further, you intentionally did not disclose to the Company these fraudulent actions prior to, during, or after the Company purchased the assets of Globe Rubber Works, Inc.

As a result of these fraudulent activities, we have been unable to successfully produce and certify for shipment certain parts for current or acquired orders for the United States Government or its defense contractors.    This has caused an unnecessary cash shortfall to the Company and potentially creates a significant, and possibly irreparable, negative goodwill with the United States Government, its defense contractors and other current and prospective customers.

Such intentional acts by you were not undertaken in good faith and are clearly contrary to the best interests of the Company and constitute "cause" for termination pursuant to Section 8(c)(ii)(2) of the Employment Agreement.

Furthermore, such conduct constitutes a material breach of the Asset Purchase Agreement between you, Globe Rubber Works, Inc. and the Company dated August 3, 2004.  As a result, such breach, which cannot be cured, constitutes "cause" for termination pursuant to Section 8(c)(ii)(6) of the Employment Agreement.

In accordance with Sections 8 and 21 of the Employment Agreement dated August 3, 2004 by and between you and Globe Composite Solutions, Ltd., formerly know as Kalm-Forsythe Global Innovations, Ltd., (the "Company") notice is hereby given that your employment is terminated "with cause" effective immediately.  Payment of salary and wages and all benefits to you will cease as of today.

Pursuant to Section 8(c)(iii)(h) your entire ownership in the Company is deemed forfeited and any outstanding payments that may have been owed to you by the Company are hereby cancelled and forfeited as well.

You are required to immediately turn over to me all Company property in your possession or control, including but not limited to identification, keys and other Company property. You are to leave the premises immediately and arrangement will be made to have your personal belongings delivered to your home.

Despite the fact that your employment has been terminated, you are nonetheless bound and required to comply with the confidentiality and noncompetion covenants of the Employment Agreement.

Any future contact with the Company should be directed to me and you are to refrain from contacting any current employee of the Company.

Sincerely yours,

Carl W. Forsythe
President and CEO

# Exhibit 7

Page 1

VOLUME I
PAGES 1-170
EXHIBITS 30-50

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION NO.:  05 10323 DPW

GLOBE COMPOSITE SOLUTIONS,      )
LTD. F/K/A KALM-FORSYTHE        )
GLOBAL INNOVATIONS, LTD.,       )
                                )
                 Plaintiff,     )
                                )
vs.                             )
                                )
                                )
RICHARD C. SOMERVILLE, ANNE     )
ROCHE-SOMERVILLE, and SOLAR     )
CONSTRUCTION, INC. F/K/A        )
GLOBE RUBBER WORKS, INC.,       )
                                )
                 Defendant.     )
                                )
_____ )
                                )
RICHARD C. SOMERVILLE and       )
SOLAR CONSTRUCTION, INC.,       )
F/K/A GLOBE RUBBER WORKS,       )
INC.,                           )
                                )
Plaintiffs-in-Counterclaim,     )
                                )
V.                              )
                                )
                                )
GLOBE COMPOSITE SOLUTIONS,      )
LTD. F/K/A KALM-FORSYTHE        )
GLOBAL INNOVATIONS, LTD.,       )
and CARL W. FORSYTHE,           )
                                )
Defendants-in-Counterclaim,     )
                                )
                                )

EYAL COURT REPORTING, INC., BOSTON, MA
(800) 322-3925

Page 2

DEPOSITION OF CARL WILLARD FORSYTHE, a

witness called on behalf of the

Defendants/Plaintiffs-in-Counterclaim in the

above-entitled cause, taken before Dawn

Mack-Boaden, Notary Public in and for

Commonwealth of Massachusetts, pursuant to

the Massachusetts Rules of Civil Procedure,

at the Law Offices of Tarlow, Breed, Hart &

Rodgers, P.C, 101 Huntington Avenue, Boston,

Massachusetts, on Tuesday, February 14,

2006, commencing at 10:25 a.m.

EYAL COURT REPORTING, INC., BOSTON, MA

(800) 322-3925

Page 157

1    If we were going to get the 10 to 12 sorter lines

2    per year, we would certainly need a larger

3    production footprint, and that's where the money --

4    we would have spent the money.

5        Q.    Okay.  On December 1, 2004, Globe Composite

6    Solutions did not pay $400,000 to Somerville?

7        A.    That's correct.

8        Q.    And Globe Composite Solutions did not write

9    a letter explaining why it didn't pay, did it?

10       A.    Nor was -- that's correct.

11       Q.    And you didn't write a letter either;

12   right?

13       A.    No one had contacted me on whether or not

14   that note was due at that time.

15            We had three notes due to Dick Somerville.

16   I did not keep track of what was due when.  Dick

17   never mentioned it to me.  I never spoke to him

18   about it.  I never spoke to Anne Somerville about

19   it.

20            So I was not aware that any monies from

21   either -- any of those three notes were due on

22   December 1st.

23       Q.    Well, did you consider it your

24   responsibility to arrange for the payment of the

# Exhibit 8



2/18/0 59:42A
015098000271

# FAX TRANSMISSION

**Pension & Wealth Management
Advisors**
     phone  781 398-0077
     fax     781 398-2255
     email   flavia@pensionwealth.com

**FROM:**      Flavia

**TO:**         Policyowner Service
              American General
              1-713-831-3028

**DATE:**      02/16/05 at 16:35:09

**PAGES:**     3

**SUBJECT:**   change of owner request

RS055

2/18/059:42A
016998000272

# AIG  AMERICAN GENERAL

**Change of Ownership**

**American General Life Insurance Company (AGL),**
: Fixed Life Service Center · P. O. Box 4373, Houston, TX 77210-4373
: Variable Life Service Center · P. O. Box 4880, Houston, TX 77210-4860
Member of American International Group, Inc.
Instructions for completing this form are listed on the back. Please reference your contract for availability of certain requests.

| 1. | CONTRACT IDENTIFICATION | |
|---|---|---|
| | CONTRACT No.: U100052220L | |
| | OWNER: *Globe Rubber Works, Inc.* | SSN/TIN OR EIN: 74-2922722 |
| [ ] Check Here if New Address | ADDRESS: 254 Beech St. | PHONE No.: 781-871-3702 |
| | Rockland, MA 02370 | |
| | EMAIL ADDRESS (optional): | |
| | INSURED/ANNUITANT (if other than Owner): Richard Somerville | |

| 2. | NEW OWNER(S) | |
|---|---|---|
| A. PRIMARY | NEW OWNER'S NAME: Globe Composite Solutions, LTD | |
| | SSN/TIN OR EIN: 752989890 | |
| | Address: 254 Beech St. | |
| | Rockland, MA 02370 | |
| | Phone No.: 781-871-3702 | |
| B. CONTINGENT | NEW OWNER'S NAME: | |
| | SSN/TIN OR EIN: | |
| | Address: | |
| | Phone No.: | |

| 3. | SIGN HERE FOR ABOVE REQUEST |
|---|---|
| | The Company is requested and directed to recognize that the present owner(s) of the Contract has hereby designated the new owner(s) (the "Owner") of the Contract. The Owner designated above shall have sole ownership and control of the Contract during the lifetime of the Insured/Annuitant and shall be entitled to all ownership rights. See back for details. |

Under penalties of perjury, I certify that:
1. The number shown on this form is my correct taxpayer identification number, and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to back-up withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest or dividends on your tax return.
The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

| Signature of Current Owner    Date 2/14/05 | Signature of New Owner    Date 2/14/05 |
|---|---|
| Signature of Current Co-owner    Date (or other party having interest in contract) | Signature of New Co-owner    Date (or other party having interest in contract) |

**RETURN COMPLETED FORM TO THE ADDRESS OF THE COMPANY CHECKED ABOVE.**

AGLC 0013 Rev0403    Page 1 of 2

RS056



RS057

2/18/0 59:42A
015098000273

## - Instructions and Conditions -

| 1. | CONTRACT IDENTIFICATION | Complete all contract information in this section. Complete a separate request form for each contract. |
|---|---|---|
| 2. | NEW OWNER(S) | This Request is made subject to the terms and conditions of the Contract, and shall not result in a change in any provision of the Contract, except as expressly provided in this Request.

The Owner may transfer the ownership and control of the Contract to a new owner, but such change shall not be effective until approved by the Service Center. If the Owner predeceases the Insured/Annuitant, then the rights of such deceased Owner shall pass to the contingent owner if one is named. If a contingent owner is not named, the rights will pass to the Administrator/Executor of such deceased Owner.

This Request for Change of Ownership does not change the beneficiary or the mode of payment as a death claim under the Contract. Any payment which becomes due under the Contract during the lifetime of the Insured/Annuitant shall be made to the Owner with the exception that any provision which now expressly provides for payment to the Insured/Annuitant as a life income or annuity shall not be available to the Owner, unless the Owner is the Insured/Annuitant.

This Request is subject to any existing assignment of record with the company which issued the contract ("the Company").

**Trustee Owner**
If a trustee is designated as the new owner, the date and legal title of the trust must be stated and Trustee signatures are required in Section 3 as instructed by the trust agreement.

**Contingent Owner**
A contingent owner may be designated, and will be effective only if the new owner is a natural person (not a corporation, partnership or a trust), and the owner, or all designated owners (if more than one), predecease the Insured. A contingent owner may not be designated on an annuity contract. |
| 3. | SIGN HERE FOR ABOVE REQUEST | This request must be dated and all required signatures must be written in ink, using full legal names.

This request must be signed by:
  • the person or persons who have the rights of ownership under the terms of the contract (co-owners, irrevocable beneficiary);
  • by an Assignee if any; and
  • by any other party who may have an interest in the contract by legal proceedings or statutes.

**Special circumstances – Corporate ownership:** The signature of one officer followed by the officer's title is required. The request must be submitted on a piece of corporate letterhead or paper with the corporate seal signed by that officer; **Partnerships:** The full name of the partnership should be written followed by the signatures of all partner(s), other than the Insured; **Trust:** If the contract is owned by or assigned to a Trustee, current Trustee(s) signatures are required as instructed by the trust agreement. Validation of Trustee(s) signatures may be required. |

AGLC 0010 Rev0403

TOTAL P.03

RS058

# Exhibit 9

02/16/2005  17:47    7813982255                    MCINNIS FINANCIAL                    PAGE  01

# FAX TRANSMISSION



Pension & Wealth Management
Advisors
phone  781 398-0077
fax      781 398-2255
email  flavia@pensionwealth.com


**FROM:**    Flavia


**TO:**       Customer Service
                Lincoln Financial Group
                1-860-466-2835

**DATE:**    02/16/05 at 16:29:48

**PAGES:**   3

**SUBJECT:**  Change of ownership request

RECEIVED TIME FEB. 16.  5:08PM

LFG0340

# ⌂Lincoln
## Financial Group®

*Life Ownership Change Form*

Personal Service Center
P.O. Box 5048 MIR1
Hartford CT 06102-5048
Fax number 860 466-2835

| General Information | |
|---|---|
| Policy number **6163 7194** | Issued by (the Company) **ING Life** |
| Insured's name **Richard C. Somerville** | |
| Social security number **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** | |
| Policy Owner's name **Globe Rubber Works, Inc.** | |
| Social security number/Tax ID # **74-2922722** | |
| Policy Owner's address **254 Beech St.** | |
| City, State, ZIP **Rockland, MA 02370** | |
| Policy Owner's phone no. **781-871-3702**        E-mail address | |

**New Owner Designation**

*An ownership change does not change existing beneficiary designations. To change your beneficiary, please submit a Lincoln Beneficiary Change Form.*

*The signature of all owners will be required to exercise any contractual rights under the policy.*

*Please change the Owner of the policy listed above to (Select Only One): Complete by typewriter or print in ink.*

☐ The Insured. (If more than one insured, designation assumes jointly with right of survivorship arrangement.)

☐ To one person during his or her lifetime and thereafter the Insured

Name _____    Date of Birth _____

☐ To one person absolutely, his or her estate

Name _____    Date of Birth _____

To multiple owners (check one):   ☐ Joint with Right of Survivorship   ☐ Tenants-in-common*

*If tenant-in-common, specify shares, if not specified we will assume equal shares.*

To a (check one) ☐ Corporation ☐ Partnership ☒ LLC or ☐ Other (specify)

**Globe Composite Solutions, LTD        Rockland        MA**
Legal name                                    City                State

☐ To a trustee or successor trustee under a formal trust agreement

Name of Trustee(s) _____

Name of Trust _____

City, State _____    Date of Trust _____

I/We hereby certify that the Trustee(s) named are the Trustee(s) for the named Trust, which is in full force and effect. The Company shall not be obligated to inquire into the terms of any trust agreement affecting this policy and shall not be chargeable with knowledge of the terms thereof. The Company may rely solely upon the signature(s) of the Trustee(s) named to any receipt, release or waiver, or to any transfer or other instrument affecting this policy or any options privileges or benefits thereunder. Unless otherwise indicated the signature(s) of all Trustee(s) named, or their successors, will be required to exercise any contractual right under the policy. The Company shall have no obligation to see to the use or application of any funds paid to the Trustee(s) in accordance with the terms of the policy. Any such payment made by the Company to the Trustee(s) shall fully discharge the Company with respect to any amounts so paid.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Form 32513  06/02

Page 1 of 2

LFG0338

02/16/2005  17:47    7813982255              MCINNIS FINANCIAL                    PAGE  03

**Agreements and Signatures**

*This section must be completed by the current policy owner. Title required if a corporation, partnership or trust.*

By signing below, you, the policy owner, certify that you have read this request and understand that it is subject to the provisions and conditions of the policies listed. You also certify that the policies are not assigned to any other person or corporation, except where otherwise noted on this request, and that no proceedings of bankruptcy or insolvency have been filed or are currently pending against you. We reserve the right to require additional information as needed.

Signed at  *Rockland MA*                     on    *2/15/05*
　　　　　　City and State                                   Date

*\*Two officer signatures are required for corporate owned policies.*

Richard C. Somerville          *[signature]*          *Vice President*
Current Owner (full name)              Signature              Title\*

Paul Slaney                    *[signature]*          *Controller*
Current Owner (full/name)              Signature              Title\*

Assignee, Irrevocable Beneficiary or other interested party (name and signature)

Community property release - This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX and WA). Determination of Community Property status depends on the current or former resident state of the policy owner.
By signing below, you the spouse/former spouse agree to the changes indicated above and:

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature                                          Date

Name (print or type)

**New Owner Information**

**THIS SECTION MUST BE COMPLETED BY THE NEW OWNER**

Policy Owner's address  *254 Beech St.*

City, State, ZIP  *Rockland    MA  02370*

**Taxpayer Identification Number and Certification Substitute W-9**

*This is an IRS requirement.*

By signing below, you certify that the information provided is complete and accurate as shown. You also certify that you have read, understand and agree to the information provided in the Substitute W9 sections.
Under the penalties of perjury, I certify that:

- The number shown below is my correct taxpayer identification number.
  Social Security number or Tax Identification number  *752989890*

- I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service that I am subject as a result of a failure to report all taxable income, including all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding. (*You must cross out this item if you have failed to report all interest and dividends on your tax report.*)

- I am a U.S. person (including a U.S. resident alien).

*[signature]*                          CEO                    *2/15/05*
Signature of new owner                 Title                  Date

*Carl Forsythe*
Print Name                                              Page 2 of 2

LFG0339

# Exhibit 10

# AETNA LIFE INSURANCE AND ANNUITY COMPANY

Hartford, Connecticut 06156
(A STOCK COMPANY)

RICHARD C SOMERVILLE

G1637194

While this Policy is in force, Aetna will pay Proceeds subject to all its provisions. Other rights and benefits are provided as described in this Policy.

## THIS POLICY IS A LEGAL CONTRACT BETWEEN YOU AND AETNA
## PLEASE READ YOUR POLICY CAREFULLY

### RIGHT OF POLICY EXAMINATION

This Policy may be returned to Aetna or its representative within 10 days after its receipt. Return this Policy to Aetna, Individual Life Insurance, at 151 Farmington Avenue, Hartford, Connecticut 06156. Upon its return, this Policy will be deemed void from its beginning and all premiums paid will be refunded.

Signed for Aetna on its Date of Issue.

_____          _____
Secretary                                    President


_____
Registrar


FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

* FLEXIBLE PREMIUMS PAYABLE UNTIL MATURITY DATE OR DEATH
* PROCEEDS PAYABLE UPON THE FIRST EVENT TO OCCUR - SURRENDER, MATURITY OR DEATH
* NON-PARTICIPATING - NO DIVIDENDS PAYABLE

70212-95USMA

0046110

## Table of Contents

Page No.

Policy Specifications . . . . . . . . . . . . . . . . . . PS1
Policy Summary . . . . . . . . . . . . . . . . . . . . . . 1
Definitions . . . . . . . . . . . . . . . . . . . . . . . . 1
  Attained Age . . . . . . . . . . . . . . . . . . . . . . 1
  Basic Monthly Premium . . . . . . . . . . . . . . . 1
  Date of Issue . . . . . . . . . . . . . . . . . . . . . . 1
  Death Benefit . . . . . . . . . . . . . . . . . . . . . 1
  Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  Home Office . . . . . . . . . . . . . . . . . . . . . . 1
  Initial Coverage . . . . . . . . . . . . . . . . . . . . 1
  Loan Value . . . . . . . . . . . . . . . . . . . . . . . 1
  Maturity Date . . . . . . . . . . . . . . . . . . . . . 1
  Minimum Specified Amount . . . . . . . . . . . . 1
  Monthly Deduction Day . . . . . . . . . . . . . . . 1
  Net Premium . . . . . . . . . . . . . . . . . . . . . . 2
  Policy Month . . . . . . . . . . . . . . . . . . . . . . 2
  Policy Year/Policy Anniversary . . . . . . . . . . . 2
  Proceeds . . . . . . . . . . . . . . . . . . . . . . . . 2
  Specified Amount . . . . . . . . . . . . . . . . . . . 2
  Subsequent Application(s) . . . . . . . . . . . . . 2
  We, Our, Us, Company . . . . . . . . . . . . . . . 2
  Written Request . . . . . . . . . . . . . . . . . . . 2
  You, Your . . . . . . . . . . . . . . . . . . . . . . . . 2
General Provisions . . . . . . . . . . . . . . . . . . . 2
  The Contract . . . . . . . . . . . . . . . . . . . . . . 2
  Owner . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  Beneficiary . . . . . . . . . . . . . . . . . . . . . . . 2
  Changes in Owner and Beneficiary . . . . . . . . 3
  Assignment . . . . . . . . . . . . . . . . . . . . . . . 3
  Non-Participating . . . . . . . . . . . . . . . . . . . 3
  Policy Settlement . . . . . . . . . . . . . . . . . . . 3
  Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  Change of Address . . . . . . . . . . . . . . . . . . 3
  Annual Report . . . . . . . . . . . . . . . . . . . . . 3
  Projection of Benefits . . . . . . . . . . . . . . . . 3
  Proceeds . . . . . . . . . . . . . . . . . . . . . . . . 3
  Coverage Beyond Maturity . . . . . . . . . . . . . 4
Suicide and Incontestability . . . . . . . . . . . . . 4
  Suicide Exclusion . . . . . . . . . . . . . . . . . . . 4
  Incontestability . . . . . . . . . . . . . . . . . . . . 4
Premiums and Reinstatement . . . . . . . . . . . . 4
  Premiums . . . . . . . . . . . . . . . . . . . . . . . . 4
  Planned Premiums . . . . . . . . . . . . . . . . . . 4
  Additional Premiums . . . . . . . . . . . . . . . . . 5
  No Lapse Coverage . . . . . . . . . . . . . . . . . . 5

Page No.

  Specified Period . . . . . . . . . . . . . . . . . . . 5
  Grace Period . . . . . . . . . . . . . . . . . . . . . . 5
  Reinstatement . . . . . . . . . . . . . . . . . . . . . 6
Death Benefit Options . . . . . . . . . . . . . . . . 6
  General . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Option 1 . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Option 2 . . . . . . . . . . . . . . . . . . . . . . . . . 6
  Death Benefit Based on a
  Percentage of the Cash Value . . . . . . . . . . . 6
Policy Values . . . . . . . . . . . . . . . . . . . . . . 7
  Basis of Calculation . . . . . . . . . . . . . . . . . 7
  Cash Value . . . . . . . . . . . . . . . . . . . . . . . 7
  Interest Credited . . . . . . . . . . . . . . . . . . . 7
  Monthly Deductions . . . . . . . . . . . . . . . . . 7
  Cost of Insurance . . . . . . . . . . . . . . . . . . . 8
  Cost of Insurance Rate . . . . . . . . . . . . . . . 8
Nonforfeiture Provisions . . . . . . . . . . . . . . . 8
  Continuation of Coverage . . . . . . . . . . . . . 8
  Surrender Value . . . . . . . . . . . . . . . . . . . . 8
  Surrender Charge . . . . . . . . . . . . . . . . . . . 9
  Partial Surrender . . . . . . . . . . . . . . . . . . . 9
Policy Loans . . . . . . . . . . . . . . . . . . . . . . . 9
  General . . . . . . . . . . . . . . . . . . . . . . . . . 9
  Loan Interest Rate . . . . . . . . . . . . . . . . . . 9
  Repayment . . . . . . . . . . . . . . . . . . . . . . 10
Changes in Insurance Coverage . . . . . . . . . 10
  General . . . . . . . . . . . . . . . . . . . . . . . . 10
  Increase in Specified Amount . . . . . . . . . . 10
  Decrease in Specified Amount . . . . . . . . . . 10
  Change in Death Benefit Option . . . . . . . . . 10
  Change from Option 1 to 2 . . . . . . . . . . . . 10
  Change from Option 2 to 1 . . . . . . . . . . . . 11
Settlement Options . . . . . . . . . . . . . . . . . 11
  Conditions . . . . . . . . . . . . . . . . . . . . . . 11
Income Options . . . . . . . . . . . . . . . . . . . . 11
  Option 1 - Interest . . . . . . . . . . . . . . . . . 11
  Option 2 - Fixed Period . . . . . . . . . . . . . . 11
  Option 3 - Life Income . . . . . . . . . . . . . . . 12
  Option 4 - Joint Life Income
  Reducing for Survivor . . . . . . . . . . . . . . . 12
  Interest Rate . . . . . . . . . . . . . . . . . . . . . 13
  Betterment of Payments . . . . . . . . . . . . . . 13
  Withdrawals and Death of the Payee . . . . . . 13

Any riders and a copy of the application(s) are at the end of this Policy.

70212-95USMA

0046111

FIPS 2 LUSP 11/04/98 11:14:20

P O L I C Y   S P E C I F I C A T I O N S

NAME OF
INSURED   RICHARD C SOMERVILLE

POLICY     G 1 637 194        SEPTEMBER 1, 1998  DATE OF ISSUE
NUMBER:

SEX    AGE    PREMIUM CLASS
MALE   64     STANDARD NONSMOKER

BENEFICIARY - ANNE P SOMERVILLE, WIFE OF THE INSURED IF SAID WIFE SURVIVES THE
              INSURED, OTHERWISE TO  THE EXECUTORS OR ADMINISTRATORS OF THE
              INSURED.

POLICY OWNER -ANNE P SOMERVILLE, WIFE OF THE INSURED UNTIL THE DEATH OF SAID
              WIFE,  THEREAFTER THE INSURED.

PLAN - FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

INITIAL SPECIFIED AMOUNT:      $250,000    DEATH BENEFIT OPTION:  1

MINIMUM SPECIFIED AMOUNT:      $100,000

MATURITY DATE:     SEPTEMBER 1, 2034

COVERAGE BEYOND MATURITY ELECTED:   NO

INITIAL PLANNED PREMIUM:      $4,544.62
INITIAL PREMIUM MODE:    SEMI-ANNUAL

BASIC MONTHLY PREMIUM
  BASIC POLICY ONLY:         $523.50    MONTHLY DEDUCTION DAY: THE  1ST  DAY
                                        OF EACH MONTH

SPECIFIED PERIOD EXPIRATION DATE:   SEPTEMBER 1, 2003

MONTHLY POLICY FEE:      $6.00

GUARANTEED MAXIMUM PREMIUM LOAD:      3.00%

POLICY LOAN INTEREST RATE: VARIABLE

POLICY MAY TERMINATE PRIOR TO THE MATURITY DATE IF PREMIUMS PAID AND INTEREST
CREDITED ARE INSUFFICIENT TO CONTINUE COVERAGE TO THAT DATE.  PLEASE SEE YOUR
STATEMENT OF POLICY COST AND BENEFIT INFORMATION FOR FURTHER DETAILS.

0046112

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194    RICHARD C SOMERVILLE                                    PS  2


TABLE OF SURRENDER CHARGES

| POLICY MONTH STARTING | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|---|---|
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | | 12,341 | 11,865 | 11,385 | 10,898 | 10,406 | 9,905 |
| FEB | | 12,301 | 11,825 | 11,344 | 10,857 | 10,364 | 9,863 |
| MAR | | 12,262 | 11,785 | 11,304 | 10,817 | 10,323 | 9,820 |
| APR | | 12,222 | 11,745 | 11,263 | 10,776 | 10,282 | 9,777 |
| MAY | | 12,182 | 11,706 | 11,223 | 10,735 | 10,240 | 9,736 |
| JUN | | 12,143 | 11,666 | 11,182 | 10,694 | 10,199 | 9,693 |
| JUL | | 12,103 | 11,626 | 11,142 | 10,653 | 10,157 | 9,651 |
| AUG | | 12,063 | 11,586 | 11,102 | 10,612 | 10,116 | 9,608 |
| SEP | 12,500 | 12,025 | 11,547 | 11,062 | 10,572 | 10,075 | 9,567 |
| OCT | 12,460 | 11,984 | 11,505 | 11,021 | 10,530 | 10,032 | 9,523 |
| NOV | 12,420 | 11,944 | 11,465 | 10,980 | 10,489 | 9,989 | 9,480 |
| DEC | 12,381 | 11,904 | 11,425 | 10,939 | 10,447 | 9,947 | 9,438 |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20
POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT.
THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE
DATE OF THE INCREASE.

