UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| GLOBE COMPOSITE SOLUTIONS, LTD. ) | Civil Action No. 05 10323 DPW |
| F/K/A KALM-FORSYTHE GLOBAL ) | |
| INNOVATIONS, LTD. ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RICHARD C. SOMERVILLE, ) | |
| SOLAR CONSTRUCTION, INC. F/K/A ) | |
| GLOBE RUBBER WORKS, INC. and ) | |
| ANNE ROCHE-SOMERVILLE ) | |
| Defendants. ) | |

|  |
|---|
| ) |
| RICHARD C. SOMERVILLE, ) |
| SOLAR CONSTRUCTION, INC. F/K/A ) |
| GLOBE RUBBER WORKS, INC. and ) |
| ANNE ROCHE-SOMERVILLE ) |
| Plaintiffs-in-Counterclaim, ) |
| ) |
| v. ) |
| ) |
| GLOBE COMPOSITE SOLUTIONS, LTD. ) |
| F/K/A KALM-FORSYTHE GLOBAL ) |
| INNOVATIONS, LTD. and ) |
| CARL W. FORSYTHE, ) |
| Defendants-in-Counterclaim. ) |

## AFFIDAVIT OF CHERYL A. WILSON

I, Cheryl A. Wilson, upon personal knowledge know these facts to be true, hereby under oath depose and state the following:

1.  I am a senior paralegal in the legal department of The Lincoln National Life Insurance Company (hereinafter "Lincoln") in Hartford, Connecticut.

2.  On or about, December 12, 2006, Lincoln was served with a Rule 30(b)(6) Subpoena. A true and accurate copy of the Subpoena is attached as **Exhibit 1**.

3.     The subject of Exhibit 1 was an Aetna Life Insurance and Annuity Company ("Aetna") policy insuring the life of Richard C. Somerville (the "Policy"). A true and accurate copy of the policy is attached as **Exhibit 2**. On October 1, 1998, Lincoln assumed the role of administrator of a block of individual life insurance policies on behalf of Aetna. Exhibit 2 is one of the policies administered as of October 1, 1998 by Lincoln on behalf of Aetna.

4.     The named original owner and the original beneficiary of the Policy were Anne Somerville. (See Exhibit 2). According to the change of ownership request recorded February 15, 1999, Globe Rubber Works, Inc. became the owner of the Policy. (The change of ownership is attached as **Exhibit 3**). According to a change of beneficiary request recorded February 15, 1999, Globe Rubber Works, Inc. also became the beneficiary of the Policy. (The change of beneficiary is attached as **Exhibit 4**).

5.     In my position as a senior paralegal with Lincoln, I have had discussions with management personnel specific to Lincoln's document retention policies. Through these discussions, I have become familiar with Lincoln's document retention policies. For the last several years, Lincoln's practice has been to scan all documents pertaining to life insurance policies onto Lincoln's administrative computer system. After being scanned, the documents are stored electronically and are available to be viewed electronically and/or printed. The electronically stored document, which is a scanned image of the document received, would reflect (1) whether the document received was a hardcopy or a facsimile and (2) when the document was scanned into the system. After the documents are scanned and stored electronically on Lincoln's administrative computer system, the original document received is maintained for 90 days. At the expiration of 90 days, the original document is destroyed.

6.     In response to the subpoena, I requested that a diligent search be made to locate the documents requested in the subpoena, including, without limitation, the location of the original documents submitted by Globe Composite Solutions, Ltd. ("Globe Composite") or by someone on its

behalf concerning the life insurance policy insuring Richard Somerville's life (Exhibit 2). At the completion of the search, I was informed and subsequently confirmed by looking at the documents myself that each of the following documents submitted to Lincoln on behalf of Globe Composite were faxed to Lincoln:

a)  the change of ownership form faxed February 16, 2005 (attached as **Exhibit 5**);

b)  the change of beneficiary form dated February 16, 2005 (attached as **Exhibit 6**);

c)  the March 29, 2005, fax from Roger Fasnacht (attached as **Exhibit 7**);

d)  the March 30, 2005, fax from Roger Fasnacht (attached as **Exhibit 8**); and

e)  the June 9, 2005, fax from Roger Fasnacht (attached as **Exhibit 9**).

Lincoln has no record of ever receiving or having ever been in possession of the originals with an original signature of any of the above mentioned documents, although Lincoln did receive fax copies of the above documents. Through consultation with Lincoln's Customer Service department I confirmed that Lincoln will accept (and subsequently record) facsimile copies of change of ownership requests and change of beneficiary requests if all of the paperwork is in good order.

7.  Each of the above documents received by Lincoln, consistent with Lincoln's document retention policies, were scanned into Lincoln's administrative computer system, electronically stored and scheduled for destruction in accordance with Lincoln's usual business practices.

8.  The only original document in Lincoln's possession is a July 5, 2005, letter from Kathryn Pieczarka, Esquire of Lawson & Weitzen LLP. A true and accurate copy of this letter is attached as **Exhibit 10**. Lincoln received the original of this letter in July, 2005. The letter notified Lincoln of the death of Richard Somerville.

9.  As of the date of Richard Somerville's death, Lincoln had not accepted the documentation submitted by Globe Composite seeking to change the owner and beneficiary of the Policy to Globe Composite. As of the time Lincoln received Exhibit 8 in July, 2005, Lincoln had not

3

accepted the documentation submitted by Globe Composite seeking to change the owner and beneficiary of the Policy to Globe Composite.

10.     On or about August 1, 2005, in reliance upon the contents of the July 5, 2005 letter from Kathryn Pieczarka, Esquire of Lawson & Weitzen stating that "Globe Composite Solutions, Ltd. . . . purchased the assets of Globe Rubber Works, Inc. in August, 2004" (see Exhibit 10), Lincoln paid the death benefit proceeds to Globe Composite Solutions, Ltd.

11.     Exhibits 1 through 10 were each received by Lincoln and maintained by Lincoln in the ordinary course of Lincoln's business.

Signed under pains and penalties of perjury this 24th day of January, 2007.

Cheryl A. Wilson

4

# EXHIBIT 1

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

DISTRICT OF      Massachusetts

Globe Composite Solutions, Ltd.
f/k/a Kalm-Forsythe Global Innovations, Ltd.

V.

Anne Roche-Somerville, Individually and in her Capacity
as Executrix of the Estate of Richard C. Somerville, et al.

V.

Carl Forsythe

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-10323 DPW

TO: 30(b)(6) Designee(s)
Lincoln National Life Insurance Comapny, MLW1
Metro Center, 350 Church Street
Hartford, CT 06103-1106

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    See Schedule 1 attached hereto.

| PLACE OF DEPOSITION   Tarlow, Breed, Hart & Rodgers, P.C., 101 Huntington Ave., Suite 500 Boston, MA 02199 | DATE AND TIME 12/14/2006 9:30 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

The documents identified in the attached Schedule B.

| PLACE    Tarlow, Breed, Hart & Rodgers, P.C., 101 Huntington Ave., Suite 500 Boston, MA 02199 | DATE AND TIME 12/14/2006 9:30 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 12/7/2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jennifer C. Roman, Esq., Tarlow Breed, Hart & Rodgers, P.C., 101 Huntington Ave., Suite 500, Boston, MA 02199 (617) 218-2000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE 1

The attention of the deponent is drawn to its obligation under Rule 30(b)(6) to designate one or more officers, directors, or managing agents, or other person(s) who consent to testify on its behalf and may set forth, for each person designated, the matters on which he will testify.  Examination is requested of the person(s) having the most knowledge of matters relating to Schedule A, attached hereto.

## SCHEDULE A

The attention of the deponent is drawn to its obligation under Rule 30(b)(6) to designate one or more officers, directors, or managing agents, or other person(s) who consent to testify on its behalf and may set forth, for each person designated, the matters on which he will testify. Examination is requested of the person(s) having the most knowledge of matters relating to:

1. All documents concerning Lincoln Financial Group Policy/Certificate Number G1637194 issued by ING Life Insurance and Annuity Company.

2. All communications concerning Lincoln Financial Group Policy/Certificate Number G1637194 issued by ING Life Insurance and Annuity Company during the time period August 1, 2004 through August 31, 2005.

3. The Lincoln Financial Group life insurance policy insuring the life of Richard C. Somerville and the circumstances surrounding any change of beneficiary on said Policy.

4. The Lincoln Financial Group life insurance policy insuring the life of Richard C. Somerville and the circumstances surrounding any change of owner on said Policy.

5. The Lincoln Financial Group life insurance policy insuring the life of Richard C. Somerville and the circumstances surrounding Globe Composite Solutions, Ltd. submitting a claim under said Policy.

6. The circumstances surrounding the payment of the death claim under the Lincoln Financial Group Policy/Certificate Number G1637194.

4

7.    The names and addresses of the persons with knowledge concerning the

payment of the death claim under the Lincoln Financial Group

Policy/Certificate Number G1637194.

8.    Whether or not Lincoln Financial Group has or ever had the original of the

two page document attached hereto as Exhibit 1.

SCHEDULE B

DEFINITIONS

A. The term "document" or "documents" as used herein includes, without limitation, any original and all copies of any writings, memoranda, notes, tapes or other sound recordings, photographs, contracts, agreements, purchase and sale contracts, federal and state tax returns, invoices, checks, statements, receipts, letters, notes, rental income records, telephone logs, diaries, calendar entries, telegrams, telexes, or other forms of communication or correspondence, books, catalogs, pamphlets, periodicals, lists, brochures, reports, minutes, books or records of account, schedules, computer printouts, items stored on computer disc or on a computer, e-mail, tapes or other form of document in your possession, custody or control.

B. The term "communication" as used herein shall mean any written or oral transmission of fact, information, or opinion, including but not limited to, any utterance, notation, statement of any nature whatsoever, any conversation (whether by telephone or otherwise) and any meeting, and also including, but not limited to, telephone calls, conference calls, correspondence, letters, memoranda, e-mail or faxes.

C. The term "concerning" means and includes supporting, embodying, setting forth, relating to, referring to, responding to, alluding to, commenting on, in respect of, about, describing, regarding, discussing, showing, mentioning, analyzing, evidencing, reflecting, constituting or in any manner arising from or in connection with.

D. The term the "Policy" as used herein shall mean the Lincoln Financial Group Policy/Certificate Number G1637194 insuring Richard Somerville, issued by ING Life Insurance and Annuity Company.

INSTRUCTIONS

A. Unless otherwise specified, the time period covered by the subpoena is the period from January 1, 2002 to the present.

B. For any documents or communications requested that are maintained as a computerized record, produce all data files.

ITEMS TO BE PROVIDED BY THE DEPONENT

1. The originals of any and all documents and/or communications concerning the Policy including but not limited to any and all correspondence, emails, records of telephone calls, notes, and memoranda.

2.    The originals of any document concerning the Policy and the circumstances surrounding the change of beneficiary on said Policy.

3.    The originals of any document concerning the Policy and the circumstances surrounding the change of owner on said Policy.

4.    The original of the two page document attached hereto as Exhibit 1.

# Exhibit 1

/30/2005 16:53 FAX 7818716631                                                    ⌐001



Globe Composite Solutions
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)



To: _Elonie Smith_          From: _Roger Regnault_

Fax: _860-466-2835_         Pages: _2_

Phone:                      Date: _3/30/05_

Re: _Policy G1639194_       CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Elonie,
Copy of signed letter from Richard Somerville.
Please let me know if all paperwork is complete.

Thanks

Roger

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above address by mail.

RECEIVED TIME  MAR. 30.  4:49PM

03/30/2005 16:54 FAX 7818716631                                                    @002



**GRW**
GLOBE RUBBER WORKS, INC.
254 Beech Street
Rockland, Massachusetts
02370-0188
USA

· Pioneers in Formulating
The Non-Metallic Age...Est. 1950

781-871-3700
Fax 781-871-6631

Ms. Elonie Smith
Client Service Center, MIR1
The Lincoln National Life Insurance Company
Post Office Box 5048
Hartford, CT 06102

        Re:    Beneficiary Change
               Policy/Certificate No: G1637194
               Insured: Richard C. Somerville

Dear Ms. Smith:

        Pursuant to your letter dated March 10, 2005, I have attached the
Annual Report that was filed with the Commonwealth of Massachusetts as
evidence that I, Richard C. Somerville, was the sole Owner/Officer of Globe
Rubber Works, Inc.

Very truly yours,

Richard C. Somerville
Globe Rubber Works, Inc.

# EXHIBIT 2

# AETNA LIFE INSURANCE AND ANNUITY COMPANY

Hartford, Connecticut 06156

(A STOCK COMPANY)

RICHARD C SOMERVILLE

G1637194

While this Policy is in force, Aetna will pay Proceeds subject to all its provisions. Other rights and benefits are provided as described in this Policy.

## THIS POLICY IS A LEGAL CONTRACT BETWEEN YOU AND AETNA
### PLEASE READ YOUR POLICY CAREFULLY

### RIGHT OF POLICY EXAMINATION

This Policy may be returned to Aetna or its representative within 10 days after its receipt. Return this Policy to Aetna, Individual Life Insurance, at 151 Farmington Avenue, Hartford, Connecticut 06156. Upon its return, this Policy will be deemed void from its beginning and all premiums paid will be refunded.

Signed for Aetna on its Date of Issue.

_____          _____
Secretary                         President


_____
Registrar


## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- ¤  FLEXIBLE PREMIUMS PAYABLE UNTIL MATURITY DATE OR DEATH
- ¤  PROCEEDS PAYABLE UPON THE FIRST EVENT TO OCCUR - SURRENDER, MATURITY OR DEATH
- ¤  NON-PARTICIPATING - NO DIVIDENDS PAYABLE

70212-95USMA

0046110

## Table of Contents

|  | Page No. |
|---|---|
| Policy Specifications | PS1 |
| Policy Summary | 1 |
| Definitions | 1 |
| Attained Age | 1 |
| Basic Monthly Premium | 1 |
| Date of Issue | 1 |
| Death Benefit | 1 |
| Debt | 1 |
| Home Office | 1 |
| Initial Coverage | 1 |
| Loan Value | 1 |
| Maturity Date | 1 |
| Minimum Specified Amount | 1 |
| Monthly Deduction Day | 1 |
| Net Premium | 2 |
| Policy Month | 2 |
| Policy Year/Policy Anniversary | 2 |
| Proceeds | 2 |
| Specified Amount | 2 |
| Subsequent Application(s) | 2 |
| We, Our, Us, Company | 2 |
| Written Request | 2 |
| You, Your | 2 |
| General Provisions | 2 |
| The Contract | 2 |
| Owner | 2 |
| Beneficiary | 2 |
| Changes in Owner and Beneficiary | 3 |
| Assignment | 3 |
| Non-Participating | 3 |
| Policy Settlement | 3 |
| Age | 3 |
| Change of Address | 3 |
| Annual Report | 3 |
| Projection of Benefits | 3 |
| Proceeds | 3 |
| Coverage Beyond Maturity | 4 |
| Suicide and Incontestability | 4 |
| Suicide Exclusion | 4 |
| Incontestability | 4 |
| Premiums and Reinstatement | 4 |
| Premiums | 4 |
| Planned Premiums | 4 |
| Additional Premiums | 5 |
| No Lapse Coverage | 5 |

|  | Page No. |
|---|---|
| Specified Period | 5 |
| Grace Period | 5 |
| Reinstatement | 6 |
| Death Benefit Options | 6 |
| General | 6 |
| Option 1 | 6 |
| Option 2 | 6 |
| Death Benefit Based on a Percentage of the Cash Value | 6 |
| Policy Values | 7 |
| Basis of Calculation | 7 |
| Cash Value | 7 |
| Interest Credited | 7 |
| Monthly Deductions | 7 |
| Cost of Insurance | 8 |
| Cost of Insurance Rate | 8 |
| Nonforfeiture Provisions | 8 |
| Continuation of Coverage | 8 |
| Surrender Value | 8 |
| Surrender Charge | 9 |
| Partial Surrender | 9 |
| Policy Loans | 9 |
| General | 9 |
| Loan Interest Rate | 9 |
| Repayment | 10 |
| Changes in Insurance Coverage | 10 |
| General | 10 |
| Increase in Specified Amount | 10 |
| Decrease in Specified Amount | 10 |
| Change in Death Benefit Option | 10 |
| Change from Option 1 to 2 | 10 |
| Change from Option 2 to 1 | 11 |
| Settlement Options | 11 |
| Conditions | 11 |
| Income Options | 11 |
| Option 1 - Interest | 11 |
| Option 2 - Fixed Period | 11 |
| Option 3 - Life Income | 12 |
| Option 4 - Joint Life Income Reducing for Survivor | 12 |
| Interest Rate | 13 |
| Betterment of Payments | 13 |
| Withdrawals and Death of the Payee | 13 |

Any riders and a copy of the application(s) are at the end of this Policy.

