UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTHE GLOBAL      )
INNOVATIONS, LTD.               )
         Plaintiff,   )
                   )
v.                              )
                   )
RICHARD C. SOMERVILLE, ANNE     )
ROCHE-SOMERVILLE, and           )
SOLAR CONSTRUCTION, INC. F/K/A   )
GLOBE RUBBER WORKS, INC.        )
         Defendants.   )

Civil Action No. 05 10323 DPW

## MEMORANDUM IN SUPPORT OF DEFENDANT'S/PLAINTIFF'S-IN-COUNTERCLAIM OPPOSITION TO PLAINTIFF/DEFENDANT-IN-COUNTERCLAIM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### STATEMENT OF THE CASE

Richard C. Somerville ("Somerville"), Solar Construction, Inc. f/k/a Globe Rubber,

Works, Inc. ("Globe Rubber"), and Globe Composite Solutions, Ltd f/k/a Kalm-Forsythe

Globe Innovations, Ltd's ("Globe Composite") entered into an Asset Purchase Agreement in

August, 2004 (the "APA") whereby Globe Composite contracted to purchase certain assets

of Globe Rubber as well as intellectual property of Somerville. The execution of the detailed

APA was preceded by months of negotiations and extensive due diligence. Each party was

represented by counsel. The APA was an integrated contract and constituted the entire

agreement between the parties.

In its Motion for Partial Summary Judgment, Globe Composite seeks to establish its

ownership of two life insurance policies insuring Somerville's life owned by Globe Rubber

that were explicitly excluded from being sold under the APA. The APA is unambiguous.

The life insurance policies at issue were excluded assets that were retained by Globe Rubber under the APA. Additionally, Globe Composite's unfair and inequitable conduct bars its claims, there was no valid contract to transfer the policies and even if there was, such an agreement may be set aside under the doctrine of mutual and/or unilateral mistake. Moreover, at the time of Somerville's death, Globe Rubber was the beneficiary entitled to the proceeds of each of the life insurance policies. The material facts in the case are in dispute. Accordingly, Globe Composite's Motion for Partial Summary Judgment should be denied.

## FACTUAL BACKGROUND[1]

### I.    The Life Insurance Policies

The subject of Globe Composite's Partial Motion for Summary Judgment ("Summary Judgment Motion") is two life insurance policies insuring the life of Richard Somerville – one policy was issued by Aetna Life Insurance and Annuity Company and is administered by Lincoln Financial Group ("Lincoln") and a second policy was issued by American General Life Insurance Company ("American General") (collectively, the "Policies") (Statement ¶¶ 1 and 2.) The death proceeds of each policy are $250,000. (Statements ¶¶ 1 and 2.)

Globe Composite characterizes the Policies as term policies. The Policies were not "term" policies. (Statement ¶¶ 3-8.) As of August 1, 2004, the Lincoln policy had a cash surrender value of $$18,642.01 (Statement ¶ 5.) As of September 19, 2004, the American General policy had a cash surrender value of $13,500.42. (Statement ¶ 8.)

Both of the Policies contain procedures to effectuate a change of owner or change of beneficiary under the Policies. (Statement ¶¶ 9-12.) In summary, both Policies provide that

---

[1] Defendants provide a more detailed factual background in their "Concise Statement of Material Facts in Support of Defendant/Plaintiffs-in-Counterclaim's Opposition to Plaintiff/Defendant-in-Counterclaim's Motion for Partial Summary Judgment" (hereinafter the "Statement").

a change of owner or beneficiary will not take effect until the insurers receive documentation

that is acceptable to them and the change is recorded by them. (Statement ¶¶ 6, 7, 8 and 9.)

## II.    Negotiations Preceding the Execution of the APA

Throughout the months of negotiations prior to the execution of the APA, Globe

Rubber and Somerville were represented by Attorney William R. Rodgers ("Attorney

Rodgers") and Globe Composite was represented by Attorney Mark Johnson. (Statement ¶

13.)

Forsythe testified that during the negotiations of the APA, Mr. and Mrs. Somerville

expressed to Forsythe that they wanted to retain the policies with cash value. (Statement ¶

14). As of September, 2004, the Policies had a substantial cash surrender value. (Id.)

Accordingly, Forsythe's memory of Mr. and Mrs. Somerville's intent as to the life insurance

policies is consistent with the terms of the APA.

