UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　 )<br>　　　　　　　　　　　　 )<br>v. )<br>　　　　　　　　　　　　 )<br>RICHARD C. SOMERVILLE, ANNE )<br>ROCHE-SOMERVILLE, and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>　　　　Defendants. )<br>　　　　　　　　　　　　 ) | Civil Action No. 05 10323 DPW |

|  |
|---|
| RICHARD C. SOMERVILLE and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>　　　　Plaintiffs-in-Counterclaim )<br>　　　　　　　　　　　　 )<br>v. )<br>　　　　　　　　　　　　 )<br>GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTH GLOBAL )<br>INNOVATIONS, LTD. and )<br>CARL W. FORSYTHE )<br>　　　　Defendants-in-Counterclaim ) |

## DEFENDANTS' RESPONSE TO CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CONCISE STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF DEFENDANTS'/PLAINTIFFS'-IN-COUNTERCLAIMS OPPOSITION TO PLAINTIFF'S/DEFENDANT-IN-COUNTERCLAIM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, Anne Roche-Somerville, individually and in her capacity as Executrix of the

Estate of Richard C. Somerville and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc.

("Defendants"), hereby respond to the Concise Statement of Material Facts in Support of

Plaintiff's Motion for Partial Summary Judgment (hereinafter "Globe Composite Statement")

and submit the Defendants' Concise Statement of Additional Material Facts In Opposition To

Plaintiff/Defendant-in-Counterclaim's Motion For Partial Summary Judgment.

## RESPONSE TO PLAINTIFF'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      In or about August 2004, KFGI entered into an Asset Purchase Agreement with Globe Rubber and Richard C. Somerville, its owner and president (Agreement), whereby KFGI purchased identified assets of Globe Rubber for approximately $898,000, as well as identified intellectual property of Somerville for $2.25 million (KFGI paid $2.4 million in cash and issued three promissory notes totaling $750,000). Exhibit A, § 2.4, pp. 11-12.

**Response**:

Undisputed. Further answering, defendant, Carl W. Forsythe ("Forsythe") also

individually guaranteed a promissory note payable to Richard Somerville ("Somerville") in the

original principal amount of $400,000 and Somerville was to receive a 7.5% equity interest in

KFGI. (Exhibit A, § 3.2.) It is also undisputed that Exhibit A is a copy of the Asset Purchase

Agreement.

2.      Section 2.2 of the Agreement provides that certain "excluded assets" shall not be part of the sale and shall remain the property of Globe Rubber after the closing, including "all insurance policies and rights thereunder..." Exhibit A, § 2.2, p. 10.

**Response**:

Undisputed.

3.      As part of its disclosures under the Agreement, Globe Rubber provided a list of all "policies of insurance to which Globe [Rubber] is a party or under which Globe [Rubber], or any director of Globe [Rubber] in such capacity, is or has been covered at any time since January 1, 2003." This list includes, among others, three term life insurance policies described as follows:

2

Key Man Life Insurance on Somerville

| | | |
|---|---|---|
| State Life Insurance | Policy #5110095310 | $400,000 |
| | Effective 3/9/04 – 3/9/05 | |
| American General Life Insurance | Policy #U10005220L | $250,000 |
| | Effective 9/19/03 – 9/18/04 | |
| Lincoln Financial Group | Policy #G1637194 | $250,000 |
| | Effective 9/1/03 – 9/1/04 | |

Exhibit A, § 4.18, p. 25; Exhibit B, schedule 4.18, pp. 16-17.

**Response:**

The terms of the disclosure agreement speaks for itself. Disputed that the three policies

referenced were "term" policies and further state that both the Lincoln policy and the American

General policy had a cash surrender value. (The Lincoln policy and the American General

policy are collectively referred to herein as the "Policies"). (Exhibit 1 to the Affidavit of

Jennifer C. Roman (hereinafter "Roman Affidavit" and Exhibit 2 to the Affidavit of Cheryl A.

Wilson (hereinafter "Wilson Affidavit"). It is undisputed that Exhibit B is a copy of Globe

Rubber's disclosure statement.


4.    As a condition of the asset acquisition, KFGI agreed to execute an Employment
Agreement retaining Somerville, the former president of Globe Rubber, as the Director of
Research and Development of Globe Composite for a term of five (5) years. Exhibit A, § 2.8
(b)(iii), p. 17; Exhibit C.

**Response:**

Undisputed except Defendants dispute the statement "as a condition of the asset

acquisition" insofar as the Employment Agreement speaks for itself. (Exhibit C to Globe

Composite Statement). Further answering, it is undisputed that Exhibit C is a copy of the

Somerville Employment Agreement.

5.    The Employment Agreement provides that Somerville shall use "his best efforts to cooperate with [Globe Composite] in procuring "key man" life insurance policies in [Somerville's] name for the benefit of [KFGI/Globe Composite] at any time during the Employment Period, such cooperation to include, without limitation, [Somerville] being available for and consenting to any physical examinations, providing medical history record or other information or taking any other actions that may be necessary or advisable." Exhibit C, § 13, p. 10.

**Response:**

Undisputed.  Further answering, the Employment Agreement implied that Globe

Composite's acquisition of key-man insurance to insure Somerville's life was uncertain.

