UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>      Plaintiff, )<br>       )<br>v. )<br>       )<br>RICHARD C. SOMERVILLE, ANNE )<br>ROCHE-SOMERVILLE, and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>      Defendants. )<br>       ) | Civil Action No. 05 10323 DPW |

—————————————————————
       )
RICHARD C. SOMERVILLE and )
SOLAR CONSTRUCTION, INC. F/K/A )
GLOBE RUBBER WORKS, INC. )
      Plaintiffs-in-Counterclaim )
       )
v. )
       )
GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTH GLOBAL )
INNOVATIONS, LTD. and )
CARL W. FORSYTHE )
      Defendants-in-Counterclaim )
—————————————————————

**DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM'S MOTION TO COMPEL
PRODUCTION OF EXPERT REPORTS OR, IN THE ALTERNATIVE,
FOR LEAVE TO SERVE EXPERT INTERROGATORIES, AND
<u>MOTION TO EXTEND EXPERT DEPOSITION DEADLINE</u>**

Defendants/Plaintiffs-in-Counterclaim Anne Roche-Somerville, individually and as

executrix of the Estate of Richard C. Somerville ("Mrs. Somerville"), and Solar Construction,

Inc., f/k/a/ Globe Rubber Works, Inc. ("Globe Rubber," and together with Mrs. Somerville, the

"Globe Rubber Parties"), hereby request that the Court compel Plaintiffs/Defendants-in-

Counterclaim Globe Composite Solutions, Ltd., f/k/a Kalm-Forsythe Global Innovations, Ltd. ("Globe Composite"), and Carl W. Forsythe ("Forsythe," and together with Globe Composite, the "Globe Composite Parties") to produce expert reports that comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B) for the three Globe Composite employees disclosed by the Globe Composite Parties as potential experts.  In the alternative, the Globe Rubber Parties respectfully request leave to serve expert interrogatories on the Globe Composite Parties requiring them to identify the opinions, and the bases thereof, of their employee experts.  The Globe Rubber Parties further request that the Globe Composite Parties be precluded from deposing the Globe Rubber Parties' five expert witnesses, each of whom has produced a written report that complies with Fed. R. Civ. P. 26(a)(2)(B), until a reasonable period after (a) the Globe Composite Parties either serve written reports that comply with Fed. R. Civ. P. 26(a)(2)(B) for the three employee experts or respond to expert interrogatories; and (b) the Globe Rubber Parties have had an opportunity to depose the Globe Composite Parties' experts.  In addition, the Globe Rubber Parties request that the Court extend the period for conducting expert depositions from August 24, 2007, to September 25, 2007.

In support of their motion, the Globe Rubber Parties state as follows:

### PRODUCTION OF WRITTEN EXPERT REPORTS BY EMPLOYEE EXPERTS

1.       On March 21, 2007, the Globe Composite Parties served expert witness disclosures pursuant to Fed. R. Civ. P. 26(a)(2).  The Globe Composite Parties identified Vincent D. Luccitelli, CPA, CFP as a retained expert and produced a report of Mr. Luccitelli that purported to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B).  A copy of Mr. Luccitelli's report, not including the exhibits thereto, is attached as Exhibit 1.  In addition, the Globe Composite Parties identified three current employees of Globe Composite – Jason Dahlberg, Thomas Roberts, and Michael Xiu Wang, Ph.D. – as potential experts, as well as the

topics with respect to which each employee was expected to testify.  Attached as Exhibit 2 is a copy of Globe Composite's expert disclosures.

2.      The parties subsequently participated in two mediation sessions, the first on Friday, June 8, 2007, and the second on Wednesday, July 11, 2007.

3.      In connection with the mediation, the Globe Rubber Parties provided the Globe Composite Parties with outlines of their five expert reports on July 6, 2007.  Pursuant to the Court's July 12, 2007 order, the Globe Rubber Parties served their five experts' signed reports on July 25, 2007.

4.      A third day of mediation was scheduled for Monday, August 6, 2007, but was postponed due to a death in the family of Mark Furman, counsel for the Globe Rubber Parties. The parties anticipate conducting the third day of mediation during the week of August 13, 2007.

5.      While the expert discovery schedule approved by the Court required the Globe Composite Parties to produce their expert reports first, the Globe Rubber Parties have effectively been placed into that position as a result of the Globe Composite Parties' designation of three employees as experts.  Relying upon the text of Fed. R. Civ. P. 26(a)(2), the Globe Composite Parties did not produce written expert reports for these employees.  Therefore, the Globe Rubber Parties did not have the benefit of having expert reports available to them as they prepared their expert reports.  As the case law interpreting Fed. R. Civ. P. 26(a)(2) has made clear, such a lack of disclosure by the Globe Composite Parties is contrary to, and inconsistent with, the purpose of Fed. R. Civ. P. 26(a)(2).  *See Pena-Crespo v. Commonwealth of Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005) ("We have recognized that in the arena of expert discovery – a setting which often involves complex factual inquiries – *Rule 26* increases the quality of trials by better preparing attorneys for cross-examination.  The failure to provide an expert report that satisfies

the specific requirements of *Rule 26(a)(2)(B)* undermines opposing counsel's ability to prepare for trial." (internal quotation marks and citations omitted)).  As a result, courts have refused to grant a blanket exemption from the requirements of Fed. R. Civ. P. 26(a)(2)(B) to employees designated as experts.