0046113

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE                                    PS   3


TABLE OF SURRENDER CHARGES (CONTINUED)

| POLICY MONTH STARTING | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | 9,395 | 8,878 | 8,354 | 7,818 | 7,272 | 6,714 | 6,138 |
| FEB | 9,351 | 8,835 | 8,310 | 7,773 | 7,226 | 6,666 | 6,089 |
| MAR | 9,309 | 8,792 | 8,266 | 7,728 | 7,180 | 6,619 | 6,040 |
| APR | 9,266 | 8,748 | 8,221 | 7,682 | 7,134 | 6,572 | 5,991 |
| MAY | 9,223 | 8,705 | 8,177 | 7,637 | 7,088 | 6,524 | 5,942 |
| JUN | 9,180 | 8,662 | 8,133 | 7,592 | 7,042 | 6,477 | 5,893 |
| JUL | 9,137 | 8,618 | 8,088 | 7,547 | 6,996 | 6,429 | 5,844 |
| AUG | 9,094 | 8,575 | 8,044 | 7,501 | 6,950 | 6,382 | 5,795 |
| SEP | 9,052 | 8,532 | 8,000 | 7,457 | 6,905 | 6,335 | 5,747 |
| OCT | 9,008 | 8,487 | 7,954 | 7,410 | 6,856 | 6,285 | 5,695 |
| NOV | 8,965 | 8,443 | 7,908 | 7,364 | 6,809 | 6,236 | 5,644 |
| DEC | 8,922 | 8,399 | 7,864 | 7,318 | 6,761 | 6,187 | 5,592 |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20
POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT.
THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE
DATE OF THE INCREASE.

0046114

```
FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE                                    PS   4
```

### TABLE OF SURRENDER CHARGES (CONTINUED)

| POLICY MONTH STARTING | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | 5,541 | 4,910 | 4,235 | 3,503 | 2,696 | 1,792 | 758 |
| FEB | 5,489 | 4,855 | 4,175 | 3,437 | 2,624 | 1,709 | 663 |
| MAR | 5,438 | 4,801 | 4,117 | 3,373 | 2,552 | 1,628 | 568 |
| APR | 5,386 | 4,745 | 4,057 | 3,308 | 2,479 | 1,546 | 473 |
| MAY | 5,335 | 4,691 | 3,998 | 3,244 | 2,408 | 1,464 | 379 |
| JUN | 5,283 | 4,636 | 3,939 | 3,178 | 2,336 | 1,382 | 284 |
| JUL | 5,232 | 4,581 | 3,880 | 3,114 | 2,263 | 1,300 | 189 |
| AUG | 5,180 | 4,526 | 3,820 | 3,049 | 2,191 | 1,218 | 0 |
| SEP | 5,130 | 4,472 | 3,762 | 2,985 | 2,120 | 1,137 | |
| OCT | 5,074 | 4,412 | 3,696 | 2,912 | 2,037 | 1,042 | |
| NOV | 5,020 | 4,353 | 3,632 | 2,840 | 1,955 | 947 | |
| DEC | 4,965 | 4,294 | 3,567 | 2,768 | 1,874 | 852 | |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20 POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT. THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE DATE OF THE INCREASE.

0046115

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE                                    PS  5

TABLE OF
GUARANTEED MAXIMUM INSURANCE RATES
PER $1,000 OF AMOUNT AT RISK

| POLICY<br>YEAR | MONTHLY<br>RATE |
|---|---|
| 1998 | 1.47050 |
| 1999 | 1.63180 |
| 2000 | 1.80660 |
| 2001 | 1.99310 |
| 2002 | 2.19150 |
| 2003 | 2.40740 |
| 2004 | 2.65200 |
| 2005 | 2.93790 |
| 2006 | 3.25140 |
| 2007 | 3.62730 |
| 2008 | 4.04880 |
| 2009 | 4.50690 |
| 2010 | 4.99570 |
| 2011 | 5.51100 |
| 2012 | 6.04720 |
| 2013 | 6.62020 |
| 2014 | 7.25220 |
| 2015 | 7.96040 |
| 2016 | 8.76450 |
| 2017 | 9.67780 |
| 2018 | 10.67950 |
| 2019 | 11.75750 |
| 2020 | 12.88130 |
| 2021 | 14.05980 |
| 2022 | 15.26710 |
| 2023 | 16.52100 |
| 2024 | 17.83670 |
| 2025 | 19.23900 |
| 2026 | 20.76660 |
| 2027 | 22.49840 |
| 2028 | 24.70920 |
| 2029 | 27.82760 |
| 2030 | 32.78850 |
| 2031 | 41.45780 |
| 2032 | 57.95660 |
| 2033 | 90.90910 |

0046116

## Policy Summary

It is important that You understand Your insurance policy. We have tried to use understandable language throughout this Policy. Should You have any questions after You have read it, please call the representative who sold this Policy to You or call Us. This summary is not a substitute for the detailed policy provisions.

This is a flexible premium adjustable life insurance policy. Proceeds as described in this Policy will be paid upon surrender, maturity, or death of the Insured.

Sufficient premiums must be paid to continue this Policy in force. Premium reminder notices will be sent for Planned Premiums and for premiums required to continue this Policy in force. This Policy may be reinstated.

Other rights and benefits are explained in this Policy.

## Definitions

**Attained Age**
Issue age of the Insured as shown in the Policy Specifications, increased by the number of Policy Years elapsed. Issue age is the Insured's age on his/her birthday nearest this Policy's Date of Issue.

**Basic Monthly Premium**
The Basic Monthly Premium is shown in the Policy Specifications or in the supplemental Policy Specifications if later changed.

**Date of Issue**
The effective date for Initial Coverage will be the Date of Issue shown in the Policy Specifications. The Date of Issue and the effective date for any change in coverage will be the Date of Coverage Change shown in the supplemental Policy Specifications which will be sent to You. Coverage is conditional on payment of the first premium, if any.

**Death Benefit**
The amount described in the Death Benefit Option provision that is payable on the date of death, subject to all provisions contained in this Policy.

**Debt**
The sum of all unpaid loans. The amount necessary to repay all loans in full is the Debt plus any accrued interest.

**Home Office**
Our main office, located at 151 Farmington Avenue, Hartford, CT 06156.

**Initial Coverage**
Coverage provided by this Policy prior to any change in coverage.

**Loan Value**
The Surrender Value less an amount sufficient to keep this Policy in force to the end of the Policy Year. Such amount is calculated based on current monthly deductions and current loan interest rate.

**Maturity Date**
The date on which the Insured reaches Attained Age 100.

**Minimum Specified Amount**
The Minimum Specified Amount for this Policy is shown in the Policy Specifications. The Specified Amount for this Policy cannot be decreased below the Minimum Specified Amount.

**Monthly Deduction Day**
The first Monthly Deduction Day is the Date of Issue. Monthly Deduction Days occur each month thereafter on the same day of the month as the Date of Issue.

0046117

**Net Premium**
The Premium paid less a premium load. The guaranteed maximum premium loads are shown in the Policy Specifications.

**Policy Month**
The Policy Month begins each month on the same day of the month as the Date of Issue.

**Policy Year/Policy Anniversary**
The first Policy Year is the 12 month period beginning on the Date of Issue. Your Policy Anniversary is equal to the Date of Issue plus 1 year, 2 years, etc.

**Proceeds**
The amount that We will pay on the death of the Insured, the Maturity Date, or the surrender of this Policy as described in the Proceeds provision.

**Specified Amount**
The Specified Amount is shown in the Policy Specifications or the supplemental Policy Specifications, if later changed.

**Subsequent Application(s)**
Any application after the initial application, initiated by You or by Us.

**We, Our, Us, Company**
Refers to Aetna Life Insurance and Annuity Company, its successors or assigns.

**Written Request**
A request in writing, in a form satisfactory to Us and received by Us at the Home Office.

**You, Your**
Refers to the Owner(s) of this Policy.

## General Provisions

**The Contract**
This Policy, the initial application on the Insured, any Subsequent Applications, and any amendment riders constitute the entire contract. Copies of all applications are attached to and made a part of this Policy. Only the President or the Corporate Secretary of the Company may agree to a change in this Policy, and then only in writing.

All statements made by or for the Insured are representations and not warranties.

No statement will be used to void this Policy or defend against a claim unless it is contained in the initial application or Subsequent Applications.

**Owner**
Unless otherwise stated, this Policy is owned by the Insured.

During the lifetime of the Insured, all rights granted by this Policy or allowed by Us belong to the Owner.

If this Policy is owned jointly, any exercise of rights granted by this Policy must be made jointly.

**Beneficiary**
The individual or entity that will receive any Proceeds on the death of the Insured is the Beneficiary. The Beneficiary is stated in the application, unless later changed.

If no designated Beneficiary is living at the time of the Insured's death, all benefits will be paid to the Owner or the Owner's executors, administrators, or assigns.

0046118

### Changes in Owner and Beneficiary

Unless this Policy states otherwise, the Owner or the Beneficiary, or both, may be changed. This may be done as often as desired by the Owner of record during the lifetime of the Insured and while this policy is in force.

To change the Owner or Beneficiary Your Written Request must be sent to Us. When We give Our written acceptance, the change will take effect as of the date Your Written Request was signed. The change will be subject to any action We take before Our written acceptance of the change.

### Assignment

A copy of an assignment must be filed at the Home Office. Until We receive such notice, We will not be required to take notice of, or be responsible for, any transfer of interest in this Policy by assignment, agreement, or otherwise.

We will not be responsible for the validity of any assignment.

### Non-Participating

No dividends will be paid.

### Policy Settlement

All amounts payable by Us will be paid by the Home Office. We will deduct from the amount payable at settlement any Debt plus accrued interest and any overdue amount necessary to keep this Policy in force to the date that Proceeds are payable. We may require return of this Policy.

### Age

If the Insured's age is misstated, the amount of the Death Benefit will be adjusted to reflect the coverage that would have been purchased by the most recent mortality charge at the correct age.

### Change of Address

Please notify Us at the Home Office of a change in Your mailing address.

### Annual Report

At least once a year, We will send You a report which includes:

- the current status of this Policy;
- all financial transactions in connection with this Policy since the last report; and
- any other information required by the state in which this Policy is delivered.

### Projection of Benefits

We will provide a projection of illustrative future death benefits and cash values at any time upon Your Written Request. We reserve the right to charge a $25.00 fee for this service.

### Proceeds

Proceeds on the death of the Insured will equal:

1. the Death Benefit; less
2. Debt plus any accrued interest; less
3. any overdue monthly deductions.

If Coverage Beyond Maturity is not elected, Proceeds on maturity of this Policy will equal:

1. the Cash Value on the Maturity Date; less
2. Debt plus any accrued interest.

Proceeds on surrender of this Policy will equal the Surrender Value as described in the Surrender Value provision.

All Proceeds are subject to adjustment under the Age, Incontestability, Suicide, and Grace Period Provisions.

0046119

## Coverage Beyond Maturity

You may elect to continue coverage beyond the Maturity Date. If elected by Your Written Request, the following will apply:

- We will continue to credit interest to the Cash Value of this Policy as described in the Interest Credited provision.

- Monthly Deductions will be calculated with a Cost of Insurance rate equal to zero.

- Proceeds payable on death will be as described in the Proceeds provision of this Policy, under Proceeds on death.

Rights and benefits described in this Policy will be available during the lifetime of the Insured.

No future premium payments will be accepted except for the amount required to keep this policy in force.

## Suicide and Incontestability

### Suicide Exclusion
Initial Coverage

If the Insured dies by suicide, while sane or insane, within 2 years from the Date of Issue of this Policy, We will pay:

1. premiums paid; less

2. any Partial Surrenders; less

3. Debt plus any accrued interest.

If the Insured dies by suicide while sane or insane, more than 2 years from the Date of Issue of this Policy but within 2 years from the Date of Issue of any increase in coverage, We will pay:

1. The Death Benefit for any coverage in effect more than 2 years from the Date of Issue of this Policy; plus

2. the Monthly Deductions for any increase in coverage.

All amounts will be calculated as of the date of death.

### Incontestability
With respect to statements made in the initial applications or any Subsequent Applications for the Insured:

> We will not contest this Policy after it has been in force during the lifetime of the Insured for 2 years from its Date of Issue unless the statements made were willfully false, fraudulent or misleading.

If this Policy is contested, Your rights or the Beneficiary's rights may be affected.

## Premiums and Reinstatement

### Premiums
The first premium is due on the Date of Issue. Premium due dates are measured from the Date of Issue.

Sufficient premiums must be paid to continue this Policy in force.

Any premiums after the first premium are payable only at the Home Office. Send Your check or money order, payable to Aetna, to the Home Office. A receipt signed by an officer of the Company will be given upon request.

### Planned Premiums
Planned Premium is the premium amount that will be billed. Premium reminder notices for Planned Premiums will be sent at frequencies of 3, 6 or 12 months, or at any other frequency to which We agree. The Planned Premium as of the Date of Issue is shown in the Policy Specifications.

0046120

You may change the amount and frequency of the Planned Premium by notifying Us. We may limit any increase in Planned Premiums in order to preserve the favorable income tax status of this Policy. We may require satisfactory evidence of insurability on the Insured if payment of the new Planned Premium during the current Policy Year would increase the difference between the Cash Value and the Death Benefit.

**Additional Premiums**
Additional Premiums are premium payments in excess of Planned Premiums. Additional Premiums may be paid at any time while this Policy is in force and before the Maturity Date.

We may limit the amount and number of Additional Premiums in order to preserve the favorable income tax status of this Policy.

We may require satisfactory evidence of insurability on the Insured if payment of the Additional Premium during the current Policy Year would increase the difference between the Cash Value and the Death Benefit.

**Specified Period**
This Policy will not terminate before the Specified Period Expiration Date shown in the Policy Specifications, or 5 years from the Date of Issue of any increase when that 5 year period would extend beyond the original Specified Period Expiration Date, if on each Monthly Deduction Day within that period the Cash Value less Debt is greater than zero and the sum of premiums paid equals or exceeds:

1.  The sum of the Basic Monthly Premiums including Riders for each Policy Month from the start of the period including the current month; plus

2.  any Partial Surrenders; plus

3.  any increase in Debt since the Policy's Date of Issue or Date of Issue of any increase.

If, on any Monthly Deduction Day within the Specified Period, the sum of premiums paid is less than the sum of 1, 2 and 3 above, the Grace Period provision will apply.

After the Specified Period expires, the Cash Value may be insufficient to keep this Policy in force. Payment of an Additional Premium may be necessary.

**Grace Period**
If the Surrender Value is insufficient to allow a Monthly Deduction on the Monthly Deduction Day and this Policy is within the period of the No Lapse Coverage provision We will allow You 61 days of grace for payment of an amount equal to the lesser of (1) or (2) where;

(1)  the amount necessary to meet the conditions of the Specified Period provision; or

(2)  an amount sufficient to cover the Monthly Deduction(s) that would result in the Surrender Value being greater than zero.

If this Policy is no longer within a Specified Period and the Surrender Value is insufficient to allow a Monthly Deduction on the Monthly Deduction Day, We will allow You 61 days of grace for payment of an amount sufficient to allow the Monthly Deduction. We may require payment of the amount necessary to keep this Policy in force for the current month plus two additional months.

During the days of grace this Policy will stay in force. If the Insured's death occurs during the days of grace, We will deduct an amount sufficient to allow the overdue Monthly Deduction(s) from the Death Benefit.

Written notice will be mailed to Your last known address, according to Our records, not less than 31 days before termination of this Policy. This notice will also be mailed to the last known address of any assignee of record.

If payment is not made within 61 days after the Monthly Deduction Day, this Policy will terminate without value at the end of the Grace Period. The termination will be effective on the Monthly Deduction Day for the first unpaid Monthly Deduction.

0046121

**Reinstatement**

If this Policy terminates as provided in the Grace Period provision, it may be reinstated. To reinstate this Policy, the following conditions must be met:

- This Policy has not been fully surrendered.
- You must request reinstatement within 5 years after the date of termination.
- We must receive satisfactory evidence of insurability on the Insured.
- We must receive a premium payment sufficient to keep this policy in force for three months.

If this Policy is reinstated while the Specified Period provision would be in effect if this Policy had not lapsed, all values including Debt will be reinstated to the point they were on the date of lapse.

If this Policy is reinstated after the Specified Period provision has expired, this Policy will be reinstated on the Monthly Deduction Day following Our approval. This Policy's Cash Value at reinstatement will be the Net Premium paid less the Monthly Deduction for that day.

If this Policy's Cash Value less any Debt including accrued interest was not sufficient to cover the full Surrender Charge at the time of lapse, the remaining portion of the Surrender Charge will also be reinstated at the time of this Policy's reinstatement.

## Death Benefit Options

**General**

The Proceeds payable upon the Insured's Death will be as provided under one of the following Death Benefit options. The option for this Policy as of the Date of Issue is shown in the Policy Specifications. If You change the Death Benefit option, the option will be shown in the supplemental Policy Specifications which will be sent to You.

**Option 1**

The Specified Amount includes the Cash Value. Under this option, the Death Benefit will be the greater of (a) the Specified Amount on the date of Death, or (b) a percentage of the Cash Value, as described below.

**Option 2**

The Specified Amount is in addition to the Cash Value. Under this option, the Death Benefit will be the greater of (a) the Specified Amount plus the Cash Value on the date of Death, or (b) a percentage of the Cash Value, as described below.

**Death Benefit Based on a Percentage of the Cash Value**

Item (b) under either Death Benefit option will not be less than a percentage of the Cash Value on the date of death as determined in the following table.

| ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % |
|---|---|---|---|---|---|---|---|
| 0-40 | 250% | | | | | | |
| 41 | 243 | 51 | 178% | 61 | 128% | 71 | 113% |
| 42 | 236 | 52 | 171 | 62 | 126 | 72 | 111 |
| 43 | 229 | 53 | 164 | 63 | 124 | 73 | 109 |
| 44 | 222 | 54 | 157 | 64 | 122 | 74 | 107 |
| 45 | 215 | 55 | 150 | 65 | 120 | 75-90 | 105 |
| 46 | 209 | 56 | 146 | 66 | 119 | 91 | 104 |
| 47 | 203 | 57 | 142 | 67 | 118 | 92 | 103 |
| 48 | 197 | 58 | 138 | 68 | 117 | 93 | 102 |
| 49 | 191 | 59 | 134 | 69 | 116 | 94 | 101 |
| 50 | 185 | 60 | 130 | 70 | 115 | 95 + | 100 |

70212-95USMA

0046122

## Policy Values

### Basis of Calculation

Minimum Cash Values are based on the 1980 Commissioners Standard Ordinary Mortality Table B, Smoker or Nonsmoker. If the Insured's Attained Age is 14 or less, values are based on the Commissioners Standard Ordinary Mortality Table B.

Interest is assumed at the rate of 4.0% per year.

The values of this Policy equal or exceed those required by law in the state where this Policy is delivered. A detailed statement has been filed with the state which shows how to compute those values. The non-guaranteed elements of this policy may be adjusted by Us from time to time. Adjustments will be on a class basis and will be based on Our estimates for future factors such as mortality, investment income, expenses, and the length of time policies stay in force. Any adjustments will be made on a nondiscriminatory basis.

### Cash Value

The Cash Value on the Date of Issue will be the Net Premium paid less the Monthly Deduction for the first month.

The Cash Value after the Date of Issue will equal:

1. The Cash Value on the previous Monthly Deduction Day less the Monthly Deduction for that day with interest to date; plus

2. Net Premiums paid since the previous Monthly Deduction Day with interest to date; less

3. any Partial Surrenders since the previous Monthly Deduction Day with interest to date.

### Interest Credited

We will credit interest on the Cash Value at the guaranteed rate of 4.0% per year. This rate equals 0.32737% per month, compounded monthly. We may credit interest in excess of the guaranteed rate. The credited interest rate takes into account Our return on General Account Invested assets and the amortization of any realized capital gains and/or losses which the Company may incur on the assets.

Policies that are in force for at least 10 years will have additional interest credited up to 1% when We credit interest in excess of the guaranteed minimum rate of 4%.

This additional interest varies based on the amount of interest we are crediting.

- When We credit interest of 6% or greater, the additional interest rate will be 1%.

- When We credit interest at a rate between 4% and 6% the additional interest will be decreased proportionately, from the 1% credited when the rate is 6%. In other words, if the credited interest rate is less than 6%, subtract 4% from that rate and divide the difference by 2. The result is the additional excess interest we will credit. The additional excess interest that We will pay when the credited rate is 5% is .5%.

- When We credit interest of 4% the additional interest rate will be 0%.

During Policy Years 1-10, We will credit interest to the portion of the Cash Value equal to the Debt at the policy Loan Interest Rate less 2% but never below the minimum guaranteed rate of 4%. Beginning with the 11th Policy Year We will credit interest to the portion of the Cash Value equal to the Debt at the policy Loan Interest Rate less 1%.

### Monthly Deductions

Monthly Deductions begin on the Date of Issue and occur on the same day each month thereafter. Deductions are made from the unloaned portion of the Cash Value.

The Monthly Deduction is equal to:

1. The Cost of Insurance as calculated below; plus

2. the monthly policy fee, shown in the Policy Specifications.

0046123

Cost of Insurance

The Cost of Insurance on any Monthly Deduction Day will be (1) multiplied by the result of (2) minus (3) where:

(1) the Cost of Insurance Rate on that date divided by 1,000;

(2) the Death Benefit on that date divided by 1.0032737;

(3) the Cash Value on that date before computing the Monthly Deductions for the Cost of Insurance for this Policy.

If the result of 2 minus 3 is less than zero, use zero.

Cost of Insurance Rate

The monthly Cost of Insurance Rate is based on the Insured's issue age, number of Policy Years elapsed, and premium class. For the Initial Coverage, the premium class on the Date of Issue will be used. For any increase, the premium class for that increase will be used. If the Insured is assigned a premium class which designates smoker and this classification changes, You may, by Written Request, reclassify the Insured any time after the first Policy Anniversary. Upon Our acceptance of the change, supplemental Policy Specifications will be sent to · You.

The monthly Cost of Insurance Rates may be adjusted by Us from time to time. Adjustments will be on a class basis and will be based on Our estimates for future factors such as mortality, investment income, expenses, and the length of time policies stay in force. Any adjustments will be made on a nondiscriminatory basis.

The rate during any Policy Year will never exceed the rate shown for that year in the Table of Guaranteed Maximum Insurance Rates in the Policy Specifications. Those rates are based on the 1980 Commissioners Standard Ordinary Mortality Table B, Smoker or Nonsmoker. If the Insured's Attained Age is 14 or less, rates are based on the 1980 Commissioners Standard Ordinary Mortality Table B.

Any change in the cost factors will be determined in accordance with procedures and standards on file with the State Insurance Department in which this Policy was delivered.

## NONFORFEITURE PROVISIONS

Continuation of Coverage

Coverage under this Policy will continue to the Maturity Date, or longer if Coverage Beyond Maturity is elected, as long as the Surrender Value is sufficient to cover each Monthly Deduction. If the Surrender Value is not sufficient to cover a Monthly Deduction, the Grace Period provision will apply.

Surrender Value

By Written Request, the Owner may surrender this Policy for its full Surrender Value at any time during the lifetime· of the Insured while this policy is in force. All insurance coverage under this Policy will end on the date of full surrender. Partial Surrenders will also be allowed. In either case, We may defer payment for up to 6 months, except if used to pay any premiums due to Us.

The Surrender Value will equal:

1. The Cash Value on the date of surrender; less

2. the Surrender Charge determined from the Table of Surrender Charges in this Policy; less

3. Debt plus any accrued interest.

If surrender occurs during the first 31 days of a Policy Year, the Surrender Value will not be less than it was on the first day of that year, less any subsequent loans and Partial Surrenders. At no time will the Surrender Value be less than zero.

0046124

### Surrender Charge

At the time of surrender, We will deduct a Surrender Charge from the Cash Value. The applicable Surrender Charge for this Policy is shown in the Policy Specifications in the Table of Surrender Charges.

Any increase in the Specified Amount will result in an additional Surrender Charge applicable to the increase. The charge will be effective on the Date of Issue for the increase. Supplemental Policy Specifications will be sent to You once the change is complete and will reflect the additional Surrender Charge in the Table of Surrender Charges.

Any decrease in the Specified Amount will not reduce the original or any additional Surrender Charge.

### Partial Surrender

Partial Surrenders may be made by the Owner's Written Request while this policy is in force. However, We will not allow a Partial Surrender in the first Policy Year and no more than 3 Partial Surrenders may be made in each subsequent Policy Year. A partial Surrender Charge will be included in the amount of the Cash Value which is surrendered. We will also charge a $25 administrative fee for each partial surrender. The minimum amount of any Partial Surrender, after any partial Surrender Charge and administrative fee is applied, is $500.

The partial Surrender Charge will be in proportion to the Surrender Charge that would apply to a full surrender and will equal (1) divided by (2) where:

    (1)  the net partial surrender multiplied by the full Surrender Charge.

    (2)  the Surrender Value.

When the Partial Surrender is made, future Surrender Charges will be reduced in the same proportion as stated above.

If the Death Benefit option for this Policy is Option 1, a Partial Surrender will reduce the Cash Value, Death Benefit, and Specified Amount. Any past increases will be reduced in the reverse order in which they occurred.

If the Death Benefit on the date of the Partial Surrender is determined as a percentage of the Cash Value as described in the Death Benefit Options section, the Partial Surrender may not reduce the Specified Amount. We will not allow a Partial Surrender that reduces the Specified Amount below the Minimum Specified Amount.

If the Death Benefit option for this Policy is Option 2, a Partial Surrender will reduce the Cash Value and the Death Benefit. The Specified Amount will not be reduced.

## Policy Loans

### General

We will grant loans while this Policy is in force. The amount of the loan will not be more than the Loan Value.

Debt plus accrued interest will reduce any Proceeds under this Policy.

This Policy will be sole security for the loan. We may defer loans for up to 6 months. We will not defer a loan if it is used to pay any premiums due Us.

If Debt exceeds the Cash Value less the Surrender Charge, the Grace Period provision will apply.

### Loan Interest Rate

Interest, at an annual effective rate, will be charged on this Policy's Debt. The rate of interest may change and applies to this Policy's total Debt. Change will be made only on a Policy Anniversary. Interest is due and payable on the next Policy Anniversary, the date this Policy ends or upon full repayment of Debt. Any interest not paid when due will be added to the Debt on the Policy Anniversary and will itself bear interest on the same terms.

The interest rate is based on a Monthly Average. The Monthly Average will be the Composite Yield on Corporate Bonds as published by Moody's Investor's Service, Inc., or any successor to that service. If such average is no longer published, the average used will be determined by law or regulation of the insurance supervisory official of the state where this Policy is delivered. In no event will the interest rate exceed the maximum rate imposed by law or regulation of the state where this Policy is delivered.

0046125

The interest rate charged during any Policy Year will not exceed the maximum rate for that year. The maximum rate will be the greater of (1) and (2) where:

(1) is the Monthly Average for the calendar month which ends 2 months before the month in which the Policy Anniversary occurs; or

(2) is 5.0%.

We may increase the rate only when the maximum rate is at least 1/2% higher than the rate in effect for the prior Policy Year.

We will reduce the rate when the maximum rate is at least 1/2% lower than the rate in effect for the prior Policy Year.

We will notify You of the current loan interest rate for this Policy at the time a policy loan is made. If this Policy has Debt, We will notify You of any change in the interest rate before the new rate becomes effective.