70212-95USNA

0046111

FIPS 2 LUSP 11/04/98 11:14:20

P O L I C Y   S P E C I F I C A T I O N S

NAME OF
INSURED   RICHARD C SOMERVILLE

POLICY   G 1 637 194      SEPTEMBER 1, 1998  DATE OF ISSUE
NUMBER:


SEX    AGE    PREMIUM CLASS
MALE   64     STANDARD NONSMOKER

BENEFICIARY - ANNE P SOMERVILLE, WIFE OF THE INSURED IF SAID WIFE SURVIVES THE
              INSURED, OTHERWISE TO  THE EXECUTORS OR ADMINISTRATORS OF THE
              INSURED.

POLICY OWNER - ANNE P SOMERVILLE, WIFE OF THE INSURED UNTIL THE DEATH OF SAID
              WIFE,  THEREAFTER THE INSURED.

PLAN - FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

INITIAL SPECIFIED AMOUNT:      $250,000   DEATH BENEFIT OPTION:  1

MINIMUM SPECIFIED AMOUNT:      $100,000

MATURITY DATE:     SEPTEMBER 1, 2034

COVERAGE BEYOND MATURITY ELECTED:   NO

INITIAL PLANNED PREMIUM:       $4,544.62
INITIAL PREMIUM MODE:    SEMI-ANNUAL

BASIC MONTHLY PREMIUM
   BASIC POLICY ONLY:          $523.50    MONTHLY DEDUCTION DAY:  THE  1ST  DAY
                                          OF EACH MONTH

SPECIFIED PERIOD EXPIRATION DATE:   SEPTEMBER 1, 2003

MONTHLY POLICY FEE:     $6.00

GUARANTEED MAXIMUM PREMIUM LOAD:      3.00%

POLICY LOAN INTEREST RATE: VARIABLE


POLICY MAY TERMINATE PRIOR TO THE MATURITY DATE IF PREMIUMS PAID AND INTEREST
CREDITED ARE INSUFFICIENT TO CONTINUE COVERAGE TO THAT DATE,  PLEASE SEE YOUR
STATEMENT OF POLICY COST AND BENEFIT INFORMATION FOR FURTHER DETAILS.

FIPS 2 LUSP 11/04/98 11:14:20
G 1 837 194    RICHARD C. SOMERVILLE                           PS    2

TABLE OF SURRENDER CHARGES

| POLICY MONTH STARTING | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 |
|---|---|---|---|---|---|---|---|
| | ---- | ---- | ---- | ---- | ---- | ---- | ---- |
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | | 12,341 | 11,865 | 11,385 | 10,898 | 10,406 | 9,905 |
| FEB | | 12,301 | 11,825 | 11,344 | 10,857 | 10,364 | 9,863 |
| MAR | | 12,262 | 11,785 | 11,304 | 10,817 | 10,323 | 9,820 |
| APR | | 12,222 | 11,745 | 11,263 | 10,776 | 10,282 | 9,777 |
| MAY | | 12,182 | 11,706 | 11,223 | 10,735 | 10,240 | 9,736 |
| JUN | | 12,143 | 11,666 | 11,182 | 10,694 | 10,199 | 9,693 |
| JUL | | 12,103 | 11,626 | 11,142 | 10,653 | 10,157 | 9,651 |
| AUG | | 12,063 | 11,586 | 11,102 | 10,612 | 10,116 | 9,608 |
| SEP | 12,500 | 12,025 | 11,547 | 11,062 | 10,572 | 10,075 | 9,567 |
| OCT | 12,460 | 11,984 | 11,505 | 11,021 | 10,530 | 10,032 | 9,523 |
| NOV | 12,420 | 11,944 | 11,465 | 10,980 | 10,489 | 9,989 | 9,480 |
| DEC | 12,381 | 11,904 | 11,425 | 10,939 | 10,447 | 9,947 | 9,438 |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20
POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT.
THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE
DATE OF THE INCREASE.

0046113

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE                                    PS   3

TABLE OF SURRENDER CHARGES (CONTINUED)

| POLICY MONTH STARTING | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|---|---|---|---|---|---|---|---|
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | 9,395 | 8,878 | 8,354 | 7,818 | 7,272 | 6,714 | 6,138 |
| FEB | 9,351 | 8,835 | 8,310 | 7,773 | 7,226 | 6,666 | 6,089 |
| MAR | 9,309 | 8,792 | 8,266 | 7,728 | 7,180 | 6,619 | 6,040 |
| APR | 9,266 | 8,748 | 8,221 | 7,682 | 7,134 | 6,572 | 5,991 |
| MAY | 9,223 | 8,705 | 8,177 | 7,637 | 7,088 | 6,524 | 5,942 |
| JUN | 9,180 | 8,662 | 8,133 | 7,592 | 7,042 | 6,477 | 5,893 |
| JUL | 9,137 | 8,618 | 8,088 | 7,547 | 6,996 | 6,429 | 5,844 |
| AUG | 9,094 | 8,575 | 8,044 | 7,501 | 6,950 | 6,382 | 5,795 |
| SEP | 9,052 | 8,532 | 8,000 | 7,457 | 6,905 | 6,335 | 5,747 |
| OCT | 9,008 | 8,487 | 7,954 | 7,410 | 6,856 | 6,285 | 5,695 |
| NOV | 8,965 | 8,443 | 7,908 | 7,364 | 6,809 | 6,236 | 5,644 |
| DEC | 8,922 | 8,399 | 7,864 | 7,318 | 6,761 | 6,187 | 5,592 |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20
POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT.
THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE
DATE OF THE INCREASE.

0046114

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE

PS  4

TABLE OF SURRENDER CHARGES (CONTINUED)

| POLICY MONTH STARTING | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|
| | $$ | $$ | $$ | $$ | $$ | $$ | $$ |
| JAN | 5,541 | 4,910 | 4,235 | 3,503 | 2,696 | 1,792 | 758 |
| FEB | 5,489 | 4,855 | 4,175 | 3,437 | 2,624 | 1,709 | 663 |
| MAR | 5,438 | 4,801 | 4,117 | 3,373 | 2,552 | 1,628 | 568 |
| APR | 5,386 | 4,745 | 4,057 | 3,308 | 2,479 | 1,546 | 473 |
| MAY | 5,335 | 4,691 | 3,998 | 3,244 | 2,408 | 1,464 | 379 |
| JUN | 5,283 | 4,636 | 3,939 | 3,178 | 2,336 | 1,382 | 284 |
| JUL | 5,232 | 4,581 | 3,880 | 3,114 | 2,263 | 1,300 | 189 |
| AUG | 5,180 | 4,526 | 3,820 | 3,049 | 2,191 | 1,218 | 0 |
| SEP | 5,130 | 4,472 | 3,762 | 2,985 | 2,120 | 1,137 | |
| OCT | 5,074 | 4,412 | 3,696 | 2,912 | 2,037 | 1,042 | |
| NOV | 5,020 | 4,353 | 3,632 | 2,840 | 1,955 | 947 | |
| DEC | 4,965 | 4,294 | 3,567 | 2,768 | 1,874 | 852 | |

THIS TABLE APPLIES TO THE INITIAL SPECIFIED AMOUNT FOR THE FIRST 20
POLICY YEARS.

AN ADDITIONAL TABLE WILL APPLY UPON EACH INCREASE IN THE SPECIFIED AMOUNT.
THE 20 YEAR PERIOD FOR THE ADDITIONAL TABLE WILL BEGIN ON THE EFFECTIVE
DATE OF THE INCREASE.

0046115

FIPS 2 LUSP 11/04/98 11:14:20
G 1 637 194   RICHARD C SOMERVILLE

PS  5

TABLE OF
GUARANTEED MAXIMUM INSURANCE RATES
PER $1,000 OF AMOUNT AT RISK

| POLICY YEAR | MONTHLY RATE |
|---|---|
| 1998 | 1.47050 |
| 1999 | 1.63180 |
| 2000 | 1.80660 |
| 2001 | 1.99310 |
| 2002 | 2.19150 |
| 2003 | 2.40740 |
| 2004 | 2.65200 |
| 2005 | 2.96790 |
| 2006 | 3.25140 |
| 2007 | 3.62730 |
| 2008 | 4.04880 |
| 2009 | 4.50690 |
| 2010 | 4.99570 |
| 2011 | 5.51100 |
| 2012 | 6.04720 |
| 2013 | 6.62020 |
| 2014 | 7.25220 |
| 2015 | 7.96040 |
| 2016 | 8.76450 |
| 2017 | 9.67780 |
| 2018 | 10.67950 |
| 2019 | 11.75750 |
| 2020 | 12.88130 |
| 2021 | 14.05990 |
| 2022 | 15.26710 |
| 2023 | 16.52100 |
| 2024 | 17.83670 |
| 2025 | 19.23900 |
| 2026 | 20.76660 |
| 2027 | 22.49840 |
| 2028 | 24.70920 |
| 2029 | 27.82760 |
| 2030 | 32.78850 |
| 2031 | 41.45780 |
| 2032 | 57.95660 |
| 2033 | 90.90910 |

0046116

## Policy Summary

It is important that You understand Your insurance policy. We have tried to use understandable language throughout this Policy. Should You have any questions after You have read it, please call the representative who sold this Policy to You or call Us. This summary is not a substitute for the detailed policy provisions.

This is a flexible premium adjustable life insurance policy. Proceeds as described in this Policy will be paid upon surrender, maturity, or death of the Insured.

Sufficient premiums must be paid to continue this Policy in force. Premium reminder notices will be sent for Planned Premiums and for premiums required to continue this Policy in force. This Policy may be reinstated.

Other rights and benefits are explained in this Policy.

## Definitions

**Attained Age**
Issue age of the Insured as shown in the Policy Specifications, increased by the number of Policy Years elapsed. Issue age is the Insured's age on his/her birthday nearest this Policy's Date of Issue.

**Basic Monthly Premium**
The Basic Monthly Premium is shown in the Policy Specifications or in the supplemental Policy Specifications if later changed.

**Date of Issue**
The effective date for Initial Coverage will be the Date of Issue shown in the Policy Specifications. The Date of Issue and the effective date for any change in coverage will be the Date of Coverage Change shown in the supplemental Policy Specifications which will be sent to You. Coverage is conditional on payment of the first premium, if any.

**Death Benefit**
The amount described in the Death Benefit Option provision that is payable on the date of death, subject to all provisions contained in this Policy.

**Debt**
The sum of all unpaid loans. The amount necessary to repay all loans in full is the Debt plus any accrued interest.

**Home Office**
Our main office, located at 151 Farmington Avenue, Hartford, CT 06156.

**Initial Coverage**
Coverage provided by this Policy prior to any change in coverage.

**Loan Value**
The Surrender Value less an amount sufficient to keep this Policy in force to the end of the Policy Year. Such amount is calculated based on current monthly deductions and current loan interest rate.

**Maturity Date**
The date on which the Insured reaches Attained Age 100.

**Minimum Specified Amount**
The Minimum Specified Amount for this Policy is shown in the Policy Specifications. The Specified Amount for this Policy cannot be decreased below the Minimum Specified Amount.

**Monthly Deduction Day**
The first Monthly Deduction Day is the Date of Issue. Monthly Deduction Days occur each month thereafter on the same day of the month as the Date of Issue.

70212-95USMA

0046117

Net Premium
The Premium paid less a premium load. The guaranteed maximum premium loads are shown in the Policy Specifications.

Policy Month
The Policy Month begins each month on the same day of the month as the Date of Issue.

Policy Year/Policy Anniversary
The first Policy Year is the 12 month period beginning on the Date of Issue. Your Policy Anniversary is equal to the Date of Issue plus 1 year, 2 years, etc.

Proceeds
The amount that We will pay on the death of the Insured, the Maturity Date, or the surrender of this Policy as described in the Proceeds provision.

Specified Amount
The Specified Amount is shown in the Policy Specifications or the supplemental Policy Specifications, if later changed.

Subsequent Application(s)
Any application after the initial application, initiated by You or by Us.

We, Our, Us, Company
Refers to Aetna Life Insurance and Annuity Company, its successors or assigns.

Written Request
A request in writing, in a form satisfactory to Us and received by Us at the Home Office.

You, Your
Refers to the Owner(s) of this Policy.

## General Provisions

The Contract
This Policy, the initial application on the Insured, any Subsequent Applications, and any amendment riders constitute the entire contract. Copies of all applications are attached to and made a part of this Policy. Only the President or the Corporate Secretary of the Company may agree to a change in this Policy, and then only in writing.

All statements made by or for the Insured are representations and not warranties.

No statement will be used to void this Policy or defend against a claim unless it is contained in the initial application or Subsequent Applications.

Owner
Unless otherwise stated, this Policy is owned by the Insured.

During the lifetime of the Insured, all rights granted by this Policy or allowed by Us belong to the Owner.

If this Policy is owned jointly, any exercise of rights granted by this Policy must be made jointly.

Beneficiary
The individual or entity that will receive any Proceeds on the death of the Insured is the Beneficiary. The Beneficiary is stated in the application, unless later changed.

If no designated Beneficiary is living at the time of the Insured's death, all benefits will be paid to the Owner or the Owner's executors, administrators, or assigns.

70212-95USMA

0046118

**Changes in Owner and Beneficiary**
Unless this Policy states otherwise, the Owner or the Beneficiary, or both, may be changed. This may be done as often as desired by the Owner of record during the lifetime of the Insured and while this policy is in force.

To change the Owner or Beneficiary Your Written Request must be sent to Us. When We give Our written acceptance, the change will take effect as of the date Your Written Request was signed. The change will be subject to any action We take before Our written acceptance of the change.

**Assignment**
A copy of an assignment must be filed at the Home Office. Until We receive such notice, We will not be required to take notice of, or be responsible for, any transfer of interest in this Policy by assignment, agreement, or otherwise.

We will not be responsible for the validity of any assignment.

**Non-Participating**
No dividends will be paid.

**Policy Settlement**
All amounts payable by Us will be paid by the Home Office. We will deduct from the amount payable at settlement any Debt plus accrued interest and any overdue amount necessary to keep this Policy in force to the date that Proceeds are payable. We may require return of this Policy.

**Age**
If the Insured's age is misstated, the amount of the Death Benefit will be adjusted to reflect the coverage that would have been purchased by the most recent mortality charge at the correct age.

**Change of Address**
Please notify Us at the Home Office of a change in Your mailing address.

**Annual Report**
At least once a year, We will send You a report which includes:

* the current status of this Policy;

* all financial transactions in connection with this Policy since the last report; and

* any other information required by the state in which this Policy is delivered.