Forsythe also expressed interest to Attorney Rodgers about acquiring the Policies for

Globe Composite. (Statement ¶ 15.) However, Attorney Rodgers refused Forsythe's

request. (Id.) As a result, the issue was ultimately resolved by the exclusion of the Policies

from the purchase and sale of the company. (Id.)

## III.    The Terms of the APA

The determination of the owner of the Policies is controlled by the terms of the APA.

Pursuant to the APA, Globe Composite purchased identified assets of Globe Rubber for

approximately $898,000 and identified intellectual property of Somerville for 2.25 million

dollars. (Globe Composite Statement[2] ¶ 1.) Section 2.2 of the APA provided that the

insurance policies were "Excluded Globe [Rubber] Assets" and were not part of the purchase

---

[2] The "Concise Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment"
will be referenced herein as the "Globe Composite Statement."

3

and sale under the APA. (Globe Composite Statement ¶ 2.) Fasnacht, the former chief

financial officer of Globe Composite, testified "key-man" policies (such as the Policies at

issue here) are assets of a company. (Statement ¶ 18.) The terms of the APA are consistent

with the understanding of Attorney Rodgers who testified the Policies were to be retained by

Globe Rubber under the APA. (Statement ¶ 17.)

## IV.    Events Following the Execution of the APA

Having failed to obtain ownership of the Policies in the APA, Globe Composite

ignored the APA and took immediate action to try to change the owner of the Policies to

itself after the closing. (Statement ¶ 21.) Globe Composite initially tried to change the

owner of the Policies without speaking with Somerville but Globe Composite was told by the

insurers that they required documentation from Globe Rubber. (Statement ¶ 24.) It was only

then that Globe Composite approached Somerville. (Id.) Fasnacht testified he told

Somerville that Somerville "needed" to sign the forms. (Statement ¶ 28.) Globe Composite

did not communicate with Globe Rubber and Somerville's attorney regarding changing the

ownership of the Policies from Globe Rubber to Globe Composite. (Statement ¶ 26.).

Globe Composite, through its agent, sent a letter to American General dated

September 2, 2004 on Globe Rubber letterhead signed by Fasnacht who identified himself as

Globe Rubber's Chief Financial Officer. (Statement ¶ 27.) However, on September 2, 2004,

and at all times since the August closing, Fasnacht had been Globe Composite's Chief

Financial Officer, not Globe Rubber's. (Id.)

At the time Somerville was told that he needed to sign the forms, Somerville was a

Globe Composite employee. (Statement ¶ 29.) Globe Composite has failed to produce the

originals of the forms it claims were signed by Somerville. The originals were never sent to the insurance companies. (Statement ¶¶ 34 and 37.)

On or about December 1, 2004, Globe Composite and Forsythe breached their obligation to pay Somerville a $400,000 note payment. (Statement ¶ 30.) Globe Composite terminated Somerville's employment at Globe Composite on January 31, 2005. (Statement ¶ 32.) In its termination letter to Somerville, Globe Composite stated: "You are to leave the premises immediately and arrangement (sic) will be made to have your personal belongings delivered to your home." (Id.) There is no evidence suggesting that Somerville returned to the Globe Composite facility after he was terminated. (Statement ¶ 33.) Globe filed this action on or about February 18, 2005.

### A.    Globe Composite's Unsuccessful Attempts to Obtain Ownership of the Lincoln Policy

Lincoln did not receive any documentation from Globe Composite regarding a change of owner or beneficiary until February, 2005. (Statement ¶ 34.) According to Lincoln's records, Globe Composite (through its agent[3]) submitted a "Life Ownership Change Form" to Lincoln by fax on February 16, 2005. (Id.) Somerville's purported signature was dated February 15, 2005 on the "Life Ownership Change Form." (Id.) Globe Composite purported to act on behalf of Globe Rubber in submitting this form. (Id.)

By letter dated March 10, 2005 addressed to Globe Rubber, Lincoln stated it was unable to effectuate the change of ownership because it required two officers to sign on behalf of Globe Rubber. (Statement ¶ 42.) On March 29, 2005, Globe Composite faxed a letter to Lincoln purportedly from Globe Rubber on Globe Rubber letterhead. (Statement ¶

---

[3] Fasnacht testified Globe Composite retained an insurance broker named Mr. Neil McGinnis to act as its agent. (Statement ¶ 25.)