Pursuant to Section 7 of the Employment Agreement, Globe Composite had varying

responsibilities to Somerville's estate depending on whether or not it acquired key-man

insurance.  (Exhibit C § 7 to Globe Composite Statement.)  Further answering, the Employment

Agreement makes no reference to the Policies at issue in the Summary Judgment Motion.  (Id.)

6.    KFGI/Globe Composite required key man life insurance on Somerville as protection in the event that Somerville was unable to fulfill his duties as the Director of Research and Development.  Globe Composite assumed the Lincoln and American General term life policies as part of the asset acquisition transaction for this purpose.  Exhibit D, p. 47, 1.20 – p. 48, 1.24.

**Response:**

The first sentence is disputed.  Pursuant to section 7 of the Employment Agreement, the

parties agreed that Globe Composite may or may not maintain key-life insurance on Mr.

Somerville.  (Exhibit C § 7 to Globe Composite Statement.)  The second sentence is disputed.

Pursuant to Section 2.2 of the Agreement "all insurance policies" were identified as Globe

Excluded Assets and were not part of the purchase and sale under the Agreement.  (Exhibit A §

2.2 to Globe Composite Statement.)  Further answering, William R. Rodgers, Esq. ("Attorney

Rodgers") is the attorney who represented Globe Rubber and Somerville with respect to the

4

APA. (Exhibit K, 4:17:-4-24; 5:1-5:3 to Globe Composite Statement.) According to Attorney

Rodgers, the Policies were to be retained by Globe Rubber under the APA. (Id. at 45:23–45:24.)

Further answering, Roger Fasnacht ("Fasnacht") is the former chief financial officer of Globe

Composite. (Exhibit E, Vol. I, 8:2 – 8:15 to Globe Composite Statement; Exhibit 22, Vol. III,

33:3 – 33:9, Roman Affidavit.) According to Fasnacht, key man policies are considered to be

"assets" of a company. (Exhibit 22, Vol. III, 47:20–47:24 Roman Affidavit.) It is undisputed

that Exhibit D is a copy of the February 14, 2006 deposition transcript of Carl W. Forsythe.

Further answering, Forsythe was also deposed on January 4, 2007, and his deposition has not

been completed. (Exhibits 23 to Roman Affidavit.)

7.     Globe Rubber's Chief Financial Officer (CFO) leading up to and at the time of the
closing was Roger Fasnacht (Fasnacht), and Fasnacht stayed on as the CFO of Globe Composite
after the closing. Exhibit E, p. 8, 11. 4-15.

**Response:**

It is undisputed that Globe Rubber's CFO was Fasnacht for a period of time before the

closing. It is disputed that Fasnacht stayed on with Globe Rubber after the closing but it is

undisputed that he became CFO of Globe Composite after the closing. Undisputed that Exhibit

E is a copy of the January 31, 2006, deposition transcript of Fasnacht.

8.     Fasnacht was initially retained by Globe Rubber in December 2002 as a
consultant to "cleanup" the company's financial records for presentation to prospective
purchasers and lenders. Exhibit E, p. 7, 11. 4-13.

**Response:**

Defendants admit Fasnacht was hired in or about December, 2002. The remaining

statements are disputed insofar as Fasnacht performed a variety of services for Globe Rubber.

(Exhibit E, Vol. I, 6:21-6:24; 7:1-7:3; 8:2-8:8, to Globe Composite Statement.)

9.    After becoming CFO of Globe Rubber, Fasnacht was responsible, among other things, for negotiating the terms of the Agreement, providing all the financial and due diligence information needed for the acquisition, and advising Somerville and his wife with respect to same. Exhibit E, p. 17, 11. 8-17, p. 43, 11. 10-12, p. 45, 11. 5-13, p. 46, 1. 19 – p. 48, 1.4, p. 50, 1. 13 – p. 53, 1. 10, p. 65, 1. 18 – p. 66, 1. 20, p. 68, 1. 21 – p. 70, 1. 21.

**Response:**

Disputed.  Counsel for Globe Rubber, counsel for Globe Composite, Globe Rubber

employees, and Globe Composite employees, including without limitation Fasnacht, were

involved with the negotiations and due diligence that proceeded the execution of the Agreement.

(Exhibit K, 29:3-29:18 to Globe Composite Statement).

10.    According to Fasnacht, the "key man" policies referenced in the Agreement were transferred to Globe Composite as part of the acquisition in order to provide the new company with key man insurance for Somerville.  Exhibit E, p. 83, 1.1 – p. 89, 1. 10.

**Response:**

Undisputed that Fasnacht testified the Policies were transferred to Globe Composite as

part of the acquisition. Disputed that this is an accurate statement.  Fasnacht was mistaken as to

the terms of the Agreement.  The Policies were "Excluded Globe Assets" pursuant to Section 2.2

of the Agreement.  (Exhibit A § 2.2 to Globe Composite Statement; Exhibit K, 46:3-46:8 to

Globe Composite Statement.)

11.    Globe Rubber and/or the Somerville and his wife also held certain whole life insurance policies insuring Somerville at the time of the closing, but the term policies were transferred to Globe Composite because they had little cash value. Exhibit E, p. 97, 1. 21- p. 98, 1. 8.
**Response:**

Disputed. As of August 31, 2002, the Lincoln Financial policy had a cash surrender

value of $4,677.11. (Exhibit 3 to the Roman Affidavit). As of August 1, 2004, the Lincoln

policy had a cash surrender value of $18,642.01. (Exhibit 25 to the Roman Affidavit.)  The

American General policy had a cash surrender value as of September 19, 2004, of $13,500.42.