6.  Exempting employee experts from the disclosure requirements of Fed. R. Civ. P. 26(a)(2)(B) "would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information.  The logic of [such a] position would be to create a category of expert trial witnesses for whom no written disclosure is required – a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articuable policy."  *Day v. CONRAIL*, 95 Civ. 968 (PKL), 1996 U.S. Dist. LEXIS 6596, at *4 (S.D.N.Y. May 15, 1996); *see also Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004) (per curiam) (expressing its agreement with *Day* that there should not be "a blanket exception for all employee expert testimony," but finding that plaintiff's lawyer waived objection to lack of disclosure); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, No. C 04-1830 CRB (JL), 2007 U.S. Dist. LEXIS 29782, at *8, 15 (N.D. Cal. Apr. 11, 2007); *3M Co. v. Signtech USA, Ltd.*, 177 F.R.D. 459, 461(D. Minn. 1997).

7.  Accordingly, courts have required the production of written reports by employee experts "[a] who testify regarding matters outside the scope of their employment, [b] who provide technical evaluations of evidence reviewed solely in preparation for trial, [c] who provide opinion testimony on the merits of the case, or [d] who have no direct and personal knowledge of the facts to which they are testifying."  *Funai Electric Co.*, 2007 U.S. Dist. LEXIS 29782, at *15.

8.  Consistent with these decisions, Judge Zobel last year granted a motion to compel

- 4 -

the production of a written report concerning the opinions of an employee expert to the extent the employee's testimony would be based on "'scientific, technical, or the other specialized knowledge.'"  *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, Civil Action No. 02-12102-RWZ, 2006 U.S. Dist. LEXIS 43690, at *117 (D. Mass. June 28, 2006).  *But see Bowling v. Hasbro, Inc.*, C.A. No. 05-229S, 2006 U.S. Dist. Lexis 58910, at *3-5 (D.R.I. Aug. 10, 2006) (recognizing split in authority and following cases holding that employee experts are not required to provide written reports that comply with Fed. R. Civ. P. 26(a)(2)(B)).  Relying on the Advisory Committee notes to Fed. R. Evid. 701, Judge Zobel explained that "[t]estimony that is expert testimony should not 'evade the expert witness disclosure requirements set forth in *Fed. R. Civ. P. 26*,' simply because the testimony is proffered through a fact witness."  *Storage Tech. Corp*, 2006 U.S. Dist. LEXIS 43690, at *116.

9.    The testimony of the Globe Composite Parties' employee experts will be based on "scientific, technical, or other specialized knowledge."  Furthermore, the Globe Composite Parties intend, at a minimum, to have their employee experts provide "technical evaluations of evidence reviewed solely in preparation for trial" and "opinion testimony on the merits of the case."  In addition, the employee experts may not have "direct and personal knowledge of the facts to which they are testifying."  *Funai Electric Co.*, 2007 U.S. Dist. LEXIS 29782, at *15.  As a result, the Globe Composite Parties should be compelled to provide written reports that comply with Fed. R. Civ. P. 26(a)(2)(B) for Mr. Dahlberg, Mr. Roberts, and Dr. Wang.  Production of these reports could potentially eliminate the need for the Globe Rubber Parties to depose these experts.  *See 3M Co*, 177 F.R.D. at 461 ("It is not only likely that such reports will serve to streamline or even eliminate the necessity for deposition testimony, but they will undoubtedly serve to minimize the element of surprise.").

10.     Because the Globe Rubber Parties did not have the benefit of written reports of the Globe Composite Parties' employee experts when they prepared their own reports, the Globe Rubber Parties further request the opportunity to submit supplemental reports of their disclosed experts to the extent necessary to rebut or respond to the reports of Mr. Dahlberg, Mr. Roberts, and Dr. Wang.

## IN THE ALTERNATIVE, LEAVE TO SERVE EXPERT INTERROGATORIES

11.     In the event the Court declines to compel the production of written reports by the Globe Composite Parties' employee experts, the Globe Rubber Parties respectfully request leave to serve expert interrogatories on the Globe Composite Parties so that they will have at least some understanding of the opinions, and the bases thereof, to which the Globe Composite Parties' employee experts would be expected to testify prior to conducting their depositions. Attached as Exhibits 3 and 4 hereto are the Globe Rubber Parties' proposed interrogatories.

## ORDER OF EXPERT DEPOSITIONS

12.     In the event the Court either compels the Globe Composite Parties to produce written reports for the expert employees or grants the Globe Rubber Parties leave to serve expert interrogatories, the Globe Rubber Parties further request that the Court preclude the Globe Composite Parties from deposing the Globe Rubber Parties' five expert witnesses until after (a) the Globe Composite Parties have complied with the Court's order and (b) the Globe Rubber Parties have had an opportunity to depose the Globe Composite Parties' experts. The Globe Rubber Parties should not be required to incur the expense of preparing for and attending depositions until their expert witnesses have had an opportunity to review and assess the expected testimony of the Globe Composite Parties' employee experts.

## EXTENSION OF EXPERT DEPOSITION DEADLINE

13.    Irrespective of whether the Court compels the Globe Composite Parties to produce written reports of their employee experts or grants the Globe Rubber Parties leave to serve expert interrogatories, the Globe Rubber Parties request that the Court extend the deadline for conducting expert depositions from August 24, 2007, to September 25, 2007.  The additional time to conduct expert depositions is necessary given that the third day of mediation scheduled for August 6, 2007, had to be postponed and will not resume until the week of August 13. Extending the expert deposition deadline will provide the parties with additional time to attempt to settle this matter before incurring the expense of preparing for and conducting expert depositions.