### Repayment

Debt may be repaid in full or in part at any time while this Policy is in force; however, Debt which exists after the Grace Period for an unpaid premium cannot be repaid unless this Policy is reinstated.

The amount necessary to repay all loans in full is the Debt plus accrued interest.

## Changes In Insurance Coverage

### General

We will require Your Written Request for any change in coverage. Supplemental Policy Specifications will be sent to You once the change is completed.

### Increase in Specified Amount

You may increase the Specified Amount of this Policy at any time.

Satisfactory evidence of insurability will be required.

The Date of Issue of any increase will be shown in the supplemental Policy Specifications.

The Basic Monthly Premium will be increased when the Specified Amount is increased.

An additional Surrender Charge will apply upon each increase in the Specified Amount.

A 5 year period as described in the Specified Period provision will restart on the Date of Issue of the increase.

### Decrease in Specified Amount

You may decrease the Specified Amount of this Policy after the 5th Policy Year. You cannot reduce the Specified Amount below the Minimum Specified Amount.

The Basic Monthly Premium will not be decreased if the Specified Amount is decreased.

The decrease in the Specified Amount will take effect on the Monthly Deduction Day on or next following the date on which Your Written Request is received at the Home Office.

The decrease will reduce any past increases in the reverse order in which they occurred.

### Change in Death Benefit Option

You may change the Death Benefit Option after the first Policy Year.

Any change in the Death Benefit Option may require evidence of insurability. If allowed, the change will take effect on the Monthly Deduction Day on or next following the date on which Your Written Request is received at the Home Office. There will be no change in the Surrender Charge.

### Change from Option 1 to 2

The Specified Amount will be reduced to equal the Specified Amount immediately prior to the change less the Cash Value at the time of change. The Specified Amount cannot be reduced below the Minimum Specified Amount.

0046126

**Change from Option 2 to 1**
The Specified Amount will be increased to equal the Specified Amount immediately prior to the change plus the Cash Value at the time of the change.

## Settlement Options

### Conditions
All or part of the Proceeds of this Policy may be applied under one or more of the options described below or in any manner to which We agree. An election shall be made by Written Request filed with the Home Office. The payee of Proceeds may make this election if no prior election has been made.

Payments will be made at intervals of 1, 3, 6 or 12 months in equal amounts as elected. Our consent to the election of an option is required if:

- The payee is not a natural person receiving payments in his or her own right; or
- the payee is an assignee of this Policy; or
- payments would be less than $25 each or totaling less than $120 in a year.

### Income Options
The rates for these Income Options are based on the 1983 Individual Annuity Mortality Table with 60% female and 40% males lives and a pivotal age of 55. In using this mortality table, the attained ages of annuitants will be reduced by one year for annuities commencing in the 1990's, reduced two years for annuities beginning during 2000-2009, and so on. Adjusted Ages will be determined based on the payee's age on his/her birthday nearest the commencement date of the annuity.

Rates for ages and intervals not shown for any of the following income options will be furnished upon request.

### Option 1 - Interest
Payment of interest on Proceeds left with Us. Proceeds held under this option may be left with Us after the death of the payee only with Our consent.

By Written Request, the payee may later elect to:

- Receive all or a portion of the amount held under this option; or
- apply all or a portion of this amount to options 2, 3 or 4 as described below.

### Option 2 - Fixed Period
Payment for a stated number of years, not longer than 30 years, as elected from the following table.

| PAYMENT PER $1,000 PROCEEDS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| YEARS OF FIXED PERIOD | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY | YEARS OF FIXED PERIOD | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
| 3 | $ 343.23 | $ 172.88 | $ 86.76 | $ 28.99 | 15 | $ 81.33 | $ 40.96 | $ 20.56 | $ 6.87 |
| 4 | 261.19 | 131.56 | 66.02 | 22.06 | 20 | 65.26 | 32.87 | 16.50 | 5.51 |
| 5 | 211.99 | 106.78 | 53.59 | 17.91 | 25 | 55.76 | 28.08 | 14.09 | 4.71 |
| 10 | 113.82 | 57.33 | 28.77 | 9.61 | 30 | 49.53 | 24.95 | 12.52 | 4.18 |

0046127

## Option 3 - Life Income

Payments for the lifetime of the payee. If also chosen, We will guarantee payments for 60, 120, 180 or 240 months. No payment will be due after death, except payment for any remaining fixed period.

| | MONTHLY LIFE INCOME PER $1,000 PROCEEDS | | | |
|---|---|---|---|---|
| ADJUSTED AGE | WITH FIXED PERIOD | | | WITHOUT FIXED PERIOD |
| | 10 YEARS | 15 YEARS | 20 YEARS | |
| 50 | $4.03 | $3.99 | $3.93 | $4.05 |
| 51 | 4.09 | 4.05 | 3.99 | 4.12 |
| 52 | 4.16 | 4.11 | 4.04 | 4.19 |
| 53 | 4.23 | 4.18 | 4.10 | 4.27 |
| 54 | 4.31 | 4.25 | 4.16 | 4.35 |
| 55 | 4.39 | 4.32 | 4.22 | 4.44 |
| 56 | 4.47 | 4.40 | 4.29 | 4.53 |
| 57 | 4.56 | 4.48 | 4.35 | 4.62 |
| 58 | 4.65 | 4.56 | 4.42 | 4.72 |
| 59 | 4.75 | 4.64 | 4.49 | 4.83 |
| 60 | 4.86 | 4.73 | 4.55 | 4.95 |
| 61 | 4.97 | 4.83 | 4.62 | 5.07 |
| 62 | 5.08 | 4.92 | 4.69 | 5.20 |
| 63 | 5.20 | 5.02 | 4.76 | 5.34 |
| 64 | 5.33 | 5.12 | 4.83 | 5.49 |
| 65 | 5.47 | 5.22 | 4.89 | 5.65 |
| 66 | 5.61 | 5.33 | 4.96 | 5.82 |
| 67 | 5.75 | 5.44 | 5.02 | 6.01 |
| 68 | 5.91 | 5.54 | 5.08 | 6.20 |
| 69 | 6.07 | 5.65 | 5.14 | 6.41 |
| 70 | 6.23 | 5.76 | 5.19 | 6.64 |
| 71 | 6.41 | 5.86 | 5.24 | 6.88 |
| 72 | 6.59 | 5.97 | 5.28 | 7.14 |
| 73 | 6.77 | 6.06 | 5.32 | 7.43 |
| 74 | 6.96 | 6.16 | 5.35 | 7.73 |
| 75 | 7.14 | 6.25 | 5.38 | 8.06 |

## Option 4 - Joint Life Income Reducing for Survivor

Payments during the joint lifetimes of two payees. At the death of either, payments will continue to the survivor. When this option is chosen a choice must be made of:

1. 100% of the payment to the survivor;

2. 66 2/3% of the payment to continue to the survivor;

3. 50% of the payment to continue to the survivor;

4. payments for a minimum of 120 months, with 100% of the payment to continue to the survivor; or

5. 100% of the payment to continue to the survivor if the survivor is the original payee, and 50% of the payment to continue to the survivor if the survivor is the second payee.

No payment will become due after the death of the surviving payee.

0046128

The following table illustrates the applicable rates if number (3) of option 4 is chosen.

| MONTHLY JOINT INCOME WITH 1/2 TO SURVIVOR PER $1,000 PROCEEDS | | | | | | | |
|---|---|---|---|---|---|---|---|
| ADJUSTED AGE OF ANNUITANT | AGE OF SECOND ANNUITANT | | | | | | |
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| 50 | $4.08 | $4.27 | $4.49 | $4.76 | $5.07 | $5.41 | $5.77 | $6.12 |
| 55 | 4.27 | 4.47 | 4.71 | 5.01 | 5.36 | 5.74 | 6.15 | 6.54 |
| 60 | 4.49 | 4.71 | 4.99 | 5.32 | 5.71 | 6.15 | 6.62 | 7.08 |
| 65 | 4.76 | 5.01 | 5.32 | 5.70 | 6.15 | 6.66 | 7.22 | 7.77 |
| 70 | 5.07 | 5.36 | 5.71 | 6.15 | 6.70 | 7.32 | 7.99 | 8.67 |
| 75 | 5.41 | 5.74 | 6.15 | 6.66 | 7.32 | 8.15 | 8.99 | 9.86 |
| 80 | 5.77 | 6.15 | 6.62 | 7.22 | 7.99 | 8.99 | 10.24 | 11.40 |
| 85 | 6.12 | 6.54 | 7.08 | 7.77 | 8.67 | 9.86 | 11.40 | 13.27 |

**Interest Rate**
The guaranteed interest rate is 3% per year compounded annually. This rate applies to funds held under option 1 or options 2 and 3 during any fixed period. As to these funds, We will allow such excess interest as We may declare each year. As to option 1, from time to time We may offer higher interest rates with certain conditions on withdrawal as are then published by Us.

**Betterment of Payments**
If option 2, 3 or 4 is chosen and if the guaranteed payments are less than those of Our current single premium immediate annuity on the same plan, those larger amounts will be paid instead.

**Withdrawals and Death of the Payee**
As to funds held under option 1, withdrawals and changes of option may be made if the payee makes the election or if the election so permits. No withdrawals or changes of option may be made under options 2, 3 and 4. Upon the death of the payee, the current value of funds held under option 1 or the present value of any guaranteed payments not yet paid will be paid in one sum to the beneficiary. The beneficiary may elect to continue the remaining guaranteed payments instead of receiving the lump sum amount. If no beneficiary exists, the present value of any remaining guaranteed payments will be paid in one sum to the estate of the payee.

The interest rate used to determine the first payment will be used to calculate the present value of any remaining payments.

0046129

SEP. 2.1998   9:22AM   AETNA LIFE BROKERAGE                     NO.695   P.4/19

# Ætna

**LIFE INSURANCE APPLICATION**
Aetna Life Insurance and Annuity Company
151 Farmington Avenue
Hartford, CT  06156-1961

SEP 1 5 1998

| General Information | ANSWER ALL QUESTIONS IF: |
|---|---|
| | ☐ New Insurance   ☐ Increase Amount  $ _____   ☐ Contract No. |
| | ANSWER QUESTIONS 1, 8 (if applicable), 4, 20, 21 & Policyowner/Taxpayer Id. Number |
| | ☒ Term Conversion/Guaranteed Option  $ 250,000  Continue ☐ ☐ its form |
| | ☐ Other Contract Change |
| | ☒ Contract Number to be changed/converted   R 2638064 |

**ANSWER APPLICABLE QUESTIONS**

**ST OF DEL (Proposed)**

☒ STATE OF DELIVERY     M A

**Insured Information**

Print Full Legal Name (First, Middle, Last)

Richard C. Somerville

Residence Address (Number, Street, P.O. Box)

344 Keene St

City, State and Zip Code

Duxbury          MA  02332          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

| Sex | Date of Birth (mm/dd) | Place of Birth | MVR License # and License State |
|---|---|---|---|
| M | 3/20/34 | M A | 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 |

Occupation (Title & Give Exact Duties)

Owner / President.                72,000.

| Employer's Name and Address | Annual Income |
|---|---|

Blue Rubber Works. Inc. 254 Beech St. Rockland MA 02370

Amount of life insurance presently in force:

| Aetna  $ 250,000  ADB  $ | Other Companies  $ 800,000  ADB  $ |

Are there current negotiations with other companies?   ☐ Yes   ☒ No

If Yes, at what Company and result:

_____

8. Will life insurance or annuity in any Company be replaced or changed if insurance applied for is issued?   ☒ Yes   ☐ No

Explain   Term Conversion.

**Plan Information**

| Select Plan   Enhanced UL | Face Amount  $ 250,000 |
|---|---|

Death Benefit Option (if applicable)   1

Dividend Option  ☐   Paid in Cash  ☐   Reduce premium (not for salary deduction)  ☐

☐ Other   Specify _____

Direct Billing Frequency  ☐   Annual  ☐   Semi-Annual  ☒   Quarterly  ☐   Monthly (ACP/List Billing Plan)  ☐

List Supplemental Benefits/Riders & Amounts (e.g. WP, ADB, EPOR, ROPR)

_____

_____

For OIR - Submit application supplement

70059-97MA

3

SEP-03-98 THU 12:36 PM   BLOOM-BAKER ASSOCIATES     FAX NO. 16178866011    P. 04
SEP. 2, 1998    9:23AM    AETNA LIFE BROKERAGE                    NO.695    P.5/19

**(Proposed)**
**Insured**
**Information**

NON MEDICAL - QUESTIONS 5-10 SHOULD NOT BE COMPLETED FOR TERM
CONVERSIONS OR EXERCISE OF GUARANTEED INSURABILITY OPTION
5. HAVE YOU WITHIN 2 YEARS: (IF YES, EXPLAIN)

   a. Flown as a pilot or crew member or intend to do so? If Yes, furnish
      Aviation supplement.              ☐Yes ☐No

   b. Engaged in motor vehicle or boat racing, rock or mountain climbing,
      hang gliding or sky skin or scuba diving or hazardous activities? (If Yes,
      furnish Vocation supplement)          ☐Yes ☐No

   c. Had your license suspended or revoked, had 3 or more moving violations
      or been charged with driving under the influence of alcohol or drugs?    ☐Yes ☐No
   d. Frequently traveled outside of the United States or intend to do so?   ☐Yes ☐No

6. HAVE YOU EVER:

   a. Had insurance refused, or offered only with an extra premium?    ☐Yes ☐No
   b. Been arrested and convicted for a felony charge?       ☐Yes ☐No

7. HAVE YOU IN THE LAST 5 YEARS: (IF YES, EXPLAIN)

   a. Used hallucinogens or narcotic drugs not prescribed by a doctor?   ☐Yes ☐No
   b. Used alcoholic beverages? (Note type, quantity and frequency)   ☐Yes ☐No
   c. Had or been advised to have medical treatment or counseling from a
      physician, recognized practitioner or organization for alcohol or drug use? ☐Yes ☐No

**Smoking**
**Information**

8. a. Have you smoked cigarettes within the past 12 months?   ☐Yes ☐No
      (If yes, how much?)

   b. If No, have you used any other tobacco products within the past 12 months
      (e.g. cigar, pipe, smokeless tobacco)?        ☐Yes ☐No
      (If Yes, have you smoked cigarettes within the past 12 years?)  ☐Yes ☐No
   c. Have you used any nicotine substitutes within the past 6 months
      (e.g. patch, gum)?              ☐Yes ☐No

**Height &**
**Weight**

9. a. What is your current height?
   b. What is your current weight?
      (If under age 2, birth weight?)

**History**

10. Have you had a history of heart, lung or liver disorder, stroke, diabetes or
    cancer?                   ☐Yes ☐No

**Attending**
**Physician**
**Information**

11. Name, address and phone number of personal physician, date, reason last seen and results.

**QUES. #**

ADDITIONAL INFORMATION (Give details of YES answers, dates and results) For
additional space please use Addendum Sheet.

IF AN EXAM IS REQUIRED AND QUESTION 10 IS ANSWERED "YES" AN MD EXAM IS REQUIRED

70059-97MA

4

0046131

SEP-03-98 THU 12:38 PM   BLOOM-BAKER ASSOCIATES    FAX NO. 16178868011    P. 05
SEP. 2, 1999   9:26AM    AETNA LIFE BROKERAGE              NO.695   P.6/19

(Proposed) | **PART II   QUESTIONS 12 - 19 REQUIRED EVEN FOR EXAMINER BUSINESS**

Insured
Information

12. HAVE YOU EVER IN THE LAST 10 YEARS HAD OR BEEN TREATED
    FOR: (IF YES, EXPLAIN)
    a. Mental or nervous disorder? ............................................. ☐Yes ☐No
    b. Disease of the nervous system or brain? ........................ ☐Yes ☐No
    c. Fainting, seizures, paralysis or stroke? .......................... ☐Yes ☐No
    d. Shortness of breath, persistent cough? ........................... ☐Yes ☐No
    e. Emphysema or other lung disease? ................................. ☐Yes ☐No
    f. Chest pain, high blood pressure, heart attack, heart murmur, disease of the
       heart or blood vessels? ................................................. ☐Yes ☐No
    g. Hepatitis, cirrhosis or other disease of the liver or pancreas? ... ☐Yes ☐No
    h. Ulcer, colitis, chronic diarrhea, or other disorder of the stomach or intestines? ☐Yes ☐No
    i. Sugar, albumin, blood or pus in the urine? ..................... ☐Yes ☐No
    j. Disease of the kidneys, reproductive organs or sexually transmitted disease
       (other than Acquired Immune Deficiency Syndrome (AIDS)? ☐Yes ☐No
    k. Diabetes, thyroid or glandular disease? ......................... ☐Yes ☐No
    l. Arthritis, disease or injury of the muscles, bones or joints? ... ☐Yes ☐No
    m. Cancer, tumor, cyst, disease or disorder of any gland? ... ☐Yes ☐No
13. HAVE YOU IN THE LAST 10 YEARS: (IF YES, EXPLAIN)
    a. Been diagnosed or treated for anemia or deficiency (other than AIDS), anemia
       or other blood disorder by a member of the medical profession? ☐Yes ☐No
    b. Had recurrent fever, fatigue or unexplained weight loss? ... ☐Yes ☐No
    c. Have within the last 10 years been diagnosed or treated for AIDS, AIDS Related
       Complex (ARC) or had a positive result on an abnormal for virus (HTLV-III/DL3)
       virus antibody test? ...................................................... ☐Yes ☐No
14. OTHER THAN ABOVE, HAVE YOU WITHIN THE PAST 5 YEARS:
    (IF YES, EXPLAIN)
    a. Had a checkup, consultation, illness, injury, surgery or diagnostic test? ☐Yes ☐No
    b. Been advised to have any diagnostic test, hospitalization and surgery which
       was not completed? ...................................................... ☐Yes ☐No
15. a. Are you now under observation or treatment? ................. ☐Yes ☐No
    b. Do you need or take any medication or use of medical appliances of any
       kind? ...................................................................... ☐Yes ☐No
17. Have you within 90 days had, or been advised to have surgery, or to be admitted
    to a medical facility or within 5 years been treated or diagnosed by a physician
    for weight, alcohol, including disorder (other than AIDS) or cancer? ☐Yes ☐No
18. a. Do you have a family history of diabetes, heart disease or hereditary
       disease: (IF YES, EXPLAIN) ........................................ ☐Yes ☐No

Family
History
    a. Father, age: _____ health status: _____ if deceased, cause: _____
    b. Mother, age: _____ health status: _____ if deceased, cause: _____

Explanations | 19. EXPLANATIONS: Include nature and severity of condition, frequency of attacks, treatments
             received, medication, dates, name, address & phone number of medical attendants and hospitals.
             For additional space please use Addendum Sheet.

QUESTION #

_____

_____

_____

_____

_____

_____

70049-97MA

5

0046132

SEP-03-98 THU 12:39 PM   BLOOM-BAKER ASSOCIATES   FAX NO. 16178866011   P. 06
SEP. 2,1998  9:28AM   AETNA LIFE BROKERAGE   NO.695  P.7/19

BENEFICIARY/OWNER INFORMATION

| Beneficiary Information | 20. A. PRIMARY (provide full name and relationship) |
|---|---|
| | *Anne Patricia Somerville  Wife* |

Soc. Sec. #   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

B. SECONDARY (if any, provide full name and relationship)

Unless otherwise requested, if more than one beneficiary is named, payment will be made in equal shares. If no beneficiary survives the insured, payment will be made to the executors or administrators of the insured.

C. OTHER ☐ (e.g. Mode Settlement, Trustee under the Will, Individual Creditor. If Creditor - who will receive any balance.)

Soc. Sec. #

D. FINAL (check one) ☐ Estate of the insured
☐ Executors or Administrators of the Survivor of the Beneficiary(ies)

| OWNER | OWNER: THE (PROPOSED) INSURED IS OWNER UNLESS UNDER AGE 15 OR OTHERWISE REQUESTED. |
|---|---|

21. A. PRIMARY (Provide full name, address, relationship and Date of Birth, mm/dd/yy)
*Anne Patricia Somerville, Wife*
*344 Keene St. Duxbury MA 02332*
*03-04-38*

B. SECONDARY (if any, provide full name, address, relationship and Date of Birth, mm/dd/yy)

C. OTHER ☐

D. FINAL (check one) ☐ Insured
☐ Insured at legal age in policy delivery state
☐ Executors or Administrators of the Survivor of the Owner(s)

70069-97MA

6

0046133

SEP-03-98 THU 12:40 PM  BLOOM-BAKER ASSOCIATES     FAX NO. 16178868011      P. 07
SEP. -2.1998  9:29AM   AETNA LIFE BROKERAGE                    NO.695   P.8/19

22.  Any payment is subject to the terms and conditions of the Temporary Insurance Agreement. If payment is made, the Temporary Insurance Agreement must be provided and explained.

23.  If automatic payment from checking account is selected:
I (we) authorize Aetna Life Insurance and Annuity Company (ALIAC) to debit my (our) checking account electronically, by paper means or by any other commercially accepted method, to cover premiums and other payments for my policy(ies)/certificate. I (we) also authorize my financial institution named on the voided check attached to charge my account for such payments. If my/our account number or financial institution change, I (we) authorize ALIAC to accept verbal instructions from me regarding such changes, and to change this authorization accordingly. This authorization is to remain in full force and effect until ALIAC has received written notification from me (either or us) of its termination within a reasonable time to take action.

☐ Attach "VOID" Check    Date of draw (5th, 20th or 25th)

Signature of Payor _____

24.  Any person who, knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

The answers above are true and complete to the best of my knowledge and belief.

I agree that no producer may alter the terms of the application, the Temporary Insurance Agreement or the policy/certificate, nor can the producer waive any of Aetna's rights or requirements.

**I agree that coverage can take effect only if the proposed insured is alive, and all answers in this application material to the risk are still true and complete when the policy/certificate is delivered and the entire first premium is paid.**

I agree to advise the Company or producer in writing of any known or suspected changes in the health of the proposed insured, or of any changes to any answers on this application, prior to delivery of this policy/certificate.

X _____  R. Somerville    9/3/98
Signature of (Proposed) Insured  (Required if age 10 or over)        Date

X _____  Anne Somerville    9/3/98
(Signature of parent if Juvenile under age 10)                       Date
Signature of Applicant/Owner, if other than proposed insured

X _____ Name + Title, First National Bank  Vice President  9/11/98
Signature of Assignee, if applicable   of New England                  Date

Rockland                          MA                    9/3/98
City                              State                  Zip

X _____                     9/3/98
Signature of Agent          Agent License #             Date

70058-87MA

7

0046134

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- FLEXIBLE PREMIUMS PAYABLE UNTIL MATURITY DATE OR DEATH
- PROCEEDS PAYABLE UPON THE FIRST EVENT TO OCCUR - SURRENDER, MATURITY OR DEATH
- NON-PARTICIPATING - NO DIVIDENDS PAYABLE

70212-95USNA

0046135

# Exhibit 11

```
                AWD History for Work object key 2005-07-21-15.05.20.000006T01
                    INSSERVICE - F/Q_BOA - COMPLETE - END - Updateable
        G1637194   AET - SOMERVILLE -   - 320 - V34 - 2005-07-21-15.05.20.000006
                                         - Y
       Agent Code:                    Policy ID:  G1637194  AET
       TEAM NAME:  V34          INSURED'S LAST NAME:  SOMERVILLE
                    Printed on Tuesday, May 23, 2006 at 3:07:52PM
==================================================================================
```

Dear Jane,

Barb, asked me to review this case and get back to you.
Please see my letter dated March 10, 2005 when I returned the change of
ownership form and requested another officer to sign this change.  We always
require two officers to sign and a "controller" signed, which is not
considered an officer and the insured signed as the president.

I also asked for the page of the LLC showing who can sign on behalf of Globe
Composite Solutions LTD LLC so we could process the change of beneficiary form
once the ownership form was processed.
In the meantime they sent us documentation called "consent of members" which
was not acceptable and I advised that we need the "operating agreement for
Globe Composite Solutions". Then we received "Revised & Amended Regulations of
Kalfor Solutions Group LLC", however we could never proceed with anything as
the ownership change form was never returned with the proper signatures.
Based on the fact that "controller" is not an officer and the "insured" signed
as president, we would not have made an exception to accept only one officer.


Since we can not go any further with it, since the insured is deceased, you
may need to take this to Cheryl Wilson in our legal department.
If you have any further questions, please let me know.

Thank you, Elonie

------------------------------------------------------------------------------

```
   Begin Date:      2005-07-21            Flags:            3201N1
   Begin Time:      15:05:30              DTM Job Name:
   User Id:         EMSMIT                DTM Return Code:
   Workstation Id:  AWD_NT                DTM Task Name:
   Business Area:   INSSERVICE            DTM Next Task:
   Type:            F/Q_BOA               End Date:         2005-07-21
   Status:          COMPLETE              End Time:         15:05:35
   Queue:           END
   User Name:       Smith, Elonie
DTM Description:
   Comments:
```

------------------------------------------------------------------------------

```
   Begin Date:      2005-07-21            Flags:
   Begin Time:      15:08:59              DTM Job Name:
   User Id:         EMSMIT                DTM Return Code:
   Workstation Id:                        DTM Task Name:
   Business Area:                         DTM Next Task:
   Type:                                  End Date:         2005-07-21
   Status:                                End Time:         15:08:59
```

LFG0213

```
                AWD History for Work object key 2005-07-21-15.05.20.000006T01
                    INSSERVICE - F/Q_BOA - COMPLETE - END - Updateable
         G1637194  AET - SOMERVILLE -   - 320 - V34 - 2005-07-21-15.05.20.000006
                                    - Y
      Agent Code:                   Policy ID:  G1637194  AET
      TEAM NAME:  V34          INSURED'S LAST NAME:  SOMERVILLE
                    Printed on Tuesday, May 23, 2006 at 3:07:52PM
=========================================================================================
```

```
   Queue:
   User Name:        Smith, Elonie
DTM Description:
   Comments:
```

```
               -----Original Message-----
               From: Smith, Elonie M
               Sent: Thursday, July 21, 2005 3:07 PM
               To: Cummiskey, Jane A
               Cc: Barlow, Barbara A
               Subject: RE: Somerville - Policy G1637194

               P.S.  I noticed that they sent you copies of the change of ownership form,
               but the original one sent earlier dated 2/15/05 is the one we received.  The
               one they sent you is not dated and in addition to not being signed by two
               officers that form could not be accepted as it was not dated.  Thanks!
               -----Original Message-----
               From: Smith, Elonie M
               Sent: Thursday, July 21, 2005 3:04 PM
               To: Cummiskey, Jane A
               Cc: Barlow, Barbara A
               Subject: Somerville - Policy G1637194

               Dear Jane,
               Barb, asked me to review this case and get back to you.

               Please see my letter dated March 10, 2005 when I returned the change of
               ownership form and requested another officer to sign this change.  We always
               require two officers to sign and a "controller" signed, which is not
               considered an officer and the insured signed as the president.

               I also asked for the page of the LLC showing who can sign on behalf of Globe
               Composite Solutions LTD LLC so we could process the change of beneficiary form
               once the ownership form was processed.

               In the meantime they sent us documentation called "consent of members" which
               was not acceptable and I advised that we need the "operating agreement for
               Globe Composite Solutions". Then we received "Revised & Amended Regulations of
               Kalfor Solutions Group LLC", however we could never proceed with anything as
               the ownership change form was never returned with the proper signatures.

               Based on the fact that "controller" is not an officer and the "insured" signed
               as president, we would not have made an exception to accept only one officer.

               Since we can not go any further with it, since the insured is deceased, you
               may need to take this to Cheryl Wilson in our legal department.

               If you have any further questions, please let me know.
```

```
         AWD History for Work object key 2005-07-21-15.05.20.000006T01
              INSSERVICE - F/Q_BOA - COMPLETE - END - Updateable
      G1637194  AET - SOMERVILLE -   - 320 - V34 - 2005-07-21-15.05.20.000006
                                  - Y
Agent Code:                      Policy ID:  G1637194  AET
TEAM NAME:  V34         INSURED'S LAST NAME:  SOMERVILLE
              Printed on Tuesday, May 23, 2006 at 3:07:52PM
==================================================================================
```

Thank you, Elonie

------------------------------------------------------------------------------------

LFG0215

```
        AWD History for Work object key 2005-07-22-12.12.12.000004T01
             INSSERVICE - OWNERCHG - COMPLETE - END - Updateable
   G1637194   AET - SOMERVILLE -   - 404 - V34 - 2005-07-22-12.12.12.000004
                              - Y
 Agent Code:                      Policy ID:  G1637194  AET
 TEAM NAME:  V34          INSURED'S LAST NAME:  SOMERVILLE
                 Printed on Tuesday, May 23, 2006 at 3:08:16PM
===============================================================================
```

Hi Elonie,

Thank you for your prompt response.  This claim was presented at roundtable today and I was advised to seek assistance with the Aetna team.