**Projection of Benefits**
We will provide a projection of illustrative future death benefits and cash values at any time upon Your Written Request. We reserve the right to charge a $25.00 fee for this service.

**Proceeds**
Proceeds on the death of the Insured will equal:

1. the Death Benefit; less

2. Debt plus any accrued interest; less

3. any overdue monthly deductions.

If Coverage Beyond Maturity is not elected, Proceeds on maturity of this Policy will equal:

1. the Cash Value on the Maturity Date; less

2. Debt plus any accrued interest.

Proceeds on surrender of this Policy will equal the Surrender Value as described in the Surrender Value provision.

All Proceeds are subject to adjustment under the Age, Incontestability, Suicide, and Grace Period Provisions.

Page 3

0046110

**Coverage Beyond Maturity**
You may elect to continue coverage beyond the Maturity Date. If elected by Your Written Request, the following will apply:

- We will continue to credit interest to the Cash Value of this Policy as described in the Interest Credited provision.
- Monthly Deductions will be calculated with a Cost of Insurance rate equal to zero.
- Proceeds payable on death will be as described in the Proceeds provision of this Policy, under Proceeds on death.

Rights and benefits described in this Policy will be available during the lifetime of the Insured.

No future premium payments will be accepted except for the amount required to keep this policy in force.

## Suicide and Incontestability

**Suicide Exclusion**
**Initial Coverage**
If the Insured dies by suicide, while sane or insane, within 2 years from the Date of Issue of this Policy, We will pay:

1. premiums paid; less
2. any Partial Surrenders; less
3. Debt plus any accrued interest.

If the Insured dies by suicide while sane or insane, more than 2 years from the Date of Issue of this Policy but within 2 years from the Date of Issue of any increase in coverage, We will pay:

1. The Death Benefit for any coverage in effect more than 2 years from the Date of Issue of this Policy; plus
2. the Monthly Deductions for any increase in coverage.

All amounts will be calculated as of the date of death.

**Incontestability**
With respect to statements made in the initial applications or any Subsequent Applications for the Insured:

> We will not contest this Policy after it has been in force during the lifetime of the Insured for 2 years from its Date of Issue unless the statements made were willfully false, fraudulent or misleading.

If this Policy is contested, Your rights or the Beneficiary's rights may be affected.

## Premiums and Reinstatement

**Premiums**
The first premium is due on the Date of Issue. Premium due dates are measured from the Date of Issue.

Sufficient premiums must be paid to continue this Policy in force.

Any premiums after the first premium are payable only at the Home Office. Send Your check or money order, payable to Aetna, to the Home Office. A receipt signed by an officer of the Company will be given upon request.

**Planned Premiums**
Planned Premium is the premium amount that will be billed. Premium reminder notices for Planned Premiums will be sent at frequencies of 3, 6 or 12 months, or at any other frequency to which We agree. The Planned Premium as of the Date of Issue is shown in the Policy Specifications.

70212-95USMA

0046120

You may change the amount and frequency of the Planned Premium by notifying Us. We may limit any increase in Planned Premiums in order to preserve the favorable income tax status of this Policy. We may require satisfactory evidence of insurability on the Insured if payment of the new Planned Premium during the current Policy Year would increase the difference between the Cash Value and the Death Benefit.

Additional Premiums
Additional Premiums are premium payments in excess of Planned Premiums. Additional Premiums may be paid at any time while this Policy is in force and before the Maturity Date.

We may limit the amount and number of Additional Premiums in order to preserve the favorable income tax status of this Policy.

We may require satisfactory evidence of insurability on the Insured if payment of the Additional Premium during the current Policy Year would increase the difference between the Cash Value and the Death Benefit.

Specified Period
This Policy will not terminate before the Specified Period Expiration Date shown in the Policy Specifications, or 5 years from the Date of Issue of any increase when that 5 year period would extend beyond the original Specified Period Expiration Date, if on each Monthly Deduction Day within that period the Cash Value less Debt is greater than zero and the sum of premiums paid equals or exceeds:

1.  The sum of the Basic Monthly Premiums including Riders for each Policy Month from the start of the period including the current month; plus

2.  any Partial Surrenders; plus

3.  any increase in Debt since the Policy's Date of Issue or Date of Issue of any increase.

If, on any Monthly Deduction Day within the Specified Period, the sum of premiums paid is less than the sum of 1, 2 and 3 above, the Grace Period provision will apply.

After the Specified Period expires, the Cash Value may be insufficient to keep this Policy in force. Payment of an Additional Premium may be necessary.

Grace Period
If the Surrender Value is insufficient to allow a Monthly Deduction on the Monthly Deduction Day and this Policy is within the period of the No Lapse Coverage provision We will allow You 61 days of grace for payment of an amount equal to the lesser of (1) or (2) where;

(1)  the amount necessary to meet the conditions of the Specified Period provision; or

(2)  an amount sufficient to cover the Monthly Deduction(s) that would result in the Surrender Value being greater than zero.

If this Policy is no longer within a Specified Period and the Surrender Value is insufficient to allow a Monthly Deduction on the Monthly Deduction Day, We will allow You 61 days of grace for payment of an amount sufficient to allow the Monthly Deduction. We may require payment of the amount necessary to keep this Policy in force for the current month plus two additional months.

During the days of grace this Policy will stay in force. If the Insured's death occurs during the days of grace, We will deduct an amount sufficient to allow the overdue Monthly Deduction(s) from the Death Benefit.

Written notice will be mailed to Your last known address, according to Our records, not less than 31 days before termination of this Policy. This notice will also be mailed to the last known address of any assignee of record.

If payment is not made within 61 days after the Monthly Deduction Day, this Policy will terminate without value at the end of the Grace Period. The termination will be effective on the Monthly Deduction Day for the first unpaid Monthly Deduction.

70212-95USMA

## Reinstatement

If this Policy terminates as provided in the Grace Period provision, it may be reinstated. To reinstate this Policy, the following conditions must be met:

- This Policy has not been fully surrendered.
- You must request reinstatement within 5 years after the date of termination.
- We must receive satisfactory evidence of insurability on the Insured.
- We must receive a premium payment sufficient to keep this policy in force for three months.

If this Policy is reinstated while the Specified Period provision would be in effect if this Policy had not lapsed, all values including Debt will be reinstated to the point they were on the date of lapse.

If this Policy is reinstated after the Specified Period provision has expired, this Policy will be reinstated on the Monthly Deduction Day following Our approval. This Policy's Cash Value at reinstatement will be the Net Premium paid less the Monthly Deduction for that day.

If this Policy's Cash Value less any Debt including accrued interest was not sufficient to cover the full Surrender Charge at the time of lapse, the remaining portion of the Surrender Charge will also be reinstated at the time of this Policy's reinstatement.

## Death Benefit Options

### General

The Proceeds payable upon the Insured's Death will be as provided under one of the following Death Benefit options. The option for this Policy as of the Date of Issue is shown in the Policy Specifications. If You change the Death Benefit option, the option will be shown in the supplemental Policy Specifications which will be sent to You.

### Option 1

The Specified Amount includes the Cash Value. Under this option, the Death Benefit will be the greater of (a) the Specified Amount on the date of Death, or (b) a percentage of the Cash Value, as described below.

### Option 2

The Specified Amount is in addition to the Cash Value. Under this option, the Death Benefit will be the greater of (a) the Specified Amount plus the Cash Value on the date of Death, or (b) a percentage of the Cash Value, as described below.

### Death Benefit Based on a Percentage of the Cash Value

Item (b) under either Death Benefit option will not be less than a percentage of the Cash Value on the date of death as determined in the following table.

| ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % | ATTAINED AGE | CASH VALUE % |
|---|---|---|---|---|---|---|---|
| 0-40 | 250% | | | | | | |
| 41 | 243 | 51 | 178% | 61 | 128% | 71 | 113% |
| 42 | 236 | 52 | 171 | 62 | 126 | 72 | 111 |
| 43 | 229 | 53 | 164 | 63 | 124 | 73 | 109 |
| 44 | 222 | 54 | 157 | 64 | 122 | 74 | 107 |
| 45 | 215 | 55 | 150 | 65 | 120 | 75-90 | 105 |
| 46 | 209 | 56 | 146 | 66 | 119 | 91 | 104 |
| 47 | 203 | 57 | 142 | 67 | 118 | 92 | 103 |
| 48 | 197 | 58 | 138 | 68 | 117 | 93 | 102 |
| 49 | 191 | 59 | 134 | 69 | 116 | 94 | 101 |
| 50 | 185 | 60 | 130 | 70 | 115 | 95 + | 100 |

70212-95USMA

0046122

## Policy Values

### Basis of Calculation

Minimum Cash Values are based on the 1980 Commissioners Standard Ordinary Mortality Table B, Smoker or Nonsmoker. If the Insured's Attained Age is 14 or less, values are based on the Commissioners Standard Ordinary Mortality Table B.

Interest is assumed at the rate of 4.0% per year.

The values of this Policy equal or exceed those required by law in the state where this Policy is delivered. A detailed statement has been filed with the state which shows how to compute those values. The non-guaranteed elements of this policy may be adjusted by Us from time to time. Adjustments will be on a class basis and will be based on Our estimates for future factors such as mortality, investment income, expenses, and the length of time policies stay in force. Any adjustments will be made on a nondiscriminatory basis.

### Cash Value

The Cash Value on the Date of Issue will be the Net Premium paid less the Monthly Deduction for the first month.

The Cash Value after the Date of Issue will equal:

1. The Cash Value on the previous Monthly Deduction Day less the Monthly Deduction for that day with interest to date; plus

2. Net Premiums paid since the previous Monthly Deduction Day with interest to date; less

3. any Partial Surrenders since the previous Monthly Deduction Day with interest to date.

### Interest Credited

We will credit interest on the Cash Value at the guaranteed rate of 4.0% per year. This rate equals 0.32737% per month, compounded monthly. We may credit interest in excess of the guaranteed rate. The credited interest rate takes into account Our return on General Account Invested assets and the amortization of any realized capital gains and/or losses which the Company may incur on the assets.

Policies that are in force for at least 10 years will have additional interest credited up to 1% when We credit interest in excess of the guaranteed minimum rate of 4%.

This additional interest varies based on the amount of interest we are crediting.

* When We credit interest of 6% or greater, the additional interest rate will be 1%.

* When We credit interest at a rate between 4% and 6% the additional interest will be decreased proportionately, from the 1% credited when the rate is 6%. In other words, if the credited interest rate is less than 6%, subtract 4% from that rate and divide the difference by 2. The result is the additional excess interest we will credit. The additional excess interest that We will pay when the credited rate is 5% is .5%.

* When We credit interest of 4% the additional interest rate will be 0%.

During Policy Years 1-10, We will credit interest to the portion of the Cash Value equal to the Debt at the policy Loan Interest Rate less 2% but never below the minimum guaranteed rate of 4%. Beginning with the 11th Policy Year We will credit interest to the portion of the Cash Value equal to the Debt at the policy Loan Interest Rate less 1%.

### Monthly Deductions

Monthly Deductions begin on the Date of Issue and occur on the same day each month thereafter. Deductions are made from the unloaned portion of the Cash Value.

The Monthly Deduction is equal to:

1. The Cost of Insurance as calculated below; plus

2. the monthly policy fee, shown in the Policy Specifications.

Cost of Insurance
The Cost of Insurance on any Monthly Deduction Day will be (1) multiplied by the result of (2) minus (3) where:

(1) the Cost of Insurance Rate on that date divided by 1,000;

(2) the Death Benefit on that date divided by 1.0032737;

(3) the Cash Value on that date before computing the Monthly Deductions for the Cost of Insurance for this Policy.

If the result of 2 minus 3 is less than zero, use zero.

Cost of Insurance Rate
The monthly Cost of Insurance Rate is based on the Insured's issue age, number of Policy Years elapsed, and premium class. For the Initial Coverage, the premium class on the Date of Issue will be used. For any increase, the premium class for that increase will be used. If the Insured is assigned a premium class which designates smoker and this classification changes, You may, by Written Request, reclassify the Insured any time after the first Policy Anniversary. Upon Our acceptance of the change, supplemental Policy Specifications will be sent to You.

The monthly Cost of Insurance Rates may be adjusted by Us from time to time. Adjustments will be on a class basis and will be based on Our estimates for future factors such as mortality, investment income, expenses, and the length of time policies stay in force. Any adjustments will be made on a nondiscriminatory basis.

The rate during any Policy Year will never exceed the rate shown for that year in the Table of Guaranteed Maximum Insurance Rates in the Policy Specifications. Those rates are based on the 1980 Commissioners Standard Ordinary Mortality Table B, Smoker or Nonsmoker. If the Insured's Attained Age is 14 or less, rates are based on the 1980 Commissioners Standard Ordinary Mortality Table B.

Any change in the cost factors will be determined in accordance with procedures and standards on file with the State Insurance Department in which this Policy was delivered.

## NONFORFEITURE PROVISIONS

Continuation of Coverage
Coverage under this Policy will continue to the Maturity Date, or longer if Coverage Beyond Maturity is elected, as long as the Surrender Value is sufficient to cover each Monthly Deduction. If the Surrender Value is not sufficient to cover a Monthly Deduction, the Grace Period provision will apply.

Surrender Value
By Written Request, the Owner may surrender this Policy for its full Surrender Value at any time during the lifetime of the Insured while this policy is in force. All insurance coverage under this Policy will end on the date of full surrender. Partial Surrenders will also be allowed. In either case, We may defer payment for up to 6 months, except if used to pay any premiums due to Us.

The Surrender Value will equal:

1. The Cash Value on the date of surrender; less

2. the Surrender Charge determined from the Table of Surrender Charges in this Policy; less

3. Debt plus any accrued interest.

If surrender occurs during the first 31 days of a Policy Year, the Surrender Value will not be less than it was on the first day of that year, less any subsequent loans and Partial Surrenders. At no time will the Surrender Value be less than zero.

70212-95USMA

0046124

Surrender Charge
At the time of surrender, We will deduct a Surrender Charge from the Cash Value. The applicable Surrender Charge for this Policy is shown in the Policy Specifications in the Table of Surrender Charges.

Any increase in the Specified Amount will result in an additional Surrender Charge applicable to the increase. The charge will be effective on the Date of Issue for the increase. Supplemental Policy Specifications will be sent to You once the change is complete and will reflect the additional Surrender Charge in the Table of Surrender Charges.

Any decrease in the Specified Amount will not reduce the original or any additional Surrender Charge.

Partial Surrender
Partial Surrenders may be made by the Owner's Written Request while this policy is in force. However, We will not allow a Partial Surrender in the first Policy Year and no more than 3 Partial Surrenders may be made in each subsequent Policy Year. A partial Surrender Charge will be included in the amount of the Cash Value which is surrendered. We will also charge a $25 administrative fee for each partial surrender. The minimum amount of any Partial Surrender, after any partial Surrender Charge and administrative fee is applied, is $500.

The partial Surrender Charge will be in proportion to the Surrender Charge that would apply to a full surrender and will equal (1) divided by (2) where:

    (1) the net partial surrender multiplied by the full Surrender Charge.

    (2) the Surrender Value.

When the Partial Surrender is made, future Surrender Charges will be reduced in the same proportion as stated above.

If the Death Benefit option for this Policy is Option 1, a Partial Surrender will reduce the Cash Value, Death Benefit, and Specified Amount. Any past increases will be reduced in the reverse order in which they occurred.

If the Death Benefit on the date of the Partial Surrender is determined as a percentage of the Cash Value as described in the Death Benefit Options section, the Partial Surrender may not reduce the Specified Amount. We will not allow a Partial Surrender that reduces the Specified Amount below the Minimum Specified Amount.

If the Death Benefit option for this Policy is Option 2, a Partial Surrender will reduce the Cash Value and the Death Benefit. The Specified Amount will not be reduced.