44.) The letter did not contain Somerville's signature. (<u>Id.</u>) The very next day, on March 30, 2005, Globe Composite faxed to Lincoln the same letter it had sent the day before but this time the letter purported to contain Somerville's signature. (<u>Id.</u>)

The mysterious appearance of Somerville's signature on the letter dated March 30, 2005 to Lincoln is highly suspicious. As an initial matter, Globe Composite had no authority to act on behalf of Globe Rubber, especially after Globe Composite had terminated Somerville, sued Globe Rubber, and knew Globe Rubber was represented by counsel. Additionally, neither Fasnacht nor Forsythe have any knowledge of how Somerville's alleged signature was obtained. (Statement ¶ 45.) Despite being requested to produce the original of this letter, Globe Composite has been unable to produce it. (<u>Id.</u>) Lincoln never received an original of the letter. (<u>Id.</u>) Globe Composite has not identified any witnesses who may establish that Somerville signed the letter. (<u>Id.</u>) Somerville signed an affidavit on March 28, 2005, which was filed in this Court. (Statement ¶ 46.) Given the litigation between the parties, it is improbable, to say the least, that Somerville signed this letter in March, 2005.

It is undisputed that Lincoln had not accepted the change of owner for the Lincoln policy before Somerville passed away on June 7, 2005. (Statement ¶ 49.) On June 3, 2005, Lincoln notified Globe Composite that it still had not obtained acceptable documentation to effectuate the change of ownership from Globe Rubber to Globe Composite. (Statement ¶ 50.) On June 9, 2005, two days after Somerville had passed away, Globe Composite was still trying to effectuate the change of ownership. (Statement ¶ 51.)

By letter dated July 5, 2005, Globe Composite, through counsel, submitted a claim to Lincoln asserting Globe Composite had "purchased the assets of Globe Rubber." (Statement ¶ 52.) This statement was not true. (<u>Id.</u>) In fact, Globe Composite had only purchased

certain identified assets and liabilities of Globe Rubber and under the APA, the Lincoln policy was an excluded asset. (Id.)  In reliance upon this representation by Globe Composite, Lincoln paid Globe Composite $250,000 in proceeds on or about August 1, 2005. (Id.)

**B.     Globe Composite's Unsuccessful Attempts to Obtain Ownership of the American General Policy**

Globe Composite also only submitted change of owner documentation to American General in February, 2005, after Somerville was terminated.  (Statement ¶ 35.)  Globe Composite (through its agent) submitted a "Change of Ownership" form to American General by fax on February 17, 2005. (Statement ¶ 37.)  Globe Composite (through its agent) submitted a "Change of Beneficiary" form to American General by fax on February 18, 2005. (Id.)

In a letter addressed to Globe Rubber dated February 18, 2005, American General stated it could not complete the request to change the ownership until it received a corporate resolution authorizing an officer to act on Globe Rubber's behalf along with the signature and title of the officer on company letterhead or paper with corporate seal.  (Statement ¶ 39.) In a letter addressed to Globe Rubber dated February 24, 2005, American General stated it could not complete the request to change the beneficiary of the American General policy because ownership had to be established first.  (Statement ¶ 41.)

Globe Composite continued to purport to act on behalf of Globe Rubber in its communications to American General.  On February 16 and 23, 2005, Globe Composite (through its agent) resent the unauthorized September 2, 2004 letter to American General on Globe Rubber letterhead.  (Statement ¶¶ 36 and 40.)  When the letter was dated and each time it was resent to American General, the letter falsely identified Fasnacht as the Chief Financial Officer of Globe Rubber.  (Statement ¶ 40.)

American General never received the required documentation from Globe Rubber it had requested prior to Somerville's death, or since for that matter, to effectuate the change of ownership and/or change of beneficiary. (Statement ¶ 48.) By letter dated July 5, 2005, Globe Composite, through its counsel, submitted a claim to American General for the death proceeds. (Statement ¶ 53.) In the letter, counsel for Globe Composite also incorrectly stated that Globe Composite had "purchased the assets of Globe Rubber." (Id.) American General subsequently filed an interpleader and deposited the death proceeds into Court. (Id.)

### C.    Other Life Insurance Proceeds

Globe Composite incorrectly suggests life insurance proceeds are presently available for Somerville's widow, Roche-Somerville, the estate of Somerville, and/or Globe Rubber. This is not true. Roche-Somerville, the estate of Somerville, and Globe Rubber have not obtained any life insurance proceeds as a result of Somerville's death. (Statement ¶ 56.)