(Id. at Exhibit 4.)  Neither of these policies were term policies.  (Exhibits 24 at 28:1-28:9; 25 to

the Roman Affidavit.)  Further answering, the Policies were not transferred from Globe Rubber

to Globe Composite.  (Exhibit A § 2.2 to Globe Composite Statement.)

12.    Immediately after the closing, Fasnacht took on the responsibility of effectuating
the transfer of the Lincoln and American General policies from Globe Rubber to Globe
Composite.  Exhibit E, p. 91. L. 16 – 20.  This entailed contacting the insurers, having several
conversations with Somerville about the actions required on his part to transfer the policies, and
getting his signature on various forms required by Lincoln and American General.  Exhibit E, p.
91, 1. 16 – p. 101, 1. 20; Exhibit F; Exhibit G; Exhibit H.

**Response:**

Undisputed that Globe Composite took action in an attempt to obtain the Policies after

the closing even though the Policies were excluded assets under the Agreement.  (Exhibit A § 2.2

to Globe Composite Statement.)

13.    Somerville signed these forms without questioning Globe Composite's right to the
policies.  Exhibit E, p. 93, 1. 17-19; Exhibit F; Exhibit G; Exhibit H.

**Response:**

Disputed.  There is no evidence to support this statement except for the self-serving

testimony of Globe Composite representatives.  Further answering, Somerville's understanding

as to Globe Composite's purported rights to the Policies is not probative to the rights of Globe

Rubber under the Agreement.  Further answering, Fasnacht and Forsythe never consulted the

Agreement nor contacted Attorney Rodgers regarding their efforts to gain ownership of the

Policies from Globe Rubber.  (Exhibit E, Vol. III, 282:1-282:7 to Globe Composite Statement.)

14.    Globe Composite paid all of the premiums on the policies after the closing.
Exhibit J, ¶ 3.  The first premium payment was made by Globe Composite to Lincoln on August
27, 2004, which was contemporaneous with the asset acquisition closing.  The first premium

payment made by Globe Composite to American General was made on September 28, 2004. Exhibit E, p. 89 II. 14-23; Exhibit I.

**Response:**

Undisputed. Further answering, Globe Composite did not have an obligation to pay the premiums at it had not acquired the Policies as part of the Agreement. (Exhibit A § 2.2 to Globe Composite Statement.)

15.    Globe Composite treated the premium payments as ordinary expenses. If Solar or Somerville owned the policies, any premium payments made by Globe Composite would have been treated as ordinary income to Somerville in 2004 and 2005. This was not the case. Globe (sic) did not issue Somerville any W-2 for these premium payments in 2004 and 2005, nor was it requested by him or his estate. Exhibit J, ¶ 3.

**Response:**

The Defendants have no knowledge of the actions of Globe Composite or its alleged actions with respect to its treatment of the premium payments and dispute the facts on this basis.

16.    William Rodgers (Rodgers), the corporate attorney who represented Globe Rubber in the acquisition of its assets by KFGI, testified in his deposition that while, in his opinion, the Agreement reflects the "meeting of the minds of the parties on the disposition of the insurance policies," Somerville could have transferred the policies to satisfy his obligations under the Employment Agreement and Rodgers would expect the post-closing premiums to be paid by the owner of the policies. Exhibit K, p. 55, II. 19-21, p. 60, 11. 1-5, p. 62, II. 15-20.

**Response:**

Disputed. Globe Composite's summary of Attorney Rodgers' deposition testimony presents a mischaracterization of Attorney Rodger's testimony. Attorney Rodgers' deposition testimony provided in pertinent part as follows:

Q.    What was the substance of the issue concerning the life insurance policies?

A.    Mr. Forsythe wanted to require (sic) them, certain of them. I resisted that.

Q.    How was the issue ultimately resolved?

A.    They were excluded from the sale.

Q.    Can you recall an agreement that the AIG policy and the
      Lincoln Financial policy would be part of what was
      acquired by Globe Rubber Works?

A.    The only thing that I think I can fairly say was agreed with
      regard to the insurance policies is what the definitive
      purchase agreement says.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Q.    Can you recall any conversation where the AIG and the Lincoln Financial
      policies were to be used to cover the key-man provision in Paragraph 13
      [of the Employment Agreement]?

A.    There were various permutations advanced through the history of the
      transaction. But as the transaction came together in the final days and
      leading up to its execution, there were no discussions of using existing
      insurance policies to answer, to serve as the key-man policy under
      Paragraph 13.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Q.    Under the terms of Paragraph 13, Mr. Somerville could
      have transferred those term policies to satisfy his
      corporation requirement, could he not?

A.    I suppose he could have. But is was against all the advice – rather, it was
      against the position I had advanced in that regard.

(Exhibit K to Globe Composite Statement, 45:23-45:24; 46:3-46:8; 59:15-59:24; 60:1-60:7.)

17.    The Agreement provides that "each party shall pay, or make adequate provision
for the payment, in full of the Liabilities as assumed or retained under this Agreement." Exhibit
A, § 8.3, p. 44.