14.    Furthermore, the parties are scheduled to appear before the Court for a final discovery status conference on Thursday, September 27, 2007.  Accordingly, extending the expert deposition deadline until September 25 will provide the parties with sufficient time to conduct up to nine (9) depositions, while not otherwise interfering with the scheduled established by the Court.  The parties still will be able to raise any outstanding issues regarding expert discovery with the Court at the September 27 conference.

WHEREFORE, the Globe Rubber Parties respectfully request that the Court order the Globe Composite Parties to produce for Jason Dahlberg, Thomas Roberts, and Michael Xiu Wang, Ph.D. expert reports that comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B).  In the alternative, the Globe Rubber Parties respectfully request that the Court grant them leave to serve on the Globe Composite Parties expert interrogatories concerning the opinions, and bases thereof, of Jason Dahlberg, Thomas Roberts, and Michael Xiu Wang, Ph.D.  The Globe Rubber Parties further request that the Globe Composite Parties be precluded from deposing the Globe Rubber Parties' five expert witnesses until a reasonable period after (a) the Globe Composite

- 7 -

Parties either serve written reports that comply with Fed. R. Civ. P. 26(a)(2)(B) for the three

employee experts or respond to expert interrogatories; and (b) the Globe Rubber Parties have had

an opportunity to depose the Globe Composite Parties' experts.  Finally, the Globe Rubber

Parties request that the Court extend the deadline for conducting expert depositions from August

24, 2007, to September 25, 2007.

      Respectfully submitted,

      ANNE ROCHE-SOMERVILLE,
      INDIVIDUALLY AND AS EXECUTRIX
      OF THE ESTATE OF RICHARD C.
      SOMERVILLE, AND SOLAR
      CONSTRUCTION, INC., F/K/A GLOBE
      RUBBER WORKS, INC.

      By their attorneys

      /s/  Emily C. Shanahan
      Mark S. Furman (BBO# 181680)
      Emily C. Shanahan (BBO# 643456)
      Tarlow, Breed, Hart & Rodgers, P.C.
      101 Huntington Avenue
      Boston, MA 02199
      (617) 218-2000

Dated:  August 7, 2007

## LOCAL RULE 7.1(A)(2) CERTIFICATION

      I hereby certify that pursuant to Local Rule 7.1(A)(2), I conferred with counsel for the
Globe Composite Parties in a good faith effort to resolve this motion, but that the parties were
unsuccessful in doing so.

      /s/ Emily C. Shanahan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document, filed through the ECF system, will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies of the above document will be sent via first class mail to those identified as non-registered participants on the NEF on August 7, 2007.

/s/ Emily C. Shanahan
Emily C. Shanahan

United States District Court
## COMMONWEALTH OF MASSACHUSETTS

GLOBE COMPOSITE SOLUTIONS, LTD.
F/K/A KALM-FORSYTHE GLOBAL
INNOVATIONS, LTD.

*Plaintiff*,
v.

ANNE ROCHE-SOMERVILLE, individually
and in her capacity as Executrix of the Estate of
Richard C. Somerville, and
SOLAR CONSTRUCTION, INC., F/K/A
GLOBE RUBBER WORKS, INC.

*Defendants*.

Civil Action No.:
05-10323DPW
Report Submitted by Vincent Luccitelli, CPA, CFP
March 21, 2007

# Table of Contents

Report...........................................................................................3

Data Considered...........................................................................9

Depositions and Trial Appearances ...............................................10

Publications Authored...................................................................11

Curriculum Vitae.........................................................................12

CPA License ................................................................................13

CFP Certification .........................................................................14

# Report

## Preface

The purpose of this report is to disclose my expert opinion in the Civil Case of Globe Composite Solutions, Ltd. F/K/A Kalm-Forsythe Global Innovations, LTD, plaintiff v. Anne Roche-Somerville, individually and in her capacity as Executrix of the Estate of Richard C. Somerville, and Solar Construction, Inc., F/K/A Globe Rubber Works, Inc., defendants.

I have no present or contemplated financial interest in either the plaintiff or the defendants. The fees for this service are based upon time expended primarily by three members of Tonneson & Company CPAs PC at normal hourly billing rates plus out-of-pocket expenses, and are in no way contingent upon the results of my findings or the outcome of trial or case settlement. In addition to me, Richard W. Eagleston, and Jon J. Corbett assisted on this engagement. Our 2007 hourly billing rates are $300, $200 and $135, respectively.

I reserve the right to amend or supplement the report if I receive new information that could possibly alter my opinion. Some or all of the information may be used as demonstratives at trial.

The report is based on analyses of historical accounting records and other related documents and, interviews with employees and members of management of Globe Composite Solutions, Ltd (hereinafter "GCS"). My report is based upon the following assumptions:

-   In August 2004, GCS purchased the assets and business operations of Globe Rubber Works, Inc. (hereinafter "GRW") and assumed responsibility for completion of any contracts or other orders in progress or on hand as of the date of the purchase. Consistent with past and ongoing contracts between GRW and Northrop Grumman Newport News (hereinafter "NG"), GCS was awarded a series of contracts by NG for the production of seven (7) sets of "Sonar Baffle Panels". In addition, GRW had several unfilled standing purchase orders primarily from the U.S. Department of Defense (hereinafter "DOD") for the production of certain quantities (in excess of 300) of 92" Gaskets.