I do have additional questions regarding the ownership changes.  In response to your March 10, 2005 letter asking for another officer to sign the change of ownership form, Globe Composites Solutions LTD faxed over a letter from Richard Somerville at Globe Rubber Works, Inc stating he was the sole owner/officer of Globe Rubber works.  I don't see that this was accepted by your area.  How can another officer sign if another officer doesn't exist?

I also need further clarification about the change of beneficiary request.  I the only reason that it was not being processed was because the change of ownership had not taken place?  If the ownership changes had been recorded, would you have had all the documentation to proceed with the change of beneficiary request?  Why weren't two officer's signatures required on the change of beneficiary form (as they were for the change of owner form) along with the witness signature?  I note where the entire completed form was requested to be returned as only page 2 was received with the witness signature.  I don't see that this was ever received.
I need to contact an attorney asap in order to avoid potential litigation regarding this matter.  What I need from you is a complete listing of the documents needed in order to get these changes in good order.

Let me know if you have any questions or if we need to meet.

Jane Cummiskey
Senior Claim Examiner
Claim Services, MCL1
800-444-2363 Option 4, Option 1, ext. 6-1818
Fax:  800-682-3216
jacummiskey@lnc.com
-----Original Message-----
From: Smith, Elonie M
Sent: Thursday, July 21, 2005 3:07 PM
To: Cummiskey, Jane A
Cc: Barlow, Barbara A
Subject: RE: Somerville - Policy G1637194
P.S.  I noticed that they sent you copies of the change of ownership form, but the original one sent earlier dated 2/15/05 is the one we received.  The one they sent you is not dated and in addition to not being signed by two officers that form could not be accepted as it was not dated.  Thanks!
-----Original Message-----
From: Smith, Elonie M
Sent: Thursday, July 21, 2005 3:04 PM
To: Cummiskey, Jane A
Cc: Barlow, Barbara A

LFG0218

```
           AWD History for Work object key 2005-07-22-12.12.12.000004T01
                 INSSERVICE - OWNERCHG - COMPLETE - END - Updateable
        G1637194  AET - SOMERVILLE -    - 404 - V34 - 2005-07-22-12.12.12.000004
                                        - Y
Agent Code:                        Policy ID:  G1637194  AET
TEAM NAME: V34              INSURED'S LAST NAME:  SOMERVILLE
                Printed on Tuesday, May 23, 2006 at 3:08:16PM
```

Subject: Somerville - Policy G1637194

Dear Jane,
Barb, asked me to review this case and get back to you.

Please see my letter dated March 10, 2005 when I returned the change of
ownership form and requested another officer to sign this change. We always
require two officers to sign and a "controller" signed, which is not
considered an officer and the insured signed as the president.

I also asked for the page of the LLC showing who can sign on behalf of Globe
Composite Solutions LTD LLC so we could process the change of beneficiary form
once the ownership form was processed.

In the meantime they sent us documentation called "consent of members" which
was not acceptable and I advised that we need the "operating agreement for
Globe Composite Solutions". Then we received "Revised & Amended Regulations of
Kalfor Solutions Group LLC", however we could never proceed with anything as
the ownership change form was never returned with the proper signatures.

Based on the fact that "controller" is not an officer and the "insured" signed
as president, we would not have made an exception to accept only one officer.

Since we can not go any further with it, since the insured is deceased, you
may need to take this to Cheryl Wilson in our legal department.

If you have any further questions, please let me know.

Thank you, Elonie

LFG0219

```
              AWD History for Work object key 2005-04-27-14.05.30.000009T01
                   INSSERVICE - BENECHG - RETURNED - END - Updateable
        G1637194 AET - SOMERVILLE -  - 999 - V34 - 2005-04-27-14.05.30.000009
                                        - Y
      Agent Code:                      Policy ID:  G1637194  AET
      TEAM NAME:  V34          INSURED'S LAST NAME:  SOMERVILLE
                         Printed on Tuesday, May 23, 2006 at 2:57:51PM
=================================================================================
0
                      Activate Date/Time    2005-05-30 00:00:00  Activate Status

---------------------------------------------------------------------------------

     Begin Date:       2005-05-31         Flags:              0000N0
     Begin Time:       07:41:49           DTM Job Name:
     User Id:          EMSMIT             DTM Return Code:
     Workstation Id:   AWD_NT             DTM Task Name:
     Business Area:    INSSERVICE         DTM Next Task:
     Type:             BENECHG            End Date:           2005-05-31
     Status:           INDEXED            End Time:           07:41:49
     Queue:            EMSMIT
     User Name:        Smith, Elonie
  DTM Description:
     Comments:         Suspend            Suspend Reason
                       Activate Date/Time  2005-06-07 00:00:00  Activate Status

---------------------------------------------------------------------------------

     Begin Date:       2005-06-03         Flags:
     Begin Time:       09:47:52           DTM Job Name:
     User Id:          EMSMIT             DTM Return Code:
     Workstation Id:                      DTM Task Name:
     Business Area:                       DTM Next Task:
     Type:                                End Date:           2005-06-03
     Status:                              End Time:           09:47:52
     Queue:
     User Name:        Smith, Elonie
  DTM Description:
     Comments:         called Roger Fasnacht and left him a message advising  that the documentation
                       that he sent "Consent of Members" was not acceptable as it refers to  "the
                       life ins. co. requires a resolution" in paragraph 4.  This is not true we did
                       not ask for a resolution.  also it makes reference to Emerald Grove Capital
                       LTD which we know nothing about.  I advised that we need the 'OPERATING
                       AGREEMENT FOR BLOB COMPOSIT SOLUTIONS LTD, IT IS AN LLC".  I advised he could
                       fax and call me and let me know when faxing.  his # is 781-871-3700.

---------------------------------------------------------------------------------

     Begin Date:       2005-06-03         Flags:              9990N0
     Begin Time:       09:48:05           DTM Job Name:
     User Id:          EMSMIT             DTM Return Code:
     Workstation Id:   CR003124           DTM Task Name:
     Business Area:    INSSERVICE         DTM Next Task:
     Type:             BENECHG            End Date:           2005-06-03
     Status:           INDEXED            End Time:           09:48:05
     Queue:            EMSMIT
     User Name:        Smith, Elonie
```

LFG0274

# Exhibit 12

/29/2005 15:08 FAX 7818716631                                    ☑001/009



**Globe Composite Solutions**
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)

# Fax

| To: *Elonn Smith* | From: *Roger Fasnacht* |
|---|---|
| Fax: *860-466-2835* | Pages: *9* |
| Phone: | Date: *3/29/05* |
| Re: *Policy G1637/94* | CC: |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

---

*In response to your letter dated March 10, 2005, attached are additional documents*

*1. Witness signature for the Life Beneficiary Change Form.*

*2. Resolution from the General Partner for Globe Composite Solutions indicating who is authorized to execute insurance contracts.*

*3. Letter from Globe Rubber Works indicated Richard Somerville is the sole owner and officer of Globe Rubber Works*

*4. Copy of MA Annual Return also indicating Mr. Somerville as only officer of Globe Rubber Works.*

*Regards,*

*Roger Fasnacht CFO*

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above address by mail.

RECEIVED TIME MAR. 29.  3:03PM                          LFG0354

03/29/2005 15:08 FAX 7818716631                                   002/009
MAR-24-2005  16:27          781 893 7569

# ▯Lincoln
## Financial Group®

*The Lincoln National Life Insurance Company*
*Client Service Center, MIR1*
*P.O. Box 5048*
*Hartford, CT 06102-5048*

## Request For Information

*Acting as administrative agent of:*
*Aetna Life Insurance Company*
*ING Life Insurance and Annuity Company*

GLOBE RUBBER WORKS INC
254 BEECH STREET
ROCKLAND MA 02730

March 10, 2005
Issuing Company: ING Life Insurance and Annuity
Company
Policy/Certificate Number: G1637194
Insured: RICHARD C. SOMERVILLE

Dear Client:

We are sorry that we are unable to record the change of beneficiary you requested on February 16, 2005. The State of Massachusetts requires that a disinterested party of legal age witness this type of change. The witness cannot be the person or persons designated as the new beneficiary.

We have prepared a new beneficiary form for you. We will need the page of the LLC agreement that shows who is authorized to sign on behalf of Globe Composite Solutions, LTD.

We are also returning the ownership change form as we require two officers to sign on behalf of Globe Rubber Works Inc. and controller is not an acceptable officer.

A return envelope is enclosed for your convenience.

At Lincoln Life, we are committed to providing you with quality customer service. If you have any questions or comments, please contact the Client Service Center at 800 334-7586 between the hours of 8:00 a.m. and 6:00 p.m. Eastern Time, Monday through Friday, or contact your financial representative.

Sincerely,

Bonie Smith
Client Service Center

*[handwritten:]* officer signatures:    Richard Sommerville ⎫ need statement the
on behalf                                 Paul Slavey       ⎬ Richard is sole owner/off
ask                                                          ⎭
title Expert

RECEIVED
MAR 2 4 2005

03/29/2005 15:08 FAX 7818718631                                    Ø 003/008

**Beneficiary Designation (continued)**

☐ Primary    ☐ Contingent
Name _____

Social security number/Tax ID # _____

Relationship to the Insured _____    Date of birth _____

Address _____

City, State, ZIP _____

If the beneficiary is a trust, complete the following:

☐ Primary    ☐ Contingent

Trust's name _____

Tax ID number _____    Date of trust _____

Trustee's name _____

Address _____

City, State, ZIP _____

**Agreement and Signatures**

Policy Owner's signature _____    Date _____

Name (print or type)  *Carl Forsythe*    Title*  CEO

Policy Owner's signature _____    Date _____

Name (print or type) _____    Title* _____

Policy Owner's signature _____    Date _____

Name (print or type) _____    Title* _____

Irrevocable beneficiary's signature (if applicable) _____    Date _____

Name (print or type) _____    Date _____

Witness signature (Massachusetts only) _____    Date 2/5/05

*Complete if a corporation, partnership or trust. Two officer signatures are required for corporate owned policies.

**Community property release** - *This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX, WA). Determination of Community Property status depends on the current or former resident state of the policy owner:*

By signing below, you the spouse/former spouse agree to the changes indicated above and:

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature _____    Date _____

Name (print or type) _____

Home Office Acknowledgement                            Page 2 of 2

RECEIVED TIME    MAR. 29.    3:03PM

LFG0356

03/29/2005 15:08 FAX 7818716631                                    ☑004/009

CONSENT OF MEMBERS
IN LIEU OF SPECIAL MEETING
OF
KALFOR SOLUTIONS GROUP, LLC

EFFECTIVE: March 14, 2005

     The undersigned, being all the members KALFOR SOLUTIONS GROUP, LLC, a Texas limited liability company (the "Company"), pursuant to the provisions of Articles 2.23 and 8.08 of the Texas Limited Liability Company Act, hereby waive notice of the time, place, and purpose of the special meeting of the members of the Company, and consent to and approve the following resolutions and each and every action effected thereby:

     WHEREAS, the Company is the General Partner for Globe Composite Solutions, Ltd., a Texas Limited Partnership ("GCS"); and

     WHEREAS, GCS purchased certain life insurance policies from Globe Rubber Works, Inc. as part of an asset purchase agreement of substantially all the assets of Globe Rubber Works, Inc. ; and,

     WHEREAS, the life insurance companies require a Resolution stating that a GCS signatory is authorized to execute the Change of Ownership and Change of Beneficiary and legally bind GCS to the terms and conditions of the contracts

     NOW THEREFORE BE IT DECLARED that the General Partners do authorize Carl Forsythe, President and CEO for GCS and Roger Fasnacht, Chief Financial Officer for GCS to execute said insurance company contracts on behalf of the Company for the benefit of GCS.

Further Authorization of Officers.

     RESOLVED, that the officers of the Company are hereby authorized to (a) sign, execute, certify to, verify, acknowledge, deliver, accept, file, and record any and all instruments and documents and (b) take, or cause to be taken, any and all such action, in the name and on behalf of the Company or otherwise, as (in their judgment) shall be necessary, desirable, or appropriate in order to effect the purpose of the foregoing resolutions.

     EXECUTED on the date indicated below, to be effective as of the date set forth above.

**MEMBERS**

EMERALD GROVE CAPITAL, LTD.

CONSENT OF MEMBERS  -1-

RECEIVED

MAR 2 4 2005

LEG0357

03/29/2005 15:08 FAX 7818716831                                    ☑005/009

By:    EMERALD GROVE MANAGEMENT,
       LLC, its General Partner

Date: 3/16/05                     By: _____
                                       Carl W. Forsythe, President

                    CHRIS CRAWFORD, Individually

Date: 3/24/05                     By: _____
                                       Chris Crawford

                    JOHN P. BOODEE, Individually

Date: 3/17/05                     By: _____
                                       John P. Boodee

CONSENT OF MEMBERS  -2-                          RECEIVE.

                                                 MAR 2 4 2005

03/29/2005 15:08 FAX 7818716631                                    ☑ 006/009

 **GRW**

GLOBE RUBBER WORKS, INC.
254 Booch Street
Rockland, Massachusetts
02370-0188
USA

Pioneers in Formulating
The Non-Metallic Age...Est. 1800

781-871-3700
Fax 781-871-6631

Ms. Elonie Smith
Client Service Center, MIR1
The Lincoln National Life Insurance Company
Post Office Box 5048
Hartford, CT 06102

  Re: Beneficiary Change
    Policy/Certificate No: G1637194
    Insured: Richard C. Somerville

Dear Ms. Smith:

  Pursuant to your letter dated March 10, 2005, I have attached the Annual Report that was filed with the Commonwealth of Massachusetts as evidence that I, Richard C. Somerville, was the sole Owner/Officer of Globe Rubber Works, Inc.

Very truly yours,

Richard C. Somerville
Globe Rubber Works, Inc.

# Exhibit 13

30/2005 16:53 FAX 7818716631                                                          ☒001



**Globe Composite Solutions**
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)

Composite Solutions, Ltd.



| To: Elonie Smith | From: Roger Tarnacki |
|---|---|
| Fax 860-466-2835 | Pages: 2 |
| Phone: | Date: 3/30/05 |
| Re: Policy G1639194 | CC: |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Elonie,

Copy of signed letter from Richard Somerville.

Please let me know if all paperwork is complete.

Thanks

Roger

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above address by mail.

RECEIVED TIME  MAR. 30.   4:49PM          PRINT TIME  MAR. 31.   6:28AM    LFG0271

03/30/2005 16:54 FAX 7818718631                                    ☑002

 **GRW**
GLOBE RUBBER WORKS, INC.
254 Beech Street
Rockland, Massachusetts
02370-0188
USA

Pioneers in Formulating
The Non-Metallic Age...Est. 1950

781-871-3700
Fax 781-871-6631

Ms. Elonie Smith
Client Service Center, MIR1
The Lincoln National Life Insurance Company
Post Office Box 5048
Hartford, CT 06102

     Re:    Beneficiary Change
              Policy/Certificate No: G1637194
              Insured: Richard C. Somerville

Dear Ms. Smith:

     Pursuant to your letter dated March 10, 2005, I have attached the
Annual Report that was filed with the Commonwealth of Massachusetts as
evidence that I, Richard C. Somerville, was the sole Owner/Officer of Globe
Rubber Works, Inc.

Very truly yours,

*Richard C Somerville*

Richard C. Somerville
Globe Rubber Works, Inc.

# Exhibit 14

# AMERICAN GENERAL LIFE

### Insurance Company

Home Office:
Houston, Texas

2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77251

(713) 522-1111

RICHARD C SOMERVILLE
POLICY NUMBER: U10005220L



**A STOCK COMPANY**

A Subsidiary of American General Corporation

WE WILL PAY THE DEATH BENEFIT PROCEEDS to the Beneficiary if the Insured dies prior to the Maturity Date and while this policy is in force. Payment will be made after we receive due proof of the Insured's death, and will be subject to the terms of this policy.

WE WILL PAY THE CASH SURRENDER VALUE of this policy to the Owner on the Maturity Date if the Insured is living on that date.

The consideration for this contract is the application and payment of the first premium. The first premium must be paid on or before delivery of this policy.

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date. Premium payments are flexible and payable to the Maturity Date. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. NONPARTICIPATING--NOT ELIGIBLE FOR DIVIDENDS.

### NOTICE OF TWENTY DAY RIGHT TO EXAMINE POLICY

You may return this policy within twenty days after delivery if you are not satisfied with it for any reason. The policy may be returned to us or to the agent through whom it was purchased. Upon surrender of the policy within the twenty day period, it will be void from the beginning, and we will refund any premium paid.

SIGNED AT THE HOME OFFICE ON THE DATE OF ISSUE.

Secretary

President

### FLEXIBLE PREMIUM ADJUSTABLE LIFE
### READ YOUR POLICY CAREFULLY

95325

0045813

## INDEX

| | |
|---|---|
| Accumulation Value | |
|   On the Date of Issue | 8 |
|   On Each Deduction Day | 8 |
|   On Other than a Deduction Day | 9 |
| Age or Sex Incorrectly Stated | 14 |
| Annual Report | 15 |
| Beneficiary and Proceeds | 12 |
| Calculations—How We Calculate | |
|   The Monthly Deduction | 9 |
|   The Cost of Insurance—Basic Policy | 9 |
| Cash Value | 9 |
| Changing Your Insurance Policy | |
|   Change of Ownership or Beneficiary | 12 |
|   Changing the Death Benefit Option | 8 |
|   Changing the Specified Amount | 7 |
|   Changing the Maturity Date | 8 |
| Contract | 6 |
| Cost of Insurance Rate Table | 17 |
| Date of Issue | 3, 6 |
| Death Benefit and Death Benefit Options | 7 |
| Grace Period | 10 |
| Incontestability | 14 |

| | |
|---|---|
| Interest Rate | |
|   In Calculating Accumulation Values | 10 |
|   For Policy Loans | 12 |
| Maturity Date | 3 |
| Monthly Administration Fee | 3, 10 |
| Monthly Expense Charge Table | 5 |
| Monthly Guarantee Premium Provision | 11 |
| Monthly Guarantee Premium Rate Table | 4 |
| Net Premium | 6 |
| Net Premium Percentage | 3 |
| Policy Loans | 12 |
| Policy Values Provision | 8 |
| Owner, Rights | 6 |
| Payment Options | 12-14 |
| Premium Payments | 6 |
| Reinstatement | 15 |
| Specified Amount | 3 |
| Suicide Exclusion | 14 |
| Surrender, Full or Partial | 11 |
| Surrender Charge Provision | 9 |
| Surrender Charge Table | 18-20 |
| When This Policy Terminates | 15 |

**Company Reference.** "We", "our", "us", or "Company" means American General Life Insurance Company.

**"You", "Your."** The words "You" or "Your" mean the Owner of this policy.

**Premium Class.** The Premium Class of this policy is shown on page 3 as one or a combination of the following terms:

**Select.** The term "Select" means the Insured qualifies as an above standard mortality risk.

**Preferred.** The term "Preferred" means the cost of insurance is based on the Insured being a non-user of tobacco.

**Standard.** The term "Standard" means the cost of insurance is based on the Insured being a tobacco user. All policies issued to juveniles at issue age 17 or less are designated as "Standard". This means that cost of insurance rates stated in the policy for insurance ages 18 and above are rates for tobacco users. (Rates are not classified on the basis of the Insured being a user or non-user of tobacco at ages 0 through 17.)

**Special.** The term "Special" means an extra premium is being charged due to the Insured's health, occupation or avocation.

**Rates on Policy Anniversary Nearest Insured's 18th Birthday (For Insured's Age 17 or Less on Date of Issue).** If the Insured's age, nearest birthday, is 17 or less on the Date of Issue of this policy, rates will be based on the Insured being a tobacco user starting on the policy anniversary nearest the Insured's 18th birthday, except as follows. Prior to the anniversary nearest the Insured's 18th birthday, a written statement, signed by the Owner and the Insured, may be submitted to the Company requesting that rates for non-users of tobacco be made effective. The statement must include the date the Insured last used tobacco, or state that the Insured has never used tobacco, whichever applies. If the request is approved, rates for non-users of tobacco will be made effective on the policy anniversary nearest the Insured's 18th birthday. Otherwise, tobacco user rates will apply.

**Payment of Interest on Proceeds Not Paid Within 30 Days After Due Proof of Death is Furnished To The Company.** If proceeds under this policy are not paid within 30 days after due proof of death of the Insured has been furnished to the Company, the Company will pay interest on such proceeds at the same rate as paid on proceeds left on deposit with the Company.

## NOTICE
This Policy Is A Legal Contract Between
The Policyowner And The Company.

0045814

SCHEDULE OF BENEFITS

| BASIC POLICY | MONTHLY COST | YEARS PAYABLE |
|---|---|---|
| ADJUSTABLE LIFE | SEE PAGE 17 | 35 |

ADDITIONAL BENEFITS PROVIDED BY RIDERS

NONE

TERM CONVERSION CREDIT (FIRST YEAR ONLY): $2,800.00

SCHEDULE OF PREMIUMS

PREMIUM CLASS:                                          PREFERRED
INITIAL PREMIUM:                                       $6,136.72
PLANNED PERIODIC PREMIUM:                  $4,736.72 PAYABLE SEMI-ANNUALLY
DEDUCTION DAY:                                           19TH DAY OF EACH MONTH

MINIMUM DEATH BENEFIT AMOUNT (AFTER A          $100,000
    DECREASE IN SPECIFIED AMOUNT)

MONTHLY GUARANTEE PREMIUM (SEE MONTHLY          $700.00
    GUARANTEE PREMIUM PROVISION THAT
    GUARANTEES THIS POLICY WILL NOT
    TERMINATE DURING THE GUARANTEE
    PERIOD UNDER CERTAIN CIRCUMSTANCES)

MONTHLY EXPENSE CHARGE FOR FIRST 4 YEARS          $175.00
(SEE MONTHLY EXPENSE CHARGE TABLE FOR RATES
APPLYING TO INCREASES IN SPECIFIED AMOUNT)

|  | GUARANTEED | INITIAL |
|---|---|---|
| NET PREMIUM PERCENTAGE | 93.00% | 94.50% |
| MONTHLY ADMINISTRATION FEE | $7.00 | $5.00 |

SURRENDER CHARGES ARE DESCRIBED IN THE PAGES THAT FOLLOW.  READ YOUR
POLICY CAREFULLY.

BASED ON GUARANTEED CHARGES, GUARANTEED INTEREST RATES AND YOUR PLANNED
PERIODIC PREMIUM, THE POLICY WILL REMAIN IN FORCE UNTIL  MARCH 2003.

POLICY DATA

| | | |
|---|---|---|
| INSURED: RICHARD C SOMERVILLE | POLICY NUMBER: | U10005220L |
| INSURANCE AGE:  65 | DATE OF ISSUE: | SEPTEMBER 19, 1998 |
| INITIAL SPECIFIED AMOUNT:  $250,000 | MATURITY DATE: | SEPTEMBER 19, 2033 |
| DEATH BENEFIT OPTION: 1 | | |

THIS IS A MASSACHUSETTS CONTRACT

95325                                    PAGE 3

0045815

PREPARED FOR:    GLOBE RUBBER WORKS INC
POLICY NUMBER:    U10005220L

TABLE OF MONTHLY GUARANTEE PREMIUMS
PER $1,000 OF SPECIFIED AMOUNT

| ISSUE AGE | | | ISSUE AGE | | | ISSUE AGE | | |
|---|---|---|---|---|---|---|---|---|
| 65 | $ | 2.79999 | 71 | $ | 4.03557 | 76 | $ | 5.49813 |
| 66 | | 2.99534 | 72 | | 4.28045 | 77 | | 5.85627 |
| 67 | | 3.18720 | 73 | | 4.55534 | 78 | | 6.26115 |
| 68 | | 3.39068 | 74 | | 4.86022 | 79 | | 6.69604 |
| 69 | | 3.58906 | 75 | | 5.17673 | 80 | | 7.14255 |
| 70 | | 3.80231 | | | | | | |

FOR A SPECIAL (RATED) PREMIUM CLASS WE WILL ADJUST THE RATES TO REFLECT THE MORTALITY RISK.