## Policy Loans

General
We will grant loans while this Policy is in force. The amount of the loan will not be more than the Loan Value.

Debt plus accrued interest will reduce any Proceeds under this Policy.

This Policy will be sole security for the loan. We may defer loans for up to 6 months. We will not defer a loan if it is used to pay any premiums due Us.

If Debt exceeds the Cash Value less the Surrender Charge, the Grace Period provision will apply.

Loan Interest Rate
Interest, at an annual effective rate, will be charged on this Policy's Debt. The rate of interest may change and applies to this Policy's total Debt. Change will be made only on a Policy Anniversary. Interest is due and payable on the next Policy Anniversary, the date this Policy ends or upon full repayment of Debt. Any interest not paid when due will be added to the Debt on the Policy Anniversary and will itself bear interest on the same terms.

The interest rate is based on a Monthly Average. The Monthly Average will be the Composite Yield on Corporate Bonds as published by Moody's Investor's Service, Inc., or any successor to that service. If such average is no longer published, the average used will be determined by law or regulation of the insurance supervisory official of the state where this Policy is delivered. In no event will the interest rate exceed the maximum rate imposed by law or regulation of the state where this Policy is delivered.

70212-95USMA

0046125

The interest rate charged during any Policy Year will not exceed the maximum rate for that year. The maximum rate will be the greater of (1) and (2) where:

(1) is the Monthly Average for the calendar month which ends 2 months before the month in which the Policy Anniversary occurs; or

(2) is 5.0%.

We may increase the rate only when the maximum rate is at least 1/2% higher than the rate in effect for the prior Policy Year.

We will reduce the rate when the maximum rate is at least 1/2% lower than the rate in effect for the prior Policy Year.

We will notify You of the current loan interest rate for this Policy at the time a policy loan is made. If this Policy has Debt, We will notify You of any change in the interest rate before the new rate becomes effective.

### Repayment
Debt may be repaid in full or in part at any time while this Policy is in force; however, Debt which exists after the Grace Period for an unpaid premium cannot be repaid unless this Policy is reinstated.

The amount necessary to repay all loans in full is the Debt plus accrued interest.

## Changes In Insurance Coverage

### General
We will require Your Written Request for any change in coverage. Supplemental Policy Specifications will be sent to You once the change is completed.

### Increase In Specified Amount
You may increase the Specified Amount of this Policy at any time.

Satisfactory evidence of insurability will be required.

The Date of Issue of any increase will be shown in the supplemental Policy Specifications.

The Basic Monthly Premium will be increased when the Specified Amount is increased.

An additional Surrender Charge will apply upon each increase in the Specified Amount.

A 5 year period as described in the Specified Period provision will restart on the Date of Issue of the increase.

### Decrease in Specified Amount
You may decrease the Specified Amount of this Policy after the 5th Policy Year. You cannot reduce the Specified Amount below the Minimum Specified Amount.

The Basic Monthly Premium will not be decreased if the Specified Amount is decreased.

The decrease in the Specified Amount will take effect on the Monthly Deduction Day on or next following the date on which Your Written Request is received at the Home Office.

The decrease will reduce any past increases in the reverse order in which they occurred.

### Change in Death Benefit Option
You may change the Death Benefit Option after the first Policy Year.

Any change in the Death Benefit Option may require evidence of insurability. If allowed, the change will take effect on the Monthly Deduction Day on or next following the date on which Your Written Request is received at the Home Office. There will be no change in the Surrender Charge.

### Change from Option 1 to 2
The Specified Amount will be reduced to equal the Specified Amount immediately prior to the change less the Cash Value at the time of change. The Specified Amount cannot be reduced below the Minimum Specified Amount.

70212-95USMA

Page   10

**Change from Option 2 to 1**
The Specified Amount will be increased to equal the Specified Amount immediately prior to the change plus the Cash Value at the time of the change.

## Settlement Options

### Conditions
All or part of the Proceeds of this Policy may be applied under one or more of the options described below or in any manner to which We agree. An election shall be made by Written Request filed with the Home Office. The payee of Proceeds may make this election if no prior election has been made.

Payments will be made at intervals of 1, 3, 6 or 12 months in equal amounts as elected. Our consent to the election of an option is required if:

- The payee is not a natural person receiving payments in his or her own right; or

- the payee is an assignee of this Policy; or

- payments would be less than $25 each or totaling less than $120 in a year.

### Income Options
The rates for these Income Options are based on the 1983 Individual Annuity Mortality Table with 60% female and 40% males lives and a pivotal age of 55. In using this mortality table, the attained ages of annuitants will be reduced by one year for annuities commencing in the 1990's, reduced two years for annuities beginning during 2000-2009, and so on. Adjusted Ages will be determined based on the payee's age on his/her birthday nearest the commencement date of the annuity.

Rates for ages and intervals not shown for any of the following income options will be furnished upon request.

### Option 1 - Interest
Payment of interest on Proceeds left with Us. Proceeds held under this option may be left with Us after the death of the payee only with Our consent.

By Written Request, the payee may later elect to:

- Receive all or a portion of the amount held under this option; or

- apply all or a portion of this amount to options 2, 3 or 4 as described below.

### Option 2 - Fixed Period
Payment for a stated number of years, not longer than 30 years, as elected from the following table.

| PAYMENT PER $1,000 PROCEEDS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| YEARS OF FIXED PERIOD | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY | YEARS OF FIXED PERIOD | ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
| 3 | $ 343.23 | $ 172.88 | $ 86.76 | $ 28.99 | 15 | $ 81.33 | $ 40.96 | $ 20.56 | $ 6.87 |
| 4 | 261.19 | 131.56 | 66.02 | 22.06 | 20 | 65.26 | 32.87 | 16.50 | 5.51 |
| 5 | 211.99 | 106.78 | 53.59 | 17.91 | 25 | 55.76 | 28.08 | 14.09 | 4.71 |
| 10 | 113.82 | 57.33 | 28.77 | 9.61 | 30 | 49.53 | 24.95 | 12.52 | 4.18 |

70212-95USMA

0046127

## Option 3 - Life Income

Payments for the lifetime of the payee. If also chosen, We will guarantee payments for 60, 120, 180 or 240 months. No payment will be due after death, except payment for any remaining fixed period.

| ADJUSTED AGE | MONTHLY LIFE INCOME PER $1,000 PROCEEDS | | | WITHOUT FIXED PERIOD |
|---|---|---|---|---|
| | WITH FIXED PERIOD | | | |
| | 10 YEARS | 15 YEARS | 20 YEARS | |
| 50 | $4.03 | $3.99 | $3.93 | $4.05 |
| 51 | 4.09 | 4.05 | 4.04 | 4.12 |
| 52 | 4.16 | 4.11 | 4.04 | 4.19 |
| 53 | 4.23 | 4.18 | 4.10 | 4.27 |
| 54 | 4.31 | 4.25 | 4.16 | 4.35 |
| 55 | 4.39 | 4.32 | 4.22 | 4.44 |
| 56 | 4.47 | 4.40 | 4.29 | 4.53 |
| 57 | 4.56 | 4.48 | 4.35 | 4.62 |
| 58 | 4.65 | 4.56 | 4.42 | 4.72 |
| 59 | 4.75 | 4.64 | 4.49 | 4.83 |
| 60 | 4.86 | 4.73 | 4.55 | 4.95 |
| 61 | 4.97 | 4.83 | 4.62 | 5.07 |
| 62 | 5.08 | 4.92 | 4.69 | 5.20 |
| 63 | 5.20 | 5.02 | 4.76 | 5.34 |
| 64 | 5.33 | 5.12 | 4.83 | 5.49 |
| 65 | 5.47 | 5.22 | 4.89 | 5.65 |
| 66 | 5.61 | 5.33 | 4.96 | 5.82 |
| 67 | 5.75 | 5.44 | 5.02 | 6.01 |
| 68 | 5.91 | 5.54 | 5.08 | 6.20 |
| 69 | 6.07 | 5.65 | 5.14 | 6.41 |
| 70 | 6.23 | 5.76 | 5.19 | 6.64 |
| 71 | 6.41 | 5.86 | 5.24 | 6.88 |
| 72 | 6.59 | 5.97 | 5.28 | 7.14 |
| 73 | 6.77 | 6.06 | 5.32 | 7.43 |
| 74 | 6.96 | 6.16 | 5.35 | 7.73 |
| 75 | 7.14 | 6.25 | 5.38 | 8.06 |

## Option 4 - Joint Life Income Reducing for Survivor

Payments during the joint lifetimes of two payees. At the death of either, payments will continue to the survivor. When this option is chosen a choice must be made of:

1. 100% of the payment to the survivor;

2. 66 2/3% of the payment to continue to the survivor;

3. 50% of the payment to continue to the survivor;

4. payments for a minimum of 120 months, with 100% of the payment to continue to the survivor; or

5. 100% of the payment to continue to the survivor if the survivor is the original payee, and 50% of the payment to continue to the survivor if the survivor is the second payee.

No payment will become due after the death of the surviving payee.

70212-95USMA

0046128

The following table illustrates the applicable rates if number (3) of option 4 is chosen.

| ADJUSTED AGE OF ANNUITANT | AGE OF SECOND ANNUITANT | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 | 80 | 85 |
| 50 | $4.08 | $4.27 | $4.49 | $4.76 | $5.07 | $5.41 | $5.77 | $6.12 |
| 55 | 4.27 | 4.47 | 4.71 | 5.01 | 5.36 | 5.74 | 6.15 | 6.54 |
| 60 | 4.49 | 4.71 | 4.99 | 5.32 | 5.71 | 6.15 | 6.62 | 7.08 |
| 65 | 4.76 | 5.01 | 5.32 | 5.70 | 6.15 | 6.66 | 7.22 | 7.77 |
| 70 | 5.07 | 5.36 | 5.71 | 6.15 | 6.70 | 7.32 | 7.99 | 8.67 |
| 75 | 5.41 | 5.74 | 6.15 | 6.66 | 7.32 | 8.15 | 8.99 | 9.86 |
| 80 | 5.77 | 6.15 | 6.62 | 7.22 | 7.99 | 8.99 | 10.24 | 11.40 |
| 85 | 6.12 | 6.54 | 7.08 | 7.77 | 8.67 | 9.86 | 11.40 | 13.27 |

MONTHLY JOINT INCOME WITH 1/2 TO SURVIVOR PER $1,000 PROCEEDS

Interest Rate
The guaranteed interest rate is 3% per year compounded annually. This rate applies to funds held under option 1 or options 2 and 3 during any fixed period. As to these funds, We will allow such excess interest as We may declare each year. As to option 1, from time to time We may offer higher interest rates with certain conditions on withdrawal as are then published by Us.

Betterment of Payments
If option 2, 3 or 4 is chosen and if the guaranteed payments are less than those of Our current single premium immediate annuity on the same plan, those larger amounts will be paid instead.

Withdrawals and Death of the Payee
As to funds held under option 1, withdrawals and changes of option may be made if the payee makes the election or if the election so permits. No withdrawals or changes of option may be made under options 2, 3 and 4. Upon the death of the payee, the current value of funds held under option 1 or the present value of any guaranteed payments not yet paid will be paid in one sum to the beneficiary. The beneficiary may elect to continue the remaining guaranteed payments instead of receiving the lump sum amount. If no beneficiary exists, the present value of any remaining guaranteed payments will be paid in one sum to the estate of the payee.

The interest rate used to determine the first payment will be used to calculate the present value of any remaining payments.

0046129

SEP. 2, 1998  9:22AM    AETNA LIFE BROKERAGE    NO. 695    P. 4/19

**Aetna**

LIFE INSURANCE APPLICATION
Aetna Life Insurance and Annuity Company
151 Farmington Avenue
Hartford, CT  06156-1961

SEP 1 5 1998

| General Information | ANSWER ALL QUESTIONS IF:<br>☐ New Insurance  ☐ Increase Amount  $  ☐ Contract No.<br>ANSWER QUESTIONS 1, 3 (if applicable), 4, 20, 21 & Policyowner/Taxpayer Id. Number<br>☒ Term Conversion/Guaranteed Option   $ 250,000   Continue  ☒ ☒  as item<br>☐ Other Contract Change A                  ANSWER APPLICABLE QUESTIONS<br>☒ Contract Number to be changed/converted   R 2658064 |
|---|---|
| ST OF DEL (Proposed) | ☒ STATE OF DELIVERY  MA |
| Insured Information | Print Full Legal Name (First, Middle, Last)<br>Richard C. Somerville<br>Residence Address (Number, Street, P.O. Box)<br>344 Keene St<br>City, State and Zip Code<br>Duxbury          MA  02332        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 |
| | Sex  Date of Birth (mm/dd/yy)  Place of Birth  MVR License # and License State<br>M   3/20/84              M A        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 |
| | Occupation (If Retired, Give Prior Occupation)<br>Owner / President.                72,000.<br>Employer's Name and Address                    Annual Income<br>Globe Rubber Works. Inc  254 Beech St. Rockland Ma 02370 |
| | Amount of life insurance presently in force<br>Aetna  $ 250,000  ADB $        Other Companies  $ 800,000  ADB $<br>Are there current negotiations with other companies?   ☐ Yes  ☒ No<br>If Yes, advise Company and results. |
| | 6. Will the insurance or annuity in any company be replaced or changed if insurance applied for is issued?  ☒ Yes  ☐ No<br>Explain  Term  Conversion. |
| Plan Information | Basic Plan  Enhanced UL    Face Amount  $ 250,000<br>Death Benefit Option (if applicable)  1<br>Dividend Option  ☐     Paid-up ☐    Reduce premium (not for yearly deduction) ☐<br>☐ Other             ☐ Specify<br>Direct Billing Frequency  ☐  Annual ☐   Semi-Annual ☒<br>☐ Quarterly  ☐ Monthly (APPL Int Bill Plan)<br>List Supplemental Benefits/Riders/Amounts (e.g WP, AD&B, PDR, BOPR) |

For OIR - Submit application supplement

70059-07MA

3

0046130

SEP-03-98 THU 12:36 PM   BLOOM-BAKER ASSOCIATES   FAX NO. 1617886601?   P. 04
SEP. 2.1998   9:23AM   AETNA LIFE BROKERAGE   NO.695   P.5/19

| | |
|---|---|
| (Proposed)<br>Insured<br>Information | NON MEDICAL QUESTIONS 6-10 SHOULD NOT BE COMPLETED FOR TERM CONVERSIONS OR EXERCISE OF GUARANTEED INSURABILITY OPTION |