### ARGUMENT

### I.    Standard of Review

The burden is upon Globe Composite to show, based upon the pleadings, discovery and affidavits that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once Globe Composite has satisfied its burden, the burden shifts to Defendants to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to Defendants and indulge all reasonable inferences in Defendants' favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If after review of the material presented, the Court finds that some genuine factual issues remain in this case, whose resolution one way or the other could affect its outcome, the Court

must deny the Summary Judgment Motion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).

**II.     The Life Insurance Policies Were "Excluded Assets" Under the APA**

Basic contract interpretation mandates that an unambiguous contract must be

enforced according to its terms.  <u>Schwanbeck v. Federal-Mogul Corp.</u>, 412 Mass. 703, 706

(1992) (citation omitted) [4].  The APA is a fully integrated agreement.  <u>See</u> APA § 10.7.  It

was executed following lengthy, detailed negotiations with both parties represented by legal

counsel.  (Statement ¶ 13.)  The APA unambiguously states "all insurance policies" were

"Excluded Globe [Rubber] Assets" notwithstanding anything else contained in the APA.  <u>See</u>

APA § 2.2.  Globe Composite urges the Court to ignore the unambiguous language of the

APA and instead interpret the APA in light of the course of conduct of the parties.  Globe

Composite's theory contradicts the well-settled rule that the subsequent conduct of the parties

is **only** taken into account where the language of the contract is ambiguous.  <u>Savignano v.</u>

<u>Gloucester Housing Authority</u>, 344 Mass. 668, 673 (1962).[5]

Globe Composite attempts to circumvent the unambiguous language of the APA by

contending the Policies are liabilities rather than assets.  This argument fails for several

reasons.  First, the APA treats insurance as assets and excludes them from the assets being

purchased.  Second, Globe Composite's own former chief financial officer, Fasnacht,

---

[4] The law of Massachusetts, the forum state, provides the rule of decision in this case.  28 U.S.C. § 1652.  The parties to the APA agreed in Article 10.13 that the APA would be "governed by and construed and enforced under the laws of the State of Massachusetts."  Massachusetts courts honor choice of law provisions.  <u>See</u> <u>Northeast Data Sys. Inc. v. McDonnell Douglas Computer Sys. Co.</u>, 986 F.2d 607, 610 (1st Cir. 1993), <u>citing</u> <u>Morris v. Watsco, Inc.</u>, 385 Mass. 672, 674-675 (1982).  Accordingly, the construction and interpretation of the APA will be governed by Massachusetts law.

[5] Indeed, all of the cases cited by Globe Composite in support of its argument that course of performance is relevant demonstrate that subsequent conduct was considered where the language of a contract was ambiguous. See <u>e.g.</u> <u>Ins. Co. v. Dutcher</u>, 95 U.S. 269 (1877) (course of conduct considered to interpret a contract susceptible of different interpretations); <u>Boston Edison Co. v. Federal Energy Reg. Comm</u>, 441 F.3d 10 (2006) (course of conduct considered to interpret contract susceptible of different interpretations).

9

testified that key man insurance policies are assets of a company. (Statement ¶ 18.) Third, the Policies had a cash surrender value when the APA was executed. (Statement ¶¶ 5 and 8.)

Alternatively, Globe Composite urges the Court to rewrite the terms of the Employment Agreement to expand Somerville's agreement under the Employment Agreement. Somerville's agreement to assist Globe Composite in procuring key-man life insurance on his life while an employee of Globe Composite by consenting to medical examinations did not require Somerville to transfer the Policies to Globe Composite. Strikingly absent from the Employment Agreement is any reference to the Policies. Globe Rubber did not agree to assign the Policies to Globe Composite under the Employment Agreement. (Statement ¶ 19.)

Even if the Court were to consider the purported "course of conduct" evidence urged by Globe Composite, the evidence advanced is not probative of the interpretation of the APA. First, it is not relevant when Roche-Somerville made a claim on the Policies. Somerville passed away on June 7, 2005. Roche-Somerville's grief due to the unexpected loss of her husband as well as the attention required to administer Somerville's estate (as well as this lawsuit) reasonably explain any delay by Roche-Somerville in inquiring about the insurance proceeds. (Statement ¶ 54.) Roche-Somerville was appointed as temporary executrix of her husband's estate in July, 2005. (Statement ¶ 55.)