**Response:**

Undisputed, but state the Agreement speaks for itself.

18.    Carl Forsythe (Forsythe), one of the founders of KFGI and the Chief Executive
Officer and President of Globe Composite, has a Masters in Business from Cornell University,
successfully passed his CPA exam, and was involved in finance and banking activities, including

several acquisitions, from 1982 until 1999. Exhibit D, p. 7, 11. 4-6, p. 7., 1. 12 – p. 8, 1. 16; Exhibit J, ¶¶ 1, 2.

**Response:**

The Defendants have no knowledge of Forsythe's education and/or employment history and dispute the facts on this basis.

19.    According to Forsythe, term life policies with little or no cash value are financial obligations and do not become assets until the insured dies. As a result, the Lincoln and American General term policies were not "excluded assets" under the Agreement, but were in fact assumed liabilities. Exhibit D, p. 47, 1. 20 – p. 48, 1. 24.

**Response:**

Undisputed that Forsythe testified and filed an affidavit that term life policies are financial obligations. Forsythe's testimony is disputed and wrong. The Policies are not term policies. (Exhibits 24 at 28:1-28:9 and 25 to the Roman Affidavit.) The American General policy was a whole life policy. (Id.) The Policies are assets, not liabilities as testified to by Fasnacht, the former CFO of Globe Composite. (Exhibit 22, Vol. III, 47:20-47:24 Roman Affidavit.) The Lincoln and American General policies were "excluded assets" under the Agreement. (Exhibit A, § 2.2, p. 10 to Globe Composite Statement.)

20.    Somerville's employment with Globe Composite was terminated on January 31, 2005. Exhibit L.

**Response:**

Undisputed.

21.    Somerville's employment was terminated because he admitted that he and Globe Rubber had falsified certifications to government contractors that parts manufactured by Globe Rubber for U.S. Navy submarines, specifically 92 inch missile hatch gaskets and sonar panels, met the required specifications, Exhibit L; Exhibit M.

**Response:**

Undisputed that Somerville's employment was terminated, but dispute the balance of paragraph 21. Mr. Somerville was terminated in an effort by Globe Composite and Forsythe to avoid paying their obligations under the Agreement. (Exhibit 20 to the Roman Affidavit). To the extent Plaintiff seeks to characterize Exhibits L and M, the characterization is denied and further state that portions of the transcript (Exhibit M) are unintelligible.

22.    Somerville took his own life on June 7, 2005 at the age of seventy-one. Exhibit N.

**Response:**

Undisputed that Somerville died on June 7, 2005 and that the immediate cause of death was hanging.

23.    Globe Composite filed claims against both policies on July 5, 2005. Exhibits O and P.

**Response:**

Undisputed, but state that Globe Composite, through counsel, represented to Lincoln Financial and American General that Globe Composite had "purchased the assets of Globe Rubber" without notifying American General or Lincoln Financial that the Policies were excluded assets under the APA. (Exhibits A, § 2.2, p. 10; O and P to Globe Composite Statement.)

24.    Lincoln paid the $250,000 in proceeds on its policy to Globe Composite on or about August 1, 2005. Exhibit Q.

**Response:**

Undisputed that the proceeds were paid and further state that Lincoln made the payment to Globe Composite in reliance upon the misrepresentation contained in the July 5, 2005, letter from Lawson & Weitzen, LLP that Globe Composite had purchased the assets of Globe Rubber. In fact, the insurance policies were excluded from the sale. (Exhibits A, § 2.2, p. 10; K, 45:23-45:24.)

25.    The Estate of Somerville did not make a claim on the American General policy until September 21, 2005. Exhibit R. American General filed an interpleader action on October 25, 2005 due to competing claims on the policy proceeds by Globe Composite and Solar, and deposited the $250,000 in proceeds with the court.

**Response:**

First sentence is undisputed and further state that Anne Roche Somerville was only appointed administrator of the Estate of Somerville on or about July, 2005. (Affidavit of Anne Somerville, ¶ 3.) Second sentence is disputed and further state American General filed an interpleader action on September 22, 2005, and an amended complaint on October 25, 2005.

### THE DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFF'S/DEFENDANT-IN-COUNTERCLAIM'S PARTIAL MOTION FOR SUMMARY JUDGMENT

1.    Aetna Life Insurance and Annuity Company issued a life insurance policy that is administered by Lincoln Financial Group ("Lincoln") insuring the life of Somerville to Roche-Somerville as owner and Roche-Somerville as beneficiary on September 1, 1998. (Affidavit of Cheryl A. Wilson (hereinafter "Wilson Affidavit") ¶ 3.) (**Exhibit 2** to Wilson Affidavit). Roche-Somerville assigned the ownership of the Lincoln policy to Globe Rubber on or about February 15, 1999. (Wilson Affidavit ¶ 4;) (**Exhibit 3** to Wilson Affidavit.) The death proceed value of the Lincoln policy is $250,000. (**Exhibit 2**, p. 2 to Wilson Affidavit.)

2.      American General Life Insurance Company ("American General") issued a life insurance policy to Globe Rubber as owner with Globe Rubber as beneficiary on September 19, 1998. (Exhibit 1 to Roman Affidavit.) The death proceed value of the American General policy is $250,000. (Id. at p. 3.)