    The terms of each of the Sonar Baffle Panel contracts and 92" Gasket purchase orders contain exact specifications of the products to be manufactured. In December, 2004, GCS management determined that quality control documentation submitted by GRW to NG and the DOD were falsified so that GRW could demonstrate its capability of manufacturing the Sonar Baffle Panels and 92" Gaskets according to the exact contract specifications. As a result of this discovery of falsified documents, GCS management determined that it could not produce the Sonar Baffle Panels and 92" Gaskets according to the exact specifications of the contracts and purchase orders. They further determined that in order to meet the specifications, GCS would be required to implement a multitude of changes, resulting in additional costs and expenses that would not otherwise be necessary in the ordinary course of business.

-   All responses to inquiries made to management and employees, as well as any and all source documents provided to us, were devoid of any intentional misrepresentations.

3

L 3

Under my direction, Richard W. Eagleston, CPA, a principal, and Jonathan J. Corbett, CPA, a supervisor, of Tonneson & Company CPAs PC analyzed historical accounting records, related company documents and other data and performed interviews with GCS employees and members of management. My associates and I performed our analysis in order to determine the incremental costs and expenses incurred to date and estimated to be incurred through the estimated contract completion of the seven sets of Sonar Baffle Panels and order fulfilment of the 92" Gaskets. These incremental costs and expenses result from the fraudulent reporting of the quality control documents for the production of the Sonar Baffle Panels and 92" Gaskets from the date of discovery (December 2004) through the anticipated completion of the baffle panel contracts (estimated to be December 2010) and the ongoing production of the 92" Gaskets.

Our interviews with GCS employees were primarily conducted in December of 2006 and the incremental costs and expenses included in this report are comprised of actual costs incurred through that timeframe and management's estimates of expected future incremental costs to be in incurred based on their knowledge as of that date. Costs and expenses relating to the production of Sonar Baffle Panels and 92" Gaskets according to exact specifications are ongoing as of the date of this report. Accordingly, management's estimates of expected future incremental costs to be incurred and the ultimate actual incremental expenses will change over time. I have no responsibility to update this report for events and circumstances occurring after the date of this report.

Due to the unique nature of this engagement, I utilized the Practitioners Publishing Company's Guide to Litigation Support Services, a highly regarded industry publication, in particular the "Lost Profits Analyses" section, as a guide in rendering my report. A request was also made to the American Institute of Certified Public Accountants library service for other potential sources of information that would be useful for this particular case, and we were informed that there was no other literature or authoritative guides that would provide guidance in this regard.

The attached Exhibits A through G contain computations of the incremental costs and expenses incurred to date and estimated to be incurred through completion of the respective contracts by GCS These exhibits are classified by type of costs and expenses for the period from December 2004 through the anticipated completion of the Sonar Baffle Panel contracts and 92" Gaskets in question. Estimated future costs and expenses have been discounted to present value using a 5% discount rate. The 5% rate was used as a conservative risk-free interest rate, based on U.S. Government Treasury Note yields ranging from 4.4% to 4.9% for notes maturing in 2007 through 2010.

Opinion

It is my opinion that the Exhibits summarize, in all material respects, the total incremental costs and expenses incurred or to be incurred as a result of the fraudulent quality control documentation which are reasonably quantifiable as of the date of this report.

A tabulation of incremental costs and expenses incurred through December 2006 and certain future incremental costs and expenses expected to occur as a result of the fraudulent quality control documentation, derived from information provided to us by employees and management of Globe Composite Solutions, Ltd. is as follows:

**Globe Composite Solutions, Ltd.**
**Incremental Costs and Expenses Incurred as a Result of Fraudulent Quality Control**
**Documentation Regarding Sonar Baffle Panel Contracts and 92" Gasket Orders**

| | | |
|---|---|---|
| **Exhibit A - Labor Costs Associated with Necessary Improvements to Quality Control Personnel** | $ | 580,120 |
| **Exhibit B - Labor Costs Associated with Diverted Management and Employee Time** | | 511,962 |
| **Exhibit C - Labor and Material Costs Associated with Sonar Baffle Panel Rework** | | 30,562 |
| **Exhibit D - Increased Production Labor Costs Associated with Longer Processing Time Required for Producing Sonar Baffle Panels According to Exact Contracts Specifications** | | 581,845 |
| **Exhibit E - Capital Expenditures Required to Produce Products that Comply with Contracts Specifications** | | 506,901 |
| **Exhibit F - Travel and Lodging Costs and Expenses** | | 53,452 |
| **Exhibit G - Other Costs and Expenses Incurred** | | 13,971 |
| **Incremental Costs & Expenses Incurred by Globe Composite Solutions, Ltd.** | $ | 2,278,813 |

It is my opinion that the above tabulation is a fair representation of the minimum incremental costs and expenses incurred through December 2006 and certain costs and expenses expected to be incurred beyond December 2006. My report is not intended to be a final or all-inclusive list of incremental costs and expenses incurred by Globe Composite Solutions, Ltd., as a result of the fraudulent documentation, as certain expenses incurred thus far such as professional fees are not included nor are all future expenses relating to this matter included.