0045816

PREPARED FOR:    GLOBE RUBBER WORKS INC

POLICY NUMBER:    U10005220L

TABLE OF MONTHLY EXPENSE CHARGES FOR THE FIRST FOUR YEARS
PER $1,000 OF SPECIFIED AMOUNT
(ALSO APPLIES TO AN INCREASE IN SPECIFIED AMOUNT DURING
FIRST FOUR YEARS OF THE INCREASE)

| ISSUE AGE | | ISSUE AGE | | ISSUE AGE | |
|---|---|---|---|---|---|
| 65 | 0.70000 | 71 | 1.00889 | 76 | 1.37453 |
| 66 | 0.74884 | 72 | 1.07011 | 77 | 1.46407 |
| 67 | 0.79680 | 73 | 1.13884 | 78 | 1.56529 |
| 68 | 0.84767 | 74 | 1.21506 | 79 | 1.67401 |
| 69 | 0.89727 | 75 | 1.29418 | 80 | 1.78564 |
| 70 | 0.95058 | | | | |

THE MONTHLY EXPENSE CHARGE FOR THE INITIAL SPECIFIED AMOUNT FOR THE FIRST
FOUR YEARS IS SHOWN ON PAGE 3 OF THE POLICY. TO DETERMINE THE MONTHLY
EXPENSE CHARGE FOR AN INCREASE IN SPECIFIED AMOUNT, MULTIPLY THE APPROPRIATE
RATE SHOWN ABOVE BY THE NUMBER OF THOUSANDS OF INCREASE IN SPECIFIED AMOUNT.
THE RESULT WILL BE DEDUCTED FROM THE ACCUMULATION VALUE MONTHLY DURING THE
FIRST FOUR YEARS OF THE INCREASE.

0045817

**Contract.** Your policy is a legal contract that you have entered into with us. You have paid the first premium and have submitted an application, a copy of which is attached. In return, we promise to provide the insurance coverage described in this policy.

The entire contract consists of:

1.  The basic policy;

2.  The riders that add benefits to the basic policy, if any;

3.  Endorsements, if any; and

4.  The attached copy of your application, and any amendments or supplemental applications.

**Date of Issue.** The Date of Issue of this policy is the date on which the first premium is due. The Date of Issue is also the date from which all policy years, anniversaries, and monthly deduction dates are determined.

**Owner.** The Owner is as stated in the application unless later changed. During the Insured's lifetime, the Owner may exercise every right the policy confers or we allow (subject to the rights of any assignee of record, and to any endorsement on this policy limiting such rights). If you die before the Insured, and you have not named a successor Owner, all of the rights belong to your estate.

**Rights of the Owner.** As the Owner, you may exercise the rights given by this policy. These include:

1.  The right to make flexible premium payments according to the Premium Payments section;

2.  The right to choose the Death Benefit Option according to the Death Benefit Proceeds and Death Benefit Options sections;

3.  The right to apply for a change in the Specified Amount, Death Benefit Option and Maturity Date subject to the section entitled "Changing Your Insurance Policy";

4.  The right to a cash benefit and continued coverage according to the Policy Values Provision;

5.  The right to borrow money according to the Policy Loans section;

6.  The right to change the Owner or Beneficiary according to the Beneficiary and Proceeds section;

7.  The right to choose how proceeds will be paid according to the Payment Options section;

8.  The right to assign the policy as security for an obligation according to the General Provisions section;

9.  The right to apply for reinstatement of coverage as provided in the General Provisions section.

## PREMIUM PAYMENTS

All premiums after the first are payable in advance. Premium payments are flexible. This means you may choose the amount and frequency of payments.

The actual amount and frequency of premium payments will affect the Cash Values and the amount and duration of insurance. Please refer to the Policy Values Provision for a detailed explanation.

**Planned Periodic Premiums.** The amount and frequency of the Planned Periodic Premiums you selected are shown on page 3. You may request a change in the amount and frequency. We may limit the amount of any increase.

**Unscheduled Additional Premiums.** You may pay additional premiums at any time before the Maturity Date shown on page 3. We may limit the number and amount of additional premiums.

**Maximum Premium.** The sum of the premiums paid under this policy may not exceed the guideline premium limitation as defined by Section 7702, Internal Revenue Code of 1986 (or as later amended).

Any portion of any premium paid which is determined to be in excess of the limit will be refunded.

**Where to Pay.** You may make your payments to us at our home office or to an authorized agent. A receipt signed by an officer of the Company will be furnished upon request.

**Net Premium.** The Net Premium is the premium paid multiplied by the Net Premium Percentage. The Net Premium Percentage is adjustable, but will never be less than the guaranteed Net Premium Percentage shown on page 3.

0045818

## DEATH BENEFIT AND DEATH BENEFIT OPTIONS

**Death Benefit Proceeds.** If the Insured dies prior to the Maturity Date and while this policy is in force, we will pay the Death Benefit Proceeds to the Beneficiary. The Death Benefit Proceeds will be subject to:

1. The Death Benefit Option in effect on the date of death; and

2. Any increases or decreases made to the Specified Amount. The Initial Specified Amount is shown on page 3.

Guidelines for changing the Death Benefit Option or the Specified Amount will be found in the section entitled "Changing Your Insurance Policy."

The Death Benefit Proceeds will be the Death Benefit amount reduced by any outstanding policy loan and will be subject to the other provisions of the "Beneficiary and Proceeds" section.

**Death Benefit Option.** The Death Benefit Option which you have chosen is shown on page 3 as either Option 1 or Option 2.

**Option 1.** If you have chosen Option 1 the Death Benefit Amount will be the greater of:

1. The Specified Amount on the date of death; or

2. The Accumulation Value on the date of death multiplied by the Death Benefit Percentage Factor for the Insured's age nearest birthday as shown in the table that follows.

**Option 2.** If you have chosen Option 2, the Death Benefit Amount will be the greater of:

1. The Specified Amount plus the Accumulation Value on the date of death; or

2. The Accumulation Value on the date of death multiplied by the Death Benefit Percentage Factor for the Insured's age nearest birthday as shown in the table that follows.

### Table of Death Benefit Percentage Factors

| Att'd Age | Percentage Factor | Att'd Age | Percentage Factor | Att'd Age | Percentage Factor | Att'd Age | Percentage Factor |
|---|---|---|---|---|---|---|---|
| 0-40 | 250% | 50 | 185% | 60 | 130% | 70 | 115% |
| 41 | 243 | 51 | 178 | 61 | 128 | 71 | 113 |
| 42 | 236 | 52 | 171 | 62 | 126 | 72 | 111 |
| 43 | 229 | 53 | 164 | 63 | 124 | 73 | 109 |
| 44 | 222 | 54 | 157 | 64 | 122 | 74 | 107 |
| 45 | 215 | 55 | 150 | 65 | 120 | 75-90 | 105 |
| 46 | 209 | 56 | 146 | 66 | 119 | 91 | 104 |
| 47 | 203 | 57 | 142 | 67 | 118 | 92 | 103 |
| 48 | 197 | 58 | 138 | 68 | 117 | 93 | 102 |
| 49 | 191 | 59 | 134 | 69 | 116 | 94 | 101 |
|  |  |  |  |  |  | 95+ | 100 |

## CHANGING YOUR INSURANCE POLICY

You may request a change in the Specified Amount or Death Benefit Option at any time except that a decrease in the Specified Amount may not become effective prior to the end of the first policy year. Your request must be submitted to our home office in writing in a form acceptable to us. This policy must accompany the request.

**Increasing The Specified Amount.** We will require a supplemental application and evidence of insurability satisfactory to us for any increase in the Specified Amount. An increase will be effective on the monthly deduction day on or next following the date the application for increase is approved by us. The effective date will appear in an endorsement to this policy.

**Decreasing the Specified Amount.** Any decrease will go into effect on the monthly deduction day following the day we receive the request. The Death Benefit Amount remaining in effect after any decrease cannot be less than the greater of:

1. The Minimum Death Benefit Amount shown on page 3; or

2. Any Death Benefit Amount which, upon comparing such amount to the sum of premiums already paid, would result in an excess of premium payments. (See the "Maximum Premium" provision.)

Any such decrease will be applied in the following order:

1. Against the Specified Amount provided by the most recent increase;

2. Against the next most recent increases successively;

3. Against the Specified Amount provided under the original application.

Any reduction in Specified Amount will be subject to any applicable Surrender Charges on a pro-rata basis, and the remaining surrender charge will be reduced proportionately.

95325

0045819

The Surrender Charges stated on pages 18-20 will apply to each $1,000 of decrease in Specified Amount. The Accumulation Value will be reduced by the amount of any Surrender Charge. However, if such charge would result in a negative Cash Value, the Specified Amount decrease will not be allowed.

**Changing the Death Benefit Option.** You may request a change in the Death Benefit Option you have chosen.

1. If you request a change from Option 1 to Option 2: The new Specified Amount will be the Specified Amount, prior to change, less the Accumulation Value as of the effective date of the change, but not less than zero.

2. If you request a change from Option 2 to Option 1: The new Specified Amount will be the Death Benefit Amount as of the effective date of the change.

We will not require evidence of insurability for a change in the Death Benefit Option. The change will go into effect on the monthly deduction day following the date we receive your request for change.

**Changing the Maturity Date.** You may request that the Maturity Date shown on page 3 be changed to any other policy anniversary which is:

1. On or after the 10th policy anniversary; and

2. Before the policy anniversary nearest the Insured's 100th birthday.

**Changing the Terms of Your Policy.** Any change in your policy must be approved by one of our officers. No agent has the authority to make any changes or waive any of the terms of your policy.

## POLICY VALUES PROVISION

### ACCUMULATION VALUE

The Accumulation Value is based on two types of premiums:

1. Scheduled Premiums: All premiums paid that do not exceed an amount equal to 12 Monthly Guarantee Premiums in a policy year; and

2. Supplemental Premiums: All premiums paid that exceed an amount equal to 12 Monthly Guarantee Premiums in a policy year.

All premiums are subject to the same expense charges. However, the portion of the Accumulation Value resulting from the payment of Supplemental Premiums (Fund Value) will not be subject to surrender charges for a full surrender. Therefore, the Fund Value is maintained separately. If the sum of premiums paid, excluding Supplemental Premiums, does not equal or exceed the sum of Monthly Guarantee Premiums required on such date, an amount equal to the premium required, multiplied by the Net Premium Percentage will be withdrawn from the Fund Value. Partial Surrenders of the Fund Value may be made, subject to the provisions of this policy regarding partial surrenders. We reserve the right to limit the amount or number of Supplemental Premiums.

**On the Date of Issue.** The Accumulation Value on the Date of Issue will be determined as follows:

1. We will multiply the first premium by the Initial Net Premium Percentage. (The result will be equal to your Accumulation Value before we make the first Monthly Deduction);

2. We will then subtract the Monthly Deduction for the first policy month; (See "How We Calculate a Monthly Deduction.")

The first deduction day is the Date of Issue. The monthly deduction day is shown on page 3.

**On Each Deduction Day.** On each deduction day after the Date of Issue, we will determine the Accumulation Value as follows:

1. First, we will take the Accumulation Value as of the last deduction day; and

2. Add the interest earned for the month on the excess of the Accumulation Value on the last deduction day over any Partial Surrenders made since the last deduction day; and

3. Add all premiums received since the last deduction day multiplied by the Net Premium Percentage then in effect; and

95325                          Page 8

4. Subtract any Partial Surrender made since the last deduction day; and

5. Subtract the Monthly Deduction for the policy month following the monthly deduction day. (See "How We Calculate a Monthly Deduction.")

**On Any Day Other Than a Deduction Day.** The Accumulation Value on any day other than a deduction day will be:

1. The Accumulation Value as of the last deduction day;

2. Less any Partial Surrenders paid since the last deduction day;

3. Plus all premiums received since the last deduction day multiplied by the Net Premium Percentage then in effect.

**Cash Value.** The Cash Value of this policy will be equal to the Accumulation Value less the Surrender Charge, if any.

**Cash Surrender Value.** The Cash Surrender Value of this policy will be equal to the Cash Value less any indebtedness.

**Monthly Deductions May Be Made Only if There Is Sufficient Cash Surrender Value (Unless Policy Is Being Continued Under the Monthly Guarantee Premium Provision).** Unless this policy is being continued in force under the Monthly Guarantee Premium provision, a monthly deduction from the Accumulation Value may be made only if the Cash Surrender Value is equal to or greater than the Monthly Deduction. The Accumulation Value will be reduced by the amount of each Monthly Deduction which will cause an equal reduction in the Cash Surrender Value. If the Cash Surrender Value on a deduction day is not sufficient to meet the Monthly Deduction for the current month, this policy will be subject to the "Grace Period" and "Monthly Guarantee Premium" provisions.

**Surrender Charge.** Surrender Charges for the Initial Specified Amount will apply if the Initial Specified Amount is surrendered or reduced during the Surrender Charge Period. Surrender Charges for any increases in Specified Amount will apply if such increases are surrendered or reduced during the Surrender Charge Period of each increase. The Surrender Charge Period will vary according to the age at issue (or age on the date of an increase) as shown in the table on pages 18-20. The table on pages 18-20 also lists the surrender charge rates per $1,000 of Specified Amount at all issue ages.

You may make a request for surrender at any time during the Insured's lifetime before the Maturity Date.

The amount being surrendered or reduced will terminate on the monthly deduction day on or next following the date we receive the request for surrender or reduction.

**How We Calculate a Monthly Deduction.** Each Monthly Deduction includes:

1. The cost of insurance provided by the basic policy; and

2. The cost of insurance for benefits provided by riders; and

3. The Monthly Administration Fee; and

4. During the first four policy years, a Monthly Expense Charge. (This charge also applies to the amount of any increase in Specified Amount during the first four years of such increase.)

**How We Calculate the Cost of Insurance for the Basic Policy.** We calculate the cost of insurance at the beginning of each policy month on the deduction day. The cost of insurance is determined as follows:

1. Divide the Death Benefit Amount on the deduction day by 1.003675; and

2. Reduce the result by the amount of Accumulation Value on the deduction day before the cost of insurance deduction is taken, and after the Monthly Expense Charge, if any, and the Monthly Administration Fee are deducted;

3. Multiply the difference by the cost of insurance rate per $1,000 of net risk amount as provided in the "Cost of Insurance Rate" provision; and

4. Divide the result by 1000.

If Option 1 is in effect, and there have been increases in the Specified Amount, the Accumulation Value will first be considered part of the Initial Specified Amount. If the Accumulation Value exceeds the Initial Specified Amount, the excess will be considered part of prior Specified Amount increases in the order of the increases.

**Cost of Insurance for Benefits Provided by Riders.** The cost of insurance for benefits provided by riders will be as stated on page 3 or in an endorsement.

0045821

**Monthly Administration Fee.** An administration fee will be deducted monthly. The amount of the monthly fee may be adjusted, but will never be greater than the guaranteed Monthly Administration Fee shown on page 3.

**First Four Years Monthly Expense Charge.** A Monthly Expense Charge will be deducted during the first four policy years, and during the first four years of any increase in Specified Amount. The Monthly Expense Charge for the first four years for the Initial Specified Amount is shown on page 3. The Monthly Expense Charge for the first four years for any increase in Specified Amount will be calculated by multiplying the appropriate rate shown on page 5 by the number of thousands of such increase.

**Cost of Insurance Rate.** The cost of insurance rate for the Initial Specified Amount, and for each Specified Amount increase, is based on the Insured's:

1. Sex;
2. Age nearest birthday on each policy anniversary; and
3. Premium class shown on page 3, associated with the Initial Specified Amount and each increase in the Specified Amount.

The guaranteed monthly cost of insurance rates are shown in the table on page 17. We can use cost of insurance rates that are lower than the guaranteed rates. Any change in rates will apply to all policies in the same rate class as this policy. The rate class of this policy is determined on its Date of Issue according to:

1. The calendar year of issue and policy year;
2. The plan of insurance;
3. The amount of insurance; and
4. The age, sex and mortality classification of the Insured.

**Changes in Rates, Charges and Fees.** This policy does not participate in our profits or surplus. Any redetermination of the cost of insurance rates, interest rates, expense charges, net premium percentage or monthly administration fee will be based on our expectations as to investment earnings, mortality, persistency and expenses. We will not change these charges in order to recoup any prior losses.

**Interest Rate.** The guaranteed interest rate used in calculating Accumulation Values is .3675% per month, compounded monthly. This is equivalent to 4.5% per year, compounded annually. We can use interest rates greater than the guaranteed rates to calculate Accumulation Values. The rate used to credit interest to the Fund Value may be different than the rate used to credit interest to the balance of the Accumulation Value. We will apply a different rate of interest to that portion of the Accumulation Value which equals the amount of the policy loan. The rate applied to amounts offset by policy loans will be at an annual effective rate of not less than 4.5% nor more than 6.5%.

At the end of the first month following the fifth policy anniversary, and at the end of each month thereafter, this policy will be eligible for a current interest bonus. The bonus will be credited monthly to the Accumulation Value subject to the following guidelines:

1. The declared annual interest rate at the end of each month must be greater than the guaranteed annual interest rate of 4.5%; and
2. The bonus credited each month will increase the declared annual interest rate applied to the Accumulation Value not offset by a policy loan by 1%.

**Grace Period.** If the Cash Surrender Value on a deduction day is not enough to meet the Monthly Deduction for the current month, this policy will remain in force during the 61-day period that follows. If the Cash Surrender Value on a policy anniversary is not enough to pay any loan interest due, this policy will remain in force during the 61-day period that follows. Such 61-day period is referred to in this policy as the "Grace Period." There is no Grace Period for the initial monthly deduction.

If the required premium is not paid by the end of the Grace Period this policy will terminate without value. However, we will give you at least 31 days notice prior to termination that your policy is in the Grace Period and advise you of the amount of premium required to keep your policy in force. Such 31 days prior notice will be sent to you at your last known address, and to the assignee of record, if any. If death occurs during the Grace Period, monthly deductions through the policy month in which death occurred will be deducted from the proceeds.

If a surrender request is received within 31 days after the Grace Period commences, the Cash Surrender Value payable will not be less than the

0045822

Cash Surrender Value on the monthly deduction day the Grace Period commenced. The Monthly Deduction for the policy month following such monthly deduction day will not be subtracted in the calculation of such Cash Surrender Value.

Monthly Guarantee Premium. The Monthly Guarantee Premium for the Initial Specified Amount and any benefit riders in force on the Date of Issue is shown on page 3. The Monthly Guarantee Premium Period (Guarantee Period) on the Date of Issue will be 5 years. This policy will not terminate during the Guarantee Period if, on each monthly deduction day within the Guarantee Period the sum of premiums paid equals or exceeds:

1.  the sum of the Monthly Guarantee Premiums from the start of the Guarantee Period, including the current month; plus

2.  any partial surrenders and any increase in the loan amount since the start of the Guarantee Period.

If the Specified Amount is increased, a new Monthly Guarantee Premium will be calculated as follows: We will use rates for the Insured's attained age for the amount of the increase, and add the Monthly Guarantee Premium(s) previously calculated for the Initial Specified Amount and each prior increase, plus the cost of any benefit riders. A new 5 year Guarantee Period will begin during which the policy will not terminate if, during the new Guarantee Period, the above paid premium conditions are met. If the Specified Amount is decreased, the Monthly Guarantee Premium will be decreased. Such decrease will not affect the Guarantee Period then in effect, if any.

If a benefit rider is added or increased the Monthly Guarantee Premium will be increased. If a benefit rider is removed or decreased the Monthly Guarantee Premium will be decreased accordingly. Neither change will affect the Guarantee Period then in effect, if any.

If a policy is reinstated with no change to the Specified Amount, Premium Class or benefit riders, if any, the Monthly Guarantee Premium upon reinstatement will be the same as it was when the policy lapsed. Reinstatement will not extend or otherwise change the Monthly Guarantee Premium Period that was in effect when the policy lapsed.

Full Surrender. Subject to the Beneficiary and Proceeds section, you may return your policy to us and request its Cash Surrender Value. The Cash Surrender Value will be calculated as of the day we receive your request. If surrender takes place within 31 days after a policy anniversary, the Cash Value will not be less than on that anniversary.

Partial Surrender. At any time after the first policy year, you may request withdrawal of a portion of the Cash Surrender Value of the policy. Your request must be made in writing prior to the Maturity Date during the Insured's lifetime.

A partial surrender will result in a reduction of the Cash Value, Accumulation Value and the Death Benefit Amount. The Cash and Accumulation Values will be reduced by the amount of partial surrender benefit. The reduced Death Benefit Amount will be determined in accordance with the Death Benefit Option provision. If your Death Benefit Option is Option 1, the Specified Amount will be reduced by the amount of the partial surrender. (The reduced amount will not be less than zero.) The Death Benefit Amount remaining after this reduction must be no less than the Minimum Death Benefit Amount shown on page 3.

There will be a charge not to exceed $50.00 for each partial surrender in addition to the amounts shown in the Table of Surrender Charges. Any partial surrender that causes a reduction in Specified Amount will be subject to any applicable surrender charges on a pro-rata basis, and the remaining surrender charge will be reduced proportionally.

Payment of Cash Value Benefit. We can delay payment of Cash Surrender Values for up to 6 months, or the period allowed by law, whichever is less. However, we cannot delay payment of a partial surrender if the amount is to be used to pay a premium to us.

Period of Insurance Coverage if Amount or Frequency of Premium Payments Is Reduced or if Premium Payments Are Discontinued. If you reduce the amount or frequency of premium payments, or if you discontinue payment of premiums and do not surrender this policy, we will continue making Monthly Deductions (as long as there is sufficient Cash Surrender Value to make such deductions) until the Maturity Date. This policy will remain in force until the earlier of the following dates:

1.  The Maturity Date (if there is sufficient Cash Surrender Value to make Monthly Deductions to that date); or

2.  The end of the Grace Period.

0045823

## POLICY LOANS

You may borrow from us at any time while this policy is in force, an amount which is equal to or less than the policy's loan value. The loan value will be the Cash Value less:

1. Any prior outstanding loan; and

2. Interest on the amount to be borrowed to the next policy anniversary.

**Loan Interest.** The Annual Policy Loan Interest Rate is 6.1%. On each policy anniversary, loan interest for the next year is due in advance. Interest not paid when due will be added to the loan.

**How You May Repay a Policy Loan.** You may repay all or part of a policy loan at any time, except that:

1. Repayment may be made only while this policy is in force and prior to the death of the Insured; and,

2. A partial repayment must be at least $10.00.

At any time your policy loan exceeds the Cash Value, this policy will lapse. However, at least 31 days prior notice must be mailed by us to your last known address and to the assignee of record, if any.

**We Can Delay Payment.** We can delay lending you money for up to 6 months, or the period allowed by law, whichever is less. However, we cannot delay lending you money if the amount is to be used to pay a premium to us.

**Obtaining a Loan.** You may obtain a policy loan by written request and assignment of the policy as sole security for the loan.

## BENEFICIARY AND PROCEEDS

**Beneficiary.** The Beneficiary as named in the application, or later changed by you, will receive the proceeds upon the death of the Insured. Unless you have stated otherwise, proceeds will be paid as follows:

1. If any Beneficiary dies before the Insured, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests.

2. If no Beneficiary survives the Insured, proceeds will be paid to you, as Owner, if you are then living; otherwise proceeds will be paid to your estate.

**Change of Ownership Or Beneficiary.** You may change the Owner or the Beneficiary at any time during the lifetime of the Insured unless the previous designation provides otherwise. To do so, send a written request to our home office in a form acceptable to us. The change will go into effect when we have recorded the change. However, after the change is recorded, it will be deemed effective as of the date of your written request for change. The change will be subject to

any payment made or action taken by us before the request is recorded.

**Common Disaster.** If we cannot determine whether a Beneficiary or the Insured died first in a common disaster, we will assume that the Beneficiary died first. Proceeds will be paid on this basis unless an endorsement to this policy provides otherwise.

**Proceeds.** Proceeds means the amount payable on:

1. The Maturity Date;

2. Exercise of the full surrender benefit; or

3. The Insured's death.

The proceeds on the Maturity Date will be the Cash Surrender Value. The proceeds on the Insured's death will be the Death Benefit Amount less any outstanding policy loan.

All proceeds and partial surrender benefits are subject to the provisions of the Payment Options section and the other provisions of this policy.

## PAYMENT OPTIONS

Instead of being paid in one sum, all or part of the proceeds may be applied under any of the Payment Options described below. In addition to these options, other methods of payment may be chosen with our consent.

**Payment Contract.** When proceeds become payable under a Payment Option, a Payment Contract will be issued to each payee. The Payment Contract will state the rights and benefits of the payee. It will also name those who are to receive any balance unpaid at the death of the payee.

0045824

PAYMENT OPTIONS (Cont'd)

**Election of Options.** The Owner may elect or change any Payment Option while the Insured is living, subject to the provisions of this policy. This election or change must be in writing. Within 60 days after the Insured's death, a payee entitled to proceeds in one sum may elect to receive proceeds under any option.

**Option 1. Payments for a Specified Period:** Equal monthly payments will be made for a specified period. The Option 1 Table in this policy shows the monthly income for each $1,000 of proceeds applied.

**Option 2. Payments of a Specified Amount:** Equal monthly payments of a specified amount will be made. Each payment must be at least $60 a year for each $1,000 of proceeds applied. Payments will continue until the amount applied, with interest, has been paid in full.

**Option 3. Monthly Payments for Life:** Equal monthly payments will be made for a specified period, and will continue after that period for as long as the payee lives. The specified period may be 10, 15 or 20 years, or until total payments equal the amount of proceeds applied under this option. The Option 3 Table in this policy shows the monthly income for each $1,000 of proceeds applied.

At the time payments are to begin under this option, the payee may choose one of the following:

1. Monthly payments based on the Option 3 Table; or

2. Monthly payments equal to a monthly annuity based on our single premium immediate annuity rates then in use.

**Option 4. Proceeds Left at Interest:** Proceeds may be left on deposit with us for any period up to 30 years. Interest earned on the proceeds may be:

1. Left on deposit to accumulate at the rate of 3% compounded annually; or

2. Paid in installments at the rate for each $1,000 of proceeds of $30 annually, $14.89 semiannually, $7.42 quarterly or $2.47 monthly.

Upon the death of the payee, or at the end of the specified period, any balance left on deposit will be paid in a lump sum or under Options 1, 2 or 3.

**Interest Rates.** The guaranteed rate of interest for proceeds held under Payment Options 1, 2 and 4 is 3% compounded annually. We may credit interest at a higher rate. The amount of any increase will be determined by us.

**Payments.** The first payment under Options 1, 2 and 3 will be made when the claim for settlement has been approved. Payments after the first will be made according to the manner of payment chosen. Interest under Option 4 will be credited from the date of death and paid or added to the proceeds as provided in the Payment Contract.

**Availability of Options.** If the proposed payee is not a natural person, payment options may be chosen only with our consent.

If this policy is assigned, we will have the right to pay the assignee in one sum the amount to which the assignee is entitled. Any balance will be applied according to the option chosen.

The amount to be applied under any one option must be at least $2,000. The payment elected under any one option must be at least $20.

**Evidence That Payee is Alive.** Before making any payment under a Payment Option, we may ask for proof that the payee is alive. If proof is requested, no payment will be made or considered due until we receive proof.