6. HAVE YOU WITHIN 2 YEARS: (IF YES, EXPLAIN)

a. Flown as a pilot or crew member or intend to do so? (If Yes, furnish Aviation supplement) ☐Yes ☐No

b. Engaged in motor vehicle or boat racing, hang or mountain climbing, hang gliding or sky skin or scuba diving or intend to? (If Yes, furnish avocation supplement) ☐Yes ☐No

c. Had your license suspended or revoked, had 3 or more moving violations? ☐Yes ☐No

d. Been charged with driving under the influence of alcohol or drugs? ☐Yes ☐No

e. Changed or traveled outside the United States or intend to do so? ☐Yes ☐No

7. HAVE YOU EVER:

a. Been treated for, or had disease within the brain or nervous system? ☐Yes ☐No

b. Been arrested and convicted for felony charges? ☐Yes ☐No

8. HAVE YOU IN THE LAST 10 YEARS: (IF YES, EXPLAIN)

a. Used hallucinogenic or narcotic drugs not prescribed by a doctor? ☐Yes ☐No

b. Used alcoholic beverages, indicate the quantity and frequency? ☐Yes ☐No

c. Been or been advised to have medical treatment or counseling from a physician or licensed professional for the use of alcohol or drugs? ☐Yes ☐No

| Smoking<br>Information | 9a. Have you smoked cigarettes within the past 12 months? ☐Yes ☐No<br>(If Yes, how much) |
|---|---|

b. If No, have you used any tobacco products within the past 12 months? ☐Yes ☐No
(e.g. cigar, pipe, smokeless tobacco)

c. Has any death or disease occurred within the past 5 years? ☐Yes ☐No

d. Have you used any nicotine substitute within the past 6 months? ☐Yes ☐No
(e.g. patch, gum)

| Height &<br>Weight | 10a. What is your current height?<br>b. What is your current weight?<br>c. In the past 12 months any weight change? ☐Yes ☐No |
|---|---|

| History | 11. Have you any history of heart, lung or liver disorder, stroke, diabetes or _____ ☐Yes ☐No |
|---|---|

| Attending<br>Physician<br>Information | 12. Name, address and phone number of personal physician, date reason last seen and results |
|---|---|

| | |
|---|---|
| | |
| | |

| QUES. # | ADDITIONAL INFORMATION (Give details of YES answers, dates and results) For additional space please use Addendum Below. |
|---|---|

| | |
|---|---|
| | |
| | |
| | |

IF AN EXAM IS REQUIRED AND QUESTION 10 IS ANSWERED "YES" AN MD EXAM IS REQUIRED

79059-97WA

4

0046131

SEP-03-98 THU 12:38 PM    BLOOM-BAKER ASSOCIATES    FAX NO. 16178866011    P. 05
SEP. 2, 1998    9:26AM    AETNA LIFE BROKERAGE    NO. 695    P. 6/19

(Proposed)

**Insured Information**

PART II QUESTIONS 12 - 18 REQUIRED EVEN FOR EXAMINER BUSINESS

HAVE YOU EVER IN THE LAST 10 YEARS HAD OR BEEN TREATED FOR: (IF YES, EXPLAIN)

a. Mental or nervous disorder?  ☐ Yes ☐ No
b. Disease of the nervous system, epilepsy  ☐ Yes ☐ No
c. Fainting, seizures, paralysis or stroke?  ☐ Yes ☐ No
d. Shortness of breath, persistent cough  ☐ Yes ☐ No
e. Emphysema or other lung disease?  ☐ Yes ☐ No

f. Chest pain, high blood pressure, heart attack, heart murmur, disease of the heart or blood vessels?  ☐ Yes ☐ No
g. Hepatitis, jaundice, or other disease of the liver or pancreas?  ☐ Yes ☐ No

☐ Yes ☐ No
☐ Yes ☐ No
k. Diabetes, thyroid or glandular disease  ☐ Yes ☐ No
Arthritis, disease of the muscles, bones or joints  ☐ Yes ☐ No

HAVE YOU IN THE LAST 10 YEARS: (IF YES, EXPLAIN)

☐ Yes ☐ No
☐ Yes ☐ No

☐ Yes ☐ No

OTHER THAN ABOVE HAVE YOU IN THE LAST YEARS: (IF YES, EXPLAIN)

☐ Yes ☐ No

☐ Yes ☐ No
☐ Yes ☐ No

☐ Yes ☐ No

☐ Yes ☐ No

**Family History**

Father, age            health status            ☐ deceased, cause
Mother, age            health status            ☐ deceased, cause

**Explanations**

EXPLANATIONS: Include, nature and severity of condition, frequency and dates, treatment received, medication, dates, name, address & phone number of medical attendants and hospitals. For additional space, please use addendum sheet.

QUESTION #

70099-97MA

5

0046132

SEP-03-98 THU 12:59 PM   BLOOM-BAKER ASSOCIATES   FAX NO. 161 7886011   P. 06
SEP. 2, 1998   9:28AM   AETNA LIFE BROKERAGE   NO. 695   P. 7/19

**BENEFICIARY/OWNER INFORMATION**

| Beneficiary Information | 20. A. PRIMARY (provide full name and relationship) |
|---|---|

*Anne Patricia Somerville   Wife*

**20 Soc. #**   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

B. SECONDARY (if any, provide full name and relationship)

(Unless otherwise requested, if more than one beneficiary is named, payment will be made in equal shares. If no beneficiary survives the insured, payment will be made to the executors or administrators of the insured.)

C. OTHER ☐ (e.g. Mode Settlement, Trustee under the Will, Individual Creditor. If Creditor - who will receive any balance.)

**20 Soc. #**

D. FINAL (check one) ☐ Estate of the Insured
☐ Executors or Administrators of the Survivor of the Beneficiary(ies)

| OWNER | OWNER: THE (PROPOSED) INSURED IS OWNER UNLESS UNDER AGE 15 OR OTHERWISE REQUESTED. |
|---|---|

21. A. PRIMARY (Provide full name, address, relationship and Date of Birth, mm/dd/yy)

*Anne Patricia Somerville,   Wife*
*344 Keene St.  Duxbury  MA  02332*
*03-04-38*

B. SECONDARY (If any, provide full name, address, relationship and Date of Birth, mm/dd/yy)

C. OTHER ☐

D. FINAL: (check one)   ☐ Insured
☐ Insured at legal age in policy delivery state
☐ Executors or Administrators of the Survivor of the Owner(s)

70060-97MA

6

0046133

SEP-03-98 THU 12:40 PM   BLOOM-BAKER ASSOCIATES    FAX NO. 16178866011        P. 07
SEP. 2,1998   9:29AM   AETNA LIFE BROKERAGE                      NO. 695    P.8/19

22.  Any payment is subject to the terms and conditions of the Temporary Insurance Agreement. If payment is made, the Temporary Insurance Agreement must be provided and explained.

23.  If automatic payment from checking account is selected:
     I (we) authorize Aetna Life Insurance and Annuity Company (ALIAC) to debit my (our) checking account automatically, by paper means or by any other commercially accepted method, to cover premiums and other payments for my policy(ies)/certificate(s). I (we) also authorize my financial institution named on the voided check attached to charge my account for such payments. If my/our account number or financial institution changes, I (we) authorize ALIAC to accept verbal instructions from me to provide such changes, and to change this authorization accordingly. This authorization is to remain in full force and effect until ALIAC has received written notification from me (either of us) of its termination in a manner affording ALIAC a reasonable time to take action.

☐ Attach "VOID" Check    Date of Draw (6th, 20th or 28th)

Signature of Payor

24.  Any person who, knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

The answers above are true and complete to the best of my knowledge and belief.

I agree that no producer may alter the terms of the application, the Temporary Insurance Agreement or the policy/certificate, nor can the producer waive any of Aetna's rights or requirements.

I agree that coverage can take effect only if the proposed insured is alive, and all answers in this application material to the risk are still true and complete when the policy/certificate is delivered and the entire first premium is paid.

I agree to advise the Company or producer in writing of any known or suspected changes in the health of the proposed insured, or of any changes to any answers on this application, prior to delivery of this policy/certificate.

X _____    R. Somerville    9/3/98
Signature of (Proposed) Insured  (Required if age 10 or over)    Date

_____                          _____
(Signature of parent if Juvenile under age 10)               Date

X _____    Anne Somerville    9/3/98
Signature of Applicant/Owner, if other than proposed Insured    Date

X _____  Vice President        9/11/98
Signature of Assignee, if applicable  Name + Title. First National Bank of New England    Date

Rockland                           MA                     9/3/98
City                               State                  Zip

X _____                        9/3/98
Signature of Agent                 Agent License #        Date


7DD50-B71AA
                              7

0046134

FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

- x  FLEXIBLE PREMIUMS PAYABLE UNTIL MATURITY DATE OR DEATH
- x  PROCEEDS PAYABLE UPON THE FIRST EVENT TO OCCUR - SURRENDER, MATURITY OR DEATH
- x  NON-PARTICIPATING - NO DIVIDENDS PAYABLE

70212-95USMA

# EXHIBIT 3

SEP-08-98 TUE 12:40 PM  BLOOM-BAKER ASSOCIATES    FAX NO. 16178866011    P. 06/11
SEP. 8.1998  9:28AM    NA LIFE BROKERAGE    NO.788  P.6/6

# Ætna
Retirement Services

## Change of Ownership

☐ Aetna Life Insurance Company
☐ Aetna Life Insurance and Annuity Company
Hartford, Connecticut 06156

The Company, as identified, is hereby requested to change the owner as designated below. If annuity policy, "insured" means "annuitant".

| Policy/ Beneficiary Information | Policy Number | Insured | Field Office | Agent's Name |
|---|---|---|---|---|
| | G1637194 | Richard C. Somerville | | |

Check only one block and insert necessary information. Please complete by typewriter or print in ink.

☐ Insured to be Owner - the insured.

☐ To one person during his or her lifetime and reversion to the insured on the death of such person until his or her death; thereafter, the insured.

| Name | Relationship to insured |
|---|---|
| | |

☐ To one person absolutely, his or her estate - his or her executors or administrators.

| Name | Relationship to insured |
|---|---|
| | |

☒ Corporation - a corporation.

| Legal Name of Corporation    254 Beech St | City | State |
|---|---|---|
| Globe Rubber Works Inc | Rockland | MA |

☐ Partnership - a Partnership, as constituted at the time any benefit is received or option or privilege is exercised, or any change in or amendment to this policy is made.

| Legal Name of Partnership | City | State |
|---|---|---|
| | | |

☐ Trustee under Formal Trust Agreement - as Trustee(s), or the successor(s) in Trust under Trust Agreement Dated:_____

| Name of Trustee(s) | City | State |
|---|---|---|
| | | |

Aetna shall not be obliged to inquire into the terms of any Trust Agreement affecting this policy and shall not be chargeable with knowledge of the terms thereof. Aetna may rely solely upon the signature of the Trustee(s) to any receipt, release or waiver, or to any transfer or other instrument affecting this policy or any options, privileges or benefits thereunder.

### Signatures

| Signed at (City and State)    Rockland MA | On (Date) |
|---|---|
| Owner (Full Name)  X | Signature  X |
| Witness (Signature)  X | Signature  T. Orville  X |

We hereby consent to this change (Assignee's Title/Signature)

### New Owner Information

Send future premium notices to: Globe Rubber Works Inc

Address of New Owner  254 Beech St  Rockland MA 02730

Enter Tax payer Identification * Number of New Owner

Social Security No. (If owner is a person) ___-__-____

Identification No. (If owner is not a person)  04 L327 L290

* I Certify that, under Penalties of Perjury, the Taxpayer Identification Number shown above is my correct number. (See the instructions to IRS Form W-9 for assistance in determining the proper Taxpayer Identification Number to report.)

| Signature of New Owner (Full Name)  X  Richard Somerville  CONTROLLER | Date  2/15/98 |
|---|---|

This request for change of beneficiary is accepted at Hartford, Connecticut, on: (Date)  2/15/99    Registrar  Jeanne Inser

35674-2 (7-97)   CAT. 2000092503    Page 2 of 2

LFG0130

# EXHIBIT 4

SEP-08-98 TUE 12:39 PM  BLOOM-BAKER ASSOCIATES    FAX NO. 16178866011    P. 04/11

SEP. 8.1998  9:27AM  ...MA LIFE BROKERAGE    NO.788  P.4/6

**Ætna**

**Change of Beneficiary
One Sum**

AETNA LIFE INSURANCE COMPANY
AETNA LIFE INSURANCE AND ANNUITY COMPANY
Hartford, Connecticut 06156

Individual Life

It is requested to change the beneficiary of this policy by reason of death of Insured/Annuitant to that designated below.
If this policy is an annuity the reference to "Insured" will be deemed to mean "Annuitant".
I/We agree that any payments due under the policy specified below may be made by either Aetna Life Insurance Company or Aetna Life Insurance and Annuity Company and that payments by either of said Companies shall fully discharge both said Companies from all liability for such payments.

| Policy Number | Insured | Field Office | Agent's Name |
|---|---|---|---|
| G1637194 | Richard C. Somerville | | |

Check only one block below and insert necessary information. Please complete by typewriter or print in ink.

1. ☐ INDIVIDUAL BENEFICIARIES (Insert full names, relationship to Insured and addresses)

Attach separate sheet for addresses if needed. (Beneficiary names must be on this form.) For any class of beneficiaries, insert the names of currently living members of such class and the class designation. For example, for "children of the Insured," list the living children and add "and any other children of the Insured."

Primary _____

Contingent _____

Unless otherwise requested:

a. if more than one beneficiary is designated, payment will be made in equal shares to the primary beneficiaries who survive the Insured or, if none survives the Insured, in equal shares to the contingent beneficiaries who survive the Insured.
b. if the beneficiary survives the Insured, payment will be made to the successors of administrators of the Insured.
c. if this policy is written on the Family Income Plan or has a Family Income Agreement attached to it and the death of the Insured occurs within the Family Income period, the present value of the amount payable upon the death of the Insured and of any future payments, commuted at the rate of interest used by the Company in determining the amount of such payment, will be payable in one sum at the death of the Insured.
d. wherever the term "estate" is used, it shall be construed to mean "the executors or administrators".
e. if a class of beneficiaries is designated (such as the children of the Insured), payment will be made in equal shares to each person who is a member of the class and living at the death of the Insured, whether or not such person has been specifically named in the beneficiary designation.

2. ☐ THE EXECUTORS OR ADMINISTRATORS OF THE INSURED

3. ☒ CORPORATION OR PARTNERSHIP (Insert full name, location (city and state), followed by "a corporation" or "a partnership", as applicable)

_Globe Rubber Works Inc. 254 Beech St, Rockland MA 02730_, a corporation
UNLESS OTHERWISE REQUESTED HEREIN, if a partnership, payment will be made to the partnership as constituted at the death of the Insured.

4. ☐ TRUSTEE UNDER FORMAL TRUST AGREEMENT *(Insert name of Trustee(s), location (city and state), if applicable, and date of trust)

_____ , as trustee(s),

or the successor(s) in trust under trust agreement dated _____

5. ☐ TESTAMENTARY TRUSTEE UNDER WILL OF INSURED*

The trustee or trustees named in the last Will of the Insured, provided the Company receives at its Home Office before the expiration of 180 days following the date of death of the Insured satisfactory proof that the Will has been admitted to probate and that it describes an express trust, otherwise, paid to the executors or administrators of the Insured.

*The Aetna Life Insurance Company/Aetna Life Insurance and Annuity Company will not be subject to inquire into the terms of any trust agreement affecting this policy and will not be chargeable with knowledge of the terms of the agreement. Payment to the trustee will fully discharge all liability of the Company in the event of such payment.

Signed at X _Rockland_  _MA_ , on X _12/15/98_
City and State                    Date

AS    X _____    X _____ FN-B NC  TITLE
(?)     Witness's Signature                     Owner's Address

X _____

This request for change of beneficiary is accepted at Hartford, Connecticut, on _2/15/99_

_____
Registrar

88903 (11-85)
CAT. 2000005802

AETNA LIFE INSURANCE AND ANNUITY COMPANY
_Susan W. Schechter_
Secretary

AETNA LIFE INSURANCE COMPANY
_Neville M. Anderson_
Secretary

LFG0131

# EXHIBIT 5

# FAX TRANSMISSION

Pension & Wealth Management
    Advisors
        phone  781 398-0077
        fax      781 398-2255
        email  flavia@pensionwealth.com

**FROM:**     Flavia

**TO:**        Customer Service
              Lincoln Financial Group
              1-860-466-2835

**DATE:**     02/16/05 at 16:29:48

**PAGES:**    3

**SUBJECT:**  Change of ownership request

LFG0340

02/16/2005  17:47    7813982255              MCINNIS FINANCIAL                    PAGE  02

# ⊓ Lincoln
**Financial Group®**

*Life Ownership Change Form*

Personal Service Center
P.O. Box 5048 MIR1
Hartford CT 06102-5048
Fax number 860 466-2835

| General Information | |
|---|---|
| Policy number **6163 7194** | Issued by (the Company) **ING Life** |

Insured's name **Richard C. Somerville**

Social security number **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**

Policy Owner's name **Globe Rubber Works, Inc.**

Social security number/Tax ID # **74.2922722**

Policy Owner's address **254 Beech St.**

City, State, ZIP **Rockland, MA 02370**

Policy Owner's phone no. **781-871-3702**          E-mail address

---

**New Owner Designation**

*An ownership change does not change existing beneficiary designations. To change your beneficiary, please submit a Lincoln Beneficiary Change Form.*

*The signature of all owners will be required to exercise any contractual rights under the policy.*

*Please change the Owner of the policy listed above to (Select Only One): Complete by typewriter or print in ink.*

☐ The Insured. (If more than one insured, designation assumes jointly with right of survivorship arrangement.)