Similarly, Somerville's alleged silence as to Globe Composite's rights to the Policies is not probative. The lengthy APA and related agreements contained complex terms that were negotiated by legal counsel. (Statement ¶ 13.) Globe Composite circumvented Somerville and Globe Rubber's legal counsel and when it told Somerville he needed to sign the documents. (Statement ¶ 26.) Somerville may have been mistaken about the rights of

Globe Rubber under the APA. Additionally, Somerville was an employee of Globe Composite and was owed substantial money by Globe Composite under the APA. (Statement ¶ 29.) Given these factors, Somerville's alleged acquiescence does not alter the unambiguous language of the APA. In any event, to the extent that Somerville's intent is considered, it should be considered at trial, not by summary judgment. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).

The APA is unambiguous. The Policies were "Excluded Globe [Rubber] Assets" under the APA and, thus, were not transferred to Globe Composite. Accordingly, the parties' course of conduct is neither relevant nor admissible. To the extent Globe Composite suggests the course of conduct of the parties supports its position, there are material facts in dispute, including the prior negotiations of the parties[6], that contradict Globe Composite's position. Accordingly, the Summary Judgment Motion should be denied.

**III.    Globe Composite's Conduct Precludes Summary Judgment**

Following the execution of the APA, Globe Composite engaged in a pattern of unfair conduct in disregard for its known contractual arrangement with Globe Rubber. Despite having failed to obtain the Policies under the APA, promptly following the execution of the APA, Globe Composite set out to obtain the Policies. The day after the closing, Forsythe directed Fasnacht to contact Lincoln and American General to obtain the paperwork to change the ownership of the Policies. (Statement ¶ 21.)

---

[6] When contractual language is ambiguous, its meaning is a question of fact. Lanier Prof. Serv. Inc. v. Ricci., 192 F.3d 1, 4 (1st Cir. 1999.) The resolution of the ambiguity turns on the parties' intent, as "discerned by the factfinder from the circumstances surrounding the ambiguity and from such reasonable inferences as may be available." Id. Extrinsic evidence is admissible to assist the factfinder in resolving the ambiguity, including evidence of, in descending order of importance: (1) the parties' negotiations concerning the contract at issue; (2) their course of performance; and (3) trade usage in the relevant industry. Id.

11

From the very beginning, Globe Composite misrepresented to Lincoln and American General that it was acting on behalf of Globe Rubber. (Statement ¶ 27.) Globe Composite had no authority to act on behalf of Globe Rubber. (Statement ¶ 18.)

At the time Globe Composite told Somerville he needed to sign the change of ownership forms, Somerville was an employee of Globe Composite under a five year employment contract. (Statement ¶ 29.) Somerville was subject to a non-compete agreement. (Id.) Globe Composite owed Somerville $750,000 under promissory notes as well as a 7.5% equity interest in Globe Composite. (Id.) The financial health of Somerville's family rested in the hands of Globe Composite.

Globe Composite and Forsythe continued to undermine the terms of the APA in the following months. On or about December 1, 2004, Globe Composite and Forsythe breached the terms of the APA when they failed to pay Somerville $400,000 under a promissory note. (Statement ¶ 30.) Forsythe testified that he forgot that the $400,000 note was due. (Id.) Forsythe's testimony has been contradicted by Fasnacht. (Id.)

Globe Composite terminated Somerville's employment on January 31, 2005 with the intent to avoid Globe Composite's obligations to Somerville. (Statement ¶ 32.) It was only after Globe Composite terminated Somerville that it submitted documentation to Lincoln and American General to change the ownership of the Policies.[7] (Statement ¶¶ 34 and 35.) Globe Composite has not produced any credible explanation of its desire to obtain key-man life insurance on Somerville after it fired him.

---

[7] Globe Composite contends it submitted change of ownership papers to American General and Lincoln sometime between September, 2004 and December, 2005 but that contention conflicts with the testimony of American General and the affidavit of Lincoln who have testified that they did not receive any change of ownership and/or change of beneficiary paperwork from Globe Composite until February, 2005.