3.      The Lincoln policy provides that Lincoln (or Aetna Life Insurance and Annuity Company) will pay proceeds upon the death of Somerville, upon the maturity date of the policy, or upon surrender of the policy. (Exhibit 2, p. 9 (identified as p. 2) to Wilson Affidavit.)

4.      The "maturity date" of the Lincoln policy was September 1, 2034. (Exhibit 2, p. 3 to Wilson Affidavit.) Pursuant to the Lincoln policy, the proceeds payable upon the "maturity date" are the Cash Value which equals: (1) the Cash Value on the previous Monthly Deduction Day less the Monthly Deduction for that day with interest to date; plus (2) Net Premiums paid since the previous Monthly Deduction Day with interest to date; less (3) any Partial Surrenders since the previous Monthly Deduction Day with interest to date. (Id. p. 14 (identified as p. 7)).

5.      As of August, 1, 2004, the Lincoln policy had a cash surrender value of $18,642.01. (Letter of Lincoln Financial dated February 2, 2007 (hereinafter "Lincoln Affidavit.")

6.      American General testified that the American General policy is a whole life policy which had a cash surrender value. (Exhibit 24, 4:1-4:11, 28:1-28:9, 34:23-34:25, 35:1-35:5, 36:4-36:19, 37:1-37:15, 37:23-37:25 to Roman Affidavit.) It was not a term policy. (Id.) The American General policy provides that American General will pay proceeds upon the death of Somerville, upon the maturity date of the policy, or upon the surrender of the policy. (Exhibit 1, p. 12 to Roman Affidavit.)

7.     The "maturity date" of the American General policy was September 19, 2033. (Exhibit 1, p. 3 to Roman Affidavit.)  Pursuant to the American General policy, the proceeds payable upon the "maturity date" is the cash surrender value.  (Id., p. 12.)

8.     As of September 19, 2004, the American General policy had a cash surrender value of $13,500.42.  (Exhibit 4 to Roman Affidavit; Exhibit 24, 44:1-44:11 to Roman Affidavit.)

9.     The Lincoln Financial policy provides that a change of owner or change of beneficiary may occur under the following circumstances:

> **Changes in Owner and Beneficiary**
> Unless this Policy states otherwise, the Owner or the Beneficiary, or both, may be changed.  This may be done as often as desired by the Owner of record during the lifetime of the Insured and while this policy is in force.
>
> To change the Owner or Beneficiary Your Written Request must be sent to Us. When We give Our written acceptance, the change will take effect as of the date Your Written Request was signed.  The change will be subject to any action We take before Our written acceptance of the change.

(Exhibit 2, p. 9 (identified as p. 3) to Wilson Affidavit.)  The term "Your Written Request" is a defined term under the Lincoln Financial policy, which means: "A request in writing, in a form satisfactory to Us and received by Us at the Home Office."  (Id., at 9 (identified as p. 2)).

10.     The American General policy provides that a change of owner of a change of beneficiary may occur under the following circumstances:

> **Change of Ownership or Beneficiary**. You may change the
> Owner or the Beneficiary at any time during the lifetime of the
> Insured unless the previous designation provides otherwise. To do
> so, send a written request to our home office in a form acceptable
> to us. The change will go into effect when we have recorded the
> change. However, after the change is recorded, it will be deemed
> effective as of the date of your written request for change. The
> change will be subject to any payment made or action taken by us
> before the request is recorded.

(Exhibit 1, p. 12 to Roman Affidavit;) (Exhibit 24, 45:5-45:25 to Roman Affidavit.)

11.    The American General "Change of Ownership" form provides further

"Instructions and Conditions" in order to effectuate a change of ownership. The "Instructions

and Conditions" state in pertinent part:

> The Owner may transfer the ownership and control of the Contract
> to a new owner, but such change shall not be effective until
> approved by the Service Center.
> * * *
> This Request for Change of Ownership does not change the
> beneficiary or the mode of payment as a death claim under the
> Contract
> * * *
> Special circumstances – Corporate ownership: The signature of
> one officer followed by the officer's title is required. The request
> must be submitted on a piece of corporate letterhead or paper with
> the corporate seal signed by the officer.

(Exhibit 7, p. 3 to Roman Affidavit; Exhibit 24, 45:23-45:25, 46:1-46:4 to Roman Affidavit.)

12.    The American General "Change of Beneficiary" form contains further

"Instructions and Conditions" in order to effectuate a change of beneficiary. The "Instructions

and Conditions" state in pertinent part:

> Unless otherwise provided, the right to change the beneficiary is
> reserved to the owner.
> * * *
> Special circumstances – Corporate ownership: The signature of
> one officer followed by the officer's title is required. The request
> must be submitted on a piece of corporate letterhead of paper with
> the corporate seal signed by that officer.

(Exhibit 9, p. 3 and Exhibit 24, 45:23-45:25, 46:1-46:4 to Roman Affidavit.)