Exhibit A – Labor Costs Associated with Necessary Improvements to Quality Control Personnel

Exhibit A computes the costs incurred and to be incurred associated with improvements to the Quality Control Personnel and the Quality Control Process. Through discussions with management of GCS, it was determined that the Quality Control Director was knowingly involved with the falsification of the quality control records. Accordingly, the Quality Control Director was terminated. In order to hire a new Quality Control Director with the experience and capabilities necessary to adequately perform the necessary job functions, the Company had to employ an individual at a higher compensation level than the former Quality Control Director. In addition, it was determined that it was necessary that the Company hire two additional Quality Control Technicians to perform the necessary inspections and provide assurance that the raw material and finished products were in compliance with the specifications of the particular product. The salaries of the above employees were extended over a four year period, which is the estimated time it will take to complete the Sonar Baffle Panel contracts with NG. The individual labor rates were verified to current payroll records. Through discussion with management, the average compensation increase has been 3 – 4% per year. The labor rates have been adjusted to reflect the prior increase as well as anticipated future increases based on historical pay rate increases. All future labor costs have been discounted to present value using a 5% discount rate. The 5% rate was used as a conservative risk-free interest rate, based on U.S. Government Treasury Note yields ranging from 4.4% to 4.9% for notes maturing in 2007 through 2010.

Exhibit B – Labor Costs Associated with Diverted Management and Employee Time

Exhibit B represents labor costs for diverted management and employee time to deal with the issues that were generated by the fraudulent reporting relating to both the Sonar Baffle Panels and the 92" Gaskets for the period from December 2004 through December 2006. If not for this diverted time, these individuals would have been performing other functions that would have benefited GCS in other areas of the business. This exhibit was developed through interviews with members of management and employees. The individual labor rates were verified to current payroll records. Through discussion with management, the average compensation increase has been 3 – 4% per year. Since the diverted time ranges from 2004 through 2006, we determined that it would be conservative to use 2005 labor rates for all diverted time contained in this Exhibit B. The 2005 labor rates were derived by discounting the 2006 rates by 3-1/2%.

Exhibit C – Labor and Material Costs Associated with Sonar Baffle Panel Rework

Exhibit C represents additional labor and material costs incurred by GCS to rework and/or replace sections of Sonar Baffle Panels that initially did not meet the specification requirements of the contracts with NG. The need to rework these Sonar Baffle Panels was due primarily to the excess humidity of the production area which adversely affects the physical properties of the material used for the manufacture of the panels as well as compromising the adhesive bond strength between the various layers of the panels. The cost associated with removing and replacing substandard layers or removing and replacing substandard adhesive layers consists of additional setup time, machining, surface preparation and production time as well as for raw materials. The labor rates used for this calculation are standard production rates in effect at the time the additional work was performed. All of the additional costs included in Exhibit C were necessary to produce conforming sonar baffle panels.

As a result of the humidity issues, the Company entered into a purchase agreement for a 3-Stream Self-Contained Mixing Machine which is included in Exhibit E. By acquiring the new machine, the Company will be able to produce Sonar Baffle Panels throughout the year without incurring any processing issues regarding humidity. The machine was ordered in 2006 and is expected to be installed April 2007.

Exhibit D – Increased Production Labor Costs Associated with Longer Processing Time Required For Producing Sonar Baffle Panels According to Exact Contract Specifications

Exhibit D reflects the additional time that is required to produce one Sonar Baffle Panel to meet the specifications of the contracts. This schedule was created by members of management with input from employees directly involved in the production process. The employees who assisted in the creation of this schedule had been involved in the Sonar Baffle Panel production process prior to the sale of the Company. Inquiries and interviews were made to verify the accuracy of the time and process changes that were a direct result of the fraudulent reporting and the inability of the Sonar Baffle Panels to be made to specifications using the previous production process. The associated direct labor costs were verified to current payroll records and represent the employees who are involved in the production of Sonar Baffle Panels. The overhead rate was traced to the overhead calculation utilized by the Company. Through discussion with management, the average compensation increase has been 3 – 4% per year. The labor rates have been adjusted to reflect the prior increase as well as anticipated future increases based on historical pay rate increases. All future labor costs have been discounted to present value using a 5% discount rate. The 5% rate was used as a conservative risk-free interest rate, based on U.S. Government Treasury Note yields ranging from 4.4% to 4.9% for notes maturing in 2007 through 2010.

Exhibit E – Capital Expenditures Required to Produce Products that Comply with Contract Specifications

Exhibit E depicts the capital expenditures that were incurred or are anticipated to be incurred to enable the Company to produce the Sonar Baffle Panels and 92" Gaskets to meet the specifications required by the contracts and orders. This capital expenditures list was reviewed with management and traced to the corresponding invoice showing the purchase or purchase order quote. Inquiries were made to management as to the reasons for the purchase.

Exhibit F – Travel and Lodging Costs and Expenses

Exhibit F represents travel and lodging costs and expenses that were incurred for the period from December 2004 through December 2006 by Carl Forsythe, net of expected normal recurring visits. As a result of the discovery of the fraudulent quality control documentation and the ensuing termination of Richard Somerville, Mr. Forsythe had to assume various duties previously performed by Mr. Somerville. In order to perform these expanded duties, Mr. Forsythe, a resident of Texas, was required to travel from his home in Texas to Massachusetts on a weekly basis.  Upon purchase of the GRW assets, it was anticipated that Mr. Somerville would handle product development and research activities, and that Mr. Forsythe would be expected to visit once and spend two days (one night) per month in Massachusetts.