**Death of a Payee.** If a payee dies, any unpaid balance will be paid as stated in the Payment Contract. If there is no surviving payee named in the Payment Contract, we will pay the estate of the payee:

1. Under Options 1 and 3, the value as of the date of death of the remaining payments for the specified period, discounted at 3% compounded annually;

2. Under Options 2 and 4, the balance of any proceeds remaining unpaid with accrued interest, if any.

**Withdrawal of Proceeds Under Options 1 or 2.** If provided in the Payment Contract, a payee will have the right to withdraw the entire unpaid balance under Options 1 or 2. Under Option 1, the amount will be the value of the remaining payments for the specified period discounted at 3% compounded annually. Under Option 2, the amount will be the entire unpaid balance.

95325

Page 13

0045825

## PAYMENT OPTIONS (Cont'd)

**Withdrawal of Proceeds Under Option 4.** A payee will have the right to withdraw proceeds left under Option 4 subject to the following rules:

1. The amount to be withdrawn must be $500 or more;

2. A partial withdrawal must leave a balance on deposit of $1,000 or more.

**Withdrawals May Be Deferred.** We may defer payment of any withdrawal for up to 6 months from the date we receive a withdrawal request.

**Assignment.** Payment Contracts may not be assigned.

**Change in Payment.** The right to make any change in payment is available only if it is provided in the Payment Contract.

**Claims of Creditors.** To the extent permitted by law, proceeds will not be subject to any claims of a Beneficiary's creditors.

## GENERAL PROVISIONS

**Assigning Your Policy.** During the lifetime of the Insured, you may assign this policy as security for an obligation. We will not be bound by an assignment unless it is received in writing at our home office in a form acceptable to us. Two copies of the assignment must be submitted. We will retain one copy and return the other. We will not be responsible for the validity of any assignment.

**Incontestability.** We rely on the statements made in the application for the policy and applications for any reinstatements or increases in Specified Amount. These statements, in the absence of fraud, are considered representations and not warranties. No statement may be used in defense of a claim under the policy unless it is in such applications.

Except as stated below, we cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the Date of Issue.

Exceptions: We cannot contest any claim related to an increase in Specified Amount after such increase has been in effect during the Insured's lifetime for 2 years.

If this policy is reinstated, we cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the date of reinstatement.

We can contest a reinstatement or an increase in Specified Amount only on the basis of the information furnished in the application for such reinstatement or increase.

This 2-year limitation does not apply to any Disability or Accidental Death Benefit, or to the nonpayment of premium.

**Suicide Exclusion.** If the Insured takes his or her own life, while sane or insane, within 2 years from the Date of Issue, we will limit the Death Benefit Proceeds to the premiums paid less any policy loans and less any partial cash surrenders paid.

If there are any increases in the Specified Amount (See the section entitled "Changing Your Insurance Policy") a new 2 year period shall apply to each increase beginning on the date of each increase. The Death Benefit Proceeds will be the costs of insurance associated with each increase.

When the laws of the state in which this policy is delivered require less than this 2 year period, the period will be as stated in such laws.

**Age or Sex Incorrectly Stated.** If the age or sex of the Insured as shown on the application is not correct, the benefit to be paid on the death of the Insured will be adjusted. The adjusted benefit will be calculated using the Accumulation Value on the date of death, the Monthly Deduction for the policy month of death, and cost of insurance rate(s) for the correct age, sex, and risk class. By age we mean age nearest birthday as of the Date of Issue.

**Statutory Basis of Policy Values.** The Cash Values of the policy are not less than the minimum values required by the law of the state where this policy is delivered. The calculation of the Cash Values includes interest at the annual rate of 4.5% and a charge for the cost of insurance, as shown in the Table of Guaranteed Monthly Cost of Insurance Rates.

95325-22

Page 14

0045826

## GENERAL PROVISIONS (Cont'd)

Calculation of minimum Cash Values and non-forfeiture benefits, and Guaranteed Cost of Insurance Rates are based on the Composite 1980 Commissioners Standard Ordinary Male or Female Mortality Table for the appropriate sex and age nearest birthday. A detailed statement of the method of computing values has been filed with the state insurance department where required.

**No Dividends.** This policy will not pay dividends. It will not participate in any of our surplus or earnings.

**Annual Report.** We will send you at least once a year an annual report which shows the following:

1. Premiums paid since the last report;

2. Expense charges deducted since the last report;

3. Interest credited to your Accumulation Value since the last report;

4. The cost of insurance deducted since the last report;

5. Partial surrender benefits paid to you since the last report;

6. The amount of any outstanding policy loan;

7. The current Cash Surrender and Accumulation Values.

**Illustrative Report.** At any time while this policy is in force, the Owner may request from us an illustration of contract values for the future. The values will be based on both guaranteed and then current assumptions. A reasonable fee, not to exceed $50.00, may be charged for additional reports requested in a policy year.

**When This Policy Terminates.** This policy will terminate if:

1. You request that this policy be terminated;

2. The Insured dies;

3. The policy matures;

4. The Grace Period ends and there is not sufficient Cash Surrender Value to cover a Monthly Deduction.

**Reinstatement.** "Reinstating" means placing your policy in force after it has terminated at the end of the grace period. We will reinstate this policy if we receive:

1. Your written request within five years after the end of the grace period and before the Maturity Date; and

2. Evidence of insurability satisfactory to us; and

3. Payment of enough premium to keep the policy in force for two months; and

4. Payment or reinstatement of any indebtedness.

The reinstated policy will be in force from the monthly deduction day on or following the date we approved the reinstatement application.

The original surrender charge schedule which appears on pages 18-20 will apply to a reinstated policy. The Accumulation Value at the time of reinstatement will be:

1. The Surrender Charge at the time of lapse; plus

2. The premium paid multiplied by the Net Premium Percentage; plus

3. Any loan repaid or reinstated; less

4. The monthly deduction for one month.

If a person other than the Insured is covered by an attached rider, coverage will be reinstated according to that rider.

**Rights Reserved By Us.** Upon notice to you, this policy may be modified by us, but only if such modification is necessary to make any changes as required by the Internal Revenue Code or by any other applicable law, regulation or interpretation in order to continue treatment of this policy as life insurance.

When required by law, we will obtain your approval of changes and we will gain approval from any appropriate regulatory authority.

95325–22

Page 15

0045827

## TABLES OF MONTHLY INSTALLMENTS FOR EACH $1,000 OF PROCEEDS

### OPTION 1 TABLE
### INSTALLMENTS FOR A SPECIFIED PERIOD

| Number of Years Payable | Amount of Monthly Installments | Number of Years Payable | Amount of Monthly Installments | Number of Years Payable | Amount of Monthly Installments | Number of Years Payable | Amount of Monthly Installments |
|---|---|---|---|---|---|---|---|
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 | 31 | $4.10 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 | 32 | 4.02 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 | 33 | 3.95 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 | 34 | 3.88 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 | 35 | 3.82 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 | 36 | 3.76 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.47 | 37 | 3.70 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 | 38 | 3.65 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 | 39 | 3.60 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 | 40 | 3.55 |

### OPTION 3 TABLE
### INSTALLMENTS FOR LIFE WITH SPECIFIED MINIMUM PERIOD

| AGE OF PAYEE | | GUARANTEED PERIOD | | | | AGE OF PAYEE | | GUARANTEED PERIOD | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Male | Female | 10 Years | 15 Years | 20 Years | Installment Refund | Male | Female | 10 Years | 15 Years | 20 Years | Installment Refund |
| 20* | 24* | $3.06 | $3.05 | $3.05 | $3.05 | 50 | 54 | $4.41 | $4.35 | $4.25 | $4.26 |
| 21 | 25 | 3.08 | 3.08 | 3.07 | 3.07 | 51 | 55 | 4.50 | 4.42 | 4.31 | 4.33 |
| 22 | 26 | 3.10 | 3.10 | 3.09 | 3.09 | 52 | 56 | 4.59 | 4.51 | 4.38 | 4.41 |
| 23 | 27 | 3.12 | 3.12 | 3.12 | 3.11 | 53 | 57 | 4.69 | 4.59 | 4.44 | 4.49 |
| 24 | 28 | 3.15 | 3.15 | 3.14 | 3.13 | 54 | 58 | 4.79 | 4.68 | 4.51 | 4.58 |
| 25 | 29 | 3.17 | 3.17 | 3.17 | 3.16 | 55 | 59 | 4.90 | 4.77 | 4.58 | 4.67 |
| 26 | 30 | 3.20 | 3.20 | 3.19 | 3.18 | 56 | 60 | 5.01 | 4.86 | 4.65 | 4.76 |
| 27 | 31 | 3.23 | 3.23 | 3.22 | 3.21 | 57 | 61 | 5.13 | 4.96 | 4.72 | 4.87 |
| 28 | 32 | 3.26 | 3.25 | 3.25 | 3.24 | 58 | 62 | 5.25 | 5.06 | 4.79 | 4.97 |
| 29 | 33 | 3.29 | 3.28 | 3.28 | 3.27 | 59 | 63 | 5.39 | 5.16 | 4.85 | 5.08 |
| 30 | 34 | 3.32 | 3.32 | 3.31 | 3.29 | 60 | 64 | 5.52 | 5.27 | 4.92 | 5.20 |
| 31 | 35 | 3.35 | 3.35 | 3.34 | 3.33 | 61 | 65 | 5.67 | 5.37 | 4.99 | 5.32 |
| 32 | 36 | 3.38 | 3.38 | 3.37 | 3.36 | 62 | 66 | 5.82 | 5.48 | 5.05 | 5.46 |
| 33 | 37 | 3.43 | 3.42 | 3.41 | 3.39 | 63 | 67 | 5.97 | 5.59 | 5.11 | 5.59 |
| 34 | 38 | 3.46 | 3.46 | 3.44 | 3.43 | 64 | 68 | 6.13 | 5.69 | 5.16 | 5.74 |
| 35 | 39 | 3.50 | 3.50 | 3.48 | 3.46 | 65 | 69 | 6.30 | 5.80 | 5.21 | 5.89 |
| 36 | 40 | 3.55 | 3.54 | 3.52 | 3.50 | 66 | 70 | 6.48 | 5.90 | 5.26 | 6.06 |
| 37 | 41 | 3.59 | 3.58 | 3.56 | 3.54 | 67 | 71 | 6.66 | 6.01 | 5.31 | 6.23 |
| 38 | 42 | 3.64 | 3.62 | 3.60 | 3.58 | 68 | 72 | 6.84 | 6.11 | 5.34 | 6.41 |
| 39 | 43 | 3.69 | 3.67 | 3.65 | 3.63 | 69 | 73 | 7.03 | 6.20 | 5.38 | 6.61 |
| 40 | 44 | 3.74 | 3.72 | 3.69 | 3.67 | 70 | 74 | 7.22 | 6.29 | 5.41 | 6.81 |
| 41 | 45 | 3.79 | 3.77 | 3.74 | 3.72 | 71 | 75 | 7.41 | 6.38 | 5.43 | 7.03 |
| 42 | 46 | 3.85 | 3.82 | 3.79 | 3.77 | 72 | 76 | 7.60 | 6.46 | 5.45 | 7.26 |
| 43 | 47 | 3.90 | 3.88 | 3.84 | 3.82 | 73 | 77 | 7.79 | 6.53 | 5.47 | 7.51 |
| 44 | 48 | 3.97 | 3.94 | 3.89 | 3.87 | 74 | 78 | 7.98 | 6.59 | 5.48 | 7.77 |
| 45 | 49 | 4.03 | 4.00 | 3.95 | 3.93 | 75 | 79 | 8.17 | 6.65 | 5.49 | 8.05 |
| 46 | 50 | 4.10 | 4.06 | 4.00 | 3.99 | 76 | 80 | 8.35 | 6.70 | 5.50 | 8.36 |
| 47 | 51 | 4.17 | 4.13 | 4.05 | 4.05 | 77 | 81 | 8.52 | 6.74 | 5.50 | 8.67 |
| 48 | 52 | 4.25 | 4.20 | 4.12 | 4.12 | 78 | 82 | 8.68 | 6.77 | 5.51 | 9.01 |
| 49 | 53 | 4.33 | 4.27 | 4.18 | 4.18 | 79 | 83 | 8.83 | 6.80 | 5.51 | 9.38 |
| | | | | | | 80** | 84** | 8.96 | 6.82 | 5.51 | 9.76 |

Payments are based upon the age, nearest birthday, of the Payee on the date the first payment is due. If monthly installments for two or more specified periods for a given age are the same, the specified period of longer duration will apply.

*Also applies to younger ages.    **Also applies to older ages.

95325-NS

0045828

# TABLE OF GUARANTEED MONTHLY COST OF INSURANCE RATES
## PER $1,000 OF NET AMOUNT AT RISK

| ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE | ATTAINED AGE Nearest Birthday (On Each Policy Anniversary) | MALE | FEMALE |
|---|---|---|---|---|---|
| 18 | $0.13 | $0.08 | | | |
| 19 | .14 | .08 | | | |
| 20 | .14 | .08 | 60 | $ 1.06 | $ 0.71 |
| 21 | .13 | .08 | 61 | 1.17 | .76 |
| 22 | .13 | .08 | 62 | 1.29 | .83 |
| 23 | .13 | .08 | 63 | 1.43 | .92 |
| 24 | .13 | .09 | 64 | 1.60 | 1.02 |
| 25 | .12 | .09 | 65 | 1.78 | 1.13 |
| 26 | .12 | .09 | 66 | 1.97 | 1.25 |
| 27 | .12 | .09 | 67 | 2.18 | 1.37 |
| 28 | .12 | .09 | 68 | 2.41 | 1.50 |
| 29 | .12 | .10 | 69 | 2.66 | 1.63 |
| 30 | .12 | .10 | 70 | 2.94 | 1.78 |
| 31 | .12 | .10 | 71 | 3.31 | 1.96 |
| 32 | .12 | .10 | 72 | 3.63 | 2.19 |
| 33 | .12 | .11 | 73 | 4.05 | 2.47 |
| 34 | .13 | .11 | 74 | 4.54 | 2.80 |
| 35 | .14 | .12 | 75 | 5.06 | 3.17 |
| 36 | .14 | .13 | 76 | 5.62 | 3.58 |
| 37 | .15 | .13 | 77 | 6.21 | 4.02 |
| 38 | .16 | .14 | 78 | 6.83 | 4.50 |
| 39 | .17 | .16 | 79 | 7.49 | 5.03 |
| 40 | .19 | .17 | 80 | 8.22 | 5.62 |
| 41 | .20 | .18 | 81 | 9.05 | 6.31 |
| 42 | .22 | .20 | 82 | 9.99 | 7.11 |
| 43 | .23 | .21 | 83 | 11.07 | 8.05 |
| 44 | .25 | .23 | 84 | 12.26 | 9.10 |
| 45 | .27 | .24 | 85 | 13.55 | 10.26 |
| 46 | .29 | .26 | 86 | 14.91 | 11.53 |
| 47 | .32 | .28 | 87 | 16.34 | 12.91 |
| 48 | .34 | .30 | 88 | 17.80 | 14.39 |
| 49 | .37 | .32 | 89 | 19.33 | 16.00 |
| 50 | .41 | .34 | 90 | 20.94 | 17.75 |
| 51 | .44 | .37 | 91 | 22.66 | 19.68 |
| 52 | .48 | .40 | 92 | 24.57 | 21.86 |
| 53 | .53 | .43 | 93 | 26.76 | 24.42 |
| 54 | .59 | .47 | 94 | 29.63 | 27.67 |
| 55 | .65 | .51 | 95 | 33.93 | 32.32 |
| 56 | .72 | .55 | 96 | 41.27 | 40.04 |
| 57 | .79 | .58 | 97 | 56.03 | 55.15 |
| 58 | .87 | .62 | 98 | 83.33 | 83.33 |
| 59 | .96 | .66 | 99 | 83.33 | 83.33 |

The rates shown above represent the guaranteed (maximum) monthly cost of insurance for each $1,000 of net amount at risk. If this policy has been issued in a special (rated) premium class, the guaranteed monthly cost will be calculated as shown on page 3.

95325–NS

0045829

## TABLE OF SURRENDER CHARGES PER $1,000 OF SPECIFIED AMOUNT

The following charges apply to each $1,000 of Initial Specified Amount surrendered during the Surrender Charge Period. The charges also apply to each $1,000 of increase in Specified Amount surrendered during the Surrender Charge Period of each increase. The word "surrender" as used in this provision means Full Surrender, or a reduction in Specified Amount at the request of the Owner, or due to a Partial Surrender. The charge for the surrender of all or any portion of the Initial Specified Amount will be equal to the rate shown below for the age at issue and the year of surrender, multiplied by the number of thousands of Initial Specified Amount being surrendered. The charges for surrender of all or any portion of an increase in Specified Amount will be equal to the rates shown below for the age at issue of such increase and year of surrender, multiplied by the number of thousands of such increase being surrendered. In addition, there will be a charge not to exceed $50.00 for each partial surrender. The amount of any Fund Value is not subject to a surrender charge for a full surrender.

### Policy Years

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 13.00 | 11.00 | 9.00 | 7.00 | 7.00 | 7.00 | 6.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 19 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 11.00 | 9.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 20 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 10.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 21 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 13.00 | 12.00 | 10.00 | 7.00 | 7.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 22 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 23 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 24 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 9.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 25 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 26 | 15.00 | 15.00 | 15.00 | 15.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 8.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 27 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 12.00 | 10.00 | 9.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 28 | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 12.00 | 10.00 | 9.00 | 8.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 29 | 16.00 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 12.00 | 10.00 | 10.00 | 8.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 30 | 17.00 | 16.00 | 16.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 31 | 17.00 | 17.00 | 17.00 | 16.00 | 16.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 7.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 32 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 15.00 | 14.00 | 13.00 | 11.00 | 9.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 33 | 17.00 | 17.00 | 17.00 | 17.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 34 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 35 | 18.00 | 18.00 | 18.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 36 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 16.00 | 15.00 | 14.00 | 12.00 | 11.00 | 10.00 | 8.00 | 7.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 37 | 19.00 | 19.00 | 19.00 | 19.00 | 18.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 9.00 | 8.00 | 6.00 | 5.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 38 | 20.00 | 20.00 | 20.00 | 20.00 | 19.00 | 17.00 | 16.00 | 15.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 7.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 39 | 20.00 | 20.00 | 20.00 | 20.00 | 19.00 | 18.00 | 17.00 | 16.00 | 14.00 | 13.00 | 11.00 | 10.00 | 9.00 | 7.00 | 6.00 | 4.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 40 | 21.00 | 21.00 | 21.00 | 21.00 | 20.00 | 19.00 | 18.00 | 16.00 | 15.00 | 14.00 | 12.00 | 11.00 | 9.00 | 8.00 | 6.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 41 | 22.00 | 22.00 | 22.00 | 22.00 | 21.00 | 20.00 | 19.00 | 17.00 | 16.00 | 15.00 | 13.00 | 11.00 | 10.00 | 8.00 | 6.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 42 | 23.00 | 23.00 | 23.00 | 23.00 | 22.00 | 21.00 | 19.00 | 18.00 | 17.00 | 15.00 | 14.00 | 12.00 | 10.00 | 8.00 | 7.00 | 5.00 | 3.00 | 2.00 | 1.00 | 0.00 |
| 43 | 23.00 | 23.00 | 23.00 | 23.00 | 22.00 | 21.00 | 20.00 | 19.00 | 18.00 | 16.00 | 14.00 | 13.00 | 11.00 | 9.00 | 7.00 | 5.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 44 | 24.00 | 24.00 | 24.00 | 24.00 | 23.00 | 22.00 | 20.00 | 20.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |

98325-M-NS

0045830

## TABLE OF SURRENDER CHARGES PER $1,000 OF SPECIFIED AMOUNT

The following charges apply to each $1,000 of Initial Specified Amount surrendered during the Surrender Charge Period. The charges also apply to each $1,000 of increase in Specified Amount surrendered during the Surrender Charge Period of each increase. The word "surrender" as used in this provision means Full Surrender, or a reduction in Specified Amount at the request of the Owner, or due to a Partial Surrender. The charge for the surrender of all or any portion of the Initial Specified Amount will be equal to the rate shown below for the age at issue and the year of surrender, multiplied by the number of thousands of Initial Specified Amount being surrendered. The charges for surrender of all or any portion of an increase in Specified Amount will be equal to the rates shown below for the age at issue of such increase and year of surrender, multiplied by the number of thousands of such increase being surrendered. In addition, there will be a charge not to exceed $50.00 for each partial surrender. The amount of any Fund Value is not subject to a surrender charge for a full surrender.

### Policy Years

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 45 | 25.00 | 25.00 | 25.00 | 25.00 | 24.00 | 23.00 | 22.00 | 21.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 46 | 26.00 | 26.00 | 26.00 | 26.00 | 25.00 | 24.00 | 23.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 8.00 | 6.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 47 | 27.00 | 27.00 | 27.00 | 27.00 | 26.00 | 25.00 | 24.00 | 23.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 11.00 | 9.00 | 7.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 48 | 28.00 | 28.00 | 28.00 | 28.00 | 27.00 | 26.00 | 25.00 | 24.00 | 23.00 | 21.00 | 19.00 | 16.00 | 14.00 | 12.00 | 9.00 | 7.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 49 | 28.00 | 28.00 | 28.00 | 28.00 | 27.00 | 27.00 | 26.00 | 25.00 | 24.00 | 21.00 | 19.00 | 17.00 | 15.00 | 12.00 | 10.00 | 7.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 50 | 29.00 | 29.00 | 29.00 | 29.00 | 28.00 | 28.00 | 27.00 | 26.00 | 25.00 | 22.00 | 20.00 | 18.00 | 15.00 | 13.00 | 10.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 51 | 30.00 | 30.00 | 30.00 | 30.00 | 29.00 | 29.00 | 28.00 | 27.00 | 26.00 | 23.00 | 21.00 | 18.00 | 16.00 | 13.00 | 11.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 52 | 31.00 | 31.00 | 31.00 | 31.00 | 30.00 | 30.00 | 29.00 | 28.00 | 26.00 | 24.00 | 22.00 | 19.00 | 16.00 | 14.00 | 11.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 53 | 32.00 | 32.00 | 32.00 | 32.00 | 31.00 | 31.00 | 30.00 | 29.00 | 27.00 | 25.00 | 23.00 | 20.00 | 17.00 | 14.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 54 | 33.00 | 33.00 | 33.00 | 33.00 | 32.00 | 32.00 | 31.00 | 30.00 | 28.00 | 25.00 | 23.00 | 20.00 | 18.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 55 | 34.00 | 34.00 | 34.00 | 34.00 | 33.00 | 33.00 | 32.00 | 31.00 | 29.00 | 26.00 | 24.00 | 21.00 | 18.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 56 | 35.00 | 35.00 | 35.00 | 35.00 | 34.00 | 34.00 | 33.00 | 32.00 | 30.00 | 27.00 | 25.00 | 22.00 | 18.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 57 | 36.00 | 36.00 | 36.00 | 36.00 | 35.00 | 35.00 | 34.00 | 33.00 | 31.00 | 28.00 | 26.00 | 22.00 | 19.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 58 | 37.00 | 37.00 | 37.00 | 37.00 | 36.00 | 36.00 | 35.00 | 34.00 | 32.00 | 28.00 | 26.00 | 22.00 | 19.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 59 | 38.00 | 38.00 | 38.00 | 38.00 | 37.00 | 37.00 | 36.00 | 35.00 | 33.00 | 29.00 | 26.00 | 23.00 | 19.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 60 | 39.00 | 39.00 | 39.00 | 39.00 | 38.00 | 38.00 | 37.00 | 35.00 | 33.00 | 29.00 | 27.00 | 23.00 | 20.00 | 15.00 | 13.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 61 | 40.00 | 40.00 | 40.00 | 40.00 | 39.00 | 38.00 | 37.00 | 36.00 | 33.00 | 30.00 | 27.00 | 23.00 | 20.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 62 | 40.00 | 40.00 | 40.00 | 40.00 | 39.00 | 39.00 | 38.00 | 37.00 | 34.00 | 30.00 | 27.00 | 23.00 | 19.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 63 | 41.00 | 41.00 | 41.00 | 41.00 | 40.00 | 40.00 | 39.00 | 37.00 | 34.00 | 30.00 | 27.00 | 23.00 | 19.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 64 | 42.00 | 42.00 | 42.00 | 42.00 | 41.00 | 40.00 | 39.00 | 38.00 | 35.00 | 31.00 | 27.00 | 23.00 | 19.00 | 15.00 | 12.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 65 | 43.00 | 43.00 | 43.00 | 43.00 | 42.00 | 41.00 | 40.00 | 38.00 | 35.00 | 31.00 | 27.00 | 23.00 | 19.00 | 15.00 | 11.00 | 9.00 | 6.00 | 3.00 | 1.00 | 0.00 |
| 66 | 41.00 | 41.00 | 40.00 | 40.00 | 39.00 | 38.00 | 37.00 | 35.00 | 32.00 | 29.00 | 25.00 | 22.00 | 18.00 | 14.00 | 11.00 | 8.00 | 5.00 | 3.00 | 1.00 | 0.00 |
| 67 | 40.00 | 39.00 | 39.00 | 37.00 | 36.00 | 36.00 | 35.00 | 33.00 | 30.00 | 27.00 | 24.00 | 20.00 | 17.00 | 14.00 | 11.00 | 8.00 | 5.00 | 2.00 | 1.00 | 0.00 |
| 68 | 39.00 | 38.00 | 37.00 | 35.00 | 34.00 | 33.00 | 32.00 | 30.00 | 28.00 | 25.00 | 22.00 | 19.00 | 15.00 | 13.00 | 10.00 | 8.00 | 4.00 | 2.00 | 1.00 | 0.00 |
| 69 | 37.00 | 36.00 | 35.00 | 32.00 | 32.00 | 31.00 | 30.00 | 28.00 | 26.00 | 23.00 | 21.00 | 18.00 | 15.00 | 12.00 | 10.00 | 7.00 | 4.00 | 1.00 | 0.00 | 0.00 |
| 70 | 36.00 | 35.00 | 34.00 | 30.00 | 30.00 | 29.00 | 28.00 | 26.00 | 24.00 | 22.00 | 19.00 | 17.00 | 14.00 | 11.00 | 10.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 71 | 35.00 | 35.00 | 34.00 | 28.00 | 28.00 | 27.00 | 27.00 | 25.00 | 22.00 | 20.00 | 18.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 3.00 | 1.00 | 0.00 | 0.00 |
| 72 | 35.00 | 33.00 | 31.00 | 27.00 | 26.00 | 26.00 | 25.00 | 23.00 | 21.00 | 19.00 | 17.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 73 | 34.00 | 30.00 | 26.00 | 26.00 | 25.00 | 24.00 | 23.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 8.00 | 5.00 | 2.00 | 0.00 | 0.00 | 0.00 |
| 74 | 33.00 | 31.00 | 30.00 | 25.00 | 24.00 | 23.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 7.00 | 5.00 | 1.00 | 0.00 | 0.00 | 0.00 |

95325-M-NS

0045831

## TABLE OF SURRENDER CHARGES PER $1,000 OF SPECIFIED AMOUNT

The following charges apply to each $1,000 of Initial Specified Amount surrendered during the Surrender Charge Period. The charges also apply to each $1,000 of increase in Specified Amount surrendered during the Surrender Charge Period of each increase. The word "surrender" as used in this provision means Full Surrender, or a reduction in Specified Amount, or due to a Partial Surrender. The charge for the surrender of all or any portion of the Initial Specified Amount will be equal to the rate shown below for the age at issue and the year of surrender, multiplied by the number of thousands of Initial Specified Amount being surrendered. The charges for surrender of all or any portion of an increase in Specified Amount will be equal to the rates shown below for the age at issue of such increase and year of surrender, multiplied by the number of thousands of such increase being surrendered. In addition, there will be a charge not to exceed $50.00 for each partial surrender. The amount of any Fund Value is not subject to a surrender charge for a full surrender.