☐ To one person during his or her lifetime and thereafter the Insured

| Name | Date of Birth |
|---|---|

☐ To one person absolutely, his or her estate

| Name | Date of Birth |
|---|---|

To multiple owners (check one):   ☐ Joint with Right of Survivorship   ☐ Tenants-in-common*

*If tenant-in-common, specify shares, if not specified we will assume equal shares.*

To a (check one) ☐ Corporation ☐ Partnership ☒ LLC  or  ☐ Other (specify)

**Globe Composite Solutions, LTD      Rockland        MA**
Legal name                                              City              State

☐ To a trustee or successor trustee under a formal trust agreement

Name of Trustee(s)

Name of Trust

City, State          Date of Trust

I/We hereby certify that the Trustee(s) named are the Trustee(s) for the named Trust, which is in full force and effect. The Company shall not be obligated to inquire into the terms of any trust agreement affecting this policy and shall not be chargeable with knowledge of the terms thereof. The Company may rely solely upon the signature(s) of the Trustee(s) named to any receipt, release or waiver, or to any transfer or other instrument affecting this policy or any options privileges or benefits thereunder. Unless otherwise indicated the signature(s) of all Trustee(s) named, or their successors, will be required to exercise any contractual right under the policy. The Company shall have no obligation to see to the use or application of any funds paid to the Trustee(s) in accordance with the terms of the policy. Any such payment made by the Company to the Trustee(s) shall fully discharge the Company with respect to any amounts so paid.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Form 32513 06/02

Page 1 of 2

RECEIVED TIME  FEB. 16.   5:08PM

LFG0338

**Agreements and Signatures**

*This section must be completed by the current policy owner.*

*Title required if a corporation, partnership or trust.*

By signing below, you, the policy owner, certify that you have read this request and understand that it is subject to the provisions and conditions of the policies listed. You also certify that the policies are not assigned to any other person or corporation, except where otherwise noted on this request, and that no proceedings of bankruptcy or insolvency have been filed or are currently pending against you. We reserve the right to require additional information as needed.

Signed at _Rockland MA_  on  _2/15/05_
City and State                                        Date

_Richard C. Somerville_     _____  _President_
Current Owner (full name)     Signature              Title*

_Paul Slaney_                _____  _Controller_
Current Owner (full name)     Signature              Title*

*Two officer signatures are required for corporate owned policies.*

_____
Assignee, Irrevocable Beneficiary or other interested party (name and signature)

Community property release - This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX and WA). Determination of Community Property status depends on the current or former resident state of the policy owner.
By signing below, you the spouse/former spouse agree to the changes indicated above and:

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature _____  Date _____

Name (print or type) _____

**New Owner Information**

**THIS SECTION MUST BE COMPLETED BY THE NEW OWNER**

Policy Owner's address  _254 Beech St._

City, State, ZIP  _Rockland, MA  02370_

**Taxpayer Identification Number and Certification Substitute W-9**

By signing below, you certify that the information provided is complete and accurate as shown. You also certify that you have read, understand and agree to the information provided in the Substitute W9 sections.
Under the penalties of perjury, I certify that:

- The number shown below is my correct taxpayer identification number.
  Social Security number or Tax Identification number  _752989890_

*This is an IRS requirement.*

- I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service that I am subject as a result of a failure to report all taxable income, including all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding. *(You must cross out this item if you have failed to report all interest and dividends on your tax report.)*

- I am a U.S. person *(including a U.S. resident alien)*.

_____  _CEO_        _2/15/05_
Signature of new owner            Title              Date

_Carl Forsythe_
Print Name                                         Page 2 of 2

LFG0339

# EXHIBIT 6

FEB-17-2005  10:26        781 893 7509                    781 893 7509    P.01/03

# FAX TRANSMISSION

Pension & Wealth Management
   Advisors
      phone  781 398-0077
      fax      781 398-2255
      email  flavia@pensionwealth.com

**FROM:**        Flavia

**TO:**           Customer Service
               Lincoln Financial Group
               1-860-466-2835

**DATE:**        02/17/05 at 16:29:48

**PAGES:**       3

**SUBJECT:**  Change of beneficiary request

RECEIVED TIME  FEB. 17.  10:14AM

LFG0346

FEB-17-2005  10:26        781 893 7509                781 893 7509    P.02/03

 **Lincoln**
Financial Group®

*Life Beneficiary Change Form*

Personal Service Center
P.O. Box 5048 MIR1
Hartford CT 06102-5048
Fax number 860 466-2835

| General Information | |
|---|---|
| Policy number *G 1637194* | Issued by (the Company) *ING life* |
| Insured's name *Richard C. Somerville* | |
| Social security number *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* | |
| Policy Owner's name *Globe Composite Solutions, LTD* | |
| Social security number/Tax ID # *752989890* | |
| Policy Owner's address *254 Beech St.* | |
| City, State, ZIP *Rockland MA 02370* | |
| Policy Owner's phone no. *781-871-3702* E-mail address | |

**Beneficiary Designation**

If this form does not accommodate your needs, please contact the Personal Service Center.

If a primary beneficiary dies, the Company will divide that person's share equally among all surviving primary beneficiaries. Contingent beneficiaries named to this section will receive benefits from the policy only if all primary beneficiaries are no longer living at the time of the Insured's death. If any contingent beneficiary dies (providing no primary beneficiaries are alive when the Insured dies), the Company will divide that person's share equally among all surviving contingent beneficiaries. If no beneficiary survives the Insured, and if this form or policy does not provide otherwise, the proceeds will be paid to the owner, or the executors, administrators or assigns of the owner.

*Name your beneficiaries below. If you are adding beneficiaries but not changing existing beneficiaries, you must restate all existing beneficiaries below as well.*

*You must have at least one primary beneficiary.*

| | |
|---|---|
| Primary name *Globe Composite Solutions, LTD* | |
| Social security number/Tax ID # *752989890* | |
| Relationship to the Insured *employer* | Date of birth |
| Address *254 Beech St.* | |
| City, State, ZIP *Rockland, MA 02370* | |

| | |
|---|---|
| ☐ Primary   ☐ Contingent Name | |
| Social security number/Tax ID # | |
| Relationship to the Insured | Date of birth |
| Address | |
| City, State, ZIP | |

| | |
|---|---|
| ☐ Primary   ☐ Contingent Name | |
| Social security number/Tax ID # | |
| Relationship to the Insured | Date of birth |
| Address | |
| City, State, ZIP | |

RECEIVED TIME  FEB. 17.  10:14AM

LFG0344

FEB-17-2005  10:26          781 893 7509                    781 893 7509    P.03/03

*Beneficiary Designation (continued)*

☐ Primary   ☐ Contingent
Name
_____

Social security number/Tax ID #
_____

Relationship to the Insured          Date of birth
_____

Address
_____

City, State, ZIP
_____

If the beneficiary is a trust, complete the following:

☐ Primary   ☐ Contingent

Trust's name
_____

Tax ID number                        Date of trust
_____

Trustee's name
_____

Address
_____

City, State, ZIP
_____

**Agreement and Signatures**

Policy Owner's signature x _____  Date  2/16/05
Name (print or type)  *Carl Forsythe*      Title* CEO

Policy Owner's signature                    Date
Name (print or type)                        Title*

Policy Owner's signature                    Date
Name (print or type)                        Title*

Irrevocable beneficiary's
signature (if applicable)                   Date
Name (print or type)                        Date

Witness signature
(Massachusetts only)                        Date

*Complete if a corporation, partnership or trust. Two officer signatures are required for corporate owned policies.*

**Community property release** – *This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX, WA). Determination of Community Property status depends on the current or former resident state of the policy owner.*

By signing below, you the spouse/former spouse agree to the changes indicated above and:

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature                          Date
Name (print or type)

Home Office
Acknowledgement                             Page 2 of 2

# EXHIBIT 7

/29/2005 15:08 FAX 7818716631                                                ☑001/008



**Globe Composite Solutions**
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)

# Fax

To: _Elonne Smith_                    From: _Roger Fasmacht_

Fax: _860-466-2835_                   Pages: ~~5 of 05~~ _9_

Phone:                                Date: _3/29/05_

Re: _Policy G1637194_                 CC:

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

_In response to your letter dated March 10, 2005, attached are_
_additional documents_
_1. Witness signature for the life Beneficiary Change Form._
_2. Resolution from the General Partner for Globe Composite_
_Solutions indicating who is authorized to execute insurance_
_contracts._
_3. Letter from Globe Rubber Works indicated Richard Somerville_
_is the sole owner and officer of Globe Rubber Works_
_4. Copy of MA Annual Return also indicating Mr. Somerville as_
_only officer of Globe Rubber Works._
_Regards,_
_Roger Fasmacht CFO_

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above address by mail.

RECEIVED TIME  MAR. 29.  3:03PM                              LFG0354

03/29/2005 15:08 FAX 7818716831                                    002/009
MAR-24-2005  16:27        781 893 7509



**Lincoln**
Financial Group®

*The Lincoln National Life Insurance Company*
*Client Service Center, MTRJ*
*P.O. Box 5048*
*Hartford, CT 06102-5048*

GLOBE RUBBER WORKS INC
254 BEECH STREET
ROCKLAND MA 02730

*Request For Information*

*Acting as administrative agent of:*
*Aetna Life Insurance Company*
*ING Life Insurance and Annuity Company*

March 10, 2005
Issuing Company: ING Life Insurance and Annuity
Company
Policy/Certificate Number: G1637194
Insured: RICHARD C. SOMERVILLE

Dear Client:

We are sorry that we are unable to record the change of beneficiary you requested on February 16, 2005. The State of Massachusetts requires that a disinterested party of legal age witness this type of change. The witness cannot be the person or persons designated as the new beneficiary.

We have prepared a new beneficiary form for you. We will need the page of the LLC agreement that shows who is authorized to sign on behalf of Globe Composite Solutions, LTD.

We are also returning the ownership change form as we require two officers to sign on behalf of Globe Rubber Works Inc. and controller is not an acceptable officer.

A return envelope is enclosed for your convenience.

At Lincoln Life, we are committed to providing you with quality customer service. If you have any questions or comments, please contact the Client Service Center at 800 334-7586 between the hours of 8:00 a.m. and 6:00 p.m. Eastern Time, Monday through Friday, or contact your financial representative.

Sincerely,

Thonie Smith
Client Service Center

*[handwritten notes]* officer signatures:    Richard Summerville { need statement the
on behalf                                    { Richard is sole owner/office
ask
title Expert

RECEIVE
MAR 2 4 2005

*www.lfg.com*

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates*

RECEIVED TIME  MAR. 29.   3:03PM

LFG0355

03/29/2005 15:08 FAX 7818716631                                    ☑003/009

*Beneficiary Designation (continued)*

☐ Primary     ☐ Contingent
Name

Social security number/Tax ID #

Relationship to the Insured          Date of birth

Address

City, State, ZIP

If the beneficiary is a trust, complete the following:

☐ Primary     ☐ Contingent

Trust's name

Tax ID number                        Date of trust

Trustee's name

Address

City, State, ZIP

**Agreement and Signatures**

Policy Owner's signature ✗          Date

Name (print or type)  *Carl Forsythe*     Title* CEO

Policy Owner's signature             Date

Name (print or type)                 Title*

Policy Owner's signature             Date

Name (print or type)                 Title*

Irrevocable beneficiary's signature (if applicable)    Date

Name (print or type)                 Date

Witness signature (Massachusetts only)    Date 2/5/05

*Complete if a corporation, partnership or trust. Two officer signatures are required for corporate owned policies.*

**Community property release** – *This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX, WA). Determination of Community Property status depends on the current or former resident state of the policy owner.*

By signing below, you the spouse/former spouse agree to the changes indicated above and:

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature                   Date

Name (print or type)

**Home Office Acknowledgement**                         Page 2 of 2

RECEIVED TIME  MAR. 29.   3:03PM                    LFG0356

03/29/2005 15:08 FAX 7818716631                                    ☑004/009

CONSENT OF MEMBERS
IN LIEU OF SPECIAL MEETING
OF
KALFOR SOLUTIONS GROUP, LLC

EFFECTIVE: March 14, 2005

The undersigned, being all the members KALFOR SOLUTIONS GROUP, LLC, a Texas limited liability company (the "Company"), pursuant to the provisions of Articles 2.23 and 8.08 of the Texas Limited Liability Company Act, hereby waive notice of the time, place, and purpose of the special meeting of the members of the Company, and consent to and approve the following resolutions and each and every action effected thereby:

WHEREAS, the Company is the General Partner for Globe Composite Solutions, Ltd., a Texas Limited Partnership ("GCS"); and

WHEREAS, GCS purchased certain life insurance policies from Globe Rubber Works, Inc. as part of an asset purchase agreement of substantially all the assets of Globe Rubber Works, Inc. ; and,

WHEREAS, the life insurance companies require a Resolution stating that a GCS signatory is authorized to execute the Change of Ownership and Change of Beneficiary and legally bind GCS to the terms and conditions of the contracts .

NOW THEREFORE BE IT DECLARED that the General Partners do authorize Carl Forsythe, President and CEO for GCS and Roger Fasnacht, Chief Financial Officer for GCS to execute said insurance company contracts on behalf of the Company for the benefit of GCS. .

<u>Further Authorization of Officers.</u>

RESOLVED, that the officers of the Company are hereby authorized to (a) sign, execute, certify to, verify, acknowledge, deliver, accept, file, and record any and all instruments and documents and (b) take, or cause to be taken, any and all such action, in the name and on behalf of the Company or otherwise, as (in their judgment) shall be necessary, desirable, or appropriate in order to effect the purpose of the foregoing resolutions.

EXECUTED on the date indicated below, to be effective as of the date set forth above.

**MEMBERS**

EMERALD GROVE CAPITAL, LTD.

CONSENT OF MEMBERS   -1-

RECEIVED

MAR 2 4 2005

RECEIVED TIME   MAR. 29.   3:03PM

LEG0357

03/29/2005 15:08 FAX 7818716631                                    ☑ 005/009

By:     EMERALD GROVE MANAGEMENT,
        LLC, its General Partner

Date: 3/16/05

By: _____
        Carl W. Forsythe, President

CHRIS CRAWFORD, Individually

Date: 3/24/05

By: _____
        Chris Crawford

JOHN P. BOODEE, Individually

Date: 3/17/05

By: _____
        John P. Boodee

CONSENT OF MEMBERS   -2-

RECEIVED

MAR 2 4 2005

03/29/2005 15:08 FAX 7818716631                                    ☑ 006/009

 **GRW**
GLOBE RUBBER WORKS, INC.
254 Beech Street
Rockland, Massachusetts
02370-0183
USA

Pioneers in Formulating
The Non-Metallic Age...Est. 1890

781-871-3700
Fax 781-871-6631

Ms. Elonie Smith
Client Service Center, MIR1
The Lincoln National Life Insurance Company
Post Office Box 5048
Hartford, CT 06102

     Re:   Beneficiary Change
            Policy/Certificate No: G1637194
            Insured: Richard C. Somerville

Dear Ms. Smith:

     Pursuant to your letter dated March 10, 2005, I have attached the Annual Report that was filed with the Commonwealth of Massachusetts as evidence that I, Richard C. Somerville, was the sole Owner/Officer of Globe Rubber Works, Inc.