Shortly after Globe Composite submitted the change of owner paperwork to Lincoln and American General, Globe Composite filed suit against Somerville and Globe Rubber in this Court. (Statement ¶ 38.)  Even though parties were engaged in litigation, Globe Composite continued to represent to Lincoln and American General that it was acting on Globe Rubber's behalf. (Statement ¶¶ 40, 43, and 44.)  Globe Composite (through its agent) sent numerous correspondence to the insurance companies purportedly on behalf of Globe Rubber in this time frame falsely stating that Fasnacht was the Chief Financial Officer of Globe Rubber, when he was not. (Statement ¶¶ 36 and 40.)  Globe Composite has been unable to explain how it obtained Somerville's signature on a letter that it faxed to Lincoln on March 30, 2005. (Statement ¶ 45.)  Lincoln never received the original of the letter and Globe Composite has failed to produce the original of the letter, despite having been requested to do so. (Id.)

Following Somerville's death on June 5, 2005, Globe Composite continued to make misrepresentations to Lincoln and American General in its efforts to obtain the policy proceeds. (Statement ¶¶ 52 and 53.)  In reliance upon Globe Composite's untrue representation that it had "acquired the assets of Globe Rubber" Lincoln paid the proceeds to Globe Composite. (Statement ¶ 52.)

**A.    An Issue of Fact Exists as to Whether Globe Composite's Conduct Constitutes a Violation of M.G.L. c. 93A**

Viewing the evidence in a light most favorable to the defendants, genuine issues of material fact exist concerning whether Globe Composite's conduct was in disregard of its known contractual arrangements with Globe Rubber in an attempt to secure the benefits of the Policies.  Conduct that is in disregard of "known contractual arrangements" and intended to secure benefits for the breaching party is actionable under Massachusetts law as an unfair

13

act or practice under M.G.L. c. 93A. <u>Anthony's Pier Four v. HBC Associates</u>, 411 Mass. 451, 474 (1991). For the purposes of summary judgment, an allegation of unfair conduct is considered to be a matter of fact, and thus not resolved on summary judgment. <u>Spence v. Boston Edison Co.</u>, 390 Mass. 604, 616 (1983); <u>see</u> <u>also</u> <u>Commonwealth Aluminum Corp. v. Baldwin Corp.</u>, 980 F.Supp. 598, 614 (D. Mass. 1997) (denied summary judgment even when Court concluded that it was highly unlikely that defendant's conduct rose to the level of "rascality"). Accordingly, the Summary Judgment Motion should be denied.

### B.    An Issue of Fact Exists as to Whether the Lincoln Proceeds Should be Returned to Globe Rubber as Money Had and Received

In Massachusetts, a claim for money had and received will lie where a party has received money or its equivalent which in equity and good conscience belongs to another party. <u>General Exchange Ins. Corp. v. Driscoll</u>, 315 Mass. 360, 365 (1944). Viewing the evidence in a light most favorable to Defendants, there is sufficient evidence to raise a question of fact for trial whether Globe Composite received the proceeds of the Lincoln policy under circumstances which in equity and good conscience belongs to Globe Rubber. Accordingly, the Summary Judgment Motion should be denied.

### IV.    Genuine Issues of Material Fact Exist as to Whether the Purported Assignment of the Policies Resulted from Mistake

It is well settled under Massachusetts law that a written instrument[8] will be reformed or rescinded on the grounds of mistake upon "full, clear, and decisive proof" of the mistake. <u>Simches v. Simches</u>, 423 Mass. 683, 687 (1996). Massachusetts law recognizes the doctrines of both unilateral and mutual mistake. <u>See</u> <u>Berman v. Sandler</u>, 379 Mass. 506, 509 (1980). In the case of contracts, reformation or rescission generally will not be granted unless the

---

[8] Under Massachusetts law, assignments are usually treated like contracts. <u>See</u> <u>supra</u> p. 19.

parties' mistake is mutual. Id. at 509-510. Mutuality of mistake is not required, however, where there is an absence of consideration. See Simches, 423 Mass. at 687 (unilateral mistake on part of the settlor sufficient to warrant reformation); Berman, 379 Mass. at 510 (mutual mistake not involved where settlor received no consideration); Ryan v. Brennan, 1 Mass. App. Ct. 469 (1973) (conveyance by deed subject to rescission upon showing of unilateral mistake).

Globe Composite has not and can not produce any evidence that Globe Rubber or Somerville received any consideration resulting from Somerville's purported assignment of the Policies to Globe Composite. Accordingly, under Massachusetts law, the purported assignment may be rescinded upon a showing of either unilateral or mutual mistake.