13.     Globe Rubber and Somerville were represented by Attorney William R. Rodgers ("Attorney Rodgers") in relation to the APA. (Exhibits K, 5:1-5:3 to Globe Composite Statement[1].) Globe Composite was represented by Attorney Mark Johnson. (Exhibit D, 49:10-49:21 to Globe Composite Statement)

14.     Forsythe testified that during the negotiations of the APA, Mr. and Mrs. Somerville expressed to Forsythe that they wanted to retain the policies with cash value. (Exhibit D, 46:23-46:7 to Globe Composite Statement.) As of September, 2004, the Policies each had cash surrender value. (Exhibit 25 to Roman Affidavit.)

15.     Forsythe expressed interest in acquiring the Policies for Globe Composite. (Exhibit K, 46:5-46:8 to Globe Composite Statement.) Attorney Rodgers refused Forsythe's request. (Id.) As a result, the issue was ultimately resolved by excluding the Policies from the purchase and sale of the company. (Id.)

16.     Section 2.2 of the APA explicitly provided that all insurance policies were "Excluded Globe [Rubber] Assets" that were not part of the sale and purchase under the APA. Section 2.2 provides in relevant part as follows:

> **2.2 Excluded Globe [Rubber] Assets**
>
> Notwithstanding anything to the contrary contained in Section 2.1 or elsewhere in this Agreement, the following assets of Globe [Rubber] (collectively, the "Excluded Globe [Rubber] Assets") are not part of the sale and purchase contemplated hereunder, are excluded from the Globe [Rubber] Assets and shall remain the property of Globe [Rubber] after the Closing.
>
> * * *

---

[1] The "Concise Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment" will be referred to herein as the "Globe Composite Statement."

(c) **all insurance policies** and rights thereunder (except the extent
the right to receive indemnity payments for insured losses has been
assigned to KFGI as specified in Section 2.1(1).

(Exhibit A, § 2.2 to Globe Composite Statement.)

17.    Attorney Rodgers testified the Policies were to be retained by Globe Rubber

under the APA. (Exhibit K, 46:5-46:8, 49:13-50:3, 63:3-63:12, 60:12-60:14 to Globe Composite

Statement)

18.    Fasnacht was the chief financial officer of Globe Rubber. (Roche-Somerville

Affidavit ¶ 1.) After the closing in August, 2004, Fasnacht's became the chief financial officer

of Globe Composite and ceased to be employed by Globe Rubber. (Id.) (Exhibit E, 89:11-89:13

to Globe Composite Statement) Fasnacht testified it is his understanding that "key-man" policies

are assets of a company. (Exhibit 22, 47:20-48:7, 50:2-50:4 to Roman Affidavit.)

19.    As part of the APA, Globe Composite and Somerville entered into an

Employment Agreement dated August 3, 2004. (Exhibit C to Globe Composite Statement.)

Pursuant to Section 13 of the Employment Agreement, Somerville agreed "to use his best efforts

to cooperate with [Globe Composite] in procuring 'key man' life insurance policies..." (Id.)

The Employment Agreement makes no reference to any insurance policies including the Policies

at issue. (Id.) The Policies were not intended to serve as key-man policies under the

Employment Agreement. (Exhibit K, 59:15-59:24 to Globe Composite Statement.)

20.    Following the execution of the APA, Somerville was employed by Globe

Composite. (Exhibit E, 280:19-280:24 to Globe Composite Statement.)

21.    According to Forsythe and Fasnacht's testimony, Forsythe asked Fasnacht to

obtain forms from the insurance companies immediately following the execution of the APA.

(Exhibits E, 283:16-283:21 to Globe Composite Statement.) (Exhibit 23, 9:23-10:13 to Roman Affidavit.)

22.    Forsythe testified that Globe Composite acquired the Policies under the APA. (Exhibit D, 48:14-48:17 to Globe Composite Statement.)

23.    Forsythe and Fasnacht both testified they believed changing the owner of the Policies was part of the closing check list items.  (Exhibit 23, 10:6-10:23 to Roman Affidavit.) (Exhibit E, 283:1-283:6 to Globe Composite Statement.)

24.    Globe Composite initially tried to change the owner of the Policies without speaking to Somerville.  (Exhibit E, 92:8-92:14 to Globe Composite Statement.)

25.    Fasnacht testified Globe Composite retained an insurance broker named Neil McGinnis to act as its agent.  (Exhibit E, 94:16-94:20 to Globe Composite Statement.)

26.    Neither Fasnacht nor Forsythe communicated with Globe Rubber and Somerville's attorney, Attorney Rodgers, regarding changing the ownership of the Policies from Globe Rubber to Globe Composite.  (Exhibit E, 282:3-282:7 to Globe Composite Statement.) (Exhibit K, 63:18-64:8 to Globe Composite Statement.)

27.    Globe Composite (through its agent) transmitted a letter to American General dated September 2, 2004.  (Exhibit 2 to Roman Affidavit.)  The letter was on Globe Rubber letterhead.  (Id.)  It was signed by Fasnacht, who identified himself to American General as the Chief Financial Officer of Globe Rubber.  (Id.)  This was not true.  After Fasnacht stopped working for Globe Rubber, he did not have any authority to act on behalf of Globe Rubber.  (Roche-Somerville Affidavit ¶ 1.)  (Exhibit E, 280:19-280:21 to Globe Composite Statement.)

28.    Fasnacht testified he told Somerville he "needed" to sign the change of ownership forms for the Policies.  (Exhibit E, 93:6-93:14; 100:15-100:19 to Globe Composite Statement.)