The costs and expenses related to Mr. Forsythe's travel have been reduced by the cost of one round-trip airfare per month and the cost of one nights lodging per month.  The amount utilized for these costs and expenses were $350 for airfare and $85 for lodging, which was calculated based upon the average costs for flights and lodging for Mr. Forsythe for the period from December 2004 through December 2006. All related travel and lodging costs were traced to supporting documents.

Exhibit G – Other Costs and Expenses Incurred

Exhibit G shows other costs and expenses incurred, as a result of the fraud, for the period from December 2004 through December 2006.  Severance costs were incurred for employees who were terminated due to their awareness and concealment of the fraudulent documentation.  In addition, the Company incurred costs and expenses in April 2005 related to staff reductions due to reduced cash flows as a result of reduced revenues generated by the inability to produce Sonar Baffle Panels and 92" Gaskets to exact specifications.  Costs and expenses were also incurred for additional funding received from outside investors, necessitated by the reduced cash flow.  All severance and staff reduction costs were agreed to payroll records.  Costs and expenses incurred with obtaining additional funding were agreed to invoices.

*Vincent D. Luccitelli*
Vincent D. Luccitelli, CPA, CFP

Exhibit F – Travel and Lodging Costs and Expenses

Exhibit F represents travel and lodging costs and expenses that were incurred for the period from December 2004 through December 2006 by Carl Forsythe, net of expected normal recurring visits. As a result of the discovery of the fraudulent quality control documentation and the ensuing termination of Richard Somerville, Mr. Forsythe had to assume various duties previously performed by Mr. Somerville. In order to perform these expanded duties, Mr. Forsythe, a resident of Texas, was required to travel from his home in Texas to Massachusetts on a weekly basis. Upon purchase of the GRW assets, it was anticipated that Mr. Somerville would handle product development and research activities, and that Mr. Forsythe would be expected to visit once and spend two days (one night) per month in Massachusetts.

The costs and expenses related to Mr. Forsythe's travel have been reduced by the cost of one round-trip airfare per month and the cost of one nights lodging per month. The amount utilized for these costs and expenses were $350 for airfare and $85 for lodging, which was calculated based upon the average costs for flights and lodging for Mr. Forsythe for the period from December 2004 through December 2006. All related travel and lodging costs were traced to supporting documents.

Exhibit G – Other Costs and Expenses Incurred

Exhibit G shows other costs and expenses incurred, as a result of the fraud, for the period from December 2004 through December 2006. Severance costs were incurred for employees who were terminated due to their awareness and concealment of the fraudulent documentation. In addition, the Company incurred costs and expenses in April 2005 related to staff reductions due to reduced cash flows as a result of reduced revenues generated by the inability to produce Sonar Baffle Panels and 92" Gaskets to exact specifications. Costs and expenses were also incurred for additional funding received from outside investors, necessitated by the reduced cash flow. All severance and staff reduction costs were agreed to payroll records. Costs and expenses incurred with obtaining additional funding were agreed to invoices.

## Data Considered

- Payroll records
- Invoices and other source documents relating to capital expenditures, travel and lodging costs
- Interviews with and other inquiries to employees and management
- Management reports
- Purchase and Sale Agreement Between Globe Composite Solutions, Ltd. and Globe Rubber Works
- Financial Statements of Globe Composite Solutions, Ltd.
- Sales Contracts with Northrop Grumman Newport News

## Depositions and Trial Appearances within Last Ten Years

Deposition (2005) and Trial Appearance -2007
United States District Court, District Of Connecticut

FRANK M. KEANEY v. EASTERN COMPUTER EXCHANGE, INC., BRENDAN LYNCH, individually
and BARRY WILLIAMS, individually

## Publications Authored

New England Oil Heat News
2005 Article on Health Savings Accounts

# Curriculum Vitae

**Vincent D. Luccitelli, CPA, CFP**

EMPLOYMENT EXPERIENCE:

Tonneson & Company CPAs PC      1978 – present
Advanced from Entry Level staff position to Shareholder in 1987.

>   Shareholder Responsibilities:
>       Director of Accounting and Auditing Departments (responsible for the firm's quality control
>       and peer reviews)
>       Chief Operating Officer
>       Treasurer

>   Client Services (diversified client base comprised primarily of closely-held manufacturers and
>   distributors):
>       Accounting
>       Auditing
>       Tax and Business Advisory Services

EDUCATION:

Bentley College, Bachelor of Science, Accounting, Magna Cum Laude, 1978

LICENSURE:

Certified Public Accountant, 1981
Certified Financial Planner, 1989

PROFESSIONAL SOCIETY MEMBERSHIPS:

American Institute of Certified Public Accountants
Massachusetts Society of Certified Public Accountants

OTHER:

Conducted over 20 peer reviews of other CPA firms
Former Member of Massachusetts Peer Review Acceptance Board

CPA License

COMMONWEALTH OF MASSACHUSETTS
DIVISION OF PROFESSIONAL LICENSURE
IN PUBLIC ACCOUNTANCY
A CERTIFIED PUBLIC ACCOUNTANT
ISSUES THIS LICENSE TO

VINCENT D LUCCITELLI

401 EDGEWATER PL
SUITE 300
WAKEFIELD        MA 01880-6208

6701      06/30/08      308639
LICENSE NO.    EXPIRATION DATE    SERIAL NO.