### Policy Years

| Issue Age Male | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 75 | 33.00 | 31.00 | 29.00 | 24.00 | 23.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 6.00 | 4.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 76 | 33.00 | 31.00 | 29.00 | 24.00 | 22.00 | 21.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 5.00 | 3.00 | 1.00 | 0.00 | 0.00 | 0.00 |
| 77 | 33.00 | 31.00 | 29.00 | 24.00 | 22.00 | 21.00 | 19.00 | 17.00 | 15.00 | 13.00 | 11.00 | 9.00 | 7.00 | 5.00 | 4.00 | 3.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 78 | 33.00 | 31.00 | 29.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 10.00 | 8.00 | 6.00 | 4.00 | 3.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 79 | 33.00 | 31.00 | 29.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 12.00 | 9.00 | 7.00 | 5.00 | 3.00 | 1.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 80 | 33.00 | 31.00 | 29.00 | 24.00 | 22.00 | 20.00 | 18.00 | 16.00 | 14.00 | 11.00 | 8.00 | 6.00 | 4.00 | 2.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

95325-M-NS

0045832

AMERICAN GENERAL LIFE INSURANCE COMPANY

PREFERRED LOAN ENDORSEMENT

This endorsement has been added to and made a part of the policy to which it is attached.

The following provision is hereby added to "Policy Loans":

**Preferred Loans.** A "Preferred Loan" is a policy loan that is made at a net cost to the Owner that is less than the net cost of other policy loans. Starting on the tenth policy anniversary, this policy will be eligible for "Preferred Loans" subject to the following guidelines:

1. The maximum amount eligible for Preferred Loans during a policy year is restricted to policy earnings, defined as:

   (a) The Cash Value at the beginning of the policy year; less

   (b) The sum of premiums paid in excess of Partial Withdrawals since the Date of Issue.

2. When a Preferred Loan is made, interest to the next policy anniversary will be charged at the rate shown in the Loan Interest provision.

3. Interest credited to the amount of the Accumulation Value offset by a Preferred Loan:

   (a) Will be at an annual effective rate that is equal to or less than the Policy Loan interest rate; and

   (b) Will be at a higher rate than the rate used to credit interest to values offset by any other policy loan.

The effective date of this Endorsement is the Date of Issue of the Policy.

President

L8890-96

0045833

AMERICAN GENERAL LIFE INSURANCE COMPANY

AMENDMENT

This amendment has been attached to and made a part of policy number U10005220L
REPLACED POLICY OR POLICIES

| (1)<br>POLICY NUMBER | (2)<br>DATE OF ISSUE | (3)<br>AMOUNT OF<br>INSURANCE | (4)<br>CASH VALUE<br>TRANSFERRED |
|---|---|---|---|
| A101377990 | 09-19-95 | 250,000.00 | 0.00 |

This policy has been issued as a replacement of the policies listed above. The Company agrees that:

1.    Provisions in this policy regarding Contestability and Suicide will apply to each amount shown in column (3) only to the extent that such provisions would have applied to each policy replaced had the replacement not taken place;

2.    This amendment does not apply to any amount of insurance issued under this policy which exceeds the total of the amounts shown in column (3);

3.    In determining the Cash Surrender Value of this policy Surrender Charges, if any, will be deducted from:

   A.    The amount of Accumulation Value; less

   B.    The total amount of Cash Values shown in Column (4) reduced by the following amounts, but not less than zero;

      (1)    The total amount of any partial withdrawals; and

      (2)    The amount of any policy loan calculated as of the date of surrender.

The effective date of this amendment is the Date of Issue of the policy.

*Brian D. Murphy*

L7175 REV 386

New Business Department

0045834

# American General Life Insurance Company
Home Office: Houston, Texas



**Policy Change, Reinstatement and Term Conversion Application**
Not to be used for Internal or External Exchanges

NEW BUSINESS

MBINO

U10005220L

| SECTION I: Basic Policy Information |
|---|

| Policy Number | Name of Proposed Insured (A) | Sex | DOB | Ins. Age | Height | Wt | Place of Birth |
|---|---|---|---|---|---|---|---|
| A10/377990 | Richard C. Somerville | M | 3/20/34 | 64 | Ft 5 In 11 | 214 | MA. |

**A  PRESENT RESIDENCE OF PROPOSED INSURED (A)**

Address 344 Keene St

City Duxbury    State MA    ZIP 02332

Telephone (781) 837-9401    No. of Yrs. 20+

**OCCUPATION**

Proposed Insured A

Occupation Owner - President    Yrs. 20+

Employer Name Globe Rubber Works Inc

Address 254 Beech St. Rockland MA 02370

Telephone (781) 871-3700

Proposed Insured B

Occupation _____ Yrs. ____

Employer Name _____

Address _____

Telephone (___) _____

Driver Lic. Num & State 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

SS# 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.

**PREMIUM PAYOR**

Name Globe Rubber Works Inc

Address 254 Beech St. Rockland MA 02370

City _____ State____ ZIP ____

Relationship to Primary Proposed Insured Company

**POLICYOWNER AND TAXPAYOR IDENTIFICATION NUMBER**
(must be completed)

Policyowner Name Globe Rubber Works Inc

Address 254 Beech St.

City Rockland    State MA ZIP 02370

Social Security or Tax ID Number 04-137/290

☐ Insured  ☒ Other  Relationship Business/company

**CONTINGENT OWNER DESIGNATION**

Contingent Policyowner Name _____

Social Security or Tax ID Number _____

(Contingent Policyowner designation becomes effective upon the death of the Primary Owner)

**1. NAMES OF PERSONS PROPOSED FOR INSURANCE**

| FIRST MIDDLE LAST | Sex | Relationship | Date of Birth Mo Day Yr | Ins. Age | Place of Birth | Height Ft In | Weight |
|---|---|---|---|---|---|---|---|
| B. | | | | | | | |
| Drivers Lic Num & State:_____ SS# _____ | | | | | | | |
| C. | | | | | | | |
| Drivers Lic Num & State:_____ SS# _____ | | | | | | | |
| D. | | | | | | | |
| E. | | | | | | | |
| F. | | | | | | | |

2. Do all the persons named above reside at the address of the Proposed Insured?   ☐ Yes  ☐ No

3. Are all children listed the natural or legally adopted children of the Proposed Insured or Spouse?   ☐ Yes  ☐ No

4. Has each child eligible for insurance been included?   ☐ Yes  ☐ No

Give details to "No" answers and identify each person by letter.

_____

_____

_____

_____

**INSTRUCTIONS:**

If application is for a Policy Change Request, complete Sections I, II & V (if applicable). Sign page 5.

If application is for Reinstatement of a policy, complete Sections I, III & V. Sign page 5.

If application is for a Term Conversion, complete Sections I, IV & V (if applicable). Sign page 5.

8644-95

0045835

# American General Life Insurance Company
### Home Office: Houston, Texas
#### Policy Change, Reinstatement and Term Conversion Application

### SECTION IV: Request for Term Conversion
#### (*Complete Section V)

1. **CONVERT TO:**

| Plan of Basic Insurance | Amount |
|---|---|
| _Platinum Provider_ $ | _250,000_ |
| $ | |
| $ | |

Death Benefit Option:  ☒ 1 - Level  ☐ 2 - Increasing
(If Increase in Specified Amount, Question #3 must be answered.)

2. **BENEFITS TO BE ADDED:**

*☐ ADD
- ☐ Premium Waiver          ☐ Purchaser Insurance
- ☐ Family Insurance Benefit          _____ Units
- ☐ Children's Insurance Benefit          _____ Units
- ☐ Accidental Death Benefit
  Amount now in force in all Companies    $_____
- ☐ Option to Purchase Additional Insurance   $_____
- ☐ Other:_____
- ☐ Spouse ART:          Amount $_____
  ☐ Smoker or  ☐ Non-Smoker
- ☐ Annual Renewable Term Rider:   Amount $_____
  ☐ Smoker or  ☐ Non-Smoker
- ☐ Single Premium Paid Up Rider   _____ Units

* 3. Has Proposed Insured A or B used tobacco in any form in the past 24 months?
Proposed Insured A  ☐ Yes ☐ No   Proposed Insured B  ☐ Yes ☐ No
Date last used (month and year)_____

4. **PREMIUMS TO BE PAID**
Planned Periodic Premium  $ _4,736.72_
Conversion Credit (allowed on ABC or annual mode)  $_2,800.00_
- ☐ Apply to Cash Value  ☒ Reduce Planned Periodic Premium
- ☐ Automatic Bank Check (see attached)
  Use information from existing policy  #_____
- ☒ Direct
- ☐ List Bill or Government Allotment   List Bill #_____
  Company _____
- ☐ Annually  ☒ Semi-Annually  ☐ Quarterly
Amount paid with application $ _____ or ☒ None

5. Is Premium Loan Provision to be Automatic,
if available?          ☒ Yes ☐ No

6. **CONVERSION OF TERM INSURANCE:**
- ☒ Policy # _A101377990_
- ☐ Partial Conversion:
  Convert $_____(face amount)
  Balance to be: ☐ Lapsed  ☐ Remain in Force
- ☐ Term Rider Conversion
  ☐ Full Conversion  ☐ Partial Conversion
  Convert $_____
  Balance to be: ☐ Lapsed  ☐ Remain in Force
  Adjusted Planned Periodic Premium $_____

7. **OWNER DESIGNATION**
(must be completed)
Policyowner Name _Globe Rubber Works Inc._
Address _254 Beech St_
City _Rockland_   State _MA_ ZIP _02370_
Social Security or Tax ID Number _04-1371250_
☐ Insured  ☒ Other  Relationship _Company._

**CONTINGENT OWNER DESIGNATION**
Contingent Policyowner Name _NA_
Social Security or Tax ID Number _____
(Contingent Policyowner designation becomes effective upon the death of the Primary Owner)

8. **BENEFICIARY DESIGNATION**
Proposed Insured A (must be completed)

| _Globe Rubber Works Inc_ | _Company_ |
|---|---|
| First | Relationship |
| Second | Relationship |
| Trust Name | Date of Trust |

Proposed Insured B

| | |
|---|---|
| First | Relationship |
| Second | Relationship |
| Trust Name | Date of Trust |

9. **SPECIAL INSTRUCTIONS:** (State Request Clearly)

The designation of Owner and Beneficiary on this application applies only to the Conversion Policy, and does not change the designation on any other policy contracts. For changes of Beneficiary and Owner, be sure correct signatures are obtained.

---

For Home Office Endorsement Only. Statement No. _____ Section _____ corrected as follows:    Date Received in
(NOT TO BE USED FOR CHANGE OF PLAN, AMOUNT, BENEFIT, OR AGE)

May not be used in any state where prohibited.    Home Office

# American General Life Insurance Company
Home Office: Houston, Texas

## Policy Change, Reinstatement and Term Conversion Application

This is an amendment to my application for the original policy. I have read the above statements or they have been read to me. I represent that such statements are true and complete to the best of my knowledge and belief. I agree that such statements are to be the basis of any action by the Company. I understand that the Company reserves the right to ask for a medical examination.

If this is an application for reinstatement, I understand that the policy will not be placed in force until this application is approved and all premiums due have been paid. A payment by check or draft shall not be considered valid unless: (1) such check or draft is negotiable on the date shown below; and (2) such check or draft is honored when first presented for payment. We can contest a reinstatement or an increase of specified amount only on the basis of information furnished in the application for such reinstatement or increase.

I hereby authorize any of the following that have records or knowledge of me or my health to give to the Company such information: (1) Any licensed physician, medical practitioner, hospital, clinic or other medical facility; or (2) any insurance company, the Medical Information Bureau or other organization or person.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to any agency employed by the insurance company to collect and transmit such information.

A copy of this authorization shall be as valid as the original. This authorization shall be valid for thirty (30) months.

If applicable, I have received: (1) the Medical Information Bureau notice; and (2) The Fair Credit Reporting Act notice.

The Company may amend this application by a notation in the space reserved for "Home Office Endorsement Only" in order to correct errors or omissions except as follows: No change shall be made in the amount of insurance, premium, the plan, the benefits or age at issue without written consent of the Proposed Insured and the Owner.

CERTIFIED TAXPAYER ID. Under penalties of perjury, I certify that: (1) the tax number shown in this application is my correct taxpayer identification number; and (2) that I am not subject to backup withholding under Section 3406(a)(1)(C) of the Internal Revenue Code.

Rockland    MA
DATED AT CITY, STATE

04- 1371290
OWNER'S TAX I.D./SOCIAL SECURITY NUMBER

9/3/98
CURRENT DATE

X _____
SIGNATURE OF INSURED    R. Somerville

X _____
SIGNATURE OF INSURED

X X Robert D. Gustavson  V.P.
SIGNATURE OF PRESENT OWNER/TRUSTEE (IF OTHER THAN INSURED
SHOW TITLE OF OFFICER IF SIGNING FOR FIRM)

X X Robert D. Gustavson  V.P.
R.G.
SIGNATURE OF OWNER/TRUSTEE OF EXISTING POLICY TO BE CONVERTED

X _____
SIGNATURE OF PRESENT OWNER/TRUSTEE (IF OTHER THAN INSURED
SHOW TITLE OF OFFICER IF SIGNING FOR FIRM)

X _____
SIGNATURE OF OWNER/TRUSTEE OF EXISTING POLICY TO BE CONVERTED

X _____
SIGNATURE OF ASSIGNEE (SHOW TITLE OF OFFICER IF SIGNING FOR FIRM)

X _____
SIGNATURE OF SPOUSE (IF INCLUDED AS A PROPOSED INSURED)

| | Agent's Full Name (Print) | Percent of Credit | Agent's Phone Number | Agency Number/ Agent Number | State License Number |
|---|---|---|---|---|---|
| 1. | Vincent J. Sica, Jr. | 100 % | (781) 828- 9559 | B3545 B08773B | |
| 2. | | | ( ) | | |
| 3. | | | ( ) | | |

L 8644-95

- 5 -

0045837

# AMERICAN GENERAL LIFE

## Insurance Company

This is a FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY. Adjustable Death Benefit is payable upon the Insured's death prior to the Maturity Date. Premium payments are flexible and payable to the Maturity Date. ACCUMULATION VALUES and CASH VALUES are flexible and will be based on the amount and frequency of premiums paid, and the amount of interest credited. NONPARTICIPATING—NOT ELIGIBLE FOR DIVIDENDS.

For Information, Service or to make a Complaint

Contact your Servicing Agent, or our Policyowner Service Department

2727-A Allen Parkway
P.O. Box 1931
Houston, Texas 77251
1-800-231-3655



A STOCK COMPANY

A Subsidiary of American General Corporation

95325

0045838

# Exhibit 15

# FAX TRANSMISSION

Pension & Wealth Management
  Advisors
     phone  781 398-0077
     fax    781 398-2255
     email  flavia@pensionwealth.com

**FROM:**    Flavia

**TO:**      Policyowner Service
             American General
             1-713-831-3028

**DATE:**    02/16/05 at 16:35:09

**PAGES:**   3

**SUBJECT:** change of beneficiary request

RS067

02/18/2008 10:09   7013382255   MCINNIS FINANCIAL   PAGE 02

2/18/05 3:29P
015100007296

# AIG AMERICAN GENERAL

**Change of Beneficiary**

**American General Life Insurance Company (AGL),**
☐ Fixed Life Service Center - P. O. Box 4373, Houston, TX 77210-4373
☐ Variable Life Service Center - P. O. Box 4880, Houston, TX 77210-4880
Member of American International Group, Inc.
**Instructions for completing this form are listed on the back.**

| 1. | CONTRACT IDENTIFICATION |
|---|---|

CONTRACT No.: _U10005220L_

OWNER: _Globe Composite Solutions, LTD_   SSN/TIN OR EIN: _75 2989890_

ADDRESS: _254 Beech St._   PHONE No.: _781-871-3702_

☐ Check Here if New Address

_Rockland, MA 02370_

EMAIL ADDRESS (optional): _____

INSURED/ANNUITANT (if other than Owner): _Richard C. Somerville_

| 2. | BENEFICIARY DESIGNATIONS |
|---|---|

One or more of the following may be checked. If nothing is checked, the designation will be in effect for the base insured only.
Designation is in effect for:   ☒ Base Insured   ☐ Spouse Insured   ☐ Other _____

**A. PRIMARY**
*Address Required*

| Full Name | Relationship | Address | SSN | Percentages (if applicable) Must total 100 |
|---|---|---|---|---|
| Globe Composite Solutions, LTD | employer | 254 Beech St. Rockland MA 02370 | 75 2989890 | 100% |

If a living or non-testamentary trust is designated as a primary beneficiary, complete the following:
Dated: _____

_____ Legal Name of Trust _____

**B. CONTINGENT**
*Address Required*

| Full Name | Relationship | Address | SSN | Percentages (if applicable) Must total 100 |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Dated: _____
_____ Legal Name of Trust _____

| 3. | OPTIONAL CLAUSES |
|---|---|

One or more of the following may be checked if desired:
☐ POSTPONEMENT CLAUSE - COMMON DISASTER   ☐ CHILDREN'S CLAUSE - PER STIRPES
☐ MINOR BENEFICIARY CLAUSE - TRUSTEE FOR CHILDREN   ☐ IRREVOCABLE BENEFICIARY

Dated: _____

_____ Name of Trust/Trustee _____

| 4. | SIGN HERE FOR ABOVE REQUEST |
|---|---|

The undersigned contract owner hereby revokes any previous beneficiary designation and any optional mode of settlement with respect to any death benefit proceeds payable at the death of the Insured/Annuitant.

Under penalties of perjury, I certify that: (1) The number shown on this form is my correct taxpayer identification number, and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to back-up withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

_____ Signature of Owner _____ Date   2/15/05

_____ Signature of Co-owner (or other party having interest in contract) _____ Date

_____ Witness _____ Date

**RETURN COMPLETED FORM TO THE ADDRESS OF THE COMPANY CHECKED ABOVE!**

AGLC 0108 Rev0403

Page 1 of 2

RS068



RS069

# Exhibit 16



*Insurance Service Center for:*

**American General Life
Insurance Company**

February 18, 2005

GLOBE RUBBER WORKS INC
254 BEECH ST
ROCKLAND MA 02370

Contract Number: U10005220L
Insured: RICHARD C SOMERVILLE
Owner: GLOBE RUBBER WORKS INC

Dear GLOBE RUBBER WORKS INC :

We received your request to change the ownership on the above contract.

We are unable to complete your request until such time as the item(s) below have been resolved.

The contract is corporate owned. We will require a corporate resolution authorizing an officer to act on the company's behalf along with the signature and title of officer on company letterhead or paper with corporate seal in order to proceed with your request. Same officer should sign under the Current Owner field in the Change of Ownership form.

Please complete, date, and sign the enclosed change form and return it to our office for handling.

We appreciate the confidence you have shown in us and we thank you for your business. Should you need more information, please contact our Customer Service Center or your servicing agent:

VINCENT J SICA
BROWN, CHARLES P
363-C BOLIVAR ST
CANTON, MA 02021

Sincerely,

Customer Service Center

Corr#: 03929091

0B3545 / 000B08773B
CC: VINCENT J SICA
MC

Enclosure(s):
Change of Ownership Form

**American General Life Insurance Company**
*Member of American International Group, Inc.*
P.O. Box 4373 • Houston, TX 77210-4373 • 1-800-231-3655 • Fax 713-831-3028 • www.aigag.com

040

RS059

# Exhibit 17

 **AMERICAN GENERAL**

*Insurance Service Center for:*

**American General Life
Insurance Company**

February 24, 2005

GLOBE RUBBER WORKS INC
254 BEECH ST
ROCKLAND  MA
02370

Contract Number: U10005220L
Insured: RICHARD C SOMERVILLE
Owner: GLOBE RUBBER WORKS INC

Dear GLOBE RUBBER WORKS INC :

We received your request to change the beneficiary on the above contract.

We are unable to complete your request until such time as the item(s) below have been resolved.

- Ownership must be established first. Alongside with this Change of Beneficiary request is a Change of Ownership, which we are unable to process. If you are to assign a new owner, we need him to sign and date the change of beneficiary form.

Please complete, date, and sign the enclosed change form and return it to our office for handling.

We appreciate the confidence you have shown in us and we thank you for your business.  Should you need more information, please contact our Customer Service Center or your servicing agent:

VINCENT J SICA
BROWN,CHARLES P
363-C BOLIVAR ST
CANTON, MA 02021

Sincerely,

Customer Service Center

Corr#:  03940681

0B3545 / 000B08773B
CC:  VINCENT J SICA

Enclosure(s):
Change of Beneficiary Form

**American General Life Insurance Company**
*Member of American International Group, Inc.*
P.O. Box 4373 • Houston, TX  77210-4373 • 1-800-231-3655 • Fax 713-831-3028 • www.aigag.com

040

RS070

 **AMERICAN GENERAL**

**Change of Beneficiary**

**American General Life Insurance Company (AGL)**
**AIG Life Insurance Company**
**AIG Life Insurance Company of Puerto Rico**
*Member companies of American International Group, Inc.*
☐ Fixed Life Service Center - P. O. Box 4373, Houston, TX 77210-4373
☐ Variable Life Service Center - P. O. Box 4880, Houston, TX 77210-4880
**Instructions for completing this form are listed on the back.**

*Please print or type all information except signatures.*

| | |
|---|---|
| **1. CONTRACT IDENTIFICATION**<br><br>☐ Check Here if New Address | **CONTRACT No.:** _____<br>**OWNER:** _____     **SSN/TIN OR EIN:** _____<br>**ADDRESS:** _____     **PHONE No.:** _____<br>_____<br>**EMAIL ADDRESS** (optional): _____<br>**INSURED/ANNUITANT (if other than Owner):** _____ |

**2. BENEFICIARY DESIGNATIONS**

One or more of the following may be checked.  If nothing is checked, the designation will be in effect for the base insured only. Must be of legal age, if not Minor Beneficiary Clause must be completed.
Designation is in effect for:  ☐ Base Insured  ☐ Spouse Insured  ☐ Other _____

**A. PRIMARY**
*Address Required*

| Full Name | Relationship | Address | SSN | Percentages (if applicable)<br>Must total 100 |
|---|---|---|---|---|
| | | | | |

If a living or non-testamentary trust is designated as a primary beneficiary, complete the following:
_____ Dated: _____
Legal Name of Trust

**B. CONTINGENT**
*Address Required*

| Full Name | Relationship | Address | SSN | Percentages (if applicable)<br>Must total 100 |
|---|---|---|---|---|
| | | | | |

_____ Dated: _____
Legal Name of Trust

**3. OPTIONAL CLAUSES**

One or more of the following may be checked if desired:
☐ POSTPONEMENT CLAUSE - COMMON DISASTER    ☐ CHILDREN'S CLAUSE - PER STIRPES
☐ MINOR BENEFICIARY CLAUSE - TRUSTEE FOR CHILDREN    ☐ IRREVOCABLE BENEFICIARY
Dated: _____
Name of Trust/Trustee

**4. SIGN HERE FOR ABOVE REQUEST**

The undersigned contract owner hereby revokes any previous beneficiary designation and any optional mode of settlement with respect to any death benefit proceeds payable at the death of the Insured/Annuitant. Under penalties of perjury, I certify that: (1) The number shown on this form is my correct taxpayer identification number, and (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to back-up withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien). The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