Very truly yours,


Richard C. Somerville
Globe Rubber Works, Inc.

# EXHIBIT 8

/30/2005 16:53 FAX 7818716631                                                    ☑001



**Globe Composite Solutions**
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)

# Fax

To: Elonie Smith          From: Roger Pesnaolet

Fax: 860-466-2835         Pages: 2

Phone:                    Date: 3/30/05

Re: Policy G1639194       CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Elonie,
Copy of signed letter from Richard Somerville.
Please let me know if all paperwork is complete.

Thanks

Roger.

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above address by mail.

RECEIVED TIME MAR. 30.  4:49PM          PRINT TIME MAR. 31.  6:28AM    LFG0271

03/30/2005 16:54 FAX 7818716631    @002



**GRW**
GLOBE RUBBER WORKS, INC.
254 Beech Street
Rockland, Massachusetts
02370-0188
USA

Pioneers in Formulating
The Non-Metallic Age...Est. 1890

781-871-3700
Fax 781-871-6631

Ms. Elonie Smith
Client Service Center, MIR1
The Lincoln National Life Insurance Company
Post Office Box 5048
Hartford, CT 06102

     Re:  Beneficiary Change
          Policy/Certificate No: G1637194
          Insured: Richard C. Somerville

Dear Ms. Smith:

     Pursuant to your letter dated March 10, 2005, I have attached the Annual Report that was filed with the Commonwealth of Massachusetts as evidence that I, Richard C. Somerville, was the sole Owner/Officer of Globe Rubber Works, Inc.

Very truly yours,

Richard C. Somerville
Globe Rubber Works, Inc.

# EXHIBIT 9

/09/2005 12:13 FAX 7818716631                                    ☑001



**Globe Composite Solutions**
254 Beech Street
Rockland, MA 02370
781-871-3700
781-871-6631 (fax)

# Fax

G-1637194

To: *Elaine Smith*                     From: *Roger Jasnochet*

Fax: *860-466-2835*                    Pages: *14*

Phone:                                 Date: *6/9/05*

Re: *Documentation*                    CC:

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

① Enclosed are sections of Kalfor Solutions Group, LLC
Regulations ( Kalfor is General Partner of Globe Composite
Solutions, Ltd.)
   If you need the entire document (30 pages), please let
me know.

② Consent of members of Kalfor Solutions dated 6/6/03 referencing
"Authorization of Officers".

Please contact me 781-871-3700 x 214 to verify and
clarify any questions you have. If you get my voicemail,
dial "0" and ask the operator to page me.

                                    Thanks Roger

The information contained in this FACSIMILE is CONFIDENTIAL. This FACSIMILE is intended to be reviewed
initially by only the individual named above. If the reader of the TRANSMITTAL PAGE is not the intended recipient
or representative of the intended recipient specifically authorized to review this information on this FACSIMILE, you
are hereby notified that any review, dissemination or copying of this FACSIMILE or the information contained herein
is prohibited. If you have received this FACSIMILE in error, please immediately notify GLOBE COMPOSITE
SOLUTIONS by telephone and return this FACSIMILE to GLOBE COMPOSITE SOLUTIONS at the above
address by mail.

RECEIVED TIME  JUN. 9. 12:09PM                          LFG0251

06/09/2005 12:14 FAX 7818716631
@002



G-1637194

# REVISED AND AMENDED REGULATIONS

## OF

## KALFOR SOLUTIONS GROUP, LLC

**Effective Date:  April 27, 2003**

KALFORS 00106022003

RECEIVED TIME  JUN. 9. 12:09PM

LFG0252

06/09/2005 12:14 FAX 7818718631                                      ☑003

# KALFOR SOLUTIONS GROUP, LLC
## REGULATIONS

G1637194

### Table of Contents

ARTICLE I   DEFINITIONS ........................................................................... 1
ARTICLE II  FORMATION OF COMPANY ................................................... 3
   2.1   Formation ........................................................................... 3
   2.2   Name ................................................................................... 3
   2.3   Principal Office .................................................................. 4
   2.4   Registered Agent and Address ......................................... 4
   2.5   Term .................................................................................... 4
   2.6   Foreign Qualification ........................................................ 4
   2.7   No State-Law Partnership ................................................. 4
ARTICLE III PURPOSES AND POWERS OF THE COMPANY ................. 4
   3.1   Purpose ............................................................................... 4
   3.2   Powers ................................................................................ 4
   3.3   Ownership of Property ...................................................... 4
   3.4   Documents, Instruments, Etc. .......................................... 5
ARTICLE IV  CAPITAL CONTRIBUTIONS FROM MEMBERS ................ 5
   4.1   Initial Capital Contributions ............................................ 5
   4.2   Additional Capital Contributions .................................... 5
   4.3   Capital Accounts; Tax Compliance .................................. 5
   4.4   Withdrawal of Capital Contributions .............................. 7
   4.5   No Interest .......................................................................... 7
   4.6   Permissible Loans From Members ................................... 7
   4.7   No Further Contributions or Loans ................................. 7
ARTICLE V   ALLOCATIONS AND DISTRIBUTIONS ............................... 7
   5.1   Allocations ......................................................................... 7
   5.2   Distributions ...................................................................... 8
   5.3   Special Rules for Allocations and Distributions ............ 8
ARTICLE VI  BANK ACCOUNTS, BOOKS OF ACCOUNT, REPORTS AND FISCAL YEAR ... 9
   6.1   Bank Accounts .................................................................... 9
   6.2   Books and Records ............................................................ 9
   6.3   Accounting and Reports; Audit ........................................ 9
   6.4   Determination of Profit and Loss .................................... 9
   6.5   Tax Returns and Information ............................................ 10
   6.6   Tax Matters Member .......................................................... 10
   6.7   Fiscal Year .......................................................................... 11
   6.8   Tax Election ........................................................................ 11
ARTICLE VII FEES AND EXPENSES .......................................................... 12
   7.1   Organizational Expenses .................................................. 12
   7.2   Other Expenses .................................................................. 12
   7.3   Compensation and Reimbursement of the Members ..... 13

(i)

08/09/2005 12:14 FAX 7818716631 ☐004

G1637194

**ARTICLE VIII  RIGHTS, DUTIES AND POWERS OF THE MEMBERS** ........................ 13
  8.1  Management ............................................................................. 13
  8.2  Powers of Members .................................................................. 13
  8.3  Restrictions on Authority of Members .................................... 15
  8.4  Other Activities ....................................................................... 15
  8.5  Indemnification ........................................................................ 15
  8.6  Officers; Committees ............................................................... 16
**ARTICLE IX  STATUS OF MEMBERS** ................................................................ 16
  9.1  General ..................................................................................... 16
  9.2  Limitation on Liability ............................................................ 16
  9.3  Distributions in Kind ............................................................... 17
  9.4  No Right of Withdrawal ........................................................... 17
**ARTICLE X  MEETINGS OF MEMBERS** ............................................................. 17
  10.1  Meetings of the Members ....................................................... 17
  10.2  Provisions Applicable to All Meetings ................................... 18
**ARTICLE XI  CERTIFICATES AND UNITS OF MEMBERSHIP INTERESTS** ............ 19
  11.1  Certificates for Units ............................................................. 19
  11.2  Issuance ................................................................................. 19
  11.3  Consideration for Units .......................................................... 19
  11.4  Lost, Stolen, or Destroyed Certificates .................................. 19
  11.5  Transfer of Units ................................................................... 20
  11.6  Registered Members ............................................................... 20
  11.7  Legends .................................................................................. 20
**ARTICLE XII  TRANSFER RESTRICTIONS** ....................................................... 20
  12.1  Transfers by Members ........................................................... 20
  12.2  Effect of Transfer .................................................................. 22
  12.3  Substituted Member ............................................................... 23
  12.4  Death, Bankruptcy, or Incompetency of a Member ................ 23
**ARTICLE XIII  DISSOLUTION AND LIQUIDATION** ........................................... 24
  13.1  Dissolution Causes ................................................................ 24
  13.2  Reconstitution ....................................................................... 24
  13.3  Winding Up ............................................................................ 24
  13.4  Distribution of Property in Kind ............................................ 25
  13.5  Court Appointment of Liquidator .......................................... 26
  13.6  Liquidation Procedure ........................................................... 26
  13.7  Creation of Reserves ............................................................. 26
  13.8  Deficit Capital Account Balances ........................................... 26
**ARTICLE XIV  MISCELLANEOUS** ..................................................................... 26
  14.1  Confidentiality of Information ............................................... 27
  14.2  Amendments .......................................................................... 27
  14.3  Notices .................................................................................. 27
  14.4  Mediation; Arbitration .......................................................... 27
  14.5  Law Governing ...................................................................... 28
  14.6  Attorneys' Fees ..................................................................... 28

(ii)

RECEIVED TIME  JUN. 9. 12:09PM

*G-16 37194*   iii

14.7   Successors and Assigns ............................................................... 28
14.8   Entire Agreement ......................................................................... 28
14.9   Severability ................................................................................. 28
14.10   Gender and Number ................................................................... 28
14.11   Exhibits ...................................................................................... 28
14.12   Captions ...................................................................................... 28
14.13   Counterparts ............................................................................... 28

EXHIBIT A - MEMBERS OF KALFOR SOLUTIONS GROUP, LLC

LFG0255

06/09/2005 12:14 FAX 7818716631

@006

1

## KALFOR SOLUTIONS GROUP, LLC

G-1637/94

### REGULATIONS

These Revised and Amended Regulations of KALFOR SOLUTIONS GROUP, LLC, dated as of April 27, 2003 are adopted by the Members (as defined below) and executed and agreed to, for good and valuable consideration, by the Members.

THESE REGULATIONS CONTAIN PROVISIONS PROVIDING FOR MEDIATION AND BINDING ARBITRATION.

## ARTICLE I

### DEFINITIONS

As used in this instrument:

A.    "Act" means the Texas Limited Liability Company Act, Article 1528n, Texas Revised Civil Statues, as amended from time to time.

B.    "Affiliate" of a Person shall mean (i) any Person directly or indirectly controlling, controlled by or under common control with another Person, (ii) a Person owning or controlling 10% or more of the outstanding voting securities of such other Person, (iii) any officer, director or partner of such other Person, and (iv) if such other Person is an officer, director or partner, any company for which such Person acts in such capacity.

C.    "Approval of the Members" or "Approved by the Members" means the approval of the Members who, at the time the Company action is being considered for approval, are the record owners of more than fifty percent (50%) of the total Membership Interests outstanding with respect to all Members.

D.    "Bankruptcy" means the occurrence of any of the following events with respect to any Member: (i) A Member makes a general assignment for the benefit of creditors; (ii) A Member files a voluntary bankruptcy petition; (iii) A Member becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceeding; (iv) A Member files a petition or answer seeking for the Member a reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any law; (v) A Member files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the Member in a proceeding of the type described above; (vi) A Member seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of the Member or of all or any substantial part of the Members' properties; or (vii) 120 days expire after the date of the commencement of a proceeding against the Member seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any law, if the proceeding has not been previously dismissed or 90 days expire after the date of the appointment, without the Members' consent or acquiescence, of a trustee, receiver, or

1

REVISED REGULATIONS                          KALFOR SOLUTIONS GROUP, LLC
KALFORS 00106022003

RECEIVED TIME JUN. 9. 12:09PM

06/09/2005 12:14 FAX 7818716631 · · ·    Ø007

G-16 37/94

7.3    Compensation and Reimbursement of the Members. Members shall not be entitled to any compensation for managing the Company.

## ARTICLE VIII

### RIGHTS, DUTIES AND POWERS OF THE MEMBERS

8.1    Management.    The Members shall have the full, sole, exclusive and complete discretion in the management and control of the business, operations and affairs of the Company; shall make all decisions that are necessary to carry out the business of the Company; and shall take all actions which the Members deem necessary or appropriate for the operations of the Company, all in accordance with the provisions of these Regulations. All decisions and actions by the Members shall be made in the best interests of the Company; and all decisions and actions of the Members shall, except as provided in Section 8.3, require the affirmative vote of a Majority in Interest of the Members. The Members shall have the authority to bind the Company, by execution of documents or otherwise, to any obligation that is consistent with these Regulations, but only to the extent such authority has been Approved by the Members. Any action that is taken by the Members shall constitute the act of and shall be binding upon the Company.

8.2    Powers of Members.    Upon Approval by the Members, the authority of the Members shall include, without limitation, the authority to:

A.    Acquire, maintain, manage, and defend the Property and contract with third parties for such purposes and to do any and all things necessary and appropriate to carry out the terms and provisions of these Regulations which would be done by a normal and prudent owner in the ownership and management of his, her or its property;

B.    Negotiate, execute, accept, manage, and dispose of any debt instruments and related security and other loan documents received from third parties incident to the disposition or other financing of the Property;

C.    Invest any liquid funds of the Company in money market funds, interest-bearing accounts or investments, certificates of deposit or other cash-oriented investments;

D.    Purchase, acquire, and enter into any contract for insurance deemed necessary and proper for the protection of the Company, for the conservation of its assets or for any other purpose convenient or beneficial to the Company;

E.    Pay out of the funds of the Company any and all expenses and charges of any nature incurred or owing by the Company;

13

REVISED REGULATIONS                    KALFOR SOLUTIONS GROUP, LLC
KALFORS 00106022003

LFG0257

06/09/2005 12:15 FAX 7818716631                                                    ☑008

G-1637194                                                                        14

    F.        Employ, retain or otherwise secure or enter into contracts with personnel or firms to assist in acquiring, managing, or disposing of the Property in which the Company has or may have an interest, on the terms and for the consideration deemed advisable;

    G.        Pay all sums or money at any time or times that may hereafter be owing by the Company upon any bill of exchange, check, draft, note or trade acceptance made, executed, endorsed, accepted or delivered by or for the Company and to open and draw upon bank accounts of the Company and to make, deliver, take, accept, or endorse any commercial paper relating to the affairs of the Company;

    H.        Settle, adjust, compound, submit to arbitration, compromise, and commence or defend litigation with respect to, all actions, suits, accounts, claims and demands whatsoever that now are or hereafter shall be pending between the Company and any Person;

    I.        File any proof of claim or debt or take any other proceedings under federal and state bankruptcy laws or any law of any state in the United States in connection with any claim, debt, money or demand due to the Company, including the election of any trustee or trustees or the designation of assignee or assignees and to demand, receive, and accept any dividend or dividends or distribution or distributions that may be or become payable thereon;

    J.        Enter into and execute on behalf of the Company any and all contracts with, and otherwise employ from time to time on behalf of the Company, persons or entities for the operation and management of the Company business, including but not limited to accountants, attorneys, clerical help, brokers, and such other services and assistance as deemed proper, and to pay therefor such remuneration as deemed to be reasonable and appropriate;

    K.        Incur expenses for travel, telephone, insurance, supplies, and for such other things, whether similar or dissimilar, as may be deemed necessary or appropriate for carrying on and performing the duties of the Members of the Company;

    L.        Sell, lease, convey, assign, contribute, transfer, or otherwise dispose of (or contract to do same) on behalf of the Company all or any part of, or interest in, the Company Property and in connection therewith to execute, acknowledge and deliver such contracts, assignments, and conveyances containing such warranties as shall be determined;

    M.        Promptly comply with all laws, ordinances, orders, rules, regulations, and requirements of all federal, state and municipal governments, courts, departments, commissions, boards, and officers, or any other body exercising functions similar to those of any of the foregoing, which may be applicable to the Property and the operation, and management thereof;

    N.        Demand, collect, and receive any profits or income of the Property or any part thereof or other income of the Company;

    O.        Execute all documents and instruments on behalf of the Company in connection with the operation, maintenance, management, and disposition and financing of the

14

REVISED REGULATIONS              KALFOR SOLUTIONS GROUP, LLC
KALFORS 00106022003

RECEIVED TIME JUN. 9. 12:09PM

LFG0258

06/09/2005 12:15 FAX 7818716631

G-1637194  15

Property, and the protection and preservation of the title and interest of the Company with respect to the Property and other assets owned by the Company;

        P.      Give such receipts, releases, and discharges with respect to the Property and operations of the Company and any matters incident thereto as may be deemed advisable or appropriate by the Members;

        Q.      Sue and be sued, complain and defend in the name of and on behalf of the Company; and

        R.      Take such other action and to perform such other acts as may be deemed appropriate by the Members to carry out the purpose and affairs of the Company.