Somerville's purported assignment of the Policies from Globe Rubber to Globe Composite was contrary to the pre-closing negotiations between the parties and it was contrary to the terms of the APA. (Statement ¶¶ 14, 15, and 16.) There was no evidence of a gift and no reason for Somerville to make a gift. A fact finder may find that Somerville signed the change of ownership forms with the mistaken understanding that Globe Rubber had agreed to sell the Policies to Globe Composite, given Fasnacht telling him after the closing that he needed to sign the forms. (Statement ¶ 28.)

Globe Composite also may have been mistaken as to the rights and obligations of the parties under the APA. Forsythe testified that he thought that the transfer of the Policies was part of the deal. (Statement ¶ 22.) Forsythe and Fasnacht both testified they believed that changing the owner of the policies was part of the closing check list items. (Statement ¶ 23.) Based upon this testimony, a fact finder may determine that Globe Composite mistakenly believed that Globe Rubber had sold the Policies to Globe Composite.

15

Viewing this evidence in a light most favorable to the Defendants, there are material facts in dispute as to whether Somerville signed the change of owner forms for the Policies because he was mistaken as to the rights and obligations of Globe Rubber under the APA. Additionally, the testimony of Forsythe and Fasnacht evidences that Globe Composite may have been mistaken as well. Accordingly, the Summary Judgment Motions should be denied.

**V.    Issues of Fact Exist as to Whether Globe Composite Accepted Globe Rubber's Purported Offer Within a Reasonable Time**

Under Massachusetts law, if no time is stated in an offer to form a contract, then the offer will only remain open for a reasonable time. <u>Powers, Inc. v. Wayside, Inc. of Falmouth</u>, 343 Mass. 686, 693 (1962). The question of whether an act has been done within a reasonable time is a question of fact. <u>Id.</u> A "reasonable time" is that time which a reasonable person would have thought was available to communicate acceptance. <u>Id.</u> In determining whether an offer was accepted within a reasonable time, a fact finder may consider all of the circumstances including the nature of the proposed agreement and the purpose of making the proposed agreement. <u>Id.</u>

Globe Composite suggests it obtained Somerville's offer to change the owner of the Policies sometime between September and December, 2004. (Statement ¶ 31.) Yet, Globe Composite did not submit any paperwork concerning the change of ownership to Lincoln or American General until after it had terminated Somerville. (Statement ¶¶ 34 and 35.)

The fact finder should be allowed to consider the nature of the proposed transfer of ownership and the purpose of the transfer of ownership to decide whether Globe Composite accepted Globe Rubber's purported offer to transfer the Policies within a reasonable time. Accordingly, the Summary Judgment Motion should be denied.

16

## VI.    The Purported Transfer of the Policies Lacked Consideration

Under Massachusetts law, assignments are usually treated like contracts, which must be supported by consideration in order to be valid, unless the assignment is a delivered gift.[9] MHI Shipbuilding, LLC v. National Fire Ins. Co. of Hartford, 286 B.R. 16, 32 (D. Mass. 2002); see Larabee v. Potvin Lumber Co., 390 Mass. 636, 641 (1983) (finding that assignment was a contract); see also 3 G. Couch, Insurance § 36:15 (3d ed 1998).  The burden of proving consideration for an assignment of a life insurance policy by the insured and beneficiary sufficient to make the assignment effective as between the assignee and a beneficiary rests upon the assignee.  Finegan v. Prudential Ins. Co., 300 Mass. 147, 153 (1938); see also 3 G. Couch, Insurance § 36.21.  Accordingly, the burden is on Globe Composite to establish there was consideration to support the purported assignment of the Policies from Globe Rubber to Globe Composite.

The requirement of consideration is designed to make enforceable only promises which are bargained for, in the sense that there is either a benefit to the promisor or a detriment to the promisee.  Hinchey v. NYNEX Corp., 144 F.3d 134, 142 (1st Cir. 1998) (applying Mass. law.)  Globe Composite has not proffered any evidence, and it can not produce any evidence, that Somerville or Globe Rubber received a benefit by purportedly assigning the Policies to Globe Composite.  Therefore, Globe Composite must prove that it suffered a legal detriment.

There are material facts in dispute as to whether Globe Composite suffered a legal detriment.  Globe Composite's alleges that it paid premiums on the policies it did not purchase.  This is not legal detriment.  Globe Composite was seeking to obtain policies to

---

[9] Globe Composite has not advanced any evidence, and there is no evidence, to suggest that the purported transfer of the policies from Globe Rubber to Globe Composite was meant to be a gift.

which it was not entitled with cash value that exceeded the payments that Globe Composite purportedly made. (Statement ¶¶ 5 and 8.) Globe Composite's payment of premiums on policies that were not purchased under the APA is not legal detriment. There are material facts in dispute as to whether there was consideration, the Summary Judgment Motion should be denied.