18

29.     At the time Globe Composite told Somerville he needed to sign the change of ownership forms, Somerville was an employee of Globe Composite under a five year employment contract. (Exhibit C to Globe Composite Statement.) Somerville was subject to a non-compete agreement. (Id.) Globe Composite owed Somerville $750,000 under promissory notes as well as a 7.5% equity interest in Globe Composite. (Exhibit A, §§ 2.4 and 3.2 to Globe Composite Statement.)

30.     On or about December 1, 2004, Globe Composite and Forsythe did not pay their obligations to Somerville under a $400,000 promissory note. (Exhibit 24, ¶ 25.) Forsythe testified he forgot the $400,000 was due. (Exhibit D, 157:20-158:8 to Globe Composite Statement.) Fasnacht testified, however, he reminded Forsythe on a weekly basis that the $400,000 was due. (Exhibit E, 206:4-206:22, 207:12-207:24, 208:1-208:4 to Globe Composite Statement.)

31.     Globe Composite suggests it obtained Somerville's signature on the change of ownership forms for the Policies between September and December, 2004. *(Exhibit 22,8:23-19:8, 24:18-24:24 to Roman Affidavit.)*

32.     Globe Composite terminated Somerville's employment at Globe Composite on January 31, 2005. (Exhibit L to Globe Composite Statement.) In its termination to Somerville, Globe Composite stated: "You are to leave the premises immediately and arrangement (sic) will be made to have your personal belongings delivered to your home." (Id.)

33.     Fasnacht testified he does not remember seeing Somerville at the Globe Composite facility after he was terminated. (Exhibit 22, 29:9-29:12 to Roman Affidavit.) Forsythe testified that he does not believe that he ever saw Somerville again after Globe Composite terminated Somerville. (Exhibit 23, 15:4-15:6 to Roman Affidavit.)

34.    Lincoln did not receive any documentation submitted on behalf of Globe Composite until February, 2005. (Wilson Affidavit ¶ 6.) According to Lincoln's records, Globe Composite (through its agent) faxed a "Life Ownership Change Form" to Lincoln on February 16, 2005. (Id.) (Exhibit 5 to Wilson Affidavit.) Somerville's purported signature was dated February 15, 2005 on the "Life Ownership Change Form." (Exhibit 5 to Wilson Affidavit.") Globe Composite (through its agent) faxed a "Life Beneficiary Change Form" to Lincoln on February 17, 2005. (Wilson Affidavit ¶ 6.) (Exhibit 6 to Wilson Affidavit.) Lincoln never received the hardcopy with an original signature of these forms. (Wilson Affidavit, ¶6.)

35.    American General testified that it did not receive a request for a change of ownership of until February 16, 2005. (Exhibit 24, 49:11-49:19 to Roman Affidavit to Roman Affidavit.)

36.    By fax dated February 16, 2005, Globe Composite (through its agent) resent the September 2, 2004 letter to American General on Globe Rubber letterhead which was signed by Fasnacht as Chief Financial Officer of Globe Rubber. (Exhibit 5 to Roman Affidavit.) This was not true. (Exhibit E, 280:19-280:21 to Globe Composite Statement; Roche-Somerville Affidavit ¶ 1.) The purpose of Globe Composite's letter was to request that its insurance agent, Mr. McInnis, become appointed Globe Rubber's insurance agent. (Exhibit 5 to Roman Affidavit.)

37.    Globe Composite (through its agent) submitted a "Change of Ownership" form to American General by fax on February 17, 2005. (Exhibit 7; Exhibit 24 at 51:20-51:25 to Roman Affidavit.) Somerville's purported signature was dated February 14, 2005 on the "Change of Ownership" form. (Id.) Globe Composite (through its agent) submitted a "Change of Beneficiary" form to American General by fax on February 18, 2005. (Exhibit 7 Roman

Affidavit.)  American General never received the originals of the "Change of Ownership" form or the "Change of Beneficiary" form.  (Exhibit 24, 49:20-49:23, 52:2-52:7 to Roman Affidavit.)

38.    On or about February 18, 2005, Globe Composite filed suit against Somerville and Globe Rubber in this Court.

39.    American General testified and documentation supports the testimony that American General rejected the change of owner request on or about February 18, 2005.  (Exhibit 24, 54:1-54:21 to Roman Affidavit.)  In a letter addressed to Globe Rubber dated February 18, 2005, American General stated it could not complete the request to change the ownership until it received a corporate resolution authorizing an officer to act on behalf of Globe Rubber along with the signature and title of the officer on company letterhead or paper with corporate seal. (Exhibit 8 to Roman Affidavit.)

40.    By fax dated February 23, 2005, Globe Composite (through its agent) once again faxed the September 2, 2004 letter to American General on Globe Rubber letterhead, which falsely identified Fasnacht as the Chief Financial Officer of Globe Rubber.  (Exhibit 9 to Roman Affidavit.)  (Exhibit E, 280:19-280:21 to Globe Composite Statement; Roche-Somerville Affidavit ¶ 1.)

41.    In a letter addressed to Globe Rubber dated February 24, 2005, American General stated it could not complete the request to change the beneficiary for the American General policy because ownership had to be established first.  (Exhibit 10; Exhibit 24, 61:4-61:25, 61:1-61:8 to Roman Affidavit.)