13

L 13

## CFP Certification

CERTIFIED FINANCIAL PLANNER
BOARD OF STANDARDS, INC.

Mr. Vincent D. Luccitelli

| 26587 | 6/1/2006 | 5/31/2008 |
|---|---|---|
| CFP BOARD ID # | EFFECTIVE DATE | EXPIRATION DATE |

SARAH BALL TESLIK,
CHIEF EXECUTIVE OFFICER

IDENTIFICATION CARD

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLOBE COMPOSITE SOLUTIONS, LTD.      )
F/K/A KALM-FORSYTHE GLOBAL           )
INNOVATIONS, LTD.                    )
                                     )
                                     )    Civil Action No. 05-10323DPW
          *Plaintiff,*               )
                                     )
v.                                   )
                                     )
ANNE ROCHE-SOMERVILLE, individually  )
and in her capacity as Executrix of the Estate of   )
Richard C. Somerville, and           )
SOLAR CONSTRUCTION, INC., INC. F/K/A  )
GLOBE RUBBER WORKS, INC.             )
                                     )
                                     )
          *Defendants.*              )
                                     )
                                     )
RICHARD C. SOMERVILLE,               )
SOLAR CONSTRUCTION, INC. F/K/A       )
GLOBE RUBBER WORKS, INC. and         )
ANNE ROCHE-SOMERVILLE,               )
          *Plaintiffs-in-Counterclaim,*   )
                                     )
v.                                   )
                                     )
GLOBE COMPOSITE SOLUTIONS, LTD.      )
F/K/A KALM-FORSYTHE GLOBAL           )
INNOVATIONS, LTD. and                )
CARL W. FORSYTHE,                    )
          *Defendants-in-Counterclaim.*   )
                                     )
                                     )

## PLAINTIFF'S EXPERT WITNESS DISCLOSURE

Pursuant to Fed. R. Civ. P. 26(a)(2), plaintiff Globe Composite Solutions, Ltd. (GCS) and

defendant-in-counterclaim Carl W. Forsythe (Forsythe) hereby disclose Vincent D. Luccitelli, CPA, CFP to the defendants as a witness who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence in support of their claims and defenses against the defendants. Mr. Luccitelli was retained by GCS and Forsythe to provide expert testimony. His report, including the information required by Fed. R. Civ. P. 26(a)(2)(B), is attached.

GCS and Forsythe also disclose the following three employees of GCS to the defendants as witnesses who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence in support of their claims and defenses against the defendants:

1.    Jason Dahlberg

Mr. Dahlberg has been the Lead Foreman for Military Products at GCS and Globe Rubber Works, Inc. (GRW) for over ten years. He started working at GRW in 1987. His primary responsibility is the production of sonar baffle panels and other military products.

Mr. Dahlberg may testify as to the necessity of (i) the changes made by GCS in the manufacturing process, raw material qualifying process, and enhanced quality control measures for sonar baffle panels in order to meet the government specifications, (ii) the tests and experiments conducted by GCS to develop these new processes and measures, and (iii) the capital equipment purchased or in development by GCS for these purposes, including but not limited to the ITWC Urethane Solutions 3-Stream machine (ITWC Machine), the costs of which have been quantified in the attached expert report.

2

2.    Thomas Roberts

Mr. Roberts has been the Production Manager for all products, including sonar baffle panels and 92" gaskets, for GCS and GRW since 1995. He started working at GRW in 1978 and since that time has also been the Production Foreman and a Cost Estimator.

Mr. Roberts may testify as to the necessity of (i) the changes made by GCS in the manufacturing process, raw material qualifying process, and enhanced quality control measures for sonar baffle panels in order to meet the government specifications, (ii) the tests and experiments conducted by GCS to develop these new processes and measures, and (iii) the capital equipment purchased or in development by GCS for these purposes, including but not limited to the ITWC Urethane Solutions 3-Stream machine (ITWC Machine), the costs of which have been quantified in the attached expert report. In addition, he may testify as to the necessity of the tests and experiments conducted by GCS in order to attempt to meet the government specifications for 92" gaskets and the equipment purchased by GCS for this purpose, including but not limited to the bench-top dispensing machine that will be installed for the production of 92" gaskets, the costs of which have also been quantified in the attached expert report.

3.    Michael Xiu Wang, Ph.D.

Dr. Wang holds a Ph.D. in plastics engineering from the University of Massachusetts at Lowell, a Masters degree in Chemical Engineering from Ohio University, and a Bachelors degree in polymer science from Dalian University of

3

Science and Technology, Dalian, China. He has been with GCS since mid 2006 as the Director of Polymer Technologies responsible, among other things, for attempting to develop a formulation and manufacturing process for 92" gaskets that may result in gaskets that consistently conform to government specifications. He also participated in the development of the ITWC Machine by GCS for the production of conforming sonar baffle panels.

Dr. Wang may testify as to the reasons that GCS has been unable to meet the government specifications for 92" gaskets. In addition, he may testify as to the necessity of the tests and experiments conducted by GCS in order to attempt to meet the specifications and the equipment purchased or in development by GCS for that purpose, including but not limited to the bench-top dispensing machine that will be installed for the production of 92" gaskets, the costs of which have been quantified in the attached expert report. He may also testify as to the necessity of the ITWC Machine for the production of conforming sonar baffle panels, the cost of which has also been quantified in the attached expert report.