_____    _____    _____
Signature of Owner      Title      Date

_____    _____    _____
Signature of Co Owner, Assignee, Witness      Title      Date

**RETURN COMPLETED FORM TO THE ADDRESS OF THE COMPANY CHECKED ABOVE.**

AGLC0180 Rev0904         Page 1 of 2

RS071

## - Instructions and Conditions -

| 1. | CONTRACT IDENTIFICATION | Complete all contract information in this section. You may use this form for multiple contracts that have the same contract owner and require the same signatures. |
|---|---|---|
| 2. | BENEFICIARY DESIGNATIONS | Unless otherwise provided, the right to change the beneficiary is reserved to the owner. Such change will be without prejudice to the company which issued the contract ("the Company") on account of any payment made or action taken by it before receipt of such notice at its Service Center. |
| | | Please select the Insureds/Annuitants for which the designation will take effect. |
| | | This designation, when filed with the Company, will become effective as of its date of execution. Such execution will constitute a waiver of any contract provision(s) requiring endorsement of change of beneficiary. All designations are subject to the terms and conditions of the contract, any indebtedness to the Company and any collateral assignment of the contract, whether made prior to or subsequent to the date of this designation. |
| | | The Company is released from all liability by making payment in accordance with this designation and assumes no responsibility for the use of money by any Trustee named herein. If a Trustee is named as the beneficiary, the date and legal title of the Trust must also be included. |
| | | The death proceeds shall be payable in equal shares to the designated beneficiaries, unless otherwise indicated. If beneficiaries are to receive unequal portions of the death benefit, it must be shown as a percentage of the death benefit and not as specific dollar amounts. In the event no beneficiary survives the insured and this form or the contract does not provide otherwise, the proceeds will be paid to the contract owner, or the executors or administrators of the contract owner's estate. |
| | | **SUGGESTED WORDING FOR COMMON DESIGNATIONS** |
| | | **Insured/Annuitant's Estate** – Executors or Administrators of the Insured's/Annuitant's Estate |
| | | **One individual beneficiary** – Mary Doe, wife, 100 N. Main St, Chicago, IL, SSN 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 |
| | | **Two or more individual beneficiaries** – Jane Doe, daughter, 100 N. Main St, Chicago, IL, SSN 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 and John Doe, son, 100 N. Main St, Chicago, IL, SSN 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 |
| | | **One class or unnamed children** – Children born of the marriage of the Insured and Mary Doe |
| | | **Unequal portions** –Jane Doe, daughter, 75%, 100 N. Main St, Chicago, IL, SSN 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; John Doe, son, 25%, 100 N. Main St, Chicago, IL, SSN 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 |
| | | **Business Associate** – John Smith, Business Associate, 100 N. Main St, Chicago, IL, SSN 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 |
| | | **Not Incorporated** – The Board of Directors of the ADA, 100 N. Main St, Chicago, IL |
| | | **Incorporated** – ADA, 100 N. Main St, Chicago, IL, A Corporation organized under the laws of the State of Illinois |
| 3. | OPTIONAL CLAUSES | **Postponement Clause - Common Disaster** – In no case shall any payment be made to any beneficiary designated in this form until thirty (30) days or state mandated period have elapsed following the Insured's death, and in the event of the death of a beneficiary during such period, payment shall be made in the same manner as provided in this form, had the said beneficiary predeceased the Insured. This provision does not apply to a Trustee. |
| | | **Children's Clause - Per Stirpes** – If a child of the Insured who is designated in this form as a beneficiary predeceases the Insured, leaving children who survive the Insured, then the shares the deceased beneficiary would have received shall be payable in equal shares to the surviving children of the deceased beneficiary. |
| | | **Minor Beneficiary Clause - Trustee for Children** – The Trustee appointed to any beneficiary who is a minor child will receive any payment due on or after the Insured's death on the date such payment falls due. Payment by the Company to such trustee shall be an absolute and complete release and acquittance of the Company which shall not be held accountable or responsible for the use and application of the death benefit proceeds paid to such trustee. |
| | | **Irrevocable Beneficiary** – The beneficiary will become an irrevocable beneficiary and must provide consent for future transactions. Minors who are designated as irrevocable beneficiaries will not be permitted to approve future transactions until they reach the age of majority. |
| 4. | SIGN HERE FOR ABOVE REQUEST | This request must be dated and all required signatures must be written in ink, using full legal names. |
| | | Taxpayer Identification Number Certification: You must cross out item 2 if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest or dividends on your tax return. |
| | | This request must be signed by: |
| | | • the person or persons who have the rights of ownership under the terms of the contract (co-owners, irrevocable beneficiary); |
| | | • by any other party who may have an interest in the contract by legal proceedings or statutes; |
| | | • by a disinterested third party; |
| | | • the policy's assignee must also sign any beneficiary or name change request, if the Policy is collaterally assigned; and |
| | | • the spouse of the owner must also sign this request, if the owner resides in a Community Property state. (Community Property states are AZ, CA, ID, LA, NM, NV, TX, WA and WI). |
| | | **Special circumstances – Corporate ownership:** The signature of one officer followed by the officer's title is required. The request must be submitted on a piece of corporate letterhead or paper with the corporate seal signed by that officer; **Partnerships:** The full name of the partnership should be written followed by the signatures of all partner(s), other than the Insured; **Trust:** If the contract is owned by or assigned to a Trustee, current Trustee(s) signatures are required as instructed by the trust agreement. Validation of Trustee(s) signatures may be required. |

RS072

# Exhibit 18

# LAWSON & WEITZEN, LLP

ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

**BOSTON**
TELEPHONE (617) 439-4990
TELECOPIER (617) 439-3987
EMAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

EVAN T. LAWSON
RICHARD B. WEITZEN *
PAMELA B. BANKERT
FRANK L. BRIDGES
IRA H. ZALEZNIK
JOHN J. WELTMAN ***
VALERIE L. PAWSON
GEORGE F. HAILER, PC +
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO
WILLIAM F. COYNE, JR.
DAVID A. RICH *
DENNIS J. MANESIS ++
NATALIE A. KANELLIS †
PATRICIA L. FARNSWORTH

K. SCOTT GRIGGS
MICHAEL J. McDEVITT
STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON **
CLARE B. BURHOE
ROBERT J. ROUGHSEDGE +++
RICHARD J. SULLIVAN, JR.
CAROLINE A. O'CONNELL *
MARISSA A. GOLDBERG
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
KRISTINA A. ENGBERG
C. KIMBERLY BAKEBERG
JAMES M. HENRY

**CAPE COD**
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

**MARLBOROUGH**
LAWSON, WEITZEN & HAILER, LLP
171 LOCKE DRIVE, SUITE 101
MARLBOROUGH, MASSACHUSETTS 01752
TELEPHONE (508) 618-1025

June 13, 2006

**VIA FIRST CLASS MAIL**
Jennifer C. Roman, Esq.
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue, Suite 500
Boston, MA 02199

Re:  *Globe Composite Solutions, Ltd. v. Ann Roche- Somerville, et al.*
     **District of Massachusetts: Civil Docket No.: 05-cv-10323 (DPW)**

Dear Attorney Roman:

Enclosed please find the documents produced by Lincoln Financial Group in response to the Subpoena in the above-referenced matter bearing numbers LFG 1 through LFG 359.

Thank you for your attention to this matter.

Very truly yours,

Lana Ignatenko
Legal Assistant to Clare B. Burhoe

Enc.

* ALSO ADMITTED IN NY
** ALSO ADMITTED IN NH
*** ALSO ADMITTED IN CA
+ ALSO ADMITTED IN DC
++ ALSO ADMITTED IN NJ & PA
+++ ALSO ADMITTED IN RI, CT, NH & ME
† ALSO ADMITTED IN NH & NY

# Exhibit 19

**From:** Bertrand, Carey [Carey.Bertrand@wilsonelser.com]
**Sent:** Tuesday, February 28, 2006 11:33 AM
**To:** Burhoe, Clare; Jennifer C. Roman
**Subject:** American General v Kalfor et al

Hi Clare and Jennifer,
I have a bate stamped set of documents ready for production to you both. This is the "policy file" for this matter. We will produce everything that you would have been entitled to under the Federal Rules, so that you will not object to the petition for final decree of intepleader. My client is only interested in getting out of this case completely and will not agree to further discovery obligations. I will send these documents over to you today. Thanks.

-Carey


Carey Bertrand
Wilson Elser
155 Federal St.
Boston, MA 02110
carey.bertrand@wilsonelser.com
(617)422-5300
(617)423-6917

This communication was not intended or written to be used,
and it cannot be used by any taxpayer, for the purpose of
avoiding tax penalties. (The foregoing legend has been
affixed pursuant to U.S. Treasury Regulations governing tax practice.)

*************************************************************


CONFIDENTIALITY NOTICE: This electronic message is
intended to be viewed only by the individual or entity to
whom it is addressed. It may contain information that is
privileged, confidential and exempt from disclosure under
applicable law. Any dissemination, distribution or
copying of this communication is strictly prohibited
without our prior permission. If the reader of this
message is not the intended recipient, or the employee or
agent responsible for delivering the message to the
intended recipient, or if you have received this
communication in error, please notify us immediately by
return e-mail and delete the original message and any
copies of it from your computer system.

For further information about Wilson, Elser, Moskowitz,
Edelman & Dicker LLP, please see our website at
www.wilsonelser.com or refer to any of our offices. Thank
you.

12/11/2006

# Exhibit 20

# LAWSON & WEITZEN, LLP

ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

EVAN T. LAWSON
RICHARD B. WEITZEN *
PAMELA B. BANKERT
FRANK L. BRIDGES
IRA H. ZALEZNIK
JOHN J. WELTMAN ***
VALERIE L. PAWSON
GEORGE F. HAILER, PC +
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO, PC
WILLIAM F. COYNE, JR.
DAVID A. RICH *
DENNIS J. MANESIS **
NATALIE A. KANELLIS †
PATRICIA L. FARNSWORTH

K. SCOTT GRIGGS
MICHAEL J. McDEVITT
STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON **
CLARE B. BURHOE
ROBERT J. ROUGHSEDGE +++
RICHARD J. SULLIVAN, JR.
CAROLINE A. O'CONNELL *
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
KRISTINA A. ENGBERG
C. KIMBERLY BAKEBERG
JAMES M. HENRY
JUDITH L. VAUGHAN

BOSTON
TELEPHONE (617) 439-4990
TELECOPIER (617) 439-3987
EMAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

CAPE COD
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

MARLBOROUGH
LAWSON, WEITZEN & HAILER, LLP
171 LOCKE DRIVE, SUITE 101
MARLBOROUGH, MASSACHUSETTS 01752
TELEPHONE (508) 618-1025

November 1, 2006

**VIA FIRST CLASS MAIL**
Jennifer C. Roman, Esq.
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue, Suite 500
Boston, MA 02199

Re:    *Globe Composite Solutions, Ltd. v. Ann Roche- Somerville, et al.*
      **District of Massachusetts: Civil Docket No.: 05-cv-10323 (DPW)**

Dear Attorney Roman:

Kindly supplement the documents produced by Globe Composite Solutions, Ltd. and Carl W. Forsythe in the above-referenced matter with the enclosed documents bearing numbers 45584 through 45798. In addition, as you are aware, the Department of Justice produced to Lawson & Weitzen, LLP an audiocassette and videotape (without sound) of the consensual monitored conversation between Carl Forsythe and Richard Somerville on January 6, 2005. Enclosed are copies of the videotape on digital videodisc and the audiocassette on audiocassette. We were unable to synchronize them.

Thank you for your attention to this matter.

Very truly yours,

Lana Ignatenko
Legal Assistant to Clare B. Burhoe

* ALSO ADMITTED IN NY
** ALSO ADMITTED IN NH
*** ALSO ADMITTED IN CA
+ ALSO ADMITTED IN DC
++ ALSO ADMITTED IN NJ & PA
+++ ALSO ADMITTED IN RI,CT, NH & ME
† ALSO ADMITTED IN NH & NY

# Exhibit 21

**Jennifer C. Roman**

---

**From:**   Burhoe, Clare [cburhoe@lawson-weitzen.com]
**Sent:**   Tuesday, November 21, 2006 11:23 AM
**To:**     Jennifer C. Roman
**Cc:**     Lawson, Evan
**Subject:** RE: Somerville/Globe

Jennifer,

You do not need to re-notice the resumption of Carl's depo, but please let me know what time you'd like to begin so I can let him know.

John Boodee is available on the same dates I gave you for Carl, but we will not bring him here at our client's expense. As you are aware, it is the deponent's prerogative to designate witnesses in a 30(b)(6) deposition and we are redesignating Carl as the witness who will answer questions on the topics of the baffle panels. If you want to continue John's individual depo you can do it by phone, in Dallas, or here at your client's expense. The fact that the deposition was started and suspended does not require us to produce John here where the reason for the suspension, i.e. the baffle issue, was outside of Globe's control, and witnesses to pending litigation are not obligated to remain in state. If you feel otherwise then you can move to compel.

We will be getting the documents you marked for copying out to you today, in addition to some others I realized I hadn't made available to you when you were here. The client has provided us with all its original files on the insurance policies and we do not have the original of the March 30, 2005 fax. Are you still planning to depose the insurance companies on Dec. 21? I haven't received deposition notices for those.

With respect to your request for financial records, could you please be more specific about what you are looking for or refer me back to specific requests for production of documents? Your request could entail any number of records, which may or may not be relevant to the claims asserted in the law suit.

Finally, we have not gotten a return of service on our deposition subpoena of Charlie Stoddard but we are going to have to change the date of that depo anyway. Could you please let me know what dates you and Mark are available in Jan/Feb?

Thanks.
Clare

> -----Original Message-----
> **From:** Jennifer C. Roman [mailto:JRoman@tbhr-law.com]
> **Sent:** Monday, November 20, 2006 3:14 PM
> **To:** Burhoe, Clare
> **Cc:** Mark S. Furman
> **Subject:** RE: Somerville/Globe
>
> Clare,
>
> January 30th is the date we will continue the deposition of Carl. I will send you a confirming letter. (I assume that you do not need a separate notice of deposition to produce Carl since this is a continuation of his prior deposition. If this is not the case, please let me know).
>
> With respect to John Boodee, as you know, John Boodee was originally designated as a GCS 30(b)(6) witness and we expressed an interest in deposing him in his individual capacity as well. We agreed to combine his individual deposition with his testimony as a 30(b)(6) witness for the convenience of everyone. You agreed to produce John Boodee for the combined deposition and we started deposing him. We were in the middle of deposing him in both his individual capacity and in his capacity as a 30(b)(6) witness when his deposition was suspended until such time as GCS produced the additional documents concerning the baffle panels.
>
> Now that we have recently received the additional documents, we are in a position to continue with the previously noticed depositions, including John Boodee.

Under these circumstances it is your obligation to produce John Boodee for a deposition in Boston, at our offices, at your client's expense.  As I mentioned before, we understand that he will need to come up from Texas for the completion of his combined deposition, and accordingly, are flexible as to the date(s) when his deposition will be completed.

Please provide me with dates when John Boodee would be available for a deposition.

Also, please advise me as to the status of the (1) location of the original March 30, 2005 fax from Roger Fasnacht to Lincoln Financial and its availability for inspection (the original was not in the insurance file I recently reviewed in your office) and (2) when I can expect to receive the documents I requested to be copied from GCS's insurance file.

Thank you.

Jennifer

---

**From:** Burhoe, Clare [mailto:cburhoe@lawson-weitzen.com]
**Sent:** Thursday, November 16, 2006 1:31 PM
**To:** Jennifer C. Roman
**Cc:** Lawson, Evan
**Subject:** RE: Somerville/Globe

Hi Jennifer,

Carl Forsythe is available Jan. 25, Jan. 30 or Feb. 1.  He will now be the 30(b)(6) designee on all topics/questions relating to the baffle panels.

I'm still trying to determine John Boodee's availability.  But to a certain extent, that will depend on where and how his deposition is taken.  As indicated earlier, John is now a permanent resident of Dallas so the options for resuming his deposition would include 1) taking it by phone, 2) taking it in Dallas, or 3) flying him here at your client's expense.  We do not believe that the rules require us to make an out of state witness available here, especially since Mr. Boodee is no longer a 30(b)(6) designee.

Please let me know how you'd like to proceed.

Regards,
Clare

-----Original Message-----
**From:** Jennifer C. Roman [mailto:JRoman@tbhr-law.com]
**Sent:** Thursday, November 16, 2006 9:54 AM
**To:** Burhoe, Clare
**Subject:** Somerville/Globe

Hi Clare,

Where are we at with scheduling the depositions of Carl Forsythe and John Boodee for January?

Thanks,

Jennifer

Jennifer C. Roman
Attorney at Law
Direct Dial: (617) 218-2045
E-Mail: JRoman@tbhr-law.com


TARLOW BREED
HART & RODGERS, P.C.
Counsellors at Law

**Tarlow, Breed, Hart & Rodgers, P.C.**

12/11/2006

186 Huntington Avenue • Prudential Center
Boston, MA 02199
(617) 218-2000 • (617) 261-7673 Fax
http://www.tbhr-law.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited. If you have received this email in error please notify JRoman@tbhr-law.com immediately and delete this e-mail from your system.

**IRS Circular 230 Disclosure:** We are required to advise you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used by any taxpayer (i) for the purpose of avoiding any penalties that may be imposed under the Internal Revenue Code, or (ii) in promoting, marketing or recommending any entity, investment plan or arrangement, or any other transaction or matter discussed herein to any taxpayer other than the intended recipient hereof.

# Exhibit 22

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. ) F/K/A KALM-FORSYTHE GLOBAL ) INNOVATIONS, LTD. ) Plaintiff, ) ) v. ) ) RICHARD C. SOMERVILLE, ) SOLAR CONSTRUCTION, INC. F/K/A ) GLOBE RUBBER WORKS, INC. and ) ANNE ROCHE-SOMERVILLE ) Defendants. ) | Civil Action No. 05 10323 DPW |

RICHARD C. SOMERVILLE, )
SOLAR CONSTRUCTION, INC. F/K/A )
GLOBE RUBBER WORKS, INC. and )
ANNE ROCHE-SOMERVILLE )
Plaintiffs-in-Counterclaim, )
)
v. )
)
GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTHE GLOBAL )
INNOVATIONS, LTD. and )
CARL W. FORSYTHE, )
Defendants-in-Counterclaim. )

**ANNE ROCHE-SOMERVILLE, IN HER INDIVIDUAL CAPACITY AND IN HER
CAPACITY AS TEMPORARY EXECUTRIX OF THE ESTATE OF RICHARD C.
SOMERVILLE, AND SOLAR CONSTRUCTION, INC.'S
SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO THE
PLAINTIFF/DEFENDANT-IN-COUNTERCLAIM GLOBE COMPOSITE SOLUTIONS,
LTD. F/K/A KALM-FORSYTHE GLOBAL INNOVATIONS, LTD.**

Anne Roche-Somerville, ("Roche-Somerville") in her individual capacity and in her

capacity as the Temporary Executrix of the Estate of Richard C. Somerville ("Somerville") and

1

Solar Construction f/k/a Globe Rubber Works, Inc. ("Globe Rubber") hereby requests, pursuant to Rule 34 of the Federal Rules of Civil Procedure, that the plaintiff/defendant-in-counterclaim, Globe Composite Solutions, Ltd. f/k/a Kalm-Forsythe Global Innovations, Ltd. ("Globe Composite"), produce the following documents within thirty (30) days of the date of service of this request, such production to take place at the office of Tarlow, Breed, Hart & Rodgers, 101 Huntington Avenue, Boston, MA 02199.

## DEFINITIONS AND INSTRUCTIONS

1.    The term "you" or "yours" shall refer to Globe Composite, its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone under its control.

2.    The term "person" as used herein shall mean any natural person or any business, legal or governmental entity or association.

3.    The term "communication" as used herein shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) including but not limited to any utterance, notation or statement of any nature whatsoever, any conversation (whether by telephone or otherwise) and any meeting and also including but not limited to correspondence, reports and documents as defined below.

4.    The term "correspondence" as used herein shall include but shall not be limited to any letter, e-mail, telegram, telex, notice, message, memorandum or other written communication or transcription of notes of a communication.

5.    The term "report" as used herein shall include but shall not be limited to any study, analysis, appraisal, inspection, test, poll, memorandum or statistical or financial compilation of information.

6.    The term "document" as used herein is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 26 and 34(a). A draft or non-identical copy is a separate document within the meaning of this term. Without limiting the foregoing, the term "document" as used herein shall also include, but shall not be limited to, correspondence, e-mail, financial records, financial statements, corporate records, and reports and in addition, writings, graphic matters, or other media upon which intelligence or information is recorded or placed, notes, inter-office and intra-office communications, circulars, announcements, directories, declarations, evaluations, filings, agreements, contracts, subcontracts, legal instruments, work papers, work orders, work authorizations, process sheets, records, instructions, notes, notebooks, scrapbooks, diaries, logbook minutes, minutes of meetings, calendars, schedules, projections, plans, drawings, specifications, designs, sketches, pictures, photographs, charts, graphs, curves, descriptions, motion pictures, recordings, published or unpublished speeches or articles, press releases, publications, transcripts of telephone conversations, sound recordings, and any other recorded or retrievable information or data (whether encarded, taped, punched or coded, electrostatically, electromagnetically, on computer or otherwise) and any other non-identical copy of the foregoing, whether a draft or a final version, and whether or not sent or received by a person.

7.    The term "concerning" as used herein shall include but shall not be limited to referring to, describing, evidencing, constituting, representing, reflecting, regarding, relating to, memorializing and/or incorporating.

8.    The term "Asset Purchase Agreement" shall mean the agreement entered by and between Somerville, Solar Construction, Inc. f/k/a Globe Rubber Works, Inc. ("Globe Rubber") and Globe Composite on or about August 3, 2004.

3

9.    The term "Employment Agreement" shall mean the employment agreement entered by and between Somerville and Globe Composite on or about August 3, 2004.

10.    The term "$200,000 Note" shall mean the promissory note issued by Globe Composite to Somerville in the original principal amount of $200,000 on or about August 3, 2004.

11.    The term "$150,000 Note" shall mean the promissory note issued by Globe Composite to Somerville in the original principal amount of $150,000 on or about August 3, 2004.

12.    The term "$400,000 Note" shall mean the promissory note issued by Globe Composite and Carl Forsythe in the original principal amount of $400,000 on or about August 3, 2004.

13.    The term "Escrow Agreement" shall mean the agreement entered by and between Globe Composite and Globe Rubber and Escrow Agents, Mark G. Johnson and William R. Rodgers on or about August 3, 2004.

14.    The term "Complaint" as used herein shall mean the Complaint filed on or about February 18, 2005 in the United States District Court, District of Massachusetts docket number 05 10323 DPW.

15.    The term "Globe Rubber" as used herein shall mean Solar Construction, Inc. f/k/a Globe Rubber Works, Inc., its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone acting under its control.

16.    The term "National Oilwell" as used herein shall mean National Oilwell, Inc., its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone acting under its control.

4

17.    The term "Forsythe" as used herein shall mean Carl Forsythe, his employees, agents, attorneys, successors and assigns, or any other person or entity acting on his behalf or at his direction.

18.    The term "Shuster" as used herein shall mean Shuster Corporation, its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone acting under its control.

19.    The term "Newport News" as used herein shall mean Newport News Shipbuilding, Inc., its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone acting under its control.

20.    The term "General Dynamics" as used herein shall mean General Dynamics Corporation, its principals, partners, agents, employees, predecessors, successors, assigns and/or anyone acting under its control.

21.    The term "Forsythe Affidavit" as used herein shall mean the "Affidavit of Carl Forsythe" dated February 18, 2005.

22.    The term "Escrow Claim Letter" as used herein shall mean the letter from Forsythe as President of Globe Composite to Somerville on behalf of Globe Rubber dated January 31, 2005, concerning alleged escrow claims.

23.    The term "Employment Termination Letter" as used herein shall mean the letter from Forsythe as President of Globe Composite to Somerville dated January 31, 2005 concerning Somerville's termination from Globe Composite.

24.    For each and every document or other item for which Globe Composite may claim to be of a privileged nature, please submit in the form of a privilege log the following:

(a) the date of the document;

5

(b) the nature of the document;

(c) the person or entity to whom the document is addressed;

(d) the name of the person or entity from which the document originates; and

(e) the basis for any claim that the document is of a privileged nature.

25.    This request should be deemed to be continuing and as such you are requested to produce documents that you acquire after the date of this request that are responsive to any of the requests herein.

## DOCUMENTS TO BE PRODUCED

1.    All communications between you and financial lenders and/or institutions concerning KFGI from January 1, 2003 to the present.

2.    All communications between you and financial lenders and/or institutions concerning Globe Composite from August 1, 2004 to the present.

3.    All documents concerning commitment letters for financing received by Globe Composite.

4.    All documents concerning any secured or unsecured loans made to you since January 1, 2003, whether from an investor, a banking, financial or investment institution or any other individual or entity.

5.    All documents concerning applications for financing and/or loans from any and all banks, lending institutions, savings and loans associations or other financial institutions prepared by you or on your behalf from January 1, 2003 to the present.

6.    All documents concerning financial projections made by you to your financial lenders whether before or after closing.

7.  All documents concerning bank applications and/or financial statements prepared for any lenders, whether banks, lending institutions, savings and loans associations or other financial institutions.

8.  All photographs of any destroyed and/or disposed of baffle panels and/or gaskets.

9.  All documentation concerning any destroyed and/or disposed baffle panels and/or gaskets.

10. All government investigatory reports concerning the Complaint, Answer and Counterclaim, and/or any other pleadings in this case.

11. All documents concerning field tests and/or field test data conducted on the gaskets.

12. All documents concerning field tests and/or field test data conducted on the baffle panels.

13. All documents concerning purchase orders for the 92" rubber gaskets manufactured by Globe Rubber from 1992 to 1998.

14. All documents concerning the specifications for the 92" rubber gaskets manufactured by Globe Rubber from 1992 to 1998.

15. All documents concerning manufacturing protocols put in place by Globe Composite from August 2004 to the present.

16. All documents concerning files and/or folders maintained by Roger Fasnacht regarding, concerning, referring to and/or relating to the acquisition of Globe Rubber by Globe Composite, whether pre-closing or post-closing.

17. All documents concerning files and/or folders maintained by Roger Fasnacht regarding, concerning, referring to and/or relating to the January 30, 2005 escrow demand letter sent by Globe Composite to Somerville.

18. All documents concerning any back-up documentation for the November 5, 2005, document entitled "GCS Additional Costs Related To Somerville Fraud Actions."

19. All documents concerning Globe Composite's accounts receivable for the 1st and the 15th of each and every month for the time period August, 2004 to the present.

20. All financial statements for GCS and KFGI from January 1, 2002 to the present.

21. All documents concerning payments made by Solar Construction, Inc. and/or Somerville to Globe Composite after August 1, 2004.

22. All documents concerning Globe Composite invoices to Somerville, including but not limited to, invoice number RCS0001.

23. All documents concerning payments of premiums by Globe Composite for any American General Life Insurance Company policies insuring the life of Richard C. Somerville.

24. All documents concerning payments of premiums by Globe Composite for any Lincoln Financial Group policies insuring the life of Richard C. Somerville.

25. All documents concerning the personnel file of Nancy Walker relating to her employment with Globe Rubber and Globe Composite, including but not limited to, payroll records, payroll reports, W-2's for the years 2000 to the present, performance reviews.

26. All documents concerning the personnel file of Charlie Stoddard relating to his employment with Globe Rubber and Globe Composite including but not limited to, payroll records, payroll reports, W-2's for the years 2000 to the present, performance reviews.

27. All documents concerning the personnel file of Bob Murray relating to his employment with Globe Rubber and Globe Composite including but not limited to, payroll records, payroll reports, W-2's for the years 2000 to the present, performance reviews.

28. All tax returns for Globe Composite and/or KFGI from 2002 to the present.

29. All documents concerning a current employee list.

30. All documents relied on by any expert on liability and/or damages.

Respectfully submitted,

The Defendants/Plaintiffs-in-Counterclaim,
Anne Roche-Somerville, in her individual capacity
and in her capacity as Temporary Executrix of the
Estate of Richard C. Somerville and Solar
Construction Inc., f/k/a Globe Rubber Works, Inc.
By their attorneys,

Mark S. Furman (BBO# 181680)
Jennifer C. Roman (BBO# 643223)
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue, Suite 500
Boston, MA 02199
(617) 218-2000

Dated: December 1, 2006

## CERTIFICATE OF SERVICE

I, Jennifer C. Roman, hereby certify that on December 1, 2006, I served the above document upon the Plaintiff/Defendant-in-Counterclaim via first class mail, postage prepaid to Evan T. Lawson and Clare B. Burhoe, Lawson & Weitzen, LLP, 88 Black Falcon Avenue, Suite 345, Boston, MA 02210-2414.

Jennifer C. Roman

9

# Exhibit 23



PAGE NUMBER: 3