    8.3    Restrictions on Authority of Members. No Member acting on behalf of the Company shall without the consent of a Super-Majority in Interest of the Members:

        A.      Perform any act which is inconsistent with or in contravention of these Regulations;

        B.      Do any act which would make it impossible to carry on the business of the Company;

        C.      Confess a judgment against the Company;

        D.      Admit a Person as a Member, except as provided in these Regulations; or

        E.      Loan Company assets to a Member, or otherwise take possession of Company Property or assign, pledge or encumber Company Property for other than for a Company purpose.

    8.4    Other Activities. The Members may engage in or possess interests in other business ventures of every kind and description for their own account, including, without limitation, the syndication, ownership and/or management of other similar limited liability companies or other property similar to the Property of the Company; and in so doing, the Members shall incur no liability to the Company or to any of the other Members as a result of engaging in any other business or venture. Neither the Company nor any of the Members shall have any rights or interest by virtue of these Regulations in or to the other business ventures of the Members or in or to the income or profits derived therefrom by the Members.

    8.5    Indemnification.    To the fullest extent permitted by applicable law, Members and their officers, directors, shareholders, members and agents and the officers of the Company (each, a "Covered Person") shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by

15

REVISED REGULATIONS
KALFORS 00106022003

KALFOR SOLUTIONS GROUP, LLC

RECEIVED TIME  JUN. 9. 12:09PM

LFG0259

06/09/2005 12:15 FAX 7818716631    Ø010

G-1637194  16

such Covered Person by reason of (i) an act or omission of such Covered Person that involves intentional misconduct or a knowing violation of the law, or (ii) an act or omission for which the liability of such Covered Person is expressly provided by an applicable statute; provided, however, that any indemnity under this Section by the Company shall be provided out of and to the extent of Company assets only; and the Members shall not have personal liability on account thereof. In the event that any Covered Person becomes involved in any capacity in any suit, action, proceeding or investigation in connection with any matter arising out of or in connection with the Company's operations or affairs, the Company will periodically reimburse such Covered Person for its reasonable legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided, however, that such Covered Person shall provide an undertaking to promptly repay to the Company the amount of such expense paid to it if it shall ultimately be determined that such Covered Person is not entitled to be indemnified by the Company as herein provided in connection with such suit, action, proceeding or investigation.

The provisions of this Section shall not be deemed exclusive of any other rights to which any such Covered Person may be entitled under any other agreement or action of the Company, as a matter of law or otherwise, either as to action in his, her or its official capacity or as to action in another capacity while holding such office, and shall continue as to a Person who has ceased to be a Covered Person and shall inure to the benefit of the heirs, executors and administrators of such a Person. No Person shall be entitled to indemnification pursuant to this Section in relation to any matter as to which indemnification shall not be permitted by law.

8.6    Officers: Committees. The Members may designate one or more Persons to be officers of the Company, ("Officers") or to serve as members of an advisory committee (the "Committee Members"), and any Officers or Committee Members so designated shall have such title, authorities, duties and salaries as the Members may delegate to them. Any such Officers or Committee Members may resign or may be removed by the Members upon Approval of the Members.

## ARTICLE IX

## STATUS OF MEMBERS

9.1    General. The Members have the rights and the status of members under the Act. The Members will manage and control the Company business, and sign for or bind the Company, such power being vested exclusively in the Members.

9.2    Limitation on Liability. Except as provided in the Act, no Member shall have any personal liability whatever, whether to the Company, another Member or any creditor of the Company, for the debts of the Company or any of its losses beyond the amount of the Member's Capital Contribution. The Member's Membership Interest in the Company is, however, subject to adjustment (as between the Members) for failure to make additional capital contributions as provided in Section 4.2.

16

RECEIVED TIME  JUN. 9.  12:09PM

LFG0260

06/08/2005 12:15 FAX 7818716631                                              ☑011

G-16 37194    29

**MEMBERS**

TEN ELEVEN EIGHTY-SIX, L.P.

By:     PRO-CON-VEY, L.L.C., Its General
         Partner

By: _____
       W. Scott Kalm, President

EMERALD GROVE CAPITAL, LTD.

By:     EMERALD GROVE MANAGEMENT,
         LLC, its General Partner

By: _____
     Carl W. Forsythe, President

CHRIS CRAWFORD

By: _____
     Chris Crawford, Individually

29

REVISED REGULATIONS
KALFORS 00106022003

KALFOR SOLUTIONS GROUP, LLC

LFG0261

06/09/2005 12:15 FAX 7818716631 ☒012

*G4637194* 30

## EXHIBIT A

## MEMBERS OF KALFOR SOLUTIONS GROUP, LLC

| Members: | Interest |
|---|---|
| CHRIS CRAWFORD<br>2604 Redding Drive<br>Plano, Texas 75093 | 25% |
| EMERALD GROVE CAPITAL, LTD.<br>3922 Windsor<br>Dallas, Texas 75205 | 75% |

30

REVISED REGULATIONS
KALFORS 00106022003

KALFOR SOLUTIONS GROUP, LLC

RECEIVED TIME JUN. 9. 12:09PM

LFG0262

06/09/2005 12:15 FAX 7818716631
@013



**CONSENT OF MEMBERS
IN LIEU OF SPECIAL MEETING
OF
KALFOR SOLUTIONS GROUP, LLC**

**EFFECTIVE: June 6, 2003**

The undersigned, being all the members KALFOR SOLUTIONS GROUP, LLC, a Texas limited liability company (the "Company"), pursuant to the provisions of Articles 2.23 and 8.08 of the Texas Limited Liability Company Act, hereby waive notice of the time, place, and purpose of the special meeting of the members of the Company, and consent to and approve the following resolutions and each and every action effected thereby:

1. <u>Authorization to Issue Partner Shares.</u>

   RESOLVED, that the actions of the Company (and the President in acting on behalf of the Company) into changing the Agreement of Limited Partnership for Kalm-Forsythe Global Innovations, Ltd. ("KFGI") and Regulations for Kalfor Solutions Group, LLC ("KSG") to allow for the issuance of 10,000,000 Partner Shares (par value $.001 per share) for KFGI is ratified, approved and confirmed.

2. <u>Granting of Partner Shares to Founding Partners.</u>

   RESOLVED, that KFGI will grant from the 10,000,000 Partner Shares issued, 4,000,000 Partner shares to the founding partners of the Company in the following fashion is ratified, approved and confirmed:

   | | |
   |---|---|
   | Kalfor Solutions Group, LLC | 20,000 Partner Shares |
   | Chris Crawford | 995,000 Partner Shares |
   | Emerald Grove Capital, Ltd. | 2,985,000 Partner Shares |

3. <u>Issuance of Options to Purchase Partnership Shares.</u>

   RESOLVED, that KFGI is authorized to grant, from time to time, to Optionees, to receive an option to purchase from the Partnership, for a price per share set forth by the Partners, a number of Partner Shares (at $.001 par value) is ratified, approved and confirmed.

CONSENT OF MEMBERS  -1-

LFG0263

# EXHIBIT 10

Received By LNL
Life Complaint Dept.

JUL 2 1 2005

# LAWSON & WEITZEN, LLP

ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

EVAN T. LAWSON
RICHARD B. WEITZEN *
PAMELA B. BANKERT
FRANK L. BRIDGES
IRA H. ZALEZNIK
JOHN J. WELTMAN * * *
VALERIE L. PAWSON
GEORGE F. HAILER *
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO
WILLIAM F. COYNE, JR.
DAVID A. RICH *
DENNIS J. MANESIS * *
NATALIE A. KANELLIS †

PATRICIA L. FARNSWORTH
K. SCOTT GRIGGS
MICHAEL J. McDEVITT
STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON * *
CLARE B. BURHOE
ROBERT J. ROUGHSEDGE * * *
CAROLINE A. O'CONNELL *
MARISSA A. GOLDBERG
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
CHRISTOPHER S. FARNSWORTH
KRISTINA A. ENGBERG

BOSTON
TELEPHONE (617) 439-4990
TELECOPIER (617) 439-3987
EMAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

CAPE COD
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

MARLBOROUGH
LAWSON, WEITZEN & HAILER, LLP
171 LOCKE DRIVE, SUITE 101
MARLBOROUGH, MASSACHUSETTS 01752
TELEPHONE (508) 618-1025

July 5, 2005

**VIA CERTIFIED MAIL**

The Lincoln National Life Insurance Company
Client Service Center, M1R1
P.O. Box 5048
Hartford, CT 06102-5048

Re:   **Policy/Certificate Number: G1637194**
      **Insured: Richard C. Somerville**

To Whom It May Concern:

This firm represents Globe Composite Solutions, Ltd., a subsidiary of Kalm-Forsythe Globe Innovations, Ltd., which purchased the assets of Globe Rubber Works, Inc. in August 2004. Globe Rubber Works, Inc. owned this life insurance policy through your Company, which insured Richard C. Somerville, the former president of Globe Rubber Works, Inc. After the asset purchase of Globe Rubber Works, Inc. was completed, it changed the owner of the life insurance policy to Globe Composite Solutions, Ltd. by completing a "Life Ownership Change Form" provided by your Company. See attached. For several months, your Company has failed to complete the assignment transaction, despite acknowledging that the assignment was intended by the parties.

The policy identified above is now owned by Globe Composite Solutions, Ltd. This letter will serve as notice that Globe Composite Solutions, Ltd. is making a claim under the policy because Richard C. Somerville died on June 6, 2005. By this letter, we are making formal demand for payment. If we do not hear from you within seven days, we will commence litigation.

* ALSO ADMITTED IN NY
* * ALSO ADMITTED IN NH
* * * ALSO ADMITTED IN CA
* ALSO ADMITTED IN DC
* * ALSO ADMITTED IN NJ & PA
* * * ALSO ADMITTED IN RI, CT, NH & ME
† ALSO ADMITTED IN NH & NY

LFG0065

# LAWSON & WEITZEN, LLP

The Lincoln National Life Insurance Company
July 5, 2005
Page 2

Very Truly Yours,

Kathryn E. Pieczarka

Enc.
cc:     Evan T. Lawson, Esq.
        Carl W. Forsythe
        Roger Fasnacht

LFG0066

**⬠ Lincoln**
Financial Group®

*Life Ownership Change Form*

Personal Service Center
P.O. Box 5048 MlR1
Hartford CT 06102-5048
Fax number 860 466-2835

| General Information | |
|---|---|
| Policy number **6163 7194** | Issued by (the Company) **ING·Life** |

Insured's name **Richard C. Somerville**

Social security number **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**

Policy Owner's name **Globe Rubber Works, Inc.**

Social security number/Tax ID # **74-2922722**

Policy Owner's address **254 Beech St.**

City, State, ZIP **Rockland, MA 02370**

Policy Owner's phone no. **781-871-3702**    E-mail address

---

**New Owner Designation**

*An ownership change does not change existing beneficiary designations. To change your beneficiary, please submit a Lincoln Beneficiary Change Form.*

*The signature of all owners will be required to exercise any contractual rights under the policy.*

*Please change the Owner of the policy listed above to (Select Only One): Complete by typewriter or print in ink.*

☐ The Insured. (If more than one insured, designation assumes jointly with right of survivorship arrangement.)

☐ To one person during his or her lifetime and thereafter the Insured

Name _____    Date of Birth _____

☐ To one person absolutely, his or her estate

Name _____    Date of Birth _____

To multiple owners *(check one)*:  ☐ Joint with Right of Survivorship  ☐ Tenants-in-common*

*\*If tenant-in-common, specify shares, if not specified we will assume equal shares.*

To a *(check one)* ☐ Corporation ☐ Partnership ☑ LLC  or  ☐ Other *(specify)*

**Globe Composite Solutions, LTD      Rockland      MA**
Legal name                                              City                State

☐ To a trustee or successor trustee under a formal trust agreement

Name of Trustee(s) _____

Name of Trust _____

City, State _____    Date of Trust _____

I/We hereby certify that the Trustee(s) named are the Trustee(s) for the named Trust, which is in full force and effect. The Company shall not be obligated to inquire into the terms of any trust agreement affecting this policy and shall not be chargeable with knowledge of the terms thereof. The Company may rely solely upon the signature(s) of the Trustee(s) named to any receipt, release or waiver, or to any transfer or other instrument affecting this policy or any options privileges or benefits thereunder. Unless otherwise indicated the signature(s) of all Trustee(s) named, or their successors, will be required to exercise any contractual right under the policy. The Company shall have no obligation to see to the use or application of any funds paid to the Trustee(s) in accordance with the terms of the policy. Any such payment made by the Company to the Trustee(s) shall fully discharge the Company with respect to any amounts so paid.

---

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Form 32513  06/02

Page 1 of 2

LFG0067

**Agreements and Signatures**

*This section must be completed by the current policy owner.*

*Title required if a corporation, partnership or trust.*

*\*Two officer signatures are required for corporate owned policies.*

By signing below, you, the policy owner, certify that you have read this request and understand that it is subject to the provisions and conditions of the policies listed. You also certify that the policies are not assigned to any other person or corporation, except where otherwise noted on this request, and that no proceedings of bankruptcy or insolvency have been filed or are currently pending against you. We reserve the right to require additional information as needed.

Signed at _____ on _____

| City and State | | Date |
|---|---|---|

_Richard C. Somerville_
Current Owner (full name)    Signature    _President_ Title*

_Paul Slaney_
Current Owner (full name)    Signature    _Controller_ Title*

_____
Assignee, Irrevocable Beneficiary or other interested party (name and signature)

Community property release – This section is applicable for community property states (AZ, CA, ID, LA, NV, NM, TX and WA). Determination of Community Property status depends on the current or former resident state of the policy owner.
By signing below, you the spouse/former spouse agree to the changes indicated above and;

☐ You give up your rights to this policy according to the community property laws in your state.

☐ You do not give up your rights to this policy.

Spouse's Signature _____ Date _____
Name (print or type) _____

**New Owner Information**

THIS SECTION MUST BE COMPLETED BY THE NEW OWNER

Policy Owner's address _254 Beech St._

City, State, ZIP _Rockland, MA 02370_

**Taxpayer Identification Number and Certification Substitute W-9**

*This is an IRS requirement.*

By signing below, you certify that the information provided is complete and accurate as shown. You also certify that you have read, understand and agree to the information provided in the Substitute W9 sections.
Under the penalties of perjury, I certify that:

• The number shown below is my correct taxpayer identification number.

Social Security number or Tax Identification number _752989890_

• I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service that I am subject as a result of a failure to report all taxable income, including all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding. *(You must cross out this item if you have failed to report all interest and dividends on your tax report.)*

• I am a U.S. person *(including a U.S. resident alien).*

Signature of new owner _____ Title _____ Date _____

_Carl Forsythe_
Print Name

LFG0068