**VII.    The Proceeds Vested in Globe Rubber at the Time of Somerville's Death**

The rights of Globe Rubber as a beneficiary to the Policies vested when Somerville passed away on June 7, 2005. The law in Massachusetts is stated as follows:

> [I]f an insured has not sufficiently complied with the requirements for a change of beneficiary prior to his death, his death serves to vest in the beneficiary named the right to the proceeds, and no act of the insurer or other claimant can prejudice that right.

Acacia Mutual Life Ins. Co. v. Feinberg, 318 Mass. 246, 250 (1945); Henderson v. Adams, 308 Mass. 333, 338 (1941). As of the date of Somerville's death, neither Lincoln nor American General had accepted the documentation submitted by Globe Composite seeking to change the owner and beneficiary of the Policies to Globe Composite. (Statement ¶¶ 48 and 49.)

Resnek v. Mutual Life Ins. Co. of New York, 286 Mass. 305 (1934) supports this outcome. In that case, the decedent had designated his sister and his mother as beneficiaries under one life insurance policy and his sister as a beneficiary under a second policy. Id. at 306. The decedent's wife testified her husband had delivered the two insurance policies to her and told her he wanted her to have the proceeds. Id. at 307. Thereafter, the decedent instructed his wife to obtain change of beneficiary forms from the insurance company. Id. The forms indicated they would not go into effect without endorsement of the home office of

18

the insurance company. Id. at 307-308. A supervisor of the local office subsequently

rejected the forms and returned them to the decedent. Id. at 309-310. The endorsement of

the home office was not obtained prior to the decedent's death. Id.

The central issue before the Court was whether there had been a valid change of

beneficiary under the policies whereby the wife was substituted as beneficiary for those

designated under the policies. Id. at 307. The Court identified the interests of the named

beneficiaries in pertinent part as follows:

> The right of such beneficiary during the life time of the insured
> is sometimes referred to as contingent upon the happening of
> death of the insured but when so viewed the right nevertheless
> **becomes vested and absolute** upon the occurrence of that
> event.

Id. at 308-309 (emphasis added.) The Court concluded that the insured had not exercised

substantial compliance with the insurance policy in order to effectuate the change of

beneficiary prior to his death. Id. at 310. Accordingly, the named beneficiaries were

entitled to the proceeds.[10]

The beneficiary of the Policies at the time of Somerville's death was Globe Rubber.

Accordingly, Globe Rubber was entitled to the proceeds upon Somerville's death.[11] At a

---

[10] The wife of the decedent also had argued that the insurance company had waived the failure of the insured to
comply with the policy provisions by paying the policy proceeds into the Court. Id. at 310. The Court
disagreed. "An insurance company when sued on a policy may waive any rights it possesses under the policy
but it cannot by acts done it after the rights of the named beneficiary have vested upon the death of the insured
waive or destroy such rights. Id.

[11] Colasanto v. Life Ins. Co. of North American, 100 F.3d 203 (1996) is not to the contrary. That was an appeal
from a jury verdict awarding the proceeds of a life insurance policy. The Court affirmed the verdict as to the
change of ownership and beneficiary. The Court stated that an assignment not in compliance with the policy
may be binding so long as the act and the intent is sufficient to confirm the assignment's validity. There are
material facts in dispute in this case as to the act and intent of the parties where (i) the APA excluded the
Policies; (ii) there was no evidence of a gift to Globe Composite; (iii) there was no reason for Somerville to
make a gift to Globe Composite; and (iv) Somerville was an employee of Globe Composite at the time he
allegedly signed the documents the originals of which Globe Composite has failed to produce.

minimum, the facts are disputed as to this issue. Accordingly, the Plaintiff's Motion should be denied.

### **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment should be denied.

Respectfully submitted,
Anne Roche-Somerville and Solar Construction, Inc.
f/k/a Globe Rubber Works, Inc.
By their attorneys,


/s/ Jennifer C. Roman
Mark S. Furman (BBO# 181680)
mfurman@tbhr-law.com
Jennifer C. Roman (BBO# 643223)
jroman@tbhr-law.com
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue
Boston, MA 02199
(617) 218-2000


Dated:  February 2, 2007