42.    By letter dated March 10, 2005 addressed to Globe Rubber, Lincoln stated it was unable to accept the change of ownership because it required two officers to sign on behalf of Globe Rubber.  (**Exhibit 10** to Roman Affidavit.)

43.    American General's records indicate that it received a telephone call on March 24, 2005 from a caller who identified himself or herself as Globe Rubber, the owner of the American General policy. (Exhibit 11; Exhibit 24, 64:8-64:25, 65:1-65:12, 66:12-66:18 to Roman Affidavit.) The caller requested American General to send documentation to Fasnacht. (Id.)

44.    On March 29, 2005, Globe Composite faxed a letter to Lincoln purportedly from Globe Rubber on Globe Rubber letterhead. (Exhibit 13 to Roman Affidavit.) The letter did not contain Somerville's signature. (Id.) The very next day, on March 30, 2005, Globe Composite faxed to Lincoln the same letter that it had sent the day before but this time the Globe Rubber letter purported to contain Somerville's signature. (Exhibit 14 to Roman Affidavit.)

45.    Neither Fasnacht nor Forysthe have any knowledge of how Somerville's alleged signature was obtained on the March 30, 2005 letter to Lincoln. (Exhibit 22, 41:6-42:2; Exhibit 23, 30:7-30:24 to Roman Affidavit.) Despite being requested to produce the original of this letter, Globe Composite has been unable to produce it. (Exhibit 23, 30:7-30:24 to Roman Affidavit.) Lincoln never received an original of this letter. (Wilson Affidavit ¶ 6.) Globe Composite has not identified any witnesses who may establish that Somerville signed the letter. (Exhibit 23, 30:16-30:24 to Roman Affidavit.)

46.    Somerville signed an affidavit on March 28, 2005 that was filed in this Court. (Exhibit 20 Roman Affidavit.)

47.    Somerville passed away on June 7, 2005. (Exhibit N to Globe Composite Statement.)

48.    American General had not recorded the change of owner for the American General policy prior to Somerville's death. (Exhibit 24, 69:12-69:16; Exhibit 22, 44:3-44:5 to

22

Roman Affidavit.) American General has never received the required documentation to effectuate a change of ownership or a change of beneficiary for the American General policy. (Exhibit 24, 72:10-72:24 to Roman Affidavit.)

49.    Lincoln had not accepted the change of owner for the Lincoln Financial policy before Somerville passed away. (Wilson Affidavit ¶ 9; Exhibit 16, 43:24-44:2 to Roman Affidavit.)

50.    On June 3, 2005, Lincoln notified Globe Composite that it still had not obtained acceptable documentation to accept the change of ownership from Globe Rubber to Globe Composite. (Exhibit 16 to Roman Affidavit.)

51.    On June 9, 2005, two days after Somerville passed away, Globe Composite was still trying to effectuate the change of ownership of the Lincoln policy. (Exhibit 9 to Wilson Affidavit.) Although Globe Composite knew in early June that Somerville had passed away, Globe Composite did not relay this information to Lincoln until July 5, 2005. (Exhibit 17, 43:22-44:2 to Roman Affidavit; Wilson Affidavit ¶ 8.)

52.    By letter dated July 5, 2005, Globe Composite, through counsel, submitted a claim to the Lincoln asserting that it had "purchased the assets of Globe Rubber." (Exhibit O to Globe Composite Statement.) This statement was not true. (Exhibit A to Globe Composite Statement.) In reliance upon this representation by Globe Composite, Lincoln paid Globe Composite $250,000 in proceeds on or about August 1, 2005. (Wilson Affidavit ¶ 10.)

53.    By letter dated July 5, 2005, Globe Composite, through its counsel, submitted a claim to American General for the policy proceeds. (Exhibit P to Globe Composite Statement.) In the letter, counsel for Globe Composite also incorrectly stated that Globe Composite had "purchased the assets of Globe Rubber. (Id.) (Exhibit A to Globe Composite Statement; Exhibit

17 to Roman Affidavit.)  American General filed an interpleader and deposited the proceeds into Court.

54.    Somerville and his wife, Roche-Somerville, had been married for almost 46 years when Somerville passed away in June, 2005. (Roche-Somerville Affidavit ¶ 2.)  In the months following the sudden and unexpected loss of her husband, Somerville dealt with her grief and her loss while attempting to help her children and her grandchildren deal with their own grief and loss. (Id.)

55.    Roche-Somerville was appointed as temporary executrix of Somerville's estate in July, 2005. (Roche-Somerville Affidavit ¶ 3.)

56.    Somerville's widow, Roche-Somerville, the estate of Somerville, and Globe Rubber have not received any life insurance proceeds as a result of Somerville's death. (Roche-Somerville Affidavit ¶ 4.)

Respectfully submitted,
The Defendants, Anne Roche-Somerville and Solar Construction, Inc. f/k/a Globe Rubber Works, Inc.

By their attorneys,


/s/ Jennifer C. Roman
Mark S. Furman (BBO# 181680)
mfurman@tbhr-law.com
Jennifer C. Roman (BBO# 643223)
jroman@tbhr-law.com
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue
Boston, MA 02199
(617) 218-2000

Dated: February 2, 2007