By its attorneys,

Evan T. Lawson, BBO# 289280
Clare B. Burhoe BBO# 632238
cburhoe@lawson-weitzen.com
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, Massachusetts  02210
(617) 439-4990

4

## CERTIFICATE OF SERVICE

I, Clare B. Burhoe, hereby certify that on March 21, 2007 a true copy of the foregoing document was served by hand delivery upon all counsel of record including Mark S. Furman and Jennifer C. Roman, Tarlow, Breed, Hart & Rodgers, PC, 101 Huntington Avenue, Suite 500, Boston, MA 02199.

Clare B. Burhoe

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>              Plaintiff, )<br> )<br>v. )<br> )<br>RICHARD C. SOMERVILLE, ANNE )<br>ROCHE-SOMERVILLE, and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>              Defendants. )<br>_____) | Civil Action No. 05 10323 DPW |

| |
|---|
| _____ )<br>RICHARD C. SOMERVILLE and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>           Plaintiffs-in-Counterclaim )<br> )<br>v. )<br> )<br>GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTH GLOBAL )<br>INNOVATIONS, LTD. and )<br>CARL W. FORSYTHE )<br>         Defendants-in-Counterclaim )<br>_____) |

**DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM'S
SECOND SET OF INTERROGATORIES TO
<u>GLOBE COMPOSITE SOLUTIONS, LTD.</u>**

      Pursuant to Fed. R. Civ. P. 33, Anne Roche-Somerville, individually and as executrix of

the Estate of Richard C. Somerville, and Solar Construction, Inc., f/k/a Globe Rubber Works,

Inc. (together, the "Globe Rubber Parties"), propound the following interrogatories to

Plaintiff/Defendant-in-Counterclaim Globe Composite Solutions, Ltd., f/k/a Kalm-Forsythe

Global Innovations, Ltd. ("Globe Composite").

## **INTERROGATORIES**

## **INTERROGATORY NO. 1**

For each Jason Dahlberg, Thomas Roberts, and Michael Xiu Wang, Ph.D., identify in detail the
following:

    (a) his qualifications as an expert witness, including his professional qualifications and basis
       of expertise;

    (b) the substance of the facts and opinions to which he is expected to testify; and

    (c) a summary of the grounds for each opinion.

                     Respectfully submitted,

                     Anne Roche-Somerville, individually and as
                     executrix of the Estate of Richard C. Somerville,
                     and Solar Construction Inc., f/k/a Globe Rubber
                     Works, Inc.

                     By their attorneys,

                     _____
                     Mark S. Furman (BBO# 181680)
                     Emily C. Shanahan (BBO# 643456)
                     Tarlow, Breed, Hart & Rodgers, P.C.
                     101 Huntington Avenue, Suite 500
                     Boston, MA 02199
                     (617) 218-2000

Dated:  August ___, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>GLOBE COMPOSITE SOLUTIONS, LTD. )<br>F/K/A KALM-FORSYTHE GLOBAL )<br>INNOVATIONS, LTD. )<br>          Plaintiff, )<br>         )<br>v. )<br>         )<br>RICHARD C. SOMERVILLE, ANNE )<br>ROCHE-SOMERVILLE, and )<br>SOLAR CONSTRUCTION, INC. F/K/A )<br>GLOBE RUBBER WORKS, INC. )<br>         Defendants. )<br>_____) | Civil Action No. 05 10323 DPW |

_____ )
RICHARD C. SOMERVILLE and )
SOLAR CONSTRUCTION, INC. F/K/A )
GLOBE RUBBER WORKS, INC. )
         Plaintiffs-in-Counterclaim )
         )
v. )
         )
GLOBE COMPOSITE SOLUTIONS, LTD. )
F/K/A KALM-FORSYTH GLOBAL )
INNOVATIONS, LTD. and )
CARL W. FORSYTHE )
         Defendants-in-Counterclaim )
_____)

**DEFENDANTS/PLAINTIFFS-IN-COUNTERCLAIM'S**
**SECOND SET OF INTERROGATORIES TO CARL W. FORSYTHE**

        Pursuant to Fed. R. Civ. P. 33, Anne Roche-Somerville, individually and as executrix of

the Estate of Richard C. Somerville, and Solar Construction, Inc., f/k/a Globe Rubber Works,

Inc. (together, the "Globe Rubber Parties"), propound the following interrogatories to

Plaintiff/Defendant-in-Counterclaim Carl W. Forsythe ("Forsythe").

## <u>INTERROGATORIES</u>

### <u>INTERROGATORY NO. 1</u>

For each Jason Dahlberg, Thomas Roberts, and Michael Xiu Wang, Ph.D., identify in detail the following:

    (a) his qualifications as an expert witness, including his professional qualifications and basis of expertise;

    (b) the substance of the facts and opinions to which he is expected to testify; and

    (c) a summary of the grounds for each opinion.

Respectfully submitted,

Anne Roche-Somerville, individually and as executrix of the Estate of Richard C. Somerville, and Solar Construction Inc., f/k/a Globe Rubber Works, Inc.

By their attorneys,

_____
Mark S. Furman (BBO# 181680)
Emily C. Shanahan (BBO# 643456)
Tarlow, Breed, Hart & Rodgers, P.C.
101 Huntington Avenue, Suite 500
Boston, MA 02199
(617) 218-2000

Dated:  August ___, 2007